1  DAVID M. POITRAS – Bar No. 141309
   SUSAN K. SEFLIN – Bar No. 213865
2  JESSICA S. WELLINGTON – Bar No. 324477
   BG LAW LLP
3  21650 Oxnard Street, Suite 500
   Woodland Hills, CA 91367
4  Telephone:  (818) 827-9000
   Facsimile:  (818) 827-9099
5  Email:    dpoitras@bg.law
             sseflin@bg.law
6            jwellington@bg.law

7  Proposed Attorneys for Chapter 11 Debtors and
   Debtors in Possession

8
                **UNITED STATES BANKRUPTCY COURT**
9
                **CENTRAL DISTRICT OF CALIFORNIA**
10
                **SAN FERNANDO VALLEY DIVISION**
11

12  In re                              Case No. 1:24-bk-11323-VK

13  Irwin Naturals *et al.*,           Chapter 11

14                    Debtors and Debtors   (Jointly Administered with:
                      in Possession.
15                                     Case Nos. 1:24-bk-11324-VK, 1:24-bk-11325,
                                       and 1:24-bk-11326-VK)
16

17  ☒   Affects Irwin Naturals        **EMERGENCY MOTION FOR ENTRY OF
                                       INTERIM AND FINAL ORDERS: (I)
18  ☐   Affects Irwin Naturals Inc.    AUTHORIZING THE DEBTORS TO PAY
                                       CERTAIN PREPETITION CLAIMS OF
19                                     CRITICAL VENDORS; (II)
    ☐   Affects 5310 Holdings, LLC     AUTHORIZING FINANCIAL
20                                     INSTITUTIONS TO HONOR AND
    ☐   Affects DAI US HoldCo Inc.     PROCESS RELATED CHECKS AND
21                                     TRANSFERS; AND (III) GRANTING
    ☐   Affects All Debtors            RELATED RELEIF**
22
                                       *[Declaration of Klee Irwin in support of first
23                                     day motions filed concurrently herewith]*

24                                     **Hearing:**
                                       Date:    August 16, 2024
25                                     Time:    1:30 p.m.
                                       Place:   Courtroom 301
26                                              21041 Burbank Blvd
                                                Woodland Hills, CA 91367
27

28

                                1

3000841

# **TABLE OF CONTENTS**

Page

I.  JURISDICTION AND VENUE ........................................................................2

II.  BACKGROUND FACTS ............................................................................2

III.  RELIEF REQUESTED.................................................................................3

IV.  THE CRITICAL VENDSORS ......................................................................4

    A.  Payment of the Critical Vendor Claims is Essential to the Debtor's
Continued Operations ........................................................................4

    B.  Proposed Terms and Conditions for Payment of Critical Vendor Claims............6

V.  BASIS FOR RELIEF ..................................................................................7

    A.  The Court Should Authorize the Debtor to Pay the Critical Vendor
Claims Pursuant to Sections 105(a) and 363 of the Bankruptcy Code .................7

    B.  The Court Should Authorize Payment of the Critical Vendor Claims as
a Valid Exercise of the Debtor's Fiduciary Duties Under Sections
1107(a) and 1108 of the Bankruptcy Code ...........................................10

    C.  Processing of Checks and Electronic Fund Transfers Should be
Authorized...........................................................................................11

    D.  The Orders Should Be Effective Immediately....................................12

VI.  NOTICE......................................................................................................12

VII.  RESERVATION OF RIGHTS ...................................................................13

VIII.  CONCLUSION.........................................................................................13

# TABLE OF AUTHORITIES

Page

## CASES

*Czyzewski v. Jevic Holding Corp.*
137 S.Ct. 973, 985 (2017)..................................................................................................9

*Dudley v. Mealey,*
147 F.2d 268, 271 (2d Cir. 1945)........................................................................................8

*In re Adams Apple,*
829 F.2d 1484, 1490 (9th Cir. 1987) ..................................................................................9

*In re Aeolus Down Inc.,*
2011 WL 5509888 (Bankr. C.D. Cal. Nov. 3, 2011)........................................................10

*In re American Suzuki Motor Corporation,*
2012 WL 6650099 (Bankr. C.D. Cal. Nov. 5, 2012)........................................................10

*In re Boston & Me. Corp.,*
634 F.2d 1359, 1382 (1st Cir. 1980)....................................................................................8

*In re Columbia Gas Sys., Inc.,*
136 B.R. 930, 939 (Bankr. D. Del. 1992) ...........................................................................8

*In re CoServ, L.L.C.,*
273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).....................................................................10

*In re Evergreen Oil, Inc.,*
2013 WL 1702279 (Bankr. C.D. Cal. April 9, 2013) .......................................................10

*In re Fall Line Tree Service, Inc.,*
20- 21548 (Bankr. E.D. Cal. 2020) [Docket No. 73] (Subchapter V Case) .....................10

*In re HDOS Enterprises,*
2013 WL 12568280 (Bankr. C.D. Cal. July 26, 2013) .....................................................10

*In re Ionosphere Clubs, Inc.,*
98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ..........................................................................7

*In re ISE Corporation,*
2012 WL 113200 (Bankr. S.D. Cal. Jan. 5, 2012).............................................................10

*In re Just for Feet, Inc.,*
242 B.R. 821, 825 (D. Del. 1999) (citing *In re Penn Central Transp. Co.,*
467 F.2d 100, 102 n.1 (3d Cir. 1972)) .................................................................................7

*In re Kmart Corp.*
359 F.3d 866, 872 (7th Cir. 2004) .......................................................................................9

*In re Lehigh & New Eng. Ry. Co.,*
657 F.2d 570, 581 (3d Cir. 1981).........................................................................................8

3000841

*In re Majestic Towers, Inc.*,
    2011 WL 4520408 (Bankr. C.D. Cal. Sept. 21, 2011)........................................................10

*In re Marchey Group, Inc.*,
    1-24-bk-10326-MB (Bankr. C.D. Cal. 2024) [Docket No. 21] ...........................................9

*In re Shiekh Shoes, LLC*,
    2:17-bk-24626-VZ (Bankr. C.D. Cal. 2017)......................................................................10

*In re Structurelite Plastics Corp.*,
    86 B.R. 922, 931 (Bankr. S. D. Ohio 1988)........................................................................8

*Miltenberger v. Logansport, C. & S. W. Ry. Co.*,
    106 U.S. 286, 312 (1882)....................................................................................................8

## **STATUTES**

11 U.S.C. § 105(a) ....................................................................................................................7

11 U.S.C. § 363(b)(1) ...............................................................................................................7

28 U.S.C. § 1334.......................................................................................................................2

28 U.S.C. § 1408.......................................................................................................................2

28 U.S.C. § 1409.......................................................................................................................2

28 U.S.C. § 157.........................................................................................................................2

28 U.S.C. § 157(b)(2) ...............................................................................................................2

3000841

**TO THE HONORABLE VICTORIA S. KAUFMAN, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, AND ALL PARTIES-IN-INTEREST HEREIN:**

Irwin Naturals, a Nevada corporation and the chapter 11 debtor and debtor in possession herein (the "Debtor" or "Irwin Nevada")[1] hereby submits this motion (the "Motion for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and the "Final Order"), under sections 105(a), 363(b), 503(b)(1)(A), 503(b)(9), 546(c), 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing, but not directing, the Debtor, in its sole discretion, to pay, in the ordinary course of business, the prepetition claims of critical vendors identified by Debtor in Exhibit C hereto (the "Critical Vendors," whose claims shall be identified herein collectively as the "Critical Vendor Claims"), subject to the terms and conditions described herein, in an aggregate amount not to exceed $3,512,281.98; (ii) authorizing financial institutions to honor and process related checks and transfers; and (iii) granting certain related relief.

