DAVID M. POITRAS – Bar No. 141309
SUSAN K. SEFLIN - Bar No. 213865
JESSICA S. WELLINGTON - Bar No. 324477
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:   (818) 827-9099
Email:       dpoitras@bg.law
             sseflin@bg.law
             jwellington@bg.law

Proposed Attorneys for Chapter 11 Debtors and Debtors in Possession

**FILED & ENTERED**

**AUG 22 2024**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** Cetulio    **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>Irwin Naturals *et al.*,<br><br>　　　　　Debtors and Debtors in Possession.<br><br>☒ Affects Irwin Naturals<br>☐ Affects Irwin Naturals Inc.<br>☐ Affects 5310 Holdings, LLC<br>☐ Affects DAI US HoldCo Inc.<br>☐ Affects All Debtors | Case No. 1:24-bk-11323-VK<br><br>Chapter 11<br><br>(Jointly Administered with:<br><br>Case Nos. 1:24-bk-11324-VK, 1:24-bk-11325, and 1:24-bk-11326-VK)<br><br>**INTERIM ORDER: (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS; (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS; AND (III) GRANTING RELATED RELIEF**<br><br>**Continued Hearing:**<br>Date:     August 22, 2024<br>Time:    2:00 p.m.<br>Place:    Courtroom 301<br>　　　　 21041 Burbank Blvd<br>　　　　 Woodland Hills, CA 91367 |

On the above captioned date and time, the court considered the *Emergency Motion for Entry of Interim and Final Orders: (I) Authorizing the Debtor to Pay Certain Prepetition Claims of Critical Vendors; (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers; and (III) Related Relief* [Doc. No. 18] (the "Motion") filed by chapter 11 debtor and debtor in possession Irwin Naturals (the "Debtor"), pursuant to sections 105(a), 363(b), 503(b)(1)(A), 503(b)(9), 546(c), 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Motion.

Based upon the Court's review of the Motion, the First Day Declaration, the evidentiary record, and argument of counsel; it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; it appearing that due and adequate notice of the Motion having been given under the circumstances; and after due deliberation and good cause appearing therefor, based upon findings of fact and conclusions of law stated in open court pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, as incorporated into Bankruptcy Rule 7052 and applied to contested matters by Bankruptcy Rule 9014(c),

IT IS ORDERED THAT:

1. The Motion is GRANTED on an interim basis as set forth herein.

2. The Debtor is authorized, but not directed, in its sole discretion, to honor, pay, or otherwise satisfy amounts on account of Critical Vendor Claims; provided, however, that such payments shall not exceed the amount authorized in the budget (attached as Exhibit 1 to the Debtor's cash collateral motion [Doc. No. 19] (the "Cash Collateral Motion")) for each respective Critical Vendor Claim.

3. The Debtor is authorized, but not directed, to condition the payment of Critical Vendor Claims upon such Critical Vendor's agreement (a "Vendor Agreement") to continue supplying goods and services to the Debtor on trade terms that are the same as, or better than, the terms such Critical Vendors offered the Debtor's businesses immediately prior to the Petition Date (the "Customary Trade Terms"). In the alternative, the Debtor may negotiate trade terms with any Critical Vendor as a condition to payment of any Critical Vendor Claim that vary from the Customary Trade Terms (the "Negotiated Trade Terms"), but only (a) to the extent the Debtor determines, in its reasonable business judgment that such terms are necessary to procure essential services or are otherwise in the best interests of the Debtor's estate.

4. If a Critical Vendor accepts payment pursuant to this Interim Order after agreeing to provide services on Customary Trade Terms or Negotiated Trade Terms, and thereafter does not continue to provide services on such terms (regardless of whether a Vendor Agreement has been executed), then (i) any payment on account of a Critical Vendor Claim may be deemed, in the Debtor's reasonable business judgment and subject to a determination by the Court, to be an improper post-petition transfer and, therefore, recoverable by the Debtor in cash upon written request, and (ii) upon recovery of the payment by the Debtor, the Critical Vendor Claim shall be reinstated as if the payment had not been made. If there exists an outstanding post-petition balance due from the Debtor to a Critical Vendor, the Debtor may elect to recharacterize and apply any payment made pursuant to this Interim Order to such outstanding post-petition balance, and the Debtor may then take any and all appropriate steps to cause such Critical Vendor to repay payments made to it on account of its prepetition claim to the extent that such payments exceed the post-petition amounts then owing to such Critical Vendor.

