DAVID M. POITRAS – Bar No. 141309
SUSAN K. SEFLIN - Bar No. 213865
JESSICA S. WELLINGTON - Bar No. 324477
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: dpoitras@bg.law
sseflin@bg.law
jwellington@bg.law

Attorneys for Chapter 11 Debtors and
Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>Irwin Naturals *et al.*,<br><br>　　　　Debtors and Debtors in Possession.<br><br>☐ Affects Irwin Naturals<br>☐ Affects Irwin Naturals Inc.<br>☐ Affects 5310 Holdings, LLC<br>☐ Affects DAI US HoldCo Inc.<br>☒ Affects All Debtors | Case No. 1:24-bk-11323-VK<br><br>Chapter 11<br><br>(Jointly Administered with: Case No. 1:24-bk-11324-VK. Case No. 1:24-bk-11325, and Case No. 1:24-bk-11326-VK)<br><br>**DEBTORS' CHAPTER 11 STATUS REPORT; DECLARATION OF KLEE IRWIN IN SUPPORT THEREOF**<br><br>**Status Conference:**<br>Date:　October 31, 2024<br>Time:　1:00 p.m.<br>Place:　Courtroom 301<br>　　　United States Bankruptcy Court<br>　　　21041 Burbank Blvd<br>　　　Woodland Hills, CA 91367 |

1

3012331

Irwin Naturals, a Nevada corporation ("Irwin Nevada"), and its affiliate debtors Irwin Naturals Inc. ("Irwin Canada"), 5310 Holdings, LLC ("Holdings"), and DAI US HoldCo Inc. ("DAI," and collectively with Irwin Nevada, Irwin Canada, and Holdings, the "Debtors"), the chapter 11 debtors and debtors in possession herein, hereby file this *Chapter 11 Status Conference Report* (the "Status Report") in accordance with the Court's *Order Setting Hearing on Status of Chapter 11 Case and Requiring Report on Status of Chapter 11 Case* [Doc. No. 100]. In support of the Status Report, the Debtors respectfully represent as follows:

**1.    Court's Questions**

  a.    *Compliance with the Bankruptcy Code and United States Trustee's Guidelines*

To the best of the Debtors' knowledge, the Debtors have complied with their duties under 11 U.S.C. §§ 521 and 1107, and all applicable guidelines of the Office of the United States Trustee. The Debtors continue to operate their businesses and manage their financial affairs as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. To date, no trustee or examiner has been appointed in the Debtors' chapter 11 cases. On August 31, 2024, the United States Trustee for the Central District of California appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a) of the Bankruptcy Code [Doc. No. 69].

The Debtors have submitted all disclosures and documents required under the 7-day package to the Office of the United States Trustee. The Debtors timely filed their schedules and statements of financial affairs by the deadline set by the Court in the *Order Granting Motion for Entry of Order Extending Time to File Schedule of Assets and Liabilities and Statement of Financial Affairs* [Doc. No. 59]. The Debtors timely filed their first monthly operating reports [Doc. Nos. 92, 93, 94, 95] for the period of August 9, 2024 through August 31, 2024.

  b.    *Cash Collateral*

On September 26, 2024, the Court held a continued hearing on the Debtors' *Emergency Motion for Authority to: (A) Use Cash Collateral on an Interim Basis Pending a Final Hearing; (B) Grant Replacement Liena; and (C) Set Final Hearing* [Doc. No. 19] (the "Cash Collateral Motion"). At the hearing, East West Bank as Agent (the "Agent") for lenders East West Bank and CFG Bank (the "Lenders") consented to the Debtors' continued use of cash collateral on an interim basis

through November 8, 2024. On September 27, 2024, the Court entered the *Third Interim Order Authorizing Debtors to Use Cash Collateral on an Interim Basis Pending a Final Hearing, Granting Replacement Liens and Setting a Final Hearing* [Doc. 115] (the "Cash Collateral Order"). The Debtors are compliant with their obligations under the Cash Collateral Order. The final hearing on the Cash Collateral Motion is set for November 7, 2024, at 1:30 p.m.

    c. *Principal Business, Financial and Legal Disputes*

  Irwin Nevada is a popular dietary supplement company that was founded in 1994, the same year that Congress first enacted legislation to define and regulate dietary supplements. Irwin Nevada formulates, markets, and distributes vitamins and supplements. In addition to its Irwin Naturals® supplement brand, Irwin Nevada also has two other supplement brands, Nature's Secret® and Applied Nutrition®. Irwin Nevada's product line currently includes over 130 formulas, which are distributed in more than 100,000 retail locations, including stores like Costco, Walmart, and CVS. The Debtors' 2023 gross sales were $91 million.

