DAVID M. POITRAS – Bar No. 141309
SUSAN K. SEFLIN - Bar No. 213865
JESSICA S. WELLINGTON - Bar No. 324477
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:   (818) 827-9099
Email:       dpoitras@bg.law
             sseflin@bg.law
             jwellington@bg.law

Attorneys for Chapter 11 Debtors and
Plan Proponents

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>Irwin Naturals *et al.*,<br><br>                Debtors and Debtors<br>                in Possession. | Case No. 1:24-bk-11323-VK<br><br>Chapter 11<br><br>(Jointly Administered with: Case No. 1:24-bk-11324-VK. Case No. 1:24-bk-11325, and Case No. 1:24-bk-11326-VK) |
| ☐  Affects Irwin Naturals<br><br>☐  Affects Irwin Naturals Inc.<br><br>☐  Affects 5310 Holdings, LLC<br><br>☐  Affects DAI US HoldCo Inc.<br><br>☒  Affects All Debtors | **DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION**<br><br>**<u>Plan Objection Deadline</u>: 10:00 p.m. PDT on** _____<br><br>**<u>Ballot Deadline</u>:  10:00 p.m. PDT on** _____<br><br>**<u>Confirmation Hearing:</u>**<br>Date:      TBD<br>Time:      TBD<br>Place:     Courtroom 301<br>           United States Bankruptcy Court<br>           21041 Burbank Blvd<br>           Woodland Hills, CA 91367 |

3015405

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................1

II.   DEFINITIONS AND EXHIBITS...................................................................5

    A.    Definitions. ...........................................................................................5

    B.    Exhibits. ..............................................................................................16

    C.    Computing Time Periods. ...................................................................16

    D.    Notices and Delivery of Documents. ..................................................16

III.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THIS PLAN ................................................................................................16

    A.    What Creditors and Interest Holders Will Receive Under the Plan.....................16

    B.    Unclassified Claims. ...........................................................................16

        1.    Administrative Claims. ...........................................................17

        2.    Priority Tax Claims.................................................................20

    C.    Classified Claims and Interests. .........................................................20

        1.    Class of Secured Claims. ........................................................20

        2.    Classes of Priority Unsecured Claims. ....................................22

        3.    Classes of General Unsecured Claims. ....................................22

        4.    Classes of Interest Holders......................................................23

    D.    Means of Effectuating this Plan and Implementation of this Plan........................24

        1.    Plan Funding. ..........................................................................24

        2.    Release of Liens. .....................................................................24

        3.    Composition of the Reorganized Debtors and Post-Confirmation Management..........................................................25

        4.    Disbursing Agent. ...................................................................25

        5.    Objections to Claims................................................................25

        6.    Payment Upon Resolution of Disputed Claims. ......................26

        7.    Investigation and Prosecution of Claims and Avoidance Actions.............27

i

3015405

8.   Payment of Professional Fees and Expenses Incurred After the Effective Date. ........................................................27

9.   Distributions to Be Made Pursuant to the Plan. ...........................27

10.   Corporate Matters. ........................................................28

11.   Exemption from Transfer Taxes. ...................................28

12.   Exculpations and Releases. .......................................28

E.   Other Provisions of the Plan. ............................................29

1.   Executory Contracts and Unexpired Leases. ...........................29

a.   Assumptions. ............................................29

b.   Rejections. ..............................................30

c.   Cures. ..................................................31

2.   Risk Factors. ..................................................31

3.   Changes in Rates Subject to Regulatory Commission Approval ...............31

F.   Retention of Jurisdiction. ...............................................32

G.   Amendments to Corporate Documents. ...................................33

H.   Dissolution of the Committee. ..........................................33

I.   Miscellaneous Issues Regarding Plan Distribution ...........................33

1.   No Fractional Distributions ........................................33

2.   Name and Address of Holder of Claim ..............................34

3.   Unclaimed Distribution. ..........................................34

4.   De Minimus Cash Distributions. ..................................34

IV.   EFFECT OF CONFIRMATION OF THIS PLAN ...................................35

A.   Discharge. ..............................................................35

B.   Continuing Stay/Injunction. ............................................36

C.   Revesting of Property in the Reorganized Debtors ............................37

D.   Modification of this Plan. ..............................................37

E.   Post-Confirmation Status Reports ......................................38

F.   Post-Confirmation Conversion/Dismissal – Local Bankruptcy Rule 3020-1(e). ..38

G.   Final Decree. ..........................................................39

3015405

# TABLE OF AUTHORITIES

Page

## STATUTES

11 U.S.C. § 101 .............................................................................................................. 7

11 U.S.C. § 1102 ........................................................................................................... 9

11 U.S.C. § 1103 ......................................................................................................... 14

11 U.S.C. § 1112(b) ..................................................................................................... 38

11 U.S.C. § 1125 ......................................................................................................... 10

11 U.S.C. § 1127 ......................................................................................................... 33

11 U.S.C. § 1129 ......................................................................................................... 28

11 U.S.C. § 1141 ......................................................................................................... 35

11 U.S.C. § 1141(d)(1)(A) ........................................................................................... 35

11 U.S.C. § 1141(d)(1)(A)(i) ....................................................................................... 35

11 U.S.C. § 1141(d)(1)(A)(ii) ...................................................................................... 35

11 U.S.C. § 1141(d)(1)(A)(iii) ..................................................................................... 35

11 U.S.C. § 1146(c) ..................................................................................................... 28

11 U.S.C. § 327 ........................................................................................................... 14

11 U.S.C. § 328 ........................................................................................................... 14

11 U.S.C. § 329 ........................................................................................................... 14

11 U.S.C. § 330 ..................................................................................................... 13, 14

11 U.S.C. § 330(a) ........................................................................................................ 6

11 U.S.C. § 331 ....................................................................................................... 6, 14

11 U.S.C. § 501 ........................................................................................................... 35

11 U.S.C. § 502(c) ....................................................................................................... 26

11 U.S.C. § 502(g) .................................................................................................. 15, 35

11 U.S.C. § 502(h) ....................................................................................................... 35

11 U.S.C. § 502(i) ........................................................................................................ 35

11 U.S.C. § 503(b) .................................................................................................... 6, 14

3015405

11 U.S.C. § 503(b)(2) ...............................................................................................14

11 U.S.C. § 503(b)(3)(D) ..........................................................................................14

11 U.S.C. § 503(b)(4) ...............................................................................................14

11 U.S.C. § 506(a) ....................................................................................................15

11 U.S.C. § 507(a) ....................................................................................................13

11 U.S.C. § 507(a)(1) ...............................................................................................17

11 U.S.C. § 507(a)(2) .................................................................................................6

11 U.S.C. § 507(a)(3) ...............................................................................................22

11 U.S.C. § 507(a)(4) ...............................................................................................22

11 U.S.C. § 507(a)(5) ...............................................................................................22

11 U.S.C. § 507(a)(6) ...............................................................................................22

11 U.S.C. § 507(a)(7) ...............................................................................................22

11 U.S.C. § 507(a)(8) .........................................................................................13, 20

11 U.S.C. § 510 ...........................................................................................................7

11 U.S.C. § 521 .........................................................................................................15

11 U.S.C. § 541 ...........................................................................................................7

11 U.S.C. § 542 ...........................................................................................................7

11 U.S.C. § 544 ...........................................................................................................7

11 U.S.C. § 545 ...........................................................................................................7

11 U.S.C. § 547 ...........................................................................................................7

11 U.S.C. § 551 ...........................................................................................................7

11 U.S.C. § 553 .....................................................................................................7, 15

28 U.S.C. § 1930 .........................................................................................................6

28 U.S.C. § 1930(a)(6) ........................................................................................17, 39

## <u>RULES</u>

Federal Rules of Bankruptcy Procedure 1000 ...........................................................27

Federal Rules of Bankruptcy Procedure 1009 ...........................................................15

Federal Rules of Bankruptcy Procedure 3020(e) .........................................................1

3015405

Federal Rules of Bankruptcy Procedure 3022 ................................................................39

Federal Rules of Bankruptcy Procedure 9006(a)....................................................7, 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

v

**\*\*Irwin Naturals, a Nevada corporation, and its related debtor entities (collectively, the "Debtors"), are the proponents of this chapter 11 plan of reorganization.  The Debtors reserve the right to make further amendments and modifications to this plan.**

**THE DEBTORS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS PLAN AND THE ACCOMPANYING DISCLOSURE STATEMENT.  THE DEBTORS HAVE NOT AUTHORIZED ANY REPRESENTATION CONCERNING THE DEBTORS, THE VALUE OF THEIR PROPERTY OR THE TREATMENT OF CLAIMS OTHER THAN AS SET FORTH IN THIS PLAN AND THE DISCLOSURE STATEMENT.**

3015405

# I.    INTRODUCTION

Irwin Naturals, a Nevada corporation ("Irwin Nevada"), Irwin Naturals, Inc., a British Colombia corporation ("Irwin Canada"), DAI US HoldCo, Inc. ("DAI") and 5310 Holdings, LLC ("5310" and collectively, with Irwin Nevada, Irwin Canada and DAI, each a "Debtor" and collectively, the "Debtors")

The Debtors are the chapter 11 debtors in possession in the above-captioned chapter 11 bankruptcy cases. On August 9, 2024, the Debtors commenced their bankruptcy cases by filing voluntary petitions under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* ("Bankruptcy Code"). These cases are pending before the Honorable Victoria Kaufman, United States Bankruptcy Judge for the Central District of California (the "Court" or "Bankruptcy Court"). This document is the Debtors' Chapter 11 Plan (as may be further amended or modified, the "Plan"). Concurrently with the filing of the Plan, the Debtors filed their *Disclosure Statement Describing Debtors' Chapter 11 Plan* (as may be amended or modified, the "Disclosure Statement"). Please be advised that this Plan should be read in conjunction with the Disclosure Statement, and that there are disclosures and information provided in the Disclosure Statement which are not included in this Plan.

The effective date ("Effective Date") of the Plan will be the second business day after entry of the order confirming the Plan (the "Confirmation Order"), provided the Bankruptcy Court has waived the provisions of Rule 3020(e) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and no stay of the Confirmation Order is in effect.[1]

This Plan is a reorganizing plan.  The Plan provides for Irwin Nevada's, DAI's and 5310's emergence from their chapter 11 bankruptcy cases as the "Reorganized Debtors", which the Debtors anticipate will occur in January 2025.  Under the Plan, the Debtors will satisfy their debt and other

---

[1] If the Bankruptcy Court does not waive the provisions of Bankruptcy Rule 3020(e), then the Effective Date will be the second business day which is at least fifteen (15) days following the date of entry of the Confirmation Order, assuming there has been no appeal from and order staying the effectiveness of the Confirmation Order.  If there has been an order entered staying the effectiveness of the Plan Confirmation Order, the Effective Date shall be the second business day after the stay is no longer in effect with respect to the Confirmation Order.

3015405

claims as set forth in Article IV below. The Plan described below has been designed to position the Reorganized Debtors to succeed following bankruptcy.

After confirmation of the Plan, Irwin Nevada will continue operating its nutraceutical business that it has successfully operated since its inception in 1994, 5310 will remain a subsidiary of Irwin Nevada that holds the majority of the Debtors' intellectual property, and DAI will remain as the holding company for Irwin Nevada. Through this Plan, the Debtors will be dissolving Irwin Canada.

There are three primary groups of creditor claims in these cases consisting of: (i) priority tax and employee claims; (ii) the claims of the Debtors' pre-petition secured creditors (i.e., creditors who assert a lien against certain of the Debtors' assets as collateral for their claims);[2] and (iii) the claims of the Debtors' non-priority general unsecured creditors.

The following is a summary of the Plan:

1.    <u>Reorganization:</u>  The Plan provides for a reorganization which dissolves one entity, Irwin Canada, with Irwin Nevada, 5310 and DAI as the remaining entities. Through the Plan, the Debtors will pay all allowed claims in full. Through the Plan, the existing public shareholders of Irwin Canada will obtain a direct ownership interest in DAI.

2.    The Plan segregates Claims[3] into Classes and treats them as summarized immediately below, which summaries are subject to the provisions specified in Article III below. The following is a summary of the Plan:

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| N/A | Administrative Claims (Professional Fees) | Estimated Between Approximately $2 million and $2.5 million. | Full payment, subject to Bankruptcy Court approval as may be required, except as otherwise agreed by such Professionals as set forth in the Plan Projections. |
| N/A | Administrative Claims | Estimated at $4 million | Allowed Administrative Claims |

---

[2] The Debtors do not intend, nor should any provision of either the Plan or Disclosure Statement be construed, as an admission of any kind as to the nature, extent, or priority of any purported lien(s), encumbrance(s), or charge(s) of any kind, nature, or extent against the Debtors' assets or property.

[3] Any capitalized term not yet defined will be defined in Article II of this Plan.

