1  DAVID M. POITRAS – Bar No. 141309
   SUSAN K. SEFLIN - Bar No. 213865
2  JESSICA S. WELLINGTON - Bar No. 324477
   BG LAW LLP
3  21650 Oxnard Street, Suite 500
   Woodland Hills, CA 91367
4  Telephone:  (818) 827-9000
   Facsimile:  (818) 827-9099
5  Email:      dpoitras@bg.law
               sseflin@bg.law
6              jwellington@bg.law

7  Attorneys for Chapter 11 Debtors and
   Plan Proponents

8

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11             SAN FERNANDO VALLEY DIVISION

12

13 | In re                          | Case No. 1:24-bk-11323-VK

14 | Irwin Naturals *et al.*,        | Chapter 11

15 |            Debtors and Debtors  | (Jointly Administered with: Case No. 1:24-bk-
   |            in Possession.       | 11324-VK. Case No. 1:24-bk-11325, and Case
16 |                                 | No. 1:24-bk-11326-VK)

17 | _____   | **DISCLOSURE STATEMENT**
                                       **DESCRIBING DEBTORS' CHAPTER 11**
18 | ☐  Affects Irwin Naturals       | **PLAN OF REORGANIZATION**

19 | ☐  Affects Irwin Naturals Inc.    **Plan Objection Deadline: 10:00 p.m. PDT**
                                        **on _____**
20 | ☐  Affects 5310 Holdings, LLC

21 | ☐  Affects DAI US HoldCo Inc.     **Ballot Deadline:  10:00 p.m. PDT on _____**

22 | ☒  Affects All Debtors          **Disclosure Statement Hearing:**
                                      Date:      TBD
23                                    Time:      TBD

24                                    **Confirmation Hearing:**
                                      Date:      TBD
25                                    Time:      TBD
                                      Place:     Courtroom 301
26                                               United States Bankruptcy Court
                                                 21041 Burbank Blvd
27                                               Woodland Hills, CA 91367

28

3011964

# TABLE OF CONTENTS

Page

**I.    INTRODUCTION** .................................................................................................1

    **A.**    Purpose of this Disclosure Statement. ........................................................6

    **B.**    Purpose and Effect of the Plan. ...................................................................7

    **C.**    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing..............8

        **1.**    Time and Place of the Plan Confirmation Hearing ......................8

        **2.**    Deadline for Voting For or Against the Plan ...............................8

        **3.**    Deadline for Objecting to the Confirmation of the Plan.......................8

    **D.**    Identity of Persons to Contact for More Information Regarding the Plan..............9

    **E.**    Disclaimer. ...................................................................................................9

    **F.**    Forward-Looking Statements.....................................................................10

**II.    DEFINITIONS AND EXHIBITS**................................................................11

    **A.**    Definitions. ................................................................................................11

    **B.**    Exhibits. ....................................................................................................21

    **C.**    Computing Time Periods. ..........................................................................21

    **D.**    Notices and Delivery of Documents. .........................................................21

**III.    BACKGROUND** ...............................................................................................22

    **A.**    Description and History of the Debtors' Business and a Summary of the Circumstances that Led to the Filing of the Debtors' Chapter 11 Cases. .............22

        **1.**    General Background. ...........................................................22

        **2.**    The Debtors' Prepetition Lenders and Events Leading to the Debtors' Chapter 11 Filings.............................................23

        **3.**    The Debtors' Other Indebtedness. ........................................25

    **B.**    Management, Principals, and Affiliates of the Debtors' Business. .......................25

    **C.**    Litigation....................................................................................................25

        **1.**    Media Max Network, LLC v. Media Brokers International, Inc. et al. [Irwin Nevada] ...................................................26

        **2.**    Reese v. Irwin Naturals, et al. [Irwin Nevada] ........................26

3011964

3.    Vaughn v. Irwin Naturals [Irwin Nevada] .................................................27

4.    (In re: Bed Bath & Beyond, Inc., et al., Debtor) Adversary proceeding:
Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-
1, Inc., (f/k/a Bed Bath & Beyond Inc.) v. Irwin Naturals et al. [Irwin
Nevada] ..................................................................................................27

5.    EMA Anesthesia v. Irwin Naturals Emergence, et al. [Irwin Nevada &
Irwin Canada]..........................................................................................28

D.    Significant Events During the Bankruptcy. ........................................................28

1.    First Day Motions. .................................................................................28

2.    Appointment of Committee. ...................................................................29

3.    Employment of Professionals. ................................................................29

4.    Claim Objections. ..................................................................................31

5.    Prosecution of Avoidance Actions & Other Potential Claims..................31

IV.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER
THE PLAN ...................................................................................................................32

A.    What Creditors and Interest Holders Will Receive Under the Plan......................32

B.    Unclassified Claims. .........................................................................................32

1.    Administrative Claims. ..........................................................................32

2.    Priority Tax Claims................................................................................35

C.    Classified Claims and Interests. ........................................................................36

1.    Class of Secured Claims. .......................................................................36

2.    Classes of Priority Unsecured Claims.....................................................37

3.    Classes of General Unsecured Claims. ....................................................38

4.    Classes of Interest Holders.....................................................................38

D.    Means of Effectuating the Plan and Implementation of the Plan. ........................39

1.    Plan Funding. ........................................................................................39

2.    Release of Liens.....................................................................................40

3.    Composition of the Reorganized Debtors and Post-Confirmation
Management...........................................................................................40

4.    Disbursing Agent. ..................................................................................40

5.    Objections to Claims...............................................................................41

3011964

**6.**      Payment Upon Resolution of Disputed Claims. ........................................42

**7.**      Investigation and Prosecution of Claims and Avoidance Actions. ............42

**8.**      Payment of Professional Fees and Expenses Incurred After the
Effective Date. ...............................................................................................43

**9.**      Distributions to Be Made Pursuant to the Plan. ..........................................43

**10.**     Corporate Matters. .........................................................................................43

**11.**     Exemption from Transfer Taxes. ...................................................................43

**12.**     Exculpations and Releases. ...........................................................................44

**E.**     Other Provisions of the Plan. ....................................................................................44

**1.**      Executory Contracts and Unexpired Leases. ................................................44

   a.       Assumptions. .......................................................................................44

   b.       Rejections. ...........................................................................................46

   c.       Cures. ...................................................................................................46

**2.**      Risk Factors. ..................................................................................................46

**3.**      Changes in Rates Subject to Regulatory Commission Approval. ................47

**F.**     Retention of Jurisdiction. ..........................................................................................47

**G.**     Amendments to Corporate Documents. ......................................................................48

**H.**     Dissolution of the Committee. ...................................................................................49

**I.**      Miscellaneous Issues Regarding Plan Distribution ...................................................49

**1.**      No Fractional Distributions. ..........................................................................49

**2.**      Name and Address of Holder of Claim. ........................................................49

**3.**      Unclaimed Distribution. ................................................................................49

**4.**      De Minimus Cash Distributions. ...................................................................50

**V.**     IRS CIRCULAR 230 NOTICE ...........................................................................................50

**VI.**    TAX CONSEQUENCES OF THE PLAN ...........................................................................50

**VII.**   CONFIRMATION REQUIREMENTS AND PROCEDURES ..............................................50

**A.**     Who May Vote or Object. ..........................................................................................51

**B.**     Who May Vote to Accept/Reject the Plan ..................................................................51

**C.**     What Is an Allowed Claim/Interest. ...........................................................................51

3011964

| | | |
|---|---|---|
| **D.** | What Is an Impaired Claim/Interest. | 52 |
| **E.** | Who Is <u>Not</u> Entitled to Vote. | 52 |
| **F.** | Who Can Vote in More Than One Class. | 52 |
| **G.** | Votes Necessary to Confirm the Plan. | 53 |
| **H.** | Votes Necessary for a Class to Accept the Plan. | 53 |
| **I.** | Treatment of Non-accepting Classes. | 53 |
| **J.** | Request for Confirmation Despite Nonacceptance by Impaired Class(es). | 53 |
| **K.** | Liquidation Analysis. | 54 |
| **L.** | Feasibility. | 56 |
| **VIII.** | EFFECT OF CONFIRMATION OF THE PLAN | 57 |
| **A.** | Discharge. | 57 |
| **B.** | Continuing Stay/Injunction. | 58 |
| **C.** | Revesting of Property in the Reorganized Debtors | 59 |
| **D.** | Modification of the Plan. | 60 |
| **E.** | Post-Confirmation Status Reports. | 60 |
| **F.** | Post-Confirmation Conversion/Dismissal – Local Bankruptcy Rule 3020-1(e). | 60 |
| **G.** | Final Decree. | 60 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3011964

# TABLE OF AUTHORITIES

Page

## CASES

*In re Barakat*,
    99 F.3d 1520 (9th Cir. 1996), *cert. denied*, 520 U.S. 1143 (1997)....................................52

## STATUTES

11 U.S.C. § 101.........................................................................................12

11 U.S.C. § 1102.................................................................................14, 29

11 U.S.C. § 1103.......................................................................................19

11 U.S.C. § 1112(b)..................................................................................60

11 U.S.C. § 1125.......................................................................................15

11 U.S.C. § 1127.......................................................................................48

11 U.S.C. § 1129.......................................................................................43

11 U.S.C. § 1129(a)(8)..............................................................................53

11 U.S.C. § 1129(b)...................................................................................53

11 U.S.C. § 1141.......................................................................................57

11 U.S.C. § 1141(d)(1)(A).........................................................................57

11 U.S.C. § 1141(d)(1)(A)(i).....................................................................57

11 U.S.C. § 1141(d)(1)(A)(ii)....................................................................57

11 U.S.C. § 1141(d)(1)(A)(iii)...................................................................57

11 U.S.C. § 1146(c)...................................................................................43

11 U.S.C. § 326.........................................................................................55

11 U.S.C. § 327.........................................................................................19

11 U.S.C. § 328.........................................................................................19

11 U.S.C. § 329.........................................................................................19

11 U.S.C. § 330.........................................................................................19

11 U.S.C. § 330(a)......................................................................................11

11 U.S.C. § 331....................................................................................11, 19

3011964

11 U.S.C. § 501 .................................................................................................................57

11 U.S.C. § 502(c) ............................................................................................................41

11 U.S.C. § 502(g) ......................................................................................................21, 57

11 U.S.C. § 502(h) ............................................................................................................57

11 U.S.C. § 502(i) .............................................................................................................57

11 U.S.C. § 503(b) ......................................................................................................11, 19

11 U.S.C. § 503(b)(2) .......................................................................................................19

11 U.S.C. § 503(b)(3)(D) ..................................................................................................19

11 U.S.C. § 503(b)(4) .......................................................................................................19

11 U.S.C. § 506(a) ............................................................................................................20

11 U.S.C. § 507(a) ............................................................................................................19

11 U.S.C. § 507(a)(1) ..................................................................................................32, 52

11 U.S.C. § 507(a)(2) ..................................................................................................11, 52

11 U.S.C. § 507(a)(3) .......................................................................................................37

11 U.S.C. § 507(a)(4) .......................................................................................................37

11 U.S.C. § 507(a)(5) .......................................................................................................37

11 U.S.C. § 507(a)(6) .......................................................................................................37

11 U.S.C. § 507(a)(7) .......................................................................................................37

11 U.S.C. § 507(a)(8) ..........................................................................................19, 35, 52

11 U.S.C. § 510 .................................................................................................................12

11 U.S.C. § 521 .................................................................................................................20

11 U.S.C. § 541 .................................................................................................................12

11 U.S.C. § 542 .................................................................................................................12

11 U.S.C. § 544 .................................................................................................................12

11 U.S.C. § 545 .................................................................................................................12

11 U.S.C. § 547 .................................................................................................................12

11 U.S.C. § 551 .................................................................................................................12

11 U.S.C. § 553 ...........................................................................................................12, 20

3011964

28 U.S.C. § 1930 ................................................................................................................ 11

28 U.S.C. § 1930(a)(6) ................................................................................................. 32, 61

## **RULES**

Federal Rules of Bankruptcy Procedure 1000 ............................................................. 43

Federal Rules of Bankruptcy Procedure 1009 ............................................................. 20

Federal Rules of Bankruptcy Procedure 3020(e) ........................................................... 1

Federal Rules of Bankruptcy Procedure 3022 ............................................................. 60

Federal Rules of Bankruptcy Procedure 9006(a) ..................................................... 13, 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3011964

**Irwin Naturals, a Nevada corporation, and its related debtor entities (collectively, the "Debtors"), are the proponents of this disclosure statement and accompanying chapter 11 plan of reorganization.  The Debtors reserve the right to make further amendments and modifications to this disclosure statement.

**THE DEBTORS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT.  THE DEBTORS HAVE NOT AUTHORIZED ANY REPRESENTATION CONCERNING THE DEBTORS, THE VALUE OF THEIR PROPERTY OR THE TREATMENT OF CLAIMS OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.**

3011964

# I.    INTRODUCTION

Irwin Naturals, a Nevada corporation ("Irwin Nevada"), Irwin Naturals, Inc., a British Colombia corporation ("Irwin Canada"), DAI US HoldCo, Inc. ("DAI") and 5310 Holdings, LLC ("5310" and collectively, with Irwin Nevada, Irwin Canada and DAI, each a "Debtor" and collectively, the "Debtors")

The Debtors are the chapter 11 debtors in possession in the above-captioned chapter 11 bankruptcy cases. On August 9, 2024, the Debtors commenced their bankruptcy cases by filing voluntary petitions under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* ("Bankruptcy Code"). These cases are pending before the Honorable Victoria Kaufman, United States Bankruptcy Judge for the Central District of California (the "Court" or "Bankruptcy Court"). This document is the Debtors' disclosure statement (as may be further amended or modified, the "Disclosure Statement") which describes Debtors' *Chapter 11 Plan of Reorganization* (as may be further amended or modified, the "Plan").

Chapter 11 allows the Debtors, and, under some circumstances, creditors and other parties in interest, to propose a plan of reorganization.  A plan may provide for a debtor to reorganize by continuing to operate, to liquidate by selling the assets of its estate, or a combination of both.  The Debtors are the parties proposing the Plan.

**THIS DOCUMENT IS THE DISCLOSURE STATEMENT FOR THE DEBTORS' CHAPTER 11 PLAN**.

The effective date ("Effective Date") of the plan will be the second business day after entry of the order confirming the Plan (the "Confirmation Order"), provided the Bankruptcy Court has waived the provisions of Rule 3020(e) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and no stay of the Confirmation Order is in effect.[1]

---

[1] If the Bankruptcy Court does not waive the provisions of Bankruptcy Rule 3020(e), then the Effective Date will be the second business day which is at least fifteen (15) days following the date of entry of the Confirmation Order, assuming there has been no appeal from and order staying the effectiveness of the Confirmation Order.  If there has been an order entered staying the effectiveness of the Plan Confirmation Order, the Effective Date shall be the second business day after the stay is no longer in effect with respect to the Confirmation Order.

3011964

The Plan described in this Disclosure Statement is a reorganizing plan.  The Plan described in this Disclosure Statement provides for Irwin Nevada's, DAI's and 5310's emergence from their chapter 11 bankruptcy cases as the "Reorganized Debtors", which the Debtors anticipate will occur in January 2025.  Under the Plan, the Debtors will satisfy their debt and other claims as set forth in Article IV below.  The Plan described below has been designed to position the Reorganized Debtors to succeed following bankruptcy.

After confirmation of the Plan, Irwin Nevada will continue operating its nutraceutical business that it has successfully operated since its inception in 1994, 5310 will remain a subsidiary of Irwin Nevada that holds the majority of the Debtors' intellectual property, and DAI will remain as the holding company for Irwin Nevada. Through their Plan, the Debtors will be dissolving Irwin Canada.

There are three primary groups of creditor claims in these cases consisting of: (i) priority tax and employee claims; (ii) the claims of the Debtors' pre-petition secured creditors (i.e., creditors who assert a lien against certain of the Debtors' assets as collateral for their claims);[2] and (iii) the claims of the Debtors' non-priority general unsecured creditors.

The following is a summary of the Plan:

1.    <u>Reorganization:</u>  The Plan provides for a reorganization which dissolves one entity, Irwin Canada, with Irwin Nevada, 5310 and DAI as the remaining entities.  Through the Plan, the Debtors will pay all allowed claims in full.  Through the Plan, the existing public shareholders of Irwin Canada will obtain a direct ownership interest in DAI.

2.    The Plan segregates Claims[3] into Classes and treats them as summarized immediately below, which summaries are subject to the provisions specified in Article IV below and in Article III of the Plan. The following is a summary of the Plan:

---

[2] The Debtors do not intend, nor should any provision of either the Plan or Disclosure Statement be construed, as an admission of any kind as to the nature, extent, or priority of any purported lien(s), encumbrance(s), or charge(s) of any kind, nature, or extent against the Debtors' assets or property.

[3] Any capitalized term not yet defined will be defined in Article II of this Disclosure Statement.

3011964

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| N/A | Administrative Claims (Professional Fees) | Estimated Between Approximately $2 million and $2.5 million. | Full payment, subject to Bankruptcy Court approval as may be required, except as otherwise agreed by such Professionals as set forth in the Plan Projections. |
| N/A | Administrative Claims (Incurred in the Ordinary Course of Business) | Estimated at $4 million | Allowed Administrative Claims representing post-Petition Date liabilities incurred by the Debtors in the ordinary course of business, for which no approval by the Bankruptcy Court is required, shall be paid in full in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such liabilities and any agreements relating thereto. |
| N/A | Priority Tax Claim of Canada Revenue Agency | Estimated at $17,438.37. | Full payment consistent with Bankruptcy Code section 1129(a)(9)(C). |
| N/A | Priority Tax Claim of CA Department of Tax and Fee Administration | Estimated at $2,697.30. | Full payment consistent with Bankruptcy Code section 1129(a)(9)(C). |
| N/A | Priority Tax Claim of State of Washington | Estimated at $907.62. | Full payment consistent with Bankruptcy Code section 1129(a)(9)(C). |
| 1 | Secured claim of East West Bank, as Agent ("EWB")<br><br>Collateral Description: Substantially all of the Debtors' assets (the "Debtors' Personal Property")<br><br>Interest rate: Non-Default (Term) – Prime Plus 1% (Prime no less than 5%)<br><br>Interest rate: Non-Default (Revolver) – Prime (no less than 5%)<br><br>Maturity Date – February 1, 2028<br><br>*Debtors have significant claims against EWB and reserve all their rights | Filed Claim: None<br><br>Debtors' Estimate of Claim for Plan Treatment Purposes: $18.65 million [approximately $7.90 million for the term loan, and approximately $10.80 million for the revolver].<br><br>Insider. EWB was in actual control of the Debtors pre-petition. | **The Debtors scheduled this claim as Unliquidated and Disputed. The Debtors reserve their rights to bring claims against EWB – either through an adversary proceeding and/or claim objection in this Court or in state court post-confirmation.<br><br>**Treatment A:**<br><br>Treat both the term loan and revolver loan as term loans, at the term loan contract rate of interest (Prime Plus 1% - Prime not less than 5%). Incurable default clauses to be removed and clauses related to non-operating entities to be removed.<br><br>$1 mm paid quarterly, commencing June 30, 2025. Additionally, 55% of net disposable income ("NDI") shall be paid quarterly to EWB. See Plan Projections for details (Cash Available for Discretionary Debt Repayment). If the EWB claim is not paid in full prior to the maturity date of February 1, 2028, the Debtors shall pay the remaining lump |

3011964

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| | to assert those claims | | sum to EWB on or before February 1, 2028, through a cash payment or, if needed, by obtaining replacement financing or through a sale of the business. |
| | | | **Lien:** To the same extent and validity of its existing lien(s), EWB shall have a first priority lien against the Debtors' Personal Property. |
| | | | **Collateral:** EWB's collateral shall continue to be the Debtors' Personal Property to the same extent and validity of EWB's current interest in such collateral. |
| | | | Such treatment shall be in full and complete satisfaction of the Class 1 claim.  The Debtors shall have no other obligations under the requisite loan agreements. |
| | | | **Impaired; Entitled to Vote.** |
| | | | Or, in the alternative, |
| | | | **Treatment B:** |
| | | | The Debtors are in the process of soliciting exit financing.  If they are successful, they will file a separate motion for approval of such financing and/or amend the Plan and this Disclosure Statement to include the proposed terms.  If the Debtors successfully obtain exit financing, then they will pay EWB its allowed claim in full on the Effective Date, in which case EWB would be unimpaired. |
| | | | **Unimpaired; Not Entitled to Vote.** |
| 2 | Wage Related Claims | $5,991.80 | Paid in full within 10 business days of the Effective Date. |
| | | | **Not Impaired; Not Entitled to Vote** |
| 3 | General Unsecured Claims [Excluding Insider Claims] | Estimated at approximately $5 to $6 million.  (This number is subject to change as follows: (a) the resolution of objections to Disputed Claims; and (b) the amount of rejection damages claims asserted by the former landlord.) | **Treatment:** Allowed General Unsecured Claims will be paid 35% of the NDI as set forth in the Plan Projections (Cash Available for Discretionary Debt Repayment).  If Allowed General Unsecured Claims are not paid in full prior to February 1, 2028, the Debtors shall pay the remaining balance of Allowed General |

4

3011964

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| | | [This estimation does not include any intercompany claims as the Debtors' have agreed to subordinate all of their intercompany claims to those of General Unsecured Creditors.] | Unsecured Claims in full on or before February 1, 2028.<br><br>**Impaired; Entitled to Vote** |
| 4 | General Unsecured Claim of Insider Klee Irwin | $1 million | **Treatment:**<br><br>Mr. Irwin has agreed to subordinate his claim to all Allowed Claims in exchange for Irwin Nevada agreeing that Mr. Irwin can commence payments on his notes payable at the same time.<br><br>**Impaired; Entitled to Vote** |
| 5 | <u>Irwin Nevada</u><br>Equity Interests of Klee Irwin (90% Non-Voting Interest), Klee & Margareth Irwin Children's Trust (10% Non-Voting Interest) and DAI US HoldCo, Inc. (100% Voting Interest) | Irwin Nevada's current equity holders who collectively own 100% of the Debtor. | **Treatment:** The shareholders of Irwin Nevada shall retain their current equity interests in Irwin Nevada. However, any conversion rights held by the Non-Voting Interests to Irwin Canada shares shall be convertible to the new DAI shares.<br><br>**Not Impaired; Not Entitled to Vote.** |
| 6 | <u>Irwin Canada</u> - Equity Interest of Public Shareholders | Irwin Canada owns DAI, which owns 2% of Irwin Nevada. | Irwin Canada will be dissolved.<br><br>**Treatment:** Irwin Canada's current shareholders shall obtain effectively their same economic and voting interest in DAI as they currently have in Irwin Canada except that those shares will now be private shares.<br><br>**Impaired; Entitled to Vote** |
| 7 | <u>DAI US HoldCo</u><br>Owned 100% by Irwin Canada | | **Treatment:** The current equity structure of DAI will be replaced.  See Class 6 for details.<br><br>**Impaired; Entitled to Vote** |
| 8 | <u>5310 Holdings, LLC</u><br><br>Owned 100% by Irwin Nevada | | **Treatment:** No change.  To be owned 100% by Irwin Nevada.<br><br>**Not Impaired. Not entitled to vote.** |

5

**A.    Purpose of this Disclosure Statement.**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

**(1)    WHO CAN VOTE OR OBJECT,**

**(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what, if anything, your Claim will receive if the Plan is confirmed) AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD LIKELY RECEIVE IN A HYPOTHETICAL CHAPTER 7 LIQUIDATION,**

**(3)    THE HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING ITS BANKRUPTCY CASE,**

**(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

**(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND**

**(6)    WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. The Debtors' counsel cannot tell you about your rights or offer any advice – especially legal advice. You are strongly encouraged to consult your own lawyer to obtain advice on how the Plan will affect you and what is the best course of action for you. This Disclosure Statement may not be relied on for any purpose other than providing you with adequate information, as required by the Bankruptcy Code, to assist you in determining whether to vote to accept or reject the Plan.

Be sure to read the Plan as well as this Disclosure Statement. If there are any inconsistencies between the Plan and this Disclosure Statement, the Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed

6

3011964

judgment about the Plan.  Any party can now solicit votes for or against the Plan.

**THE DEBTORS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT.  THE DEBTORS HAVE NOT AUTHORIZED ANY REPRESENTATION CONCERNING THE DEBTORS, THE VALUE OF THEIR PROPERTY OR THE TERMS OF THE PLAN OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.**

**B.    Purpose and Effect of the Plan.**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11, a debtor is authorized to reorganize its business for the benefit of its creditors and shareholders.  If reorganization is not feasible, chapter 11 allows a debtor to formulate and consummate a plan of liquidation, which sets forth the process for the orderly satisfaction of claims against and interests in a debtor pursuant to the priority rules of the Bankruptcy Code.

