DAVID M. POITRAS – Bar No. 141309
SUSAN K. SEFLIN - Bar No. 213865
ASHLEY M. TEESDALE - Bar No. 289919
JESSICA S. WELLINGTON - Bar No. 324477
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:  (818) 827-9099
Email:     dpoitras@bg.law
           sseflin@bg.law
           ateesdale@bg.law
           jwellington@bg.law

Attorneys for Chapter 11 Debtors and
Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>Irwin Naturals *et al.*,<br><br>　　　　Debtors and Debtors<br>　　　　　in Possession.<br><br>☐ Affects Irwin Naturals<br>☐ Affects Irwin Naturals Inc.<br>☐ Affects 5310 Holdings, LLC<br>☐ Affects DAI US HoldCo Inc.<br>☒ Affects All Debtors | Case No. 1:24-bk-11323-VK<br><br>Chapter 11<br><br>Jointly Administered With:<br><br>Case No. 1:24-bk-11324-VK<br>Case No. 1:24-bk-11325-VK<br>Case No. 1:24-bk-11326-VK<br><br>**DEBTORS' EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTORS TO ENTER INTO POST-PETITION INSURANCE PREMIUM FINANCING AGREEMENT WITH IPFS CORPORATION OF CALIFORNIA; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF KLEE IRWIN IN SUPPORT THEREOF**<br><br>**[Hearing Not Requested But May Be Set]**<br><br>**Hearing:**<br>Date:　TBD<br>Time:　TBD<br>Place:　Courtroom 301<br>　　　　United States Bankruptcy Court<br>　　　　21041 Burbank Blvd.<br>　　　　Woodland Hills, CA 91367 |

Irwin Naturals, a Nevada corporation ("Irwin Nevada"), and its related debtor entities (collectively, the "Debtors") hereby file their emergency motion (the "Motion") pursuant to Local Bankruptcy Rule 9075-1 and Sections 105 and 364(c) of 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code") and Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (1) authorizing the Debtors to enter into a premium financing agreement (the "Financing Agreement") with IPFS Corporation of California ("IPFS"), and (2) granting IPFS liens and security interests in all unearned or return premium dividends which may become payable under the policies identified in the Financing Agreement, and liens and security interests in loss payments which reduce the unearned premiums, subject only to the interest of any mortgagee or other loss payee.

The Debtors' previous general liability insurance policy expired on October 31, 2024. The Debtors have secured a new general liability insurance policy and two excess liability policies (collectively, the "Insurance Policies"), each effective on October 31, 2024, and each for a 12-month term, for a total premium of $367,712.83 (the "Premium"). The Insurance Policies are general liability policies covering, among other things, bodily injury and property damage.

To fund the Premium, the Debtors have obtained the Financing Agreement for IFPS to provide insurance premium financing. A copy of the Financing Agreement is attached hereto as **Exhibit 1**. Under the Financing Agreement, the Debtors will pay a down payment of $102,620.08 (the "Down Payment") directly to the insurers, with the balance to be paid to IPFS via 10 monthly payments of $27,410.49 (the "Installments") commencing on November 30, 2024. The Installments reflect an interest rate of 7.350% per year, for a total finance charge of $9,012.15 paid over the course of the Installments.

As collateral for the loan under the Financing Agreement, the Debtors are obligated to grant IPFS a lien and security interest in all right, title and interest to the Insurance Policies, including (but only to the extent permitted by applicable law): (a) all money that is or may be due insured because of a loss under any such policy that reduces the unearned premiums (subject to the interest of any applicable mortgagee or loss payee); (b) any unearned premium under each of the Insurance

1

Policies; (c) dividends which may become due insured in connection with each of the Insurance Policies; and (d) interests arising under a state guarantee fund.

Relief on an emergency basis is necessary and appropriate because while the Insurance Policies are bound, if the Debtors do not enter into and obtain approval of the Financing Agreement immediately, the Debtors are at risk that the Insurance Policies will be cancelled, leaving the Debtors without general liability insurance. This Motion was not brought sooner because the Debtors made an error regarding the nature of the funding for the Premium; historically, the Debtors have financed their insurance premiums as a matter of course, and did not realize that these agreements are financing agreements requiring Court-approval post-petition under Section 364(c). This Motion was filed within one day of discovery of this error.

The Debtors believe that a hearing is not necessary and respectfully request that the Court enter an order without a hearing. The relief sought in this Motion concerns a major issue with potentially catastrophic implications for creditors if the Financing Agreement is not approved. The relief requested, however, does not significantly affect the rights of creditors beyond what has already been approved. The Premium owing on the Insurance Policies is included in the approved cash collateral budget. *See* Doc. No. 91; Doc. No. 115.

