DAVID M. POITRAS – Bar No. 141309
SUSAN K. SEFLIN - Bar No. 213865
JESSICA L. BAGDANOV - Bar No. 282020
JESSICA S. WELLINGTON - Bar No. 324477
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:  (818) 827-9099
Email:     dpoitras@bg.law
           sseflin@bg.law
           jbagdanov@bg.law
           jwellington@bg.law

Attorneys for Chapter 11 Debtors and
Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>Irwin Naturals *et al.*,<br><br>                    Debtors and Debtors<br>                    in Possession. | Case No. 1:24-bk-11323-VK<br><br>Chapter 11<br><br>Jointly Administered With:<br><br>Case No. 1:24-bk-11324-VK<br>Case No. 1:24-bk-11325-VK<br>Case No. 1:24-bk-11326-VK |
| ☐  Affects Irwin Naturals<br><br>☐  Affects Irwin Naturals Inc.<br><br>☐  Affects 5310 Holdings, LLC<br><br>☐  Affects DAI US HoldCo Inc.<br><br>☒  Affects All Debtors | **DEBTORS' NOTICE OF AND MOTION FOR ENTRY OF AN ORDER (A) APPROVING PRELIMINARY BIDDING PROCEDURES IN CONNECTION WITH SALE OF THE DEBTORS' ASSETS, (B) SCHEDULING HEARING TO CONSIDER THE SALE, AND (C) APPROVING FORM AND MANNER OF NOTICE THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Declarations of Klee Irwin, Wayne H. Platt and Vincent Willis Filed Concurrently Herewith*]<br><br>**Hearing:**<br>Date:      March 21, 2025<br>Time:      10:00 a.m.<br>Place:     Courtroom 301<br>           United States Bankruptcy Court<br>           21041 Burbank Blvd.<br>           Woodland Hills, CA 91367 |

# TABLE OF CONTENTS

Page

I.    JURISDICTION AND VENUE ........................................................................7

II.    RELEVANT BACKGROUND ........................................................................7

    A.    General Case Background.........................................................................7

    B.    Description of the Debtors' Business. .......................................................7

    C.    The Debtors' Management, Principals, and Affialites of the Debtors....................7

    D.    Circumstances Leading to the Bankruptcy Filing......................................8

    E.    The Marketing Process. ............................................................................9

III.    THE DEBTORS' PURSUIT OF PARALLEL EXIT PATHS ...........................10

IV.    RELIEF REQUESTED......................................................................................10

V.    ARGUMENT ....................................................................................................12

    A.    The Debtors Have Adequate Business Justifications for the Proposed Sale. ........12

    B.    The Bid Procedures Should Be Approved................................................14

    C.    The Proposed Sale Timeline Should Be Approved. ................................16

    D.    Waiver Of Bankruptcy Rules Regarding Stay Of Order. ......................18

VI.    CONCLUSION..................................................................................................18

i

# TABLE OF AUTHORITIES

Page

## CASES

*Comm. of Equity Security Holders v. Lionel Corp .(In re Lionel Corp.)*,
  722 F.2d 1063 (2d Cir. 1983).............................................................................13

*Commodity Futures Trading Com'n v. Weintraub ("Commodity")*,
  471 U.S. 343 (1985)................................................................................ 14, 15

*EWI, Inc.*,
  208 B.R. at 888 .................................................................................................15

*In re Adelphia Commc'ns Corp.*,
  352 B.R. 578 (Bankr. S.D.N.Y. 2006), *clarified on denial of reconsideration,* No. 02-
  41729, 2006 WL 2927222 (Bankr. S.D.N.Y. Oct. 10, 2006) ............................................17

*In re Atlanta Packaging Products, Inc.*,
  99 B.R. 124, 131 (Bankr. N.D. Ga. 1988) ...........................................................14

*In re Delaware & Hudson Ry. Co.*,
  124 B.R. 169 (D. Del. 1991) ...............................................................................13

*In re Dow Corning Corp.*,
  208 B.R. 661 (Bankr. E.D. Mich. 1997) .............................................................17

*In re Henry Mayo Newhall Mem'l Hosp.*,
  282 B.R. 444 (B.A.P. 9th Cir. 2002)...................................................................17

*In re New Meatco Provisions, LLC ("New Meatco")*,
  2014 WL 917335, at *1 (Bankr. C.D. Cal. Mar. 10, 2014) ...............................17

*In re Pub. Serv. Co. of New Hampshire*,
  99 B.R. 155 (Bankr. D.N.H. 1989) .....................................................................17

*In re Schipper (Fulton State Bank v. Schipper)*,
  933 F.2d 513 (7th Cir. 1990) ..............................................................................13

*In re Situation Management Systems, Inc. ("Situation Management")*,
  252 B.R. 859 (Bankr. D. Mass. 2000) .................................................................17

*In re Washington Group, Inc.*,
  476 F.Supp. 246 (MDNC 1979), *aff'd sub nom. Johnston v. Gilbert*, 636 F.2d 1213
  (CA4 1980), *cert. denied*, 452 U.S. 940 (1981)............................................14, 15

*Myers v. Martin (In re Martin)*,
  91 F.3d 389 (3d Cir. 1996)..................................................................................13

*Stephens Indus., Inc. v. McClung*,
  789 F.2d 386 (6th Cir. 1986) ..............................................................................13

3039645

## STATUTES

11 U.S.C. § 105(a) ...........................................................................................................7, 12

11 U.S.C. § 1102(a) ..............................................................................................................7

11 U.S.C. § 1107(a) ..............................................................................................................7

11 U.S.C. § 1108 ..................................................................................................................7

11 U.S.C. § 1121(d) ..............................................................................................................7

11 U.S.C. § 363 ..............................................................................................................10, 14

11 U.S.C. § 363(b) ..............................................................................................................13

11 U.S.C. § 363(b)(1) ..........................................................................................................12

28 U.S.C. § 1334 ..................................................................................................................7

28 U.S.C. § 1408 ..................................................................................................................7

28 U.S.C. § 1409 ..................................................................................................................7

28 U.S.C. § 157 ....................................................................................................................7

28 U.S.C. § 157(b)(2) ..........................................................................................................7

## RULES

Federal Rules of Bankruptcy Procedure 2002 ....................................................................14

Federal Rules of Bankruptcy Procedure 6004 ....................................................................14

Federal Rules of Bankruptcy Procedure 6004(f) ...............................................................14

Federal Rules of Bankruptcy Procedure 6004(h)................................................................18

Federal Rules of Bankruptcy Procedure 6006(d)................................................................18

Local Bankruptcy Rule 6004-1(b) .....................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3039645

**TO THE HONORABLE VICTORIA S. KAUFMAN, UNITED STATES BANKRUPTCY JUDGE, SECURED LENDERS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

**PLEASE TAKE NOTICE** that a hearing will be held on **March 21, 2025, at 10:00 a.m.** (Pacific time) for the Court to consider the motion (the "Motion") filed by Irwin Naturals, a Nevada corporation ("Irwin Nevada"), and its related debtor entities (collectively, the "Debtors"), for issuance of an order, pursuant to Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules 6004-1(b), substantially in the form attached hereto as **Exhibit 1** (the "Bidding Procedures Order") (a) establishing preliminary bidding procedures (the "Bidding Procedures") for the sale of Irwin Nevada as a going concern (and including the intellectual property owned by Irwin Nevada through its wholly-owned subsidiary 5310 Holdings, LLC ("5310")) including scheduling an auction, and (b) scheduling a hearing to consider such sale (the "Sale Hearing") and establishing deadlines related thereto (the "Sale Deadlines").  The Bidding Procedures are set forth in the form of order annexed hereto as **Exhibit 1** and are summarized as follows:[1]

1. **Deadline to Designate Stalking Horse Bidder**:  June 16, 2025 shall be the deadline for the Debtors to designate a stalking horse bidder or acquiror through the chapter 11 plan process or a sale pursuant to 11 U.S.C. § 363 (unless the Committee consents otherwise).