As set forth more fully below, the Debtor's primary supplier, Robinson Pharma ("RP"), manufactures approximately 90% of its products. The Debtor pays RP approximately $35 million a year and is on thirty (30) day terms with RP. In the ordinary course of business, the Debtor receives inventory from RP on an almost daily basis with invoices generated weekly. The Debtor also pays RP weekly on 30 day terms. If the Debtor does not continue to pay RP in the same manner with which it did pre-petition, RP will stop supplying to the Debtor. In fact, RP has already ceased supplying post-petition to the Debtor pending payment of the invoice that is due this week. The Debtor's customers, among others, include companies such as Costco Canada, Costco US, Walmart, CVS, Sprouts, Whole Foods, Riteaid, Walgreens and Amazon. If the Debtor misses a delivery date to any of the aforementioned customers, the Debtor will lose their business. There are no exceptions. The Debtor has, in the past, attempted to find an alternate supplier but has not been

---

[1]   Orders authorizing the joint administration of the Debtor's chapter 11 case and three affiliates (Irwin Naturals, Inc., Case No. 1:24-bk-11324-VK, 5310 Holdings, LLC, Case No. 1:24-bk-11325-VK, and DAI US HoldCo Inc., Case No. 1:24-bk-11326-VK) were entered on August 14, 2024. This motion only affects the Irwin Nevada debtor which is the operating company.

successful.  While RP is the Debtor's largest supplier, the Debtor is not RP's largest customer and RP is willing to lose the Debtor's business.  The Debtor cannot even go one more week without paying RP on its pre-petition claim as the Debtor has delivery deadlines that it must meet for its customers – including a particularly large Costco order in the next two weeks.  While the Debtor understands and acknowledges that RP's pre-petition claim of $3,110,585.30 seems high, it is only one month of invoices, it is well within the average of what the Debtor pays RP monthly, and the Debtor proposes to pay it in the ordinary course of business (i.e., over the next four weeks).  There is no possibility of the Debtor's business surviving without RP.

The other two critical vendors are transportation and warehousing companies, and each of them has warehouseman and other lien rights in the Debtor's inventory currently held in their respective warehouses and trucks.  TLS Transportation Inc. is owed approximately $24,000 for logistics and approximately $180,000 for warehousing.  Coast Warehouse is owed $186,950.02 and Coast 3PL is owed $10,746.66.  Both TLS and Coast have ceased providing services to the Debtor pending the result of this Motion.  These two companies provide the Debtor with the majority of its logistics and warehousing, and both companies are in possession of the Debtor's inventory.

This Motion is based upon these moving papers, the concurrently filed declaration of Klee Irwin (the "First Day Declaration"), the records and pleadings in this case, the arguments and representations of counsel, and any oral or documentary evidence presented at or prior to the time of the hearing.

## I.    JURISDICTION AND VENUE

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 363(b), 503(b)(1)(A), 503(b)(9), 546(c), 1107(a), and 1108 of the Bankruptcy Code. Such relief is warranted under Rules 6003 and 6004 of the Bankruptcy Rules.

## II.    BACKGROUND FACTS

On August 9, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is authorized to operate its business and manage its

3000841

property and affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code. As of the filing of this Motion, no trustee, examiner, or committee has been

appointed.

    The Debtor, Irwin Naturals ("Irwin Nevada" or the "Debtor") together with its affiliates

identified in footnote 1 above (collectively, the "Debtors") operate a nutraceutical business that has

operated successfully for most of its history since its inception in 1994. Irwin Naturals® products

are distributed in more than 100,000 retail locations, including health food stores such as Whole

Foods, along with mass-market retailers such as Costco, Walmart, and CVS. The Debtors' annual

gross revenue for 2023 was $91 million.

    Additional information detailing the Debtors' operations and the circumstances leading to the

commencement of their chapter 11 cases case are described in greater detail in the First Day

Declaration, which is fully incorporated into this Motion by this reference.

## III.    RELIEF REQUESTED

    By this Motion, the Debtor seeks entry of an order authorizing but not directing the Debtor to

pay, in its sole discretion subject to the limitations described herein, Critical Vendor Claims (or a

portion thereof) in the ordinary course of business. A list of the individual critical vendors is

attached hereto as **Exhibit C**.

    As set forth herein, the Debtor will condition the payment of individual Critical Vendor

Claims on an agreement of the Critical Vendor to continue supplying goods or services to the Debtor

on the same or better terms such Critical Vendors offered the Debtor immediately prior to the

Petition Date or pursuant to such other trade practices and programs that are favorable to the Debtor.

The Debtor reserves the right to negotiate new, more favorable trade terms with any Critical Vendor

as a condition of payment of any Critical Vendor Claim. The Debtor seeks authority to pay Critical

Vendor Claims in an aggregate amount not to exceed $3,512,281.98 which is the total amount of

existing invoices issued by the Critical Vendors listed in Exhibit C as of the Petition Date. The

Debtor proposes to pay these Critical Vendor Claims when funds are available as set forth in the

cash collateral budget over the next four weeks in the ordinary course of business, and pursuant to

any interim or final order entered on this Motion.

3000841

The Debtor also requests that the Court authorize and direct the Debtor's banks and financial institutions to receive, process, honor, and pay all pre-petition and post-petition checks and fund transfers on account of obligations owed to the Critical Vendors and authorize the Debtor's banks and financial institutions to reply on the representations of the Debtor as to which checks and fund transfers should be honored and paid in respect of such obligations, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

## IV.    **THE CRITICAL VENDORS**

### A.  **Payment of the Critical Vendor Claims is Essential to the Debtor's Continued Operations**

The Debtor's business relies on continuing access to and relationships with its Critical Vendors.  By the Motion, and as set forth in Exhibit C, the Debtor seeks approval to pay three Critical Vendors: (1) Robinson Pharma ("RP") in the amount of $3,110,585.30; (2) Coast Warehouse in the amount of $186,950.02 and Coast 3PL in the amount of $10,746.66; and (3) TLS Transportation Co. ("TLS") in the amount of $204,000.    Each of these vendors and service providers are critical to the Debtor's operations and the preservation of the value of the bankruptcy estate. In total, the Debtor believes it owes approximately $3,512,281.98 to these Critical Vendors, which the Debtor proposes to pay in the next four weeks as set forth in its budget attached as Exhibit 1 to the First Day Declaration.  These are all ordinary course payments and represent invoices incurred in the last thirty (30) days.

Robinson Pharma: While the Debtor formulates all of its products in-house, it relies on Robinson Pharma to provide upwards of 90% of the product components and ingredients needed and used to create the Debtor's products – and RP creates the final product.  Simply put, the Debtor cannot operate post-petition without an uninterrupted and steady stream of product from Robinson Pharma, and Robinson Pharma will not ship the Debtor product on terms post-petition unless its Critical Vendor Claim is paid in full.    The Debtor cannot replace Robinson Pharma and obtain the necessary product from another vendor.  The Debtor has sought a back-up replacement for Robinson Pharma several times in the past and was never successful, due to, among other things, a technological issue that Robinson Pharma uniquely resolves. In fact, Robinson Pharma has halted

shipments to the Debtor as of August 13, 2024 and is conditioning resumption of shipments of product to the Debtor on approval of the Motion and payment of its outstanding invoices in the ordinary course of business (including the invoice that is currently due this week).  Without product from Robinson Pharma, the Debtor will not be able to create product post-petition, which will result in its inability to stock the shelves at its major customers including, but not limited to, Walmart, Costco, CVS, Whole Foods and others, which retailers will then "blacklist" the Debtor and no longer sell the Debtor's products. This result would be devastating to the Debtor's business and would likely result in the cessation of business operations.