/ / /

5. The Debtor is authorized, but not directed, to condition the honoring, payment, or other satisfaction of any Critical Vendor Claim on the execution of a Vendor Agreement, and the Debtor is authorized, but not directed, to enter into such Vendor Agreements when and if the Debtor determines it appropriate, in its business judgment.

6. Any Critical Vendor that accepts payment or other form of satisfaction from the Debtor on account of all or a portion of a Critical Vendor Claim pursuant to this Interim Order shall be deemed to (a) agree to the terms and provisions of this Interim Order and (b) have waived, to the extent so paid or satisfied, any and all prepetition claims, of any type, kind, or priority (including any reclamation claim), against the Debtor, its estate, and its assets and properties.

7. The banks and financial institutions on which checks were drawn or electronic payment requests were made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, pay and, if necessary, reissue all such checks and electronic payment requests, including prepetition checks and electronic payment and transfer requests that the Debtor reissue or re-requests post-petition, when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Interim Order.

8. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; or (g) a waiver of any

claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law. Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's right to subsequently dispute such claim.

9. The amount of each Critical Vendor's claims set forth in connection with a Vendor Agreement shall be used only for purposes of determining such Critical Vendor's claim under this Interim Order and shall not be deemed a claim allowed by the Court, and the rights of all interested persons to object to the allowance of such claim shall be fully preserved until further order of the Court. Further, signing a Vendor Agreement containing a claim amount for purposes of this Interim Order shall not excuse such Critical Vendor from filing a proof of claim in these cases.

10. No claimant who receives payment in full on account of a Critical Vendor Claim is permitted to file or perfect a lien on account of such claim, and any such claimant shall take all necessary action, at its expense, to remove any existing lien relating to such claim.

11. Nothing in the Motion or this Interim Order, nor the Debtor's implementation of the relief granted in this Interim Order, shall be deemed to modify or waive any of the Debtor's rights with respect to goods and services requested or received from the Critical Vendors, including the Debtor's rights to (a) cancel a purchase order, (b) decline the acceptance of goods and services, (c) return any defective, nonconforming or unacceptable good, or (d) contest the amount of any invoice or claims, or liens related thereto, on any grounds.

12. Notwithstanding the relief granted in this Interim Order, any payment made by the Debtor pursuant to the authority granted herein shall be subject to the interim order [Doc. No. 34] approving the Cash Collateral Motion.

/ / /

13. For the avoidance of doubt, the Motion is granted with respect to Coast's and TLS Transportation's prepetition claims as set forth in this paragraph 13 only. In exchange for payment of their prepetition claims set forth in the Motion, on a net 30 basis postpetition, Coast and TLS agree to continue to extend net 30 terms to the Debtor; provided, however, that Coast and TLS reserve the right to alter their terms in their sole discretion if the Debtor's post-petition financial condition deteriorates materially and warrants such change [and only following three business days' notice to counsel to the Debtors, East West Bank, and any official committee of unsecured creditors.] Because of Coast's and TLS's asserted possessory liens, none of the other provisions requested in the Motion and set forth in this Interim Order shall apply to Coast and TLS. All parties' rights are reserved with respect to such asserted possessory liens and any notice provided by TLS or Coast pursuant to this paragraph.

14. The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

15. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

16. The Debtor is authorized to take all actions necessary to implement the relief granted in this Order.

17. A hearing to consider entry of an order granting the Motion on a final basis (the "Final Hearing") shall be held on September 5, 2024 at 3:00 p.m. (prevailing Pacific time). Any objections or responses to the entry of such an order must be filed on or before 4:00 p.m. (prevailing Pacific time) on August 30, 2024, and served on (a) proposed counsel to the Debtor, BG Law LLP, Attn: David M. Poitras (dpoitras@bg.law) and Susan K. Seflin (sseflin@bg.law) and (b) the Office of the United States Trustee for the Central District of California, 915 Wilshire Blvd., Suite 1850. Los

///

Angeles, California 90017, Attn: Katherine C. Bunker (kate.bunker@usdoj.gov). If no objections or responses are filed and served, this Court may enter a final order without further notice or hearing.

18. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

### # # #

Date: August 22, 2024

Victoria S. Kaufman
United States Bankruptcy Judge