  Irwin Nevada has a number of subsidiaries and affiliates including related debtors Irwin Canada, DAI, and Holdings. Irwin Nevada is the operating entity through with the Debtors' nutraceutical business is conducted. Irwin Canada is the "parent company" of the Debtors and it is a public company in Canada. Irwin Canada does not have any employees and only transacts limited business with its subsidiaries. DAI is a wholly owned subsidiary of Irwin Canada. DAI is solely a holding company.

  For almost three decades, Irwin Nevada enjoyed financial stability and profitability from its long-trusted dietary supplement brands.[1] In or around 2020, Irwin Nevada sought to expand its footprint and saw two unique opportunities for growth. First, Irwin Nevada sought to go public. It began this process in August 2021 through a reverse-takeover transaction by Irwin Canada, which was an existing Canadian public company that formerly went by a different name. After being listed on the Canadian Securities Exchange ("CSE") through Irwin Canada, the ultimate goal was uplist to the Nasdaq Exchange and have an initial public offering in the United States (the "Uplisting"). The

---

[1] On an adjusted EBITDA basis, when accounting for extraordinary expenses.

compliance costs ended up being unjustified relative to the little benefit brought to the Debtors by the initiative.

Second, amid the mental health crisis exacerbated by the COVID-19 pandemic, Irwin Nevada embarked on a plan to become the world's first and largest household brand of psychedelic mental health clinics. To do so, it formed a new subsidiary: Irwin Naturals Emergence, Inc. ("Emergence"; together with the Debtors, the "Irwin Companies"). Emergence would act as the much-needed gateway between big pharmaceutical companies and the many patients in need of mental health care. This new business venture involved Emergence completing an M&A roll-up of existing psychedelic mental health clinics, with the intent of capitalizing on the long-established Irwin Naturals® brand and utilizing economies of scale to drive down clinic operating costs (the "Roll-Up").

In the fall of 2022, the Lenders agreed to form a syndicate, wherein East West Bank ("EWB") would be the main lender in a new lending facility focused on providing cash for the roll-up that the Debtors and Emergence could use to fund acquisitions. At the beginning of 2023, the Irwin Companies secured a credit facility ("Credit Facility") from EWB, as agent for the syndicate, for $40.0 million in up to two equal parts: (1) up to a $20 million revolving line of credit that was meant to support Irwin Nevada's day-to-day operations (the "Line of Credit"), a version of which was already in place as of December 2021 between EWB and the Debtors and was to be replaced by this new Credit Facility; and (2) a $20 million delayed-draw term loan facility (the "Term Loan") that was meant to support Emergence's clinic roll-up. The Credit Facility was and is governed by a credit agreement ("Credit Agreement"). As of the petition date, EWB asserted that it is owed approximately $19 million, which the Debtors dispute.

Unfortunately, neither the Uplisting nor the Roll-Up panned out as planned; both efforts caused the Debtors' usually profitable business to suffer financial constraints, losses, and debts. These endeavors, and efforts to salvage them, resulted in tens of millions of dollars of losses and/or liabilities. In addition, Irwin Nevada's typically strong sales numbers began to take a hit in or around March of 2023. The unexpected downturn was attributable to many factors outside of the Debtors' control, including extraordinarily high returns from retailers that were not on par with

4

historical figures and projections, a downturn in the retail market generally, and the unexpectedly slow growth of digital sales.

To add to the Debtors' financial burden, EWB, exerted excessive and unreasonable control over their business affairs and imposed unconscionable constraints on the Debtors. After having the Credit Facility for a little over a year, the Irwin Companies received three notices of default from EWB for failure to meet certain technical covenants of the Credit Agreement. Notwithstanding that the Irwin Companies had never been late on any debt service payments to EWB, and had been transparent and cooperative with EWB, including communicating with EWB regularly regarding their current states of affairs, their day-to-day actions and expenditures, and their plans to turn their financial state around. Indeed, pre-petition, the Irwin Companies undertook tremendous efforts to continue to support their operations and meet their obligations despite their financial hardship. Those efforts included renegotiating payment terms with customers and suppliers, exploring options to amend or refinance their debt, reducing operating costs and expenditures, conducting multiple rounds of personnel layoffs, terminating as many third-party contracts and services as possible, closing the debt-accruing Emergence clinics, and more.