3015405

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| | (Incurred in the Ordinary Course of Business) | | representing post-Petition Date liabilities incurred by the Debtors in the ordinary course of business, for which no approval by the Bankruptcy Court is required, shall be paid in full in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such liabilities and any agreements relating thereto. |
| N/A | Priority Tax Claim of Canada Revenue Agency | Estimated at $17,438.37. | Full payment consistent with Bankruptcy Code section 1129(a)(9)(C). |
| N/A | Priority Tax Claim of CA Department of Tax and Fee Administration | Estimated at $2,697.30. | Full payment consistent with Bankruptcy Code section 1129(a)(9)(C). |
| N/A | Priority Tax Claim of State of Washington | Estimated at $907.62. | Full payment consistent with Bankruptcy Code section 1129(a)(9)(C). |
| 1 | Secured claim of East West Bank, as Agent ("EWB")<br><br>Collateral Description: Substantially all of the Debtors' assets (the "Debtors' Personal Property")<br><br>Interest rate: Non-Default (Term) – Prime Plus 1% (Prime no less than 5%)<br><br>Interest rate: Non-Default (Revolver) – Prime (no less than 5%)<br><br>Maturity Date – February 1, 2028<br><br>*Debtors have significant claims against EWB and reserve all their rights to assert those claims | Filed Claim: None<br><br>Debtors' Estimate of Claim for Plan Treatment Purposes: $18.65 million [approximately $7.90 million for the term loan, and approximately $10.80 million for the revolver].<br><br>Insider. EWB was in actual control of the Debtors pre-petition. | **The Debtors scheduled this claim as Unliquidated and Disputed. The Debtors reserve their rights to bring claims against EWB – either through an adversary proceeding and/or claim objection in this Court or in state court post-confirmation.<br><br>**Treatment A:**<br><br>Treat both the term loan and revolver loan as term loans, at the term loan contract rate of interest (Prime Plus 1% - Prime not less than 5%). Incurable default clauses to be removed and clauses related to non-operating entities to be removed.<br><br>$1 mm paid quarterly, commencing June 30, 2025. Additionally, 55% of net disposable income ("NDI") shall be paid quarterly to EWB. See Plan Projections for details (Cash Available for Discretionary Debt Repayment). If the EWB claim is not paid in full prior to the maturity date of February 1, 2028, the Debtors shall pay the remaining lump sum to EWB on or before February 1, 2028, through a cash payment or, if needed, by obtaining replacement financing or through a sale of the business.<br><br>**Lien:** To the same extent and validity of its existing lien(s), EWB shall have a first |

3015405

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|-----------|-------------|--------------------------------------------------------------|-------------------------------------------------------------|
| | | | priority lien against the Debtors' Personal Property.<br><br>**Collateral:** EWB's collateral shall continue to be the Debtors' Personal Property to the same extent and validity of EWB's current interest in such collateral.<br><br>Such treatment shall be in full and complete satisfaction of the Class 1 claim. The Debtors shall have no other obligations under the requisite loan agreements.<br><br>**Impaired; Entitled to Vote.**<br><br>Or, in the alternative,<br><br>**Treatment B:**<br><br>The Debtors are in the process of soliciting exit financing. If they are successful, they will file a separate motion for approval of such financing and/or amend this Plan and the Disclosure Statement to include the proposed terms. If the Debtors successfully obtain exit financing, then they will pay EWB its allowed claim in full on the Effective Date, in which case EWB would be unimpaired.<br><br>**Unimpaired; Not Entitled to Vote.** |
| 2 | Wage Related Claims | $5,991.80 | Paid in full within 10 business days of the Effective Date.<br><br>**Not Impaired; Not Entitled to Vote** |
| 3 | General Unsecured Claims [Excluding Insider Claims] | Estimated at approximately $5 to $6 million. (This number is subject to change as follows: (a) the resolution of objections to Disputed Claims; and (b) the amount of rejection damages claims asserted by the former landlord.)<br><br>[This estimation does not include any intercompany claims as the Debtors' have agreed to subordinate all of their intercompany claims to those of General Unsecured Creditors.] | **Treatment:**<br><br>Allowed General Unsecured Claims will be paid 35% of the NDI as set forth in the Plan Projections (Cash Available for Discretionary Debt Repayment). If Allowed General Unsecured Claims are not paid in full prior to February 1, 2028, the Debtors shall pay the remaining balance of Allowed General Unsecured Claims in full on or before February 1, 2028.<br><br>**Impaired; Entitled to Vote** |

4

3015405

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| 4 | General Unsecured Claim of Insider Klee Irwin | $1 million | **Treatment:**<br><br>Mr. Irwin has agreed to subordinate his claim to all Allowed Claims in exchange for Irwin Nevada agreeing that Mr. Irwin can commence payments on his notes payable at the same time.<br><br>**Impaired; Entitled to Vote** |
| 5 | <u>Irwin Nevada</u><br>Equity Interests of Klee Irwin (90% Non-Voting Interest), Klee & Margareth Irwin Children's Trust (10% Non-Voting Interest) and DAI US HoldCo, Inc. (100% Voting Interest) | Irwin Nevada's current equity holders who collectively own 100% of the Debtor. | **Treatment:** The shareholders of Irwin Nevada shall retain their current equity interests in Irwin Nevada. However, any conversion rights held by the Non-Voting Interests to Irwin Canada shares shall be convertible to the new DAI shares.<br><br>**Not Impaired; Not Entitled to Vote.** |
| 6 | <u>Irwin Canada</u> - Equity Interest of Public Shareholders | Irwin Canada owns DAI, which owns 2% of Irwin Nevada. | Irwin Canada will be dissolved.<br><br>**Treatment:** Irwin Canada's current shareholders shall obtain effectively their same economic and voting interest in DAI as they currently have in Irwin Canada except that those shares will now be private shares.<br><br>**Impaired; Entitled to Vote** |
| 7 | <u>DAI US HoldCo</u><br>Owned 100% by Irwin Canada | | **Treatment:** The current equity structure of DAI will be replaced. See Class 6 for details.<br><br>**Impaired; Entitled to Vote** |
| 8 | <u>5310 Holdings, LLC</u><br><br>Owned 100% by Irwin Nevada | | **Treatment:** No change. To be owned 100% by Irwin Nevada.<br><br>**Not Impaired. Not entitled to vote.** |

## II.    DEFINITIONS AND EXHIBITS

## A.    Definitions.

For the purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article II.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning(s) ascribed to such terms in the Bankruptcy Code or the Bankruptcy Rules, in that order or priority.  Throughout this Plan, the use of the

3015405

masculine, feminine, neuter, plural or singular shall be understood to include each of the others as the context may reasonably dictate.  As used in this Plan, the following definitions shall apply:

1.    **5310.** One of the four jointly administered affiliated Debtors, 5310 Holdings, LLC ("5310"), Case No. 1:24-bk-11325-VK, is a wholly owned subsidiary of Irwin Nevada, and owns substantially all of the Debtors' intellectual property.

2.    **Administrative Claim.**  A Claim for costs and expenses of administration allowed under Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(2) of the Bankruptcy Code including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the business of the Debtors (such as wages, salaries or commissions for services); (b) compensation for legal, financial advisory, accounting and other services, and reimbursement of expenses awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

3.    **Administrative Claims Bar Date.**  The date which is thirty (30) days after the Effective Date.

4.    **Allowed Administrative Claim.**  An Administrative Claim which is an Allowed Claim.

5.    **Allowed Claim.**  A Claim against the Debtors and/or the Estates as to which no objection has been filed, or if an objection has been filed, has either been overruled or otherwise resolved by the allowance of such Claim by the Bankruptcy Court, if the Claim was: (1) scheduled in the list of creditors prepared and filed with the Bankruptcy Court by the Debtors and not listed as disputed, contingent or unliquidated as to amount; or (2) the subject of a timely filed proof of claim; or (3) which has been allowed by order of the Bankruptcy Court.

6.    **Allowed Priority Claim.**  A Priority Claim which is an Allowed Claim.

7.    **Allowed Priority Tax Claim.**  A Priority Tax Claim which is an Allowed Claim.

8.    **Allowed Professional Fees.**  The amount of fees and costs incurred by Professionals engaged by the Debtors or the Committee in connection with the Cases which are (1)

timely requested by application filed on or prior to the Administrative Claims Bar Date; and (2) which are allowed by order of the Bankruptcy Court.

**9.** **Allowed Secured Claim.** A Secured Claim which is an Allowed Claim.

**10.** **Allowed General Unsecured Claim.** A General Unsecured Claim which is an Allowed Claim.

**11.** **Assets.** All tangible and intangible assets of every kind and nature of the Debtors and their Estates, and all proceeds thereof, wherever located, as of the Effective Date.

**12.** **Avoidance Actions.** Causes of Action arising under Bankruptcy Code sections 510, 541, 542, 544, 545, 547 through 551 and/or 553, or under related state or federal statutes and common law including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

**13.** **Ballot.** The form of ballot or ballots that will be distributed electronically with the Disclosure Statement to holders of Claims entitled to vote under the Plan in connection with the solicitation of votes to accept or to reject the Plan.

**14.** **Bankruptcy Code.** Title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*), as now in effect or hereafter amended. All citations in the Disclosure Statement or in the Plan to section numbers are to the Bankruptcy Code unless otherwise expressly indicated.

**15.** **Bankruptcy Court.** The United States Bankruptcy Court for the Central District of California (San Fernando Valley Division), or such other federal court with competent jurisdiction over the Cases.

**16.** **Bankruptcy Rules.** Federal Rules of Bankruptcy Procedure, as now in effect or hereafter amended.

**17.** **Bar Date.** December 20, 2024 for non-governmental creditors; and February 5, 2025 for governmental units.

**18.** **Business Day.** Any day, other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

**19.** **Cases.** This Chapter 11 bankruptcy cases, filed by the Debtors, pending in the Bankruptcy Court and jointly administered under Case No. 1:24-bk-11323-VK.

3015405

**20.    Cash.**  Currency, checks, negotiable instruments and wire transfers of immediately available funds.

**21.    Causes of Action.**  Any and all causes of action, Avoidance Actions, suits, rights of action, rights to legal remedies, rights to equitable remedies, rights to payment of any amounts owing to the Debtors or the Estates for any reason whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, that the Debtors and/or Estates may hold against any Person but excluding those Persons who are released or exculpated, or against whom claims were waived, pursuant to the Plan.

**22.    Claim.**  Any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, against the Debtors and/or the Estates, and any right to any legal or equitable remedy for breach of any obligation giving rise to a right to payment, whether or not such right is an equitable remedy or is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, against the Debtors and/or the Estates.

**23.    Claimant.**  A Person who holds a Claim.

**24.    Claim Chart.  Exhibit A** to the Disclosure Statement which lists all Claims filed against the Debtors as of the date reflected therein.

**25.    Claims Objection Deadline.**  Two hundred and seventy (270) days following the Effective Date, which date may be extended by the Bankruptcy Court upon motion of any party in interest for cause.

**26.    Class.**  A category of Claims which are substantially similar to each other and into which Allowed Claims are grouped and classified pursuant to the Plan, unless a member of the Class has agreed to a subordinated treatment.  The Classes provided for in the Plan are summarized in Article IV of the Disclosure Statement and Article III of the Plan.

**27.    Committee.**  The Official Committee of Unsecured Creditors appointed by

3015405

the OUST on August 31, 2024 [Doc. No. 69] in the bankruptcy cases of Irwin Nevada and Irwin

Canada, pursuant to § 1102 of the Bankruptcy Code.

28.    **Confirmation.**  The entry of the Confirmation Order on the docket of the

Bankruptcy Court.

29.    **Confirmation Date.**  The date upon which the Confirmation occurs.

30.    **Confirmation Hearing.**  The hearing or hearings held by the Bankruptcy

Court to consider and rule upon the Debtors' request for confirmation of the Plan.

31.    **Confirmation Order.**  The order entered by the Bankruptcy Court confirming

the Plan.

32.    **Creditor.**  A Person asserting a Claim; *aka* a Claimant.

33.    **Cure Claim.**  A claim based upon the Debtors' default on an Executory

Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors under

sections 365 or 1123 of the Bankruptcy Code.

34.    **DAI.** One of the four jointly administered affiliated Debtors, DAI US HoldCo,

Inc. ("DAI"), Case No. 1:24-bk-11326-VK, is a holding company that owns 2% of Irwin Nevada as

of the Petition Date.

35.    **Debtors.**  Irwin Nevada, Irwin Canada, 5310 and DAI, the jointly

administered chapter 11 debtors in these Cases.

36.    **Disallowed.**  With respect to a Claim, or any portion thereof, that (a) has been

disallowed by a Final Order, (b) is Scheduled at zero, or as contingent, disputed or unliquidated and

as to which no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed

pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (c) is not

Scheduled, and as to which (i) no Proof of Claim has been filed by the applicable Bar Date or

deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable

law, or (ii) no request for payment of an Administrative Claim has been filed by the Administrative

Claims Bar Date, as appropriate, or deemed timely filed pursuant to either the Bankruptcy Code or

any Final Order or under applicable law.

37.    **Disbursing Agent.**  Irwin Nevada will be the Disbursing Agent under the

3015405

Plan.

38.    **Disclosure Statement.**  The Disclosure Statement (as may be further amended or modified) prepared by the Debtors as required by § 1125 of the Bankruptcy Code describing this Plan.

39.    **Disputed Claim.**  Disputed Claims include: (i) a Claim which has been scheduled as disputed, contingent or unliquidated where a Proof of Claim has not been timely filed thereafter; (ii) a Claim as to which an objection has been timely filed with the Bankruptcy Court, and which objection has not been withdrawn on or before any date fixed for filing such objections by the Plan or by order of the Bankruptcy Court and has not been overruled or denied by a Final Order; and (iii) any Claim listed as a Disputed Claim on the Claim Chart.