Confirmation of a plan of reorganization by a bankruptcy court makes the plan binding upon the debtor and any creditor of or interest holder in a debtor, whether or not such creditor or interest holder (i) is impaired (i.e., will receive less than 100% of its allowed claim) under the plan, (ii) has accepted the plan, or (iii) receives or retains any property under the plan.

In these chapter 11 Cases, the Plan provides for the Debtors to emerge from bankruptcy and for the distribution of certain funds to various holders of Allowed Claims as set forth under the Plan, and for the pursuit of certain claims and Causes of Action.  Under the Plan, Claims against, and Equity Interests in, the Debtors are divided into Classes according to their relative seniority and other criteria as required under the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court and ultimately consummated, the Claims and Equity Interests of the various Classes will be treated in accordance with the provisions in the Plan established for each Class.

A summary of the Classes of Claims and Equity Interests, as well as their treatment under the Plan, is set forth above.  A more detailed description of the Classes of Claims against the Debtors created under the Plan, the treatment of those Classes under the Plan and the property to be distributed under the Plan is described in Section IV below and in Section III of the Plan.

3011964

**C.**     **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.**

THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE BANKRUPTCY COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON ALL CREDITORS, INTEREST HOLDERS AND PARTIES IN INTEREST IN THESE CASES.

**1.**     **Time and Place of the Plan Confirmation Hearing**

The hearing where the Bankruptcy Court will determine whether or not to confirm the Plan (the "Confirmation Hearing") will take place on _____, before the Honorable Victoria S. Kaufman, United States Bankruptcy Judge for the Central District of California, in Courtroom "301" of the United States Bankruptcy Court, Central District of California (San Fernando Valley Division), located at 21041 Burbank Blvd., Woodland Hills, California 91367.  The Confirmation Hearing will be held via ZoomGov.  Hearing information is available at https://ecf-ciao.cacb.uscourts.gov/CiaoPosted/.

**2.**     **Deadline for Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot ("Ballot") sent to you as a PDF or via an electronic voting link, and return the Ballot via U.S. Mail, personal delivery, overnight mail or electronically to:

Irwin Naturals Ballot Processing
C/O Omni Agent Solutions, Inc.
5955 DeSoto Ave., Suite 100
Woodland Hills, CA 91367
https://omniagentsolutions.com/IrwinNaturals-Ballots

**Your Ballot must be received by 10:00 p.m. Pacific time on** _____ or it will not be counted.

**3.**     **Deadline for Objecting to the Confirmation of the Plan**

Objections to the Confirmation of the Plan must, by **10:00 p.m. Pacific time, on** _____, (a) be filed with the Bankruptcy Court at 21041 Burbank Blvd., Woodland Hills, CA 91367 and (b) be served upon the following:

3011964

**Debtors (Service Must be by Overnight, U.S. Mail or Messenger)**

Irwin Naturals et al.
300 Corporate Pointe, Suite 550
Culver City, CA 90230

**Counsel for the Debtors**
Susan K. Seflin
BG Law LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Fax: (818) 827-9099
Email: sseflin@bg.law

**Counsel for the Committee**
Jeffrey I. Golden
3070 Bristol St., Ste 640
Costa Mesa, CA 92626
Fax: (714) 966-1002
Email: jgolden@go2.law

**Office of the United States Trustee**
Office of the U.S. Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017
Email: kate.bunker@usdoj.gov

**D.    Identity of Persons to Contact for More Information Regarding the Plan.**

Any interested party desiring further information about the Plan should contact Susan K.

Seflin, Esq., of BG Law LLP, 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367,

Phone: (818) 827-9000, Email: sseflin@bg.law. Any request(s) for legal advice with respect to the

Plan, however, should be directed to your own counsel.

**E.    Disclaimer.**

The financial data relied upon in formulating the Plan is based on the Debtors' books and

records which, unless otherwise indicated, are unaudited.  Except as expressly stated, the

information contained in this Disclosure Statement is provided by the Debtors.  The Debtors

represent that everything stated in this Disclosure Statement is true to the best of the Debtors'

knowledge.  The Bankruptcy Court has not yet determined whether the Plan is confirmable and

makes no representation as to whether you should support or oppose confirmation of the Plan.

The contents of the Disclosure Statement should not be construed as legal, business or tax

advice from the Debtors or their counsel.

9

3011964

**THIS DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW OF THE PLAN BY EACH HOLDER OF A CLAIM OR INTEREST.  THIS DISCLOSURE STATEMENT IS INTENDED TO AID AND SUPPLEMENT SUCH REVIEW.  THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN.  THE PLAN IS THE OPERATIVE CONTROLLING LEGAL DOCUMENT.  AS SUCH, IF THERE IS ANY INCONSISTENCY BETWEEN THE TERMS AND PROVISIONS OF THIS DISCLOSURE STATEMENT AND THE PLAN, THEN THE TERMS AND PROVISIONS OF THE PLAN SHALL CONTROL. NEITHER THE PLAN, NOR THE DISCLOSURE STATEMENT, SHOULD BE CONSTRUED AS LEGAL, BUSINESS OR TAX ADVICE FROM THE DEBTORS OR THEIR COUNSEL.**

**BG LAW LLP COMMENCED REPRESENTATION AS GENERAL RESTRUCTURING COUNSEL TO THE DEBTORS IN AUGUST OF 2024 AND HAS RELIED UPON INFORMATION DEVELOPED SINCE THEN IN CONNECTION WITH THE PREPARATION OF THIS DISCLOSURE STATEMENT.  PROVINCE, LLC WAS RETAINED AS FINANCIAL ADVISOR FOR THE COMPANY IN AUGUST OF 2024 AND HAS RELIED UPON INFORMATION RECEIVED FROM THE DEBTORS TO PREPARE THE LIQUIDATION ANALYSIS AND FINANCIAL PROJECTIONS ATTACHED AS EXHIBITS.**

**F.    Forward-Looking Statements.**

CERTAIN OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BY ITS NATURE FORWARD LOOKING AND CONTAINS ESTIMATES AND ASSUMPTIONS THAT MAY BE MATERIALLY DIFFERENT FROM ACTUAL, FUTURE RESULTS.  Except as otherwise specifically and expressly stated herein, this Disclosure Statement does not reflect any events that may occur subsequent to the date hereof and that may have a material impact on the information contained in this Disclosure Statement.  The Debtors do not anticipate that any amendments or supplements to this Disclosure Statement will be distributed to reflect such occurrences.  Accordingly, the filing of this Disclosure Statement shall not under any

3011964

circumstance imply that the information herein is correct or complete as of any time *subsequent* to the date hereof.

THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTING FIRM AND HAS NOT BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.

## II.    DEFINITIONS AND EXHIBITS

**A.    Definitions.**

For the purposes of this Disclosure Statement, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article II.  Any term used in this Disclosure Statement that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning(s) ascribed to such terms in the Bankruptcy Code or the Bankruptcy Rules, in that order or priority.  Throughout this Disclosure Statement, the use of the masculine, feminine, neuter, plural or singular shall be understood to include each of the others as the context may reasonably dictate.  As used in this Disclosure Statement, the following definitions shall apply:

1.    **5310.** One of the four jointly administered affiliated Debtors, 5310 Holdings, LLC ("5310"), Case No. 1:24-bk-11325-VK, is a wholly owned subsidiary of Irwin Nevada, and owns substantially all of the Debtors' intellectual property.

2.    **Administrative Claim.**  A Claim for costs and expenses of administration allowed under Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(2) of the Bankruptcy Code including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the business of the Debtors (such as wages, salaries or commissions for services); (b) compensation for legal, financial advisory, accounting and other services, and reimbursement of expenses awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

3.    **Administrative Claims Bar Date.**  The date which is thirty (30) days after the Effective Date.

11

3011964

**4.**    **Allowed Administrative Claim.**  An Administrative Claim which is an Allowed Claim.

**5.**    **Allowed Claim.**  A Claim against the Debtors and/or the Estates as to which no objection has been filed, or if an objection has been filed, has either been overruled or otherwise resolved by the allowance of such Claim by the Bankruptcy Court, if the Claim was: (1) scheduled in the list of creditors prepared and filed with the Bankruptcy Court by the Debtors and not listed as disputed, contingent or unliquidated as to amount; or (2) the subject of a timely filed proof of claim; or (3) which has been allowed by order of the Bankruptcy Court.

**6.**    **Allowed Priority Claim.**  A Priority Claim which is an Allowed Claim.

**7.**    **Allowed Priority Tax Claim.**  A Priority Tax Claim which is an Allowed Claim.

**8.**    **Allowed Professional Fees.**  The amount of fees and costs incurred by Professionals engaged by the Debtors or the Committee in connection with the Cases which are (1) timely requested by application filed on or prior to the Administrative Claims Bar Date; and (2) which are allowed by order of the Bankruptcy Court.

**9.**    **Allowed Secured Claim.**  A Secured Claim which is an Allowed Claim.

**10.**    **Allowed General Unsecured Claim.**  A General Unsecured Claim which is an Allowed Claim.

**11.**    **Assets.**  All tangible and intangible assets of every kind and nature of the Debtors and their Estates, and all proceeds thereof, wherever located, as of the Effective Date.

**12.**    **Avoidance Actions.**  Causes of Action arising under Bankruptcy Code sections 510, 541, 542, 544, 545, 547 through 551 and/or 553, or under related state or federal statutes and common law including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

**13.**    **Ballot.**  The form of ballot or ballots that will be distributed electronically with the Disclosure Statement to holders of Claims entitled to vote under the Plan in connection with the solicitation of votes to accept or to reject the Plan.

**14.**    **Bankruptcy Code.**  Title 11 of the United States Code (11 U.S.C. §§ 101 *et*

3011964

*seq.*), as now in effect or hereafter amended.  All citations in the Disclosure Statement or in the Plan to section numbers are to the Bankruptcy Code unless otherwise expressly indicated.

      **15.**   **Bankruptcy Court.**  The United States Bankruptcy Court for the Central District of California (San Fernando Valley Division), or such other federal court with competent jurisdiction over the Cases.

      **16.**   **Bankruptcy Rules.**  Federal Rules of Bankruptcy Procedure, as now in effect or hereafter amended.

      **17.**   **Bar Date.**  December 20, 2024 for non-governmental creditors; and February 5, 2025 for governmental units.

      **18.**   **Business Day.**  Any day, other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

      **19.**   **Cases.**  This Chapter 11 bankruptcy cases, filed by the Debtors, pending in the Bankruptcy Court and jointly administered under Case No. 1:24-bk-11323-VK.

      **20.**   **Cash.**  Currency, checks, negotiable instruments and wire transfers of immediately available funds.

      **21.**   **Causes of Action.**  Any and all causes of action, Avoidance Actions, suits, rights of action, rights to legal remedies, rights to equitable remedies, rights to payment of any amounts owing to the Debtors or the Estates for any reason whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, that the Debtors and/or Estates may hold against any Person but excluding those Persons who are released or exculpated, or against whom claims were waived, pursuant to the Plan.

      **22.**   **Claim.**  Any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, against the Debtors and/or the Estates, and any right to any legal or equitable remedy for breach of any obligation giving rise to a right to payment, whether or not such right is an equitable remedy or is reduced to judgment, liquidated, unliquidated, fixed,

contingent, matured, unmatured, disputed, undisputed, secured or unsecured, against the Debtors and/or the Estates.

23. **Claimant.** A Person who holds a Claim.

24. **Claim Chart.** **Exhibit A** to the Disclosure Statement which lists all Claims filed against the Debtors as of the date reflected therein.

25. **Claims Objection Deadline.** Two hundred and seventy (270) days following the Effective Date, which date may be extended by the Bankruptcy Court upon motion of any party in interest for cause.

26. **Class.** A category of Claims which are substantially similar to each other and into which Allowed Claims are grouped and classified pursuant to the Plan, unless a member of the Class has agreed to a subordinated treatment. The Classes provided for in the Plan are summarized in Article IV of the Disclosure Statement and Article III of the Plan.

27. **Committee.** The Official Committee of Unsecured Creditors appointed by the OUST on August 31, 2024 [Doc. No. 69] in the bankruptcy cases of Irwin Nevada and Irwin Canada, pursuant to § 1102 of the Bankruptcy Code.

28. **Confirmation.** The entry of the Confirmation Order on the docket of the Bankruptcy Court.

29. **Confirmation Date.** The date upon which the Confirmation occurs.

30. **Confirmation Hearing.** The hearing or hearings held by the Bankruptcy Court to consider and rule upon the Debtors' request for confirmation of the Plan.

31. **Confirmation Order.** The order entered by the Bankruptcy Court confirming the Plan.

32. **Creditor.** A Person asserting a Claim; *aka* a Claimant.

33. **Cure Claim.** A claim based upon the Debtors' default on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors under sections 365 or 1123 of the Bankruptcy Code.

3011964

34.    **DAI.** One of the four jointly administered affiliated Debtors, DAI US HoldCo, Inc. ("DAI"), Case No. 1:24-bk-11326-VK, is a holding company that owns 2% of Irwin Nevada as of the Petition Date.

35.    **Debtors.** Irwin Nevada, Irwin Canada, 5310 and DAI, the jointly administered chapter 11 debtors in these Cases.

36.    **Disallowed.** With respect to a Claim, or any portion thereof, that (a) has been disallowed by a Final Order, (b) is Scheduled at zero, or as contingent, disputed or unliquidated and as to which no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (c) is not Scheduled, and as to which (i) no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (ii) no request for payment of an Administrative Claim has been filed by the Administrative Claims Bar Date, as appropriate, or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law.

37.    **Disbursing Agent.** Irwin Nevada will be the Disbursing Agent under the Plan.

38.    **Disclosure Statement.** This Disclosure Statement (as may be further amended or modified) prepared by the Debtors as required by § 1125 of the Bankruptcy Code describing the Plan.

39.    **Disputed Claim.** Disputed Claims include: (i) a Claim which has been scheduled as disputed, contingent or unliquidated where a Proof of Claim has not been timely filed thereafter; (ii) a Claim as to which an objection has been timely filed with the Bankruptcy Court, and which objection has not been withdrawn on or before any date fixed for filing such objections by the Plan or by order of the Bankruptcy Court and has not been overruled or denied by a Final Order; and (iii) any Claim listed as a Disputed Claim on the Claim Chart.

40.    **Distribution(s).** Any distribution by the Reorganized Debtors to any Class, Claimant or Creditor.

41.    **Effective Date.** The second Business Day after the Confirmation Date,

3011964

provided that the Bankruptcy Court has waived the provisions of Bankruptcy Rule 3020(e) and no stay of the Confirmation Order is in effect.  If the Bankruptcy Court does not waive the provisions of Bankruptcy Rule 3020(e), then the Effective Date will be the second Business Day which is at least fifteen (15) days following the date of entry of the Confirmation Order, providing there has been no appeal from and order staying the effectiveness of the Confirmation Order.  If there has been an order entered staying the effectiveness of the Confirmation Order, the Effective Date shall be the second Business Day after the stay is no longer in effect with respect to the Confirmation Order.

42.    **Equity Interest.**  An "equity security" as defined in § 101(16) of the Bankruptcy Code.

43.    **Equity Holder(s).**  A holder of any Equity Interest of any of the Debtors.

44.    **Estates.**  The estates of the Debtors created upon commencement of the Cases pursuant to § 541 of the Bankruptcy Code.

45.    **Exit Financing.**  Financing in an undetermined amount that may be obtained by the Debtors to fund all or part of their Distributions to Creditors.

46.    **Executory Contract.**  A contract to which the Debtors are a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

47.    **EWB.**  The Debtors' disputed secured creditor, East West Bank, as Agent ("EWB").

48.    **Final Fee Application(s).** The final request for payment of Professional Fee Claims.

49.    **Final DIP Order.**  The *Final Order: (I) Authorizing Debtor to Obtain Post-Petition Financing, (II) Granting Liens and Administrative Expense Claims, (III) Authorizing Debtors' Use of Cash Collateral, (IV) Modifying the Automatic Stay, and (V) Granting Other Related Relief* [Doc. No____] entered by the Bankruptcy Court on _____.

50.    **Final Order.**  An order or judgment of the Bankruptcy Court, as entered on the applicable docket, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then

3011964

be pending, or as to which any right to appeal, petition for certiorari, reargue, or rehear have been waived in writing in form and substance satisfactory to the Debtors prior to the Effective Date, or to the Reorganized Debtors after the Effective Date, or, in the event that an appeal, writ of certiorari, or re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which re-argument or rehearing was sought and denied, and the time to take any further appeal, petition for certiorari or move for re-argument or rehearing shall have expired.

**51.    General Unsecured Claim.**  A Claim against the Debtors that is not secured by a charge against, or interest in, any of the Debtors' Assets, that is not an Administrative Claim, a Priority Claim, or a Priority Tax Claim.

**52.    Holder(s).**  A Person holding a Claim or Interest against the Debtors, provided, however, with respect to transfers of Claims governed by Bankruptcy Rule 3001(e), in order for the transferor to be deemed the Holder of the Claim for distribution purposes, the deadline for any objection to the proposed transfer of a Claim must have passed with either (1) no objection to the transfer having been filed, or (2) any objection to such transfer having been resolved in favor of the transferor by no later than the Confirmation Date.  In other words, after the Effective Date, without the express consent of the Reorganized Debtors, no transfer of Claims will be recognized by the Reorganized Debtors for Distributions made pursuant to the Plan.

**53.    Impaired.**  When used in reference to a Claim, Interest or Class, a Claim, Interest or Class that is impaired within the meaning of § 1124 of Bankruptcy Code.

**54.    Interest.**  When "Interest" is used in the context of holding an equity security or unit of the Debtors (and not used to denote (i) the compensation paid for the use of money for a specified time and usually denoted as a percentage rate of interest on a principal sum of money, or (ii) a security interest in property), then "Interest" shall mean an interest or share in the Debtors of the type described in the definition of "Equity Interest."

**55.    Irwin Canada.**  One of the four jointly administered affiliated Debtors, Irwin Naturals, Inc., a British Colombia corporation ("Irwin Canada"), Case No. 1:24-bk-11324-VK, is

3011964

currently the ultimate parent of all the other Debtors and it is a public company.  Irwin Canada will be dissolved as of the Effective Date.

     **56.**    <u>**Irwin Nevada.**</u> One of the four jointly administered affiliated Debtors, Irwin Naturals, a Nevada corporation ("Irwin Nevada), Case No. 1:24-bk-11323-VK, is the operating entity.

     **57.**    <u>**Litigation Claims.**</u>  Any and all Causes of Action of the Effective Date, including without limitation all causes of action arising under chapter 5 of the Bankruptcy Code, including without limitation those causes of actions which could be brought by the Debtors under one or more of sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code against any Person or other entity, including any governmental entity, who received an avoidable transfer from the Debtors, including but not limited to insiders, employees, officers, and equity holders of the Debtors.  Although the Debtors has not concluded its investigation of all the potential Litigation Claims and all the potential parties to such claims, a non-exclusive summary of known potential Litigation Claims is described in the Disclosure Statement.

     **58.**    <u>**New Equity Interests.**</u>  The new equity interests to be issued on the Effective Date to shareholders of Irwin Canada.

     **59.**    <u>**Noticing Agent.**</u>  Omni is the claims and noticing agent employed in the Debtors' bankruptcy cases.

     **60.**    <u>**OUST.**</u>  Office of the United States Trustee for Region 16.

     **61.**    <u>**Person.**</u>  Person shall have the same meaning as in § 101(41) of the Bankruptcy Code.

     **62.**    <u>**Petition Date.**</u>  August 9, 2024, the date on which the Debtors filed their respective voluntary petition for relief under chapter 11, thereby commencing these Cases.

     **63.**    <u>**Plan.**</u>  The *Debtors' Chapter 11 Plan of Reorganization* (as may be further amended or modified) proposed by the Debtors and including, without limitation, all exhibits, supplements, appendices and schedules thereto, either in its present form or as it may be altered, amended, supplemented, or modified from time to time.

     **64.**    <u>**Plan Projections.**</u>  The Plan Projections are attached hereto as **Exhibit B**.

18

3011964

65. **Plan Supplement.** Collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, all of which are incorporated by reference into, and are an integral part of, the Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time in accordance with the terms hereof and the Bankruptcy Code and the Bankruptcy Rules. The Plan Supplement shall be filed with the Bankruptcy Court by no later than _____.

66. **Post-Confirmation Status Report.** The post-confirmation status report to be filed by the Reorganized Debtors if so ordered by the Bankruptcy Court.

67. **Priority Claim.** A Claim entitled to priority under § 507(a) of the Bankruptcy Code, other than a Priority Tax Claim pursuant to § 507(a)(8) of the Bankruptcy Code.

68. **Priority Tax Claim.** A Claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

69. **Professional Fee Applications.** Applications filed pursuant to sections 330, 331 or 503(b)(4) of the Bankruptcy Code for allowance of Administrative Claims relating to the compensation and reimbursement of expenses of Professionals employed pursuant to an order of the Bankruptcy Court under sections 327 or 1103 of the Bankruptcy Code for services provided and expenses incurred prior to the Effective Date.

70. **Professional Fee Claims.** (A) a claim under sections 327, 328, 330, 331, 503(b), 1103 or 1106 of the Bankruptcy Code for compensation for professional services rendered or expenses incurred on and after the Petition Date and prior to the Effective Date on behalf of the Estate by a Professional duly employed and authorized by an Order of the Bankruptcy Court; or (b) a claim under § 503(b)(4) of the Bankruptcy Code for reasonable compensation for professional services rendered by an attorney or accountant of an entity whose expense is allowable under § 503(b)(3)(D) of the Bankruptcy Code for making a substantial contribution to the Estates.

71. **Professionals.** Those Persons (i) that are subject to the retention pursuant to an order of the Bankruptcy Court in accordance with sections 327, 1103 and/or 1106 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant

19

3011964

to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to sections 330 and 503(b)(2) of the Bankruptcy Code.

72.    **Proponents.** The proponents of the Plan are the Debtors.

73.    **Pro Rata.**  Pro rata means proportionate so that the ratio of (a) the amount of consideration distributed on account of an Allowed Claim to (b) the amount of the Allowed Claim is the same as the ratio of (x) the amount of consideration available for distribution on account of all Allowed Claims in the Class in which the Allowed Claim is included to (y) the amount of all Allowed Claims in that Class.

74.    **Reorganized Debtors.**  Irwin Nevada, DAI and 5310 following the occurrence of the Effective Date (as Irwin Canada will be dissolved).

75.    **Reserve Account.**  An account created, and in an amount determined, by the Reorganized Debtors pending the resolution of a Disputed Claim, containing a sufficient amount to satisfy such Disputed Claim in a manner consistent with that Claim's treatment under the Plan should it ultimately become an Allowed Claim.

76.    **Scheduled**.  Scheduled means the information set forth in the Schedules.

77.    **Schedules.**  The Schedules of Assets and Liabilities filed by the Debtors in accordance with § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as the same may be amended from time to time in accordance with Bankruptcy Rule 1009 prior to the Effective Date. Irwin Nevada's Schedules: Doc. No. 96; Irwin Canada's Schedules: Doc. No. 16 in 1:24-bk-11324-VK; 5310's Schedules: Doc. No. 16 in 1:24-bk-11325-VK; DAI's Schedules: Doc. No. 16 in 1:24-11326-VK.

78.    **Secured Claim.**  A Claim that is secured by a lien against any Assets to the extent of the value of the Estate's interest in such Assets, or to the extent of the amount of such Claim subject to setoff in accordance with § 553 of the Bankruptcy Code, in either case determined pursuant to § 506(a) of the Bankruptcy Code.

79.    **Unclaimed Distribution.**  Any Distribution made by the Reorganized Debtors or the Disbursing Agent to the address of the recipient reflected in the Schedules (or on any Proof of

3011964

Claim filed by the Claimant), by: (a) checks which have been returned as undeliverable without a proper forwarding address; (b) checks which were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same; (c) checks which have not been cashed for a period of ninety (90) days after the date such checks were issued, or (d) disbursements that were not made because the Holder of such Allowed Claim failed to provide required tax information within forty-five (45) days after the Reorganized Debtors or the Disbursing Agent have sent any request for same to such Claimant's address as reflected in the Schedules and/or such Claimant's Proof of Claim.

80. **Unclassified Claim.** Any Claim which is not part of any Class, including Administrative Claims and Priority Tax Claims.

81. **Unimpaired.** A Claim is unimpaired when it is within a class that is not impaired within the meaning of § 1124 of the Bankruptcy Code.