The Debtors' general bankruptcy counsel has contacted counsel for the Debtors' secured lender, East West Bank, as Agent ("Agent"), counsel for the Office of the United States Trustee (the "UST"), and counsel for the Debtors' Official Committee of Unsecured Creditors (the "Committee") regarding this Motion, the Insurance Policies, and the Financing Agreement. Counsel for the Committee and Agent have confirmed that neither opposes the relief requested. Counsel for the UST advised that while the UST does not generally oppose financing for insurance, he wishes to review the full Motion before making a final evaluation.

The Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Klee Irwin (the "Irwin Declaration") annexed hereto and all exhibits attached thereto, the entire record of these cases, the statements, arguments and representations of counsel to be made at any hearing on the Motion, and any other evidence properly presented to the Court on the Motion.

**WHEREFORE,** the Debtors respectfully requests that the Court enter an order:

1. Authorizing the Debtors to enter into the Financing Agreement attached as **Exhibit 1** to the Irwin Declaration;

2. Granting IPFS a lien and security interest in in all right, title and interest to the Insurance Policies, including (but only to the extent permitted by applicable law): (a) all money that is or may be due insured because of a loss under any such policy that reduces the unearned premiums (subject to the interest of any applicable mortgagee or loss payee, including but not limited to the Debtors' secured lender, East West Bank); (b) any unearned premium under each of the Insurance Policies; (c) dividends which may become due insured in connection with each of the Insurance Policies; and (d) interests arising under a state guarantee fund; and

3. Granting such other and further relief as the Court deems just and proper.

DATED: November 1, 2024                BG LAW LLP

By: __/s/ Susan K. Selfin_____
David M. Poitras
Susan K. Seflin
Ashley M. Teesdale
Jessica S. Wellington
Attorneys for Chapter 11 Debtors and
Debtors in Possession

3015432

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.     **FACTUAL BACKGROUND**

    A.     **General Case Background**

On August 9, 2024, the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On August 14, 2024, the Court entered an order authorizing the joint administration of the Debtors' cases. The Debtors continue to operate their business and manage their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 31, 2024, the United States Trustee for the Central District of California appointed the Official Committee of Unsecured Creditors pursuant to section 1102(a) of the Bankruptcy Code [Doc. No. 69].

The Debtors operate a nutraceutical business that has operated successfully for most of its history since its inception in 1994. Irwin Nevada formulates, markets, and distributes vitamins and supplements. In addition to its Irwin Naturals® supplement brand, Irwin Nevada also has two other supplement brands, Nature's Secret® and Applied Nutrition®. Irwin Nevada's product line currently includes over 130 formulas, which are distributed in more than 100,000 retail locations, including health food stores such as Whole Foods and mass-market retailers such as Costco, Walmart, and CVS. The Debtors' 2023 gross sales were $91 million.

    B.     **Insurance Premium Financing**

In connection with the operation of their business, it is critical that the Debtors maintain various insurance policies including a general liability and property insurance policy.

The Debtors have engaged in discussions with various companies in the business of providing insurance premium financing and have determined that IPFS Corporation of California ("IPFS") offers the most advantageous terms for such financing

The Debtors' previous general liability insurance policy expired on October 31, 2024. The Debtors have secured a new general liability insurance policy and two excess liability policies (collectively, the "Insurance Policies"), each effective on October 31, 2024, and each for a 12-month term, for a total premium of $367,712.83 (the "Premium"). The Insurance Policies are general liability policies covering, among other things, bodily injury and property damage.

To fund the Premium, the Debtors have obtained the Financing Agreement for IPFS to provide insurance premium financing. A copy of the Financing Agreement is attached hereto as **Exhibit 1**. Under the Financing Agreement, the Debtors will pay a down payment of $102,620.08 (the "Down Payment") directly to the insurers, with the balance to be paid to IPFS via 10 monthly payments of $27,410.49 (the "Installments") commencing on November 30, 2024. The Installments reflect an interest rate of 7.350% per year, for a total finance charge of $9,012.15 paid over the course of the Installments.

As collateral for the loan under the Financing Agreement, the Debtors are obligated to grant IPFS a lien and security interest in all right, title and interest to the Insurance Policies, including (but only to the extent permitted by applicable law): (a) all money that is or may be due insured because of a loss under any such policy that reduces the unearned premiums (subject to the interest of any applicable mortgagee or loss payee); (b) any unearned premium under each of the Insurance Policies; (c) dividends which may become due insured in connection with each of the Insurance Policies; and (d) interests arising under a state guarantee fund.

The Debtors further request that IPFS's liens and security interests be deemed duly perfected without further action by IPFS.