2. **Qualified Bid Deadline**:  July 25, 2025, at 5:00 p.m. (prevailing Pacific Time), is the deadline by which all binding bids must actually be received pursuant to the Bidding Procedures (the "Qualified Bid Deadline").  Bidders must deliver the necessary bid documents required to participate in the Auction pursuant to the Bidding Procedures to David M. Poitras at dpoitras@bg.law and Susan Seflin at sseflin@bg.law;

3. **Auction**: In the event at least one Qualified Bid (other than the Stalking Horse Bidder) is received, July 28, 2025, commencing at 10:00 a.m. (prevailing Pacific time), is the date and time the Auction will commence at the offices of BG Law LLP, 21650 Oxnard Street, Suite 500, Woodland Hills, CA  91367 (or at any such other location or time as the Debtors may hereafter designate in writing to the Qualified Bidders);

---

[1] To the extent there is any discrepancy between this summary and the actual terms of the Bid Procedures set forth in **Exhibit 1**, the actual terms of the Bid Procedures set forth in **Exhibit 1** shall govern in all respects.

3039645

4. **Sale Motion Deadline**:  The deadline for the Debtors to file and serve a motion to approve the Sale transaction (the "Sale Motion") shall be July 9, 2025.

5. **Sale Objection Deadline**:  The deadline to object to the Sale transaction shall be July 16, 2025 (the "Sale Objection Deadline"); and

6. **Sale Hearing**:  July 30, 2025, at 1:30 p.m. (prevailing Pacific time), is the date and time of the Sale Hearing before this Court.

7. **Prompt Closing**:  August 15, 2025, shall be the deadline for any Sale transaction to close.  To implement the sale transactions within the expedited time frame required by the Debtors' circumstances, the Motion requests that if it is granted, the waiver of any stay arising under Bankruptcy Rules 6004(h) and 6006(d), or any similar rules.

**PLEASE TAKE FURTHER NOTICE** that as required by LBR 6004-1(b)(2), the Debtors provide the following information regarding the marketing efforts undertaken and the anticipated additional marketing efforts to be undertaken for the sale of Irwin Nevada as a going concern (and including the intellectual property owned by Irwin Nevada through its wholly-owned subsidiary 5310 (Irwin Nevada's business and the intellectual property owned by 5310 are herein after referred to as the "Business"), as follows:

The Debtors proposed investment banker STS Capital Partners M&A Advisers Inc ("STS") has done/intends to do the following to market the Business:

STS has developed a four-phase process to conduct an orderly sale of the Business.  In the first phase, which will last at least through March 2025 (assuming STS' employment is approved), STS will prepare for market by: (i) analyzing the quality of earnings of the Business;[2] (ii) developing marketing materials; (iii) developing a targeted and focused outreach list that includes the type of potential strategic purchasers that are interested or may be interested in this Business; (iv) populating a pre-letter of interest data room; (v) obtaining merger and acquisition and legal guidance on the structure of the sale of the Business; and (vi) calling pre-nondisclosure agreement potential buyers.

In the second phase of the marketing process, which will begin mid-April 2025 (assuming STS' employment is approved by the Court), the Business will be in market and STS will: (i) engage with potential buyers; (ii) distribute confidential information memorandum and invitations to the

---

[2] Any potential purchaser (including FitLife) would require this analysis to be done, and the quality of earnings analysis may not be complete until May.

2

pre-letter of interest data room; (iii) conduct outreach to potential purchasers who received the

confidential information memorandum; (iv) invite potential purchasers to submit letters of interest;

and (v) prepare a due diligence data room for potential stalking horse bidders.

In the third phase of the marketing process, which will last through June 2025, STS will

assist the potential stalking horse bidders in their due diligence by: (i) releasing access to the data

room; (ii) corresponding with the potential stalking horse bidders regarding any questions; and (iii)

assist in the preparation of closing documents.

In the fourth phase of the marketing process, which will begin in July 2025, STS will assist

the Debtors and their professionals with: (i) obtaining and analyzing Qualified Bids, (ii) conducting

an Auction if there is at least one Qualified Bidder (in addition to the Stalking Horse), and (iii)

obtaining court approval of the sale of the Business and with closing of the transaction.[3]

**PLEASE TAKE FURTHER NOTICE** that as required by LBR 6004-1(b)(2), the Debtors

provide the following information regarding the proposed purchase agreement (the "APA").  The

Debtors will be filing a copy of the APA in connection with the Sale Motion.  The Debtors are

unable to describe the terms of the proposed sale because the Debtors have not yet entered into an

APA with a stalking horse bidder.[4]  Once the Debtors have entered into an APA with a stalking

horse bidder, a copy of the APA may be obtained by contacting the Debtors counsel Susan Seflin via

email at sseflin@bg.law.

**PLEASE TAKE FURTHER NOTICE** that this Motion is based on the accompanying

Memorandum of Points and Authorities, the Declarations of Klee Irwin, Wayne H. Platt and Vincent

---

[3] This truncated timeline is being proposed because of the issues that have been raised by the Debtors' secured creditor in recent months and in order to address the Court's comments and concerns.  The Debtors believe that their secured creditor is sufficiently adequately protected and that given the relatively short amount of time these cases have been pending and the financial performance of the Debtors that longer timelines would be more beneficial to the shareholders and not a detriment to creditors.  The Debtors preserve the right to raise these positions at a later time.

[4] The Debtors filed this Motion prior to entering into an APA on request of the Court.  As the Debtors have not entered into an APA and are not requesting approval to use, sell, or lease property of the estates at this time, the Debtors submit that providing notice of this Motion to all creditors and parties that's rights may be adversely affected by the sale of estate property as required by Rules 6004 and 2002(a)(2) of the Federal Rules of Bankruptcy Procedure is not appropriate at this time given that the Debtors would need to serve over 450 parties (all creditors and shareholders) with this Motion on an expedited basis.

Willis, the arguments of counsel as may be presented at the hearing on the Motion, and any other admissible evidence brought before the Court in connection with the Motion.

**PLEASE TAKE FURTHER NOTICE** that if you wish to oppose the Motion, pursuant to Local Bankruptcy Rule 6004-1(b)(4), you must file a written response with the Court and serve a copy of it upon the Debtors' counsel at the address set forth above **no less than one (1) day prior to the above hearing date**. If you fail to file a written response to this motion within such time period, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

**PLEASE TAKE FURTHER NOTICE** that the following remote hearing procedures apply:

1.     Parties in interest (and their counsel) may connect by ZoomGov audio and video using a personal computer (equipped with camera, microphone and speaker), or a handheld mobile device with an integrated camera, microphone and speaker (such as an iPhone, iPad, Android phone or Android tablet).

2.     The connection can be initiated by entering the "Meeting URL" into a web browser on any of these devices, provided the device is connected to the Internet. Individuals connecting in this manner will be prompted for the Meeting ID and Password shown below.