In addition to critical vendor status, a large portion of the Robinson Pharma claim is subject to: (i) reclamation under section 546(c) of the Bankruptcy Code (as of the Petition Date the Debtor had **$2,419,343.87** of product on hand from Robinson Pharma which it received within 45 days of the Petition Date), and (ii) payment as an administrative claim under section 503(b)(9) of the Bankruptcy Code (within 20 days of the Petition Date the Debtor received **$1,652,343.87** of product from Robinson Pharma in the ordinary course of business). See, **Exhibit D** hereto for detail on the Robinson Pharma product delivered to the Debtor during the 20 days pre-petition,, and still in the Debtor's possession on the petition date.

The Warehouse Logistics Providers:  Two logistics providers who warehouse and transport the vast majority of the Debtor's inventory have asserted possessory warehouseman's liens against the Debtor's inventory stored in their warehouse facilities and in their trucks. The first is Coast Warehouse / Coast 3PL (collectively, "Coast") and the second is TLS Transportation ("TLS").  Both Coast and TLS warehouse and transport inventory of the Debtor, and each of them assert possessory warehouseman's liens against such inventory.  Both Coast and TLS have ceased providing warehousing and transportation services to the Debtor pending approval of this Motion and assurances that their post-petition invoices will be paid in the ordinary course of business.  It is critical to the Debtor's business to have access to and be able to ship this inventory to its customers.  Both Coast and TLS will not release the Debtor's inventory, and their possessory liens, unless the Motion is approved, and payment of their prepetition claims are provided for.

3000841

TLS is owed approximately $24,000 for logistics and approximately $180,000 for warehousing. Coast Warehouse is owed $186,950.02 and Coast 3PL is owed $10,746.66. Both TLS and Coast have ceased providing services to the Debtor pending the result of this Motion.

In light of the foregoing, the Debtor requests authorization to pay the Critical Vendor Claims, subject to the criteria below, because payment of such claims is essential to achieve the Debtor's chapter 11 objectives, continue operations and maximize value for all stakeholders.

**B.    Proposed Terms and Conditions for Payment of Critical Vendor Claims**

In return for paying the Critical Vendor Claims, the Debtor will use commercially reasonable efforts to require the applicable Critical Vendors to continue supplying goods and services to the Debtor on trade terms that are the same or better than the trade terms that existed immediately prior to the Petition Date (the "Customary Trade Terms").

The Debtor also reserves the right to negotiate terms better than the Customary Trade Terms as a condition to payment of any Critical Vendor Claim (the "Negotiated Trade Terms") to the extent the Debtor determines, in its reasonable business judgment, that such terms are necessary to procure essential goods and services or are otherwise in the best interests of the Debtor's estate.

The Debtor may elect to condition the payment of Critical Vendor Claims upon such party's written agreement (each, a "Vendor Agreement") to continue supplying services on Negotiated Trade Terms.

Additionally, the Debtor requests that, if a Critical Vendor accepts payment pursuant to the Interim and Final Orders after agreeing to provide services on Customary Trade Terms or Negotiated Trade Terms, and thereafter does not continue to provide services on such terms (regardless of whether a Vendor Agreement has been executed), (i) any payment on account of a Critical Vendor Claim may be deemed, in the Debtor's reasonable business judgment, to be an improper post-petition transfer and, therefore, recoverable by the Debtor in cash upon written request, and (ii) upon recovery of the payment by the Debtor, the Critical Vendor Claim shall be reinstated as if the payment had not been made. If there exists an outstanding post-petition balance due from the Debtor to such Critical Vendor, the Debtor may elect to recharacterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding post-petition balance, and such

Critical Vendor will be required to repay the Debtor such paid amounts that exceed the post-petition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

## V.  **BASIS FOR RELIEF**

### A.  **The Court Should Authorize the Debtor to Pay the Critical Vendor Claims Pursuant to Sections 105(a) and 363 of the Bankruptcy Code**

The Court may authorize the Debtor to pay the Critical Vendor Claims, in its sole discretion, pursuant to section 363 of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Under this section, a court may authorize a debtor to pay certain prepetition claims where a debtor demonstrates a sound business justification for such relief. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of certain claims).

Additionally, section 105(a) of the Bankruptcy Code empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy courts have invoked the equitable power of section 105 of the Bankruptcy Code to authorize the post-petition payment of prepetition claims of certain vendors, where such payment is necessary to preserve the value of a debtor's estate. *See, e.g.*, *Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks."). Courts have likewise acknowledged that "[u]nder [section] 105, the court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989)); *see In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) (citing *In re Penn Central Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972)) (holding that the court is authorized under section 105(a) of the Bankruptcy Code to allow immediate payment of prepetition claims of vendors found to be critical to the debtor's continued operation).

7

3000841

In a long line of well-established cases, federal courts consistently have permitted post-petition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g.*, *Miltenberger v. Logansport, C. & S. W. Ry. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim permitted to prevent "stoppage of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to [the commencement of the bankruptcy case] is essential to the continued operation of the . . . [business] during [the bankruptcy case], payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases).

This legal principle—known as the "doctrine of necessity"—functions in chapter 11 cases as a mechanism by which a bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See Just for Feet*, 242 B.R. at 826 (finding that "to invoke the necessity of payment doctrine, a debtor must show that payment of the prepetition claims is critical to the debtor's [continued operation]."); *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f payment of a prepetition claim is essential to the continued operation of [the debtor], payment may be authorized"); *In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation). The doctrine is frequently invoked early in a bankruptcy case, particularly in connection with those Bankruptcy Code sections that relate to payment of prepetition claims. In one case, the court indicated its agreement with "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of . . . payment of creditors in full or at least proportionately.'" *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S. D. Ohio 1988).

While the payment of pre-petition obligations to the Critical Vendors may violate ordinary statutory priorities, Courts have approved "critical vendor orders that allow payment of essential

1  suppliers' prepetition invoices". *Czyzewski v. Jevic Holding Corp.* 137 S.Ct. 973, 985 (2017).

2  Violating ordinary statutory priorities by authorizing the payment of the prepetition claims may be

3  necessary to "enable a successful reorganization and even make disfavored creditors better off." *Id.*

4  (citing *In re Kmart Corp.* 359 F.3d 866, 872 (7th Cir. 2004). The Ninth Circuit Court of Appeals has

5  also found that for rehabilitation of a company, prepetition debts can be treated unequally when

6  necessary. *In re Adams Apple,* 829 F.2d 1484, 1490 (9th Cir. 1987).

7       The Debtor believes the goods and services provided by the Critical Vendors are necessary to

8  prevent any calamitous interruptions to the Debtor's operations during the chapter 11 case. Robinson

9  Pharma is the sole source for upwards of 90% of the Debtor's finished manufactured product.

10  Robinson Pharma cannot be replaced.  Robinson Pharma will not ship the Debtor post-petition on

11  terms unless the Motion is approved and provides for payment of its claim.  Moreover, as set forth

12  above, significant portions of the Robinson Pharma claim are allowed and may be paid under

13  sections 503(b)(9) and 546(c) of the Bankruptcy Code.  Likewise, the logistics providers discussed

14  above hold significant inventory of the Debtor and assert possessory warehouseman liens against

15  this inventory, and will not agree to release or continue to store such inventory unless the Motion is

16  approved and provides for payment of their claims.  Only payment of these claims at this time will

17  permit the Debtor to avoid unanticipated interruptions, delays or shutdowns in its operations. As

18  discussed above, payment of the prepetition claims of the Critical Vendors is necessary for the

19  rehabilitation of the Debtor since the goods supplied by the Critical Vendors account for nearly 90%

20  of the Debtor's total sales, without which the Debtor will likely not be able to successfully

21  reorganize. With the Courts approval for the payment of prepetition obligations to the Critical

22  Vendors, the Debtor will be able to obtain the products and inventory needed to enable a successful

23  reorganization.