As the Irwin Companies attempted to pull themselves out of their financial difficulties, EWB engaged in numerous instances of misconduct. EWB's alleged misconduct includes, but is not limited to, exerting undue, unreasonable, and excessive control over the Irwin Companies' operations, finances, and decision-making. Indeed, at the time these cases were filed, EWB was sweeping the Debtors' bank accounts daily (which left the Debtors with no liquidity other than what EWB determined was necessary to pay). The Debtors filed these cases to regain control over their businesses and to reorganize their debt in order to return to their prior financial stability and profitability.

In addition to the dispute with EWB, Irwin Nevada and Irwin Canada were parties to several pending lawsuits, which are set forth in their respective Statements of Financial Affairs [Irwin Nevada, Doc. No. 96; Irwin Canada, Doc. No. 16].

d. *Projected Timeline for Resolution*

From the outset, the Debtors have been focused on getting through this reorganization

process as efficiently as possible, while satisfying all requirements for due diligence, investigation, transparency and reporting.  With the benefit of automatic stay, as the Bankruptcy Code intended, the Debtors and their professionals have been able to focus their efforts on assessing the Debtors' business and preparing a proposed chapter 11 plan of reorganization.  The Debtors intend on filing a chapter 11 plan of reorganization and related disclosure statements by October 31, 2024, pursuant to the terms of the Cash Collateral Order.  The Debtors anticipate that a hearing on the disclosure statement will be set in December 2024 and a hearing on plan confirmation will be set in January 2025.

e.     *Proposed Course of Resolution*

The Debtors anticipate proposing a chapter 11 plan of reorganization which pays all allowed claims in full over time that is funded by the Debtors' ongoing business operations, while reserving their claims against the Lenders.  Notwithstanding, the Debtors are in the process of also investigating their options for exit financing.

**2.     Unexpired Leases and Executory Contracts**

Irwin Canada and DAI are not parties to any unexpired leases or executory contracts.  Irwin Nevada and Holdings are parties to a trademark licensing agreement.  Additionally, Irwin Nevada is party to several executory contracts and unexpired leases with third parties, which are listed on Irwin Nevada's Schedule G filed on September 23, 2024 [Doc. No. 96], including one non-residential real property lease.  At this time, the Debtors expect to assume most, if not all, of their executory contracts and unexpired leases through the Debtors' chapter 11 plan of reorganization.

**3.     Proposed Deadlines**

The Debtor proposes that the deadline for filing proofs of claim be January 3, 2025, which is approximately sixty (60) days after the status conference on October 31, 2024.  Counsel for the Debtors will serve notice of the deadline within two business days of the status conference.

/ / /

Pursuant to the Cash Collateral Order, the Debtors are required to file a chapter 11 plan of reorganization and disclosure statement by October 31, 2024.

DATED: October 17, 2024

BG Law LLP

By: /s/ Susan K. Seflin
David M. Poitras
Susan K. Seflin
Jessica S. Wellington
Attorneys for Chapter 11 Debtors
and Debtors in Possession

7

# **DECLARATION OF KLEE IRWIN**

I, Klee Irwin, declare:

1. I am the founder and Chief Executive Officer of Irwin Naturals Inc., a British Columbia corporation ("Irwin Canada"), and founder and principal of Irwin Naturals, a Nevada corporation ("Irwin Nevada"), DAI US HoldCo Inc. ("DAI"), and 5310 Holding, LLC ("Holdings," and collectively with Irwin Nevada, Irwin Canada, and DAI, the "Debtors"). I know each of the following facts to be true of my own personal knowledge, except as otherwise stated, and if called as a witness, I could and would competently testify with respect thereto.

2. I make this declaration in support of the Status Report to which it is appended. All initial capitalized terms used but not defined herein have the same meanings ascribed to them in the Status Report.

3. I have carefully read each of the facts set forth in the foregoing Status Report. Each and every fact set forth therein is true based on personal knowledge of my history, business operations and financial affairs, and my review of the records on file in the Debtors' chapter 11 cases.

4. Irwin Nevada is a popular dietary supplement company that was founded in 1994, the same year that Congress first enacted legislation to define and regulate dietary supplements. Irwin Nevada formulates, markets, and distributes vitamins and supplements. In addition to its Irwin Naturals® supplement brand, Irwin Nevada also has two other supplement brands, Nature's Secret® and Applied Nutrition®. Irwin Nevada's product line currently includes over 130 formulas, which are distributed in more than 100,000 retail locations, including stores like Costco, Walmart, and CVS. The Debtors' 2023 gross sales were $91 million.