40.    **Distribution(s).**  Any distribution by the Reorganized Debtors to any Class, Claimant or Creditor.

41.    **Effective Date.**  The second Business Day after the Confirmation Date, provided that the Bankruptcy Court has waived the provisions of Bankruptcy Rule 3020(e) and no stay of the Confirmation Order is in effect.  If the Bankruptcy Court does not waive the provisions of Bankruptcy Rule 3020(e), then the Effective Date will be the second Business Day which is at least fifteen (15) days following the date of entry of the Confirmation Order, providing there has been no appeal from and order staying the effectiveness of the Confirmation Order.  If there has been an order entered staying the effectiveness of the Confirmation Order, the Effective Date shall be the second Business Day after the stay is no longer in effect with respect to the Confirmation Order.

42.    **Equity Interest.**  An "equity security" as defined in § 101(16) of the Bankruptcy Code.

43.    **Equity Holder(s).**  A holder of any Equity Interest of any of the Debtors.

44.    **Estates.**  The estates of the Debtors created upon commencement of the Cases pursuant to § 541 of the Bankruptcy Code.

45.    **Exit Financing.**  Financing in an undetermined amount that may be obtained by the Debtors to fund all or part of their Distributions to Creditors.

46.    **Executory Contract.**  A contract to which the Debtors are a party that is

3015405

subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

47.    **EWB.**  The Debtors' disputed secured creditor, East West Bank, as Agent ("EWB").

48.    **Final Fee Application(s).** The final request for payment of Professional Fee Claims.

49.    **Final DIP Order.**  The *Final Order: (I) Authorizing Debtor to Obtain Post-Petition Financing, (II) Granting Liens and Administrative Expense Claims, (III) Authorizing Debtors' Use of Cash Collateral, (IV) Modifying the Automatic Stay, and (V) Granting Other Related Relief* [Doc. No____] entered by the Bankruptcy Court on _____.

50.    **Final Order.**  An order or judgment of the Bankruptcy Court, as entered on the applicable docket, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargue, or rehear have been waived in writing in form and substance satisfactory to the Debtors prior to the Effective Date, or to the Reorganized Debtors after the Effective Date, or, in the event that an appeal, writ of certiorari, or re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which re-argument or rehearing was sought and denied, and the time to take any further appeal, petition for certiorari or move for re-argument or rehearing shall have expired.

51.    **General Unsecured Claim.**  A Claim against the Debtors that is not secured by a charge against, or interest in, any of the Debtors' Assets, that is not an Administrative Claim, a Priority Claim, or a Priority Tax Claim.

52.    **Holder(s).**  A Person holding a Claim or Interest against the Debtors, provided, however, with respect to transfers of Claims governed by Bankruptcy Rule 3001(e), in order for the transferor to be deemed the Holder of the Claim for distribution purposes, the deadline for any objection to the proposed transfer of a Claim must have passed with either (1) no objection to

3015405

the transfer having been filed, or (2) any objection to such transfer having been resolved in favor of the transferor by no later than the Confirmation Date.  <u>In other words, after the Effective Date, without the express consent of the Reorganized Debtors, no transfer of Claims will be recognized by the Reorganized Debtors for Distributions made pursuant to the Plan.</u>

53.  <u>**Impaired.**</u>  When used in reference to a Claim, Interest or Class, a Claim, Interest or Class that is impaired within the meaning of § 1124 of Bankruptcy Code.

54.  <u>**Interest.**</u>  When "Interest" is used in the context of holding an equity security or unit of the Debtors (and not used to denote (i) the compensation paid for the use of money for a specified time and usually denoted as a percentage rate of interest on a principal sum of money, or (ii) a security interest in property), then "Interest" shall mean an interest or share in the Debtors of the type described in the definition of "Equity Interest."

55.  <u>**Irwin Canada.**</u>  One of the four jointly administered affiliated Debtors, Irwin Naturals, Inc., a British Colombia corporation ("Irwin Canada"), Case No. 1:24-bk-11324-VK, is currently the ultimate parent of all the other Debtors and it is a public company.  Irwin Canada will be dissolved as of the Effective Date.

56.  <u>**Irwin Nevada.**</u>  One of the four jointly administered affiliated Debtors, Irwin Naturals, a Nevada corporation ("Irwin Nevada), Case No. 1:24-bk-11323-VK, is the operating entity.

57.  <u>**Litigation Claims.**</u>  Any and all Causes of Action of the Effective Date, including without limitation all causes of action arising under chapter 5 of the Bankruptcy Code, including without limitation those causes of actions which could be brought by the Debtors under one or more of sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code against any Person or other entity, including any governmental entity, who received an avoidable transfer from the Debtors, including but not limited to insiders, employees, officers, and equity holders of the Debtors.  Although the Debtors has not concluded its investigation of all the potential Litigation Claims and all the potential parties to such claims, a non-exclusive summary of known potential Litigation Claims is described in the Disclosure Statement.

58.  <u>**New Equity Interests.**</u>  The new equity interests to be issued on the Effective

3015405

Date to shareholders of Irwin Canada.

59. **Noticing Agent.** Omni is the claims and noticing agent employed in the Debtors' bankruptcy cases.

60. **OUST.** Office of the United States Trustee for Region 16.

61. **Person.** Person shall have the same meaning as in § 101(41) of the Bankruptcy Code.

62. **Petition Date.** August 9, 2024, the date on which the Debtors filed their respective voluntary petition for relief under chapter 11, thereby commencing these Cases.

63. **Plan.** This *Chapter 11 Plan of Reorganization* (as may be further amended or modified) proposed by the Debtors and including, without limitation, all exhibits, supplements, appendices and schedules thereto, either in its present form or as it may be altered, amended, supplemented, or modified from time to time.

64. **Plan Projections.** The Plan Projections attached as **Exhibit B** to the Disclosure Statement and attached hereto.

65. **Plan Supplement.** Collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, all of which are incorporated by reference into, and are an integral part of, the Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time in accordance with the terms hereof and the Bankruptcy Code and the Bankruptcy Rules.  The Plan Supplement shall be filed with the Bankruptcy Court by no later than _____.

66. **Post-Confirmation Status Report.** The post-confirmation status report to be filed by the Reorganized Debtors if so ordered by the Bankruptcy Court.

67. **Priority Claim.** A Claim entitled to priority under § 507(a) of the Bankruptcy Code, other than a Priority Tax Claim pursuant to § 507(a)(8) of the Bankruptcy Code.

68. **Priority Tax Claim.** A Claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

69. **Professional Fee Applications.** Applications filed pursuant to sections 330,

13

331 or 503(b)(4) of the Bankruptcy Code for allowance of Administrative Claims relating to the compensation and reimbursement of expenses of Professionals employed pursuant to an order of the Bankruptcy Court under sections 327 or 1103 of the Bankruptcy Code for services provided and expenses incurred prior to the Effective Date.

70.    **Professional Fee Claims.** (A) a claim under sections 327, 328, 330, 331, 503(b), 1103 or 1106 of the Bankruptcy Code for compensation for professional services rendered or expenses incurred on and after the Petition Date and prior to the Effective Date on behalf of the Estate by a Professional duly employed and authorized by an Order of the Bankruptcy Court; or (b) a claim under § 503(b)(4) of the Bankruptcy Code for reasonable compensation for professional services rendered by an attorney or accountant of an entity whose expense is allowable under § 503(b)(3)(D) of the Bankruptcy Code for making a substantial contribution to the Estates.

71.    **Professionals.**   Those Persons (i) that are subject to the retention pursuant to an order of the Bankruptcy Court in accordance with sections 327, 1103 and/or 1106 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to sections 330 and 503(b)(2) of the Bankruptcy Code.

72.    **Proponents.** The proponents of the Plan are the Debtors.

73.    **Pro Rata.**   Pro rata means proportionate so that the ratio of (a) the amount of consideration distributed on account of an Allowed Claim to (b) the amount of the Allowed Claim is the same as the ratio of (x) the amount of consideration available for distribution on account of all Allowed Claims in the Class in which the Allowed Claim is included to (y) the amount of all Allowed Claims in that Class.

74.    **Reorganized Debtors.**   Irwin Nevada, DAI and 5310 following the occurrence of the Effective Date (as Irwin Canada will be dissolved).

75.    **Reserve Account.**   An account created, and in an amount determined, by the Reorganized Debtors pending the resolution of a Disputed Claim, containing a sufficient amount to satisfy such Disputed Claim in a manner consistent with that Claim's treatment under the Plan

3015405

should it ultimately become an Allowed Claim.

76. **Scheduled**. Scheduled means the information set forth in the Schedules.

77. **Schedules.** The Schedules of Assets and Liabilities filed by the Debtors in accordance with § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as the same may be amended from time to time in accordance with Bankruptcy Rule 1009 prior to the Effective Date. Irwin Nevada's Schedules: Doc. No. 96; Irwin Canada's Schedules: Doc. 16 in 1:24-bk-11324-VK; 5310's Schedules: Doc. No. 16 in 1:24-bk-11325-VK; DAI's Schedules: Doc. No. 16 in 1:24-11326-VK.

78. **Secured Claim.** A Claim that is secured by a lien against any Assets to the extent of the value of the Estate's interest in such Assets, or to the extent of the amount of such Claim subject to setoff in accordance with § 553 of the Bankruptcy Code, in either case determined pursuant to § 506(a) of the Bankruptcy Code.

79. **Unclaimed Distribution.** Any Distribution made by the Reorganized Debtors or the Disbursing Agent to the address of the recipient reflected in the Schedules (or on any Proof of Claim filed by the Claimant), by: (a) checks which have been returned as undeliverable without a proper forwarding address; (b) checks which were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same; (c) checks which have not been cashed for a period of ninety (90) days after the date such checks were issued, or (d) disbursements that were not made because the Holder of such Allowed Claim failed to provide required tax information within forty-five (45) days after the Reorganized Debtors or the Disbursing Agent have sent any request for same to such Claimant's address as reflected in the Schedules and/or such Claimant's Proof of Claim.

80. **Unclassified Claim.** Any Claim which is not part of any Class, including Administrative Claims and Priority Tax Claims.

81. **Unimpaired.** A Claim is unimpaired when it is within a class that is not impaired within the meaning of § 1124 of the Bankruptcy Code.

82. **Unsecured Claim.** Any Claim, including without limitation any claim arising under § 502(g) of the Bankruptcy Code, that is not secured by a lien on, security interest in, or

3015405

charge against, any Asset.

**B.    Exhibits.**

All Exhibits to this Plan and to the Disclosure Statement are incorporated into and are part of this Plan as if set forth in full herein.

**C.    Computing Time Periods.**

In computing any period of time prescribed or contemplated by the Plan, Bankruptcy Rule 9006(a) shall apply.

**D.    Notices and Delivery of Documents.**

All notices, correspondence, and other deliveries under the Plan must be directed as follows:

|  |  |
|---|---|
| To the Debtors or Reorganized Debtors: | Irwin Naturals et al<br>300 Corporate Pointe, Suite 550<br>Culver City, CA 90230 |
| With a Copy to: | Susan K. Seflin<br>BG Law LLP<br>21650 Oxnard St., Suite 500<br>Woodland Hills, CA 91367<br>Fax: (818) 827-9099<br>Email: sseflin@bg.law |

**III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THIS PLAN**

**A.    What Creditors and Interest Holders Will Receive Under the Plan.**

As required by the Bankruptcy Code, this Plan classifies Claims and Interests in various Classes according to their right of priority under the Bankruptcy Code.  This Plan states whether each Class of Claims or Interests in impaired or unimpaired.  The Plan provides the treatment each Class will receive.

**B.    Unclassified Claims.**

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtors have not placed the following Unclassified Claims in a Class.

1.      **Administrative Claims.**

Administrative Claims are for costs or expenses of administering the Debtors' Chapter 11 Cases which are allowed under Bankruptcy Code Section 507(a)(1).  Allowed Administrative Claims representing post-Petition Date liabilities incurred by the Debtors in the ordinary course of business, for which no approval by the Bankruptcy Court is required, shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such liabilities and any agreements relating thereto.  The Bankruptcy Code requires that all Administrative Claims be paid on the Effective Date unless a particular Claimant agrees to a different treatment.  After the Effective Date, while the Debtors' Chapter 11 Cases remains open, the Reorganized Debtors will (i) file with the United States Trustee quarterly reports; and (ii) timely pay fees incurred pursuant to 28 U.S.C. Section 1930(a)(6).[4]

The following chart lists all of the Debtors' Section 507(a)(1) administrative claims and their treatment under the Plan.

| Name | Amount Owed[5] | Treatment |
|---|---|---|
| Administrative Claims (Incurred in the Ordinary Course of Business) | Estimated at approximately $4 million. | Allowed Administrative Claims representing post-Petition Date liabilities incurred by the Debtors in the ordinary course of business, for which no approval by the Bankruptcy Court is required, shall be paid in full in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such liabilities and any agreements relating thereto. |

---

[4] The quarterly fees owed to the United States Trustee are due and owing every quarter, without the requirement for the United States Trustee to file an administrative claim or a proof of claim. There is also no bar date for quarterly fees.

[5] The amounts set forth in this chart are estimates of the administrative claim amounts that the Debtors believe each administrative claimant may be entitled to on the Effective Date in addition to the amounts provided for in the Debtors' cash collateral budget.  The amounts set forth in this chart are subject to change.