82. **Unsecured Claim.** Any Claim, including without limitation any claim arising under § 502(g) of the Bankruptcy Code, that is not secured by a lien on, security interest in, or charge against, any Asset.

**B.    Exhibits.**

All Exhibits to this Disclosure Statement are incorporated into and are part of this Disclosure Statement as if set forth in full herein.

**C.    Computing Time Periods.**

In computing any period of time prescribed or contemplated by the Plan, Bankruptcy Rule 9006(a) shall apply.

**D.    Notices and Delivery of Documents.**

All notices, correspondence, and other deliveries under the Plan must be directed as follows:

| To the Debtors or Reorganized Debtors: | Irwin Naturals et al<br>300 Corporate Pointe, Suite 550<br>Culver City, CA 90230 |
|---|---|

3011964

1

With a Copy to:

2                                            Susan K. Seflin
                                             BG Law LLP
3                                            21650 Oxnard St., Suite 500
                                             Woodland Hills, CA 91367
4                                            Fax: (818) 827-9099
                                             Email: sseflin@bg.law

5                          III.      BACKGROUND

6

7   A.      **Description and History of the Debtors' Business and a Summary of the Circumstances**
            **that Led to the Filing of the Debtors' Chapter 11 Cases.**

8           1.       **General Background.**

9           Irwin Nevada is a popular dietary supplement company that was founded in 1994, the same

10  year that Congress first enacted legislation to define and regulate dietary supplements.  Irwin Nevada

11  formulates, markets, and distributes vitamins and supplements.  In addition to its Irwin Naturals®

12  supplement brand, Irwin Nevada also has two other supplement brands, Nature's Secret® and

13  Applied Nutrition®.  Irwin Nevada's product line currently includes over 130 formulas, which are

14  distributed in more than 100,000 retail locations, including stores like Costco, Walmart, and CVS.

15  The Debtors' 2023 gross sales were $102 million.  Irwin Nevada's website is

16  https://irwinnaturals.com/.

17          Irwin Nevada has a number of subsidiaries and affiliates including related debtors Irwin

18  Canada, DAI, and Holdings.  Irwin Nevada is the operating entity through with the Debtors'

19  nutraceutical business is conducted.  Irwin Canada is the ultimate "parent company" of the Debtors.

20  Irwin Canada does not have any employees and only transacts limited business with its subsidiaries.

21  DAI is a wholly owned subsidiary of Irwin Canada.  DAI is solely a holding company, which holds

22  2% of Irwin Nevada. Klee Irwin, Irwin Nevada's CEO, and his family trust directly or indirectly

23  own the majority of the Debtors' and have control over the Debtors.

24          For almost three decades, Irwin Nevada enjoyed financial stability and profitability from its

25  long-trusted dietary supplement brands.[4]  In or around 2020, Irwin Nevada sought to expand its

26

27  _____

28  [4] On an adjusted EBITDA basis, when accounting for extraordinary expenses.

                              22

3011964

footprint and saw two unique opportunities for growth. First, Irwin Nevada sought to go public. It began this process in August 2021 through a reverse-takeover transaction by Irwin Canada, which was an existing Canadian public company that formerly went by a different name. After being listed on the Canadian Securities Exchange ("CSE") through Irwin Canada, the ultimate goal was uplist to the Nasdaq Exchange and have an initial public offering in the United States (the "Uplisting"). The compliance costs ended up being unjustified relative to the little benefit brought to the Debtors by the initiative.

Second, amid the mental health crisis exacerbated by the COVID-19 pandemic, Irwin Nevada embarked on a plan to become the world's first and largest household brand of psychedelic mental health clinics. To do so, it formed a new subsidiary: Irwin Naturals Emergence, Inc. ("Emergence"; together with the Debtors, the "Irwin Companies"). Emergence would act as the much-needed gateway between big pharmaceutical companies and the many patients in need of mental health care. This new business venture involved Emergence completing an M&A roll-up of existing psychedelic mental health clinics, with the intent of capitalizing on the long-established Irwin Naturals® brand and utilizing economies of scale to drive down clinic operating costs (the "Roll-Up").

> **2.** **The Debtors' Prepetition Lenders and Events Leading to the Debtors' Chapter 11 Filings.**

In the fall of 2022, East West Bank, as Agent ("EWB") and CFG Bank ("CFG" and collectively, with EWB, the "Lenders") agreed to form a syndicate, wherein EWB would be the main lender in a new lending facility focused on providing cash for the roll-up that the Debtors and Emergence could use to fund acquisitions.

At the beginning of 2023, the Irwin Companies secured a credit facility ("Credit Facility") from EWB, as agent for the syndicate, for up to $40.0 million in up to two equal parts: (1) up to a $20 million revolving line of credit that was meant to support Irwin Nevada's day-to-day operations (the "Line of Credit"), a version of which was already in place as of December 2021 between EWB and the Debtors and was to be replaced by this new Credit Facility; and (2) a $20 million delayed-draw term loan facility (the "Term Loan") that was meant to support Emergence's clinic roll-up.

The Credit Facility was and is governed by a credit agreement ("Credit Agreement").  As of the petition date, EWB asserted that it is owed approximately $19 million, which the Debtors dispute.

Unfortunately, neither the Uplisting nor the Roll-Up panned out as planned; both efforts caused the Debtors' usually profitable business to suffer financial constraints, losses, and debts. These endeavors, and efforts to salvage them, resulted in tens of millions of dollars of losses and/or liabilities.  In addition, Irwin Nevada's typically strong sales numbers began to take a hit in or around March of 2023.  The unexpected downturn was attributable to many factors outside of the Debtors' control, including extraordinarily high returns from retailers that were not on par with historical figures and projections, a downturn in the retail market generally, and the unexpectedly slow growth of digital sales.

To add to the Debtors' financial burden, EWB, exerted excessive and unreasonable control over their business affairs and imposed unconscionable constraints on the Debtors.  After having the Credit Facility for a little over a year, the Irwin Companies received three notices of default from EWB for failure to meet certain technical covenants of the Credit Agreement.  Notwithstanding that the Irwin Companies had never been late on any debt service payments to EWB, and had been transparent and cooperative with EWB, including communicating with EWB regularly regarding their current states of affairs, their day-to-day actions and expenditures, and their plans to turn their financial state around.  Indeed, pre-petition, the Irwin Companies undertook tremendous efforts to continue to support their operations and meet their obligations despite their financial hardship. Those efforts included renegotiating payment terms with customers and suppliers, exploring options to amend or refinance their debt, reducing operating costs and expenditures, conducting multiple rounds of personnel layoffs, terminating as many third-party contracts and services as possible, closing the debt-accruing Emergence clinics, and more.

As the Irwin Companies attempted to pull themselves out of their financial difficulties, EWB engaged in numerous instances of misconduct.  EWB's alleged misconduct includes, but is not limited to, exerting undue, unreasonable, and excessive control over the Irwin Companies' operations, finances, and decision-making.  Indeed, at the time these cases were filed, EWB was sweeping the Debtors' bank accounts daily (which left the Debtors with no liquidity other than what

EWB determined was necessary to pay). The Debtors filed these cases to regain control over their businesses and to reorganize their debt in order to return to their prior financial stability and profitability.

Other than the lienholders disclosed above, there are no other parties that assert a security interest against the Debtors or their assets.

**3.    The Debtors' Other Indebtedness.**

The Debtors believes that they have approximately $5 million in valid general unsecured debt as of the date this Disclosure Statement was filed.

**B.    Management, Principals, and Affiliates of the Debtors' Business.**

At the time of the Petition Date and as of the date of the filing of this Disclosure Statement, Klee Irwin was, and is, the Chief Executive Officer ("CEO") of Irwin Nevada, Irwin Canada and DAI. The managing member of 5310 is Irwin Nevada. Mr. Irwin founded the Debtors' nutraceutical business in 1994. Irwin Nevada, successor in interest to a prior entity, was incorporated in Nevada in January 2002.

Irwin Nevada is the operating entity through which the Debtors' nutraceutical business is conducted. Irwin Canada is the ultimate "parent company" of the Debtors. Irwin Canada does not have any employees and only transacts limited business with its subsidiaries. DAI is a wholly owned subsidiary of Irwin Canada. DAI is solely a holding company that owns 100% of the Class A Voting Shares of Irwin Nevada amounting to 2% of beneficial ownership of Irwin Nevada (with Klee Irwin owning the other 98% personally or through his family trust in the form of 100% of the Class B non-voting shares of Irwin Nevada). 5310 is a wholly owned subsidiary of Irwin Nevada.

The Debtors' President is Tom Grillea. The Debtors' Chief Financial Officer is Mark Green. The Debtors' Chief Operating Officer is Dan Wing.

The Reorganized Debtors' post confirmation management is described more fully in Article IV.D.3 below.

**C.    Litigation.**

While the Debtors have not yet commenced post-petition litigation against the Lenders, the Debtors believe they have significant claims against the Lenders for actions EWB took pre-petition

3011964

including, but not limited to, (i) taking control of the Debtors' business, (ii) forcing the Debtors to pay approximately $2 million in professional fees related to EWB's professionals and professionals that EWB forced the Debtors to retain (e.g. FTI and Ballard Spahr), (iii) restricting the Debtors' ability to borrow money under the applicable loan agreements while at the same time holding those funds in an account where they charged the Debtors interest on those funds, and (iv) controlling what expenses the Debtors were allowed to pay.  The Debtors intend on seeking affirmative relief against the Lenders and objecting to their claim(s).  The Debtors intend on initiating an adversary proceeding against EWB and CFG for, among other things, fraud, breach of contract, breach of implied covenant of good faith and fair dealing, conversion, equitable subordination, and objection to claim.  The Debtors are in the process of employing special litigation counsel related thereto.

The Debtors believe they will ultimately be successful on such claims and that the Lenders' claim of approximately $19 million will be reduced.  The Debtors also reserve the right to object to and seek disallowance of the professional fees and expenses that EWB incurs in these Cases.

In addition to the potential claim(s) against the Lenders, the Debtors were a party to other pending actions on the Petition Date as set forth below:

**1.      Media Max Network, LLC v. Media Brokers International, Inc. et al. [Irwin Nevada]**

On March 6, 2024, publishing company Media Max Network, LLC ("MMN") filed a breach of contract suit against Media Brokers International, Inc. ("MBI") and Irwin Nevada in Fulton County State Court, GA (case no. 24EV001793). MMN's claim is based on allegedly unpaid invoices by MBI. Irwin Nevada's contractual relationship is solely with codefendant MBI, who places advertisements for Irwin Nevada. Irwin Nevada does not have a contractual relationship or contractual privity with MMN. On July 1, 2024, default judgment was granted as to liability against Irwin Nevada.  On September 13, 2024, default judgment was entered as to damages against Irwin Nevada in the amount of approximately $79,000. Irwin Nevada advised MMN's counsel of the bankruptcy and need for stay. MMN's counsel has not responded.

**2.      Reese v. Irwin Naturals, et al. [Irwin Nevada]**

On July 8, 2021, plaintiffs Herman and Jasminn Reese filed a personal injury and products

liability lawsuit against Irwin Nevada and its contract manufacturer Robinson Pharma in Los

Angeles County, California (case no. 21STCV25158). The plaintiffs allege that Herman Reese

sustained certain injuries caused by his use of an Irwin Nevada dietary supplement. The case was in

the discovery phase, with fact witness (non-expert) depositions being taken and scheduled. On

August 19, 2024, Irwin Nevada filed a Notice of Bankruptcy Filing and Automatic Stay; the court

entered a minute order on August 21 staying the case accordingly.  The court also set a status

conference on December 19, 2024 for an update on Irwin Nevada's bankruptcy. On October 9, 2024

the Reese plaintiffs filed a motion for relief from the automatic bankruptcy stay in Irwin Nevada's

bankruptcy matter, on the basis that they would seek recovery solely from applicable insurance.

Irwin Nevada does not plan to oppose the motion.

**3.      Vaughn v. Irwin Naturals [Irwin Nevada]**

On January 19, 2024, plaintiff Trisha Vaughn filed a class action lawsuit against Irwin

Nevada in Los Angeles Superior Court (case no. 24STCV01558) alleging damages due to alleged

false/misleading advertising on an Irwin Nevada weight management supplement. Irwin Nevada

filed an answer to the complaint on April 8, 2024. Discovery has not yet begun. On August 23, 2024,

Irwin Nevada filed a Notice of Bankruptcy Filing and Automatic Stay; the court entered a minute

order on August 26 staying the case accordingly.

**4.      (In re: Bed Bath & Beyond, Inc., et al., Debtor) Adversary proceeding: Michael**
**Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1, Inc., (f/k/a Bed**
**Bath & Beyond Inc.) v. Irwin Naturals et al. [Irwin Nevada]**

On May 17, 2024, Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1,

Inc. (f/k/a Bed Bath & Beyond Inc.) ("BBB") filed an adversary complaint in BBB's chapter 11 case

against Irwin Nevada and Performance Sales & Marketing, Inc. in the U.S. Bankruptcy Court in the

District of New Jersey. The adversary action seeks to avoid and recover transfers made in connection

with vendor programs, credits, and deductions that occurred prior to BBB's bankruptcy filing. Irwin

Nevada was not able to retain counsel for this matter, so the matter is not stayed subject to Irwin

Nevada's own bankruptcy. However, Irwin Nevada advised plaintiff's counsel of its bankruptcy and

need for stay. Plaintiff's counsel has not responded.

5.     **EMA Anesthesia v. Irwin Naturals Emergence, et al. [Irwin Nevada & Irwin Canada]**

On January 25, 2024, plaintiff EMA Anesthesia filed a breach of contract lawsuit against Serenity Health, LLC; Irwin Naturals Emergence, Inc.; and Irwin Naturals, Inc. (collectively, "Defendants") in Jefferson County Circuit Ct., Kentucky (case no. 23CI-0612, the "KY Action"). The claim was based on alleged unpaid invoices for anesthesia services provided by plaintiff. The parties in the KY Action entered into a stipulated/consent judgment on February 21, 2024 whereby the Defendants agreed to be jointly and severally liable for payment to EMA Anesthesia. The court entered the consent judgment on March 5, 2024. On June 5, 2024, plaintiff filed a lawsuit in Los Angeles Superior Court (case no. 24SMCP00287) to enforce the KY Action judgement in California. Defendants were not able to retain counsel for this matter, so the matter is not stayed subject to the bankruptcy. Plaintiff filed writ of Execution for Orange County on August 1, 2024, and writ of execution for Los Angeles County on August 20, 2024.

D.     **Significant Events During the Bankruptcy.**

The following is a list of significant events which have occurred during this case:

1.     **First Day Motions.**

The Debtors filed their Cases pro per, and did not retain bankruptcy counsel until August 13, 2024.  The Debtors' and their counsel's efforts during the early part of these Cases focused on obtaining authority to, among other things, secure use of cash collateral, maintain certain prepetition accounts, pay certain critical vendors, and pay pre-petition wages, salaries, and other compensation, which were each critical elements of the continuation of the Debtors' business operations.

**Cash Collateral Motion.**  On August 15, 2024, the Debtors filed their *Emergency Motion for Authority to: (A) Use Cash Collateral on an Interim Basis Pending a Final Hearing; (B) Grant Replacement Liens; and (C) Set Final Hearing* [Doc. No. 19] (the "Cash Collateral Motion").  The Cash Collateral Motion has been granted on an interim basis three times pursuant to Court orders entered on August 16, 2024 [Doc. No. 34], September 6, 2024 [Doc. No. 71] and September 27, 2024 [Doc. No. 115].

**Cash Management Motion.**  On August 15, 2024, the Debtors filed their *Emergency*

3011964

*Motion for Order (I) Authorizing the Continued Use of the Debtors' Cash Management System, (II) Authorizing the Maintenance of the Debtors' Pre-Petition Bank Accounts, and (III) Requiring Banks to Release Administrative Holds and/or Freezes on the Debtors' Pre-Petition Bank accounts* [Doc. No. 21] (the "Cash Management Motion"). The Bankruptcy Court entered its interim order granting the Cash Management Motion on August 16, 2024 [Doc. No. 37], and a final order granting the Cash Management Motion on September 11, 2024 [Doc. No. 80].

**Critical Vendor Motion.** On August 15, 2024, the Debtors filed their *Emergency Motion for Entry Order of Interim and Final Orders: (I) Authorizing the Debtors to Pay Certain Prepetition Critical Vendors; (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers; and (III) Granting Related Relief* [Doc. No. 18] (the "Critical Vendor Motion"). The Bankruptcy Court entered its interim order granting the Critical Vendor Motion on August 22, 2024 [Doc. No. 61] and its final order granting the Critical Vendor Motion on September 11, 2024 [Doc. No. 81].

**Wage Motion.** On August 15, 2024, the Debtors filed their *Emergency Motion for Entry of an Order: (1) Authorizing, But Not Requiring, Debtor to Pay Prepetition (A) Wages, Salaries, and Other Compensation, (B) Employee Medical, Workers' Compensation, Paid Time Off, and Similar Benefits, and (C) Reimbursable Employee Expenses; (2) Authorizing and Directing Applicable Banks and Other Financial Institutions to Receive, Process, Honor, and Pay Checks Presented for Payment and to Honor Fund Transfer Requests; and (3) Related Relief* [Doc. No. 20] (the "Wage Motion"). On August 16, 2024, the Bankruptcy Court entered a final order granting the Wage Motion [Doc. No. 35].

**2.      Appointment of Committee.**

The Committee was appointed by the OUST on August 31, 2024 [Doc. No. 69], pursuant to § 1102 of the Bankruptcy Code, in the bankruptcy cases of Irwin Nevada and Irwin Canada.

**3.      Employment of Professionals.**

On September 6, 2024, the Debtors filed their *Application to Employ BG Law LLP as Their Substitute Bankruptcy Counsel and Request for Post-Petition Retainer* [Doc. No. 72] (the "BG Application"). The BG Application was approved pursuant to Bankruptcy Court order entered on

3011964

September 25, 2024 [Doc. No. 109].

On September 9, 2024, the Debtors filed their *Application to Employ Beach Freeman Lim & Cleland, LLP as Auditing Accountant Pursuant to 11 U.S.C. §§ 327(a) and 328(a)* [Doc. No. 78] (the "Beach Freeman Application"). The Beach Freeman Application was approved pursuant to Bankruptcy Court order entered on October 1, 2024 [Doc. No. 121].

On September 13, 2024, the Debtors filed their *Application for Entry of an Order Authorizing the Retention and Appointment of Omni Agent Solutions, Inc. as Administrative Agent Pursuant to 11 U.S.C. §§ 327(a) and 328(a) Effective as of August 23, 2024* [Doc. No. 82] (the "Omni Employment Application"). The Omni Employment Application was approved pursuant to Bankruptcy Court order entered on October 8, 2024 [Doc. No. 134].

On September 17, 2024, the Debtors filed their *Application to Employ Province, LLC as Financial Advisor Pursuant to 11 U.S.C. §§ 327(a) and 330 Effective as of August 29, 2024* [Doc. No. 87] (the "Province Application"). The Province Application was approved pursuant to Bankruptcy Court order entered on October 8, 2024 [Doc. No. 136].

On September 19, 2024, the Debtors filed their *Application to Employ Marula Capital Group LLC to Provide Valuation Services Pursuant to 11 U.S.C. §§ 327(a) and 328(a), with Any Additional Services Payable Subject to 11 U.S.C. §§ 330 and 331* [Doc. No. 89] (the "Marula Application"). On October 8, 2024, the Bankruptcy Court entered its order approving the Marula Application [Doc. No. 135].

On October 1, 2024, the Debtors filed their *Application to Employ Jerrel G. John as Bookkeeper and Tax Accountant* [Doc. No. 120] (the "JGJ Application"). The OUST filed an objection to the JGJ Application on October 10, 2024 [Doc. No. 146]. On October 17, 2024, the Debtors and the OUST entered into a stipulation resolving the OUST objection [Doc. No. 151]. The order granting the JGJ Application was entered by the Bankruptcy Court on October 28, 2024 [Doc. No. 181].

On September 25, 2024, the Committee filed its *Application for Order Approving Employment of Counsel (Golden Goodrich LLP) Pursuant to 11 U.S.C. §§ 327 and 330* [Doc. No. 105] (the "Golden Application"). The Golden Application was approved pursuant to Bankruptcy

3011964

1    Court order entered on October 18, 2024 [Doc. No. 163].

2    　　　On October 9, 2024, the Committee filed its *Application for Order Approving of Financial*

3    *Advisor (Force10 Partner, LLC)* [Doc. No. 138] (the "Force10 Application").

4    　　　On October 4, 2024, the Debtors filed their *Motion for Entry of Order Establishing*

5    *Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Doc. No.

6    124] (the "Fee Procedure Motion"). Through the Fee Procedure Motion, the Debtors request that the

7    Court establish certain procedures for interim compensation of the Debtors' and the Committee's

8    professionals.  On October 10, 2024, the OUST filed its objection to the Fee Procedure Motion [Doc.

9    No. 145].  The Debtors filed their reply to the OUST objection on October 24, 2024 [Doc. No. 176],

10   and the Committee filed its reply on October 24, 2024 [Doc. No. 178].  The hearing on the Fee

11   Procedure Motion is currently scheduled for October 31, 2024.

12   　　　On October 7, 2024, the Debtors filed their *Motion for Entry of Order Pursuant to 11 U.S.C.*

13   *§§ 105(a), 327, 328, 330 and 363 for Authorization to Employ and Compensate Professionals*

14   *Utilized in the Ordinary Course of Business* [Doc. No. 129] (the "Ordinary Course Professional

15   Motion").  After discussions with the OUST, the Debtors filed a supplement to the Ordinary Course

16   Professional Motion [Doc. No. 170], which is set for hearing on October 31, 2024.

17   　　　The Debtors intend to file an application to employ Greenberg Glusker LLP as special

18   litigation counsel shortly.

19   　　　**4.    Claim Objections.**

20   　　　The Debtors intend on objecting to any claim marked on the Claim Chart as objectionable.

21   The Debtors or Reorganized Debtors, as applicable, reserve the right to review and object to any

22   claims in their sole discretion, so long as such objection is filed prior to the Claim Objection

23   Deadline.

24   　　　**5.    Prosecution of Avoidance Actions & Other Potential Claims.**

25   　　　The Debtors do not currently intend on pursuing any avoidance actions other than any claim

26   they may assert against the Lenders.  The Debtors do not plan on seeking to recover any preferential

27   transfers and the Plan proposes to pay Allowed Claims in full.

28

31

# IV.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**A.    What Creditors and Interest Holders Will Receive Under the Plan.**

As required by the Bankruptcy Code, the Plan classifies Claims and Interests in various Classes according to their right of priority under the Bankruptcy Code.  The Plan states whether each Class of Claims or Interests in impaired or unimpaired.  The Plan provides the treatment each Class will receive.

**B.    Unclassified Claims.**

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtors have not placed the following Unclassified Claims in a Class.

### 1.    Administrative Claims.

Administrative Claims are for costs or expenses of administering the Debtors' Chapter 11 Cases which are allowed under Bankruptcy Code Section 507(a)(1).  Allowed Administrative Claims representing post-Petition Date liabilities incurred by the Debtors in the ordinary course of business, for which no approval by the Bankruptcy Court is required, shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such liabilities and any agreements relating thereto.  The Bankruptcy Code requires that all Administrative Claims be paid on the Effective Date unless a particular Claimant agrees to a different treatment.  After the Effective Date, while the Debtors' Chapter 11 Cases remains open, the Reorganized Debtors will (i) file with the United States Trustee quarterly reports; and (ii) timely pay fees incurred pursuant to 28 U.S.C. Section 1930(a)(6).[5]

The following chart lists all of the Debtors' Section 507(a)(1) administrative claims and their treatment under the Plan.

---

[5] The quarterly fees owed to the United States Trustee are due and owing every quarter, without the requirement for the United States Trustee to file an administrative claim or a proof of claim. There is also no bar date for quarterly fees.