## II.    ARGUMENT

A premium financing agreement can be described as follows:
> Premium financing involves an advance by the finance company to the insurance company or its agent of the premium due for the full term of the policy. This advance is then repaid by the insured to the finance company in amortized monthly installments which include an additional amount to cover financing charges. The finance company is secured in making this advance by obtaining the right to cancel the policy and to receive the return premium due upon cancellation if timely repayments are not made.

*Baker & Co. v. Preferred Risk Mut. Ins. Co*., 569 F.2d 1347, 1348 (5th Cir. 1978). Premium financing arrangements are considered standard practice in the insurance industry, and inherent in their description is the assumption that the financing company is a lender rather than a guarantor or surety. *In re Redfeather Fast Freight, Inc*., 1 B.R. 446, 449-450 (Bankr. D.Neb. 1979).

Furthermore, since the financing company is required to pay the full premiums for the insured rather than merely stand ready to pay in the event of insured's default, the "characterization of such transactions as secured loans is correct and will be followed by this Court." *Id*. at 450; *see*

5

*also In re Schwinn Bicycle Co.*, 200 B.R. 980, 988 fn.10 (Bankr. N.D.Ill. 1996) ("Courts have uniformly treated premium finance companies as secured creditors.")(court finding payments made to insurance premium financier not preferences).

Because the Financing Agreement is therefore a post-petition secured loan, the Debtors must obtain authorization from the Court after notice and a hearing under 11 U.S.C. § 364. Section 364(c) of the Bankruptcy Code provides:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

Under the Financing Agreement, the Debtors will grant IPFS security interests only in the policies themselves. Therefore, the Debtors seeks authority under 11 U.S.C. § 364(c)(2). Generally, courts apply a three-part test to assess a debtor's request under Section 364(c):

1. The debtor cannot obtain credit unencumbered or without superpriority status;

2. The credit transactions are necessary to preserve assets of the estate; and

3. The terms of the credit agreement are fair, reasonable, and adequate.

3 L. King, Collier on Bankruptcy ¶ 364.04[1] (15th ed. 2001); *In re Crouse Group, Inc.*, 71 B.R. 544 (Bankr. E.D.Pa. 1987), *aff'd.*, 75 B.R. 553 (E.D.Pa. 1987); *In re Sobiech*, 131 B.R. 917, 921 (S.D.N.Y. 1991) ("Under Section 364(c)(2), the court may authorize a debtor to incur secured credit out of the ordinary course of its business only if the debtor has been 'unable to obtain unsecured credit allowable under section 503(b)(1) . . . as an administrative expense.'")(*quoting from Sapir v. CPQ Colorchrome Corp.*, 87 B.R. 835, 839 (Bankr. S.D.N.Y. 1988) *aff'd.* 881 F.2d 6 (2nd Cir. 1989)). The Debtors submit that an evaluation of the facts in these cases under the relevant factors above, leads to the conclusion that the Debtors' request to enter into a post-petition insurance premium financing agreement is reasonable and justified.

First, insurance premium financing arrangements, such as the ones at issue herein, are commonplace and standard practice in the insurance industry. Although insurance premiums are prepaid at the inception of the coverage, the insurer "earns" its premiums on a pro rated basis earning a portion each day it extends coverage to the insured. Therefore, on any given day during the term of an insurance policy, there is an "unearned" premium balance that would have to be returned or refunded to the insured upon cancellation of the coverage. Typically, these "unearned" premiums are assigned to the premium finance company as collateral for its loan to the insured.

Second, the Financing Agreement comports with standard insurance premium financing arrangements. It provides for the assignment by the Debtors to IPFS of any and all "unearned" premiums and dividends which may become payable under the policies and any loss payments which reduce the "unearned" premiums. Simply, the Financing Agreement conforms and complies with normal insurance industry practice and, therefore, it would be extremely difficult, if not impossible, for the Debtors to obtain insurance premium financing on an unsecured basis.

Third, the maintenance of the currently bound policy is critical to the continuation of the Debtors' business operations and, consequently, to the preservation of the Debtors' assets. Unless the Financing Agreement with IPFS is authorized, the Debtors will not be able to maintain the Insurance Policies, and the Insurance Policies will be cancelled. If the Debtors are unable to maintain coverage under the Insurance Policies, the Debtors will not be able to continue their business operations without significant risk to the bankruptcy estate and would be at risk of conversion for failure to maintain adequate insurance. Accordingly, the relief requested pursuant to the Motion is in the best interests of the estates and their creditors.

Finally, the Debtors and their insurance broker have investigated, analyzed and discussed insurance premium financing options with other lenders and, the Debtors have determined, in their sound business judgment, that the terms and conditions offered by IPFS are the most reasonable and fair and, therefore, should be accepted. In sum, the terms and conditions of the Financing Agreement are fair, reasonable, adequate and within the normal practice of the insurance industry. Additionally, for the reasons set forth above, the Financing Agreement is absolutely essential to the Debtors' continued business operations and for the preservation of these bankruptcy estates.