3.     Members of the public and the press may only connect to the zoom audio feed, and only by telephone. Access to the video feed by these individuals is prohibited. In the case of a trial or evidentiary hearing, no audio access will be provided. However, members of the public and the press may observe all proceedings in person.

4.     Neither a Zoom nor a ZoomGov account is necessary to participate in or observe the hearing, and no pre-registration is required. The use of ZoomGov is free of charge to participants.

5.     The audio portion of the hearing will be recorded electronically by the Court and constitute its official record.

6.     All persons are strictly prohibited from making any other recording of court proceedings, whether by video, audio, "screenshot," or otherwise. Violation of this prohibition may result in the imposition of monetary and non-monetary sanctions.

3039645

7.      Any party in interest or counsel that elects to appear remotely by ZoomGov bears the risk of malfunction or disconnection from the hearing.

8.      The following is the unique ZoomGov connection information for the above-referenced hearing:

Video/audio web address:  https://cacb.zoomgov.com/j/1613070613

Meeting ID: 161 307 0613

Password: 331800

Telephone conference lines: 1-669-254-5252 OR 1-646-828-7666

9.      More information on using ZoomGov to participate in this hearing is available on the Court's website at the following web address: https://www.cacb.uscourts.gov/news/zoom-video-hearing-guide-and-training-participants.

**PLEASE TAKE FURTHER NOTICE** that while the Debtors have agreed to file this Motion and schedule a sale process, the Debtors are still in the process of attempting to obtain exit financing which will enable the Debtors to confirm a plan that pays all creditors in full on the same timeline as the sale process set forth herein. I.e., whether it is via a sale of their Business or via exit financing, all creditors will be paid in full no later than August 2025.  The Debtors submit that this is a reasonable timeline given (i) their solvency, (ii) their profitability, and (iii) the fact they are paying their obligations as they come due, (iv) that the Debtors first choice is to remain in business as a going concern and to keep all 73 of their employees employed in Los Angeles county.  The Debtors submit that the Court should allow the Debtors to pursue a dual track of a sale and exit financing because they have acted in good faith throughout these cases, they have at all times represented that creditors will be paid in full (albeit on a longer timeline initially) and because payment in full of allowed claims within one year of the petition date is well within the normal and reasonable timelines of chapter 11 cases in this district.

**WHEREFORE**, the Debtors respectfully requests that this Court enter an order, substantially in the form of the Proposed Order attached hereto as **Exhibit 1**, and set the following hearing date, deadlines, and Auction date:

3039645

a. **Deadline to Designate Stalking Horse Bidder**:  June 16, 2025, shall be the deadline for the Debtors to designate a stalking horse bidder or acquiror through the chapter 11 plan process or a sale pursuant to 11 U.S.C. § 363 (unless the Committee and East West Bank consent otherwise).

b. **Qualified Bid Deadline**: July 25, 2025, at 5:00 p.m. (prevailing Pacific Time), is the deadline by which all binding bids must actually be received pursuant to the Bidding Procedures (the "Qualified Bid Deadline").  Bidders must deliver the necessary bid documents required to participate in the Auction pursuant to the Bidding Procedures to David M. Poitras at dpoitras@bg.law and Susan Seflin at sseflin@bg.law;

c. **Auction**: In the event at least one Qualified Bid (other than the Stalking Horse Bidder) is received, July 28, 2025, commencing at 10:00 a.m. (prevailing Pacific time), is the date and time the Auction will commence at the offices of BG Law LLP, 21650 Oxnard Street, Suite 500, Woodland Hills, CA  91367 (or at any such other location or time as the Debtors may hereafter designate in writing to the Qualified Bidders);

d. **Sale Motion Deadline**:  The deadline for the Debtors to file and serve a motion to approve the Sale transaction shall be July 9, 2025.

e. **Sale Objection Deadline**:  The deadline to object to the Sale transaction shall be July 16, 2025 (the "Sale Objection Deadline"); and

f. **Sale Hearing**:  July 30, 2025, at 1:30 p.m. (prevailing Pacific time), is the date and time of the Sale Hearing before this Court.

g. **Prompt Closing**:  August 15, 2025, shall be the deadline for any Sale transaction to close.  To implement the sale transactions within the expedited time frame required by the Debtors' circumstances, the Motion requests that if it is granted, the waiver of any stay arising under Bankruptcy Rules 6004(h) and 6006(d), or any similar rules.

DATED:  March 14, 2025                              BG LAW LLP


                                                   By:  /s/ Susan K. Seflin
                                                        David M. Poitras
                                                        Susan K. Seflin
                                                        Jessica S. Wellington
                                                   Attorneys for Chapter 11 Debtors and
                                                   Debtors in Possession

3039645

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   JURISDICTION AND VENUE

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory basis for the relief requested herein is Sections 105(a) and 1121(d) of the Bankruptcy Code.

### II.   RELEVANT BACKGROUND

#### A.   General Case Background.

On August 9, 2024, the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  On August 14, 2024, the Court entered an order authorizing the joint administration of the Debtors' cases [Doc. No. 11].  The Debtors continue to operate their business and manage their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On August 31, 2024, the United States Trustee for the Central District of California appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a) of the Bankruptcy Code [Doc. No. 69].

#### B.   Description of the Debtors' Business.

Irwin Nevada is a popular dietary supplement company that was founded in 1994, the same year that Congress first enacted legislation to define and regulate dietary supplements.  Irwin Nevada formulates, markets, and distributes vitamins and supplements.  In addition to its Irwin Naturals® supplement brand, Irwin Nevada also has two other supplement brands, Nature's Secret® and Applied Nutrition®.  Irwin Nevada's product line currently includes over 130 formulas, which are distributed in more than 100,000 retail locations, including stores like Costco, Walmart, and CVS. The Debtors' 2023 gross sales were $102 million.  Irwin Nevada's website is https://irwinnaturals.com/.

#### C.   The Debtors' Management, Principals, and Affiliates of the Debtors.

At the time of the Petition Date and as of the date of the filing of this Motion, Klee Irwin was, and is, the Chief Executive Officer ("CEO") of Irwin Nevada, Irwin Naturals, Inc. ("Irwin

3039645

Canada") and DAI US HoldCo Inc. ("DAI").  The managing member of 5310 Holding, LLC

("5310") is Irwin Nevada.  Mr. Irwin founded the Debtors' nutraceutical business in 1994.  Irwin

Nevada, successor in interest to a prior entity, was incorporated in Nevada in January 2002.

Irwin Nevada is the operating entity through which the Debtors' nutraceutical business is

conducted. Irwin Canada is the ultimate "parent company" of the Debtors.  Irwin Canada does not

have any employees and only transacts limited business with its subsidiaries.  DAI is a wholly

owned subsidiary of Irwin Canada.  DAI is solely a holding company that owns 100% of the Class A

Voting Shares of Irwin Nevada amounting to 2% of beneficial ownership of Irwin Nevada (with

Klee Irwin owning the other 98% personally or through his family trust in the form of 100% of the

Class B non-voting shares of Irwin Nevada). 5310 is a wholly owned subsidiary of Irwin Nevada.