24       Furthermore, the retention or reinstatement of Customary Trade Terms will enable the

25  Debtor to maximize the value of its business, for the benefit of all stakeholders.

26       Similar relief has become a relatively common practice in business chapter 11 cases,

27  including the following unreported cases in California: *In re Marchey Group, Inc.*, 1-24-bk-10326-

28  MB (Bankr. C.D. Cal. 2024) [Docket No. 21]; *In re Fall Line Tree Service, Inc.,* 20- 21548 (Bankr.

3000841

1  E.D. Cal. 2020) [Docket No. 73] (Subchapter V Case); *In re Sheikh Shoes, LLC,* 2:17-bk-24626-VZ

2  (Bankr. C.D. Cal. 2017) [Docket No. 73]; *In re HDOS Enterprises,* 2013 WL 12568280 (Bankr.

3  C.D. Cal. July 26, 2013); *In re Evergreen Oil, Inc.,* 2013 WL 1702279 (Bankr. C.D. Cal. April 9,

4  2013); *In re American Suzuki Motor Corporation,* 2012 WL 6650099 (Bankr. C.D. Cal. Nov. 5,

5  2012); *In re ISE Corporation,* 2012 WL 113200 (Bankr. S.D. Cal. Jan. 5, 2012); *In re Majestic*

6  *Towers, Inc.,* 2011 WL 4520408 (Bankr. C.D. Cal. Sept. 21, 2011); *In re Aeolus Down Inc.,* 2011

7  WL 5509888 (Bankr. C.D. Cal. Nov. 3, 2011).

8      Accordingly, the preservation and protection of the Debtor's business through ongoing

9  relationships with the Critical Vendors provides a sufficient business justification for payment of the

10  Critical Vendor Claims, even if such payments were deemed to be outside the ordinary course of

11  business. *See, Ionosphere Clubs,* 98 B.R. at 17. The Debtor, therefore, seeks authorization under

12  sections 105(a) and 363(b) of the Bankruptcy Code to pay the Critical Vendor Claims.

13      **B.  <u>The Court Should Authorize Payment of the Critical Vendor Claims as a Valid</u>**

14      **<u>Exercise of the Debtor's Fiduciary Duties Under Sections 1107(a) and 1108 of the</u>**

15      **<u>Bankruptcy Code</u>**

16      Authority for the relief requested herein may also be found in sections 1107(a) and 1108 of

17  the Bankruptcy Code. The Debtor, operating its business as a debtor in possession under sections

18  1107(a) and 1108, is a fiduciary "holding the bankruptcy estate[s] and operating the business[es] for

19  the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ,* L.L.C., 273

20  B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is

21  the duty "to protect and preserve the estate, including an operating business's going-concern value."

22  Id.

23      Courts have noted that there are instances in which a debtor in possession can fulfill its

24  fiduciary duty "only . . . by the preplan satisfaction of a pre-petition claim." Id. The *CoServ* court

25  specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a

26  debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of

27  the estate," and also when the payment was to "sole suppliers of a given product." Id. at 497-98. The

28

10

court provided a three-pronged test for determining whether a preplan payment on account of a

prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's pre-petition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.*

Here, the Debtor's request for authorization to pay the Critical Vendor Claims, as set forth

herein, meets each element of the *CoServ* court's standard. As described above, the Debtor believes

that, unless the Critical Vendor Claims are paid, Critical Vendors will refuse (and continue to

refuse), or be unable, to provide services to the Debtor on a post-petition basis, thereby creating the

significant risk that the Debtor will experience an interruption to or shut down of its operations. Any

such interruption would diminish, even possibly destroy, estate value and frustrate the Debtor's

chapter 11 efforts. The Debtor submits that the harm and economic disadvantage that would stem

from the failure of the Critical Vendors to provide the required goods and services necessary to

operate the Debtor's business is wholly disproportionate to the amount of the Critical Vendor

Claims.

Finally, the Debtor has examined other options short of seeking authority to pay the Critical

Vendor Claims and has determined that, in order to avoid an interruption to its business operations,

there exists no practical alternative. Therefore, the Debtor can only meet its fiduciary duty as a

debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code if authorized to pay

the Critical Vendor Claims, in its discretion, as provided herein and in the Interim and Final Orders.

Accordingly, for all of the foregoing reasons, the Debtor submits that cause exists for

granting the relief requested herein.

### C.  Processing of Checks and Electronic Fund Transfers Should be Authorized

The Debtor has or otherwise will generate sufficient funds to pay any amounts described in

this Motion in the ordinary course of business by virtue of expected cash flows from ongoing

3000841

business operations. In addition, under the Debtor's existing cash management system, the Debtor can readily identify checks or wire transfer requests relating to an authorized payment in respect of the Critical Vendor Claims. Accordingly, the Debtor believes there is minimal risk that checks or wire transfer requests that the Court has not authorized will be inadvertently made. Therefore, the Debtor respectfully requests that the Court authorize all applicable financial institutions, when requested by the Debtor, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### D.  The Orders Should Be Effective Immediately

Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Debtor submits that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor.

The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h): "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtor's otherwise profitable operations. Thus, the relief sought in this Motion is appropriate under these circumstances.

## VI.    NOTICE

The Debtor will serve this Motion, the concurrently filed notice of hearing and the First Day Declaration on the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) the largest twenty unsecured creditors appearing on the list filed in accordance with Bankruptcy Rule 1007(d) by the Debtor; (c) all known secured creditors; and (d) parties that file with the Court and serve upon the Debtor requests for notice of all matters in accordance with Bankruptcy Rule 2002. In the event that the Court grants the relief requested by the Motion, the Debtor shall provide notice of the entry of the Interim Order and Final Order upon each of the foregoing parties and any other parties in interest as the Court directs. The Debtor submits that such notice is sufficient, and that no other or further notice need be given.

3000841

**VII.    RESERVATION OF RIGHTS**

Nothing contained herein is or should be construed as: (i) an admission as to the validity of any claim against the Debtor or the existence of any lien against the Debtor's assets; (ii) a waiver of the Debtor's rights to dispute any claim or lien on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim would constitute an allowed claim; (v) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or (vi) a limitation on the Debtor's right under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to the Interim and Final Orders. Nothing contained in the Interim and Final Orders shall be deemed to increase, decrease, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

**VIII.    CONCLUSION**

Based upon the foregoing, the Debtor respectfully requests that the Court enter the proposed Interim Order and the proposed Final Order, substantially in the form attached hereto, granting the relief requested in this Motion and such other and further relief as may be just and proper.