5. Irwin Nevada has a number of subsidiaries and affiliates including related debtors Irwin Canada, DAI, and Holdings. Irwin Nevada is the operating entity through with the Debtors' nutraceutical business is conducted. Irwin Canada is the "parent company" of the Debtors. Irwin Canada does not have any employees and only transacts limited business with its subsidiaries. DAI is a wholly owned subsidiary of Irwin Canada. DAI is solely a holding company.

6. For almost three decades, Irwin Nevada enjoyed financial stability and profitability

3012331

from its long-trusted dietary supplement brands.[2]  In or around 2020, Irwin Nevada sought to expand its footprint and saw two unique opportunities for growth.

       7.       First, Irwin Nevada sought to go public.  It began this process in August 2021 through a reverse-takeover transaction by Irwin Canada, which was an existing Canadian public company that formerly went by a different name.  After being listed on the CSE through Irwin Canada, the ultimate goal was uplist to the Nasdaq Exchange and have an initial public offering in the United States (the "Uplisting").  The compliance costs ended up being unjustified relative to the little benefit brought to the Debtors by the initiative.

       8.       Second, amid the mental health crisis exacerbated by the COVID-19 pandemic, Irwin Nevada embarked on a plan to become the world's first and largest household brand of psychedelic mental health clinics.  To do so, it formed a new subsidiary: Emergence.  Emergence would act as the much-needed gateway between big pharmaceutical companies and the many patients in need of mental health care.  This new business venture involved Emergence completing the Roll-Up.

       9.       In the fall of 2022, the Lenders agreed to form a syndicate, wherein EWB would be the main lender in a new lending facility focused on providing cash for the roll-up that the Debtors and Emergence could use to fund acquisitions.  At the beginning of 2023, the Irwin Companies secured the Credit Facility from EWB, as agent for the syndicate, for $40.0 million in up to two equal parts, the Line of Credit and the Term Loan, that was meant to support Emergence's clinic roll-up.  The Credit Facility was and is governed by the Credit Agreement.  As of the petition date, EWB asserted that it is owed approximately $19 million, which the Debtors dispute.

       10.       The Uplisting and the Roll-Up were bold and costly departures from Irwin Nevada's tried and true dietary supplement business model.  Unfortunately, neither endeavor panned out as planned; both efforts caused the usually profitable business to suffer financial constraints, losses, and debts.  These endeavors, and efforts to salvage them, resulted in tens of millions of dollars of losses and/or liabilities.  In addition, Irwin Nevada's typically strong sales numbers began to take a hit in or around March of 2023.  The unexpected downturn was attributable to many factors outside of the

---

[2] On an adjusted EBITDA basis, when accounting for extraordinary expenses.

Debtors' control, including extraordinarily high returns from retailers that were not on par with historical figures and projections, a downturn in the retail market generally, and the unexpectedly slow growth of digital sales.

11. To add to the Debtors' financial burden, EWB, exerted excessive and unreasonable control over their business affairs and imposed unconscionable constraints on the Debtors. After having the Credit Facility for a little over a year, the Irwin Companies received three notices of default from EWB for failure to meet certain technical covenants of the Credit Agreement. It is my understanding that the notices were based on technical defaults, not defaults on the servicing of the debt; the Irwin Companies have never been late on any debt service payments to EWB. I believe the Irwin Companies also were very transparent and cooperative with EWB, including communicating with EWB regularly regarding their current states of affairs, their day-to-day actions and expenditures, and their plans to turn their financial state around. Indeed, the Irwin Companies have already undertaken tremendous efforts to continue to support their operations and meet their obligations despite their financial hardship. These efforts include renegotiating payment terms with customers and suppliers, exploring options to amend or refinance their debt, reducing operating costs and expenditures, conducting multiple rounds of personnel layoffs, terminating as many third-party contracts and services as possible, closing the debt-accruing Emergence clinics, and more.

12. As the Irwin Companies attempted to pull themselves out of their financial difficulties, EWB engaged in numerous instances of misconduct. EWB's alleged misconduct includes, but is not limited to, exerting undue, unreasonable, and excessive control over the Irwin Companies' operations, finances, and decision-making.

13. Having exhausted all other options and with no further hope of reconciliation, I caused the Debtors to send EWB a letter memorializing the many instances of misconduct that EWB had committed, identifying the irreparable injuries EWB caused, and stated the Debtors' urgent need to declare bankruptcy. EWB claimed it would respond to the letter.