3015405

| Name | Amount Owed[5] | Treatment |
|---|---|---|
| BG Law LLP, bankruptcy counsel to the Debtors | Approximately $350,000 in addition to the post-petition payments to BG pursuant to the order approving the Fee Procedures Motion [Doc. No. ___] (the "Interim Compensation Order"). | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses, unless otherwise agreed to. |
| Province, LLC, financial advisor to the Debtors | Approximately $350,000 in addition to the post-petition payments made by the Debtors in connection with the Interim Compensation Order and in addition to the amounts provided for in the Debtosr' cash collateral budget. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses, unless otherwise agreed to. |
| Jerrel G John, bookkeeper and accountant to the Debtors | Approximately $35,000 in addition to the post-petition payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses, unless otherwise agreed to. |
| Marula Capital Group, financial advisor – valuation services to the Debtors | Approximately $50,000 in addition to amounts paid to Marula Capital Group pursuant to its employment order [Doc. No. 135] and pursuant to any payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses, unless otherwise agreed to. |
| Golden Goodrich LLP, counsel to the Committee | Approximately $150,000 in addition to the post-petition payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses, unless otherwise agreed to. |
| Force Ten Partners, LLC, financial advisor to the Committee | Approximately $100,000 in addition to the post-petition payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses, unless otherwise agreed to. |
| Omni, noticing and solicitation agent for the Debtors | $0 | Paid in the ordinary course of business pursuant to the order approving Omni's employment [Doc. No. 134] |
| Greenberg Glusker, proposed special litigation counsel to the Debtors | Approximately $100,000 in addition to the post-petition payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses, unless otherwise agreed to. |
| **TOTAL** | Between Approximately $5 million and $6 million est. | Paid in the manner described above |

3015405

### Reservation of Rights

Nothing in this Plan or the Disclosure Statement and nothing set forth in the above chart should be construed as an admission by the Debtors or any other party as to the validity of the asserted / projected Professional Fee Claims. The Debtors, the Committee, the OUST, Creditors and all other parties in interest reserve all rights to object to Professional Fee Claims.

### Court Approval of Fees Required:

The Bankruptcy Court must approve, or must have previously approved on a final basis, all Professional Fee Claims listed in the foregoing chart before they may be paid. Only the amount of fees and expenses approved by the Bankruptcy Court is required to be paid under the Plan. The administrative claim amounts set forth above for professional fees and expenses simply represent the Debtors' best estimate as to the amount of Allowed Professional Fee Claims, which estimates assume that the Debtors make all of the post-petition professional fee monthly payments that the Bankruptcy Court may authorize the Debtors to make. The actual Administrative Claims for Professional fees and expenses may be higher or lower. By voting to accept the Plan, Creditors are not acknowledging the validity of, or consenting to the amount of, any of these Administrative Claims for professional fees and expenses, and Creditors are not waiving any of their rights to object to the allowance of any of these Professional Fee Claims. Also, the Professionals employed in these Cases may, prior to the Effective Date, seek Court approval of interim fees and expenses incurred in excess of the post-petition professional fee monthly payments received by such Professionals, pursuant to orders of the Bankruptcy Court. To the extent any such interim fees and expenses are allowed by the Bankruptcy Court and paid by the Debtors prior to the Effective Date, that will reduce the amount of professional fees and expenses to be paid by the Reorganized Debtors.

**The last day to file any Administrative Claims (but NOT for ordinary post-petition operating obligations or Professional Fee Claims) is thirty (30) days after the Effective Date.** Administrative expenses will be paid on the later of the Effective Date or 10 days after the entry of a Final Order allowing the administrative expense, unless the administrative claimant has consented otherwise in writing. On or before the Effective Date, the Debtors or the Reorganized Debtors will

3015405

serve notice of an administrative bar date on all potential administrative claimants including, but not limited to, the Debtors' post-petition suppliers, service providers and employees.

**2.     Priority Tax Claims.**

Priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code.  The Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the Petition Date.  The Debtors believe that they owe the following priority tax claims:

| Class No. | Description | Estimated Amount | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| N/A | Priority Tax Claim of Canada Revenue Agency | Estimated at $17,438.37. | Full payment consistent with Bankruptcy Code section 1129(a)(9)(C). |
| N/A | Priority Tax Claim of CA Department of Tax and Fee Administration | Estimated at $2,697.30. | Full payment consistent with Bankruptcy Code section 1129(a)(9)(C). |
| N/A | Priority Tax Claim of State of Washington | Estimated at $907.62. | Full payment consistent with Bankruptcy Code section 1129(a)(9)(C). |

The Internal Revenue Service (the "IRS") filed claims against the Debtors prior to the filing of their 2023 tax returns.  If the IRS has an Allowed Priority Tax Claim, then the Debtors shall pay it in full pursuant to 11 U.S.C. § 1129(a)(9)(C).

**C.     Classified Claims and Interests.**

**1.     Class of Secured Claims.**

Secured Claims are claims secured by liens on property of the estate.  The following chart sets forth the description and treatment of the Debtors' known Secured Claims.

| CLASS # | DESCRIPTION | IMPAIRED (YES/NO) | TREATMENT |
|---|---|---|---|
|  | Secured claim of East West Bank, as Agent ("EWB")<br><br>Collateral Description:  Substantially all of the Debtors' assets (the "Debtors' Personal Property") | Treatment A: Yes.<br><br>Treatment B: No. | **The Debtors scheduled this claim as Unliquidated and Disputed.  The Debtors reserve their rights to bring claims against EWB – either through an adversary proceeding and/or claim objection in this Court or in state court |

3015405

| CLASS # | DESCRIPTION | IMPAIRED (YES/NO) | TREATMENT |
|---|---|---|---|
| 1 | Interest rate: Non-Default (Term) – Prime Plus 1% (Prime no less than 5%)<br><br>Interest rate: Non-Default (Revolver) – Prime (no less than 5%)<br><br>Maturity Date – February 1, 2028<br><br>*Debtors have significant claims against EWB and reserve all their rights to assert those claims<br><br>Filed Claim: None<br><br>Debtors' Estimate of Claim for Plan Treatment Purposes: $18.65 million [approximately $7.90 million for the term loan, and $10.80 million for the revolver].<br><br>Insider.  EWB was in actual control of the Debtors pre-petition. | | post-confirmation.<br><br>**Treatment A:**<br><br>Treat both the term loan and revolver loan as term loans, at the term loan contract rate of interest (Prime Plus 1% - Prime not less than 5%). Incurable default clauses to be removed and clauses related to non-operating entities to be removed.<br><br>$1 mm paid quarterly, commencing June 30, 2025. Additionally, 55% of net disposable income ("NDI") shall be paid quarterly to EWB.  See Plan Projections for details (Cash Available for Discretionary Debt Repayment).  If the EWB claim is not paid in full prior to the maturity date of February 1, 2028, the Debtors shall pay the remaining lump sum to EWB on or before February 1, 2028, through a cash payment or, if needed, by obtaining replacement financing or through a sale of the business.<br><br>**Lien:** To the same extent and validity of its existing lien(s), EWB shall have a first priority lien against the Debtors' Personal Property.<br><br>**Collateral:** EWB's collateral shall continue to be the Debtors' Personal Property to the same extent and validity of EWB's current interest in such collateral.<br><br>Such treatment shall be in full and complete satisfaction of the Class 1 claim.  The Debtors shall have no other obligations under the requisite loan agreements.<br><br>**Impaired; Entitled to Vote.**<br><br>Or, in the alternative,<br><br>**Treatment B:**<br><br>The Debtors are in the process of soliciting exit financing.  If they are successful, they will file a separate motion for approval of such financing and/or amend this Plan and the Disclosure Statement to include the proposed terms.  If the Debtors |

| CLASS # | DESCRIPTION | IMPAIRED (YES/NO) | TREATMENT |
|---------|-------------|-------------------|-----------|
| | | | successfully obtain exit financing, then they will pay EWB its allowed claim in full on the Effective Date, in which case EWB would be unimpaired. **Unimpaired; Not Entitled to Vote.** |

**2.    Classes of Priority Unsecured Claims.**

Certain Priority Claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in Classes.  These types of Claims are entitled to priority treatment as follows:  the Bankruptcy Code requires that each holder of such a Claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim.  The Debtors do not believe that there are any valid outstanding Section 507(a)(3), (5), (6), or (7) priority unsecured claims.  If there are any allowed priority unsecured claims as of the Effective Date, these claims will be paid in full by the Reorganized Debtor on the Effective Date (or as soon as practicable thereafter).  All allowed Section 507(a)(3), (5), (6), or (7) priority unsecured claims, if any, will be characterized as Priority Claims.

There is one valid outstanding Section 507(a)(4) priority unsecured claim, which claim and treatment are set forth below:

| CLASS # | DESCRIPTION | IMPAIRED (Yes/No) | TREATMENT |
|---------|-------------|-------------------|-----------|
| 2 | Employee Wage Claim of $5,991.80 | No. | Paid in full within 10 business days of the Effective Date. **Not impaired; not entitled to vote.** |

**3.    Classes of General Unsecured Claims.**

General Unsecured Claims are classified and treated as follows:

/ / /

3015405

| CLASS # | DESCRIPTION | IMPAIRED (Yes/No) | TREATMENT |
|---|---|---|---|
| 3 | General Unsecured Claims [Excluding Insider Claims]<br><br>Estimated at approximately $5 to $6 million.  (This number is subject to change as follows: (a) the resolution of objections to Disputed Claims; and (b) the amount of rejection damages claims asserted by the former landlord.)<br><br>[This estimation does not include any intercompany claims as the Debtors' have agreed to subordinate all of their intercompany claims to those of General Unsecured Creditors.] | Yes. | **Treatment:**<br>Allowed General Unsecured Claims will be paid 35% of the NDI as set forth in the Plan Projections (Cash Available for Discretionary Debt Repayment).  If Allowed General Unsecured Claims are not paid in full prior to February 1, 2028, the Debtors shall pay the remaining balance of Allowed General Unsecured Claims in full on or before February 1, 2028.<br>**Impaired; Entitled to Vote** |
| 4 | General Unsecured Claim of Insider Klee Irwin ($1 million) | Yes. | **Treatment:**<br>Mr. Irwin has agreed to subordinate his claim to all Allowed Claims in exchange for Irwin Nevada agreeing that Mr. Irwin can commence payments on his notes payable at the same time.<br>**Impaired; Entitled to Vote** |

## 4.    Classes of Interest Holders.

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor.  The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (YES/NO) | TREATMENT |
|---|---|---|---|
| 5 | Irwin Nevada<br>Irwin Nevada's current equity holders who collectively own 100% of Irwin Nevada: Equity Interests of Klee Irwin (90% Non-Voting Interest), Klee & Margareth Irwin Children's Trust (10% Non-Voting Interest) and DAI US HoldCo, Inc. (100% Voting Interest) | No. | **Treatment:**  The shareholders of Irwin Nevada shall retain their current equity interests in Irwin Nevada. However, any conversion rights held by the Non-Voting Interests to Irwin Canada shares shall be convertible to the new DAI shares.<br>**Not Impaired; Not Entitled to Vote.** |

23

| | | | |
|---|---|---|---|
| 6 | <u>Irwin Canada</u> - Equity Interest of Public Shareholders<br><br>Irwin Canada owns 100% of DAI, which owns 2% of Irwin Nevada. | Yes. | Irwin Canada will be dissolved.<br><br>**Treatment:** Irwin Canada's current shareholders shall obtain effectively their same economic and voting interest in DAI as they currently have in Irwin Canada except that those shares will now be private shares.<br><br>**Impaired; Entitled to Vote** |
| 7 | <u>DAI US HoldCo</u><br>Owned 100% by Irwin Canada, owns 2% of Irwin Nevada but owns 100% Voting Shares. | Yes. | **Treatment:** The current equity structure of DAI will be replaced.  See Class 6 for details.<br><br>**Impaired; Entitled to Vote** |
| 8 | <u>5310 Holdings, LLC</u><br><br>Owned 100% by Irwin Nevada | No. | **Treatment:**  No change.  To be owned 100% by Irwin Nevada.<br><br>**Not Impaired. Not entitled to vote.** |

**D.    Means of Effectuating this Plan and Implementation of this Plan.**

   **1.    Plan Funding.**

<u>Exit Financing</u>

   If the Debtors successfully obtain Exit Financing, then such funds shall be used to pay the Class 1 Allowed Secured Claim.  The balance of all Allowed Claims will be paid from the Debtors' ongoing business operations as set forth in the Plan Projections.

<u>No Exit Financing</u>

   If the Debtors are unable to obtain Exit Financing or determine that it is in their best interests not to do so, then the Plan will be funded by the Debtors' ongoing business operations as set forth in the Plan Projections (attached hereto as **Exhibit B**).  Based on their 30 year history of a profitable nutraceutical business and as shown by the Plan Projections, which are a conservative estimate of the Reorganized Debtors' performance, the Debtors are confident that sufficient funds will exist to make all required Plan payments.

   **2.    Release of Liens.**

   If Class 1 is paid in full through Exit Financing, then EWB shall file termination statements related to all UCC's filed by EWB within 30 days of such payment (the "Release Procedures").  In the event that EWB fails to do so, the Reorganized Debtors shall be granted, pursuant to the

24

3015405

Confirmation Order, power of authority for the limited purpose of implementing and consummating the Release Procedures.