3011964

| Name | Amount Owed[6] | Treatment |
|---|---|---|
| Administrative Claims (Incurred in the Ordinary Course of Business) | Estimated at approximately $4 million. | Allowed Administrative Claims representing post-Petition Date liabilities incurred by the Debtors in the ordinary course of business, for which no approval by the Bankruptcy Court is required, shall be paid in full in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such liabilities and any agreements relating thereto. |
| BG Law LLP, bankruptcy counsel to the Debtors | Approximately $350,000 in addition to the post-petition payments to BG pursuant to the order approving the Fee Procedures Motion [Doc. No. ___] (the "Interim Compensation Order"). | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses, unless otherwise agreed to. |
| Province, LLC, financial advisor to the Debtors | Approximately $350,000 in addition to the post-petition payments made by the Debtors in connection with the Interim Compensation Order and in addition to the amounts provided for in the Debtosr' cash collateral budget. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses, unless otherwise agreed to. |
| Jerrel G John, bookkeeper and accountant to the Debtors | Approximately $35,000 in addition to the post-petition payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses, unless otherwise agreed to. |
| Marula Capital Group, financial advisor – valuation services to the Debtors | Approximately $50,000 in addition to amounts paid to Marula Capital Group pursuant to its employment order [Doc. No. 135] and pursuant to any payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses, unless otherwise agreed to. |
| Golden Goodrich LLP, counsel to the Committee | Approximately $150,000 in addition to the post-petition payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses, unless otherwise agreed to. |

---

[6] The amounts set forth in this chart are estimates of the administrative claim amounts that the Debtors believe each administrative claimant may be entitled to on the Effective Date in addition to the amounts provided for in the Debtors' cash collateral budget.  The amounts set forth in this chart are subject to change.

3011964

| NAME | AMOUNT OWED[6] | TREATMENT |
|---|---|---|
| Force Ten Partners, LLC, financial advisor to the Committee | Approximately $100,000 in addition to the post-petition payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses, unless otherwise agreed to. |
| Omni, noticing and solicitation agent for the Debtors | $0 | Paid in the ordinary course of business pursuant to the order approving Omni's employment [Doc. No. 134] |
| Greenberg Glusker, proposed special litigation counsel to the Debtors | Approximately $100,000 in addition to the post-petition payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses, unless otherwise agreed to. |
| **TOTAL** | Between Approximately $5 million and $6 million est. | Paid in the manner described above |

Reservation of Rights

Nothing in the Plan or Disclosure Statement and nothing set forth in the above chart should be construed as an admission by the Debtors or any other party as to the validity of the asserted / projected Professional Fee Claims.  The Debtors, the Committee, the OUST, Creditors and all other parties in interest reserve all rights to object to Professional Fee Claims.

Court Approval of Fees Required:

The Bankruptcy Court must approve, or must have previously approved on a final basis, all Professional Fee Claims listed in the foregoing chart before they may be paid.  Only the amount of fees and expenses approved by the Bankruptcy Court is required to be paid under the Plan.  The administrative claim amounts set forth above for professional fees and expenses simply represent the Debtors' best estimate as to the amount of Allowed Professional Fee Claims, which estimates assume that the Debtors make all of the post-petition professional fee monthly payments that the Bankruptcy Court may authorize the Debtors to make.  The actual Administrative Claims for Professional fees and expenses may be higher or lower.  By voting to accept the Plan, Creditors are not acknowledging the validity of, or consenting to the amount of, any of these Administrative Claims for professional fees and expenses, and Creditors are not waiving any of their rights to object to the allowance of any of these Professional Fee Claims.  Also, the Professionals employed in these

34

3011964

Cases may, prior to the Effective Date, seek Court approval of interim fees and expenses incurred in excess of the post-petition professional fee monthly payments received by such Professionals, pursuant to orders of the Bankruptcy Court.  To the extent any such interim fees and expenses are allowed by the Bankruptcy Court and paid by the Debtors prior to the Effective Date, that will reduce the amount of professional fees and expenses to be paid by the Reorganized Debtors.

**The last day to file any Administrative Claims (but NOT for ordinary post-petition operating obligations or Professional Fee Claims) is thirty (30) days after the Effective Date.** Administrative expenses will be paid on the later of the Effective Date or 10 days after the entry of a Final Order allowing the administrative expense, unless the administrative claimant has consented otherwise in writing.  On or before the Effective Date, the Debtors or the Reorganized Debtors will serve notice of an administrative bar date on all potential administrative claimants including, but not limited to, the Debtors' post-petition suppliers, service providers and employees.

**2.    Priority Tax Claims.**

Priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code.  The Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the Petition Date.  The Debtors believe that they owe the following priority tax claims:

| Class No. | Description | Estimated Amount | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| N/A | Priority Tax Claim of Canada Revenue Agency | Estimated at $17,438.37. | Full payment consistent with Bankruptcy Code section 1129(a)(9)(C). |
| N/A | Priority Tax Claim of CA Department of Tax and Fee Administration | Estimated at $2,697.30. | Full payment consistent with Bankruptcy Code section 1129(a)(9)(C). |
| N/A | Priority Tax Claim of State of Washington | Estimated at $907.62. | Full payment consistent with Bankruptcy Code section 1129(a)(9)(C). |

The Internal Revenue Service (the "IRS") filed claims against the Debtors prior to the filing of their 2023 tax returns.  If the IRS has an Allowed Priority Tax Claim, then the Debtors shall pay it in full

3011964

pursuant to 11 U.S.C. § 1129(a)(9)(C).

**C.      Classified Claims and Interests.**

    **1.      Class of Secured Claims.**

    Secured Claims are claims secured by liens on property of the estate.  The following chart sets forth the description and treatment of the Debtors' known Secured Claims.

| CLASS # | DESCRIPTION | IMPAIRED (YES/NO) | TREATMENT |
|---|---|---|---|
| 1 | Secured claim of East West Bank, as Agent ("EWB")<br><br>Collateral Description:  Substantially all of the Debtors' assets (the "Debtors' Personal Property")<br><br>Interest rate:<br>Non-Default (Term) – Prime Plus 1% (Prime no less than 5%)<br><br>Interest rate: Non-Default (Revolver) – Prime (no less than 5%)<br><br>Maturity Date – February 1, 2028<br><br>*Debtors have significant claims against EWB and reserve all their rights to assert those claims<br><br>Filed Claim: None<br><br>Debtors' Estimate of Claim for Plan Treatment Purposes:<br>$18.65 million [approximately $7.90 million for the term loan, and $10.80 million for the revolver].<br><br>Insider.  EWB was in actual control of the Debtors pre-petition. | Treatment A: Yes.<br><br>Treatment B: No. | **The Debtors scheduled this claim as Unliquidated and Disputed.  The Debtors reserve their rights to bring claims against EWB – either through an adversary proceeding and/or claim objection in this Court or in state court post-confirmation.<br><br>**Treatment A:**<br><br>Treat both the term loan and revolver loan as term loans, at the term loan contract rate of interest (Prime Plus 1% - Prime not less than 5%). Incurable default clauses to be removed and clauses related to non-operating entities to be removed.<br><br>$1 mm paid quarterly, commencing June 30, 2025. Additionally, 55% of net disposable income ("NDI") shall be paid quarterly to EWB.  See Plan Projections for details (Cash Available for Discretionary Debt Repayment).  If the EWB claim is not paid in full prior to the maturity date of February 1, 2028, the Debtors shall pay the remaining lump sum to EWB on or before February 1, 2028, through a cash payment or, if needed, by obtaining replacement financing or through a sale of the business.<br><br>**Lien:** To the same extent and validity of its existing lien(s), EWB shall have a first priority lien against the Debtors' Personal Property.<br><br>**Collateral:** EWB's collateral shall continue to be the Debtors' Personal Property to the same extent and validity of EWB's current interest in such collateral. |

36

| CLASS # | DESCRIPTION | IMPAIRED (YES/NO) | TREATMENT |
|---------|-------------|-------------------|-----------|
|         |             |                   | Such treatment shall be in full and complete satisfaction of the Class 1 claim.  The Debtors shall have no other obligations under the requisite loan agreements.  **Impaired; Entitled to Vote.**  Or, in the alternative,  **Treatment B:**  The Debtors are in the process of soliciting exit financing.  If they are successful, they will file a separate motion for approval of such financing and/or amend the Plan and this Disclosure Statement to include the proposed terms.  If the Debtors successfully obtain exit financing, then they will pay EWB its allowed claim in full on the Effective Date, in which case EWB would be unimpaired.  **Unimpaired; Not Entitled to Vote.** |

**2.     Classes of Priority Unsecured Claims.**

Certain Priority Claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in Classes.  These types of Claims are entitled to priority treatment as follows:  the Bankruptcy Code requires that each holder of such a Claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim.  The Debtors do not believe that there are any valid outstanding Section 507(a)(3), (5), (6), or (7) priority unsecured claims.  If there are any allowed priority unsecured claims as of the Effective Date, these claims will be paid in full by the Reorganized Debtor on the Effective Date (or as soon as practicable thereafter).  All allowed Section 507(a)(3), (5), (6), or (7) priority unsecured claims, if any, will be characterized as Priority Claims.

There is one valid outstanding Section 507(a)(4) priority unsecured claim, which claim and treatment are set forth below:

3011964

| CLASS # | DESCRIPTION | IMPAIRED (Yes/No) | TREATMENT |
|---|---|---|---|
| 2 | Employee Wage Claim of $5,991.80 | No. | Paid in full within 10 business days of the Effective Date. **Not impaired; not entitled to vote.** |

**3.     Classes of General Unsecured Claims.**

General Unsecured Claims are classified and treated as follows:

| CLASS # | DESCRIPTION | IMPAIRED (Yes/No) | TREATMENT |
|---|---|---|---|
| 3 | General Unsecured Claims [Excluding Insider Claims] Estimated at approximately $5 to $6 million. (This number is subject to change as follows: (a) the resolution of objections to Disputed Claims; and (b) the amount of rejection damages claims asserted by the former landlord.) [This estimation does not include any intercompany claims as the Debtors' have agreed to subordinate all of their intercompany claims to those of General Unsecured Creditors.] | Yes. | **Treatment:** Allowed General Unsecured Claims will be paid 35% of the NDI as set forth in the Plan Projections (Cash Available for Discretionary Debt Repayment). If Allowed General Unsecured Claims are not paid in full prior to February 1, 2028, the Debtors shall pay the remaining balance of Allowed General Unsecured Claims in full on or before February 1, 2028. **Impaired; Entitled to Vote** |
| 4 | General Unsecured Claim of Insider Klee Irwin ($1 million) | Yes. | **Treatment:** Mr. Irwin has agreed to subordinate his claim to all Allowed Claims in exchange for Irwin Nevada agreeing that Mr. Irwin can commence payments on his notes payable at the same time. **Impaired; Entitled to Vote** |

**4.     Classes of Interest Holders.**

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor. The following chart identifies the Plan's treatment of the class of interest holders:

3011964

| CLASS # | DESCRIPTION | IMPAIRED (YES/NO) | TREATMENT |
|---|---|---|---|
| 5 | Irwin Nevada<br><br>Irwin Nevada's current equity holders who collectively own 100% of Irwin Nevada: Equity Interests of Klee Irwin (90% Non-Voting Interest), Klee & Margareth Irwin Children's Trust (10% Non-Voting Interest) and DAI US HoldCo, Inc. (100% Voting Interest) | No. | **Treatment:**  The shareholders of Irwin Nevada shall retain their current equity interests in Irwin Nevada. However, any conversion rights held by the Non-Voting Interests to Irwin Canada shares shall be convertible to the new DAI shares.<br><br>**Not Impaired; Not Entitled to Vote.** |
| 6 | Irwin Canada - Equity Interest of Public Shareholders<br><br>Irwin Canada owns 100% of DAI, which owns 2% of Irwin Nevada. | Yes. | Irwin Canada will be dissolved.<br><br>**Treatment:** Irwin Canada's current shareholders shall obtain effectively their same economic and voting interest in DAI as they currently have in Irwin Canada except that those shares will now be private shares.<br><br>**Impaired; Entitled to Vote** |
| 7 | DAI US HoldCo<br><br>Owned 100% by Irwin Canada, owns 2% of Irwin Nevada but owns 100% Voting Shares. | Yes. | **Treatment:**  The current equity structure of DAI will be replaced.  See Class 6 for details.<br><br>**Impaired; Entitled to Vote** |
| 8 | 5310 Holdings, LLC<br><br>Owned 100% by Irwin Nevada | No. | **Treatment:**  No change.  To be owned 100% by Irwin Nevada.<br><br>**Not Impaired. Not entitled to vote.** |

**D.    Means of Effectuating the Plan and Implementation of the Plan.**

**1.    Plan Funding.**

Exit Financing

If the Debtors successfully obtain Exit Financing, then such funds shall be used to pay the Class 1 Allowed Secured Claim.  The balance of all Allowed Claims will be paid from the Debtors' ongoing business operations as set forth in the Plan Projections.

No Exit Financing

If the Debtors are unable to obtain Exit Financing or determine that it is in their best interests not to do so, then the Plan will be funded by the Debtors' ongoing business operations as set forth in the Plan Projections.  Based on their 30 year history of a profitable nutraceutical business and as

39

3011964

shown by the Plan Projections, which are a conservative estimate of the Reorganized Debtors' performance, the Debtors are confident that sufficient funds will exist to make all required Plan payments.

**2.      Release of Liens.**

If Class 1 is paid in full through Exit Financing, then EWB shall file termination statements related to all UCC's filed by EWB within 30 days of such payment (the "Release Procedures"). In the event that EWB fails to do so, the Reorganized Debtors shall be granted, pursuant to the Confirmation Order, power of authority for the limited purpose of implementing and consummating the Release Procedures.

**3.      Composition of the Reorganized Debtors and Post-Confirmation Management.**

On the Effective Date, Irwin Nevada will remain a Nevada corporation.  Irwin Nevada's CEO will remain Klee Irwin and its CFO will remain Mark Green.  Mr. Irwin and Mr. Green are the only officers as recognized in Irwin Nevada's bylaws, and they shall remain in place during the pendency of the Plan term until all creditors are paid in full.  Any change to Irwin Nevada's officers or board members post-confirmation during the Plan term can only be done by filing a motion with the Bankruptcy Court and obtaining an order thereon.

On the Effective Date, Mr. Irwin shall continue as the CEO of DAI and Mr. Green shall continue as the CFO of DAI.

On the Effective Date, Irwin Nevada will continue to be the managing member of 5310.

Mr. Irwin's salary as of the Effective Date will return to his pre-petition salary of $790,000 a year.  Mr. Irwin will also be entitled to up to a 10% bonus relating to NDI (Net Disposable Income) annually. Mr. Green's salary as of the Effective Date will continue to be $240,000 a year, paid through his corporation Greenmark Services Corp.

**4.      Disbursing Agent.**

The Reorganized Debtors will act as the Disbursing Agent for purposes of making Distributions under the Plan.  If necessary, the Reorganized Debtors may retain Omni or Province to assist with Distributions.

3011964

**5.      Objections to Claims.**

The claims Bar Date in these cases is expected to be December 20, 2024 for non-governmental entities.  The Bar Date in these cases is February 5, 2025 for governmental entities.  Attached as **Exhibit A** to this Disclosure Statement is a Claim Chart, which identifies all of the Debtors' scheduled claims and all of the filed proofs of claims which have been filed to date against the Debtors.  Following Confirmation of the Plan, the Reorganized Debtors shall be the sole entities with the standing and authority to file objections to Claims in these cases, and shall have the right to file objections to all Claims which are inconsistent with the Debtors' books and records unless the Reorganized Debtors deems the inconsistency to be insignificant.  **Any proof of claim that is filed with the Bankruptcy Court and/or served on the Debtors after the Effective Date <u>will be deemed invalid</u> (without the need for the Reorganized Debtors to file an objection to such late-filed claim) unless the claimant files a motion for leave of Court to file such claim.**  With respect to disputed claims which are not resolved prior to the Effective Date, the Reorganized Debtors shall have the authority, in its sole discretion, in the reasonable exercise of its business judgment to settle or compromise any Claim following the Effective Date by submitting a stipulation to the Bankruptcy Court without a notice or hearing thereon.

As provided by Section 502(c) of the Bankruptcy Code, the Bankruptcy Court may estimate any contingent, unliquidated or disputed claim for purposes of Confirmation of the Plan.  The Bankruptcy Court shall retain jurisdiction over the Debtors, the Reorganized Debtors, these Cases and these Estates to resolve and to adjudicate any and all such objections to Claims which are commenced or continued following the Confirmation of the Plan.  Nothing contained in the Plan shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any rights of setoff or recoupment, or of any defense, the Debtors or the Reorganized Debtors may have with respect to any claim, or of any basis that the Reorganized Debtors may have to object to any such claim.

**<u>Any Proof of Claim or Interest that is filed with the Bankruptcy Court and/or served on the Debtors or Reorganized Debtors after the Effective Date will be deemed invalid unless the Claimant files a motion for leave of Court to file such Claim.</u>**

The Debtors specifically reserve the right to file objections to any and all Claims set forth in

3011964

**Exhibit A** to this Disclosure Statement, and to any subsequently filed proofs of claim. An order confirming the Plan shall not be *res judicata*, collateral estoppel, or other bar to the Reorganized Debtors' right to object to such Claims after the Effective Date.

## 6.    Payment Upon Resolution of Disputed Claims.

The Disbursing Agent will not make any payment to the holder of a Disputed Claim until such Disputed Claim becomes an Allowed Claim.  Pending a resolution of the Disputed Claim, the Disbursing Agent will create a reserve account (the "Reserve Account") which will contain proposed distributions based on the Disputed Claims.  Within sixty (60) days after a Disputed Claim becomes an Allowed Claim, the Disbursing Agent will make a payment on such Allowed Claim from the Reserve Account in an amount equal to what the holder of such Allowed Claim would have received if the Claim had been allowed in such amount as of the Effective Date.

## 7.    Investigation and Prosecution of Claims and Avoidance Actions.

As mentioned above, the Debtors intend on filing a complaint against EWB and CFG. The Debtors reserve their right to file and prosecute such action.

As set forth in Attachment 3 to Irwin Nevada's Statement of Financial Affairs [Doc. No. 96, pgs. 69 to 79], Irwin Nevada paid a total of $15,086,579.72 to creditors in the 90 day preference period (with respect to creditors that received $7,575 or more during the 90 day preference period). Irwin Nevada does not believe it has any preference claims arising out of (a) payments made in the ordinary course of business to vendors, suppliers and service providers, or (b) payments made to employees. The majority of the payments during this time period were to suppliers and servicer providers that continued to supply products and provide services to the Debtors during this period, and to professionals that also were providing ongoing services to the Debtors.  However, the Debtors do believe that they have claims against the Lenders and other parties where EWB forced the Debtors to make such payments.  The Debtors reserve their rights to pursue such preference actions.

The Reorganized Debtors will retain any claims against the Debtors' insiders, including its current equity holders, and such claims shall revest in the Reorganized Debtors upon the Effective Date.

42

3011964

**8.    Payment of Professional Fees and Expenses Incurred After the Effective Date.**

The Reorganized Debtors shall be entitled to employ such professionals that the Reorganized Debtors deems appropriate and to pay the fees and expenses incurred by such professionals in the ordinary course without any further order of the Bankruptcy Court.

**9.    Distributions to Be Made Pursuant to the Plan.**

Except as otherwise agreed to by the Reorganized Debtors in writing, Distributions to be made to holders of Allowed Claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtors' Schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Bankruptcy Court, to such address.  Checks issued to pay Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date such check was mailed to the intended recipient.  Those funds represented by voided checks that were not timely negotiated shall become the property of the Reorganized Debtors.

**10.    Corporate Matters.**

The occurrence of the Effective Date shall constitute all approvals, consents and actions required by any officers of the Debtors under applicable law, and shall enable the Debtors or the Reorganized Debtors to execute any documents, instruments or agreements, and to take all corporate and other actions that are specified in the Plan or the Plan Confirmation Order that are necessary or appropriate to perform, implement and effectuate the Plan.  If necessary, on or before _____, the Debtors will file a Plan Supplement with the Bankruptcy Court to provide the Court and parties in interest with additional information and/or documents that the Debtors may deem reasonably necessary to effectuate the transactions contemplated by the Plan (including, but not limited to, the dissolution of Irwin Canada).

**11.    Exemption from Transfer Taxes.**

Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under § 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax.  Transfers under the Plan that are exempt from taxes under § 1146(c) of the Bankruptcy Code include

43

3011964

all transfers by the Debtors after the commencement of their chapter 11 Cases in contemplation of the Plan but prior to the Effective Date, and all transfers to and by the Reorganized Debtors. The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and other similar taxes.

**12.    Exculpations and Releases.**

*To the maximum extent permitted by law, neither the Debtors, the Reorganized Debtors, the Committee members, nor any of their successors and assigns, advisors, attorneys, employees, officers, directors, shareholders, agents, members, representatives, or Professionals employed or retained by any of them whether or not by Bankruptcy Court order, each in their capacity as such, shall have or incur liability to any Person for an act taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, confirming, implementing, or consummating the Plan, Disclosure Statement and all exhibits thereto and/or the transactions contemplated therein, or a contract, instrument, release or other agreement or document created or entered into in connection with the Plan; provided, however, that each of the above Persons shall be entitled to rely upon the advice of counsel concerning his or her duties pursuant to, or in connection with, the Plan or any related document, instrument or agreement; provided further that the foregoing exculpation shall have no effect on liability of any Person that results from any act or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct.*

**E.    Other Provisions of the Plan.**

**1.    Executory Contracts and Unexpired Leases.**

a.    <u>Assumptions.</u>

The following is a list of the Debtors' executory contracts and unexpired leases which the Debtors intend to assume on the Effective Date. If the Debtors have additional contracts or seek to revise this list, they will include it in a Plan Supplement. Set forth below is an itemization of the defaults which the Debtors contend exist and must be cured in connection with the Debtors' assumption of such executory contracts and unexpired leases (the "Cure Amounts"). The Debtors estimate that the total Cure Amounts that the Reorganized Debtors will be required to pay on the

44

3011964

Effective Date will be approximately $0.  The Confirmation Order will constitute a Bankruptcy

Court order approving the Debtors' assumption of all such executory contracts and unexpired leases

and fixing the Cure Amounts for each such executory contract and unexpired lease in the amounts

asserted by the Debtors as set forth below.

**Executory Contracts/Unexpired Leases That May Be Assumed by Irwin Nevada:**

| Vendor/Lessor | Description | Vendor/Lessor Address | Cure Amount | Cure Terms |
|---|---|---|---|---|
| 5310 Holdings | Trademark Licensing Agreement | 5310 Holdings (co-debtor) 300 Corporate Pointe, Ste 550 Culver City, CA 90230 | $0 | TBD |
| ADP | Master Service Agreement – Payroll – Already assumed pursuant to final wage order. | ADP 1 ADP Blvd. Roseland, NJ 07068 | $0 | TBD |
| Brightedge Technologies | Subscription Agreement | Brightedge Technologies 989 E Hillsdale Blvd., Ste 300 Foster City, CA 94404 | $0 | TBD |
| Charter Communications Operating, LLC | Communications Agreement | Charter Communications 550 Continental Blvd. El Segundo, CA 90245 | $0 | TBD |
| Coast Warehouse Company | Warehouse Services | Coast Warehouse Company 4750 Zinfandel Ct. Ontario, CA 91761 | $0 | TBD |
| Culver Pointe, LLC | Non residential real property lease | Culver Pointe, LLC 300 Corporate Pointe, Ste 220 Culver City, CA 90230 | $0 | TBD |
| DSV Solutions Inc. | Services Agreement | DSV Solutions Inc. 2200 Yukon Ct Milton, ON L9E 1N5, Canada | $0 | TBD |
| Genomma Lab USA | Trademark Licensing Agreement | Genomma Lab USA 3737 Buffalo Speedway, Ste 1975 Houston, TX 77098 | $0 | TBD |
| Peac Solutions | Lease Agreement | Peac Solutions 300 Fellowship Rd. Mt. Laurel, NJ 08054 | $0 | TBD |
| Quadiant Leasing | Lease Agreement | Quadiant Leasing 210 Profess, Ste 100 Irvine, CA 92618 | $0 | TBD |
| Threshold Enterprises Ltd. | Distribution Agreement | Threshold Enterprises Ltd. 23 Janis Way Scotts Valley, CA 95066 | $0 | TBD |

45

1            b.      Rejections.

2    On the Effective Date, Irwin Nevada will be rejecting the following executory contract(s):

| Vendor/Lessor | Description | Vendor/Lessor Address |
|---|---|---|
| Airespring | Services Agreement | Airespring<br>600 Cleveland St., Ste 226<br>Clearwater, FL 33755 |

To the extent the Debtors are a party to any executory contract and/or unexpired lease that is
not addressed above, such executory contract or unexpired lease will be deemed rejected, and the
Court order confirming the Plan will constitute a Bankruptcy Court order approving the Debtors'
rejection of all such executory contracts and unexpired leases.

        c.      Cures.