## III. CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order:

1. Authorizing the Debtors to enter into the Financing Agreement attached as **Exhibit 1** to the Irwin Declaration;

2. Granting IPFS a lien and security interest in in all right, title and interest to the Insurance Policies, including (but only to the extent permitted by applicable law): (a) all money that is or may be due insured because of a loss under any such policy that reduces the unearned premiums (subject to the interest of any applicable mortgagee or loss payee, including but not limited to the Debtors' secured lender, East West Bank); (b) any unearned premium under each of the Insurance Policies; (c) dividends which may become due insured in connection with each of the Insurance Policies; and (d) interests arising under a state guarantee fund

3. Granting such other and further relief as the Court deems just and proper under the circumstances.

DATED: November 1, 2024    BG LAW LLP

By: /s/ Susan K. Selfin
  David M. Poitras
  Susan K. Seflin
  Ashley M. Teesdale
  Jessica S. Wellington
Attorneys for Chapter 11 Debtors and
Debtors in Possession

3015432

# DECLARATION OF KLEE IRWIN

I, Klee Irwin, declare:

1. I am the founder and principal of Irwin Naturals, a Nevada corporation, and its related debtor entities (collectively, the "Debtors"). I know each of the following facts to be true of my own personal knowledge, except as otherwise stated, and if called as a witness, I could and would competently testify with respect thereto. I am authorized to make this declaration on behalf of the Debtors.

2. I make this declaration in support of the Debtors' emergency motion (the "Motion") to which this declaration is annexed. Any capitalized terms used but not defined in this declaration have the same meanings ascribed to them in the Motion. I have read the Motion carefully and agree with the facts set forth therein.

3. In connection with the operation of their business, it is critical that the Debtors maintain various insurance policies including a general liability and property insurance policy.

4. The Debtors have engaged in discussions with various companies in the business of providing insurance premium financing and have determined that IPFS Corporation of California ("IPFS") offers the most advantageous terms for such financing.

5. The Debtors' previous general liability insurance policy expired on October 31, 2024. The Debtors have secured a new general liability insurance policy and two excess liability policies (collectively, the "Insurance Policies"), each effective on October 31, 2024, and each for a 12-month term, for a total premium of $367,712.83 (the "Premium"). The Insurance Policies are general liability policies covering, among other things, bodily injury and property damage.

6. To fund the Premium, the Debtors have obtained the Financing Agreement for IFPS to provide insurance premium financing. A copy of the Financing Agreement is attached hereto as **Exhibit 1**. Under the Financing Agreement, the Debtors will pay a down payment of $102,620.08 (the "Down Payment") directly to the insurers, with the balance to be paid to IPFS via 10 monthly payments of $27,410.49 (the "Installments") commencing on November 30, 2024. The Installments

///

9

reflect an interest rate of 7.350% per year, for a total finance charge of $9,012.15 paid over the course of the Installments.

7.     Historically, the Debtors have financed their insurance premiums as a matter of course. Debtors' management did not realize that these agreements are financing agreements requiring Court-approval post-petition.

8.     Without entering into the Financing Agreement, the Debtors are at risk that the Insurance Policies will be cancelled, leaving the Debtors without general liability insurance. It is crucial to the Debtors' business operations and their ability to confirm a Chapter 11 plan that they maintain general liability insurance as provided in the Insurance Policies.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of November, 2024, at Topanga, California.

Signed by:

*Klee Irwin*

E34615AA797E4A1...

Klee Irwin

**IPFS CORPORATION OF CALIFORNIA**
CAL.PROCESSING@IPFS.COM
700 S FLOWER ST, STE 1160
LOS ANGELES, CA 90017
(800)541-2384 FAX: (213)457-1915
CUSTOMER SERVICE: (866)412-1821

**PREMIUM FINANCE AGREEMENT**
License # 973 9750

| | | |
|---|---|---|
| A | CASH PRICE (TOTAL PREMIUMS) | $367,712.83 |
| B | CASH DOWN PAYMENT | $102,620.08 |
| C | PRINCIPAL BALANCE (A MINUS B) | $265,092.75 |

**AGENT** (Name & Place of business)
BARKLEY, AN ALERA INS AGENCY LLC
P.O. BOX 5086
OXNARD,CA 93031
(805)220-9451 FAX:

**INSURED** (Name & Residence or business)
IRWIN NATURALS
300 Corporate Pointe Ste 550

Culver City, CA 90230-7617
(310)306-3636 FAX: (310)306-4840
ap@irwinnaturals.com

Commercial

Account #: _____

**LOAN DISCLOSURE**
Additional Policies Scheduled on Page 3

Quote Number: 28231131

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid after you have made all payments as scheduled |
|---|---|---|---|
| 7.350% | $9,012.15 | $265,092.75 | $274,104.90 |

**YOUR PAYMENT SCHEDULE WILL BE**

| Number Of Payments | Amount Of Payments | When Payments Are Due | |
|---|---|---|---|
| 10 | $27,410.49 | Beginning: | MONTHLY 11/30/2024 |

ITEMIZATION OF THE AMOUNT FINANCED: THE AMOUNT FINANCED IS FOR APPLICATION TO THE PREMIUMS SET FORTH IN THE SCHEDULE OF POLICIES UNLESS OTHERWISE NOTED.