### D. Circumstances Leading to the Bankruptcy Filing.

For almost three decades, Irwin Nevada enjoyed financial stability and profitability from its

long-trusted dietary supplement brands.[5]  In or around 2020, Irwin Nevada sought to expand its

footprint and, as set forth more fully in the Declaration of Klee Irwin filed in support of the Debtors'

first day emergency motions [Doc. No. 22], the Debtors had financial difficulties arising out of that

attempted expansion.  The Debtors ultimately filed their respective bankruptcy cases after their

secured lender, East West Bank ("EWB"), exerted control over their business and bank accounts.  At

the time these cases were filed, EWB was sweeping the Debtors' bank accounts daily (which left the

Debtors with no liquidity other than what EWB determined was necessary to pay), and the Debtors

were unable to retain bankruptcy counsel pre-petition as they were unable to fund a retainer due to

EWB's control.

Additional information detailing the Debtors' operations and the circumstances leading to the

commencement of their chapter 11 cases case are described in greater detail in the First Day

Declaration, which is fully incorporated into this Motion by this reference [Doc. No. 22].

---

[5] On an adjusted EBITDA basis, when accounting for extraordinary expenses.

### E. The Marketing Process.

On February 5, 2025, the Debtors filed an application to employ STS Capital Partners M&A Advisers Inc ("STS") as investment banker with respect to a potential equity transaction [Doc. No. 336] (the "STS Application"). The Debtors have engaged STS to advise on the orderly sale process of Irwin Nevada as a going concern (and including the intellectual property owned by Irwin Nevada through its wholly-owned subsidiary 5310). Irwin Nevada's business and the intellectual property owned by 5310 are herein after referred to as the "Business". The hearing on the STS Application is also set for March 21, 2025.

STS has developed a four-phase process to conduct an orderly sale of the Business. In the first phase, which will last at least through March 2025 (assuming STS' employment is approved), STS will prepare for market by: (i) analyzing the quality of earnings[6] of the Business; (ii) developing marketing materials; (iii) developing a targeted and focused outreach list that includes the type of potential strategic purchasers that are interested or may be interested in this Business; (iv) populating a pre-letter of interest data room; (v) obtaining merger and acquisition and legal guidance on the structure of the sale of the Business; and (iv) calling pre-nondisclosure agreement potential buyers.

In the second phase of the marketing process, which will begin mid-April 2025[7] (assuming STS' employment is approved by the Court), the Business will be in market and STS will: (i) engage with potential buyers; (ii) distribute confidential information memorandum and invitations to the pre-letter of interest data room; (iii) conduct outreach to potential purchasers who received the confidential information memorandum; (iv) invite potential purchasers to submit letters of interest; and (v) prepare a due diligence data room for potential stalking horse bidders.

---

[6] Any potential purchaser (including FitLife) would require this analysis to be done, and the quality of earnings analysis may not be complete until May.

[7] The Debtors originally filed the STS Application on February 5, 2025, and expected to have it approved by no later than March 3, 2025. However, EWB and FitLife filed objections to the STS Application and it was subsequently set for hearing on March 12, 2025. EWB has withdrawn its objection but FitLife has not. Therefore, STS's retention has not been approved by the Court and there are certain tasks that STS cannot and will not do unless and until its employment is approved pursuant to Court order. Given that the hearing on the STS Application is currently scheduled for March 21, 2025, it is not possible for STS to go to market prior to mid April. While STS has been contacted by third parties interested in the Debtors' business, STS has no ability to engage in any fulsome way with such parties until its employment is approved.

9

In the third phase of the marketing process, which will last through June 2025, STS will assist the potential stalking horse bidders in their due diligence by: (i) releasing access to the data room; (ii) corresponding with the potential stalking horse bidders regarding any questions; and (iii) assisting in the preparation of closing documents.

In the fourth phase of the marketing process, which will begin in July 2025, STS will assist the Debtors and their professionals with: (i) obtaining and analyzing Qualified Bids, (ii) conducting an Auction if there is at least one Qualified Bidder (in addition to the Stalking Horse), and (iii) obtaining court approval of the sale of the Business and with closing of the transaction.

## III.    THE DEBTORS' PURSUIT OF PARALLEL EXIT PATHS

The Debtors' bankruptcy cases have been pending for seven months.  While the Debtors have agreed to file this Motion and schedule a sale process, the Debtors are still in the process of attempting to obtain exit financing which will enable the Debtors to confirm a plan that pays all creditors in full on the same timeline as the sale process set forth herein. I.e., whether it is via a sale of their Business or via exit financing, all creditors will be paid in full no later than August 2025. The Debtors submit that this is a reasonable timeline given (i) their solvency, (ii) their profitability, (iii) the fact they are paying their obligations as they come due, and (iv) that the Debtors' first choice is to remain in business as a going concern and to keep all 73 of their employees employed in Los Angeles County.  The Debtors submit that the Court should allow the Debtors to pursue a dual tract of a sale and exit financing because they have acted in good faith throughout these cases, they have at all times represented that creditors will be paid in full (albeit on a longer timeline initially) and because payment in full of all allowed claims within one year of the petition date is well within the normal and reasonable timelines of chapter 11 cases in this district.

## IV.    RELIEF REQUESTED

While concurrently continuing to seek exit financing, the Debtors have filed this Motion to establish a process for a sale transaction of the business with such sale transaction (through either the Debtors' chapter 11 plan or a sale pursuant to 11 U.S.C. § 363) to close by no later than August 15, 2025.  To facilitate this sales process, the Debtors seek approval of a preliminary Bidding

10

3039645

Procedures Order, substantially in the form set forth in the proposed Bidding Procedures Order

hereto attached as **Exhibit 1**:

> a.  approving preliminary bidding and auction procedures (the "Bidding Procedures") in
> connection with the receipt, analysis and improvement of bids for the sale of the
> Business;
>
> b.  authorizing the Debtors' inclusion in the Bidding Procedures certain customary bid
> protections in connection with a sale transaction, including a breakup fee of 2% of the
> purchase price plus up to 1% of the purchase price to account for actual third party
> costs incurred by the Stalking Horse Bidder (the "Breakup Fee");
>
> c.  scheduling a hearing (the "Sale Hearing") to consider entry of an order to approve the
> sale of the Business to take place on or before July 30, 2025 (prevailing Pacific time),
> subject to the Bankruptcy Court's availability, with any objections to the sale to be
> filed at least fourteen (14) days before the Sale Hearing; and
>
> d.  approving the form and manner of notice of the auction (the "Auction") for the
> Business and the Sale Hearing, substantially in the form attached hereto as **Exhibit 2**
> (the "Sale Notice").