DATED:  August 15, 2024                    Respectfully submitted,

BG Law LLP

By: /s/ Susan K. Seflin
     David M. Poitras
     Susan K. Seflin
     Jessica S. Wellington
Proposed Attorneys for Chapter 11
Debtor and Debtor in Possession

3000841

# EXHIBIT A

DAVID M. POITRAS – Bar No. 141309
SUSAN K. SEFLIN - Bar No. 213865
JESSICA S. WELLINGTON - Bar No. 324477
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:   (818) 827-9000
Facsimile:   (818) 827-9099
Email:       dpoitras@bg.law
             sseflin@bg.law
             jwellington@bg.law

Proposed Attorneys for Chapter 11 Debtors and
Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>Irwin Naturals *et al.*,<br><br>            Debtors and Debtors<br>            in Possession. | Case No. 1:24-bk-11323-VK<br><br>Chapter 11<br><br>(Jointly Administered with:<br><br>Case Nos. 1:24-bk-11324-VK, 1:24-bk-11325, and 1:24-bk-11326-VK) |
| ☒   Affects Irwin Naturals<br><br>☐   Affects Irwin Naturals Inc.<br><br>☐   Affects 5310 Holdings, LLC<br><br>☐   Affects DAI US HoldCo Inc.<br><br>☐   Affects All Debtors | **INTERIM ORDER: (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS; (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS; AND (III) GRANTING RELATED RELEIF**<br><br>**Hearing:**<br>Date:    August 16, 2024<br>Time:    1:30 p.m.<br>Place:   Courtroom 301<br>           21041 Burbank Blvd<br>           Woodland Hills, CA 91367 |

**Exhibit A_001**

On the above captioned date and time, the court considered the Emergency Motion for Entry of Interim and Final Orders: (I) Authorizing the Debtor to Pay Certain Prepetition Claims of Critical Vendors; (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers; and (III) Related Relief [Docket No. __ ] (the "Motion") filed by chapter 11 debtor and debtor in possession Irwin Naturals (the "Debtor") pursuant to sections 105(a), 363(b), 503(b)(1)(A), 503(b)(9), 546(c), 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Motion.

Based upon the Court's review of the Motion, the First Day Declaration, the evidentiary record, and argument of counsel; it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; it appearing that due and adequate notice of the Motion having been given under the circumstances; and after due deliberation and good cause appearing therefor, based upon findings of fact and conclusions of law stated in open court pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, as incorporated into Bankruptcy Rule 7052 and applied to contested matters by Bankruptcy Rule 9014(c),

IT IS ORDERED THAT:

1.    The Motion is GRANTED on an interim basis as set forth herein.

2.    The Debtor is authorized, but not directed, in its sole discretion, to honor, pay, or otherwise satisfy amounts on account of Critical Vendor Claims; provided, however, that such payments shall not exceed $_____ in the aggregate, unless otherwise ordered by this Court.

3.    The Debtor is authorized, but not directed, to condition the payment of Critical Vendor Claims upon such Critical Vendor's agreement (a "Vendor Agreement") to continue supplying goods and services to the Debtor on trade terms that are the same as, or better than, the terms such Critical Vendors offered the Debtor's businesses immediately prior to the Petition Date (the

**Exhibit A_002**

"Customary Trade Terms"). In the alternative, the Debtor may negotiate trade terms with any

Critical Vendor as a condition to payment of any Critical Vendor Claim that vary from the

Customary Trade Terms (the "Negotiated Trade Terms"), but only (a) to the extent the Debtor

determines, in its reasonable business judgment that such terms are necessary to procure essential

services or are otherwise in the best interests of the Debtor's estate.

4.    If a Critical Vendor accepts payment pursuant to this Interim Order after agreeing to

provide services on Customary Trade Terms or Negotiated Trade Terms, and thereafter does not

continue to provide services on such terms (regardless of whether a Vendor Agreement has been

executed), then (i) any payment on account of a Critical Vendor Claim may be deemed, in the

Debtor's reasonable business judgment and subject to a determination by the Court, to be an

improper post-petition transfer and, therefore, recoverable by the Debtor in cash upon written

request, and (ii) upon recovery of the payment by the Debtor, the Critical Vendor Claim shall be

reinstated as if the payment had not been made. If there exists an outstanding post-petition balance

due from the Debtor to a Critical Vendor, the Debtor may elect to recharacterize and apply any

payment made pursuant to this Interim Order to such outstanding post-petition balance, and the

Debtor may then take any and all appropriate steps to cause such Critical Vendor to repay payments

made to it on account of its prepetition claim to the extent that such payments exceed the post-

petition amounts then owing to such Critical Vendor.

5.    The Debtor is authorized, but not directed, to condition the honoring, payment, or other

satisfaction of any Critical Vendor Claim on the execution of a Vendor Agreement, and the Debtor is

authorized, but not directed, to enter into such Vendor Agreements when and if the Debtor

determines it appropriate, in its business judgment.

6.    Any Critical Vendor that accepts payment or other form of satisfaction from the Debtor

on account of all or a portion of a Critical Vendor Claim pursuant to this Interim Order shall be

deemed to (a) agree to the terms and provisions of this Interim Order and (b) have waived, to the

**Exhibit A_003**

extent so paid or satisfied, any and all prepetition claims, of any type, kind, or priority (including any

reclamation claim), against the Debtor, its estate, and its assets and properties.

7. The banks and financial institutions on which checks were drawn or electronic payment

requests were made in payment of the prepetition obligations approved herein are authorized to

receive, process, honor, pay and, if necessary, reissue all such checks and electronic payment

requests, including prepetition checks and electronic payment and transfer requests that the Debtor

reissue or re-requests post-petition, when presented for payment, and all such banks and financial

institutions are authorized to rely on the Debtor's designation of any particular check or electronic

payment request as approved by this Interim Order.

8. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to

such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the amount of, basis

for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable non-

bankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any

claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that

any particular claim is of a type specified or defined in the Motion; (e) a request or authorization to

assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy

Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on,

security interest in, or other encumbrance on property of the Debtor's estate; or (g) a waiver of any

claims or causes of action which may exist against any entity under the Bankruptcy Code or any

other applicable law. Any payment made pursuant to this Interim Order is not intended and should

not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's

right to subsequently dispute such claim.

9. The amount of each Critical Vendor's claims set forth in connection with a Vendor

Agreement shall be used only for purposes of determining such Critical Vendor's claim under this

Interim Order and shall not be deemed a claim allowed by the Court, and the rights of all interested

persons to object to the allowance of such claim shall be fully preserved until further order of the Court. Further, signing a Vendor Agreement containing a claim amount for purposes of this Interim Order shall not excuse such Critical Vendor from filing a proof of claim in these cases.

10.   No claimant who receives payment in full on account of a Critical Vendor Claim is permitted to file or perfect a lien on account of such claim, and any such claimant shall take all necessary action, at its expense, to remove any existing lien relating to such claim.

11.   Nothing in the Motion or this Interim Order, nor the Debtor's implementation of the relief granted in this Interim Order, shall be deemed to modify or waive any of the Debtor's rights with respect to goods and services requested or received from the Critical Vendors, including the Debtor's rights to (a) cancel a purchase order, (b) decline the acceptance of goods and services, (c) return any defective, nonconforming or unacceptable good, or (d) contest the amount of any invoice or claims, or liens related thereto, on any grounds.

12.   Notwithstanding the relief granted in this Interim Order, any payment made by the Debtor pursuant to the authority granted herein shall be subject to any order authorizing the Debtor to obtain use of cash collateral.

13.   The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

14.   Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

15.   The Debtor is authorized to take all actions necessary to implement the relief granted in this Order.

16.   A hearing to consider entry of an order granting the Motion on a final basis (the "Final Hearing") shall be held on _____, 2024, at __:____ _.m. (prevailing Pacific time). Any objections or responses to the entry of such an order must be filed on or before 4:00 p.m. (prevailing Pacific time) on _____, 2024, and served on (a) proposed counsel to the Debtor, BG Law LLP,

**Exhibit A_005**

Attn: David M. Poitras (dpoitras@bg.law) and Susan K. Seflin (sseflin@bg.law) and (b) the Office

of the United States Trustee for the Central District of California, 915 Wilshire Blvd., Suite 1850.