14. Instead, EWB swiftly exercised its proxy rights, which the validity of is disputed by the Debtors, and voted in a new sole Director to Irwin Nevada's Board of Directors, removing me. This act prevented Irwin Nevada from declaring bankruptcy. Management repeatedly informed the

new Director of EWB's misconduct and the ongoing risks to the company. Eventually, the new Director resigned for unspecified reasons. That resignation, along with EWB's sweeping of the Debtors' bank accounts (which left the Debtors with no liquidity other than what EWB determined was necessary to pay), the Debtors' management determined that the Debtors only option was to attempt to reorganize under chapter 11 to save their thirty-year old business.

15. In addition to the dispute with EWB, Irwin Nevada and Irwin Canada were parties to several pending lawsuits, which are set forth in their respective Statements of Financial Affairs [Irwin Nevada, Doc. No. 96; Irwin Canada, Doc. No. 16].

16. Irwin Canada and DAI are not parties to any unexpired leases or executory contracts. Irwin Nevada and Holdings are parties to a trademark licensing agreement. Additionally, Irwin Nevada is party to several executory contracts and unexpired leases with third parties, which are listed on Irwin Nevada's Schedule G filed on September 23, 2024 [Doc. No. 96]. At this time, Irwin Nevada and Holdings plan to assume the executory contracts and unexpired leases through the Debtors' chapter 11 plan of reorganization.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 17th day of October 2024, at Topanga, California.

_____
Klee Irwin

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367**.

A true and correct copy of the document(s) entitled**: DEBTORS' CHAPTER 11 STATUS REPORT; DECLARATION OF KLEE IRWIN IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the document(s) were served by the court via NEF and hyperlink to the document.  On **October 17, 2024,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ryan W Beall**     rbeall@go2.law, kadele@go2.law;dfitzgerald@go2.law;rbeall@ecf.courtdrive.com;cmeeker@go2.law
- **Matthew Bouslog**     mbouslog@allenmatkins.com, ncampos@allenmatkins.com
- **Katherine Bunker**     kate.bunker@usdoj.gov
- **Erin R. Fay**     efay@wsgr.com, lmcgee@wsgr.com
- **Jeffrey I Golden**     jgolden@go2.law, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b117954@notify.bestcase.com
- **Alexandria Lattner**     alattner@sheppardmullin.com, ehwalters@sheppardmullin.com
- **Matthew A Macdonald**     matthew.macdonald@wsgr.com
- **Sina Maghsoudi**     sinalegal@gmail.com, g8645@notify.cincompass.com;maghsoudi.sinab128731@notify.bestcase.com
- **David W. Meadows**     david@davidwmeadowslaw.com
- **Douglas A Plazak**     dplazak@rhlaw.com
- **David M Poitras**     dpoitras@bg.law
- **Susan K Seflin**     sseflin@bg.law
- **Jonathan Seligmann Shenson**     jshenson@greenbergglusker.com, calendar@greenbergglusker.com;cmillerwatkins@greenbergglusker.com
- **Yuriko M Shikai**     yshikai@neufeldmarks.com
- **Ashley M Teesdale**     ateesdale@bg.law, aau@bg.law
- **United States Trustee (SV)**     ustpregion16.wh.ecf@usdoj.gov
- **Pamela Kohlman Webster**     pwebster@buchalter.com, smartin@buchalter.com
- **Jessica Wellington**     jwellington@bg.law, ecf@bg.law

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:  On **October 17, 2024**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
**\*\*JUDGE'S COPY NOT REQUIRED IF LESS THAN 25 PAGES (GENERAL ORDER 23-01)**

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **_____, 2024,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 17, 2024 | JESSICA STUDLEY | /s/ Jessica Studley |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*     **F 9013-3.1.PROOF.SERVICE**

**2. SERVED BY MAIL UNLESS OTHERWISE SPECIFIED**

### CREDITORS COMMITTEE

| | | |
|---|---|---|
| Paragon Laboratories, Inc.<br>Creditor's Representative: Jay Kaufman<br>20433 Earl Street<br>Torrance, CA 90503 | Zapp Packaging Inc.<br>Creditor's Representative: Claude Dardant<br>1921 S. Business Parkway<br>Ontario, CA 91761 | Sheri L. Orlowitz<br>1325 Snell Isle Blvd., NE, Unit 906,<br>Saint Petersburg, FL 33704 |

### Secured Creditors

| | |
|---|---|
| CFG Bank<br>1422 Clearview Road,<br>Baltimore Maryland 21209 | East West Bank<br>c/o Counsel, as Agent<br>9300 Flair Drive 4th Floor<br>El Monte, CA 91731 |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**F 9013-3.1.PROOF.SERVICE**