**3.        Composition of the Reorganized Debtors and Post-Confirmation Management.**

On the Effective Date, Irwin Nevada will remain a Nevada corporation.  Irwin Nevada's CEO will remain Klee Irwin and its CFO will remain Mark Green.  Mr. Irwin and Mr. Green are the only officers as recognized in Irwin Nevada's bylaws, and they shall remain in place during the pendency of the Plan term until all creditors are paid in full.  Any change to Irwin Nevada's officers or board members post-confirmation during the Plan term can only be done by filing a motion with the Bankruptcy Court and obtaining an order thereon.

On the Effective Date, Mr. Irwin shall continue as the CEO of DAI and Mr. Green shall continue as the CFO of DAI.

On the Effective Date, Irwin Nevada will continue to be the managing member of 5310.

Mr. Irwin's salary as of the Effective Date will return to his pre-petition salary of $790,000 a year.  Mr. Irwin will also be entitled to up to a 10% bonus relating to NDI (Net Disposable Income) annually. Mr. Green's salary as of the Effective Date will continue to be $240,000 a year, paid through his corporation Greenmark Services Corp.

**4.        Disbursing Agent.**

The Reorganized Debtors will act as the Disbursing Agent for purposes of making Distributions under the Plan.  If necessary, the Reorganized Debtors may retain Omni or Province to assist with Distributions.

**5.        Objections to Claims.**

The claims Bar Date in these cases is expected to be December 20, 2024 for non-governmental entities.  The Bar Date in these cases is February 5, 2025 for governmental entities. Attached as **Exhibit A** to the Disclosure Statement is a Claim Chart, which identifies all of the Debtors' scheduled claims and all of the filed proofs of claims which have been filed to date against the Debtors.  Following Confirmation of the Plan, the Reorganized Debtors shall be the sole entities with the standing and authority to file objections to Claims in these cases, and shall have the right to file objections to all Claims which are inconsistent with the Debtors' books and records unless the

Reorganized Debtors deems the inconsistency to be insignificant.  **Any proof of claim that is filed with the Bankruptcy Court and/or served on the Debtors after the Effective Date <u>will be deemed invalid</u> (without the need for the Reorganized Debtors to file an objection to such late-filed claim) unless the claimant files a motion for leave of Court to file such claim.**  With respect to disputed claims which are not resolved prior to the Effective Date, the Reorganized Debtors shall have the authority, in its sole discretion, in the reasonable exercise of its business judgment to settle or compromise any Claim following the Effective Date by submitting a stipulation to the Bankruptcy Court without a notice or hearing thereon.

As provided by Section 502(c) of the Bankruptcy Code, the Bankruptcy Court may estimate any contingent, unliquidated or disputed claim for purposes of Confirmation of the Plan.  The Bankruptcy Court shall retain jurisdiction over the Debtors, the Reorganized Debtors, these Cases and these Estates to resolve and to adjudicate any and all such objections to Claims which are commenced or continued following the Confirmation of the Plan.  Nothing contained in the Plan shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any rights of setoff or recoupment, or of any defense, the Debtors or the Reorganized Debtors may have with respect to any claim, or of any basis that the Reorganized Debtors may have to object to any such claim.

**<u>Any Proof of Claim or Interest that is filed with the Bankruptcy Court and/or served on the Debtors or Reorganized Debtors after the Effective Date will be deemed invalid unless the Claimant files a motion for leave of Court to file such Claim.</u>**

The Debtors specifically reserve the right to file objections to any and all Claims set forth in **Exhibit A** to the Disclosure Statement, and to any subsequently filed proofs of claim. An order confirming the Plan shall not be *res judicata*, collateral estoppel, or other bar to the Reorganized Debtors' right to object to such Claims after the Effective Date.

**6.      Payment Upon Resolution of Disputed Claims.**

The Disbursing Agent will not make any payment to the holder of a Disputed Claim until such Disputed Claim becomes an Allowed Claim.  Pending a resolution of the Disputed Claim, the Disbursing Agent will create a reserve account (the "Reserve Account") which will contain proposed distributions based on the Disputed Claims.  Within sixty (60) days after a Disputed Claim becomes

an Allowed Claim, the Disbursing Agent will make a payment on such Allowed Claim from the

Reserve Account in an amount equal to what the holder of such Allowed Claim would have received

if the Claim had been allowed in such amount as of the Effective Date.

**7.    Investigation and Prosecution of Claims and Avoidance Actions.**

As mentioned above, the Debtors intend on filing a complaint against EWB and CFG. The

Debtors reserve their right to file and prosecute such action.

As set forth in Attachment 3 to Irwin Nevada's Statement of Financial Affairs [Doc. No. 96,

pgs. 69 to 79], Irwin Nevada paid a total of $15,086,579.72 to creditors in the 90 day preference

period (with respect to creditors that received $7,575 or more during the 90 day preference period).

Irwin Nevada does not believe it has any preference claims arising out of (a) payments made in the

ordinary course of business to vendors, suppliers and service providers, or (b) payments made to

employees. The majority of the payments during this time period were to suppliers and servicer

providers that continued to supply products and provide services to the Debtors during this period,

and to professionals that also were providing ongoing services to the Debtors.  However, the Debtors

do believe that they have claims against the Lenders and other parties where EWB forced the

Debtors to make such payments.  The Debtors reserve their rights to pursue such preference actions.

The Reorganized Debtors will retain any claims against the Debtors' insiders, including its

current equity holders, and such claims shall revest in the Reorganized Debtors upon the Effective

Date.

**8.    Payment of Professional Fees and Expenses Incurred After the Effective Date.**

The Reorganized Debtors shall be entitled to employ such professionals that the Reorganized

Debtors deems appropriate and to pay the fees and expenses incurred by such professionals in the

ordinary course without any further order of the Bankruptcy Court.

**9.    Distributions to Be Made Pursuant to the Plan.**

Except as otherwise agreed to by the Reorganized Debtors in writing, Distributions to be

made to holders of Allowed Claims pursuant to the Plan may be delivered by regular mail, postage

prepaid, to the address shown in the Debtors' Schedules, as they may from time to time be amended

in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly

3015405

filed with the Bankruptcy Court, to such address.  Checks issued to pay Allowed Claims shall be null

and void if not negotiated within ninety (90) days after the date such check was mailed to the

intended recipient.  Those funds represented by voided checks that were not timely negotiated shall

become the property of the Reorganized Debtors.

### 10.    Corporate Matters.

The occurrence of the Effective Date shall constitute all approvals, consents and actions

required by any officers of the Debtors under applicable law, and shall enable the Debtors or the

Reorganized Debtors to execute any documents, instruments or agreements, and to take all corporate

and other actions that are specified in the Plan or the Plan Confirmation Order that are necessary or

appropriate to perform, implement and effectuate the Plan.  If necessary, on or before _____,

the Debtors will file a Plan Supplement with the Bankruptcy Court to provide the Court and parties

in interest with additional information and/or documents that the Debtors may deem reasonably

necessary to effectuate the transactions contemplated by the Plan (including, but not limited to, the

dissolution of Irwin Canada).

### 11.    Exemption from Transfer Taxes.

Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a

security, or the making or delivery of an instrument of transfer under a plan confirmed under § 1129

of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax.

Transfers under the Plan that are exempt from taxes under § 1146(c) of the Bankruptcy Code include

all transfers by the Debtors after the commencement of their chapter 11 Cases in contemplation of

the Plan but prior to the Effective Date, and all transfers to and by the Reorganized Debtors.  The

taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes,

transfer taxes, and other similar taxes.

### 12.    Exculpations and Releases.

***To the maximum extent permitted by law, neither the Debtors, the Reorganized Debtors,***

***the Committee members, nor any of their successors and assigns, advisors, attorneys, employees,***

***officers, directors, shareholders, agents, members, representatives, or Professionals employed or***

***retained by any of them whether or not by Bankruptcy Court order, each in their capacity as such,***

3015405

*shall have or incur liability to any Person for an act taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, confirming, implementing, or consummating the Plan, Disclosure Statement and all exhibits thereto and/or the transactions contemplated therein, or a contract, instrument, release or other agreement or document created or entered into in connection with the Plan; provided, however, that each of the above Persons shall be entitled to rely upon the advice of counsel concerning his or her duties pursuant to, or in connection with, the Plan or any related document, instrument or agreement; provided further that the foregoing exculpation shall have no effect on liability of any Person that results from any act or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct.*

**E.    Other Provisions of the Plan.**

**1.    Executory Contracts and Unexpired Leases.**

a.    <u>Assumptions.</u>

The following is a list of the Debtors' executory contracts and unexpired leases which the Debtors intend to assume on the Effective Date.  If the Debtors have additional contracts or seek to revise this list, they will include it in a Plan Supplement.  Set forth below is an itemization of the defaults which the Debtors contend exist and must be cured in connection with the Debtors' assumption of such executory contracts and unexpired leases (the "Cure Amounts"). The Debtors estimate that the total Cure Amounts that the Reorganized Debtors will be required to pay on the Effective Date will be approximately $0.  The Confirmation Order will constitute a Bankruptcy Court order approving the Debtors' assumption of all such executory contracts and unexpired leases and fixing the Cure Amounts for each such executory contract and unexpired lease in the amounts asserted by the Debtors as set forth below.

**Executory Contracts/Unexpired Leases That May Be Assumed by Irwin Nevada:**

| Vendor/Lessor | Description | Vendor/Lessor Address | Cure Amount | Cure Terms |
|---|---|---|---|---|
| 5310 Holdings | Trademark Licensing Agreement | 5310 Holdings (co-debtor) 300 Corporate Pointe, Ste 550 Culver City, CA 90230 | $0 | TBD |
| ADP | Master Service Agreement – | ADP | $0 | TBD |

| Vendor/Lessor | Description | Vendor/Lessor Address | Cure Amount | Cure Terms |
|---|---|---|---|---|
|  | Payroll – Already assumed pursuant to final wage order. | 1 ADP Blvd. Roseland, NJ 07068 |  |  |
| Brightedge Technologies | Subscription Agreement | Brightedge Technologies 989 E Hillsdale Blvd., Ste 300 Foster City, CA 94404 | $0 | TBD |
| Charter Communications Operating, LLC | Communications Agreement | Charter Communications 550 Continental Blvd. El Segundo, CA 90245 | $0 | TBD |
| Coast Warehouse Company | Warehouse Services | Coast Warehouse Company 4750 Zinfandel Ct. Ontario, CA 91761 | $0 | TBD |
| Culver Pointe, LLC | Non residential real property lease | Culver Pointe, LLC 300 Corporate Pointe, Ste 220 Culver City, CA 90230 | $0 | TBD |
| DSV Solutions Inc. | Services Agreement | DSV Solutions Inc. 2200 Yukon Ct Milton, ON L9E 1N5, Canada | $0 | TBD |
| Genomma Lab USA | Trademark Licensing Agreement | Genomma Lab USA 3737 Buffalo Speedway, Ste 1975 Houston, TX 77098 | $0 | TBD |
| Peac Solutions | Lease Agreement | Peac Solutions 300 Fellowship Rd. Mt. Laurel, NJ 08054 | $0 | TBD |
| Quadiant Leasing | Lease Agreement | Quadiant Leasing 210 Profess, Ste 100 Irvine, CA 92618 | $0 | TBD |
| Threshold Enterprises Ltd. | Distribution Agreement | Threshold Enterprises Ltd. 23 Janis Way Scotts Valley, CA 95066 | $0 | TBD |

b.    Rejections.

On the Effective Date, Irwin Nevada will be rejecting the following executory contract(s):

| Vendor/Lessor | Description | Vendor/Lessor Address |
|---|---|---|
| Airespring | Services Agreement | Airespring 600 Cleveland St., Ste 226 Clearwater, FL 33755 |

To the extent the Debtors are a party to any executory contract and/or unexpired lease that is not addressed above, such executory contract or unexpired lease will be deemed rejected, and the Court order confirming the Plan will constitute a Bankruptcy Court order approving the Debtors' rejection of all such executory contracts and unexpired leases.

c. Cures.

The Cure Amounts that the Debtors believes are required are set forth in the charts in section a above. Any party who wishes to object to the Debtors' assumption of any of the unexpired leases or executory contracts and/or to the Cure Amounts of any defaults the Debtors believe exist must file a written objection with the Bankruptcy Court no later than 14 days prior to the date first set for the Plan Confirmation Hearing, and serve such objection on counsel to the Debtors. The Bankruptcy Court may deem the failure of any party to file such a timely objection to constitute consent to the Debtors' assumption of the unexpired leases and executory contracts set forth above and to the Cure Amounts of any defaults the Debtors must cure in connection with the Debtors' assumption of these unexpired leases and executory contracts.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE WHICH IS REJECTED ON THE EFFECTIVE DATE SHALL BE THIRTY (30) DAYS AFTER THE EFFECTIVE DATE. Any claim based on the rejection of an unexpired lease or executory contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise. Any Allowed Claim resulting from the rejection of an unexpired lease or executory contract will be classified and treated as a Class 3 Allowed Claim.

**2.      Risk Factors.**

The primary risk of implementing the Plan would be the Debtors' inability to meet its projections set forth in the Plan Projections.   If for some reason the Debtors are unable to meet their projections, the Debtors reserve the right to seek to sell their business and/or to find an investor in order to enable the Debtors to pay all Allowed Claims in full.