The Cure Amounts that the Debtors believes are required are set forth in the charts in section
a above. Any party who wishes to object to the Debtors' assumption of any of the unexpired leases
or executory contracts and/or to the Cure Amounts of any defaults the Debtors believe exist must file
a written objection with the Bankruptcy Court no later than 14 days prior to the date first set for the
Plan Confirmation Hearing, and serve such objection on counsel to the Debtors. The Bankruptcy
Court may deem the failure of any party to file such a timely objection to constitute consent to the
Debtors' assumption of the unexpired leases and executory contracts set forth above and to the Cure
Amounts of any defaults the Debtors must cure in connection with the Debtors' assumption of these
unexpired leases and executory contracts.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING
FROM THE REJECTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE
WHICH IS REJECTED ON THE EFFECTIVE DATE SHALL BE THIRTY (30) DAYS AFTER
THE EFFECTIVE DATE. Any claim based on the rejection of an unexpired lease or executory
contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders
otherwise. Any Allowed Claim resulting from the rejection of an unexpired lease or executory
contract will be classified and treated as a Class 3 Allowed Claim.

**2.    Risk Factors.**

The primary risk of implementing the Plan would be the Debtors' inability to meet its

46

3011964

projections set forth in the Plan Projections.   If for some reason the Debtors are unable to meet their projections, the Debtors reserve the right to seek to sell their business and/or to find an investor in order to enable the Debtors to pay all Allowed Claims in full.

There is a risk that the Plan is not confirmable under section 1129(a) of the Bankruptcy Code because not all impaired classes vote in favor of the Plan.

There is a risk that the Plan is not confirmable under the "cramdown" provision of section 1129(b) of the Bankruptcy Code.

**3.**     **Changes in Rates Subject to Regulatory Commission Approval.**

The Debtors are not subject to governmental regulatory commission approval of their rates.

**F.     Retention of Jurisdiction.**

Following the Confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court shall retain such jurisdiction as is legally permissible including for the following purposes:

1.     To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

2.     To determine the allowability, classification, or priority of Claims and to consider any objection to claim or interest whether such objection is filed before or after the Effective Date;

3.     To determine the extent, validity and priority of any lien asserted against any Asset or property of the Debtors or the Debtors' Estates;

4.     To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary or appropriate for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order, and all matters referred to in the Plan and the Confirmation Order, and to determine all matters that may be pending before the Bankruptcy Court in this Case on or before the Effective Date;

5.     To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of Professionals for the period on or before the Effective Date;

6.     To determine any request for payment of administrative expenses;

3011964

7.      To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any Claims resulting therefrom;

8.      To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of these Cases whether before, on, or after the Effective Date, including Claims, Causes of Action, and Avoidance Actions, and the Reorganized Debtors shall have the right to commence in the Bankruptcy Court any Causes of Action, including any Avoidance Actions, after the Effective Date, and to continue with the prosecution in the Bankruptcy Court of any such claims, Causes of Action and Avoidance Actions which were commenced but not completed by the Debtors prior to the Effective Date;

9.      To determine such other matters and for such other purposes as may be contemplated by the Plan or Confirmation Order;

10.     To modify the Plan under § 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan, or to reconcile any inconsistency in the Plan, so as to carry out its intents and purposes;

11.     Except as otherwise provided in the Plan or the Confirmation Order, to issue injunctions, to take such other actions, or make such other orders, as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or implementation by any Person or other entity of the Plan or the Confirmation Order;

12.     To issue such orders in aid of consummation, and in aid of implementation, of the Plan and the Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any Person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

13.     To enter a final decree closing these Cases.

**G.      Amendments to Corporate Documents.**

On the Effective Date, the officers and board members of the Reorganized Debtors shall be authorized to amend any corporate documents as necessary and to take all actions necessary and appropriate to carry out the terms of the Plan.

48

3011964

**H.    Dissolution of the Committee.**

On the Effective Date, the Committee, to the extent that it serves as the Official Committee of Unsecured Creditors appointed in the bankruptcy cases of Irwin Nevada and Irwin Canada, shall be dissolved and its members shall be released and discharged from all rights and duties arising from or related to these Cases.

**I.    Miscellaneous Issues Regarding Plan Distribution.**

**1.    No Fractional Distributions.**

No Distributions in fractions of hundredths of U.S. Dollars ($0.00's) (i.e., cents) shall be issued.  If the Distribution amount allocated to an Allowed Claim at the time of a Distribution hereunder would include fractions of cents, the amount to be distributed to the holder of such Claim shall be rounded down to the highest integral number of cents in the applicable Claim amount.

**2.    Name and Address of Holder of Claim.**

For purposes of all distributions under the Plan, the Disbursing Agent can rely on the name and address of the holder of each Allowed Claim as shown on any timely filed proof of claim and, if none, as shown on the Debtors' Schedules, except to the extent that the Disbursing Agent first receives adequate written notice of a change of address, properly executed by the Holder or its authorized agent.

**3.    Unclaimed Distribution.**

Any Unclaimed Distribution under the Plan shall be forfeited to the Reorganized Debtors. An Unclaimed Distribution is any Distribution made by the Reorganized Debtors to the address of the recipient reflected in the Schedules (or on any Proof of Claim filed by the Claimant), by: (a) checks which have been returned as undeliverable without a proper forwarding address; (b) checks which were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same; (c) checks which have not been cashed for a period of ninety (90) days after the date such checks were issued, or (d) disbursements that were not made because the Holder of such Allowed Claim failed to provide required tax information within forty-five (45) days after the Reorganized Debtors have sent any request for same to such Claimant's address as reflected in the Schedules and/or such Claimant's Proof of Claim.

3011964

**4.      De Minimus Cash Distributions.**

Notwithstanding anything to the contrary in the Plan, no Cash Distributions shall be made on account of any Allowed Claim if the Cash Distribution amount is less than $25.00.  Holders of Allowed Claims who would otherwise be entitled to a Distribution in the amount of less than $25.00 shall receive no Distribution on account of such Allowed Claim because the value of such Allowed Claim would be de minimus and the administrative costs associated with processing and mailing the Distributions to the holder of such Allowed Claim would likely exceed the amount of the Distribution. The Debtors may, at their own discretion, pay any claim totaling $5,000 or less in full.

## V.      IRS CIRCULAR 230 NOTICE

To ensure compliance with IRS Circular 230, holders of Claims and Interests are hereby notified that; (i) any discussion of federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of Claims or Interests for the purpose of avoiding penalties that may be imposed on them under the Internal Revenue Code; (ii) such discussion is written in connection with the promotion or marketing by the Debtors of the transactions or matters addressed herein; and (iii) holders of Claims and Interests should see advice based on their particular circumstances from an independent tax advisor.

## VI.      TAX CONSEQUENCES OF THE PLAN

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.  The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues the Plan may present to the Debtors.  The Debtors CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all of the tax implications of any action.

## VII.      CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

3011964

CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.  The Debtors CANNOT and DO NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Bankruptcy Court can confirm a plan.  Some of the requirements include that the plan must be proposed in good faith, the acceptance of the plan, whether the Plan pays creditors at least as much as Creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

**A.      Who May Vote or Object.**

Any party in interest may object to the confirmation of the Plan, but, as explained below, not everyone is entitled to vote to accept or reject the Plan.

**B.      Who May Vote to Accept/Reject the Plan**

A Creditor or Interest holder has a right to vote for or against the Plan if that Creditor or Interest holder has a Claim or Interest which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

**C.      What Is an Allowed Claim/Interest**

As noted above, a Creditor or Interest holder must first have an <u>allowed claim or interest</u> to have the right to vote.  Generally, any proof of claim or interest will be allowed, unless a party in interest files an objection to the claim or interest.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE ON ACCOUNT OF PRE-PETITION CLAIMS IS EXPECTED TO BE DECEMBER 20, 2024.  A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest is not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtors' Schedules and such claim is not

3011964

scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim.  An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

**D.    What Is an Impaired Claim/Interest.**

As noted above, an allowed claim or interest has the right to vote only if it is in a class that is impaired under the Plan.  *See, e.g., In re Barakat*, 99 F.3d 1520 (9th Cir. 1996), *cert. denied,* 520 U.S. 1143 (1997) (a class that is not impaired is conclusively presumed to have accepted a chapter 11 plan).  A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of General Unsecured Claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed on the Effective Date.

In these Cases, the Debtors believe that members of Classes 1, 3, 4, 6 and 7 are impaired. Parties who dispute the Debtors' characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Debtors have incorrectly characterized the Class.

**E.    Who Is <u>Not</u> Entitled to Vote.**

The following four types of claims are <u>not</u> entitled to vote:  (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to sections 507(a)(1), (a)(2), and (a)(8) of the Bankruptcy Code; and (4) claims in classes that do not receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to sections 507(a)(1), (a)(2), and (a)(8) of the Bankruptcy Code are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Bankruptcy Code.  Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  Accordingly, Classes 2, 5 and 8 are not entitled to vote.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

**F.    Who Can Vote in More Than One Class.**

A Creditor whose Claim has been allowed in part as a secured claim and in part as an

3011964

unsecured claim is entitled to accept or reject the Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim. The Debtors do not believe that there are any Creditors who have a claim that is partially secured and partially unsecured.

**G.    Votes Necessary to Confirm the Plan.**

If impaired classes exist, the Bankruptcy Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed below.

**H.    Votes Necessary for a Class to Accept the Plan.**

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted on the plan, voted in favor of the plan. A class of interests is considered to have "accepted" a plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted on the plan, voted to accept the plan.

**I.    Treatment of Non-accepting Classes.**

As noted above, even if <u>all</u> impaired classes do not accept the Plan, the Bankruptcy Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the Bankruptcy Code. The process by which non-accepting classes are forced to be bound by the terms of a plan is commonly referred to as "cramdown." The Bankruptcy Code allows the Plan to be "crammed down" on non-accepting classes of claims or interests if it meets all consensual requirements except the voting requirements of § 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in § 1129(b) of the Bankruptcy Code and applicable case law.

**J.    Request for Confirmation Despite Nonacceptance by Impaired Class(es).**

The Debtors will request the Bankruptcy Court to confirm the Plan by cramdown on impaired classes if such classes do not vote to accept the Plan.

/ / /

53

3011964

**K.     Liquidation Analysis.**

Another confirmation requirement is the "Best Interest Test," which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the debtor's assets are usually sold by a Chapter 7 trustee.  Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims.  Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Bankruptcy Court to be able to confirm the Plan, the Bankruptcy Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation of the Debtors.  The Debtors maintain that this requirement is clearly met.

The Debtors largest liability by far is the approximately $19 million disputed secured claim of EWB.  Because this is a liability against all Debtors and the Debtors intend on paying all creditors in full, the Debtors' liquidation analysis ("Liquidation Analysis"), attached hereto as **Exhibit C**, was prepared on a consolidated basis. The Debtors and their financial advisor prepared the Liquidation Analysis with two scenarios – the first is that the Debtors' assets are sold in a liquidation at a high value, and the second is that the Debtors' assets are sold in a "fire sale".  In the first scenario, all Allowed Claims would be paid in full.  In the second scenario, general unsecured creditors are estimated to receive 6.4% of their Allowed Claims.

In a chapter 7 case, a chapter 7 trustee would be required to replace the professionals currently employed by the Debtors' Estates with new professionals, which would burden the Estates with additional substantial fees as the trustee and his/her professionals would need to familiarize

54

3011964

themselves with these cases, and the Estates would bear the significant financial burden of their

learning curve.  These additional expenses are avoided through the confirmation of the Plan.

Moreover, the Reorganized Debtors will make all Effective Date Distributions under the Plan at no

charge to the Estates and thereby avoid the substantial fees that would otherwise be payable to a

Chapter 7 trustee for making such disbursements pursuant to Section 326 of the Bankruptcy Code.

The Liquidation Analysis depends on several estimates and assumptions.  Although

developed and considered reasonable by the Debtors and the advisors of the Debtors, the

assumptions are inherently subject to significant economic, business, regulatory, and competitive

uncertainties and contingencies beyond the Debtors' control or their management.  The Liquidation

Analysis is also based on the Debtors' best judgment of how numerous decisions in the liquidation

process would be resolved.  Accordingly, there can be no assurance that the values reflected in the

Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such liquidation, and

actual results could vary materially and adversely from those contained in the Liquidation Analysis.

Further, the Liquidation Analysis contains numerous estimates regarding the Debtors' financial and

operational performance between now and the confirmation date, which is still under review and

subject to material change.

In preparing the Liquidation Analysis, the Debtors have preliminarily estimated an amount of

Allowed Claims for each indicated type of Claim.  Additional Claims were estimated to include

certain Chapter 7 administrative obligations incurred after the conversion date. The estimate of all

allowed claims in the Liquidation Analysis is based on the scheduled and filed claim values and

several illustrative placeholders.  No order or finding has been entered or made by the Bankruptcy

Court estimating or otherwise fixing the amount of Claims at the projected amounts of Allowed

Claims set forth in the Liquidation Analysis.  The estimate of the amount of Allowed Claims set

forth in the Liquidation Analysis should not be relied upon for any other purpose, including, without

limitation, any determination of the value of any distribution to be made on account of Allowed

Claims under the Plan. The actual amount of Allowed Claims could be materially different from the

amount of Claims estimated in the Liquidation Analysis.

3011964

The Liquidation Analysis demonstrates that in a piecemeal Chapter 7 liquidation, the worst-case scenario would be that the liquidation proceeds would be less than the outstanding amount of asserted administrative claims.  The best-case scenario is that General Unsecured Claims would receive a pro rata distribution of 100% of their claims.

**% OF THEIR CLAIMS WHICH GENERAL UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CHAPTER 7 LIQUIDATION: =6.4% to 100%**

**% OF THEIR CLAIMS WHICH GENERAL UNSECURED CREDITORS ARE ESTIMATED TO RECEIVE OR RETAIN UNDER THE PLAN: = 100% Cash**

**L.      Feasibility.**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis.  The first aspect considers whether the Debtors will have enough cash on hand on the Effective Date to pay all the claims and expenses which are entitled to be paid on such date.  As set forth in the Plan Projections, the Debtors expect to have cash on hand of approximately $3 million.  Of this amount, the Reorganized Debtors anticipate that they will require at least $1.75 million for working capital to meet the Debtors' operating needs, thereby reducing available funds to fund the Effective Date payments to $1.25 million.  Such proceeds will be utilized as follows:

| | |
|---|---|
| Administrative (Professional) | $1,135,000 |
| Lease/Contract Cures | $0 |
| Priority Wage Claims | $5,991.80 |
| Total | $1,140,991.80 |

Based on the foregoing, the Debtors are confident that sufficient funds will exist to make all required Effective Date payments.

The second aspect considers whether the Reorganized Debtors will have enough cash over the life of the Plan to make the required Plan payments.  The balance of Allowed Claims will be satisfied over time as set forth in the Plan Projections attached hereto as **Exhibit B**. The Plan

3011964

Projections are cash flow projections prepared for the five year period following the Effective Date, which demonstrate the Reorganized Debtors' ability to pay all Allowed Claims in full over the life of the Plan. The Plan Projections are conservative estimates of the Debtors' performance based on historical information adjusted for current market conditions. The Debtors believe there is a strong possibility that the Plan will be fully funded earlier than what is set forth in the Plan Projection.

As a condition to confirmation of a plan, the Bankruptcy Code requires, among other things, that the Bankruptcy Court determine that confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors. The Debtors believe that their ongoing business operates will generate sufficient revenue to pay all Allowed Claims in full by the second quarter of 2028. The Debtors reserve the right to (i) obtain post-confirmation financing to pay all Allowed Claims early, and/or (ii) seek to sell their business to pay all Allowed Claims in full.

## VIII.   EFFECT OF CONFIRMATION OF THE PLAN

### A.   Discharge.

On the Effective Date, the Debtors will receive a discharge under the Plan pursuant to and in accordance with the provisions of § 1141 of the Bankruptcy Code because there has not been a liquidation of all or substantially all of the property of the Debtors' Estates. Pursuant to § 1141(d)(1)(A),  Confirmation of the Plan will discharge "the debtor[s] from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not – (i) a proof of claim based on such debt is filed or deemed filed under section 501 of this title; (ii) such claim is allowed under section 502 of this title; or (iii) the holder of such claim has accepted the plan …".  11 U.S.C. §§ 1141(d)(1)(A)(i), (ii) and (iii).  **In other words, Confirmation of the Plan will effectuate a discharge as to all debts or liabilities, whether contingent, unliquidated, disputed, known or unknown, that were incurred or arose before Confirmation of the Plan.**  This includes all types of Claims and obligations arising out of and/or including, but not limited to, (i) all causes of action under state and Federal law (e.g., breach of contract, breach of fiduciary duty, false advertising, etc.), (ii) trade payables, (iii) landlord claims, (iv) tax Claims including interest, (v) environmental claims, (vi) employee related claims and (vii) any other known or unknown Claim from any debt arising prior to Plan Confirmation.

57

3011964

**The Plan shall bind the holders of all Claims whether or not they vote to accept the Plan.  The rights afforded in the Plan and the treatment of all Claims therein shall be in complete satisfaction, discharge and release of all Claims against the Debtors or their Assets of any nature whatsoever except as otherwise specifically provided in the Plan.  Except as set forth in the Plan, all Claims shall be forever satisfied, discharged and released in full on the Effective Date, and all holders of Claims shall be forever precluded and enjoined from asserting Claims against the Reorganized Debtors.  Any litigation pending prepetition and/or initiated postpetition in any court other than the Bankruptcy Court where relief from stay was not obtained from the Bankruptcy Court shall be deemed discharged upon Plan Confirmation and the occurrence of the Effective Date.**

**B.      Continuing Stay/Injunction.**

The automatic stay is lifted upon the Effective Date as to property of the Estates.  However, the stay continues to prohibit collection or enforcement of prepetition Claims against the Reorganized Debtors or the Reorganized Debtors' property until the earlier of the date: (1) the Debtors' bankruptcy Cases are closed, or (2) the Debtors' bankruptcy Cases are dismissed. Therefore, all parties bound by the Plan shall take no action with respect to, and are enjoined from, collecting or enforcing their prepetition Claims against the Reorganized Debtors as set forth herein, and as otherwise provided by operation of law, until the earlier of the date that (1) the Debtors' bankruptcy Cases are closed, or (2) the Debtors' bankruptcy Cases are dismissed. Specifically, absent further order of the Bankruptcy Court, EWB and/or CFG are stayed from, among other things, (i) taking any action to exercise their guaranty and security agreement against DAI's stock, Irwin Nevada's stock or 5310's membership interests, (ii) taking control of DAI's or Irwin Nevada's board of directors, and/or (iii) taking control of the Reorganized Debtors' business.

**The Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any Claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.**

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged

or an interest or other right of an equity holder that is impaired pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtors, the Debtors' Estates, the Reorganized Debtors or their property on account of any such discharged Claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (v) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

**By accepting distribution pursuant to the Plan, each holder of an Allowed Claim receiving a Distribution pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this Section.**

**C.    Revesting of Property in the Reorganized Debtors.**

With respect to Irwin Nevada, DAI and 5310, the Confirmation of the Plan revests all property of their respective Estates in the Reorganized Debtors respectively, including, but not limited to, any litigation claims pursuant to the Plan and the Bankruptcy Code.  From and after the Effective Date, the Reorganized Debtors may operate their business and may use, acquire, and dispose of property, including payment of all business expenses and professional fees and expenses, and compromise and settle any claims or causes of actions without supervision or consent of the Bankruptcy Court, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

The Reorganized Debtors shall have, retain, reserve and be entitled to assert all claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date as fully as if the Debtors' bankruptcy Cases had not been commenced; and all of the Reorganized Debtors' legal and equitable rights respecting any such claims which are not specifically waived, extinguished, or relinquished by the Plan may be asserted after the Effective Date by the Reorganized Debtors.

3011964

With respect to Irwin Canada, Confirmation of the Plan vests all of Irwin Canada's property, assets and liabilities in DAI.  All subsidiaries of Irwin Canada will become subsidiaries of DAI as of the Effective Date of the Plan.

**D.    Modification of the Plan.**

The Debtors may modify the Plan at any time before confirmation.  However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on the Plan if the Debtors modify the Plan before confirmation.  The Debtors or the Reorganized Debtors, as the case may be, may also seek to modify the Plan at any time after Confirmation of the Plan so long as (1) the Plan has not been substantially consummated, and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**E.    Post-Confirmation Status Reports.**

Until final decrees closing the Debtors' Case are entered, the Reorganized Debtors shall file regular status reports if so ordered by the Bankruptcy Court.

**F.    Post-Confirmation Conversion/Dismissal – Local Bankruptcy Rule 3020-1(e).**

A Creditor or any other party in interest may bring a motion to convert or dismiss the Cases under § 1112(b) of the Bankruptcy Code after the Plan is confirmed if there is a default in performing the Plan.  If the Bankruptcy Court orders the Cases converted to chapter 7 after the Plan is confirmed, then all property that had been property of the chapter 11 Estates, and that has not been disbursed pursuant to the Plan, will revest in the chapter 7 estate, and the automatic stay will be re-imposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Bankruptcy Court during these Cases.  The Plan Confirmation Order may also be revoked under very limited circumstances.  The Bankruptcy Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the Plan Confirmation Order.

**G.    Final Decree.**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtors shall file a motion with the Bankruptcy Court to obtain a final decree to close

3011964

1   these cases.  The Reorganized Debtors shall be responsible for the timely payment of all fees

2   incurred pursuant to 28 U.S.C. § 1930(a)(6).