**Security:** Refer to paragraph 1 below for a description of the collateral assigned to Lender to secure this loan.
**Late Charges:** A late charge will be imposed on any installment in default 10 days or more. This late charge will be 5.00% of the installment due.
**Prepayment:** If you pay your account off early, you may be entitled to a refund of a portion of the finance charge computed as provided in Sec. 18635, California Statute or as otherwise allowed by law. The finance charge includes a predetermined interest rate plus a non-refundable service/origination fee of $25.00. See the terms below and on the next page for additional information about nonpayment, default and penalties.

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | MINIMUM EARNED PERCENT | POL TERM | PREMIUM |
|---|---|---|---|---|---|---|
| PENDING | 10/31/2024 | HUDSON INSURANCE CO<br>AMWINS ACCESS | GEN. LIAB./PROF. LIAB. | 0.000% | 12 | 149,457.00<br>Fee: 1,000.00<br>Tax: 4,768.63 |
| | | | | Broker Fee: | | $0.00 |
| | | | | TOTAL: | | $367,712.83 |

The undersigned insured directs IPFS Corporation of California d/b/a/ IPFS Corporation (herein, "Lender") to pay the premiums on the policies described on the Schedule of Policies. In consideration of such premium payments, subject to the provisions set forth herein, the insured agrees to pay Lender at the branch office address shown above, or as otherwise directed by Lender, the amount stated as Total of Payments in accordance with the Payment Schedule, in each case as shown in the above Loan Disclosure. The named insured(s), on a joint and several basis if more than one, hereby agree to the following provisions set forth on pages 1 and 2 of this Agreement: **1. SECURITY**: To secure payment of all amounts due under this Agreement, insured assigns Lender a security interest in all right, title and interest to the scheduled policies, including (but only to the extent permitted by applicable law): (a) all money that is or may be due insured because of a loss under any such policy that reduces the unearned premiums (subject to the interest of any applicable mortgagee or loss payee), (b) any unearned premium under each such policy, (c) dividends which may become due insured in connection with any such policy and (d) interests arising under a state guarantee fund. **2. POWER OF ATTORNEY**: Insured irrevocably appoints Lender attorney-in-fact with full power of substitution and full authority upon default to cancel all policies above identified, receive all sums assigned to its Lender or in which it has granted Lender a security interest and to execute and deliver on behalf of the insured documents, instruments, forms and notices relating to the listed insurance policies in furtherance of this Agreement. **3. POLICY EFFECTIVE DATES**: The finance charge begins to accrue as of the earliest policy effective date.

**NOTICE: A.** Do not sign this agreement before you read it or if it contains any blank space. **B.** You are entitled to a completely filled in copy of this agreement. **C.** Under the law, you have the right to pay in advance the full amount due and under certain conditions to obtain a partial refund of the finance charge. **D.** Keep your copy of this agreement to protect your legal rights.**FOR INFORMATION CONTACT THE DEPARTMENT OF FINANCIAL INSTITUTIONS, STATE OF CALIFORNIA**

The undersigned hereby warrants and agrees to Agent's Representations set forth herein.