The Debtors expressly reserve the right to modify the relief requested in this Motion before

or at the applicable hearings, including modifying the proposed Bidding Procedures in their

reasonable discretion, in any manner that will best promote the goals of the bidding process and

maximizing the value of the Business.  The Debtors also reserve the right to not move forward with

a sale transaction if they are able to secure exit financing sufficient to allow them to pay all allowed

claims in full by August 2025 (which is the same timeline as the proposed sale transaction) or if

there is otherwise a global consensual resolution in these cases.  In connection with the above-

requested relief, the Debtors request that the Court establish the following dates and deadlines,

subject to modification:

> a.  **Deadline to Designate Stalking Horse Bidder**:  June 16, 2025, shall be the deadline
> for the Debtors to designate a stalking horse bidder or acquiror through the chapter 11
> plan process or a sale pursuant to 11 U.S.C. § 363 (unless the Committee consents
> otherwise).
>
> b.  **Qualified Bid Deadline**:  July 25, 2025, at 5:00 p.m. (prevailing Pacific Time), is the
> deadline by which all binding bids must actually be received pursuant to the Bidding
> Procedures (the "Qualified Bid Deadline").  Bidders must deliver the necessary bid
> documents required to participate in the Auction pursuant to the Bidding Procedures
> to David M. Poitras at dpoitras@bg.law and Susan Seflin at sseflin@bg.law;

3039645

c.  **Auction**: In the event at least one Qualified Bid (other than the Stalking Horse Bidder) is received, July 28, 2025, commencing at 10:00 a.m. (prevailing Pacific time), is the date and time the Auction will commence at the offices of BG Law LLP, 21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367 (or at any such other location or time as the Debtors may hereafter designate in writing to the Qualified Bidders);

d.  **Sale Motion Deadline**: The deadline for the Debtors to file and serve a motion to approve the Sale transaction shall be July 9, 2025.

e.  **Sale Objection Deadline**: The deadline to object to the Sale transaction shall be July 16, 2025 (the "Sale Objection Deadline"); and

f.  **Sale Hearing**: July 30, 2025, at 1:30 p.m. (prevailing Pacific time), is the date and time of the Sale Hearing before this Court.

g.  **Prompt Closing**: August 15, 2025, shall be the deadline for any Sale transaction to close. To implement the sale transactions within the expedited time frame required by the Debtors' circumstances, the Motion requests that if it is granted, the waiver of any stay arising under Bankruptcy Rules 6004(h) and 6006(d), or any similar rules.

The Debtors submits that the Bidding Procedures, set forth in the accompanying proposed Bidding Procedures Order, **Exhibit 1**, provide an appropriate framework for selling the Business and will enable the Debtors to review, analyze and compare all bids received to determine which bid or bids is or are in the best interests of the Debtors' estates. Importantly, the Bidding Procedures recognize the Debtors' fiduciary obligations to maximize sale value, and, as such, do not impair the Debtors' ability to consider all qualified bid proposals.

# V.  ARGUMENT

## A.  The Debtors Have Adequate Business Justifications for the Proposed Sale.

Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

The Debtors' sale or use of property of the estate outside the ordinary course of business should be approved by the Bankruptcy Court if the Debtors can demonstrate a sound business justification for the proposed transaction. *See, e.g., Stephens Indus., Inc. v. McClung*, 789 F.2d 386,

3039645

390 (6th Cir. 1986); *see also Myers v. Martin (In re Martin),* 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper (Fulton State Bank v. Schipper),* 933 F.2d 513, 515 (7th Cir. 1990)); *Comm. of Equity Security Holders v. Lionel Corp .(In re Lionel Corp.),* 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (D. Del. 1991) (explaining that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to Section 363(b) of the Bankruptcy Code).

There is more than adequate business justification to sell the Business subject to overbid at the Auction.  The Debtors' management and advisors have concluded that an asset sale, on the timeline proposed herein, will attempt to preserve the substantial goodwill of the Debtors' business and avoid a liquidation sale or sales at depressed prices (though even at the timeline proposed in this Motion, the sale price will likely be less than what could be obtained through a fulsome six month sale process).  As set forth more fully in the declarations filed in support of this Motion, a shortened time period for a sale of the Business will not maximize the value of the Debtors' estates (and will in fact greatly reduce the value of the Debtors' estates), and the Debtors have a duty to maximize value to both creditors and shareholders as these are solvent estates.

The stalking horse bid will be subject to competing bids at the Auction, provided that there are other Qualified Bids received by the Bidding Deadline, thereby enhancing the Debtors' ability to receive the highest and best value for the Business.  Consequently, the fairness and reasonableness of the consideration to be received by the Debtors ultimately will be demonstrated by a "market check" through an auction process, which is the best means for establishing that a fair and reasonable price is being paid.

Finally, parties in interest will receive adequate notice of the Bidding Procedures, the Auction and the Sale Hearing as provided herein.  Such notice is reasonably calculated to provide timely and adequate notice to the Debtors' creditors, those parties potentially interested in bidding on the Business and others whose interests are potentially implicated by the proposed sale.

Under these circumstances, the Debtors submit that sound business reasons exist for the proposed sale of the Business outside the ordinary course of business pursuant to the Bidding Procedures.

3039645

## B.    The Bid Procedures Should Be Approved.

Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure govern the scope of the notice to be provided in the event a debtor in possession or trustee elects to sell property of the estate under Section 363.  However, with respect to the procedures to be adopted in conducting a sale outside the ordinary course, Rule 6004 provides only that such sale may be by private sale or public auction, and requires only that the debtor in possession provide an itemized list of the property sold together with the prices received upon consummation of the sale.  Fed. R. Bankr. P. 6004(f).

Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure contain specific provisions with respect to the procedures to be employed by a debtor in possession in conducting a public or private sale.  Nonetheless, as one Court has stated, "[i]t is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."  *In re Atlanta Packaging Products, Inc.,* 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988). *See, also, Commodity Futures Trading Com'n v. Weintraub ("Commodity")*, 471 U.S. 343, 355-56 (1985)("[T]he fiduciary duty of the trustee runs to shareholders as well as to creditors")(citations omitted) .  Additionally, courts have long recognized the need for competitive bidding at hearings on private sales; "[c]ompetitive bidding yields higher offers and thus benefits the estate.  Therefore, the objective is 'to maximize bidding, not restrict it.'"  *Atlanta Packaging Productions, Inc.,* 99 B.R. at 131..

The Court here should similarly approve the proposed Bidding Procedures.  The Debtors believe that the proposed Bidding Procedures detailed in the attached Exhibit 1 will maximize the price ultimately obtained for the Business (compared to the timelines proposed by other parties) while still protecting the estates from parties who may wish to bid on the assets but who are ultimately unable to consummate a purchase of the assets.

The Bidding Procedures serve numerous legitimate purposes.  Among other things, the Bidding Procedures will (1) foster competitive bidding among any serious potential purchasers, (2) eliminate from consideration purchasers who would waste the Debtors' time because they would not have the financial ability to consummate a purchase of the Business, and (3) ensure that the highest possible price is obtained for the Business.

14

Indeed, solvent debtors, such as the Debtors, owe fiduciary duties not only to their creditors and bankruptcy estates, but also to their shareholders. *See, e.g., Commodity, supra,* 471 U.S. at 355-56 ("[T]he fiduciary duty of the trustee runs to shareholders as well as to creditors …. If a trustee is not appointed – the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession.  Indeed, the willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'"), *quoting Wolf v. Weinstein*, 372 U.S. 633, 649-652 (1963) *and citing In re Washington Group, Inc.*, 476 F.Supp. 246, 250 (MDNC 1979), *aff'd sub nom. Johnston v. Gilbert*, 636 F.2d 1213 (CA4 1980), *cert. denied*, 452 U.S. 940 (1981).  As such, the Debtors not only need to ensure that the highest and best price for the Business is obtained for creditors of the Debtors' estates, but also for the over 200 shareholders of the Debtors.

Additionally, the proposed Breakup fee is not excessive and represents, at most, 3% of the purchase price.  *See EWI, Inc.,* 208 B.R. at 888 (authorizing 3.6% break-up fee).  As such, the Debtors submit that the Breakup Fee does not present a barrier to, or otherwise meaningfully discourage, participation in the Auction process, given the relatively low amount relative to the value of the Business.  Also, the Breakup Fee will only be paid if a bidder other than the Stalking Horse Bidder purchases the Business at the Auction.