Los Angeles, California 90017, Attn: Katherine C. Bunker (kate.bunker@usdoj.gov). If no

objections or responses are filed and served, this Court may enter a final order without further notice

or hearing.

    17.   This Court shall retain jurisdiction with respect to all matters arising from or related to

the implementation, interpretation, or enforcement of this Order.

**Exhibit A_006**

# EXHIBIT B

DAVID M. POITRAS – Bar No. 141309
SUSAN K. SEFLIN - Bar No. 213865
JESSICA S. WELLINGTON - Bar No. 324477
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:   (818) 827-9099
Email:      dpoitras@bg.law
            sseflin@bg.law
            jwellington@bg.law

Proposed Attorneys for Chapter 11 Debtors and
Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:24-bk-11323-VK |
| Irwin Naturals *et al.*, | Chapter 11 |
| Debtors and Debtors in Possession. | (Jointly Administered with: |
| | Case Nos. 1:24-bk-11324-VK, 1:24-bk-11325, and 1:24-bk-11326-VK) |

☒   Affects Irwin Naturals

☐   Affects Irwin Naturals Inc.

☐   Affects 5310 Holdings, LLC

☐   Affects DAI US HoldCo Inc.

☐   Affects All Debtors

**FINAL ORDER: (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS; (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS; AND (III) GRANTING RELATED RELEIF**

**Hearing:**
Date:     August 16, 2024
Time:     1:30 p.m.
Place:    Courtroom 301
          21041 Burbank Blvd
          Woodland Hills, CA 91367

**Exhibit B_001**

On the above captioned date and time, the court considered the Emergency Motion for Entry of Interim and Final Orders: (I) Authorizing the Debtor to Pay Certain Prepetition Claims of Critical Vendors; (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers; and (III) Related Relief [Docket No. __ ] (the "Motion") filed by Debtor and Debtor in Possession Irwin Naturals (the "Debtor") pursuant to sections 105(a), 363(b), 503(b)(1)(A), 503(b)(9), 546(c), 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Motion. Based upon the Court's review of the Motion, the First Day Declaration, the evidentiary record, and argument of counsel; it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; it appearing that due and adequate notice of the Motion having been given under the circumstances; and after due deliberation and good cause appearing therefor, based upon findings of fact and conclusions of law stated in open court pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, as incorporated into Bankruptcy Rule 7052 and applied to contested matters by Bankruptcy Rule 9014(c),

IT IS ORDERED THAT:

1.    The Motion is GRANTED on a final basis as set forth herein.

2.    The Debtor is authorized, but not directed, in its sole discretion, to honor, pay, or otherwise satisfy amounts on account of Critical Vendor Claims; provided, however, that such payments shall not exceed $X in the aggregate, unless otherwise ordered by this Court.

3.    The Debtor is authorized, but not directed, to condition the payment of Critical Vendor Claims upon such Critical Vendor's agreement (a "Vendor Agreement") to continue supplying goods and services to the Debtor on trade terms that are the same as, or better than, the terms such Critical Vendors offered the Debtor's businesses immediately prior to the Petition Date (the "Customary Trade Terms"). In the alternative, the Debtor may negotiate trade terms with any Critical Vendor as a condition to payment of any Critical Vendor Claim that vary from the Customary Trade Terms (the "Negotiated Trade Terms"), but only (a) to the extent the Debtor

**Exhibit B_002**

determines, in its reasonable business judgment that such terms are necessary to procure essential

services or are otherwise in the best interests of the Debtor's estate.

4. If a Critical Vendor accepts payment pursuant to this Final Order after agreeing to

provide services on Customary Trade Terms or Negotiated Trade Terms, and thereafter does not

continue to provide services on such terms (regardless of whether a Vendor Agreement has been

executed), then (i) any payment on account of a Critical Vendor Claim may be deemed, in the

Debtor's reasonable business judgment and subject to a determination by the Court, to be an

improper post-petition transfer and, therefore, recoverable by the Debtor in cash upon written

request, and (ii) upon recovery of the payment by the Debtor, the Critical Vendor Claim shall be

reinstated as if the payment had not been made. If there exists an outstanding post-petition balance

due from the Debtor to a Critical Vendor, the Debtor may elect to recharacterize and apply any

payment made pursuant to this Final Order to such outstanding post-petition balance, and the Debtor

may then take any and all appropriate steps to cause such Critical Vendor to repay payments made to

it on account of its prepetition claim to the extent that such payments exceed the post-petition

amounts then owing to such Critical Vendor.

5. The Debtor is authorized, but not directed, to condition the honoring, payment, or other

satisfaction of any Critical Vendor Claim on the execution of a Vendor Agreement, and the Debtor is

authorized, but not directed, to enter into such Vendor Agreements when and if the Debtor

determines it appropriate, in its business judgment.

6. Any Critical Vendor that accepts payment or other form of satisfaction from the Debtor

on account of all or a portion of a Critical Vendor Claim pursuant to this Final Order shall be

deemed to (a) agree to the terms and provisions of this Final Order and (b) have waived, to the extent

so paid or satisfied, any and all prepetition claims, of any type, kind, or priority (including any

reclamation claim), against the Debtor, its estate, and its assets and properties.

7. The banks and financial institutions on which checks were drawn or electronic payment

requests were made in payment of the prepetition obligations approved herein are authorized to

receive, process, honor, pay and, if necessary, reissue all such checks and electronic payment

requests, including prepetition checks and electronic payment and transfer requests that the Debtor

**Exhibit B_003**

reissue or re-requests post-petition, when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Final Order.

8.    Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law. Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's right to subsequently dispute such claim.

9.    The amount of each Critical Vendor's claims set forth in connection with a Vendor Agreement shall be used only for purposes of determining such Critical Vendor's claim under this Final Order and shall not be deemed a claim allowed by the Court, and the rights of all interested persons to object to the allowance of such claim shall be fully preserved until further order of the Court. Further, signing a Vendor Agreement containing a claim amount for purposes of this Final Order shall not excuse such Critical Vendor from filing a proof of claim in these cases.

10.    No claimant who receives payment in full on account of a Critical Vendor Claim is permitted to file or perfect a lien on account of such claim, and any such claimant shall take all necessary action, at its expense, to remove any existing lien relating to such claim.

11.    Nothing in the Motion or this Final Order, nor the Debtor's implementation of the relief granted in this Final Order, shall be deemed to modify or waive any of the Debtor's rights with respect to goods and services requested or received from the Critical Vendors, including the

**Exhibit B_004**

Debtor's rights to (a) cancel a purchase order, (b) decline the acceptance of goods and services, (c) return any defective, nonconforming or unacceptable good, or (d) contest the amount of any invoice or claims, or liens related thereto, on any grounds.

12.    Notwithstanding the relief granted in this Final Order, any payment made by the Debtor pursuant to the authority granted herein shall be subject to any order authorizing the Debtor to obtain use of cash collateral.

13.    The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

14.    Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

15.    The Debtor is authorized to take all actions necessary to implement the relief granted in this Order.

16.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

###

# EXHIBIT C

## **EXHIBIT C**

## **Critical Vendors**

1. Robinson Pharma
2. Haddy Warehousing dba Coast Warehouse / Coast Transportation dba Coast 3PL
3. TLS Transportation Services, Inc.