There is a risk that the Plan is not confirmable under section 1129(a) of the Bankruptcy Code because not all impaired classes vote in favor of the Plan.

There is a risk that the Plan is not confirmable under the "cramdown" provision of section 1129(b) of the Bankruptcy Code.

**3.      Changes in Rates Subject to Regulatory Commission Approval.**

The Debtors are not subject to governmental regulatory commission approval of their rates.

31

3015405

**F.      Retention of Jurisdiction.**

Following the Confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court shall retain such jurisdiction as is legally permissible including for the following purposes:

1.      To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

2.      To determine the allowability, classification, or priority of Claims and to consider any objection to claim or interest whether such objection is filed before or after the Effective Date;

3.      To determine the extent, validity and priority of any lien asserted against any Asset or property of the Debtors or the Debtors' Estates;

4.      To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary or appropriate for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order, and all matters referred to in the Plan and the Confirmation Order, and to determine all matters that may be pending before the Bankruptcy Court in this Case on or before the Effective Date;

5.      To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of Professionals for the period on or before the Effective Date;

6.      To determine any request for payment of administrative expenses;

7.      To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any Claims resulting therefrom;

8.      To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of these Cases whether before, on, or after the Effective Date, including Claims, Causes of Action, and Avoidance Actions, and the Reorganized Debtors shall have the right to commence in the Bankruptcy Court any Causes of Action, including any Avoidance Actions, after the Effective Date, and to continue with the

3015405

prosecution in the Bankruptcy Court of any such claims, Causes of Action and Avoidance Actions which were commenced but not completed by the Debtors prior to the Effective Date;

9.    To determine such other matters and for such other purposes as may be contemplated by the Plan or Confirmation Order;

10.    To modify the Plan under § 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan, or to reconcile any inconsistency in the Plan, so as to carry out its intents and purposes;

11.    Except as otherwise provided in the Plan or the Confirmation Order, to issue injunctions, to take such other actions, or make such other orders, as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or implementation by any Person or other entity of the Plan or the Confirmation Order;

12.    To issue such orders in aid of consummation, and in aid of implementation, of the Plan and the Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any Person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

13.    To enter a final decree closing these Cases.

**G.    Amendments to Corporate Documents.**

On the Effective Date, the officers and board members of the Reorganized Debtors shall be authorized to amend any corporate documents as necessary and to take all actions necessary and appropriate to carry out the terms of the Plan.

**H.    Dissolution of the Committee.**

On the Effective Date, the Committee, to the extent that it serves as the Official Committee of Unsecured Creditors appointed in the bankruptcy cases of Irwin Nevada and Irwin Canada, shall be dissolved and its members shall be released and discharged from all rights and duties arising from or related to these Cases.

**I.    Miscellaneous Issues Regarding Plan Distribution.**

**1.    No Fractional Distributions.**

No Distributions in fractions of hundredths of U.S. Dollars ($0.00's) (i.e., cents) shall be

33

3015405

issued.  If the Distribution amount allocated to an Allowed Claim at the time of a Distribution

hereunder would include fractions of cents, the amount to be distributed to the holder of such Claim

shall be rounded down to the highest integral number of cents in the applicable Claim amount.

**2.      Name and Address of Holder of Claim.**

For purposes of all distributions under the Plan, the Disbursing Agent can rely on the name

and address of the holder of each Allowed Claim as shown on any timely filed proof of claim and, if

none, as shown on the Debtors' Schedules, except to the extent that the Disbursing Agent first

receives adequate written notice of a change of address, properly executed by the Holder or its

authorized agent.

**3.      Unclaimed Distribution.**

Any Unclaimed Distribution under the Plan shall be forfeited to the Reorganized Debtors.

An Unclaimed Distribution is any Distribution made by the Reorganized Debtors to the address of

the recipient reflected in the Schedules (or on any Proof of Claim filed by the Claimant), by: (a)

checks which have been returned as undeliverable without a proper forwarding address; (b) checks

which were not mailed or delivered because of the absence of a proper address to which to mail or

deliver the same; (c) checks which have not been cashed for a period of ninety (90) days after the

date such checks were issued, or (d) disbursements that were not made because the Holder of such

Allowed Claim failed to provide required tax information within forty-five (45) days after the

Reorganized Debtors have sent any request for same to such Claimant's address as reflected in the

Schedules and/or such Claimant's Proof of Claim.

**4.      De Minimus Cash Distributions.**

Notwithstanding anything to the contrary in the Plan, no Cash Distributions shall be made on

account of any Allowed Claim if the Cash Distribution amount is less than $25.00.  Holders of

Allowed Claims who would otherwise be entitled to a Distribution in the amount of less than $25.00

shall receive no Distribution on account of such Allowed Claim because the value of such Allowed

Claim would be de minimus and the administrative costs associated with processing and mailing the

Distributions to the holder of such Allowed Claim would likely exceed the amount of the

Distribution. The Debtors may, at their own discretion, pay any claim totaling $5,000 or less in full.

## IV.    EFFECT OF CONFIRMATION OF THIS PLAN

**A.    Discharge.**

On the Effective Date, the Debtors will receive a discharge under this Plan pursuant to and in accordance with the provisions of § 1141 of the Bankruptcy Code because there has not been a liquidation of all or substantially all of the property of the Debtors' Estates.  Pursuant to § 1141(d)(1)(A),  Confirmation of this Plan will discharge "the debtor[s] from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not – (i) a proof of claim based on such debt is filed or deemed filed under section 501 of this title; (ii) such claim is allowed under section 502 of this title; or (iii) the holder of such claim has accepted the plan …".  11 U.S.C. §§ 1141(d)(1)(A)(i), (ii) and (iii).  **In other words, Confirmation of the Plan will effectuate a discharge as to all debts or liabilities, whether contingent, unliquidated, disputed, known or unknown, that were incurred or arose before Confirmation of the Plan.**  This includes all types of Claims and obligations arising out of and/or including, but not limited to, (i) all causes of action under state and Federal law (e.g., breach of contract, breach of fiduciary duty, false advertising, etc.), (ii) trade payables, (iii) landlord claims, (iv) tax Claims including interest, (v) environmental claims, (vi) employee related claims and (vii) any other known or unknown Claim from any debt arising prior to Plan Confirmation.

**This Plan shall bind the holders of all Claims whether or not they vote to accept the Plan.  The rights afforded in the Plan and the treatment of all Claims therein shall be in complete satisfaction, discharge and release of all Claims against the Debtors or their Assets of any nature whatsoever except as otherwise specifically provided in the Plan.  Except as set forth in the Plan, all Claims shall be forever satisfied, discharged and released in full on the Effective Date, and all holders of Claims shall be forever precluded and enjoined from asserting Claims against the Reorganized Debtors.  Any litigation pending prepetition and/or initiated postpetition in any court other than the Bankruptcy Court where relief from stay was not obtained from the Bankruptcy Court shall be deemed discharged upon Plan Confirmation and the occurrence of the Effective Date.**

3015405

**B.**     **Continuing Stay/Injunction.**

The automatic stay is lifted upon the Effective Date as to property of the Estates.  However, the stay continues to prohibit collection or enforcement of prepetition Claims against the Reorganized Debtors or the Reorganized Debtors' property until the earlier of the date: (1) the Debtors' bankruptcy Cases are closed, or (2) the Debtors' bankruptcy Cases are dismissed. Therefore, all parties bound by the Plan shall take no action with respect to, and are enjoined from, collecting or enforcing their prepetition Claims against the Reorganized Debtors as set forth herein, and as otherwise provided by operation of law, until the earlier of the date that (1) the Debtors' bankruptcy Cases are closed, or (2) the Debtors' bankruptcy Cases are dismissed. Specifically, absent further order of the Bankruptcy Court, EWB and/or CFG are stayed from, among other things, (i) taking any action to exercise their guaranty and security agreement against DAI's stock, Irwin Nevada's stock or 5310's membership interests, (ii) taking control of DAI's or Irwin Nevada's board of directors, and/or (iii) taking control of the Reorganized Debtors' business.

**The Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any Claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to this Plan.**

Except as provided in this Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an interest or other right of an equity holder that is impaired pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtors, the Debtors' Estates, the Reorganized Debtors or their property on account of any such discharged Claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (v) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

3015405

**By accepting distribution pursuant to this Plan, each holder of an Allowed Claim receiving a Distribution pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this Section.**

**C.    Revesting of Property in the Reorganized Debtors.**

With respect to Irwin Nevada, DAI and 5310, the Confirmation of the Plan revests all property of their respective Estates in the Reorganized Debtors respectively, including, but not limited to, any litigation claims pursuant to the Plan and the Bankruptcy Code.  From and after the Effective Date, the Reorganized Debtors may operate their business and may use, acquire, and dispose of property, including payment of all business expenses and professional fees and expenses, and compromise and settle any claims or causes of actions without supervision or consent of the Bankruptcy Court, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

The Reorganized Debtors shall have, retain, reserve and be entitled to assert all claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date as fully as if the Debtors' bankruptcy Cases had not been commenced; and all of the Reorganized Debtors' legal and equitable rights respecting any such claims which are not specifically waived, extinguished, or relinquished by the Plan may be asserted after the Effective Date by the Reorganized Debtors.

With respect to Irwin Canada, Confirmation of the Plan vests all of Irwin Canada's property, assets and liabilities in DAI.  All subsidiaries of Irwin Canada will become subsidiaries of DAI as of the Effective Date of the Plan.

**D.    Modification of this Plan.**

The Debtors may modify this Plan at any time before confirmation.  However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on the Plan if the Debtors modify the Plan before confirmation.  The Debtors or the Reorganized Debtors, as the case may be, may also seek to modify the Plan at any time after Confirmation of the Plan so long as (1) the Plan has not been substantially consummated, and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

37

3015405

**E.     Post-Confirmation Status Reports.**

Until final decrees closing the Debtors' Case are entered, the Reorganized Debtors shall file regular status reports if so ordered by the Bankruptcy Court.

**F.     Post-Confirmation Conversion/Dismissal – Local Bankruptcy Rule 3020-1(e).**

A Creditor or any other party in interest may bring a motion to convert or dismiss the Cases under § 1112(b) of the Bankruptcy Code after the Plan is confirmed if there is a default in performing the Plan. If the Bankruptcy Court orders the Cases converted to chapter 7 after the Plan is confirmed, then all property that had been property of the chapter 11 Estates, and that has not been disbursed pursuant to the Plan, will revest in the chapter 7 estate, and the automatic stay will be re-imposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Bankruptcy Court during these Cases. The Plan Confirmation Order may also be revoked under very limited circumstances. The Bankruptcy Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the Plan Confirmation Order.

**[Remainder of Page Intentionally Blank]**

3015405

**G.    Final Decree.**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtors shall file a motion with the Bankruptcy Court to obtain a final decree to close these cases.  The Reorganized Debtors shall be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

DATED:  October 31, 2024                Irwin Naturals, a Nevada Corporation

By: _____
        Klee Irwin, Chief Executive Officer

DATED:  October 31, 2024                Irwin Naturals, Inc., a British Colombia Corporation

By: _____
        Klee Irwin, Chief Executive Officer

DATED:  October 31, 2024                5310 Holdings, LLC

By: _____
        Klee Irwin, as CEO of Irwin Naturals, a Nevada corporation, Managing Member of 5310 Holdings, LLC

DATED:  October 31, 2024                DAI US HoldCo Inc.,

By: _____
        Klee Irwin, Chief Executive Officer

Submitted By:

BG Law LLP

By: _/s/ Susan K. Seflin_____
        Susan K. Seflin
Attorneys for Chapter 11 Debtors
and Plan Proponents

3015405

# EXHIBIT B

**PRELIMINARY FINANCIALS & SUBJECT TO MATERIAL CHANGE**

*Irwin Naturals Nevada*

*Chapter 11 Plan : Projections*

| | Actual 2019 | Actual 2020 | Actual 2021 | Actual 2022 | Actual 2023 | Forecast 2024 | Forecast 2025 | Forecast 2026 | Forecast 2027 | Forecast 2028 | Forecast 2029 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Actuals / Forecast** | | | | | | | | | | | |
| Year/Month/Quarter | | | | | | | | | | | |
| Period Starting | 01/01/19 | 01/01/20 | 01/01/21 | 01/01/22 | 01/01/23 | 01/01/24 | 01/01/25 | 01/01/26 | 01/01/27 | 01/01/28 | 01/01/29 |
| Period Ending | 12/31/19 | 12/31/20 | 12/31/21 | 12/31/22 | 12/31/23 | 12/31/24 | 12/31/25 | 12/31/26 | 12/31/27 | 12/31/28 | 12/31/29 |