3   DATED:  October 31, 2024                    Irwin Naturals, a Nevada Corporation

4

5                                              By: _____
                                                   Klee Irwin, Chief Executive Officer
6

7   DATED:  October 31, 2024                    Irwin Naturals, Inc., a British Colombia Corporation

8

9                                              By: _____
                                                   Klee Irwin, Chief Executive Officer
10

11  DATED:  October 31, 2024                    5310 Holdings, LLC

12

13                                             By: _____
                                                   Klee Irwin, as CEO of Irwin Naturals, a Nevada
14                                                 corporation, Managing Member of 5310 Holdings,
                                                   LLC
15

16

17  DATED:  October 31, 2024                    DAI US HoldCo Inc.,

18

19                                             By: _____
                                                   Klee Irwin, Chief Executive Officer
20

21  Submitted By:

22  BG Law LLP

23

24

25  By: _/s/ Susan K. Seflin_____
           Susan K. Seflin
26  Attorneys for Chapter 11 Debtors
    and Plan Proponents

27

28

                                              61

3011964

# EXHIBIT A

| Claim No | Sched ID(s) | Claim Date Filed | Creditor | Sec | Pri | Uns | ClmAmt | Sch Sec Amt | Sch Pri Amt | Sch Uns Amt | Sec Amt | Pri Amt | Uns Amt | Objection Status | Filed Case | Sched Case | CUD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 14 | | 1010Data Services LLC | | | x | | $0.00 | $0.00 | $6,000.00 | | | | | | 24-11323 | |
| | 335 | | A360 | | | x | | $0.00 | $0.00 | $117,450.00 | | | | | | 24-11323 | D |
| C323-6 | | 08/15/2024 | A360 Media, LLC | | | x | $117,450.00 | | | | | | $117,450.00 | | 24-11323 | | |
| | 17 | | Acosta Inc | | | x | | | | $34,995.24 | | | | | | 24-11323 | |
| C323-5 | | 10/16/2024 | ADP Inc | | | x | $19.80 | | | | | | $19.80 | | 24-11323 | | |
| | 115 | | Advantage Sales & Marketing | | | x | | $0.00 | $0.00 | $257.71 | | | | | | 24-11323 | |
| | 19 | | Ahold Financial Services | | | x | | $0.00 | $0.00 | $3,873.64 | | | | | | 24-11323 | |
| | 21 | | Alison Marie Cervelli | | x | | | $0.00 | $1,240.00 | $0.00 | | | | | | 24-11323 | |
| | 22 | | American Associated Pharmacies | | | x | | | | $382.00 | | | | | | 24-11323 | |
| | 23 | | American Express | | | x | | | | $57,480.05 | | | | | | 24-11323 | |
| C323-20 | | 10/04/2024 | American Express National Bank | | | x | $83,533.69 | | | | | | $83,533.69 | | 24-11323 | | |
| | 24 | | Amware Fulfillment LLC | | | x | | | | $95,583.57 | | | | | | 24-11323 | |
| | 25 | | Apg Inc | | | x | | | | $24,600.00 | | | | | | 24-11323 | |
| C323-10 | | 08/15/2024 | Arcbest, Inc | | | x | $45,652.49 | | | | | | $45,652.49 | | 24-11323 | | |
| | 26 | | Armanino LLP | | | x | | | | $539,288.29 | | | | | | 24-11323 | |
| C323-4 | | 09/03/2024 | Aston Carter, Inc | | | x | $3,504.55 | | | | | | $3,504.55 | | 24-11323 | | |
| | 27 | | Ballard Spahr LLP | | | x | | $0.00 | $0.00 | $152,014.05 | | | | | | 24-11323 | D |
| | 116 | | Berg Marketing Group | | | x | | $0.00 | $0.00 | $10,432.35 | | | | | | 24-11323 | |
| | 70 | | Best One Consultng Group | | | x | | | | $656.25 | | | | | | 24-11323 | |
| | 29 | | Brex Inc | | | x | | | | $210.00 | | | | | | 24-11323 | |
| | 8 | | Broadridge | | | x | | | | $418.35 | | | | | | 24-11324 | |
| C323-11 | | 08/23/2024 | Buchalter, A Professional Corporation | | | x | $4,494.46 | | | | | | $4,494.46 | | 24-11323 | | |
| | 100 | | CA Dept of Tax & Fee Administration | | x | | | $0.00 | $2,697.30 | $0.00 | | | | | | 24-11323 | |
| | 244 | | California Dept of Tax & Fee Administration (CDTFA) | | x | | | | $0.00 | $0.00 | | | | | | 24-11323 | |
| | 237 | | California Dept of Tax & Fee Administration (CDTFA) | | x | | | | $0.00 | $0.00 | | | | | | 24-11324 | |
| | 258 | | California Dept of Tax & Fee Administration (CDTFA) | | x | | | | $0.00 | $0.00 | | | | | | 24-11325 | |
| | 251 | | California Dept of Tax & Fee Administration (CDTFA) | | x | | | | $0.00 | $0.00 | | | | | | 24-11326 | |
| | 30 | | Call & Jensen | | x | | | | | $1,655.50 | | | | | | 24-11323 | |
| | 44 | | Canada Revenue Agency | | x | | | $0.00 | $15,150.00 | $2,288.37 | | | | | | 24-11323 | |
| | 338 | | Canada Revenue Agency | | x | | | | $0.00 | | | | | | | 24-11324 | |
| | 31 | | Canadian Analytical Lab | | | x | | | | $4,449.05 | | | | | | 24-11323 | |
| | 32 | | Captek Softgels International Inc | | | x | | | | $41,460.64 | | | | | | 24-11323 | |
| | 117 | | Cdz Sales Inc | | | x | | $0.00 | $0.00 | $363.34 | | | | | | 24-11323 | |
| | 75 | | Certified Laboratories | | | x | | | | $665.00 | | | | | | 24-11323 | |
| | 66 | | Circana | | | x | | | | $3,905.04 | | | | | | 24-11323 | |
| | 65 | | Circana LLC | | | x | | | | $15,870.00 | | | | | | 24-11323 | |
| | 245 | | City of Los Angeles Tax Collector | | x | | | | $0.00 | | | | | | | 24-11323 | |
| | 238 | | City of Los Angeles Tax Collector | | x | | | | | $0.00 | | | | | | 24-11324 | |
| | 259 | | City of Los Angeles Tax Collector | | x | | | | | $0.00 | | | | | | 24-11325 | |
| | 252 | | City of Los Angeles Tax Collector | | x | | | | | $0.00 | | | | | | 24-11326 | |
| | 34 | | Clark Hill | | | x | | | | $22,949.00 | | | | | | 24-11323 | |
| | 1 | | Clark Hill PLC | | | x | | | | $41,639.00 | | | | | | 24-11324 | |
| | 36 | | Cnb Commercial Visa Card | | | x | | | | $15.00 | | | | | | 24-11323 | |
| | 37 | | Coast 3Pl | | | x | | $0.00 | $0.00 | $0.00 | | | | | | 24-11323 | |
| | 38 | | Coast Warehouse | | | x | | $0.00 | $0.00 | $0.00 | | | | | | 24-11323 | |
| | 355 | | Colorado Dept of Revenue | | x | | | | $0.00 | $0.00 | | | | | | 24-11323 | |
| | 356 | | Colorado Dept of Revenue | | x | | | | | $0.00 | $0.00 | | | | | 24-11323 | |
| | 347 | | Colorado Dept of Revenue | | x | | | | | $0.00 | $0.00 | | | | | 24-11325 | |
| | 348 | | Colorado Dept of Revenue | | x | | | | | $0.00 | $0.00 | | | | | 24-11325 | |
| | 339 | | Colorado Dept of Revenue | | x | | | | | $0.00 | $0.00 | | | | | 24-11326 | |
| | 340 | | Colorado Dept of Revenue | | x | | | | | $0.00 | $0.00 | | | | | 24-11326 | |
| | 40 | | Commerce Bank | | | x | | | | $1,450.06 | | | | | | 24-11323 | |
| | 41 | | Connected Cfo LLC | | | x | | | | $1,500.00 | | | | | | 24-11323 | |
| | 71 | | Connell Communications | | | x | | | | $36,600.00 | | | | | | 24-11323 | |

Exhibit B_001

| Claim No | Sched ID(s) | Claim Date Filed | Creditor | Sec | Pri | Uns | ClmAmt | Sch Sec Amt | Sch Pri Amt | Sch Uns Amt | Sec Amt | Pri Amt | Uns Amt | Objection Status | Filed Case | Sched Case | CUD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 321 | | Conohan | | | x | | $0.00 | $0.00 | $0.00 | | | | | | 24-11323 | CUD |
| | 42 | | Copperpoint Insurance Co | | | x | | | | $10,948.00 | | | | | | 24-11323 | |
| | 43 | | CR3 Partners LLC | | | x | | $0.00 | $0.00 | $39,321.35 | | | | | | 24-11323 | D |
| | 118 | | Creative Sales & Marketing | | | x | | $0.00 | $0.00 | $11,953.94 | | | | | | 24-11323 | |
| | 5 | | Cse Canadian Securities Exchange | | | x | | | | $4,695.15 | | | | | | 24-11324 | |
| C323-1 | 56 | 09/01/2024 | Dawn Patrol Inc dba Full Stream Group | | | x | $103,733.83 | | | $72,388.94 | | | $103,733.83 | Possible Objection | 24-11323 | | |
| | 46 | | Dentons Canada LLP | | | x | | | | $27,340.16 | | | | | | 24-11323 | |
| C323-13 | | 09/20/2024 | Department Of Treasury - Internal Revenue Service | | x | | $511,072.18 | | | | | $511,072.18 | | Objection | 24-11323 | | |
| C326-7 | 248, 241, 262, 255 | 09/16/2024 | Department Of Treasury - Internal Revenue Service | | x | | $1,009,150.72 | | $0.00 | $0.00 | | $803,184.63 | $205,966.09 | Objection | 24-11326 | | |
| | 334 | | Digital Media Innovations | | | x | | $0.00 | $0.00 | $11,708.00 | | | | | | 24-11323 | D |
| | 4 | | Digital Media Innovations, LLC | | | x | | | | $11,367.00 | | | | | | 24-11324 | |
| | 119 | | Direct Sales & Marketing | | | x | | $0.00 | $0.00 | $1,429.18 | | | | | | 24-11323 | |
| | 47 | | Dsv Air & Sea | | | x | | | | $1,426.70 | | | | | | 24-11323 | |
| | 48 | | Dsv Road Inc | | | x | | | | $9,501.78 | | | | | | 24-11323 | |
| | 49 | | Dsv Solutions Inc | | | x | | | | $22,546.43 | | | | | | 24-11323 | |
| | 161 | | East West Bank | x | | | | $18,651,960.01 | | $0.00 | | | | Objection | 24-11323 | | UD |
| | 172 | | East West Bank | x | | | | $0.00 | $0.00 | $0.00 | | | | | 24-11323 | | UD |
| | 159 | | East West Bank | x | | | | $18,651,960.01 | $0.00 | $0.00 | | | | | 24-11324 | | UD |
| | 166 | | East West Bank | x | | | | $0.00 | $0.00 | $0.00 | | | | | 24-11325 | | UD |
| | 168 | | East West Bank | x | | | | $0.00 | $0.00 | $0.00 | | | | | 24-11325 | | UD |
| | 170 | | East West Bank | x | | | | $0.00 | $0.00 | $0.00 | | | | | 24-11325 | | UD |
| | 162 | | East West Bank, as agent | x | | | | $0.00 | $0.00 | $0.00 | | | | | 24-11323 | | UD |
| | 160 | | East West Bank, as agent | x | | | | $0.00 | $0.00 | $0.00 | | | | | 24-11324 | | UD |
| | 164 | | East West Bank, as agent | x | | | | $18,651,960.01 | $0.00 | $0.00 | | | | | 24-11325 | | UD |
| | 165 | | East West Bank, as agent | x | | | | $0.00 | $0.00 | $0.00 | | | | | 24-11325 | | UD |
| | 167 | | East West Bank, as agent | x | | | | $0.00 | $0.00 | $0.00 | | | | | 24-11325 | | UD |
| | 169 | | East West Bank, as agent | x | | | | $0.00 | $0.00 | $0.00 | | | | | 24-11325 | | UD |
| | 171 | | East West Bank, as agent | x | | | | $0.00 | $0.00 | $0.00 | | | | | 24-11325 | | UD |
| | 163 | | East West Bank, as agent | x | | | | $18,651,960.01 | $0.00 | $0.00 | | | | | 24-11326 | | UD |
| | 313 | | EMA Anesthesia | | | x | | $0.00 | $0.00 | $36,400.00 | | | | | | 24-11324 | D |
| | 246 | | Employment Development Dept | | x | | | | $0.00 | $0.00 | | | | | | 24-11323 | |
| | 239 | | Employment Development Dept | | x | | | | $0.00 | $0.00 | | | | | | 24-11324 | |
| | 260 | | Employment Development Dept | | x | | | | $0.00 | $0.00 | | | | | | 24-11325 | |
| | 253 | | Employment Development Dept | | x | | | | $0.00 | $0.00 | | | | | | 24-11326 | |
| C323-15 | | 10/20/2024 | Eric S Reskin | | | x | $0.00 | | | | | | $0.00 | | 24-11323 | | U |
| | 52 | | Expertvoice | | | x | | | | $8,985.61 | | | | | | 24-11323 | |
| | 53 | | Fedex | | | x | | | | $22,143.59 | | | | | | 24-11323 | |
| | 54 | | Feel Rite Natural Food Shoppes, Inc | | | x | | | | $580.00 | | | | | | 24-11323 | |
| | 120 | | Feldkamp Marketing | | | x | | $0.00 | $0.00 | $12,416.42 | | | | | | 24-11323 | |
| | 247 | | Franchise Tax Board | | x | | | | $0.00 | $0.00 | | | | | | 24-11323 | |
| | 240 | | Franchise Tax Board | | x | | | | $0.00 | $0.00 | | | | | | 24-11324 | |
| | 261 | | Franchise Tax Board | | x | | | | $0.00 | $0.00 | | | | | | 24-11325 | |
| | 254 | | Franchise Tax Board | | x | | | | $0.00 | $0.00 | | | | | | 24-11326 | |
| C323-18 | | 08/30/2024 | Frontline Marketing | | | x | $34,995.24 | | | | | | $34,995.24 | Possible Objection | 24-11323 | | |
| | 2 | | Generation Iacp Inc | | | x | | | | $58,279.58 | | | | | | 24-11324 | |
| C323-12 | | 10/19/2024 | Gordon Investigative Group LLC | | | x | $55,000.00 | | | | | | $55,000.00 | Objection | 24-11323 | | |

**Exhibit B_002**

| Claim No | Sched ID(s) | Claim Date Filed | Creditor | Sec | Pri | Uns | ClmAmt | Sch Sec Amt | Sch Pri Amt | Sch Uns Amt | Sec Amt | Pri Amt | Uns Amt | Objection Status | Filed Case | Sched Case | CUD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 57 | | Gowling Wlg (Canada) LP | | | x | | | | $2,729.71 | | | | | | 24-11323 | |
| | 121 | | Guise | | | x | | $0.00 | $0.00 | $2,425.00 | | | | | | 24-11323 | |
| | 113 | | Healthy Life Market | | | x | | $0.00 | $0.00 | $1,104.00 | | | | | | 24-11323 | |
| | 58 | | Herb Shop Ii | | | x | | | | $419.68 | | | | | | 24-11323 | |
| | 316 | | Herman Reese | | | x | | $0.00 | $0.00 | $0.00 | | | | | | 24-11323 | CUD |
| | 122 | | Hollywood Alliance Canada Inc | | | x | | $0.00 | $0.00 | $17,336.80 | | | | | | 24-11323 | |
| | 59 | | Ibotta Inc | | | x | | | | $7,098.96 | | | | | | 24-11323 | |
| | 360 | | Illinois Dept of Revenue | | x | | | | $0.00 | $0.00 | | | | | | 24-11323 | |
| | 352 | | Illinois Dept of Revenue | | x | | | | $0.00 | $0.00 | | | | | | 24-11325 | |
| | 341 | | Illinois Dept of Revenue | | x | | | | $0.00 | | | | | | | 24-11326 | |
| | 60 | | Informa Media | | | x | | | | $28,452.00 | | | | | | 24-11323 | |
| | 61 | | Information Resources Inc | | | x | | | | $138,568.41 | | | | | | 24-11323 | |
| | 35 | | Inmar Brand Solutions Inc | | | x | | | | $96,493.00 | | | | | | 24-11323 | |
| | 63 | | Inmar Promotions-Canada Inc | | | x | | | | $1,112.94 | | | | | | 24-11323 | |
| | 62 | | Inmar-Oiq LLC | | | x | | | | $10,000.00 | | | | | | 24-11323 | |
| | 3 | | Integral Wealth Securities | | | x | | | | $36,740.82 | | | | | | 24-11324 | |
| | 123 | | Interwest Brokerage, Inc | | | x | | $0.00 | $0.00 | $2,052.61 | | | | | | 24-11323 | |
| | 124 | | Jk Sales | | | x | | $0.00 | $0.00 | $2,460.30 | | | | | | 24-11323 | |
| C323-3 | 67 | 10/16/2024 | Johnson & Bertram LLP | | | x | $5,531.24 | | | $5,531.24 | | | $5,531.24 | | 24-11323 | | |
| | 125 | | Jwp Sales | | | x | | $0.00 | $0.00 | $1,991.38 | | | | | | 24-11323 | |
| | 20 | | K1 Packaging Group | | | x | | | | $94,942.12 | | | | | | 24-11323 | |
| | 68 | | Karled Enterprises (Kld) | | | x | | $0.00 | $0.00 | $1,137,382.81 | | | | | | 24-11323 | CU |
| | 142 | | Kimberly A Boodjeh | | x | | | $0.00 | $626.80 | $0.00 | | | | | | 24-11323 | D |
| | 336 | | KSE Sportsman Media | | | x | | $0.00 | $0.00 | $11,156.00 | | | | | | 24-11323 | D |
| | 69 | | Landsberg | | | x | | | | $19,021.65 | | | | | | 24-11323 | |
| | 249 | | Los Angeles County Treasurer & Tax Collector | x | | | | | $0.00 | $0.00 | | | | | | 24-11323 | |
| | 242 | | Los Angeles County Treasurer & Tax Collector | x | | | | | $0.00 | $0.00 | | | | | | 24-11324 | |
| | 263 | | Los Angeles County Treasurer & Tax Collector | x | | | | | $0.00 | $0.00 | | | | | | 24-11325 | |
| | 256 | | Los Angeles County Treasurer & Tax Collector | x | | | | | $0.00 | $0.00 | | | | | | 24-11326 | |
| | 126 | | Louis F Leeper Co | | | x | | $0.00 | | $1,458.78 | | | | | | 24-11323 | |
| | 72 | | Mark Judkins Consulting Co | | | x | | | | $7,498.00 | | | | | | 24-11323 | |
| | 73 | | Mark Salamon | | x | | | $0.00 | $4,125.00 | $0.00 | | | | | | 24-11323 | |
| C326-2 | 357, 349, 342 | 08/12/2024 | Massachusetts Department Of Revenue | x | x | | $1,451.53 | | $0.00 | $0.00 | | $1,396.81 | $54.72 | | 24-11326 | | |
| | 74 | | Media Brokers Int'l | | | x | | $0.00 | $0.00 | $415,423.00 | | | | | | 24-11323 | D |
| | 314 | | Media Max Network, LLC | | | x | | $0.00 | $0.00 | $63,526.00 | | | | | | 24-11323 | D |
| C324-17 | | 09/23/2024 | Michael Goldberg, As Plan Administrator For 20230930-DK-Butterfly-1, Inc | | | x | $63,633.89 | | | | | | $63,633.89 | Possible Objection | 24-11324 | | |
| | 361 | | Michigan Dept of Treasury | | x | | | | $0.00 | $0.00 | | | | | | 24-11323 | |
| | 362 | | Michigan Dept of Treasury | | x | | | | $0.00 | $0.00 | | | | | | 24-11323 | |
| | 353 | | Michigan Dept of Treasury | | x | | | | $0.00 | $0.00 | | | | | | 24-11325 | |
| | 354 | | Michigan Dept of Treasury | | x | | | | $0.00 | $0.00 | | | | | | 24-11325 | |
| | 343 | | Michigan Dept of Treasury | | x | | | | $0.00 | $0.00 | | | | | | 24-11326 | |
| | 344 | | Michigan Dept of Treasury | | x | | | | $0.00 | $0.00 | | | | | | 24-11326 | |
| | 127 | | Mike Sullivan Sales Co | | | x | | $0.00 | $0.00 | $115.79 | | | | | | 24-11323 | |
| C323-19 | 128 | 10/02/2024 | Mittenthal & Associates/P&GB, Inc | | x | x | $19,015.80 | $0.00 | $0.00 | $3,116.05 | | $15,150.00 | $3,865.80 | Objection | 24-11323 | | |
| | 9 | | Mnp LLP | | | x | | | | $124,457.92 | | | | | | 24-11324 | |
| | 76 | | Mrc Smart Technology Solutions | | | x | | | | $1,113.74 | | | | | | 24-11323 | |
| | 250 | | Nevada Dept of Taxation | | x | | | | $0.00 | $0.00 | | | | | | 24-11323 | |
| | 243 | | Nevada Dept of Taxation | | x | | | | $0.00 | $0.00 | | | | | | 24-11324 | |
| | 264 | | Nevada Dept of Taxation | | x | | | | $0.00 | $0.00 | | | | | | 24-11325 | |
| | 257 | | Nevada Dept of Taxation | | x | | | | $0.00 | $0.00 | | | | | | 24-11326 | |
| | 16 | | Nielsen Consumer LLC | | | x | | | | $62,766.59 | | | | | | 24-11323 | |
| | 77 | | Nsf International | | | x | | | | $5,260.00 | | | | | | 24-11323 | |

**Exhibit B_003**

| Claim No | Sched ID(s) | Claim Date Filed | Creditor | Sec | Pri | Uns | ClmAmt | Sch Sec Amt | Sch Pri Amt | Sch Uns Amt | Sec Amt | Pri Amt | Uns Amt | Objection Status | Filed Case | Sched Case | CUD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 78 | | Nuborn Express Inc | | | x | | | | $29,672.08 | | | | | | 24-11323 | |
| C323-14 | | 08/23/2024 | Nuborn Express Inc | | | x | $28,684.00 | | | | | | $28,684.00 | | 24-11323 | | |
| | 79 | | Oc & C Strategy Consultants | | | x | | | | $300,000.00 | | | | | | 24-11323 | |
| | 129 | | Omega Sales | | | x | | $0.00 | $0.00 | $3,068.83 | | | | | | 24-11323 | |
| | 358 | | Oregon Dept of Revenue | | x | | | | $0.00 | $0.00 | | | | | | 24-11323 | |
| | 350 | | Oregon Dept of Revenue | | x | | | | $0.00 | $0.00 | | | | | | 24-11325 | |
| | 345 | | Oregon Dept of Revenue | | x | | | | $0.00 | $0.00 | | | | | | 24-11326 | |
| | 81 | | Paragon Laboratories | | | x | | | | $171,404.35 | | | | | | 24-11323 | |
| | 82 | | Partner's Delivery Inc | | | x | | | | $2,447.00 | | | | | | 24-11323 | |
| | 83 | | Peco Pallet Inc | | | x | | | | $12,075.21 | | | | | | 24-11323 | |
| | 130 | | Phil Bortman & Associates | | | x | | $0.00 | $0.00 | $4,052.56 | | | | | | 24-11323 | |
| | 131 | | Precision Sales & Marketing | | | x | | $0.00 | $0.00 | $1,919.29 | | | | | | 24-11323 | |
| | 84 | | Pure Green Corp | | | x | | | | $144.51 | | | | | | 24-11323 | |
| | 7 | | Pushor Mitchell LLP | | | x | | | | $3,184.98 | | | | | | 24-11324 | |
| | 86 | | Quotient | | | x | | | | $16,700.00 | | | | | | 24-11323 | |
| | 87 | | Rakuten Marketing LLC | | | x | | | | $489.53 | | | | | | 24-11323 | |
| C323-8 | | 10/19/2024 | Reskin CPAs PSC | | | x | $35,000.00 | | | | | | $35,000.00 | Objection | 24-11323 | | |
| C323-9 | | 10/19/2024 | Reskin CPAs PSC | | | x | $32,000.00 | | | | | | $32,000.00 | Objection | 24-11323 | | |
| | 140 | | Resources Wholesale, Inc | | | x | | $0.00 | $0.00 | $68.04 | | | | | | 24-11323 | |
| | 132 | | Retail Business Solutions, Inc | | | x | | $0.00 | $0.00 | $24,772.65 | | | | | | 24-11323 | |
| | 90 | | Robinson Pharma | | | x | | $0.00 | $0.00 | $0.00 | | | | | | 24-11323 | |
| | 6 | | Rod Kight | | | x | | | | $27,714.26 | | | | | | 24-11324 | |
| C323-16 | | 08/27/2024 | Rodney Kight | | | x | $26,250.00 | | | | | | $26,250.00 | | 24-11323 | | |
| | 137 | | Rpm Group | | | x | | $0.00 | $0.00 | $23,654.42 | | | | | | 24-11323 | |
| | 92 | | Rsm US LLP | | | x | | | | $157,500.00 | | | | | | 24-11323 | |
| | 93 | | Rust Logistics | | | x | | | | $900.00 | | | | | | 24-11323 | |
| | 94 | | Save Naturally Inc | | | x | | | | $72.68 | | | | | | 24-11323 | |
| | 95 | | Select Staffing | | | x | | | | $2,775.72 | | | | | | 24-11323 | |
| | 133 | | Shankman & Associates, Inc | | | x | | $0.00 | $0.00 | $177.02 | | | | | | 24-11323 | |
| | 10 | | Sheri Orlowitz | | | x | | | | $26,283.00 | | | | | | 24-11324 | |
| | 96 | | Silvertip LLC | | | x | | | | $36,934.58 | | | | | | 24-11323 | |
| | 337 | | Smyth Publishing Services, Inc. | | | x | | $0.00 | $0.00 | $17,000.00 | | | | | | 24-11323 | D |
| | 104 | | Socalgas | | | x | | | | $29.34 | | | | | | 24-11323 | |
| | 97 | | Southeastern Grocers | | | x | | | | $2,500.00 | | | | | | 24-11323 | |
| | 135 | | Specialized Marketing Intl | | | x | | $0.00 | $0.00 | $1,634.85 | | | | | | 24-11323 | |
| | 98 | | Spins LLC | | | x | | | | $25,000.02 | | | | | | 24-11323 | |
| | 99 | | Sps Commerce Inc | | | x | | | | $7,639.80 | | | | | | 24-11323 | |
| | 138 | | Star Sales & Marketing | | | x | | $0.00 | $0.00 | $556.00 | | | | | | 24-11323 | |
| | 101 | | State of Washington Dor | | x | | | $0.00 | $907.62 | $0.00 | | | | | | 24-11323 | |
| | 102 | | Sunshine Fym | | | x | | $0.00 | $0.00 | $100.00 | | | | | | 24-11323 | |
| | 103 | | Telus Agriculture & Consumer Goods (US) | | | x | | | | $16,488.00 | | | | | | 24-11323 | |
| | 88 | | The Renew Co LLC | | | x | | | | $10,892.00 | | | | | | 24-11323 | |
| | 134 | | The Shuster Group LLC | | | x | | $0.00 | $0.00 | $6,262.85 | | | | | | 24-11323 | |
| | 139 | | The Swanson Group | | | x | | $0.00 | $0.00 | $93,899.64 | | | | | | 24-11323 | |
| | 106 | | Tls Transportation Inc | | | x | | $0.00 | $0.00 | $0.00 | | | | | | 24-11323 | |
| | 105 | | Tls Transportation Inc (3Pl) | | | x | | $0.00 | $0.00 | $0.00 | | | | | | 24-11323 | |
| | 141 | | Tmz | | | x | | $0.00 | $0.00 | $100.85 | | | | | | 24-11323 | |
| | 317 | | Trisha Vaughn | | | x | | $0.00 | $0.00 | $0.00 | | | | | | 24-11323 | CUD |
| | 107 | | Trustpilot, Inc | | | x | | | | $3,000.00 | | | | | | 24-11323 | |
| | 109 | | Venable LLP | | | x | | | | $2,310.00 | | | | | | 24-11323 | |
| | 359 | | Virginia Dept of Taxation | | x | | | | $0.00 | | | | | | | 24-11323 | |
| | 351 | | Virginia Dept of Taxation | | x | | | | $0.00 | | | | | | | 24-11325 | |
| | 346 | | Virginia Dept of Taxation | | x | | | | $0.00 | | | | | | | 24-11326 | |
| | 110 | | West Bloomfield Market LLC | | | x | | | | $400.00 | | | | | | 24-11323 | |
| | 111 | | Wfbm, LLP | | | x | | | | $5,308.72 | | | | | | 24-11323 | |
| | 112 | | Wilson Elser | | | x | | | | $467.50 | | | | | | 24-11323 | |
| | 114 | | Zapp Packaging Inc | | | x | | | | $94,240.38 | | | | | | 24-11323 | |
| **TOTALS For Filed Clms Schs** | | | | | | | $2,180,173.42 | $74,607,840.04 | $24,746.72 | $5,017,479.38 | $0.00 | $1,330,803.62 | $849,369.80 | | | | |