_____   _____   _____   _____
Signature of Insured or Authorized Agent   DATE   Signature of Agent   DATE

Exhibit 1_001

Insured and Lender further agree that: **4. AGREEMENT EFFECTIVE DATE**: This Agreement shall be effective when written acceptance is mailed to the insured by Lender. **5. DEFAULT AND DELINQUENT PAYMENTS**: If any of the following happens insured will be in default: (a) a payment is not made when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against insured, or (c) insured fails to keep any promise the insured makes in this Agreement; provided, however, that, to the extent required by applicable law, insured may be held to be in default only upon the occurrence of an event described in clause (a) above. The acceptance by Lender of one or more late payments from the insured shall not estop Lender or be a waiver of the rights of Lender to exercise all of its rights hereunder or under applicable law in the event of any subsequent late payment. **6. CANCELLATION**: Lender may cancel the scheduled policies after providing at least 10 days notice of its intent to cancel or any other required statutory notice if the insured does not pay any installment according to the terms of this Agreement or transfers any of the scheduled policies to a third party and the unpaid balance due to Lender shall be immediately due and payable by the insured. Lender at its option may enforce payment of this debt without recourse to the security given to Lender. **7. CANCELLATION CHARGES**: If Lender cancels any insurance policy in accordance with the terms of this Agreement and applicable law, then the insured shall pay Lender a cancellation charge equal to $15.00 or the maximum amount permitted by law. If cancellation occurs, the insured agrees to pay a finance charge on the outstanding indebtedness at the maximum rate authorized by applicable state law in effect on the date of cancellation until the outstanding indebtedness is paid in full or until such other date as required by law. **8. INSUFFICIENT FUNDS (NSF) CHARGES**: If insured's check or electronic funding is dishonored for any reason, the insured will pay to Lender a fee of $15.00 or the maximum amount permitted by law. **9. MONEY RECEIVED AFTER CANCELLATION**: Any payments made to Lender after Lender's Notice of Cancellation of the insurance policy(ies) has been mailed may be credited to the insured's account without any obligation on the part of Lender to request reinstatement of any policy. Any money Lender receives from an insurance company shall be credited to the balance due Lender with any surplus refunded to whomever is entitled to the money. In the event that Lender does request a reinstatement of the policy(ies) on behalf of the insured, such a request does not guarantee that coverage under the policy(ies) will be reinstated or continued. Only the insurance company has authority to reinstate the policy (ies). The insured agrees that Lender has no liability to the insured if the policy(ies) is not reinstated and Lender may charge a reinstatement fee where permitted up to the maximum amount allowed by law. **10. ASSIGNMENT**: The insured agrees not to assign this Agreement or any policy listed hereon or any interest therein (except for the interest of mortgagees or loss payees), without the written consent of Lender, and that Lender may sell, transfer and assign its rights hereunder or under any policy without the consent of the insured, and that all agreements made by the insured hereunder and all rights and benefits conferred upon Lender shall inure to the benefit of Lender's successors and assigns (and any assignees thereof). **11. INSURANCE AGENT OR BROKER**: The insured agrees that the insurance agent or broker soliciting the policies or through whom the policies were issued is not the agent of Lender; and the agent or broker named on the front of this Agreement is neither authorized by Lender to receive installment payments under this Agreement nor to make representations, orally or in writing, to the insured on Lender's behalf (except to the extent expressly required by applicable law). As and where permissible by law, Lender may compensate your agent/broker for assisting in arranging the financing of your insurance premiums. If you have any questions about this compensation you should contact your agent/broker. **12. FINANCING NOT A CONDITION**: The law does not require a person to enter into a premium finance agreement as a condition of the purchase of insurance. **13. COLLECTION COSTS**: Insured agrees to pay attorney fees and other collection costs to Lender to the extent permitted by law if this Agreement is referred to an attorney or collection agency who is not a salaried employee of Lender, to collect any money insured owes under this Agreement. **14. LIMITATION OF LIABILITY**: The insured agrees that Lender's liability to the insured, any other person or entity for breach of any of the terms of this Agreement for the wrongful or improper exercise of any of its powers under this Agreement shall be limited to the amount of the principal balance outstanding, except in the event of Lender' gross negligence or willful misconduct. Insured recognizes and agrees that Lender is a lender only and not an insurance company and that in no event does Lender assume any liability as an insurer hereunder or otherwise. **15. CLASSIFICATION AND FORMATION OF AGREEMENT**: This Agreement is and will be a general intangible and not an instrument (as those terms are used in the Uniform Commercial Code) for all purposes. Any electronic signature or electronic record may be used in the formation of this Agreement, and the signatures of the insured and agent and the record of this Agreement may be in electronic form (as those terms are used in the Uniform Electronic Transactions Act). A photocopy, a facsimile or other paper or electronic record of this Agreement shall have the same legal effect as a manually signed copy. **16. REPRESENTATIONS AND WARRANTIES**: The insured represents that (a) the insured is not insolvent or presently the subject of any insolvency proceeding (or if the insured is a debtor of bankruptcy, the bankruptcy court has authorized this transaction), (b) if the insured is not an individual, that the signatory is authorized to sign this Agreement on behalf of the insured, (c) all parties responsible for payment of the premium are named and have signed this Agreement, and (d) there is no term or provision in any of the scheduled policies that would require Lender to notify or get the consent of any third party to effect cancellation of any such policy. **17. ADDITIONAL PREMIUM FINANCING**: Insured authorizes Lender to make additional advances under this premium finance agreement at the request of either the Insured or the Insured's agent with the Insured's express authorization, and subject to the approval of Lender, for any additional premium on any policy listed in the Schedule of Policies due to changes in the insurable risk. If Lender consents to the request for an additional advance, Lender will send Insured a revised payment amount ("Revised Payment Amount"). Insured agrees to pay the Revised Payment Amount, which may include additional finance charges on the newly advanced amount, and acknowledges that Lender will maintain its security interest in the Policy with full authority to cancel all policies and receive all unearned premium if Insured fails to pay the Revised Payment Amount. **18. PRIVACY**: Our privacy policy may be found at https://ipfs.com/Privacy. **19. ENTIRE DOCUMENT / GOVERNING LAW**: This document is the entire Agreement between Lender and the insured and can only be changed in writing and signed by both parties except that the insured authorizes Lender to insert or correct on this Agreement, if omitted or incorrect, the insurer's name and the policy number(s). Lender is also authorized to correct patent errors and omissions in this Agreement. In the event that any provision of this Agreement is found to be illegal or unenforceable, it shall be deemed severed from the remaining provisions, which shall remain in full force and effect. The laws of the State of California will govern this Agreement. **20. AUTHORIZATION**: The insurance company(ies) and their agents, any intermediaries and the agent / broker named in this Agreement and their successors and assigns are hereby authorized and directed by insured to provide Lender with full and complete information regarding all financed insurance policy(ies), including without limitation the status and calculation of unearned premiums, and Lender is authorized and directed to provide such parties with full and complete information and documentation regarding the financing of such insurance policy(ies), including a copy of this Agreement and any related notices. **21. WAIVER OF SOVERIGN IMMUNITY**: The insured expressly waives any sovereign immunity available to the insured, and agrees to be subject to the laws as set forth in this Agreement (and the jurisdiction of federal and/or state courts) for all matters relating to the collection and enforcement of amounts owed under this Agreement and the security interest in the scheduled policies granted hereby.