Moreover, the Bidding Procedures satisfy all the requirements for the approval of the Bidding Procedures pursuant to LBR 6004-1(b).  First, the Notice of the Motion describes the Bidding Procedures.  Second, the Notice of the Motion describes marketing efforts that have already been undertaken by STS, and the anticipated additional marketing efforts to be made by STS.  Third, the Notice of the Motion explains that the Debtors will file a copy of the asset purchase agreement (the "APA") in connection with the Sale Motion.  The Debtors have not yet designated a stalking horse bidder as of the filing of this Motion, and thus are not able to describe the terms of the APA.[8]  Based on the foregoing, the Debtors submit that the proposed Bidding Procedures are reasonable and in the best interests of the estates and, therefore, should be approved.

---

[8] The Debtors filed this Motion prior to entering into an APA on request of the Court.

### C.      The Proposed Sale Timeline Should Be Approved.

As set forth in the attached declarations of Wayne H. Platt ("Platt Declaration") and Vincent Willis ("Willis Declaration"), based on the valuation of the Debtors' business on a going concern enterprise basis, as well as valuation of the Debtors' intangible assets such as intellectual property and brand, and the type of potential strategic purchasers that are interested or may be interested in purchasing the Business, the sale timeline proposed herein will enable the Debtors to conduct a somewhat orderly sale process[9] that will ensure the value of the assets are maximized for the benefit of creditors and shareholders.  Based on the updated valuation performed by Marula Capital Group LLC, [10] the Debtors' valuation professional, the updated valuation of the Debtors' business on a going concern enterprise basis is approximately $79 million and the updated valuation on the Debtors' intangible assets such as intellectual property and brand is approximately $26 million.  Platt Declaration, ¶¶ 10–11.  The type of potential strategic purchasers that are interested in or may be interested in the Business and that have the ability and means to purchase the Business require longer due diligence periods as compared to financial purchasers.  Willis Declaration, ¶ 7.

In order to meet the proposed timeline and ensure that the Debtors have all of their efforts focused on completing a sale of the Business or obtaining refinancing, which would pay all creditors in full, rather than fighting a competing plan, the Debtors currently intend on seeking an extension of their exclusive periods in which they may obtain acceptances of their chapter 11 plan through

---

[9] As set forth in the Willis Declaration filed concurrently herewith, the sale process proposed in this Motion is still on a more expedited basis than is typical given that potential strategic purchasers are typically large corporations that require extensive due diligence. I.e., even under the proposed timeline, it is likely that the Business will sell for less than it otherwise would in a longer timeline.

[10]    The Debtors filed the initial *Declaration of Wayne H. Platt in Support of the Debtors' Motion for Authority to Use Cash Collateral* with the Court on September 19, 2024 (the "Original Platt Declaration") [Doc. No. 91].  The Original Platt Declaration valued the Debtors as of September 3, 2024.  Subsequent to the filing of the Original Platt Declaration, the Debtors requested and obtained a valuation of the Debtors as of November 12, 2024.  The Debtors requested the updated valuations to account for a change in the underlying financial information and plan projections (the numbers went down slightly), in connection with a contested cash collateral hearing scheduled for December 4, 2024.  Ultimately, the Debtors and East West Bank settled their disputes over the use of cash collateral, and accordingly, the updated valuation was not filed with the Court at that time.  The Platt Declaration filed in support of the Motion includes this updated valuation.  The updated valuation was provided to East West Bank in December 2024.

3039645

August 15, 2025. The Committee has already agreed to the extension and believes that it is in the best interests of the Debtors' estates. *See* Doc. 384.

Additionally, many bankruptcy courts in this district and other districts routinely extend a chapter 11 debtor's exclusive periods where the cases are larger than most cases in this district, the Debtors are moving the cases forward in good faith towards confirmation of a chapter 11 plan that will pay all creditors in full, and the Debtors are paying their bills as they become due. *See e.g.*, *In re Henry Mayo Newhall Mem'l Hosp.*, 282 B.R. 444, 446 (B.A.P. 9th Cir. 2002) (affirming bankruptcy court's extension of the debtor's exclusive periods for 7 months and 9 months after the order for relief was entered); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 585 (Bankr. S.D.N.Y. 2006), *clarified on denial of reconsideration,* No. 02-41729, 2006 WL 2927222 (Bankr. S.D.N.Y. Oct. 10, 2006) (failing to terminate exclusivity after the cases had been pending for four years); *In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) (declining to terminate exclusivity two years after the case was filed); *In re Pub. Serv. Co. of New Hampshire*, 99 B.R. 155, 177 (Bankr. D.N.H. 1989) (terminating exclusivity after twelve months); *compare with In re New Meatco Provisions, LLC ("New Meatco")*, 2014 WL 917335, at *1 (Bankr. C.D. Cal. Mar. 10, 2014) (terminating the debtor's exclusive period ten months into the case **where the debtor was a non-operating entity, there was no business to reorganize, and it was a liquidation case that was neither large nor complex**)(emphasis added) and *In re Situation Management Systems, Inc. ("Situation Management")*, 252 B.R. 859, 866-67 (Bankr. D. Mass. 2000)(finding cause to terminate the debtor's exclusive period **two and a half years after the petition date** where a potential acquiror sought to offer a competing plan)(emphasis added). The Debtors submit that both cases terminating exclusivity (and cited by FitLife in support of their motion to terminate exclusivity) can easily be distinguished from the Debtors' cases in that (a) the New Meatco case dealt with a non-operating entity that only had to distribute funds under its plan and exclusivity was terminated 10 months into the case (and not 7 months as represented by FitLife's counsel at the March 5th hearing in these cases), and (b) the Situation Management case dealt with a debtor that had not yet confirmed a plan two and half years after the petition date.

3039645

In proposing the sale timeline set forth herein, the Debtors are sensitive to the fact that, on the one hand, STS needs sufficient time to market the Business and for potential strategic purchasers to conduct sufficient due diligence, and, on the other hand, the need to conclude these chapter 11 cases as quickly as possible while providing the maximum return to creditors and shareholders. The Debtors believe that the proposed sale timeline strikes the appropriate balance between these competing interests and will ensure that all creditors are paid in full through the sale of the Business or through a chapter 11 plan by no later than August 2025 (or a mere 12 months after these cases were filed). As such, the Debtors submit that the timeline proposed herein is the minimum amount of time needed in order to run a fulsome, fair sale process that adequately allows the Debtors a reasonable opportunity to realize the enterprise value of the Business but also gives the Debtors sufficient time to secure exit financing that will allow them to pay all allowed claims in full and to continue their business as a going concern. Willis Declaration, ¶ 2.

### D.    Waiver Of Bankruptcy Rules Regarding Stay Of Order.

To implement the foregoing successfully, the Debtors seek a waiver of the stay of any order granting the relief requested herein pursuant to Bankruptcy Rules 6004(h), 6006(d) or otherwise.