**Exhibit C_001**

# EXHIBIT D

1:17 PM
08/09/24
Accrual Basis

Case 1:24-bk-11323-VK    Doc 18    Filed 08/15/24    Entered 08/15/24 10:46:57    Desc
Main Document    Page 34 of 36

ROBINSON PHARMA, INC.
Customer Open Balance
All Transactions

| Type | Date | Num | P. O. # | Due Date | Open Balance | On Hand $ |
|---|---|---|---|---|---|---|
| Invoice | 07/15/2024 | 162942 | 26495 | 08/14/2024 | 44,103.78 | $ 42,493.50 |
| Invoice | 07/15/2024 | 162943 | 26363 | 08/14/2024 | 61,181.14 | $ 42,026.62 |
| Invoice | 07/15/2024 | 162944 | 26357 | 08/14/2024 | 69,793.50 | $ - |
| Invoice | 07/15/2024 | 162945 | 26357 | 08/14/2024 | 24,702.00 | $ 19,057.80 |
| Invoice | 07/16/2024 | 162946 | 26453 | 08/15/2024 | 108,201.50 | $ 108,201.50 |
| Invoice | 07/16/2024 | 162947 | 26453 | 08/15/2024 | 47,663.20 | $ - |
| Invoice | 07/16/2024 | 162948 | 26453 | 08/15/2024 | 22,532.48 | $ 22,532.48 |
| Invoice | 07/16/2024 | 162949 | 26409A | 08/15/2024 | 48,414.65 | $ 48,414.65 |
| Invoice | 07/16/2024 | 162950 | 26409A | 08/15/2024 | 40,449.00 | $ 36,028.80 |
| Invoice | 07/16/2024 | 162955 | 26404 | 08/15/2024 | 62,435.34 | $ 30,143.34 |
| Invoice | 07/16/2024 | 162956 | 26424 | 08/15/2024 | 36,279.36 | $ 15,622.32 |
| Invoice | 07/16/2024 | 162958 | 26409A | 08/15/2024 | 32,738.76 | $ 32,738.76 |
| Invoice | 07/17/2024 | 162982 | 26364 | 08/16/2024 | 60,484.23 | $ 28,301.31 |
| Invoice | 07/17/2024 | 162983 | 26410 | 08/16/2024 | 28,281.12 | $ 28,281.12 |
| Invoice | 07/17/2024 | 162984 | 26410 | 08/16/2024 | 55,301.40 | $ 55,301.40 |
| Invoice | 07/17/2024 | 162985 | 26396 | 08/16/2024 | 15,636.60 | $ 15,636.60 |
| Invoice | 07/17/2024 | 162986 | 26415 | 08/16/2024 | 40,191.48 | $ 40,191.48 |
| Invoice | 07/17/2024 | 162987 | 26442 | 08/16/2024 | 84,480.84 | $ 64,826.64 |
| Invoice | 07/17/2024 | 162988 | 26442 | 08/16/2024 | 49,480.82 | $ 49,480.82 |
| Invoice | 07/17/2024 | 162989 | 26442 | 08/16/2024 | 17,448.72 | $ 17,448.72 |
| Invoice | 07/17/2024 | 162990 | 26357 | 08/16/2024 | 9,729.00 | $ 9,729.00 |
| Invoice | 07/17/2024 | 162991 | 26414 | 08/16/2024 | 33,365.82 | $ 33,365.82 |
| Invoice | 07/18/2024 | 163014 | 26472 | 08/17/2024 | 20,322.36 | $ - |
| Invoice | 07/18/2024 | 163015 | 26396 | 08/17/2024 | 119,077.90 | $ 119,077.90 |
| Invoice | 07/19/2024 | 163084 | 26394 | 08/18/2024 | 109,670.22 | $ 109,670.22 |
| Invoice | 07/19/2024 | 163085 | 26396 | 08/18/2024 | 19,623.60 | $ 19,623.60 |
| Invoice | 07/19/2024 | 163086 | 26438 | 08/18/2024 | 26,254.80 | $ 26,254.80 |
| Invoice | 07/19/2024 | 163087 | 26438 | 08/18/2024 | 22,508.64 | $ 22,508.64 |
| **Invoice** | **07/19/2024** | **163088** | **26430** | **08/18/2024** | **148,136.58** | **$ 85,324.68** |
| Invoice | 07/22/2024 | 163099 | 26402 | 08/21/2024 | 22,536.91 | $ 21,255.19 |
| Invoice | 07/22/2024 | 163100 | 26402 | 08/21/2024 | 13,639.68 | $ 13,639.68 |
| Invoice | 07/22/2024 | 163101 | 26402 | 08/21/2024 | 53,466.00 | $ 5,586.00 |
| Invoice | 07/23/2024 | 163117 | 26449 | 08/22/2024 | 35,076.60 | $ 35,076.60 |
| Invoice | 07/23/2024 | 163118 | 26432 | 08/22/2024 | 62,226.60 | $ 45,088.20 |
| Invoice | 07/23/2024 | 163119 | 26303 | 08/22/2024 | 3,038.04 | $ 3,038.04 |
| Invoice | 07/23/2024 | 163120 | 26437A | 08/22/2024 | 13,107.70 | $ 13,107.70 |
| Invoice | 07/24/2024 | 163148 | 26403 | 08/23/2024 | 44,541.90 | $ 37,042.11 |
| Invoice | 07/24/2024 | 163149 | 26408 | 08/23/2024 | 48,990.00 | $ 48,824.40 |
| Invoice | 07/24/2024 | 163150 | 26450 | 08/23/2024 | 41,704.00 | $ 28,788.00 |
| Invoice | 07/25/2024 | 163184 | 26398 | 08/24/2024 | 4,170.00 | $ - |
| Invoice | 07/25/2024 | 163185 | 26437A | 08/24/2024 | 50,445.00 | $ 50,445.00 |
| Invoice | 07/25/2024 | 163186 | 26419 | 08/24/2024 | 64.92 | $ - |
| Invoice | 07/26/2024 | 163255 | 26484 | 08/25/2024 | 57,822.10 | $ 57,822.10 |
| Invoice | 07/26/2024 | 163256 | 26398 | 08/25/2024 | 4,170.00 | $ - |
| Invoice | 07/26/2024 | 163257 | 26360 | 08/25/2024 | 5,401.76 | $ 5,401.76 |
| Invoice | 07/26/2024 | 163258 | 26440 | 08/25/2024 | 73,551.85 | $ 73,551.85 |
| Invoice | 07/26/2024 | 163259 | 26440 | 08/25/2024 | 28,856.40 | $ 28,856.40 |
| **Invoice** | **07/26/2024** | **163260** | **26411** | **08/25/2024** | **56.40** | **$ -** |
| Invoice | 07/29/2024 | 163273 | 26419 | 08/28/2024 | 114,984.14 | $ 109,011.50 |
| Invoice | 07/29/2024 | 163274 | 26398 | 08/28/2024 | 4,236.72 | $ 4,236.72 |
| Invoice | 07/29/2024 | 163275 | 26447A | 08/28/2024 | 40,077.72 | $ 40,077.72 |

**Exhibit D_001**

Case 1:24-bk-11323-VK   Doc 18   Filed 08/15/24   Entered 08/15/24 10:46:57   Desc
Main Document   Page 35 of 36