**Income Statement**

*Gross sales*

| | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MM+ | | | | | 65.6 | 58.1 | 61.2 | 62.1 | 63.0 | 64.0 | 64.9 |
| HFS+ | | | | | 29.7 | 29.5 | 31.0 | 32.9 | 35.0 | 37.2 | 39.5 |
| ECOMM | | | | | 6.1 | 5.4 | 5.7 | 5.9 | 6.1 | 6.3 | 6.5 |
| INTL | | | | | 0.9 | 0.6 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 |
| **Total Gross Sales (1)** | 116.0 | 117.0 | 134.2 | 121.2 | 102.3 | 93.6 | 98.8 | 101.9 | 105.1 | 108.4 | 112.0 |
| (-) Promotions, Discounts and other adj. | (28.2) | (27.6) | (33.8) | (33.7) | (30.8) | (23.4) | (25.4) | (26.0) | (26.7) | (27.3) | (28.1) |
| **Net Sales** | 87.9 | 89.4 | 100.3 | 87.5 | 71.4 | 70.2 | 73.4 | 75.9 | 78.4 | 81.1 | 83.9 |
| (-) Cost of Goods Sold | (48.9) | (52.9) | (55.6) | (48.6) | (43.2) | (39.0) | (40.8) | (42.0) | (43.3) | (44.6) | (46.0) |
| **Gross profit** | 39.0 | 36.5 | 44.7 | 39.0 | 28.3 | 31.1 | 32.6 | 33.9 | 35.1 | 36.5 | 37.9 |
| (-) General and Administrative Expenses | (9.5) | (5.8) | (10.2) | (9.2) | (11.0) | (10.1) | (8.8) | (9.1) | (9.4) | (9.7) | (10.0) |
| (-) Sales and Marketing Expenses | (12.1) | (11.5) | (12.0) | (11.4) | (10.5) | (7.0) | (8.3) | (8.6) | (8.9) | (9.2) | (9.5) |
| (-) Distribution Expenses | (9.2) | (10.1) | (10.6) | (10.0) | (9.8) | (8.7) | (7.7) | (8.0) | (8.2) | (8.5) | (8.8) |
| **Total Operating Expenses** | (30.8) | (27.4) | (32.9) | (30.6) | (31.4) | (25.7) | (24.9) | (25.7) | (26.5) | (27.3) | (28.2) |
| **Operating Income** | 8.2 | 9.1 | 11.8 | 8.3 | (3.1) | 5.4 | 7.7 | 8.2 | 8.7 | 9.2 | 9.7 |
| Total Other Income (Expense) | (0.9) | (1.0) | (0.5) | (0.1) | (1.6) | (4.0) | (4.4) | (2.0) | (1.8) | (1.4) | (2.0) |
| **Net income (loss)** | 7.3 | 8.1 | 11.3 | 8.2 | (4.7) | 1.4 | 3.4 | 6.2 | 6.9 | 7.8 | 7.7 |
| **EBITDA** | 7.5 | 8.2 | 11.4 | 8.3 | (3.1) | 6.6 | 7.7 | 8.2 | 8.7 | 9.2 | 9.7 |

**Income Statement Metrics**

| | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| *Gross Sales Growth %* | n/a | 0.8% | 12.8% | (10.7%) | (18.5%) | (9.3%) | 5.3% | 3.0% | 3.1% | 3.1% | 3.1% |
| *Dilution % of Gross Sales* | 24.3% | 23.6% | 25.2% | 27.8% | 30.1% | 25.0% | 25.7% | 25.5% | 25.4% | 25.2% | 25.1% |
| *Gross Profit % of Net Sales* | 44.4% | 40.8% | 44.5% | 44.5% | 39.5% | 44.4% | 44.4% | 44.6% | 44.8% | 45.0% | 45.2% |
| *Operating Income % of Net Sales* | 9.4% | 10.2% | 11.8% | 9.5% | (4.4%) | 7.7% | 10.5% | 10.8% | 11.1% | 11.3% | 11.6% |
| *EBITDA % of Net Sales* | 8.6% | 9.2% | 11.4% | 9.5% | (4.4%) | 9.4% | 10.5% | 10.8% | 11.1% | 11.3% | 11.6% |
| *G&A % of Net Sales* | 10.8% | 6.5% | 10.2% | 10.5% | 15.4% | 14.3% | 12.0% | 12.0% | 11.9% | 11.9% | 11.9% |
| *S&M % of Net Sales* | 13.8% | 12.9% | 12.0% | 13.1% | 14.7% | 10.0% | 11.4% | 11.3% | 11.3% | 11.3% | 11.3% |
| *Distribution % of Net Sales* | 10.5% | 11.3% | 10.6% | 11.5% | 13.8% | 12.3% | 10.5% | 10.5% | 10.5% | 10.5% | 10.5% |

*(1) Highly preliminary estimate subject to further audit and working sessions with sales team to refine FY '25 and beyond.*

**Exhibit B_001**

**PRELIMINARY FINANCIALS & SUBJECT TO MATERIAL CHANGE**

*Irwin Naturals Nevada*

*Chapter 11 Plan : Projections*

| | Actuals | | | | | Forecast | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Year/Month/Quarter** | Actual 2019 | Actual 2020 | Actual 2021 | Actual 2022 | Actual 2023 | Forecast 2024 | Forecast 2025 | Forecast 2026 | Forecast 2027 | Forecast 2028 | Forecast 2029 |
| **Period Starting** | 01/01/19 | 01/01/20 | 01/01/21 | 01/01/22 | 01/01/23 | 01/01/24 | 01/01/25 | 01/01/26 | 01/01/27 | 01/01/28 | 01/01/29 |
| **Period Ending** | 12/31/19 | 12/31/20 | 12/31/21 | 12/31/22 | 12/31/23 | 12/31/24 | 12/31/25 | 12/31/26 | 12/31/27 | 12/31/28 | 12/31/29 |

### Balance Sheet

**Assets**

| | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|---|---|
| Cash | $ 0.2 | $ 4.4 | $ 3.3 | $ 2.5 | $ 3.1 | $ 3.2 | $ 4.4 | $ 9.7 |
| Accounts Receivable - Gross | 21.5 | 12.2 | 12.6 | 12.3 | 12.1 | 12.5 | 12.9 | 13.4 |
| Accounts Receivable - Credit Bal. Adj. | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 |
| A/R - Allowance | (0.4) | (0.4) | (0.7) | (0.6) | (0.6) | (0.7) | (0.7) | (0.7) |
| Inventory | 24.2 | 15.7 | 11.3 | 11.6 | 11.4 | 11.7 | 12.1 | 12.5 |
| Inventory Rebate | (0.8) | (0.4) | (0.4) | (0.4) | (0.4) | (0.4) | (0.4) | (0.4) |
| Inventory Reserve / Allowance | (1.1) | (2.0) | (2.1) | (2.3) | (2.3) | (2.4) | (2.4) | (2.5) |
| Other Current Assets | 4.7 | 4.4 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 |
| **Total Current Assets** | $ 48.6 | $ 34.1 | $ 28.0 | $ 27.0 | $ 27.3 | $ 28.0 | $ 29.9 | $ 35.8 |
| Intercompany and other assets (1) | 15.2 | 28.1 | 30.2 | 30.2 | 30.2 | 30.2 | 30.2 | 30.2 |
| Fixed Assets, Net | 0.2 | 0.2 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 |
| Intangible Assets, Net | - | - | - | - | - | - | - | - |
| **Total Assets** | $ 63.9 | $ 62.4 | $ 58.3 | $ 57.3 | $ 57.6 | $ 58.3 | $ 60.2 | $ 66.1 |

**Liabilities**

| | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|---|---|
| Accounts Payable (2) | 7.8 | 8.1 | 8.7 | 3.5 | 3.5 | 3.6 | 3.7 | 3.8 |
| Other Current Liabilities | 8.3 | 6.4 | 4.1 | 3.8 | 3.8 | 3.8 | 3.8 | 3.8 |
| **Total Current Liabilities** | $ 16.1 | $ 14.5 | $ 12.7 | $ 7.3 | $ 7.3 | $ 7.4 | $ 7.5 | $ 7.6 |

*Long Term Liabilities*

| | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|---|---|
| Prepetition Secured Debt | 16.6 | 23.7 | 19.0 | 15.1 | 10.0 | 4.6 | - | - |
| Prepetition GUC Claims | - | - | - | 4.9 | 4.2 | 3.3 | 1.9 | - |
| New Term Loan Facility | | | | | | | | |
| Other Long Term Liabilities | 4.5 | 2.0 | 3.2 | 3.2 | 3.2 | 3.2 | 3.2 | 3.2 |
| **Long-term liabilities** | $ 21.0 | $ 25.7 | $ 22.2 | $ 23.1 | $ 17.3 | $ 11.0 | $ 5.1 | $ 3.2 |
| **Total Liabilities** | $ 37.1 | $ 40.2 | $ 34.9 | $ 30.5 | $ 24.6 | $ 18.4 | $ 12.6 | $ 10.8 |
| **Total Equity** | $ 26.8 | $ 22.1 | $ 23.5 | $ 26.8 | $ 33.0 | $ 39.9 | $ 47.6 | $ 55.4 |
| **Liabilities + Equity** | $ 63.9 | $ 62.4 | $ 58.3 | $ 57.3 | $ 57.6 | $ 58.3 | $ 60.2 | $ 66.1 |

*(1) Emergence portion of balance to be written off for tax purposes in '24 not reflected in this exhibit.*

*(2) Prepetition portion to long-term payables EOY '24.*

**Exhibit B_002**

**PRELIMINARY FINANCIALS & SUBJECT TO MATERIAL CHANGE**

*Irwin Naturals Nevada*

*Chapter 11 Plan : Projections*

| Year/Month/Quarter | Actual 2019 | Actual 2020 | Actual 2021 | Actual 2022 | Actual 2023 | | Forecast 2024 | Forecast 2025 | Forecast 2026 | Forecast 2027 | Forecast 2028 | Forecast 2029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Period Starting | 01/01/19 | 01/01/20 | 01/01/21 | 01/01/22 | 01/01/23 | | 01/01/24 | 01/01/25 | 01/01/26 | 01/01/27 | 01/01/28 | 01/01/29 |
| Period Ending | 12/31/19 | 12/31/20 | 12/31/21 | 12/31/22 | 12/31/23 | | 12/31/24 | 12/31/25 | 12/31/26 | 12/31/27 | 12/31/28 | 12/31/29 |

**Debt Schedule Waterfall**

*Debt Repayment Waterfall*

| | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|
| Beginning of Period Cash | $ | 3.3 | $ 2.5 | $ 3.1 | $ 3.2 | $ 4.4 |
| (-) Minimum Cash | | (3.0) | (3.0) | (3.0) | (3.0) | (3.0) |
| **Net Beginning of Period Cash** | $ | 0.3 | $ (0.5) | $ 0.1 | $ 0.2 | $ 1.4 |
| | | | | | | |
| EBITDA | | 7.7 | 8.2 | 8.7 | 9.2 | 9.7 |
| (-) Capex | | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) |
| (-) Cash Taxes | | (0.4) | (0.6) | (0.7) | (0.8) | (0.8) |
| (-) Non-Recurring Expenses | | (2.3) | (0.1) | (0.2) | (0.3) | (1.1) |
| (+/-) in Working Cap. & Other Assets/Liabilities | | 0.4 | 0.2 | (0.5) | (0.6) | (0.6) |
| (+) Funding from New Term Loan Facility | | - | - | - | - | - |
| **Cash Available for Debt Service** | $ | 5.7 | $ 7.1 | $ 7.2 | $ 7.5 | $ 8.6 |
| (-) Secured Debt Interest | | (1.6) | (1.2) | (0.7) | (0.2) | - |
| (-) Unsecured Debt Interest | | - | - | - | - | - |
| (-) New Term Loan Facility Interest | | - | - | - | - | - |
| **Cash Available for Mandatory Debt Repayment** | $ | 4.1 | $ 5.9 | $ 6.5 | $ 7.4 | $ 8.6 |
| (-) Secured Debt Repayment | | (3.0) | (4.0) | (4.0) | (3.6) | - |
| (-) Unsecured Debt Repayment GUC | | - | - | - | - | - |
| (-) New TL Facility Repayment (Mandatory) | | - | - | - | - | - |
| **Cash Available for Discretionary Debt Repayment** | $ | 1.1 | $ 1.9 | $ 2.5 | $ 3.8 | $ 8.6 |
| (-) Secured Debt Repayment | | (0.9) | (1.1) | (1.4) | (1.0) | - |
| (-) Unsecured Debt Repayment GUC | | (0.6) | (0.7) | (0.9) | (1.4) | (1.9) |
| **Ending Cash Available** | $ | (0.5) | $ 0.1 | $ 0.2 | $ 1.4 | $ 6.7 |
| (-) Secured Debt Repayment (Refinance) | | - | - | - | - | - |
| (-) Unsecured Debt Repayment GUC (Refinance) | | - | - | - | - | - |
| **Ending Cash Available** | $ | (0.5) | $ 0.1 | $ 0.2 | $ 1.4 | $ 6.7 |
| (+) Minimum Cash | | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 |
| **End of Period Cash** | $ | 2.5 | $ 3.1 | $ 3.2 | $ 4.4 | $ 9.7 |