**Exhibit B_004**

# EXHIBIT B

**PRELIMINARY FINANCIALS & SUBJECT TO MATERIAL CHANGE**

*Irwin Naturals Nevada*

*Chapter 11 Plan : Projections*

| | Actuals | | | | | | Forecast | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Year/Month/Quarter** | *Actual 2019* | *Actual 2020* | *Actual 2021* | *Actual 2022* | *Actual 2023* | | *Forecast 2024* | *Forecast 2025* | *Forecast 2026* | *Forecast 2027* | *Forecast 2028* | *Forecast 2029* |
| **Period Starting** | 01/01/19 | 01/01/20 | 01/01/21 | 01/01/22 | 01/01/23 | | 01/01/24 | 01/01/25 | 01/01/26 | 01/01/27 | 01/01/28 | 01/01/29 |
| **Period Ending** | 12/31/19 | 12/31/20 | 12/31/21 | 12/31/22 | 12/31/23 | | 12/31/24 | 12/31/25 | 12/31/26 | 12/31/27 | 12/31/28 | 12/31/29 |

**Income Statement**

| | 2019 | 2020 | 2021 | 2022 | 2023 | | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Gross sales* | | | | | | | | | | | | |
| MM+ | | | | | $ 65.6 | $ | 58.1 | $ 61.2 | $ 62.1 | $ 63.0 | $ 64.0 | $ 64.9 |
| HFS+ | | | | | 29.7 | | 29.5 | 31.0 | 32.9 | 35.0 | 37.2 | 39.5 |
| ECOMM | | | | | 6.1 | | 5.4 | 5.7 | 5.9 | 6.1 | 6.3 | 6.5 |
| INTL | | | | | 0.9 | | 0.6 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 |
| **Total Gross Sales (1)** | $ 116.0 | $ 117.0 | $ 134.2 | $ 121.2 | 102.3 | | 93.6 | $ 98.8 | $ 101.9 | $ 105.1 | $ 108.4 | $ 112.0 |
| (-) Promotions, Discounts and other adj. | (28.2) | (27.6) | (33.8) | (33.7) | (30.8) | | (23.4) | (25.4) | (26.0) | (26.7) | (27.3) | (28.1) |
| **Net Sales** | $ 87.9 | $ 89.4 | $ 100.3 | $ 87.5 | $ 71.4 | | $ 70.2 | $ 73.4 | $ 75.9 | $ 78.4 | $ 81.1 | $ 83.9 |
| (-) Cost of Goods Sold | (48.9) | (52.9) | (55.6) | (48.6) | (43.2) | | (39.0) | (40.8) | (42.0) | (43.3) | (44.6) | (46.0) |
| **Gross profit** | $ 39.0 | $ 36.5 | $ 44.7 | $ 39.0 | 28.3 | | 31.1 | $ 32.6 | $ 33.9 | $ 35.1 | $ 36.5 | 37.9 |
| (-) General and Administrative Expenses | (9.5) | (5.8) | (10.2) | (9.2) | (11.0) | | (10.1) | (8.8) | (9.1) | (9.4) | (9.7) | (10.0) |
| (-) Sales and Marketing Expenses | (12.1) | (11.5) | (12.0) | (11.4) | (10.5) | | (7.0) | (8.3) | (8.6) | (8.9) | (9.2) | (9.5) |
| (-) Distribution Expenses | (9.2) | (10.1) | (10.6) | (10.0) | (9.8) | | (8.7) | (7.7) | (8.0) | (8.2) | (8.5) | (8.8) |
| **Total Operating Expenses** | $ (30.8) | $ (27.4) | $ (32.9) | $ (30.6) | $ (31.4) | | $ (25.7) | $ (24.9) | $ (25.7) | $ (26.5) | $ (27.3) | $ (28.2) |
| **Operating Income** | $ 8.2 | $ 9.1 | $ 11.8 | $ 8.3 | $ (3.1) | | $ 5.4 | $ 7.7 | $ 8.2 | $ 8.7 | $ 9.2 | $ 9.7 |
| Total Other Income (Expense) | (0.9) | (1.0) | (0.5) | (0.1) | (1.6) | | (4.0) | (4.4) | (2.0) | (1.8) | (1.4) | (2.0) |
| **Net income (loss)** | $ 7.3 | $ 8.1 | $ 11.3 | $ 8.2 | $ (4.7) | | $ 1.4 | $ 3.4 | $ 6.2 | $ 6.9 | $ 7.8 | $ 7.7 |
| **EBITDA** | $ 7.5 | $ 8.2 | $ 11.4 | $ 8.3 | $ (3.1) | | $ 6.6 | $ 7.7 | $ 8.2 | $ 8.7 | $ 9.2 | $ 9.7 |

**Income Statement Metrics**

| | 2019 | 2020 | 2021 | 2022 | 2023 | | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Gross Sales Growth %* | n/a | 0.8% | 12.8% | (10.7%) | (18.5%) | | (9.3%) | 5.3% | 3.0% | 3.1% | 3.1% | 3.1% |
| *Dilution % of Gross Sales* | 24.3% | 23.6% | 25.2% | 27.8% | 30.1% | | 25.0% | 25.7% | 25.5% | 25.4% | 25.2% | 25.1% |
| *Gross Profit % of Net Sales* | 44.4% | 40.8% | 44.5% | 44.5% | 39.5% | | 44.4% | 44.4% | 44.6% | 44.8% | 45.0% | 45.2% |
| *Operating Income % of Net Sales* | 9.4% | 10.2% | 11.8% | 9.5% | (4.4%) | | 7.7% | 10.5% | 10.8% | 11.1% | 11.3% | 11.6% |
| *EBITDA % of Net Sales* | 8.6% | 9.2% | 11.4% | 9.5% | (4.4%) | | 9.4% | 10.5% | 10.8% | 11.1% | 11.3% | 11.6% |
| *G&A % of Net Sales* | 10.8% | 6.5% | 10.2% | 10.5% | 15.4% | | 14.3% | 12.0% | 12.0% | 11.9% | 11.9% | 11.9% |
| *S&M % of Net Sales* | 13.8% | 12.9% | 12.0% | 13.1% | 14.7% | | 10.0% | 11.4% | 11.3% | 11.3% | 11.3% | 11.3% |
| *Distribution % of Net Sales* | 10.5% | 11.3% | 10.6% | 11.5% | 13.8% | | 12.3% | 10.5% | 10.5% | 10.5% | 10.5% | 10.5% |

*(1) Highly preliminary estimate subject to further audit and working sessions with sales team to refine FY '25 and beyond.*

**Exhibit B_001**

**PRELIMINARY FINANCIALS & SUBJECT TO MATERIAL CHANGE**

*Irwin Naturals Nevada*

*Chapter 11 Plan : Projections*

| | Actual 2019 | Actual 2020 | Actual 2021 | Actual 2022 | Actual 2023 | | Forecast 2024 | Forecast 2025 | Forecast 2026 | Forecast 2027 | Forecast 2028 | Forecast 2029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Period Starting | 01/01/19 | 01/01/20 | 01/01/21 | 01/01/22 | 01/01/23 | | 01/01/24 | 01/01/25 | 01/01/26 | 01/01/27 | 01/01/28 | 01/01/29 |
| Period Ending | 12/31/19 | 12/31/20 | 12/31/21 | 12/31/22 | 12/31/23 | | 12/31/24 | 12/31/25 | 12/31/26 | 12/31/27 | 12/31/28 | 12/31/29 |

**Balance Sheet**

**Assets**

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash | | | | 0.2 | 4.4 | $ | 3.3 | 2.5 | 3.1 | 3.2 | 4.4 | 9.7 |
| Accounts Receivable - Gross | | | | 21.5 | 12.2 | | 12.6 | 12.3 | 12.1 | 12.5 | 12.9 | 13.4 |
| Accounts Receivable - Credit Bal. Adj. | | | | 0.2 | 0.2 | | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 |
| A/R - Allowance | | | | (0.4) | (0.4) | | (0.7) | (0.6) | (0.6) | (0.7) | (0.7) | (0.7) |
| Inventory | | | | 24.2 | 15.7 | | 11.3 | 11.6 | 11.4 | 11.7 | 12.1 | 12.5 |
| Inventory Rebate | | | | (0.8) | (0.4) | | (0.4) | (0.4) | (0.4) | (0.4) | (0.4) | (0.4) |
| Inventory Reserve / Allowance | | | | (1.1) | (2.0) | | (2.1) | (2.3) | (2.3) | (2.4) | (2.4) | (2.5) |
| Other Current Assets | | | | 4.7 | 4.4 | | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 |
| **Total Current Assets** | | | $ | 48.6 | 34.1 | $ | 28.0 | 27.0 | 27.3 | 28.0 | 29.9 | 35.8 |
| Intercompany and other assets (1) | | | | 15.2 | 28.1 | | 30.2 | 30.2 | 30.2 | 30.2 | 30.2 | 30.2 |
| Fixed Assets, Net | | | | 0.2 | 0.2 | | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 |
| Intangible Assets, Net | | | | - | - | | - | - | - | - | - | - |
| **Total Assets** | | | $ | 63.9 | 62.4 | $ | 58.3 | 57.3 | 57.6 | 58.3 | 60.2 | 66.1 |

**Liabilities**

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Accounts Payable (2) | | | | 7.8 | 8.1 | | 8.7 | 3.5 | 3.5 | 3.6 | 3.7 | 3.8 |
| Other Current Liabilities | | | | 8.3 | 6.4 | | 4.1 | 3.8 | 3.8 | 3.8 | 3.8 | 3.8 |
| **Total Current Liabilities** | | | $ | 16.1 | 14.5 | $ | 12.7 | 7.3 | 7.3 | 7.4 | 7.5 | 7.6 |
| *Long Term Liabilities* | | | | | | | | | | | | |
| Prepetition Secured Debt | | | | 16.6 | 23.7 | | 19.0 | 15.1 | 10.0 | 4.6 | - | - |
| Prepetition GUC Claims | | | | - | - | | - | 4.9 | 4.2 | 3.3 | 1.9 | - |
| New Term Loan Facility | | | | - | - | | - | - | - | - | - | - |
| Other Long Term Liabilities | | | | 4.5 | 2.0 | | 3.2 | 3.2 | 3.2 | 3.2 | 3.2 | 3.2 |
| **Long-term liabilities** | | | $ | 21.0 | 25.7 | $ | 22.2 | 23.1 | 17.3 | 11.0 | 5.1 | 3.2 |
| **Total Liabilities** | | | $ | 37.1 | 40.2 | $ | 34.9 | 30.5 | 24.6 | 18.4 | 12.6 | 10.8 |
| **Total Equity** | | | $ | 26.8 | 22.1 | $ | 23.5 | 26.8 | 33.0 | 39.9 | 47.6 | 55.4 |
| **Liabilities + Equity** | | | $ | 63.9 | 62.4 | $ | 58.3 | 57.3 | 57.6 | 58.3 | 60.2 | 66.1 |

*(1) Emergence portion of balance to be written off for tax purposes in '24 not reflected in this exhibit.*

*(2) Prepetition portion to long-term payables EOY '24.*

**Exhibit B_002**

**PRELIMINARY FINANCIALS & SUBJECT TO MATERIAL CHANGE**

*Irwin Naturals Nevada*

*Chapter 11 Plan* : Projections

|  | *Actuals* | | | | | | *Forecast* | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | *Actual* | *Actual* | *Actual* | *Actual* | *Actual* | | *Forecast* | *Forecast* | *Forecast* | *Forecast* | *Forecast* | *Forecast* |
| Year/Month/Quarter | 2019 | 2020 | 2021 | 2022 | 2023 | | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 |
| Period Starting | 01/01/19 | 01/01/20 | 01/01/21 | 01/01/22 | 01/01/23 | | 01/01/24 | 01/01/25 | 01/01/26 | 01/01/27 | 01/01/28 | 01/01/29 |
| Period Ending | 12/31/19 | 12/31/20 | 12/31/21 | 12/31/22 | 12/31/23 | | 12/31/24 | 12/31/25 | 12/31/26 | 12/31/27 | 12/31/28 | 12/31/29 |

**Debt Schedule Waterfall**

*Debt Repayment Waterfall*

| | | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|---|
| Beginning of Period Cash | | $ 3.3 | $ 2.5 | $ 3.1 | $ 3.2 | $ 4.4 | |
| (-) Minimum Cash | | (3.0) | (3.0) | (3.0) | (3.0) | (3.0) | |
| **Net Beginning of Period Cash** | | $ 0.3 | $ (0.5) | $ 0.1 | $ 0.2 | $ 1.4 | |
| EBITDA | | 7.7 | 8.2 | 8.7 | 9.2 | 9.7 | |
| (-) Capex | | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | |
| (-) Cash Taxes | | (0.4) | (0.6) | (0.7) | (0.8) | (0.8) | |
| (-) Non-Recurring Expenses | | (2.3) | (0.1) | (0.2) | (0.3) | (1.1) | |
| (+/-) in Working Cap. & Other Assets/Liabilities | | 0.4 | 0.2 | (0.5) | (0.6) | (0.6) | |
| (+) Funding from New Term Loan Facility | | | | | | | |
| **Cash Available for Debt Service** | | $ 5.7 | $ 7.1 | $ 7.2 | $ 7.5 | $ 8.6 | |
| (-) Secured Debt Interest | | (1.6) | (1.2) | (0.7) | (0.2) | - | |
| (-) Unsecured Debt Interest | | - | - | - | - | - | |
| (-) New Term Loan Facility Interest | | - | - | - | - | - | |
| **Cash Available for Mandatory Debt Repayment** | | $ 4.1 | $ 5.9 | $ 6.5 | $ 7.4 | $ 8.6 | |
| (-) Secured Debt Repayment | | (3.0) | (4.0) | (4.0) | (3.6) | - | |
| (-) Unsecured Debt Repayment GUC | | - | - | - | - | - | |
| (-) New TL Facility Repayment (Mandatory) | | - | - | - | - | - | |
| **Cash Available for Discretionary Debt Repayment** | | $ 1.1 | $ 1.9 | $ 2.5 | $ 3.8 | $ 8.6 | |
| (-) Secured Debt Repayment | | (0.9) | (1.1) | (1.4) | (1.0) | - | |
| (-) Unsecured Debt Repayment GUC | | (0.6) | (0.7) | (0.9) | (1.4) | (1.9) | |
| **Ending Cash Available** | | $ (0.5) | $ 0.1 | $ 0.2 | $ 1.4 | $ 6.7 | |
| (-) Secured Debt Repayment (Refinance) | | - | - | - | - | - | |
| (-) Unsecured Debt Repayment GUC (Refinance) | | - | - | - | - | - | |
| **Ending Cash Available** | | $ (0.5) | $ 0.1 | $ 0.2 | $ 1.4 | $ 6.7 | |
| (+) Minimum Cash | | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | |
| **End of Period Cash** | | $ 2.5 | $ 3.1 | $ 3.2 | $ 4.4 | $ 9.7 | |

**Exhibit B_003**

**PRELIMINARY FINANCIALS & SUBJECT TO MATERIAL CHANGE**

*Irwin Naturals Nevada*

<u>Chapter 11 Plan</u> : Projections

| | Actuals | | | | | | Forecast | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Actual | Actual | Actual | Actual | Actual | | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| Year/Month/Quarter | 2019 | 2020 | 2021 | 2022 | 2023 | | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 |
| Period Starting | 01/01/19 | 01/01/20 | 01/01/21 | 01/01/22 | 01/01/23 | | 01/01/24 | 01/01/25 | 01/01/26 | 01/01/27 | 01/01/28 | 01/01/29 |
| Period Ending | 12/31/19 | 12/31/20 | 12/31/21 | 12/31/22 | 12/31/23 | | 12/31/24 | 12/31/25 | 12/31/26 | 12/31/27 | 12/31/28 | 12/31/29 |
| **Prepetition Secured Debt** | | | | | | | | | | | | |
| Beg. Balance | | | | | | | $ 19.0 | $ 15.1 | $ 10.0 | $ 4.6 | $ 0.0 | |
| (-) Repayment | | | | | | | (3.9) | (5.1) | (5.4) | (4.6) | - | |
| **Ending Balance** | | | | | | | $ 15.1 | $ 10.0 | $ 4.6 | $ - | $ 0.0 | |
| **Prepetition Unsecured Debt** | | | | | | | | | | | | |
| Beg. Balance | | | | | | | $ 5.5 | $ 4.9 | $ 4.2 | $ 3.3 | $ 1.9 | |
| (-) Repayment | | | | | | | (0.6) | (0.7) | (0.9) | (1.4) | (1.9) | |
| **Ending Balance** | | | | | | | $ 4.9 | $ 4.2 | $ 3.3 | $ 1.9 | $ - | |
| **Term Loan** | | | | | | | | | | | | |
| Beg. Balance | | | | | | | $ - | $ - | $ - | $ - | $ - | |
| (+) Additions | | | | | | | | | | | | |
| (-) Repayment | | | | | | | | | | | | |
| **Ending Balance** | | | | | | | $ - | $ - | $ - | $ - | $ - | |
| Total Debt | | | | | $ 23.7 | | $ 19.0 | $ 20.0 | $ 14.2 | $ 7.9 | $ 1.9 | $ 0 |
| Total Interest Paid | | | | | $ 1.5 | | $ 1.3 | $ 1.6 | $ 1.2 | $ 0.7 | $ 0.2 | $ - |
| **Credit Metrics** | | | | | | | | | | | | |
| EBITDA LTM | | | | | $ (3.1) | | 6.6 | 7.7 | 8.2 | 8.7 | 9.2 | 9.7 |
| Interest Expense LTM | | | | | 1.5 | | 1.3 | 1.6 | 1.2 | 0.7 | 0.2 | - |
| Total Debt | | | | | 23.7 | | 19.0 | 20.0 | 14.2 | 7.9 | 1.9 | 0.0 |
| Cash | | | | | 4.4 | | 3.3 | 2.5 | 3.1 | 3.2 | 4.4 | 9.7 |
| *Total Debt to EBITDA* | | | | | *n/a* | | *2.9x* | *2.6x* | *1.7x* | *0.9x* | *0.2x* | *0.0x* |
| *Net Debt to EBITDA* | | | | | *n/a* | | *2.4x* | *2.2x* | *1.3x* | *0.5x* | *n/a* | *n/a* |
| *Interest Coverage* | | | | | *n/a* | | *4.9x* | *4.8x* | *6.8x* | *11.6x* | *60.3x* | *n/a* |

**Exhibit B_004**

*Irwin Naturals Nevada*
*Waterfall Forecast Notes*

| Item Group | Assumption |
|---|---|
| **General** | |
| Disclaimer | This financial model (the "Model") with respect to Irwin Naturals Inc. and its affiliates and subsidiaries (the "Debtors" or the "Company") has been prepared solely for inclusion in the Disclosure Statement accompanying the Debtor's Chapter 11 Plan (the "Plan") in these cases pending before the court. This model is intended to provide creditors and other stakeholders with a projected financial performance of the Company in connection with evaluating its Plan, and should not be construed as an offering of securities or an offer to sell, nor a solicitation of an offer to buy, any securities of the Debtors.<br><br>The information contained in this Model is derived from unaudited data and guidance from management on future performance and is based on a variety of assumptions about future conditions, many of which are beyond the control of the Debtors' and subject to significant uncertainties. As a result, the actual financial and operational outcomes may differ materially from those projected herein. This model may be revised and refined prior to the confirmation hearing. |
| Forecast Period | This Model projects financial performance from October 1, 2024 through December 31, 2029. It assumes an exit from chapter 11 bankruptcy between December 31, 2024 and January 31, 2025, but may vary as the Debtors continue operating in their chapter 11 cases. |
| Base Assumptions | **Gross Sales:**<br>FY25 is projected to account for price increases generally ranging from 3-20% for select SKUs and customers occurring between 2024 and 2025. The price increases in the model are implemented using a sales plan that forecasts monthly sales volume by SKU and customer relative to the unit sales price for that respective period (i.e., pre or post-price increase). From FY26 to FY29, gross sales are expected to grow by ~3% annually as a proxy for general economic growth, continued product innovation, and maintenance price increases as determined necessary by management. The Company does not project an increase in unit volume from 2024 to 2025 in the aggregate (slight decrease overall) or thereafter as part of this analysis; however, unit volumes vary by individual account and by SKU in accordance with historical trends and planning.<br><br>**Dilution:**<br>Uses the actual average dilution from January to August 2024, with a slight increase for each channel beginning in 2025. These figures are subject to change as the Debtors' continue operating in their chapter 11 cases.<br><br>**Cost of Goods Sold ("COGS"):**<br>COGS for FY24 and FY25 leverages management's product-by-product sales plan to allocate COGS relative to planned unit volume. The COGS forecast uses internal data on cost basis by SKU to aggregate total COGS by sales channel, resulting in total COGS by sales channel. For 2026 and beyond, COGS is forecasted by sales channel as the historical average of COGS in dollars for each sales channel in FY25 as a percent of gross sales for the same sales channel (i.e., variable to gross sales by channel fixed at the FY25 average). |

**Exhibit B_005**

*Irwin Naturals Nevada*
*Waterfall Forecast Notes*

| Item Group | Assumption |
|---|---|
| **Other Income Statement Line Items** | |
| General & Administrative ("G&A") Payroll | Q424: Management forecast in-line with recent historical periods and adjusted for key staffing needs and normalized insider compensation<br>FY25: 2025 forecast based on Q4 24 payroll plus normalized insider compensation<br>FY26-29: Variable forecast growing in-line with annual sales |
| All other G&A Expenses | Q424: Management forecast normalized to be near in-line with historical expenditures relative to gross sales and resource needs per management<br>FY25:  Includes normalized costs based on historical averages relative to gross sales and management guidance<br>FY26-29: Variable forecast based on annual sales<br>Note: Some amounts currently budgeted for G&A may need to be re-allocated to S&M expenditures as the company continues refining its FY25 budgeting |
| Sales & Marketing ("S&M") Payroll Expenses | Q424: Management forecast in-line with recent historical periods and adjusted for key staffing needs and normalized compensation<br>FY25: Forecast based on Q4 24 payroll and hiring needs<br>FY26-29: Variable forecast based on annual gross sales |
| S&M Advertising & Promotion | Q424: Management forecast normalized from 2024 actuals to amounts near in-line with historical expenditures<br>FY25: Q1 2025 assumes continued expenditures in-line with guidance provided by management from Q4 2024, the remaining 2025 forecast is variable based on gross sales times average of Q4 2024 and Q1 2025 forecast<br>FY26-29: Variable forecast based on annual sales<br>Note: Some amounts currently budgeted for G&A may need to be re-allocated to S&M expenditures as the company continues refining its FY25 budgeting |
| S&M Selling Expenses | Q424: Management guidance based on historical need relative to gross sales<br>FY25: Q1 2025 continuation of management forecasted expenditures from Q4 2024. The remainder of FY25 is forecast as variable based on gross sales times the average of S&M as a percentage of gross sales for 2024 September YTD<br>FY26-29: Variable forecast based on annual sales |
| All other S&M Expenses | Q424: Management guidance based on historical trends and sales plan need<br>FY25: Q1 continuation of management forecasted expenditures from Q4 2024. The remaining 2025 forecast normalizes these costs based on historical averages relative to gross sales<br>FY26-29: Variable forecast based on annual gross sales |
| Dist. Freight Costs<br>Dist. Fulfilment Costs | Q424: Reflects cost changes due to changing distribution methodologies (i.e., use of 3PLs vs in-house distribution)<br>FY25: Q1 continuation of management forecasted expenditures from Q4 2024. The remaining FY25 forecast is variable based on gross sales times avg. of 2024 YTD through September<br>FY26-29: Variable forecast based on annual sales |
| All other Dist. Expenses | Q424: Reflects cost savings from changing distribution methodologies (i.e., use of 3PLs vs in-house distribution)<br>FY25: Q1 continuation of management forecasted expenditures from Q4 2024. The remaining FY25 forecast normalizes these costs based on Q3 2024 averages<br>FY26-29: Variable forecast based on annual sales |
| Depreciation | Fixed based on September 2024 depreciation expense |
| Income Taxes | FY24-29: Federal income taxes offset by ~$32mm of operating losses + ~$3mm of disallowed business interest expenses; state income taxes at 5.3% assumed average for all states |
| Interest Expense | FY24: $155k per month<br>FY25-29: Secured debt outstanding in period times 9% per annum |
| Restructuring Expenses | FY25: Primarily professional fees and UST fees; Reflected as actual cash expenses (not accrual) for periods after September '24. Assumed to be paid in cash for the post-petition and post-confirmation periods for illustrative purposes |
| Other income / (expenses) | Management's 10% share of discretionary payments disbursed one period after accrual |