## AGENT/BROKER REPRESENTATIONS

The agent/broker executing this, and any future, agreements represents, warrants and agrees: (1) installment payments totaling $0.00 and all applicable down payment(s) have been received from the insured in immediately available funds, (2) the insured has received a copy of this Agreement; if the agent/broker has signed this Agreement on the insured's behalf, the insured has expressly authorized the agent/broker to sign this Agreement on its behalf or, if the insured has signed, to the best of the undersigned's knowledge and belief such signature is genuine, (3) the policies are in full force and effect and the information in the Schedule of Policies including the premium amounts is correct, (4) no direct company bill, audit, or reporting form policies or policies subject to retrospective rating or to minimum earned premium are included, except as indicated, and the deposit of provisional premiums is not less than anticipated premiums to be earned for the full term of the policies, (5) the policies can be cancelled by the insured or Lender (or its successors and assigns) on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (6) there are no bankruptcy, receivership, or insolvency proceedings affecting the insured, (7) to hold Lender, its successors and assigns harmless against any loss or expense (including attorney fees) resulting from these representations or from errors, omissions or inaccuracies of agent/broker in preparing this Agreement, (8) to pay the down payment and any funding amounts received from Lender under this Agreement to the insurance company or general agent (less any commissions where applicable), (9) to hold in trust for Lender or its assigns any payments made or credited to the insured through or to agent/broker directly or indirectly, actually or constructively by the insurance companies and to pay the monies, as well as the unearned commissions to Lender or its assigns upon demand to satisfy the outstanding indebtedness of the insured, (10) all material information concerning the insured and the financed policies necessary for Lender to cancel such policies and receive the unearned premium has been disclosed to Lender, (11) no term or provision of any financed policy requires Lender to notify or get the consent of any third party to effect cancellation of such policy, (12) to promptly notify Lender in writing if any information on this Agreement becomes inaccurate, and (13) that the agent/broker has disclosed to the insured pursuant to Cal. Insurance Code § 778.2 any compensation received from Lender for arranging, directing or performing services in connection with this agreement.

| AGENT | INSURED |
|---|---|
| (Name & Place of business) | (Name & Residence or business) |
| BARKLEY, AN ALERA INS AGENCY LLC | IRWIN NATURALS |
| P.O. BOX 5086 | 300 Corporate Pointe Ste 550 |
| OXNARD,CA 93031 | |
| (805)220-9451 FAX: | Culver City, CA 90230-7617 |
| | (310)306-3636 FAX: (310)306-4840 |
| | ap@irwinnaturals.com |

Account #: _____    **SCHEDULE OF POLICIES**    Quote Number: 28231131
                                **(continued)**