## VI.    CONCLUSION

Based on the foregoing, the Debtors respectfully request that this Court enter an order, substantially in the form of the Proposed Order attached hereto as **Exhibit 1**, and set the following deadlines, Auction date and Sale Hearing date:

    a. **Deadline to Designate Stalking Horse Bidder**: June 16, 2025, shall be the deadline for the Debtors to designate a stalking horse bidder or acquiror through the chapter 11 plan process or a sale pursuant to 11 U.S.C. § 363 (unless the Committee consents otherwise).

    b. **Qualified Bid Deadline**: July 25, 2025, at 5:00 p.m. (prevailing Pacific Time), is the deadline by which all binding bids must actually be received pursuant to the Bidding Procedures (the "Qualified Bid Deadline"). Bidders must deliver the necessary bid documents required to participate in the Auction pursuant to the Bidding Procedures to David M. Poitras at dpoitras@bg.law and Susan Seflin at sseflin@bg.law;

    c. **Auction**: In the event at least one Qualified Bid (other than the Stalking Horse Bidder) is received, July 28, 2025, commencing at 10:00 a.m. (prevailing Pacific time), is the date and time the Auction will commence at the offices of

BG Law LLP, 21650 Oxnard Street, Suite 500, Woodland Hills, CA  91367 (or at any such other location or time as the Debtors may hereafter designate in writing to the Qualified Bidders);

d. **Sale Motion Deadline**:  The deadline for the Debtors to file and serve a motion to approve the Sale transaction shall be July 9, 2025.

e. **Sale Objection Deadline**:  The deadline to object to the Sale transaction shall be July 16, 2025 (the "Sale Objection Deadline"); and

f. **Sale Hearing**:  July 30, 2025, at 1:30 p.m. (prevailing Pacific time), is the date and time of the Sale Hearing before this Court.

g. **Prompt Closing**:  August 15, 2025, shall be the deadline for any Sale transaction to close.  To implement the sale transactions within the expedited time frame required by the Debtors' circumstances, the Motion requests that if it is granted, the waiver of any stay arising under Bankruptcy Rules 6004(h) and 6006(d), or any similar rules.

DATED:  March 14, 2025                          BG LAW LLP


                                                By:  /s/ Susan K. Seflin
                                                      David M. Poitras
                                                      Susan K. Seflin
                                                      Jessica S. Wellington
                                                Attorneys for Chapter 11 Debtors and
                                                Debtors in Possession

19

3039645

EXHIBIT "1"

DAVID M. POITRAS – Bar No. 141309
SUSAN K. SEFLIN - Bar No. 213865
ASHLEY M. TEESDALE - Bar No. 289919
JESSICA S. WELLINGTON - Bar No. 324477
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:  (818) 827-9099
Email:      dpoitras@bg.law
            sseflin@bg.law
            ateesdale@bg.law
            jwellington@bg.law

Attorneys for Chapter 11 Debtors and
Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>Irwin Naturals *et al.*,<br><br>               Debtors and Debtors<br>               in Possession. | Case No. 1:24-bk-11323-VK<br><br>Chapter 11<br><br>Jointly Administered With:<br><br>Case No. 1:24-bk-11324-VK<br>Case No. 1:24-bk-11325-VK<br>Case No. 1:24-bk-11326-VK |
| ☐  Affects Irwin Naturals<br><br>☐  Affects Irwin Naturals Inc.<br><br>☐  Affects 5310 Holdings, LLC<br><br>☐  Affects DAI US HoldCo Inc.<br><br>☒  Affects All Debtors | **ORDER (A) APPROVING PRELIMINARY BIDDING PROCEDURES IN CONNECTION WITH SALE OF THE DEBTORS' ASSETS, (B) SCHEDULING HEARING TO CONSIDER THE SALE, AND (C) APPROVING FORM AND MANNER OF NOTICE THEREOF**<br><br>**Hearing:**<br>Date:    March 21, 2025<br>Time:    10:00 a.m.<br>Place:   Courtroom 301<br>         United States Bankruptcy Court<br>         21041 Burbank Blvd.<br>         Woodland Hills, CA 91367 |

3040598

21

On March 21, 2025, at 10:00 a.m., a hearing (the "Hearing") was held before the Honorable Victoria S. Kaufman, United States Bankruptcy Judge for the Central District of California, for the Court to consider the *Motion for Entry of An Order (A) Approving Preliminary Bidding Procedures in Connection With Sale of the Debtors' Assets, (B) Scheduling Hearing to Consider the Sale, And (C) Approving Form and Manner of Notice Thereof* [Doc. No. ___] (the "Motion") filed by filed by Irwin Naturals, a Nevada corporation ("Irwin Nevada"), and its related debtor entities (collectively, the "Debtors").[1]  Appearances were made as noted on the record of the Hearing.

The Court having reviewed the Motion; and it appearing that the Court has jurisdiction over this matter; and it appearing that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and having found that notice of the Motion was adequate and appropriate under the circumstances; and the Court being satisfied, based on the representations made in the Motion and at the hearing on the Motion, that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and any objections to the relief requested in the Motion having been withdrawn or overruled on the merits; having set forth the Court's findings of facts an conclusions of law on the record of the Hearing, and finding good cause appearing therefor,

**IT IS HEREBY ORDERED AS FOLLOWS**:[2]

1.    The Motion is granted as set forth in this Order.

2.    The following dates and deadlines regarding competitive bidding are hereby established (subject to modification if needed):

   a.    **Deadline to Designate Stalking Horse Bidder**:  June 16, 2025, shall be the deadline for the Debtors to designate a stalking horse bidder or acquiror through the chapter 11 plan process or a sale pursuant to 11 U.S.C. § 363 (unless the Committee consents otherwise).

   b.    **Qualified Bid Deadline**: July 25, 2025, at 5:00 p.m. (prevailing Pacific Time), is the deadline by which all binding bids must actually be received

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Motion.

[2] The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed, and vice versa.

3040598

22

pursuant to the Bidding Procedures (the "Qualified Bid Deadline"). Bidders must deliver the necessary bid documents required to participate in the Auction pursuant to the Bidding Procedures to David M. Poitras at dpoitras@bg.law and Susan Seflin at sseflin@bg.law;

c. **Auction**: In the event at least one Qualified Bid (other than the Stalking Horse Bidder) is received, July 28, 2025, commencing at 10:00 a.m. (prevailing Pacific time), is the date and time the Auction will commence at the offices of BG Law LLP, 21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367 (or at any such other location or time as the Debtors may hereafter designate in writing to the Qualified Bidders);

d. **Sale Motion Deadline**: The deadline for the Debtors to file and serve a motion to approve the Sale transaction shall be July 2, 2025.

e. **Sale Objection Deadline**: The deadline to object to the Sale transaction shall be July 16, 2025 (the "Sale Objection Deadline"); and

f. **Sale Hearing**: July 30, 2025, at 1:30 p.m. (prevailing Pacific time), is the date and time of the Sale Hearing before this Court.

g. **Prompt Closing**: August 15, 2025, shall be the deadline for any Sale transaction to close. To implement the sale transactions within the expedited time frame required by the Debtors' circumstances, the Motion requests that if it is granted, the waiver of any stay arising under Bankruptcy Rules 6004(h) and 6006(d), or any similar rules.

3.    The assets to be offered for sale consist of Irwin Nevada as a going concern and including the intellectual property owned by Irwin Nevada through its wholly-owned subsidiary 5310 Holdings, LLC ("5310"). Irwin Nevada's business and the intellectual property owned by 5310 are herein after referred to as the "Business".

4.    The Debtors have and will continue to provide information regarding the Business and the Debtors to potential purchasers.