ROBINSON PHARMA, INC.
Customer Open Balance
All Transactions

| Type | Date | Num | P. O. # | Due Date | Open Balance | On Hand $ |
|------|------|-----|---------|----------|-------------:|----------:|
| Invoice | 07/29/2024 | 163276 | 26548 | 08/28/2024 | 31,948.50 | $ 31,948.50 |
| Invoice | 07/29/2024 | 163277 | 26395 | 08/28/2024 | 73,452.60 | $ 73,452.60 |
| Invoice | 07/29/2024 | 163278 | 26433 | 08/28/2024 | 71.04 | $ - |
| Invoice | 07/29/2024 | 163279 | 26413 | 08/28/2024 | 55.08 | $ - |
| Invoice | 07/29/2024 | 163280 | 26395 | 08/28/2024 | 56.16 | $ - |
| Invoice | 07/29/2024 | 163281 | 26548 | 08/28/2024 | 57.00 | $ - |
| Invoice | 07/29/2024 | 163282 | 26447A | 08/28/2024 | 46.44 | $ - |
| Invoice | 07/29/2024 | 163295 | TESTING - 6/24 | 08/28/2024 | 74,865.00 | |
| Invoice | 07/30/2024 | 163296 | 26398 | 08/29/2024 | 4,203.36 | $ - |
| Invoice | 07/30/2024 | 163297 | 26433 | 08/29/2024 | 52,374.24 | $ 50,669.28 |
| Invoice | 07/31/2024 | 163342 | 26508 | 08/30/2024 | 56.88 | $ - |
| Invoice | 07/31/2024 | 163343 | 26494 | 08/30/2024 | 47.28 | $ - |
| Invoice | 07/31/2024 | 163344 | 26485 | 08/30/2024 | 47.04 | $ - |
| Invoice | 07/31/2024 | 163345 | 26445 | 08/30/2024 | 34.44 | $ - |
| Invoice | 07/31/2024 | 163346 | 26445 | 08/30/2024 | 40,880.28 | $ 40,880.28 |
| Invoice | 07/31/2024 | 163347 | 26411 | 08/30/2024 | 98,700.00 | $ 90,136.60 |
| Invoice | 07/31/2024 | 163348 | 26398 | 08/30/2024 | 4,203.36 | $ - |
| Invoice | 08/01/2024 | 163364 | 26487 | 08/31/2024 | 47.40 | $ - |
| Invoice | 08/01/2024 | 163365 | 26405 | 08/31/2024 | 80.16 | $ - |
| Invoice | 08/01/2024 | 163366 | 26405 | 08/31/2024 | 54,983.08 | $ 54,976.40 |
| Invoice | 08/01/2024 | 163368 | 26398 | 08/31/2024 | 4,203.36 | $ - |
| Invoice | 08/01/2024 | 163369 | 26445 | 08/31/2024 | 16,743.58 | |
| Invoice | 08/02/2024 | 163386 | 26520 | 09/01/2024 | 63.84 | $ - |
| Invoice | 08/02/2024 | 163387 | 26413 | 09/01/2024 | 110.16 | $ - |
| Invoice | 08/02/2024 | 163388 | 26441 | 09/01/2024 | 79.68 | $ - |
| Invoice | 08/02/2024 | 163389 | 26500 | 09/01/2024 | 50.76 | $ - |
| Invoice | 08/02/2024 | 163390 | 26398 | 09/01/2024 | 9,507.60 | $ 9,507.60 |
| Invoice | 08/02/2024 | 163391 | 26459 | 09/01/2024 | 20,462.40 | $ 20,358.53 |
| Invoice | 08/02/2024 | 163392 | 26508 | 09/01/2024 | 35,597.40 | $ 35,597.40 |
| **Invoice** | **08/02/2024** | **163393** | **26447A** | **09/01/2024** | **5,015.52** | **$ 5,015.52** |
| Invoice | 08/05/2024 | 163397 | 26520 | 09/04/2024 | 63.84 | $ - |
| Invoice | 08/05/2024 | 163398 | 26443 | 09/04/2024 | 51.84 | $ - |
| Invoice | 08/05/2024 | 163399 | 26443 | 09/04/2024 | 51.84 | $ - |
| Invoice | 08/05/2024 | 163400 | 26444 | 09/04/2024 | 57.24 | $ - |
| Invoice | 08/05/2024 | 163401 | 26349A | 09/04/2024 | 88,851.35 | $ 17,974.10 |
| Invoice | 08/05/2024 | 163402 | 26494 | 09/04/2024 | 28,537.42 | $ - |
| Invoice | 08/06/2024 | 163428 | 26446 | 09/05/2024 | 64.20 | $ - |
| Invoice | 08/06/2024 | 163429 | 26398 | 09/05/2024 | 16.68 | $ - |
| Invoice | 08/06/2024 | 163430 | 26398 | 09/05/2024 | 8,670.82 | $ 8,537.38 |
| Invoice | 08/06/2024 | 163431 | 26349A | 09/05/2024 | 11,118.00 | $ - |
| Invoice | 08/06/2024 | 163432 | 26409A | 09/05/2024 | 10,419.18 | $ 10,419.18 |
| Invoice | 08/07/2024 | 163437 | 26448 | 09/06/2024 | 90.12 | $ - |
| Invoice | 08/07/2024 | 163438 | 26448 | 09/06/2024 | 169.80 | $ - |
| Invoice | 08/07/2024 | 163439 | 26431 | 09/06/2024 | 66.84 | $ - |
| Invoice | 08/07/2024 | 163440 | 26349A | 09/06/2024 | 11,118.00 | $ - |
| Invoice | 08/07/2024 | 163441 | 26441 | 09/06/2024 | 20,298.48 | $ 20,298.48 |
| Invoice | 08/07/2024 | 163442 | 26500 | 09/06/2024 | 44,021.61 | $ 43,514.01 |
| Invoice | 08/07/2024 | 163443 | 26485 | 09/06/2024 | 33,680.64 | $ 33,680.64 |
| Invoice | 08/08/2024 | 163474 | 26520 | 09/07/2024 | 14,108.64 | $ 14,108.64 |
| Invoice | 08/08/2024 | 163476 | 26402 | 09/07/2024 | 28,472.64 | $ 28,472.64 |
| Invoice | 08/08/2024 | 163477 | 26487 | 09/07/2024 | 42,438.80 | $ 42,438.80 |

**Exhibit D_002**

ROBINSON PHARMA, INC.
Customer Open Balance
All Transactions

| Type | Date | Num | P. O. # | Due Date | Open Balance | On Hand $ |
|------|------|-----|---------|----------|-------------:|----------:|
| Invoice | 08/08/2024 | 163478 | 26431 | 09/07/2024 | 47,835.16 | $  44,225.80 |
| Invoice | 08/08/2024 | 163479 | 26349A | 09/07/2024 | 11,118.00 | $  - |
| Invoice | 08/08/2024 | 163480 | 26402 | 09/07/2024 | 63.84 | $  - |
| Invoice | 08/08/2024 | 163481 | 26481 | 09/07/2024 | 44.88 | $  - |
| Invoice | 08/08/2024 | 163482 | 26481 | 09/07/2024 | 86.16 | $  - |
| Invoice | 08/08/2024 | 163483 | 26481 | 09/07/2024 | 47.28 | $  - |
| Invoice | 08/09/2024 | 163521 | 26510 | 09/08/2024 | 82.92 | $  - |
| Invoice | 08/09/2024 | 163522 | 26480 | 09/08/2024 | 81.96 | $  - |
| **Invoice** | **08/09/2024** | **163523** | **26480** | **09/08/2024** | **160.20** | $  - |
|  |  |  |  |  | 3,110,585.30 | $  **2,419,343.87** |
|  |  |  |  |  | 3,110,585.30 |  |

**Product delivered after July 20, 2024**                1,652,096.46

**Exhibit D_003**