**Exhibit B_003**

**PRELIMINARY FINANCIALS & SUBJECT TO MATERIAL CHANGE**

*Irwin Naturals Nevada*

<u>*Chapter 11 Plan*</u> : Projections

| | Actual 2019 | Actual 2020 | Actual 2021 | Actual 2022 | Actual 2023 | | Forecast 2024 | Forecast 2025 | Forecast 2026 | Forecast 2027 | Forecast 2028 | Forecast 2029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Year/Month/Quarter | | | *Actuals* | | | | | | | *Forecast* | | |
| Period Starting | 01/01/19 | 01/01/20 | 01/01/21 | 01/01/22 | 01/01/23 | | 01/01/24 | 01/01/25 | 01/01/26 | 01/01/27 | 01/01/28 | 01/01/29 |
| Period Ending | 12/31/19 | 12/31/20 | 12/31/21 | 12/31/22 | 12/31/23 | | 12/31/24 | 12/31/25 | 12/31/26 | 12/31/27 | 12/31/28 | 12/31/29 |
| **Prepetition Secured Debt** | | | | | | | | | | | | |
| Beg. Balance | | | | | | | $ 19.0 | $ 15.1 | $ 10.0 | $ 4.6 | $ 0.0 | |
| (-) Repayment | | | | | | | (3.9) | (5.1) | (5.4) | (4.6) | - | |
| **Ending Balance** | | | | | | | $ 15.1 | $ 10.0 | $ 4.6 | $ - | $ 0.0 | |
| **Prepetition Unsecured Debt** | | | | | | | | | | | | |
| Beg. Balance | | | | | | | $ 5.5 | $ 4.9 | $ 4.2 | $ 3.3 | $ 1.9 | |
| (-) Repayment | | | | | | | (0.6) | (0.7) | (0.9) | (1.4) | (1.9) | |
| **Ending Balance** | | | | | | | $ 4.9 | $ 4.2 | $ 3.3 | $ 1.9 | $ - | |
| **Term Loan** | | | | | | | | | | | | |
| Beg. Balance | | | | | | | $ - | $ - | $ - | $ - | $ - | |
| (+) Additions | | | | | | | | | | | | |
| (-) Repayment | | | | | | | | | | | | |
| **Ending Balance** | | | | | | | $ - | $ - | $ - | $ - | $ - | |
| Total Debt | | | | | $ 23.7 | | $ 19.0 | $ 20.0 | $ 14.2 | $ 7.9 | $ 1.9 | $ 0 |
| Total Interest Paid | | | | | $ 1.5 | | $ 1.3 | $ 1.6 | $ 1.2 | $ 0.7 | $ 0.2 | $ - |

| **Credit Metrics** | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EBITDA LTM | | | | | $ (3.1) | | 6.6 | 7.7 | 8.2 | 8.7 | 9.2 | 9.7 |
| Interest Expense LTM | | | | | 1.5 | | 1.3 | 1.6 | 1.2 | 0.7 | 0.2 | - |
| Total Debt | | | | | 23.7 | | 19.0 | 20.0 | 14.2 | 7.9 | 1.9 | 0.0 |
| Cash | | | | | 4.4 | | 3.3 | 2.5 | 3.1 | 3.2 | 4.4 | 9.7 |
| *Total Debt to EBITDA* | | | | | n/a | | 2.9x | 2.6x | 1.7x | 0.9x | 0.2x | 0.0x |
| *Net Debt to EBITDA* | | | | | n/a | | 2.4x | 2.2x | 1.3x | 0.5x | n/a | n/a |
| *Interest Coverage* | | | | | n/a | | 4.9x | 4.8x | 6.8x | 11.6x | 60.3x | n/a |

**Exhibit B_004**

*Irwin Naturals Nevada*
*Waterfall Forecast Notes*

| Item Group | Assumption |
|---|---|
| **General** | |

**Disclaimer**

This financial model (the "Model") with respect to Irwin Naturals Inc. and its affiliates and subsidiaries (the "Debtors" or the "Company") has been prepared solely for inclusion in the Disclosure Statement accompanying the Debtor's Chapter 11 Plan (the "Plan") in these cases pending before the court. This model is intended to provide creditors and other stakeholders with a projected financial performance of the Company in connection with evaluating its Plan, and should not be construed as an offering of securities or an offer to sell, nor a solicitation of an offer to buy, any securities of the Debtors.

The information contained in this Model is derived from unaudited data and guidance from management on future performance and is based on a variety of assumptions about future conditions, many of which are beyond the control of the Debtors' and subject to significant uncertainties. As a result, the actual financial and operational outcomes may differ materially from those projected herein. This model may be revised and refined prior to the confirmation hearing.

**Forecast Period**

This Model projects financial performance from October 1, 2024 through December 31, 2029. It assumes an exit from chapter 11 bankruptcy between December 31, 2024 and January 31, 2025, but may vary as the Debtors continue operating in their chapter 11 cases.

**Base Assumptions**

**Gross Sales:**
FY25 is projected to account for price increases generally ranging from 3-20% for select SKUs and customers occurring between 2024 and 2025. The price increases in the model are implemented using a sales plan that forecasts monthly sales volume by SKU and customer relative to the unit sales price for that respective period (i.e., pre or post-price increase). From FY26 to FY29, gross sales are expected to grow by ~3% annually as a proxy for general economic growth, continued product innovation, and maintenance price increases as determined necessary by management. The Company does not project an increase in unit volume from 2024 to 2025 in the aggregate (slight decrease overall) or thereafter as part of this analysis; however, unit volumes vary by individual account and by SKU in accordance with historical trends and planning.

**Dilution:**
Uses the actual average dilution from January to August 2024, with a slight increase for each channel beginning in 2025. These figures are subject to change as the Debtors' continue operating in their chapter 11 cases.

**Cost of Goods Sold ("COGS"):**
COGS for FY24 and FY25 leverages management's product-by-product sales plan to allocate COGS relative to planned unit volume. The COGS forecast uses internal data on cost basis by SKU to aggregate total COGS by sales channel, resulting in total COGS by sales channel. For 2026 and beyond, COGS is forecasted by sales channel as the historical average of COGS in dollars for each sales channel in FY25 as a percent of gross sales for the same sales channel (i.e., variable to gross sales by channel fixed at the FY25 average).

**Exhibit B_005**

*Irwin Naturals Nevada*
*Waterfall Forecast Notes*

| Item Group | Assumption |
|---|---|
| **Other Income Statement Line Items** | |
| General & Administrative ("G&A") Payroll | Q424: Management forecast in-line with recent historical periods and adjusted for key staffing needs and normalized insider compensation<br>FY25: 2025 forecast based on Q4 24 payroll plus normalized insider compensation<br>FY26-29: Variable forecast growing in-line with annual sales |
| All other G&A Expenses | Q424: Management forecast normalized to be near in-line with historical expenditures relative to gross sales and resource needs per management<br>FY25:  Includes normalized costs based on historical averages relative to gross sales and management guidance<br>FY26-29: Variable forecast based on annual sales<br>Note: Some amounts currently budgeted for G&A may need to be re-allocated to S&M expenditures as the company continues refining its FY25 budgeting |
| Sales & Marketing ("S&M") Payroll Expenses | Q424: Management forecast in-line with recent historical periods and adjusted for key staffing needs and normalized compensation<br>FY25: Forecast based on Q4 24 payroll and hiring needs<br>FY26-29: Variable forecast based on annual gross sales |
| S&M Advertising & Promotion | Q424: Management forecast normalized from 2024 actuals to amounts near in-line with historical expenditures<br>FY25: Q1 2025 assumes continued expenditures in-line with guidance provided by management from Q4 2024, the remaining 2025 forecast is variable based on gross sales times average of Q4 2024 and Q1 2025 forecast<br>FY26-29: Variable forecast based on annual sales<br>Note: Some amounts currently budgeted for G&A may need to be re-allocated to S&M expenditures as the company continues refining its FY25 budgeting |
| S&M Selling Expenses | Q424: Management guidance based on historical need relative to gross sales<br>FY25: Q1 2025 continuation of management forecasted expenditures from Q4 2024. The remainder of FY25 is forecast as variable based on gross sales times the average of S&M as a percentage of gross sales for 2024 September YTD<br>FY26-29: Variable forecast based on annual sales |
| All other S&M Expenses | Q424: Management guidance based on historical trends and sales plan need<br>FY25: Q1 continuation of management forecasted expenditures from Q4 2024. The remaining 2025 forecast normalizes these costs based on historical averages relative to gross sales<br>FY26-29: Variable forecast based on annual gross sales |
| Dist. Freight Costs<br>Dist. Fulfilment Costs | Q424: Reflects cost changes due to changing distribution methodologies (i.e., use of 3PLs vs in-house distribution)<br>FY25: Q1 continuation of management forecasted expenditures from Q4 2024. The remaining FY25 forecast is variable based on gross sales times avg. of 2024 YTD through September<br>FY26-29: Variable forecast based on annual sales |
| All other Dist. Expenses | Q424: Reflects cost savings from changing distribution methodologies (i.e., use of 3PLs vs in-house distribution)<br>FY25: Q1 continuation of management forecasted expenditures from Q4 2024. The remaining FY25 forecast normalizes these costs based on Q3 2024 averages<br>FY26-29: Variable forecast based on annual sales |
| Depreciation | Fixed based on September 2024 depreciation expense |
| Income Taxes | FY24-29: Federal income taxes offset by ~$32mm of operating losses + ~$3mm of disallowed business interest expenses; state income taxes at 5.3% assumed average for all states |
| Interest Expense | FY24: $155k per month<br>FY25-29: Secured debt outstanding in period times 9% per annum |
| Restructuring Expenses | FY25: Primarily professional fees and UST fees; Reflected as actual cash expenses (not accrual) for periods after September '24. Assumed to be paid in cash for the post-petition and post-confirmation periods for illustrative purposes |
| Other income / (expenses) | Management's 10% share of discretionary payments disbursed one period after accrual |

*Irwin Naturals Nevada*
*Waterfall Forecast Notes*

| Item Group | Assumption |
|---|---|
| **Balance Sheet** | |
| Accounts Receivable | Q424: Illustrative roll forward to be refined<br>FY25: Q1 Estimate to be refined; Q2 2025 forward based on DSO adjusted to normalized rate<br>FY26-29: DSO adjusted to normalized rate |
| Credit Balance Adjustment | FY24: Held constant<br>FY25-29: Variable percent of gross A/R based on historical average |
| A/R Allowance | FY24: Held constant<br>FY25-29: Increase at monthly rate, written off in December of each period |
| Inventory | Q424: Illustrative roll forward to be refined<br>FY25: Q1 Estimate to be refined; Q2 2025 forward based on DOH adj. to normalize<br>FY26-29: DOH adj. to normalize |
| Inventory Rebate<br>Inventory Reserve<br>Allowance | FY24: Held constant<br>FY25-29: Variable percentage of gross accounts receivable |
| All Other Current Assets | Held constant |
| All Other Intercompany and Other Assets | Held constant; Interco from Emergence to be eliminated in '24 not reflected in model |
| Gross Fixed Assets | Increase at maintenance capex based on September 24 monthly capex |
| All Other Intangible Assets | Held constant |
| Accounts Payable | FY24: DPO to normalize; Includes estimated prepetition general unsecured claims outstanding and postpetition payables until confirmation<br>FY25-29: DPO adjusted to normalize AP after prepetition general unsecured claims portion moved to long term liabilities |
| All Other Current Liabilities | Held constant -- Other Accrued Expenses would typically hold accrued professional fees; However, the model assumes cash disbursement in the actual projected cash disbursement period for illustrative purposes for Q4 2024 forecast and Q1 2025 |
| Prepetition Secured Debt | FY25: Claim amount adjusted to match illustrative figure in liquidation analysis (prepetition claim plus incremental incurred fees); reduced by $1mm mandatory amortization and repayments from 55% of discretionary cashflow (Excl. $3mm mandatory minimum cash balance) |
| Prepetition Unsecured Debt | FY25: Illustrative estimate of prepetition unsecured claims; with repayments from 35% of discretionary cashflow (Excl. $3mm mandatory minimum cash balance) |
| Capital Stock + Paid In Capital<br>Note Receivable Related Party | Held constant |
| Retained Earnings | Adjusted by net income in period |

**Exhibit B_007**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367**.

A true and correct copy of the document(s) entitled: **DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the document(s) were served by the court via NEF and hyperlink to the document.  On **October 31, 2024,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ryan W Beall**    rbeall@go2.law, kadele@go2.law;dfitzgerald@go2.law;rbeall@ecf.courtdrive.com;cmeeker@go2.law
- **Matthew Bouslog**    mbouslog@allenmatkins.com, ncampos@allenmatkins.com
- **Katherine Bunker**    kate.bunker@usdoj.gov
- **Erin R. Fay**    efay@wsgr.com, lmcgee@wsgr.com
- **Jeffrey I Golden**    jgolden@go2.law,
  kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b117954@notify.b
  estcase.com
- **Alexandria Lattner**    alattner@sheppardmullin.com, ehwalters@sheppardmullin.com
- **Matthew A Macdonald**    matthew.macdonald@wsgr.com
- **David W. Meadows**    david@davidwmeadowslaw.com
- **Douglas A Plazak**    dplazak@rhlaw.com
- **David M Poitras**    dpoitras@bg.law
- **Susan K Seflin**    sseflin@bg.law
- **Jonathan Seligmann Shenson**    jshenson@greenbergglusker.com,
  calendar@greenbergglusker.com;cmillerwatkins@greenbergglusker.com
- **Yuriko M Shikai**    yshikai@neufeldmarks.com
- **Ashley M Teesdale**    ateesdale@bg.law, becky@ringstadlaw.com;arlene@ringstadlaw.com
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov
- **Pamela Kohlman Webster**    pwebster@buchalter.com, smartin@buchalter.com
- **Jessica Wellington**    jwellington@bg.law, ecf@bg.law

☐    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **_____, 2024,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**\*\*JUDGE'S COPY NOT REQUIRED IF LESS THAN 25 PAGES (GENERAL ORDER 23-01).**

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 31, 2024,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**\*Courtesy Copy to Judge Kaufman**          ☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 31, 2024 | Susan Seflin | /s/ Susan Seflin |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**