*Irwin Naturals Nevada*
*Waterfall Forecast Notes*

| Item Group | Assumption |
|---|---|
| **Balance Sheet** | |
| Accounts Receivable | Q424: Illustrative roll forward to be refined<br>FY25: Q1 Estimate to be refined; Q2 2025 forward based on DSO adjusted to normalized rate<br>FY26-29: DSO adjusted to normalized rate |
| Credit Balance Adjustment | FY24: Held constant<br>FY25-29: Variable percent of gross A/R based on historical average |
| A/R Allowance | FY24: Held constant<br>FY25-29: Increase at monthly rate, written off in December of each period |
| Inventory | Q424: Illustrative roll forward to be refined<br>FY25: Q1 Estimate to be refined; Q2 2025 forward based on DOH adj. to normalize<br>FY26-29: DOH adj. to normalize |
| Inventory Rebate<br>Inventory Reserve<br>Allowance | FY24: Held constant<br>FY25-29: Variable percentage of gross accounts receivable |
| All Other Current Assets | Held constant |
| All Other Intercompany and Other Assets | Held constant; Interco from Emergence to be eliminated in '24 not reflected in model |
| Gross Fixed Assets | Increase at maintenance capex based on September 24 monthly capex |
| All Other Intangible Assets | Held constant |
| Accounts Payable | FY24: DPO to normalize; Includes estimated prepetition general unsecured claims outstanding and postpetition payables until confirmation<br>FY25-29: DPO adjusted to normalize AP after prepetition general unsecured claims portion moved to long term liabilities |
| All Other Current Liabilities | Held constant -- Other Accrued Expenses would typically hold accrued professional fees; However, the model assumes cash disbursement in the actual projected cash disbursement period for illustrative purposes for Q4 2024 forecast and Q1 2025 |
| Prepetition Secured Debt | FY25: Claim amount adjusted to match illustrative figure in liquidation analysis (prepetition claim plus incremental incurred fees); reduced by $1mm mandatory amortization and repayments from 55% of discretionary cashflow (Excl. $3mm mandatory minimum cash balance) |
| Prepetition Unsecured Debt | FY25: Illustrative estimate of prepetition unsecured claims; with repayments from 35% of discretionary cashflow (Excl. $3mm mandatory minimum cash balance) |
| Capital Stock + Paid In Capital<br>Note Receivable Related Party | Held constant |
| Retained Earnings | Adjusted by net income in period |

**Exhibit B_007**

# EXHIBIT C

*Irwin Naturals (Consolidated Debtors)*
*Chapter 11 Plan : Liquidation Analysis*
Note: All amounts are preliminary estimates and subject to further analysis & court approval

| Chapter 7 Liquidation Analysis ($MMs) | | Claims / Asset Book Value | | Recovery Scenario | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Recovery Scenario | Notes | High | Low | High ($) | Low ($) | High (%) | Low (%) |
| *Sources of Recovery* | | | | | | | |
| (+) Cash on Hand | 1 | $ 3.5 | $ 2.5 | $ 3.5 | $ 2.5 | 100.0% | 100.0% |
| (+) Accounts Receivable Liquidation | 2 | 13.0 | 11.5 | 7.8 | 5.8 | 60.0% | 50.0% |
| (+) Inventory Liquidation | 3 | 12.0 | 10.5 | 6.0 | 4.2 | 50.0% | 40.0% |
| (+) Prepaid and Deferred Expense Recovery | 4 | 1.0 | 0.8 | 0.1 | 0.0 | 10.0% | 5.0% |
| (+) Other Investments (Emergence) | 5 | - | - | - | - | – | – |
| (+) Fixed Assets | 6 | 0.0 | 0.1 | - | - | – | – |
| (+) Intangible Assets | 7 | 30.4 | 30.4 | 30.4 | 19.8 | 100.0% | 65.0% |
| (+) Insider Notes Receivable | 8 | 4.1 | 4.1 | - | - | – | – |
| (+) Preference Actions | 9 | - | - | - | - | – | – |
| (+) Other Litigation Assets | 10 | TBD | TBD | - | - | – | – |
| (+) Other Assets | 11 | 6.5 | 6.5 | 0.7 | 0.6 | 10.7% | 9.2% |
| **Estimated Distributable Value** | | | | **$ 48.5** | **$ 32.9** | | |
| | | | | | | | |
| *Chapter 7 Wind-Down Claims & Expenses* | | | | | | | |
| (-) Wind-Down Expenses (Professionals) | 12 | | | 0.3 | 0.6 | 0.6% | 1.8% |
| (-) Wind-Down Expenses (Company) | 13 | | | 0.3 | 0.6 | 0.6% | 1.8% |
| (-) Liquidator Expenses & Fees | 14 | | | 0.7 | 0.7 | 2.0% | 3.0% |
| (-) Inventory Freight & 3PL Costs | 15 | | | 0.6 | 0.6 | 10.0% | 15.0% |
| (-) Ch. 7 Trustee Fees | 16 | | | 1.5 | 1.0 | 3.0% | 3.0% |
| (-) Ch. 7 Trustee Professional Fees | 17 | | | 0.4 | 0.6 | 0.8% | 1.8% |
| **Distributable Value -- Secured Claims** | | | | **$ 44.8** | **$ 28.7** | | |
| | | | | | | | |
| *Secured Claims* | | | | | | | |
| (-) Secured Debt (Incl. Accrued Costs) | 18 | 19.0 | 20.0 | 19.0 | 20.0 | 100.0% | 100.0% |
| **Distributable Value -- Chpt. 11 Admin Claims** | | | | **$ 25.8** | **$ 8.7** | | |
| | | | | | | | |
| *Chapter 11 Administrative Claims* | | | | | | | |
| (-) Administrative Trade Claims | 19 | 4.0 | 4.5 | 4.0 | 4.5 | 100.0% | 100.0% |
| (-) Professionals Fees Outstanding (Upon Conversion) | 20 | 2.0 | 2.5 | 2.0 | 2.5 | 100.0% | 100.0% |
| (-) Estimated UST Fees Outstanding | 21 | 0.1 | 0.2 | 0.1 | 0.2 | 100.0% | 100.0% |
| (-) Post-Petition Taxes Payable | 22 | 0.1 | 0.1 | 0.1 | 0.1 | 100.0% | 100.0% |
| (-) Accrued Wages | 23 | 0.6 | 0.9 | 0.6 | 0.9 | 100.0% | 100.0% |
| **Distributable Value -- Priority Claims** | | | | **$ 19.0** | **$ 0.6** | | |
| | | | | | | | |
| *Priority Claims* | | | | | | | |
| (-) Priority Claims | 24 | 0.0 | 0.0 | 0.0 | 0.0 | 100.0% | 100.0% |
| **Distributable Value -- General Unsecured Claims** | | | | **$ 19.0** | **$ 0.6** | | |
| | | | | | | | |
| *General Unsecured Claims* | | | | | | | |
| (-) Trade Payable | 25 | 3.7 | 4.0 | 3.7 | 0.3 | 100.0% | 6.4% |
| (-) Professionals | 25 | 0.0 | 0.0 | 0.0 | 0.0 | 100.0% | 6.4% |
| (-) Pending Litigation | 25 | - | 1.5 | - | 0.1 | – | 6.4% |
| (-) Former Landlord | 25 | 1.1 | 1.3 | 1.1 | 0.1 | 100.0% | 6.4% |
| (-) Rejection Damages | 25 | - | 2.0 | - | 0.1 | – | 6.4% |
| (-) Insiders & Affiliates | 25 | NA | NA | NA | NA | – | – |

**Exhibit C_001**

**Irwin Naturals**

**Global Notes to Chapter 7 Liquidation Analysis**

**I. Dependence on Assumptions:**

The liquidation analysis depends on several estimates and assumptions. Although developed and considered reasonable by the management and the advisors of the Debtor, the assumptions are inherently subject to significant economic, business, regulatory, and competitive uncertainties and contingencies beyond the Debtors' control or their management. Additionally, while the Debtors have made a reasonable effort to ensure that the liquidation analysis is accurate and complete based on information known to them at the time of preparation after reasonable inquiries, inadvertent errors or omissions may exist and/or of information may result in material changes in financial and other data contained in the analysis. The liquidation analysis is also based on the Debtors' best judgment of how numerous decisions in the liquidation process would be resolved. Accordingly, there can be no assurance that the values reflected in the liquidation analysis would be realized if the Debtors were, in fact, to undergo such liquidation, and actual results could vary materially and adversely from those contained herein. This liquidation analysis is also dependent on the assumption that the estates are liquidated under a substantive consolidation of the Debtors and that the intercompany claims between the Debtors are eliminated as such. The claims of the secured creditors are joint and several across these entities and no marshalling of recoveries have been negotiated to-date with creditors beyond any existing agreements; however, the Debtors' assets, operations, and liabilities, and employees are almost entirely housed within the Irwin Naturals Nevada entity. Most of the Debtors' recoverable value in a chapter 7 comes from the intellectual property held at 5310 Holdings, LLC which is wholly owned by Irwin Naturals Nevada and has no material liabilities of its own, other than the liabilities of the secured debt. Based upon the above, the Debtors' believe this methodology produces the most logical illustration of recoverable value by classes in a chapter 7 liquidation.

**II. Assumed Date of Conversion:**

The hypothetical conversion of these estates to a chapter 7 proceeding is assumed to occur near or around the date of a contested confirmation hearing of the proposed plan of reorganization for illustrative purposes. Except as otherwise noted, all liabilities, cash, receivables, inventory, and all other accounts in the liquidation analysis are set forth based on the most recent available financial information or estimates based upon the most recent financial information. Unless otherwise noted, all values are stated in United States currency.  As additional information becomes available and further research is conducted, the Debtors may modify the constitution, values, and descriptions of these accounts accordingly.

**III. Book Value:**

Except as otherwise noted, each estimate of the Debtors' assets and liabilities are shown on the current basis of book value of the asset or liability in accordance with such Debtors' accounting books and records.

**Exhibit C_002**

**IV. Dependence on a Forecasted Financial Position:**

This Liquidation Analysis contains numerous estimates regarding the Debtor's financial performance between now and the conversion date, which is still under review and subject to material change as the Debtors continue to operate in their chapter 11 cases.

**V. Chapter 7 Liquidation Process:**

The liquidation and wind-down of the Debtor's estate is assumed to be completed over a period of 4-6 months, where the Debtors would liquidate all saleable assets, begin pursuing a variety of litigation assets, and undergo wind down efforts across the remaining subsidiaries and operations. A majority of the Debtors' tangible assets are assumed to be liquidated as expediently as possible in the first 2-3 months of the proceedings to minimize overhead and administrative business costs, which could result in steep discounts on the value of the assets relative to their value as a going-concern or on a book basis; however, the chapter 7 wind down costs are reflected to be limited under these circumstances. Delays or prolonging of the liquidation process may result in additional wind down costs beyond what is reflected herein. The loss of the Debtors' employees, advisors, and delicate trade relationships in a Chapter 7 liquidation would likely result in significant destruction of value as it relates to the recovery of intellectual property, receivables, inventory, fixed assets, and many of the litigation assets which are highly dependent on the cooperation and knowledge of management. Additionally, it is unclear how significant the liabilities created by the collapse of the Debtors' operations would be with respect to liabilities relating to its relationships with customers who often plan for product availability well in advance of delivery.

**VI. Claims Estimates:**

In preparing this Liquidation Analysis, the Debtors have estimated an amount of Allowed Claims for each indicated type of claim where possible. Claims were estimated to include certain Chapter 7 administrative obligations incurred after the conversion date. The Debtors also estimated accrued and outstanding claims from the Chapter 11 administration up until the point of conversion. Several of the estimates of allowed claims in this liquidation analysis are illustrative placeholders determined relative to the scheduled claims, filed claims, and the ongoing books and records of the Debtors; however, there is no certainty that additional claims will not arise from third parties, insiders, or parties unknown to the Debtors at this time. No order or finding has been entered or made by the bankruptcy court estimating or otherwise fixing the amount of claims at the projected conversion date set forth in this liquidation analysis. The estimated allowed claims set forth in this liquidation analysis should not be relied upon for any other purpose, including, without limitation, any determination of the value of any distribution to be made on account of allowed claims under the Debtors' proposed plan of liquidation or reorganization. The actual amounts of allowed claims could be materially different from the amount of claims estimated in this liquidation analysis.

**Footnotes To Liquidation Analysis Exhibit**

**1. Cash on Hand**

Sensitized cash balance representing the estimated amount of Debtors' cash on hand around the time of the hypothetical conversion to a chapter 7 bankruptcy in or around a contested plan confirmation hearing at the end of 2024 or beginning or 2025. At of the time of the analysis, the

**Exhibit C_003**

Debtors had approximately $4 million of cash on hand across its various bank accounts. The Debtors expect to receive additional cash amounts and make disbursements in these accounts in the following weeks in the ordinary course of business and is subject to change as such. The Debtors' can receive and disburse amounts in excess of $1 million in any given week in the ordinary course of business and therefore cash balances are volatile depending on the period of measurement and the Debtors' cash conversion cycles. The sensitized balance herein is meant to illustrate these frequent changes in cash on hand.

## 2. Accounts Receivable Liquidation

Sensitized amount representing the estimated amounts of Debtors' gross accounts receivable around the time of the contested plan confirmation hearing. The Debtors' balance sheet year to date has averaged a reserve for bad debt equal to approximately 4.5% of their gross accounts receivable for the same period, which is accounted for in the recoverable discount included in the liquidation analysis in addition to ordinary dilution of collections. This discount is for illustrative purposes and assumes that the Debtors' sell or liquidate their accounts receivable in a fire sale following the conversion to a chapter 7 proceeding. These circumstances are expected to yield a much lower recovery for these assets as compared to continued collections on the accounts in the ordinary course. It is possible that material disputes with customers arise if the Debtors' cease operations and stop shipping inventory to their customers, which could result in reduced or delayed collections. The Debtors' estimate dilution on their accounts receivable has ranged between 23% and 30% in the last five years, and therefore could be materially higher if operations would cease; however, the discounts reflected in this liquidation analysis are not representative of the Debtors' collections during ordinary course operations.

## 3. Inventory Liquidation

Sensitized amount representing the Debtors' estimated gross inventory (dietary supplements, cosmetic products, etc.) near or around the date of a contested plan confirmation hearing. This inventory is primarily comprised of the Company's actual product, ingredients, packaging, and other components that the Company sells to its customers in the ordinary course of business. The vast majority of the inventory is perishable with a general shelf life of roughly two years. The Company's inventory is comprised of products that are of various ages, the value of which could deteriorate over time, specifically if the Debtors' cease operating and face diminished brand value.

## 4. Prepaid and Deferred Expense Recovery

Sensitized value of the Debtors' prepaid and deferred expenses as of September 30, 2024, which totaled approximately $927 thousand, and was primarily comprised of deposits for general business expenses, such as insurance, lease, and marketing related deposits that are unlikely to be refundable or could be disputed upon attempted collection.

## 5. Other Investments (Emergence)

The Debtors' investment assets were primarily comprised of its investments in (i) the Emergence ventures, detailed at length in the Company's public filings, disclosures, and first day pleadings, and (ii) its ownership of 5310 Holdings, LLC, which owns the Debtors' intellectual property assets and are broken out as a separate asset for purposes of this analysis. The Debtors' investments in

**Exhibit C_004**

the Emergence ventures are not expected to yield material value outside of the historical operating losses that may become available to the Debtors' go-forward business as a tax shield. The Debtors' are still in the process of conducting on diligence these tax assets and do not currently have a formal view on their value in the context of a chapter 7 liquidation.

## 6. Fixed Assets

The Debtors' limited fixed assets (office furniture, fixtures, computer equipment, etc.) are not expected to yield material value in a chapter 7 liquidation and may represent a liability depending on the cost of disposal or removal.

## 7. Intangible Assets

Values represent the Debtors' third party valuation of its intellectual property and goodwill held at 5310 Holdings, LLC and associated with its brand names, trademarks, and product names as reflected in the valuation conducted by Marula Capital Group on September 4th, 2024. The brand valuation was conducted using the relief from royalty methodology and determined that the fair value of the brand in a net orderly liquidation was approximately $30 million. For illustrative purposes, this amount has been sensitized downward in the low recovery case to demonstrate the effect on distributions if the intellectual property is liquidated under unfavorable circumstances. The Debtors believe that they have strong brand value which would be maximized as a going-concern.

## 9. Preference Actions

It is unlikely that the Debtors have any collectible preference actions to pursue due to its prepetition lender's strict control over the Company's disbursements in the periods prior to the petition date; however, the potential preference actions are still subject to further diligence and review.

## 10. Other Litigation Assets

Placeholder for potential causes of action against third parties.

## 11. Other Assets

Assets classified as "Other" in the Debtors' filed schedules of assets and liabilities, excluding insider notes receivable, which are broken out separately for purposes of this analysis. Other Assets primarily includes net operating losses from 2022 and state and federal tax refunds that may be collectible to the estates. As of September 30, 2024, the Debtors' books and records reflected an uncollected income tax refund of at least $602 thousand.

## 12. Wind-Down Expenses (Professionals)

Illustrative costs associated with the wind down efforts of the estates in a chapter 7 that require professional services such as tax-related services for the 2024 and 2025 tax years, the legal dissolution and closure of the Debtor entities, legal counsel needed to engage with the Canadian Securities Administrators, or other regulatory bodies such as the FDA. Additional professional services may be required beyond those listed herein.

**Exhibit C_005**

### 13. Wind-Down Expenses (Company)

Illustrative estimates for expenses necessary to wind-down the Debtors' Estates.  Estimates include expenses such as costs for payroll for limited staff required to wind down the estates, maintain or transfer books and records, operational employees required to manage the liquidation of inventory, intendent contractors, D&O insurance, and the retention of key accounting, operational, and executive employees who may be required in order to maximize the collectible value of the Debtors' tangible, intellectual property, or litigation assets. The Company's payroll expense is approximately $300 thousand per payroll period, and is assumed to be reduced to a smaller workforce over the period of 1-2 months. These periods may also require retention programs outside of the ordinary course and the termination of employees could lead to additional or frivolous employment claims against the Debtors.

### 14. Liquidator Expenses & Fees

Sensitized amount representing estimates fees and expenses of liquidating the Debtors' inventory and intellectual property assets using a third-party liquidator or broker, excluding freight costs, calculated as 2% and 3% of the recoverable value of these assets.

### 15. Inventory Freight & 3PL Costs

Sensitized estimate of the costs associated with physically moving or distributing the Debtors' physical inventory over the wind down period. The Debtors currently spend between $150 thousand and $200 thousand a week on freight and distribution, the majority of which come from its third party logistics providers. These amounts would likely continue being incurred by the estate as either an ongoing expense as illustrated here, or a direct offset to the recoverable value of its physical inventory through a purchaser.

### 16. Ch. 7 Trustee Fees

Chapter 7 Trustee compensation calculated as 3% of the total estimated proceeds available for distribution.

### 17. Ch. 7 Trustee Professional Fees

Sensitized estimate of Chapter 7 Trustee professional fees including services related to legal, financial advisory, specialized accountants, claims agents, noticing, claims reconciliation and objections, and litigation. Litigation required during the wind-down period is assumed to be offset by any litigation recoveries.

### 18. Secured Debt (Incl. Accrued Costs)

Represents the scheduled secured claim of East West Bank as of the petition date sensitized to include the fees and incremental costs associated with representation and advisory during the pendency of the bankruptcy.

**Exhibit C_006**

**19. Administrative Trade Claims**

An illustrative estimate of the potential chapter 11 administrative trade claims outstanding near or around the conversion date. As of September 30, 2024, the Company estimates its total post-petition accounts payable to be approximately $4 million.

**20. Professionals Fees Outstanding (Upon Conversion)**

Sensitized amount representing estimated accrued and outstanding Chapter 11 professional fees at the time of or near a conversion to a Chapter 7 liquidation. Either scenario represents a range of estimated accrued professional fees that could vary significantly depending on the nature of ongoing disputes with creditors, such as the continued use of cash collateral, the costs associated with a contested plan confirmation hearing, and the general administration of the estates.

**21. Estimated UST Fees Outstanding**

Sensitized amount representing estimates of accrued but unpaid fees from the United States Trustee during the Debtors' Chapter 11 bankruptcy, which would become payable near or around a contested plan confirmation hearing.

**22. Post-Petition Taxes Payable**

Sensitized amount representing estimates of taxes being accrued due to the generation of profits after the petition date, which are expected to be partially offset by the Debtors' tax assets associated with historical operating losses.

**23. Accrued Wages**

Sensitized amount representing estimates of wages and benefits accrued after the petition date. The Debtors' payroll is paid one week in arrears and is estimated to be approximately $300 thousand a week, excluding commissions, and other benefits.

**24. Priority Claims**

Represents scheduled priority claims as of the petition date.

**25. General Unsecured Claims**

Represents scheduled unsecured claims as of the petition date sensitized for additional filed claims, rejection damages, unknown claims; However, it does not account for claims to potentially be filed by insiders or affiliates. The Debtors reserve their right to object to any of the claims included in the estimates herein and the inclusion of any claim amounts in this analysis do not reflect an admission of the validity of any claim.

**Exhibit C_007**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367**.

A true and correct copy of the document(s) entitled: **DISCLOSURE STATEMENT DESCRIBING DEBTORS' CHAPTER
11 PLAN OF REORGANIZATION** will be served or was served **(a)** on the judge in chambers in the form and manner
required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the document(s) were served by the court via NEF and hyperlink to the document.  On
**October 31, 2024,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

- **Ryan W Beall**    rbeall@go2.law, kadele@go2.law;dfitzgerald@go2.law;rbeall@ecf.courtdrive.com;cmeeker@go2.law
- **Matthew Bouslog**    mbouslog@allenmatkins.com, ncampos@allenmatkins.com
- **Katherine Bunker**    kate.bunker@usdoj.gov
- **Erin R. Fay**    efay@wsgr.com, lmcgee@wsgr.com
- **Jeffrey I Golden**    jgolden@go2.law,
   kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b117954@notify.b
   estcase.com
- **Alexandria Lattner**    alattner@sheppardmullin.com, ehwalters@sheppardmullin.com
- **Matthew A Macdonald**    matthew.macdonald@wsgr.com
- **David W. Meadows**    david@davidwmeadowslaw.com
- **Douglas A Plazak**    dplazak@rhlaw.com
- **David M Poitras**    dpoitras@bg.law
- **Susan K Seflin**    sseflin@bg.law
- **Jonathan Seligmann Shenson**    jshenson@greenbergglusker.com,
   calendar@greenbergglusker.com;cmillerwatkins@greenbergglusker.com
- **Yuriko M Shikai**    yshikai@neufeldmarks.com
- **Ashley M Teesdale**    ateesdale@bg.law, becky@ringstadlaw.com;arlene@ringstadlaw.com
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov
- **Pamela Kohlman Webster**    pwebster@buchalter.com, smartin@buchalter.com
- **Jessica Wellington**    jwellington@bg.law, ecf@bg.law

☐    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **_____, 2024,** I served the following persons and/or entities at the last known
addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope
in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a
declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**\*\*JUDGE'S COPY NOT REQUIRED IF LESS THAN 25 PAGES (GENERAL ORDER 23-01).**

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for
each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 31, 2024,** I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such
service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that
personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**\*Courtesy Copy to Judge Kaufman**          ☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 31, 2024 | Susan Seflin | /s/ Susan Seflin |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.