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | MINIMUM EARNED PERCENT | POL TERM | PREMIUM |
|---|---|---|---|---|---|---|
| PENDING | 10/31/2024 | LLOYD'S LONDON - CERTAIN UNDERWRITE AMWINS ACCESS | EXCESS LIABILITY | 0.000% | 12 | 124,000.00 Fee: 1,000.00 Tax: 3,943.20 |
| PENDING | 10/31/2024 | JAMES RIVER INSURANCE CO AMWINS ACCESS | EXCESS PROF LIABILITY | 0.000% | 12 | 80,000.00 Fee: 1,000.00 Tax: 2,544.00 |
| | | | | | TOTAL: | $367,712.83 |

**Exhibit 1_003**

# AutoPay

Enroll in AutoPay on ipfs.com

IPFS Corporation® has made it easier than ever to pay your insurance coverages with AutoPay. Enrolling in AutoPay is easy and provides peace of mind by allowing you to set up recurring ACH or credit card payments to make your monthly installment payment automatically. After you have received your web access code, visit ipfs.com, view your account status page, and select Set Up to get started with AutoPay*!

## AutoPay Benefits:


Easily maintain coverage


No risk of forgetting to make a payment


Less paperwork



Getting signed up is as easy as clicking the words **Set Up** on your Account Status page in column labeled the AutoPay Method.





*Fees may apply.

Please visit ipfs.com for more information



*Our payment processing service provider may charge a technology fee, where allowed by law, related to processing a payment. IPFS's payment processing service provider may charge a fee to set up AutoPay on behalf of a borrower. Imperial PFS® is a trade name affiliated with IPFS Corporation (IPFS®), a premium finance company. Loans remain subject to acceptance by IPFS in its sole discretion; issuance of a quote does not constitute an offer to lend. Access to products and services described herein may be subject to change and is subject to IPFS's standard terms and conditions in all respects, including the terms and conditions specifically applicable to use of IPFS's website and mobile applications, as applicable, and IPFS's eForms Disclosure and Consent Agreement. IPFS is not responsible for insufficient funds or overdraft fees. Copyright © 2023 IPFS Corporation. All rights reserved.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367**.

A true and correct copy of the document(s) entitled**: DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTORS TO ENTER INTO POST-PETITION INSURANCE PREMIUM FINANCING AGREEMENT WITH IPFS CORPORATION OF CALIFORNIA; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF KLEE IRWIN IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the document(s) were served by the court via NEF and hyperlink to the document. On **November 1, 2024,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ryan W Beall**     rbeall@go2.law, kadele@go2.law;dfitzgerald@go2.law;rbeall@ecf.courtdrive.com;cmeeker@go2.law
- **Matthew Bouslog**     mbouslog@allenmatkins.com, ncampos@allenmatkins.com
- **Katherine Bunker**     kate.bunker@usdoj.gov
- **Erin R. Fay**     efay@wsgr.com, lmcgee@wsgr.com
- **Jeffrey I Golden**     jgolden@go2.law, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b117954@notify.bestcase.com
- **Alexandria Lattner**     alattner@sheppardmullin.com, ehwalters@sheppardmullin.com
- **Matthew A Macdonald**     matthew.macdonald@wsgr.com
- **David W. Meadows**     david@davidwmeadowslaw.com
- **Douglas A Plazak**     dplazak@rhlaw.com
- **David M Poitras**     dpoitras@bg.law
- **Susan K Seflin**     sseflin@bg.law
- **Jonathan Seligmann Shenson**     jshenson@greenbergglusker.com, calendar@greenbergglusker.com;cmillerwatkins@greenbergglusker.com
- **Yuriko M Shikai**     yshikai@neufeldmarks.com
- **Ashley M Teesdale**     ateesdale@bg.law, becky@ringstadlaw.com;arlene@ringstadlaw.com
- **United States Trustee (SV)**     ustpregion16.wh.ecf@usdoj.gov
- **Pamela Kohlman Webster**     pwebster@buchalter.com, smartin@buchalter.com
- **Jessica Wellington**     jwellington@bg.law, ecf@bg.law

☐    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **_____, 2024**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.
**\*\*JUDGE'S COPY NOT REQUIRED IF LESS THAN 25 PAGES (GENERAL ORDER 23-01).**

☐    Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 1, 2024,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**\*\*Via Email On: Jeffrey Golden [jgolden@go2.law], Counsel for the committee

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*     **F 9013-3.1.PROOF.SERVICE**

Erin Fay [Efay@wsgr.com], Counsel for East West Bank, as Agent
Katherine Bunker [kate.bunker@usdoj.gov] and Eryk Escobar [eryk.r.escobar@usdoj.gov], Counsel for the United States Trustee
Jay Kaufman [jayk@paragonlabsusa.com], Claude Dardant [claude.dardant@autajon.us] and Sheri Orlowitz [sheri@artemisholdings.com], Members of the Official Committee of Unsecured Creditors

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 1, 2024 | Susan Seflin | /s/ Susan Seflin |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**