5.    The following Bidding Procedures shall govern the submission, receipt and analysis of any bids relating to the sale of the Business, and any party desiring to submit a higher or otherwise better offer to purchase the Business shall do so strictly in accordance with the terms of the following Bidding Procedures, and potentially modified by the Debtors, following consultation with the Committee:

a.    In order to be a "Qualified Bid," such bid must: (i) clearly set forth the consideration paid and be accompanied by evidence demonstrating to the Debtors'

satisfaction proof of financial ability to close, (ii) identify the executory contracts and unexpired leases to be assumed and assigned, (iii) be "as is where is" and not conditioned on any contingency, (iv) be accompanied by a deposit equal to $____ million (approximately 15% of the minimum purchase, see below) (the "Good Faith Deposit"), (v) identify the bidder's organization and include evidence of required authorization, and (vi) be in the amount of $_____ (comprised of the minimum bid $_____ plus the minimum overbid of $_____).

b.      The Good Faith Deposit of the successful bidder(s) shall, upon consummation of the successful bid, be credited to the purchase price paid for the Business.  If any successful bidder fails to consummate the successful bid due to such successful bidder's default, then the Good Faith Deposit of such successful bidder shall be forfeited to, and retained irrevocably by, the Debtors, and the Debtors will retain the right to pursue all available remedies.

c.      All Good Faith Deposits are to be held by the Debtors' counsel in its client trust account and dispersed in accordance with this Order.

d.      The Good Faith Deposit of any unsuccessful bidder will be returned within three (3) business days after (i) consummation of the Sale; and (ii) the Auction (except for the back-up bidder(s)'s Good Faith Deposit which shall be applied or returned as specified above).

e.      In the event no Qualified Bid is received by the Debtors' counsel by the Bid Deadline, then Purchaser shall be deemed to be the successful bidder at the hearing on the Sale Motion.

f.      Purchaser shall be the "stalking horse" bidder, with a minimum bid deemed to be in the amount of $_____.

g.      Notwithstanding anything herein to the contrary, the Debtors, after consultation with the Committee, shall have the right to consider bids that do not conform to one or more of the bid requirements provided that such lack of conformity is not material and is not inconsistent with any order of the Bankruptcy Court.

3040598

h.      In any Auction:

    i.   the initial overbid shall be the Breakup Fee plus $250,000;

    ii.  the amount of any subsequent overbids shall be not less than in $250,000 increments;

    iii. each participating bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale;

    iv.  the Debtors, in their discretion and in consultation with the Committee, may approve joint bidding that is openly disclosed to the Debtors; and

    v.   the Auction shall be governed by such other procedures as may be announced by the Debtors, in consultation with the Committee, from time to time on the record at the Auction; provided, that any such other Auction Procedures shall not be inconsistent with any order of the Bankruptcy Court.

i.      In the event the Business is sold to a third party who outbids the Purchaser at Auction for the Business, in a transaction that closes and providing the Purchaser is not in material breach of the asset purchase agreement, then immediately following such closing, and without the need for further order of the Bankruptcy Court, Seller shall pay in immediately available funds from the net proceeds of such closing, by wire transfer to the account specified by Purchaser in writing, a breakup fee equal to 2% of the purchase price plus up to 1% of the purchase price to account for actual third party costs incurred by the Stalking Horse Bidder (the "Breakup Fee").

j.      If an Auction is conducted, and Purchaser is not the successful bidder at the Auction but is the next highest bidder at the Auction, Purchaser may, solely at the Purchaser's discretion and election, serve as a back-up bidder (the "Back-up Bidder") open until the earlier of (i) 5:00 p.m. (prevailing Pacific time) on August 15, 2025 (the "Outside Back-up Date") or (ii) the date of the consummation of a sale of the Business to a Third-Party.  Following the Sale Hearing and prior to the Outside Back-up Date, if the prevailing

3040598

bidder in the Auction fails to consummate the acquisition of the Business as a result of a breach or failure to perform on the part of such prevailing bidder, the Back-up Bidder (as the next highest bidder at the Auction), if an election is made to be the Back-up Bidder, will be deemed to have the new prevailing bid, and Seller will be authorized, without further order of the Bankruptcy Court, to consummate the sale of the Business with the Purchaser as Back-up Bidder.

6.    The Sale Notice, substantially in the form attached as **Exhibit 2** to the Motion, is hereby approved.  The Debtors shall file the Sale Notice with the Court, no later than July 9, 2025, and serve the Sale Notice no later than July 9, 2025.

7.    The Debtors, after consultation with the Committee, reserve the right to implement additional procedural rules, provided that such lack of conformity is not material and is not inconsistent with any order of the Court.

8.    The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

9.    This Order shall be immediately effective and enforceable upon entry hereof.

10.    The Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from, based upon or related to this Order.

**IT IS SO ORDERED.**

# # #

3040598

26

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367.**

A true and correct copy of the document(s) entitled: **DEBTORS' NOTICE OF AND MOTION FOR ENTRY OF AN ORDER (A) APPROVING PRELIMINARY BIDDING PROCEDURES IN CONNECTION WITH SALE OF THE DEBTORS' ASSETS, (B) SCHEDULING HEARING TO CONSIDER THE SALE, AND (C) APPROVING FORM AND MANNER OF NOTICE THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the document(s) were served by the court via NEF and hyperlink to the document.  On **March 14, 2025,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Kyra E Andrassy**    kandrassy@raineslaw.com, bclark@raineslaw.com;jfisher@raineslaw.com
- **Jessica L Bagdanov**    jbagdanov@bg.law, ecf@bg.law
- **Ryan W Beall**    rbeall@go2.law, kadele@go2.law;dfitzgerald@go2.law;rbeall@ecf.courtdrive.com;cmeeker@go2.law
- **Matthew Bouslog**    mbouslog@allenmatkins.com, ncampos@allenmatkins.com
- **Katherine Bunker**    kate.bunker@usdoj.gov
- **Erin R. Fay**    efay@wsgr.com, lmcgee@wsgr.com
- **Jeffrey I Golden**    jgolden@go2.law, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b117954@notify.bestcase.com
- **Alexandria Lattner**    alattner@sheppardmullin.com, ehwalters@sheppardmullin.com
- **Matthew A Macdonald**    matthew.macdonald@wsgr.com
- **Sina Maghsoudi**    sinalegal@gmail.com, g8645@notify.cincompass.com;maghsoudi.sinab128731@notify.bestcase.com
- **David W. Meadows**    david@davidwmeadowslaw.com
- **Douglas A Plazak**    dplazak@rhlaw.com
- **David M Poitras**    dpoitras@bg.law
- **Terrel Ross**    tross@trcmllc.com
- **Susan K Seflin**    sseflin@bg.law
- **Jonathan Seligmann Shenson**    jshenson@greenbergglusker.com, calendar@greenbergglusker.com;cmillerwatkins@greenbergglusker.com
- **Yuriko M Shikai**    yshikai@neufeldmarks.com
- **Ashley M Teesdale**    ateesdale@bg.law, ecf@bg.law
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov
- **Ronghua Sophia Wang**    sophia.wang@afslaw.com, yvonne.li@afslaw.com
- **Pamela Kohlman Webster**    pwebster@buchalter.com, smartin@buchalter.com
- **Jessica Wellington**    jwellington@bg.law, ecf@bg.law

☐    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **March 14, 2025,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Victoria S. Kaufman
United States Bankruptcy Court
Central District of California
21041 Burbank Boulevard, Suite 354 / Courtroom 301
Woodland Hills, CA 91367

☐    Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **_____, 2025,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 14, 2025 | JESSICA STUDLEY | /s/ Jessica Studley |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**