DAVID M. POITRAS – Bar No. 141309
SUSAN K. SEFLIN - Bar No. 213865
ASHLEY M. TEESDALE - Bar No. 289919
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:  (818) 827-9099
Email:    dpoitras@bg.law
          sseflin@bg.law
          ateesdale@bg.law

Attorneys for Chapter 11 Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>Irwin Naturals *et al.*,<br><br>Debtors and Debtors<br>in Possession. | Case No. 1:24-bk-11323-VK<br><br>Chapter 11<br><br>Jointly Administered With: Case Nos. 1:24-bk-11324-VK; 1:24-bk-11325-VK; 1:24-bk-11326-VK |

☐  Affects Irwin Naturals

☐  Affects Irwin Naturals Inc.

☐  Affects 5310 Holdings, LLC

☐  Affects DAI US HoldCo Inc.

☒  Affects All Debtors

**DEBTORS' SECOND OMNIBUS OBJECTION TO CLAIMS INCONSISTENT WITH DEBTORS' BOOKS AND RECORDS; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF JOSEPH AXELROD**

Claims Subject to Objection:
1.  Reskin CPAs PSC, Claim 14
2.  Reskin CPAs PSC, Claim 15
3.  Gordon Investigative Group LLC, Claim 16
4.  JP Orlando LLC, Claim 19
5.  Dennis Diaz, Claim 44
6.  Mike Tomas, Claim 45
7.  Raul Cruz, Claim 46
8.  Marcus Kelley, Claim 51
9.  AmerisourceBergen Drug Corporation., Claim 53

**[If you received this Objection by mail, then this Objection affects you and you should read this pleading in its entirety.]**

**Hearing:**
Date:     August 13, 2025
Time:     1:30 p.m.
Place:    Courtroom 301-U.S. Bankruptcy Court
          21041 Burbank Blvd.
          Woodland Hills, CA 91367

**TO THE HONORABLE VICTORIA S. KAUFMAN, UNITED STATES BANKRUPTCY JUDGE, MIGUEL TOMAS, RAUL CRUZ, DENNIS DIAZ, AND OTHER INTERESTED PARTIES:**

Irwin Naturals, a Nevada corporation ("Irwin Nevada"), Irwin Naturals, Inc, a British Columbia Corporation ("Irwin Canada"),  and their related debtor entities (collectively, the "Debtors"), hereby file their second omnibus objection ("Omnibus Objection") pursuant to Section[1] 502, Bankruptcy Rule 3007, and Local Bankruptcy Rule 3007-1, for entry of an order disallowing the following proofs of claim (collectively, the "Claims"):

| Claimant | Claim No. | Claim Amount |
|---|---|---|
| Reskin CPAs PSC | 14 | $35,000.00 |
| Reskin CPAs PSC | 15 | $32,000.00 |
| Gordon Investigative Group LLC | 16 | $55,000.00 |
| JP Orlando LLC | 19 | $ 1,140.62 |
| Dennis Diaz | 44 | $7,500 |
| Mike Tomas | 45 | $7,500 |
| Raul Cruz | 46 | $7,500 |
| Marcus Kelley | 51 | $14,375.00 |
| AmeriSource Bergen Drug Corp. | 53 | $105,373.52 |

This Motion is based on the grounds that: (1) the Claims are asserted against the wrong entities as the Debtors' books and records reflect that the Claims are owed by non-debtor entity Irwin Naturals Emergence, Inc. ("Irwin Emergence"), and not by any of the Debtors; and (2) the Claims are not supported by sufficient documentation to demonstrate a claim against any of the Debtors, so they are not entitled to *prima facie* validity.  Accordingly, an omnibus objection is appropriate pursuant to Bankruptcy Rule 3007(d)(2)(B).

This Motion is based upon the attached Memorandum of Points and Authorities and the Declaration of Joseph Axelrod, as well as all of the pleadings, papers, and exhibits filed in support of the Motion, and such other and further evidence as may be provided at any hearing on the Motion.

---

[1] References to "Section" refer to the Bankruptcy Code (11 U.S.C. §§ 101 et seq.); references to "Bankruptcy Rule" refer to the Federal Rules of Bankruptcy Procedure; and references to "Local Rule" refer to the Local Bankruptcy Rules.

3062206

**WHEREFORE**, the Debtors respectfully request that the Court enter an order:

1.      Granting the Motion and disallowing each Claim in its entirety;

2.      Providing that each Claim shall be expunged from the official claims register in the Debtors' bankruptcy cases;

3.      Providing that, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, made applicable in contested matters through Bankruptcy Rules 7054 and 9014, the Court's ruling on the Motion shall be treated as a final judgment with respect to the Claimant and its Claim subject to such ruling, and determining that there is no just reason for delay in entry of a final judgment on the Claim resolved herein; and

4.      Granting such other and further relief as the Court deems just and proper.

DATED:  July 10, 2025                              BG Law LLP


                                                  By:   /s/ Susan K. Seflin_____
                                                      David M. Poitras
                                                      Susan K. Seflin
                                                      Ashley M. Teesdale
                                                  Attorneys for Chapter 11 Debtors and
                                                  Debtors in Possession

3062206

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   JURISDICTION AND VENUE

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for the relief sought herein is Section 502 of the Bankruptcy Code.

### II.  STATEMENT OF FACTS

#### A.     General Case Background

On August 9, 2024, the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  On August 14, 2024, the Court entered an order authorizing the joint administration of the Debtors' cases.  The Debtors continue to operate their business and manage their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

#### B.     Circumstances Leading to the Bankruptcy Filing

The Debtors operate a nutraceutical business that has operated successfully for most of its history since its inception in 1994.  Irwin Nevada formulates, markets, and distributes vitamins and supplements. In addition to its Irwin Naturals® supplement brand, Irwin Nevada also has two other supplement brands, Nature's Secret® and Applied Nutrition®. Irwin Nevada's product line currently includes over 130 formulas, which are distributed in more than 100,000 retail locations, including health food stores such as Whole Foods and mass-market retailers such as Costco, Walmart, and CVS. The Debtors' 2023 gross sales were $91 million.

For almost three decades, Irwin Nevada enjoyed financial stability and profitability from its long-trusted dietary supplement brands.[2]  In or around 2020, Irwin Nevada sought to expand its footprint and, as set forth more fully in the Declaration of Klee Irwin filed in support of the Debtors' first day emergency motions [Doc. No. 22], the Debtors had financial difficulties arising out of that attempted expansion.  The Debtors ultimately filed their respective bankruptcy cases after their

---

[2] On an adjusted EBITDA basis, when accounting for extraordinary expenses.

3062206

secured lender, East West Bank ("EWB"), exerted control over their business and bank accounts.  At

the time these cases were filed, EWB was sweeping the Debtors' bank accounts daily (which left the

Debtors with no liquidity other than what EWB determined was necessary to pay), and the Debtors

were unable to retain bankruptcy counsel pre-petition as they were unable to fund a retainer due to

EWB's control.

Additional information detailing the Debtors' operations and the circumstances leading to the

commencement of their chapter 11 cases case are described in greater detail in the First Day

Declaration, which is fully incorporated into this Motion by this reference [Doc. No. 22].

**C.     The Claims and Shareholder Interests Held by the Claimants**

The bar date for filing proofs of claim in these cases was December 20, 2024 [Doc. No. 199],

except for governmental units which had until February 5, 2025, to file their proofs of claim [Doc.

No. 200].  The Claims at issue in this Objection are as follows:

| Claimant | Claim No. | Claim Amount |
|---|---|---|
| Reskin CPAs PSC | 14 | $35,000.00 |
| Reskin CPAs PSC | 15 | $32,000.00 |
| Gordon Investigative Group LLC | 16 | $55,000.00 |
| JP Orlando LLC | 19 | $ 1,140.62 |
| Dennis Diaz | 44 | $7,500 |
| Mike Tomas | 45 | $7,500 |
| Raul Cruz | 46 | $7,500 |
| Marcus Kelley | 51 | $14,375.00 |
| AmeriSource Bergen Drug Corp. | 53 | $105,373.52 |

Each of the aforementioned Claims are claims that are wrongly asserted against the Debtors.

The Debtors' books and records reflect that no amount of money is owed by any of the Debtors to

any of the Claimants. The Claims appear to be claims owed by a non-debtor affiliate, Irwin Naturals

Emergence, Inc. ("Irwin Emergence"). Therefore, none of the Claims obtain documentation

sufficient to demonstrate a claim against any of the Debtors.

**III.     RELIEF REQUESTED**

Each of the Claims asserts a claim against Debtors Irwin Nevada and/or Irwin Canada.

However, the Debtors' books and records reflect that the amounts asserted in the Claims are owed

2

3062206

by non-debtor entity Irwin Emergence, and none of the Debtors are obligors on the claim. Without additional evidence from the Claimants demonstrating a basis for payment from the Debtors, these Claims do not contain sufficient information to be entitled prima facie validity.

Accordingly, the Debtor seeks entry of an order, pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3007 disallowing the Claims in their entirety.

## IV.    ARGUMENT

### A.    <u>Legal Standard</u>

Bankruptcy Rule 3001(f) provides that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." It is well established in the Ninth Circuit that the initial burden of persuasion for establishing the validity and amount of a proof of claim is upon the claimant. *Ashford v. Consolidated Pioneer Mortgage* (*In re Consolidated Pioneer Mortgage*), 178 B.R. 222 (9th Cir. BAP 1995), *aff'd*, 91 F.3d 151 (9th Cir. 1996) (a proof of claim must have a writing attached and include supporting documentation to qualify for presumptive validity). However, the prima facie validity of a claim does not attach unless the claim sets forth the facts necessary to support the claim. *Id.* at 226.

Section 502 authorizes a "party in interest," such as the Debtor, to object to claims. 11 U.S.C. § 502(a). Once the objector raises "facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves," then the burden reverts to the claimant to prove the validity of the claim by a preponderance of evidence. *Wright v. Holm (In re Holm),* 931 F.2d 620, 623 (9th Cir. 1991); *In re Consolidated Pioneer Mortgage*, 178 B.R. at 226. Indeed, the ultimate burden of persuasion is always on the claimant. *In re Holm*, 931 F.2d at 623; *see also In re Heath*, 331 B.R. 424 (9th Cir. BAP 2005) (explaining that a claim that fails to attach supporting documentation is not entitled to be considered as prima facie evidence of validity and amount of claim).

"If the creditor does not provide information or is unable to support its claim, then that in itself may raise an evidentiary basis to object to the unsupported aspects of the claim, or even a basis for evidentiary sanctions, thereby coming within Section 502(b)'s grounds to disallow the claim." *In re Heath*, 331 B.R. 424, 437 (B.A.P. 9th Cir. 2005).

3062206

Section 502(b)(1) requires disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured. . ."  11 U.S.C. § 502(b)(1).  The "applicable law" referenced in Section 502(b)(1) includes bankruptcy law as well as other federal and state laws.  *See Cavaliere v. Sapir*, 208 B.R. 784, 786-787 (D. Conn. 1997) (providing that "applicable law" includes bankruptcy law).   A debtor is therefore allowed to raise any federal or state law defenses to a claim.  *See In re G.I. Industries, Inc.*, 204 F.3d 1276, 1281 (9th Cir. 2000) (stating that a claim cannot be allowed under Section 502(b)(1) if it is unenforceable under nonbankruptcy law); *Johnson v. Righetti*, 756 F.2d 738, 741 (9th Cir. 1985) (finding that the validity of the claim may be determined under state law); *In re Eastview Estates II*, 713 F.2d 443, 447 (9th Cir. 1983) (applying California law).

**B.      The Claims Should be Disallowed**

First, the Debtors' books and records indicate that each of the Claims is owed by Irwin Emergence or a subsidiary of Irwin Emergence and is not an obligation owed by any of the Debtors.

Second, the Claims are not entitled to prima facie validity because the Claims do not contain sufficient evidence to establish that the Claimants are owed any amount by the Debtors. Some of the Claims include documents that reference Irwin Emergence or other non-debtor parties. The burden of persuasion for establishing the validity and amount of a Claim is on the Claimant, and the Claimants have failed to meet their burden.  Consequently, the Court should sustain the Omnibus Objection.

**V.      RESERVATION OF RIGHTS**

The Debtors specifically reserve the right to amend this Omnibus Objection, file additional papers in support of this Omnibus Objection or take other appropriate actions, including, *inter alia,* to: (a) respond to any allegation or defense that may be raised in a response filed by or on behalf of any of the Claimants or other interested parties; (b) object further to any Claim for which a Claimant provides (or attempts to provide) additional documentation or substantiation; and (c) object further to any of the Claims addressed herein based on additional information that may be discovered upon further review by the Debtors or through discovery pursuant to the Bankruptcy Rules.

3062206

## VI.    SEPARATE CONTESTED MATTERS

Each of the Claims and the Debtors' objections thereto constitute a separate contested matter as contemplated by Bankruptcy Rules 3007 and 9014 and Local Rule 3007.  The Debtors request that any order entered by the Court with respect to a particular Claim objected to in this Omnibus Objection be deemed a separate order with respect to each Claim in accordance with Bankruptcy Rule 3007(1).

## VII.    NOTICE

The Debtors will serve copies of this Omnibus Objection upon each of the Claimants identified in the chart contained herein at the addresses listed on the disputed Claims, as filed.

## VIII.    CONCLUSION

Wherefore, the Debtors respectfully request that the Court enter an order:

1.    Granting the Motion and disallowing each Claim in its entirety;

2.    Providing that each Claim shall be expunged from the official claims register in the Debtors' bankruptcy cases;

3.    Providing that, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, made applicable in contested matters through Bankruptcy Rules 7054 and 9014, the Court's ruling on the Motion shall be treated as a final judgment with respect to the Claimant and its Claim subject to such ruling, and determining that there is no just reason for delay in entry of a final judgment on the Claim resolved herein; and

4.    Granting such other and further relief as the Court deems just and proper.

DATED:  July 10, 2025                     BG Law LLP


                                          By:   /s/ Susan K. Seflin_____
                                              Susan K. Seflin
                                              Attorneys for Chapter 11 Debtors and
                                              Debtors in Possession

3062206

# **DECLARATION OF JOSEPH AXELROD**

I, Joseph Axelrod, declare:

1.      I am an attorney duly licensed to practice in the State of California. I serve as general counsel for the Debtors and am authorized to make this declaration on behalf of the Debtors. I have personal knowledge of the facts contained in this declaration and if called as a witness, would and could competently thereto under oath.

2.      I make this declaration in support of the Omnibus Objection to which it is appended. All initial capitalized terms used but not defined herein have the same meanings ascribed to them in the Omnibus Objection.  I have read the Omnibus Objection carefully and agree with the facts set forth therein.

3.      True and correct copies of the Claims that were downloaded from the Court's Claims Register are attached hereto as follows (each reference to a claim number is to the claim number on the Court's Claims register, and the exhibit number for each referenced claim is the same as the claim number):

| Claimant | Claim No. | Claim Amount |
|---|---|---|
| Reskin CPAs PSC | 14 | $35,000.00 |
| Reskin CPAs PSC | 15 | $32,000.00 |
| Gordon Investigative Group LLC | 16 | $55,000.00 |
| JP Orlando LLC | 19 | $ 1,140.62 |
| Dennis Diaz | 44 | $7,500 |
| Mike Tomas | 45 | $7,500 |
| Raul Cruz | 46 | $7,500 |
| Marcus Kelley | 51 | $14,375.00 |
| AmeriSource Bergen Drug Corp. | 53 | $105,373.52 |

4.      Based on my review of the Debtors' books and records, each of these Claims is owed by non-debtor entity Irwin Emergence and none of the Debtors are obligated on these debts. I also note that the Debtors believe that Reskin CPAs PSC and Gordon Investigative Group LLC have no

/ / /

/ / /

/ / /

3062206

basis to assert any claims against Irwin Emergence (let alone any of the Debtors).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 10th day of July 2025, at Los Angeles, California.

_____
Joseph Axelrod

# EXHIBIT 14

<table>
<tr><td colspan="2">

**Fill in this information to identify the case:**

</td></tr>
</table>

| | |
|---|---|
| Debtor 1 | Irwin Naturals |
| Debtor 2 | Irwin Naturals Inc |
| (Spouse, if filing) | |
| United States Bankruptcy Court | **Central District of California** |
| Case number: | **24-11323** |

**FILED**

**U.S. Bankruptcy Court**
**Central District of California**

10/19/2024

Kathleen J. Campbell, Clerk

## Official Form 410
## Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

| | |
|---|---|
| **1. Who is the current creditor?** | Reskin CPAs PSC |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |
| **2. Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Reskin CPAs PSC | |
| Name | Name |
| 3046 Breckenridge Lane Suite 203<br>Louisville, KY 40220 | |
| Contact phone ___502-472-4294___ | Contact phone _____ |
| Contact email ___eric@apexstrategic.cpa___ | Contact email _____ |
| Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |

| | |
|---|---|
| **4. Does this claim amend one already filed?** | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____<br>MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| 7. **How much is the claim?** | $ 35000.00    **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>consulting and bookkeeping and accounting services provided |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>    **Nature of property:**<br>    ☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.<br>    ☐ Motor vehicle<br>    ☐ Other. Describe: _____<br><br>    **Basis for perfection:** _____<br>    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>    **Value of property:** $ _____<br>    **Amount of the claim that is secured:** $ _____<br>    **Amount of the claim that is unsecured:** $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>    **Amount necessary to cure any default as of the date of the petition:** $ _____<br><br>    **Annual Interest Rate** (when case was filed) _____ %<br>    ☐ Fixed<br>    ☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410    Proof of Claim    page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | | | |
|---|---|---|---|---|
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No ☐ Yes. *Check all that apply:* | | **Amount entitled to priority** |

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$ _____

☐ Up to $3,350 * of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$ _____

☐ Wages, salaries, or commissions (up to $15,150 *) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies

$ _____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    10/19/2024

MM / DD / YYYY

/s/ Eric S. Reskin

Signature

Print the name of the person who is completing and signing this claim:

Name        Eric S. Reskin

Title        First name    Middle name    Last name
             president

Company      Reskin CPAs PSC

Address      Identify the corporate servicer as the company if the authorized agent is a servicer
             3046 Breckenridge Lane Suite 203

             Number  Street
             Louisville, KY 40220

             City  State  ZIP Code

Contact phone    502-472-4294        Email    eric@apexstrategic.cpa

# EXHIBIT 15

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Irwin Naturals |
| Debtor 2 | Irwin Naturals Inc |
| (Spouse, if filing) | |
| United States Bankruptcy Court | **Central District of California** |
| Case number: | **24-11323** |

FILED

**U.S. Bankruptcy Court**
**Central District of California**

10/19/2024

Kathleen J. Campbell, Clerk

## Official Form 410
## Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

### Part 1: Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | Reskin CPAs PSC |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |
| **2. Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? |
| **3. Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br>Reskin CPAs PSC<br><br>Name<br><br>3046 Breckenridge Lane Suite 203<br>Louisville, KY 40220<br><br>Contact phone ___502-472-4294___<br><br>Contact email ___eric@apexstrategic.cpa___<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one): | **Where should payments to the creditor be sent?** (if different)<br><br>Name<br><br><br>Contact phone _____<br><br>Contact email _____ |
| **4. Does this claim amend one already filed?** | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____  Filed on _____<br>MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? |

Official Form 410                          Proof of Claim                          page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| 6. | **Do you have any number you use to identify the debtor?** | ☒ No |
|---|---|---|
| | | ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| 7. | **How much is the claim?** | $ 32000.00 | **Does this amount include interest or other charges?** |
|---|---|---|---|
| | | | ☒ No |
| | | | ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

funds advanced for employees hired on behalf of Debtor for services

**9. Is all or part of the claim secured?**

☒ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____

**Amount of the claim that is secured:** $ _____

**Amount of the claim that is unsecured:** $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed
☐ Variable

| 10. | **Is this claim based on a lease?** | ☒ No |
|---|---|---|
| | | ☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| 11. | **Is this claim subject to a right of setoff?** | ☒ No |
|---|---|---|
| | | ☐ Yes. Identify the property: _____ |

Official Form 410    Proof of Claim    page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | Amount entitled to priority |
|---|---|---|---|---|
| | | ☐ Yes. *Check all that apply:* | | |
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ _____ |
| | | ☐ Up to $3,350 * of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ _____ |
| | | ☐ Wages, salaries, or commissions (up to $15,150 *) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ _____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ _____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ _____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies | | $ _____ |
| | | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    10/19/2024

     MM / DD / YYYY

/s/ Eric S. Reskin

Signature

Print the name of the person who is completing and signing this claim:

Name    Eric S. Reskin

Title    First name    Middle name    Last name

     president

Company    Reskin CPAs PSC

     Identify the corporate servicer as the company if the authorized agent is a servicer

Address    3046 Breckenridge Lane Suite 203

     Number   Street

     Louisville, KY 40220

     City   State   ZIP Code

Contact phone    502–472–4294    Email   eric@apexstrategic.cpa

---

Official Form 410        Proof of Claim        page 3

EXHIBIT 16

<table>
<tr><td colspan="2">

**Fill in this information to identify the case:**

</td></tr>
</table>

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1   Irwin Naturals | |
| Debtor 2   Irwin Naturals Inc | |
| (Spouse, if filing) | |
| United States Bankruptcy Court   **Central District of California** | |
| Case number:   **24-11323** | |

FILED

**U.S. Bankruptcy Court
Central District of California**

10/19/2024

**Kathleen J. Campbell, Clerk**

## Official Form 410
## Proof of Claim

04/22

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense.** Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

### Part 1:   Identify the Claim

| 1. **Who is the current creditor?** | Gordon Investigative Group LLC |
|---|---|
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor    Gordon Office Properties, LLC |

| 2. **Has this claim been acquired from someone else?** | ☑ No |
|---|---|
| | ☐ Yes. From whom? |

| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|---|
| | Gordon Investigative Group LLC | |
| | Name | Name |
| | 1795 Alysheba Way Suite 3202<br>Lexington, KY 40509 | |
| | Contact phone       305-898-1082 | Contact phone |
| | Contact email<br> mgordon@gordoninvestigativegroup.com | Contact email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |

| 4. **Does this claim amend one already filed?** | ☑ No |   |
|---|---|---|
| | ☐ Yes. Claim number on court claims registry (if known) | Filed on |
| | | MM / DD / YYYY |

| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No |
|---|---|
| | ☐ Yes. Who made the earlier filing? |

Official Form 410                                    Proof of Claim                                    page 1

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

| | | |
|---|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ | |

| | | |
|---|---|---|
| 7. **How much is the claim?** | $ 55000.00 | **Does this amount include interest or other charges?** ☑ No ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

reimburse for paid wages and office expenses for operations center in KY

9. **Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

   **Nature of property:**
   ☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410−A) with this *Proof of Claim.*
   ☐ Motor vehicle
   ☐ Other. Describe:
   _____

   **Basis for perfection:**
   _____

   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   **Value of property:** $ _____

   **Amount of the claim that is secured:** $ _____

   **Amount of the claim that is unsecured:** $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

   **Amount necessary to cure any default as of the date of the petition:** $ _____

   **Annual Interest Rate** (when case was filed) _____ %
   ☐ Fixed
   ☐ Variable

10. **Is this claim based on a lease?**
☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

11. **Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

Official Form 410                    Proof of Claim                    page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
| | | ☐ Yes. *Check all that apply:* | | Amount entitled to priority |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $ _____

☐ Up to $3,350 * of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $ _____

☐ Wages, salaries, or commissions (up to $15,150 *) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies  $ _____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   10/19/2024

MM / DD / YYYY

/s/ Matthew Gordon

Signature

Print the name of the person who is completing and signing this claim:

Name   Matthew Gordon

First name   Middle name   Last name

Title   owner, manager

Company   Gordon Investigative Group LLC

Identify the corporate servicer as the company if the authorized agent is a servicer

Address   1795 Alysheba Way Suite 3202

Number  Street
Lexington, KY 40509

City  State  ZIP Code

Contact phone   305-898-1082   Email   mgordon@gordoninvestigativegroup.com

Official Form 410   Proof of Claim   page 3

# EXHIBIT 19

| Fill in this information to identify the case: | | **FILED** |
| --- | --- | --- |
| Debtor 1  Irwin Naturals | | **U.S. Bankruptcy Court** |
| Debtor 2  Irwin Naturals Inc | | **Central District of California** |
| (Spouse, if filing) | | 11/12/2024 |
| United States Bankruptcy Court  **Central District of California** | | |
| Case number:  **24-11323** | | Kathleen J. Campbell, Clerk |

## Official Form 410
## Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

### Part 1:  Identify the Claim

| | |
| --- | --- |
| **1. Who is the current creditor?** | JP Orlando LLC |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |
| **2. Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? |
| **3. Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| | JP Orlando LLC | |
| | Name | Name |
| | 4403 Vineland Road<br>Suite B9<br>Orlando, FL 32811 | |
| | Contact phone ___407-600-4470___ | Contact phone ___ |
| | Contact email<br>___ingrid.montgomery@jan-pro.com___ | Contact email ___ |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| **4. Does this claim amend one already filed?** | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) ___ | Filed on ___<br>MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? ___ | |

| Official Form 410 | Proof of Claim | page 1 |
| --- | --- | --- |

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7. How much is the claim?**

$ _____1140.62_____

**Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Janitorial services rendered and balance of contract for non-payment

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe:

**Basis for perfection:**

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $

**Amount of the claim that is secured:** $

**Amount of the claim that is unsecured:** $    (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $

**Annual Interest Rate** (when case was filed)    ____ %
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

Official Form 410    Proof of Claim    page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☐ No<br>☒ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|---|

| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
|---|---|---|
| | ☐ Up to $3,350 * of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☒ Wages, salaries, or commissions (up to $15,150 *) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ 877.40 |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ _____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    11/12/2024
                    _____
                    MM / DD / YYYY

/s/  Ingrid Montgomery
_____
Signature

Print the name of the person who is completing and signing this claim:

Name        Ingrid Montgomery
            _____
            First name    Middle name    Last name

Title       Accounts Receivable

Company     JP Orlando LLC
            _____
            Identify the corporate servicer as the company if the authorized agent is a servicer

Address     4403 Vineland Road, Suite B9
            _____
            Number    Street
            Orlando, FL 32811
            _____
            City   State   ZIP Code

Contact phone   407–600–4470          Email    ingrid.montgomery@jan–pro.com

Official Form 410                    Proof of Claim                    page 3

## JANITORIAL SERVICE AGREEMENT

1. This Agreement is made with Ketamine Health Centers ("CLIENT"), for the purposes of outlining the general terms and conditions under which the <u>Jan-Pro Cleaning & Disinfecting</u> business ("SERVICE PROVIDER") will provide services to CLIENT at the location identified in Exhibit A of this Agreement. SERVICE PROVIDER is the certified franchise business owner authorized to provide services under the Jan-Pro Cleaning & Disinfecting Brand identified by the Service Coordinator. SERVICE PROVIDER has contracted with Service Coordinator to provide certain administrative and support services, including invoicing and collection for services provided by SERVICE PROVIDER, and other account coordination services.

2. <u>Services</u>. SERVICE PROVIDER will provide the recurring services requested by CLIENT per the cleaning schedule and at the frequencies requested by CLIENT as set forth in Exhibit A. SERVICE PROVIDER may provide additional services on a per occurrence basis upon CLIENT request at rates set forth in this Agreement or otherwise negotiated.

3. <u>Supplies</u>. SERVICE PROVIDER will provide all tools and equipment, as well as all chemicals, cleaning supplies and labor to perform the services requested by CLIENT. SERVICE PROVIDER will supervise its own personnel and follow the reasonable and lawful cleaning requirements of CLIENT for any specific matters that need to be addressed at the cleaning site. CLIENT will provide all kitchen and/or restroom paper products, hand soap, trash can liners, and other consumables.

4. <u>Payment Terms</u>. Client will be invoiced at the beginning of each month for the recurring janitorial services, with payment terms at net 30 days. All additional services are invoiced as incurred, with payment terms at net 15 days. A finance charge of 1.5% per month (minimum $15.00) will be assessed on all delinquent accounts over 60 days. SERVICE PROVIDER hereby directs that CLIENT pay invoices for services delivered by SERVICE PROVIDER to Service Coordinator.

5. <u>Term of Agreement</u>. This Agreement begins on the first date of service specified in Exhibit A and continues for a period of one year. This Agreement automatically renews for a period of one year at the end of the then current term, unless either party gives written notice of non-renewal at least 30 days before the expiration date.

6. <u>Service Excellence</u>. Service Provider has contracted with Service Coordinator to facilitate communication of service-related issues to Service Provider and Service Coordinator also monitors service related issues for the purpose of ensuring protection of the Jan-Pro Cleaning & Disinfecting brand and adherence to brand standards for use of the brand.

7. <u>Termination and Transfer of Services.</u> This Agreement may be terminated by CLIENT for non-performance of services only. CLIENT must provide written notice specifying in detail the nature of any non-performance. SERVICE PROVIDER will have 5 working days to cure a specific issue. If SERVICE PROVIDER is unable to cure, CLIENT may request in writing to Service Coordinator (with a copy to SERVICE PROVIDER) that the Service Coordinator find a replacement SERVICE PROVIDER. Service Coordinator will work with the Service Provider and Client to transfer the account to a new Service Provider. If despite these efforts, CLIENT elects to terminate for non-performance, CLIENT will notify the SERVICE PROVIDER and the Service Coordinator in writing and this Agreement will terminate 30 days after the date of the notice.

8. <u>Solicitation</u>. **CLIENT** agrees that during the term of this Agreement and for 90 days after the termination of this Agreement, Client will not solicit for services or employment (whether directly or indirectly) any Service Provider owner or employee of Service Provider who provided services to Client hereunder or any employee of Service Coordinator, unless services are provided under the Jan-Pro Cleaning & Disinfecting brand.

9. <u>Payment Default</u>. If **CLIENT** fails to make payment under this Agreement, the Service Coordinator will provide written notice of delinquency to **CLIENT**, and **CLIENT** shall have 10 days from the date of such notice to remit all outstanding balances, after which time, the **SERVICE PROVIDER** may suspend or terminate services for non-payment without further notice. Suspension or termination on such grounds shall not relieve **CLIENT** of its obligation to pay for services rendered up to and including the date of suspension or termination. If **CLIENT** breaches this Agreement by non-payment, **CLIENT** shall be responsible for reimbursing **SERVICE PROVIDER** for all costs of enforcing **CLIENT's** obligations hereunder, including without limitation, lost profits and/or revenues, costs and expenses of collection, reasonable attorney fees, paralegal fees, and collection agency fees, if any. **SERVICE PROVIDER** may contract with Service Coordinator to provide collection services, the fees for which **CLIENT** will be responsible for as set forth above.

10. <u>Holidays</u>.  **CLIENT** agrees that no janitorial services will be provided by **SERVICE PROVIDER** on certain federally recognized holidays: New Year's Day,  Memorial Day, Fourth of July, Labor Day, Thanksgiving, and Christmas; *provided  however*, that if **CLIENT** requests **SERVICE PROVIDER** to provide services on such  holidays, **SERVICE PROVIDER** has the sole  discretion as to whether **SERVICE PROVIDER**  and/or its employees will provide services on such holidays or an alternate day,  without any claim of breach hereunder if **SERVICE  PROVIDER** declines.  **SERVICE PROVIDER** may  require an additional fee to provide services on such holidays.

11. <u>Insurance</u>.  **CLIENT'S** insurance requirements shall  be satisfied by way of **SERVICE PROVIDER**  maintaining commercial general liability insurance of $1,000,000 per occurrence, $2,000,000 in the  aggregate, workers' compensation insurance of $1,000,000, and janitorial bonding of $50,000.

12. <u>Limitation of  Damages</u>.  In  no event shall either party, or its directors, employees, partners, agents,  suppliers, franchisor or affiliates, be liable for any indirect, incidental,  special, consequential or punitive damages, including without limitation, loss  of profits, data, use, goodwill, or other intangible losses, resulting from the  services provided by Service Provider or the conduct of Service Provider.  IN NO EVENT SHALL THE AGGREGATE LIABILITY OF  SERVICE PROVIDER, ARISING OUT OF OR RELATING TO THE CLIENT"S RECEIPT OF THE  SERVICES TO BE PROVIDED HEREIN EXCEED ANY COMPENSATION CLIENT PAID TO SERVICE  PROVIDER (OR ITS DESIGNEE – INCLUDING SERVICE COORDINATOR) FOR PROVIDING THE  SERVICES DESCRIBED HEREIN DURING THE 12 MONTHS PRECEDING  THE EVENT GIVING RISE TO A CLAIM.

13. <u>Choice of Law</u>. **CLIENT**  and **SERVICE PROVIDER** mutually agree  that this Agreement shall be interpreted under the laws of the State of  Florida, and that any civil action regarding this Agreement (be it filed by **CLIENT** or **SERVICE PROVIDER**) shall only be  filed in the District or Circuit Courts of Orange County, Florida.

14. <u>Entire Agreement</u>. **SERVICE PROVIDER** and **CLIENT** agree that  this Agreement constitutes the full, complete, and entire understanding and  agreement among them concerning their obligations and related matters discussed  herein, and supersedes any and all prior negotiations, understandings or  agreements.  Except as otherwise  specifically provided herein, any and all prior understandings and agreements  between **SERVICE PROVIDER** and **CLIENT**,  with respect to the subject matter of this Agreement, are merged into this  Agreement.

**CLIENT** and **SERVICE PROVIDER** agree to  the terms of this Janitorial Service Agreement.

Ketamine Health Centers

Signed: _____

Print: _____

Title: _____

Date: _____

Jan-Pro of Central Florida

Signed: _____

Print: _____

Title: _____

Date: _____

Re: New Invoice Delivery Instructions

Linda Sullivan-Hebert <lhebert@ketaminehealthcenters.com>
Mon 11/13/2023 3:09 PM
To:Ingrid Montgomery <ingrid.montgomery@jan-pro.com>

Actually, Please send it to me because I want to forward while including our new supervisors--
TY!! So sorry!! ;((

On Mon, Nov 13, 2023 at 2:55 PM Ingrid Montgomery <ingrid.montgomery@jan-pro.com> wrote:

Thank you for the update.

Should I reach out to those two emails directly regarding suspension?

---

**From:** Linda Sullivan-Hebert <lhebert@ketaminehealthcenters.com>
**Sent:** Monday, November 13, 2023 2:53 PM
**To:** Ingrid Montgomery <ingrid.montgomery@jan-pro.com>
**Subject:** Re: New Invoice Delivery Instructions

Yes, Ingrid. I just found out that Eric is no longer with the company.
Please continue to send you invoices to:
ap-emergence@irwinnaturals.com
and PLS CC:
Sergio@irwinnaturals.com

On Mon, Nov 13, 2023 at 2:10 PM Ingrid Montgomery <ingrid.montgomery@jan-pro.com> wrote:

Good Afternoon Linda,

The AP email address provided below is not a working email address.

Could you please provide me with that?

The account has two outstanding invoices which is causing flags for suspension.

I look forward to hearing from you.

Ingrid Montgomery
Accounting
Direct:407-600-4470

---

**From:** Linda Sullivan-Hebert <lhebert@ketaminehealthcenters.com>
**Sent:** Wednesday, November 8, 2023 2:21 PM
**To:** Ingrid Montgomery <ingrid.montgomery@jan-pro.com>
**Subject:** New Invoice Delivery Instructions

Hello Ingrid,
**PLS confirm receipt of this msg.**
Please send all future invoices and/or receipts to our accounting department @
ap-emergence.com
and if possible, please CC ericm@irwinnaturals.com
Their contact information is:
Irwin Naturals
5310 Beethoven Street
Los Angeles, CA 90066
Phone. 1.888.223.1548

If this has to be changed on our profile in some kind of service portal, please let me know.
Thanks so much,
Linda



**Linda Hebert**
Clinic Administrator

lhebert@ketaminehealthcenters.com
(239) 449-8437
26800 South Tamiami Trail #310
Bonita Springs, FL 34134
www.ketaminehealthcenters.com



CONFIDENTIALITY NOTICE: This e-mail message and any attachments are only for the use of the intended recipient and may contain information that is privileged, confidential or exempt fr... the intended recipient, any disclosure, distribution or other use of this e-mail message or attachments is prohibited. If you have received this e-mail message in error, please delete and noti...

--

--



**Linda Hebert**
**Clinic Administrator**

lhebert@ketaminehealthcenters.com
(239) 449-8437
26800 South Tamiami Trail #310
Bonita Springs, FL 34134
www.ketaminehealthcenters.com

 

CONFIDENTIALITY NOTICE: This e-mail message and any attachments are only for the use of the intended recipient and may contain information that is privileged, confidential or exempt from
the intended recipient, any disclosure, distribution or other use of this e-mail message or attachments is prohibited. If you have received this e-mail message in error, please delete and notify

--

--



**Linda Hebert**
**Clinic Administrator**

lhebert@ketaminehealthcenters.com
(239) 449-8437
26800 South Tamiami Trail #310
Bonita Springs, FL 34134
www.ketaminehealthcenters.com

  

CONFIDENTIALITY NOTICE: This e-mail message and any attachments are only for the use of the intended recipient and may contain information that is privileged, confidential or exempt from d
the intended recipient, any disclosure, distribution or other use of this e-mail message or attachments is prohibited. If you have received this e-mail message in error, please delete and notify the

# JP Orlando LLC

4403 Vineland Rd
Suite B-9
Orlando, FL 32811
Phone 407-244-0110
DBA Jan-Pro of Orlando

**Remit Payments to:**

JP Orlando, LLC
4403 Vineland Rd
Suite B-9
Orlando, FL 32811

**INVOICE#**          Balance

Date:      12/4/2023

**Service Location:**

Ketamine Health Centers
1411 N Flagler Drive
Suite 9300B
West Palm Beach, FL 33401

Due Date:   Upon Receipt

Vendor# _____

| DESCRIPTION | RATE | TAX % | TAX $ | TOTAL |
|---|---|---|---|---|
| Balance of Contract (Oct 2023 - January 2024) | $ 820.00 | 7.0% | $ 57.40 | $ 877.40 |
| Collection Fees | 30% | | | $ 263.22 |
| **TOTAL** | **$ 820.00** | | **$ 57.40** | **$ 1,140.62** |

| | |
|---|---|
| PAYMENTS RECEIVED | |
| TOTAL DUE | $ 1,140.62 |

Please include invoice number as reference in your payments to assure it gets apply correctly to your account.

**Thank you for your business!**

# EXHIBIT 44

Fill in this information to identify the case:

| | |
|---|---|
| Debtor 1 | _Irwin Naturals_ |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: _San Fernando Valley_ District of _CA_ (State) | |
| Case number | _1 : 24 - bk - 11323 - VK_ |

**FILED**

DEC 18 2024

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

## Official Form 410
# Proof of Claim
12/24

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

### Part 1:   Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | _Dennis Diaz_<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☒ No<br>☐ Yes. From whom? _____ |

3. Where should notices and payments to the creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

_Dennis Diaz_
Name

_9841 SW 130ᵗʰ st_
Number      Street

_Miami      FL      33176_
City      State      ZIP Code

Contact phone _(305) 494-4170_

Contact email _dennisdiaz02@yahoo.com_

Uniform claim identifier (if you use one):

_ _ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _

**Where should payments to the creditor be sent? (if different)**

Name

Number      Street

City      State      ZIP Code

Contact phone _____

Contact email _____

| | |
|---|---|
| 4. Does this claim amend one already filed? | ☒ No<br>☐ Yes. Claim number on court claims registry (if known) _____     Filed on _____ MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No<br>☐ Yes. Who made the earlier filing? _____ |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|-------------------------------------------------------------------|

**6. Do you have any number you use to identify the debtor?**

☒ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**  $ 7,500 . Does this amount include interest or other charges?

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

lease settlement for unpaid lease that defaulted and was paid by prior ownership

**9. Is all or part of the claim secured?**

☒ No

☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:  $_____

Amount of the claim that is secured:  $_____

Amount of the claim that is unsecured:  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:  $_____

Annual Interest Rate (when case was filed) _____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☐ No

☒ Yes. Amount necessary to cure any default as of the date of the petition.  $ 0 _____

**11. Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☒ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

### Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

**If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.**

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  12 / 12 / 2024
 MM / DD / YYYY

_Signature_

**Print the name of the person who is completing and signing this claim:**

| Name | Dennis | | Diaz |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | | | |
| Company | | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 9841  SW  130ᵗʰ  St | | |
| | Number   Street | | |
| | miami | FL | 33176 |
| | City | State | ZIP Code |
| Contact phone | (305) 494-4170 | Email | dennisdiaz02@yahoo.com |

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("**Agreement**") is made and entered into by and amongst BONITA BAY CLUB, INC. ("**Landlord**"); KHC Capital Group, LLC ("**KHC**"); Sandadi Medical Consultants, LLC ("**Sandadi**"); and Marcus Kelley ("**Kelley**"). KHC, Sandadi, and Kelley may at times be referenced collectively as "**Guarantors**." Landlord, KHC, Sandadi, and Kelley may at times be individually referred to as a "**Party**" or collectively referred to as the "**Parties**."

## RECITATIONS

**WHEREAS**, Landlord and Ketamine Health Centers at Bonita Springs, LLC ("**Tenant**") executed a commercial Lease Agreement for the property located at 26800 South Tamiami Trail, Suite 310, Bonita Springs, Florida 34131 (the "**Lease**").

**WHEREAS**, Each of the Guarantors executed a Limited Guaranty of Lease for the Lease (collectively, the "**Guaranties**").

**WHEREAS**, the Parties are parties to a lawsuit pending in the Twentieth Judicial Circuit in and for Lee County, Florida, styled as follows: *Bonita Bay Club, Inc. v. Ketamine Health Centers at Bonita Springs, LLC, KHC Capital Group, LLC, Sandadi Medical Consultants, LLC, and Marcus Kelley*, and bearing Case No. 2024-CA-005161 (the "**Lawsuit**").

**WHEREAS**, the Lawsuit arises from certain disagreements and disputes related to the Lease and Guaranties (the "**Dispute**").

**NOW, THEREFORE**, to avoid the expense and uncertainties of litigating the Lawsuit, and to amicably resolve, fully and finally, their differences as to the Dispute, the Parties desire to fully compromise, finally settle, and release all claims alleged in the Lawsuit against the Guarantors and all allegations made against the Guarantors related to, arising from, or concerning the Dispute. In consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency thereof acknowledged by the Parties, the Parties agree as follows:

## TERMS

1.    **Recitations**. The foregoing recitals are regarded by the Parties as true and correct and are expressly incorporated into this Agreement.

2.    **Effective Date**. The Effective Date of this Agreement shall be the date when it is signed by the last of the Parties hereto, as evidenced by the handwritten dates of the Parties' signatures below.

3.    **Disputed Claims**. This Agreement is entered into by the Parties for the purpose of compromising and settling matters in the Lawsuit and Dispute between and among them.

4.    **No Admissions of Liability**. Neither this Agreement, nor anything contained in this Agreement, shall constitute or be construed as an admission of liability on behalf of the Parties or their respective agents, members, parents, affiliates, controlling parties, assigns, and/or

successors, or an admission as to the validity of the demands, obligations, claims, or defenses asserted by the Parties. The Parties' willingness to enter this Agreement, and the terms hereof, shall not otherwise indicate or reflect on the truth, validity, or relative merit of any party's claims, positions, allegations, or defenses. By entering into this Agreement, no Party is admitting wrongdoing, fault, or liability for any of the claims, causes of action, or allegations made in the Lawsuit, or for any other claims, causes of action, or allegations arising out of or related to the Project or Dispute.

5.    **Payment**. Guarantors shall pay Landlord a total of **$57,500.00** (the "**Payment**") by wire transfer **within ten (10)** days after Guarantors' counsel Jack Morgan, Esq. (jmorgan@lawdefined.com) receives written wire instructions from Landlord's counsel Reed Baker, Esq. (reed.baker@quarles.com) by email. Prior to initiating payment, Guarantors shall confirm the wire instructions with Mr. Baker via telephone (239-434-4961). If Guarantors fail to timely pay Landlord the entirety of the Payment, Landlord shall be entitled to collect the full amount of the Payment from the Guarantors, jointly and severally.

6.    **Dismissal With Prejudice**. Within **five (5) days** of receipt of the Payment, Landlord shall dismiss all claims against the Guarantors in the Lawsuit with prejudice. Landlord shall perform any undertakings requested by the Court, or Guarantors to secure dismissal of the claims against Guarantors. All claims and allegations made against Tenant in the Lawsuit shall remain in full force and effect and pending and shall not be dismissed.

7.    **Complete and General Releases**. Except for and subject to the covenants, terms, obligations, conditions, and undertakings set forth in this Agreement, the Parties agree to a release of claims as follows:

a.  Landlord releases and forever discharges Guarantors and their parent companies, subsidiaries, affiliates, officers, directors, shareholders, partners, managers, attorneys, trustees, predecessors, successors, representatives, insurers, assignees, agents, employees, beneficiaries, heirs, assigns, estates, and all persons acting by, through or in any way on behalf of Guarantors (collectively, the "**Guarantor Released Parties**"), of and from any and all complaints of any nature, claims, debts, defenses, liabilities, costs, attorneys' fees, actions, suits at law or equity, demands, investigations, prosecutions, contracts, expenses, damages, whether general, special, or punitive, exemplary, contractual or extra-contractual, and causes of action of any kind or nature which Landlord may now have or claim to have against Guarantor Released Parties, whether known or unknown, including, without limitation, all claims or causes of action which in any way, directly or indirectly, or in any other way arises from or are connected with, or which could have been asserted, in connection with the Lawsuit, Lease, Guaranties or Dispute, which may exist from the beginning of time to the Effective Date of this Agreement;

2

EXHIBIT 45

Fill in this information to identify the case:

Debtor 1    _Irwin Naturals_

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: _San Fernando Valley_ District of _CA_
                                                              (State)

Case number   _1:24-bk-11323-vk_

```
┌─────────────────────┐
│      FILED          │
│   DEC 18 2024       │
│                     │
│ CLERK U.S. BANKRUPTCY COURT │
│ CENTRAL DISTRICT OF CALIFORNIA │
│ BY:          Deputy Clerk │
└─────────────────────┘
```

## Official Form 410

# Proof of Claim

12/24

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

_Mike Tomas_
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Name _Mike Tomas_

Number Street _7300 SW 80th Ct_

City _Miami_  State _FL_  ZIP Code _33143_

Contact phone _(786)623-8577_

Contact email _mtomas6@bellsouth.net_

Where should payments to the creditor be sent? (if different)

Name _____

Number Street _____

City _____ State _____ ZIP Code _____

Contact phone _____

Contact email _____

Uniform claim identifier (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____   Filed on ____/____/____
                                                                                    MM  /  DD  /  YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☒ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

---

**7. How much is the claim?**  $ __7,500__ . Does this amount include interest or other charges?

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_lease settlement for unpaid lease that defaulted_
_and was paid by prior ownership_

---

**9. Is all or part of the claim secured?**

☒ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:  $_____

Amount of the claim that is secured:  $_____

Amount of the claim that is unsecured:  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:  $_____

Annual Interest Rate (when case was filed) _____%

☐ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☐ No

☒ Yes. Amount necessary to cure any default as of the date of the petition.  $ _0_

---

**11. Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

---

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☒ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. Check one: | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

### Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  12 / 12 / 2024
                  MM / DD / YYYY

Signature  _MTMT_

Print the name of the person who is completing and signing this claim:

| Name | Mike | | Tomas |
|---|---|---|---|
| | First name | Middle name | Last name |

Title  _____

Company  _____
Identify the corporate servicer as the company if the authorized agent is a servicer.

| Address | 7300   SW   80th Ct | | |
|---|---|---|---|
| | Number   Street | | |
| | Miami | FL | 33143 |
| | City | State | ZIP Code |

Contact phone  (786) 623-8577       Email  mtomas6@bellsouth.net

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("**Agreement**") is made and entered into by and amongst BONITA BAY CLUB, INC. ("**Landlord**"); KHC Capital Group, LLC ("**KHC**"); Sandadi Medical Consultants, LLC ("**Sandadi**"); and Marcus Kelley ("**Kelley**"). KHC, Sandadi, and Kelley may at times be referenced collectively as "**Guarantors**." Landlord, KHC, Sandadi, and Kelley may at times be individually referred to as a "**Party**" or collectively referred to as the "**Parties**."

## RECITATIONS

**WHEREAS**, Landlord and Ketamine Health Centers at Bonita Springs, LLC ("**Tenant**") executed a commercial Lease Agreement for the property located at 26800 South Tamiami Trail, Suite 310, Bonita Springs, Florida 34131 (the "**Lease**").

**WHEREAS**, Each of the Guarantors executed a Limited Guaranty of Lease for the Lease (collectively, the "**Guaranties**").

**WHEREAS**, the Parties are parties to a lawsuit pending in the Twentieth Judicial Circuit in and for Lee County, Florida, styled as follows: *Bonita Bay Club, Inc. v. Ketamine Health Centers at Bonita Springs, LLC, KHC Capital Group, LLC, Sandadi Medical Consultants, LLC, and Marcus Kelley*, and bearing Case No. 2024-CA-005161 (the "**Lawsuit**").

**WHEREAS**, the Lawsuit arises from certain disagreements and disputes related to the Lease and Guaranties (the "**Dispute**").

**NOW, THEREFORE**, to avoid the expense and uncertainties of litigating the Lawsuit, and to amicably resolve, fully and finally, their differences as to the Dispute, the Parties desire to fully compromise, finally settle, and release all claims alleged in the Lawsuit against the Guarantors and all allegations made against the Guarantors related to, arising from, or concerning the Dispute. In consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency thereof acknowledged by the Parties, the Parties agree as follows:

## TERMS

1.    **Recitations**. The foregoing recitals are regarded by the Parties as true and correct and are expressly incorporated into this Agreement.

2.    **Effective Date**. The Effective Date of this Agreement shall be the date when it is signed by the last of the Parties hereto, as evidenced by the handwritten dates of the Parties' signatures below.

3.    **Disputed Claims**. This Agreement is entered into by the Parties for the purpose of compromising and settling matters in the Lawsuit and Dispute between and among them.

4.    **No Admissions of Liability**. Neither this Agreement, nor anything contained in this Agreement, shall constitute or be construed as an admission of liability on behalf of the Parties or their respective agents, members, parents, affiliates, controlling parties, assigns, and/or

1

successors, or an admission as to the validity of the demands, obligations, claims, or defenses asserted by the Parties. The Parties' willingness to enter this Agreement, and the terms hereof, shall not otherwise indicate or reflect on the truth, validity, or relative merit of any party's claims, positions, allegations, or defenses. By entering into this Agreement, no Party is admitting wrongdoing, fault, or liability for any of the claims, causes of action, or allegations made in the Lawsuit, or for any other claims, causes of action, or allegations arising out of or related to the Project or Dispute.

5.      **Payment**. Guarantors shall pay Landlord a total of **$57,500.00** (the "**Payment**") by wire transfer **within ten (10)** days after Guarantors' counsel Jack Morgan, Esq. (jmorgan@lawdefined.com) receives written wire instructions from Landlord's counsel Reed Baker, Esq. (reed.baker@quarles.com) by email. Prior to initiating payment, Guarantors shall confirm the wire instructions with Mr. Baker via telephone (239-434-4961). If Guarantors fail to timely pay Landlord the entirety of the Payment, Landlord shall be entitled to collect the full amount of the Payment from the Guarantors, jointly and severally.

6.      **Dismissal With Prejudice**. Within **five (5) days** of receipt of the Payment, Landlord shall dismiss all claims against the Guarantors in the Lawsuit with prejudice. Landlord shall perform any undertakings requested by the Court, or Guarantors to secure dismissal of the claims against Guarantors. All claims and allegations made against Tenant in the Lawsuit shall remain in full force and effect and pending and shall not be dismissed.

7.      **Complete and General Releases**. Except for and subject to the covenants, terms, obligations, conditions, and undertakings set forth in this Agreement, the Parties agree to a release of claims as follows:

   a.  Landlord releases and forever discharges Guarantors and their parent companies, subsidiaries, affiliates, officers, directors, shareholders, partners, managers, attorneys, trustees, predecessors, successors, representatives, insurers, assignees, agents, employees, beneficiaries, heirs, assigns, estates, and all persons acting by, through or in any way on behalf of Guarantors (collectively, the "**Guarantor Released Parties**"), of and from any and all complaints of any nature, claims, debts, defenses, liabilities, costs, attorneys' fees, actions, suits at law or equity, demands, investigations, prosecutions, contracts, expenses, damages, whether general, special, or punitive, exemplary, contractual or extra-contractual, and causes of action of any kind or nature which Landlord may now have or claim to have against Guarantor Released Parties, whether known or unknown, including, without limitation, all claims or causes of action which in any way, directly or indirectly, or in any other way arises from or are connected with, or which could have been asserted, in connection with the Lawsuit, Lease, Guaranties or Dispute, which may exist from the beginning of time to the Effective Date of this Agreement;

2

# EXHIBIT 46

Main Document    Page 45 of 137

Fill in this information to identify the case:

Debtor 1 _Irwin Naturals_

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: _San Fernando Valley_ District of _CA_
                                                                    (State)

Case number _1:24-bk-11323-VK_

**FILED**

DEC 1 8 2024

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____Deputy Clerk

## Official Form 410

# Proof of Claim                                                                 12/24

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense.** Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

| | |
| --- | --- |
| 1. Who is the current creditor? | _Raul Cruz_<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☒ No<br>☐ Yes. From whom? _____ |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>_Raul Cruz_<br>Name<br><br>_5745 SW 51st St_<br>Number    Street<br><br>_Miami_        _FL_      _33155_<br>City          State        ZIP Code<br><br>Contact phone _(305) 793-4855_<br>Contact email _raulccc@yahoo.com_<br><br>Uniform claim identifier (if you use one):<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | **Where should payments to the creditor be sent?** (if different)<br><br>Name<br><br>Number    Street<br><br>City          State        ZIP Code<br><br>Contact phone _____<br>Contact email _____ |
| 4. Does this claim amend one already filed? | ☒ No<br>☐ Yes. Claim number on court claims registry (if known) _____    Filed on ____ / ____ / ____<br>                                                                                                    MM   /  DD  /  YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No<br>☐ Yes. Who made the earlier filing? _____ |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |

| 6. | Do you have any number you use to identify the debtor? | ☒ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ___ ___ ___ |

| 7. | How much is the claim? | $ 7,500 . Does this amount include interest or other charges?<br>☒ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>lease settlement for unpaid lease that defaulted and was paid by prior ownership |

| 9. | Is all or part of the claim secured? | ☒ No<br>☐ Yes. The claim is secured by a lien on property.<br><br>Nature of property:<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>Basis for perfection: _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Value of property: $_____<br>Amount of the claim that is secured: $_____<br><br>Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>Amount necessary to cure any default as of the date of the petition: $_____<br><br>Annual Interest Rate (when case was filed)_____%<br>☐ Fixed<br>☐ Variable |

| 10. | Is this claim based on a lease? | ☐ No<br>☒ Yes. Amount necessary to cure any default as of the date of the petition. $_____ |

| 11. | Is this claim subject to a right of setoff? | ☒ No<br>☐ Yes. Identify the property: _____ |

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No | |
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  12 / 12 / 2024
MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Raul | | Cruz |
|---|---|---|---|
| | First name | Middle name | Last name |

Title _____

Company _____
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address  5745 SW 51st street
Number    Street

miami                          FL        33155
City                           State     ZIP Code

Contact phone  (305) 793-4855          Email  raulccc@yahoo.com

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("**Agreement**") is made and entered into by and amongst BONITA BAY CLUB, INC. ("**Landlord**"); KHC Capital Group, LLC ("**KHC**"); Sandadi Medical Consultants, LLC ("**Sandadi**"); and Marcus Kelley ("**Kelley**"). KHC, Sandadi, and Kelley may at times be referenced collectively as "**Guarantors**." Landlord, KHC, Sandadi, and Kelley may at times be individually referred to as a "**Party**" or collectively referred to as the "**Parties**."

## RECITATIONS

**WHEREAS**, Landlord and Ketamine Health Centers at Bonita Springs, LLC ("**Tenant**") executed a commercial Lease Agreement for the property located at 26800 South Tamiami Trail, Suite 310, Bonita Springs, Florida 34131 (the "**Lease**").

**WHEREAS**, Each of the Guarantors executed a Limited Guaranty of Lease for the Lease (collectively, the "**Guaranties**").

**WHEREAS**, the Parties are parties to a lawsuit pending in the Twentieth Judicial Circuit in and for Lee County, Florida, styled as follows: *Bonita Bay Club, Inc. v. Ketamine Health Centers at Bonita Springs, LLC, KHC Capital Group, LLC, Sandadi Medical Consultants, LLC, and Marcus Kelley*, and bearing Case No. 2024-CA-005161 (the "**Lawsuit**").

**WHEREAS**, the Lawsuit arises from certain disagreements and disputes related to the Lease and Guaranties (the "**Dispute**").

**NOW, THEREFORE**, to avoid the expense and uncertainties of litigating the Lawsuit, and to amicably resolve, fully and finally, their differences as to the Dispute, the Parties desire to fully compromise, finally settle, and release all claims alleged in the Lawsuit against the Guarantors and all allegations made against the Guarantors related to, arising from, or concerning the Dispute. In consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency thereof acknowledged by the Parties, the Parties agree as follows:

## TERMS

1.    **Recitations**. The foregoing recitals are regarded by the Parties as true and correct and are expressly incorporated into this Agreement.

2.    **Effective Date**. The Effective Date of this Agreement shall be the date when it is signed by the last of the Parties hereto, as evidenced by the handwritten dates of the Parties' signatures below.

3.    **Disputed Claims**. This Agreement is entered into by the Parties for the purpose of compromising and settling matters in the Lawsuit and Dispute between and among them.

4.    **No Admissions of Liability**. Neither this Agreement, nor anything contained in this Agreement, shall constitute or be construed as an admission of liability on behalf of the Parties or their respective agents, members, parents, affiliates, controlling parties, assigns, and/or

1

successors, or an admission as to the validity of the demands, obligations, claims, or defenses asserted by the Parties. The Parties' willingness to enter this Agreement, and the terms hereof, shall not otherwise indicate or reflect on the truth, validity, or relative merit of any party's claims, positions, allegations, or defenses. By entering into this Agreement, no Party is admitting wrongdoing, fault, or liability for any of the claims, causes of action, or allegations made in the Lawsuit, or for any other claims, causes of action, or allegations arising out of or related to the Project or Dispute.

5.    **Payment**. Guarantors shall pay Landlord a total of **$57,500.00** (the "**Payment**") by wire transfer **within ten (10)** days after Guarantors' counsel Jack Morgan, Esq. (jmorgan@lawdefined.com) receives written wire instructions from Landlord's counsel Reed Baker, Esq. (reed.baker@quarles.com) by email. Prior to initiating payment, Guarantors shall confirm the wire instructions with Mr. Baker via telephone (239-434-4961). If Guarantors fail to timely pay Landlord the entirety of the Payment, Landlord shall be entitled to collect the full amount of the Payment from the Guarantors, jointly and severally.

6.    **Dismissal With Prejudice**. Within **five (5) days** of receipt of the Payment, Landlord shall dismiss all claims against the Guarantors in the Lawsuit with prejudice. Landlord shall perform any undertakings requested by the Court, or Guarantors to secure dismissal of the claims against Guarantors. All claims and allegations made against Tenant in the Lawsuit shall remain in full force and effect and pending and shall not be dismissed.

7.    **Complete and General Releases**. Except for and subject to the covenants, terms, obligations, conditions, and undertakings set forth in this Agreement, the Parties agree to a release of claims as follows:

a.  Landlord releases and forever discharges Guarantors and their parent companies, subsidiaries, affiliates, officers, directors, shareholders, partners, managers, attorneys, trustees, predecessors, successors, representatives, insurers, assignees, agents, employees, beneficiaries, heirs, assigns, estates, and all persons acting by, through or in any way on behalf of Guarantors (collectively, the "**Guarantor Released Parties**"), of and from any and all complaints of any nature, claims, debts, defenses, liabilities, costs, attorneys' fees, actions, suits at law or equity, demands, investigations, prosecutions, contracts, expenses, damages, whether general, special, or punitive, exemplary, contractual or extra-contractual, and causes of action of any kind or nature which Landlord may now have or claim to have against Guarantor Released Parties, whether known or unknown, including, without limitation, all claims or causes of action which in any way, directly or indirectly, or in any other way arises from or are connected with, or which could have been asserted, in connection with the Lawsuit, Lease, Guaranties or Dispute, which may exist from the beginning of time to the Effective Date of this Agreement;

2

# EXHIBIT 51

<table>
<tr><td colspan="2">

**Fill in this information to identify the case:**

Debtor 1  Irwin Naturals

Debtor 2  Irwin Naturals Inc
(Spouse, if filing)

United States Bankruptcy Court  **Central District of California**

Case number:  **24-11323**
</td><td>

**FILED**

**U.S. Bankruptcy Court**
**Central District of California**

12/20/2024

**Kathleen J. Campbell, Clerk**
</td></tr>
</table>

## Official Form 410
## Proof of Claim

12/24

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

### Part 1:  Identify the Claim

**1. Who is the current creditor?**

Marcus Kelley

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor    Kelley Anesthesia LLC

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Marcus Kelley

Name

8777 Banyan Cove Circle
FORT MYERS, FL 33919

Contact phone    2398493277

Contact email    marcuskelley88@gmail.com

Uniform claim identifier (if you use one):

**Where should payments to the creditor be sent?** (if different)

Name

Contact phone

Contact email

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known)    Filed on
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

Official Form 410

Proof of Claim

page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

| 6. | **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |
|---|---|---|

| 7. | **How much is the claim?** | $ 14375.00 | **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
|---|---|---|---|

| 8. | **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Indemnification |
|---|---|---|

| 9. | **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ _____<br><br>**Amount of the claim that is secured:** $ _____<br><br>**Amount of the claim that is unsecured:** $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ _____<br><br>**Annual Interest Rate** (when case was filed) _____ %<br>☐ Fixed<br>☐ Variable |
|---|---|---|

| 10. | **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |
|---|---|---|

| 11. | **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |
|---|---|---|

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No ☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies   $ _____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   12/20/2024

MM / DD / YYYY

/s/  Marcus Kelley

Signature

Print the name of the person who is completing and signing this claim:

Name   Marcus Kelley

First name   Middle name   Last name

Title   _____

Company   _____

Identify the corporate servicer as the company if the authorized agent is a servicer

Address   8777 Banyan Cove Circle

Number   Street
FORT MYERS, FL 33919

City   State   ZIP Code

Contact phone   2398493277   Email   marcuskelley88@gmail.com

Filing # 212954732 E-Filed 12/16/2024 04:32:22 PM

IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA
CIVIL DIVISION

BONITA BAY CLUB, INC., a Florida Not for
Profit Corporation,

CASE NO.: 2024-CA-005161

        Plaintiff,

v.

KETAMINE HEALTH CENTERS AT
BONITA SPRINGS, LLC, a Florida Limited
Liability Company, KHC CAPITAL GROUP,
LLC, a Florida Limited Liability Company,
SANDADI MEDICAL CONSULTANTS,
LLC, a Florida Limited Liability Company,
and MARCUS KELLEY, an individual,

        Defendants.

_____/

## NOTICE OF DISMISSAL WITHOUT PREJUDICE

Plaintiff, BONITA BAY CLUB, INC. ("**Plaintiff**"), by and through its counsel, and

pursuant to Florida Rule of Civil Procedure1.420, hereby dismisses this action without prejudice

with all parties to bear their own attorney's fees and costs.

        QUARLES & BRADY LLP

        By: /s/ *Benjamin B. Brown*
        Benjamin B. Brown
        Florida Bar No. 13290
        1395 Panther Lane, Suite 300
        Naples, FL  34109
        239/659-5026 Telephone
        239/213-5426 Facsimile
        benjamin.brown@quarles.com
        debra.topping@quarles.com
        kerlyne.luc@quarles.com
        DocketFL@quarles.com

1

Filing # 203045870 E-Filed 07/22/2024 03:13:38 PM

IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA
CIVIL DIVISION

BONITA BAY CLUB, INC., a Florida Not for
Profit Corporation,

        Case No.:    24-CA-005161

        Plaintiff,

v.

KETAMINE HEALTH CENTERS AT
BONITA SPRINGS, LLC, a Florida Limited
Liability Company, KHC CAPITAL GROUP,
LLC, a Florida Limited Liability Company,
SANDADI MEDICAL CONSULTANTS,
LLC, a Florida Limited Liability Company,
and MARCUS KELLEY, an individual,

        Defendants.

_____/

*(handwritten: R6 207779 147pm 8/15/ 2024)*

## SUMMONS

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

      **YOU ARE COMMANDED** to serve this Summons and a copy of the Complaint and
Standing Order in this lawsuit on Defendant:

        **Marcus Kelley**
        8777 Banyan Cove Cir.
        Fort Myers, FL 33919

or any other location where Defendant can be served.

      DATED on   07/29/2024  .

      (seal)

                          Kevin C. Karnes,
                          Lee County Clerk of the Circuit Court

                          By: _____

                          As Deputy Clerk



QB\90641584.1

/3045870 E-Filed 07/22/2024 03:13:38 PM

IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA
CIVIL DIVISION

BONITA BAY CLUB, INC., a Florida Not for      CASE NO.:
Profit Corporation,

         Plaintiff,

v.

KETAMINE HEALTH CENTERS AT
BONITA SPRINGS, LLC, a Florida Limited
Liability Company, KHC CAPITAL GROUP,
LLC, a Florida Limited Liability Company,
SANDADI MEDICAL CONSULTANTS,
LLC, a Florida Limited Liability Company,
and MARCUS KELLEY, an individual,

         Defendants.

_____/

## COMPLAINT

Plaintiff, BONITA BAY CLUB, INC. (**"Landlord"**), sues Defendants, KETAMINE

HEALTH CENTERS AT BONITA SPRINGS, LLC (**"Tenant"**), KHC CAPITAL GROUP, LLC,

SANDADI MEDICAL CONSULTANTS, LLC, and MARCUS KELLEY (collectively,

**"Guarantors"**), and alleges:

### PARTIES, JURISDICTION, AND VENUE

1.      This is an action to recover damages in excess of $50,000, exclusive of interest,

court costs, attorneys' fees, and is otherwise within the jurisdiction of this Court.

2.      Landlord is a Florida Not for Profit Corporation.

3.      Tenant is a Florida Limited Liability Company that leased the commercial property

at issue located in Lee County, Florida, and engaged in a business located therein. This Court has

personal jurisdiction over Tenant pursuant to section 48.193, Florida Statutes, as Tenant, *inter alia*:

1

(a) operated, conducted, engaged in, or carried on a business or business venture in the State of Florida; (b) breached a written contract in the State of Florida by failing to perform acts required to be performed in the State of Florida; and (c) engaged in substantial and not isolated activity in the State of Florida.

4.     Guarantors KHC CAPITAL GROUP, LLC and SANDADI MEDICAL CONSULTANTS, LLC are Florida Limited Liability Companies that each signed a Guaranty for the lease of the commercial property at issue located in Lee County, Florida. This Court has personal jurisdiction over Guarantors pursuant to section 48.193, Florida Statutes, as Guarantors, *inter alia*: (a) operated, conducted, engaged in, or carried on a business or business venture in the State of Florida; (b) breached a written contract in the State of Florida by failing to perform acts required to be performed in the State of Florida; and (c) engaged in substantial and not isolated activity in the State of Florida.

5.     Guarantor Marcus Kelley is an individual who signed a personal guaranty for the lease of the commercial property at issue located in Lee County, Florida. This Court has personal jurisdiction over Guarantor Marcus Kelley pursuant to section 48.193, Florida Statutes, as Marcus Kelley, *inter alia*: (a) operated, conducted, engaged in, or carried on a business or business venture in the State of Florida; (b) breached a written contract in the State of Florida by failing to perform acts required to be performed in the State of Florida; and (c) engaged in substantial and not isolated activity in the State of Florida.

6.     Venue is proper in Lee County, Florida, including because the cause of action accrued in Lee County and the dispute involves real property located in Lee County.

2

## GENERAL ALLEGATIONS

7.      Landlord owns the real property located at 26800 South Tamiami Trail, Suite 310, Bonita Springs, Florida 34134 (the "**Premises**"). The Premises is located in Lee County, Florida.

8.      On or about April 24, 2020, for good and valuable consideration, Landlord and Tenant entered into a Lease Agreement ("**Lease**") whereby Landlord leased the Premises to Tenant. A true and correct copy of the Lease is attached hereto as **Exhibit "1."** The Lease provides that Tenant agrees to pay Base Rent with annual escalations, Tenant's proportionate share of operating expenses and taxes ("**Additional Rent**"), sales tax and other charges. Ex. 1 §§ J-M. The Base Rent, Additional Rent, sales tax, and other charges due under the Lease are collectively referred to herein as "**Rent**."

9.      To induce Landlord to enter into the Lease, and for good and valuable consideration, Guarantors each executed a Limited Guaranty of Lease (as to each Guarantor, the "**Guaranty**" and collectively, the "**Guaranties**"). True and correct copies of the Guaranties are attached to the Lease as Exhibit "A."

10.     Under the Lease, Tenant agreed to lease the Premises for a term of five (5) years (the "**Lease Term**"). Ex. 1 § F. Pursuant to the Commencement Date Agreement attached hereto as **Exhibit "2,"** the Lease Term began on August 6, 2021 (the "**Rent Commencement Date**") and will expire on August 5, 2026.

11.     On or about On May 5, 2022, the Landlord executed a Consent to Assignment of the ownership interest in Tenant to Irwin Naturals Inc., a British Colombia corporation, with a subsequent transfer of Tenant ownership interest to Irwin Naturals Emergence, Inc., a Nevada corporation. A true and correct copy of the Consent to Assignment is attached hereto as **Exhibit "3."**

3

12.     However, the Lease has not been assigned and Defendant, KETAMINE HEALTH
CENTERS AT BONITA SPRINGS, LLC, continues to be the Tenant under the Lease.

13.     Tenant has defaulted under the Lease Agreement by abandoning the Premises for
more than thirty (30) consecutive days, since on or about January 2, 2024. Ex. 1 § 20.

14.     On or about February 16, 2024, Landlord sent Tenant and Guarantors a notice of
default ("**Notice of Default**"), notifying them of Tenant's breaches of the Lease by vacating and
abandoning the Premises for more than 30 consecutive days, which is an express and material
breach of the Lease. Ex. 1 § 20. A true and correct copy of the Notice of Default is attached hereto
as **Exhibit "4."** The Notice of Default notified Defendants that Landlord is treating the Premises
as abandoned and will forthwith retake possession of the Premises on Tenant's account. Ex. 4.
Landlord also provided notice that it is holding Defendants accountable for all amounts due under
the Lease, including without limitation, attorneys' fees and costs incurred in connection with
Tenant's and Guarantors' breaches, unpaid CAM charges and the unpaid 2023 CAM reconciliation,
throughout the remainder of Lease, and all other amounts available under the Lease and Florida
law. Ex. 4.

15.     The Notice of Default was sent via certified mail, return receipt requested, and
email. Ex. 4.

16.     Landlord has retaken possession of the Premises on the account of the Tenant.

17.     On or about March 19, 2024, Landlord sent Defendants a second letter (the
"**Possession Relay Notice**") notifying them that due to Tenant's abandonment of the Premises,
Landlord retook possession of the Premises on the Tenant's account and that Defendants remain
liable, jointly and severally, for all amounts due under the Lease, including without limitation,

4

unpaid past due Rent, accelerated Rent, and attorneys' fees and costs. A true and correct copy of the Possession Relay Notice is attached hereto as **Exhibit "5."**

18.    The Possession Relay Notice was sent via certified mail, return receipt requested, and email. Ex. 5.

19.    Despite receiving the Notice of Default and the Possession Relay Notice, Defendants have failed to pay to Landlord the amounts due under the Lease.

20.    Tenant owes Landlord approximately $28,195.07 for past due Rent.

21.    In addition to the past due amounts, Landlord is also entitled to accelerate Rent and all other amounts due under the Lease and Florida law, for the remainder of the Lease Term. Ex. 1 § 20.

22.    All conditions precedent to the maintenance of this action have been performed, waived, excused, or have otherwise occurred.

23.    Landlord has retained the law firm of Quarles & Brady LLP to prosecute this action on its behalf and is obligated to pay reasonable attorneys' fees for its services pursuant to the Lease, Guaranties, and Florida law.

### COUNT I – BREACH OF CONTRACT (LEASE AGREEMENT)

Landlord sues Tenant for breach of contract and says:

24.    Landlord re-alleges paragraphs 1 through 23 of this Complaint as though fully set forth herein.

25.    This is an action for breach of a written lease agreement.

26.    Tenant is in material default of the Lease, including without limitation, by vacating and abandoning the Premises for more than 30 consecutive days and by failing to pay Rent.

27.    Landlord has performed all of its obligations pursuant to the Lease.

5

28.     As a result of Tenant's material default under the Lease, Landlord has sustained and is entitled to damages, including but not limited to past due Rent, accelerated Rent, and attorneys' fees and costs.

WHEREFORE, Landlord demands a judgment in its favor and against Tenant for all sums owed to Landlord under the Lease, attorneys' fees and costs, and all such other relief as this Court deems just and proper.

## COUNT II – BREACH OF CONTRACT (GUARANTY AGREEMENT)

Landlord sues Defendants, KHC CAPITAL GROUP, LLC, SANDADI MEDICAL CONSULTANTS, LLC, and MARCUS KELLEY, jointly and severally, for breach of contract and says:

29.     Landlord realleges paragraphs 1 through 23 of this Complaint as though fully set forth herein.

30.     This is an action for breach of the written Guaranties.

31.     Tenant defaulted under the Lease, including by vacating and abandoning the Premises for more than 30 consecutive days.

32.     By virtue of the Guaranties, Guarantors each guaranteed "jointly and severally with all other guarantors of the Lease . . . the full performance and observance of all the covenants, conditions and agreements therein provided to be performed and observed by Tenant, up to a maximum amount of $45,000." Ex. 1 at Ex. A.

33.     Despite Guarantors' obligation to do so, Guarantors have failed to make any payment or perform or cause Tenant to perform its obligations under the Lease.

34.     Pursuant to the Guaranties, Guarantors are jointly and severally liable to Landlord for up to $45,000 of Landlord's damages for Tenant's default under the Lease.

6

35.     As a result of Guarantors' material breaches of the Guaranties, Landlord has

sustained and is entitled to damages, including but not limited to past due Rent, accelerated Rent,

and attorneys' fees and costs.

WHEREFORE, Landlord demands a judgment against Defendants/Guarantors, KHC

CAPITAL GROUP, LLC, SANDADI MEDICAL CONSULTANTS, LLC, and MARCUS

KELLEY, jointly and severally, for damages, attorneys' fees and costs incurred in connection with

enforcing the Guaranties, and all such other relief as this Court deems just and proper.

Dated: July 22, 2024

QUARLES & BRADY LLP

By: /s/ Benjamin B. Brown
Benjamin B. Brown
Florida Bar No. 13290
1395 Panther Lane, Suite 300
Naples, FL  34109
239/659-5026 Telephone
239/213-5426 Facsimile
benjamin.brown@quarles.com
debra.topping@quarles.com
kerlyne.luc@quarles.com
DocketFL@quarles.com

## LIMITED GUARANTY

### OF LEASE

For value received, and in consideration for, and as an inducement to Landlord making the Lease with Tenant, the undersigned, jointly and severally with all other guarantors of the Lease, guarantees to Landlord, Landlord's successors and assigns, the full performance and observance of all the covenants, conditions and agreements therein provided to be performed and observed by Tenant, up to a maximum amount of $45,000. For further clarification, Landlord may not recover a cumulative amount of more than $45,000 from all of the Guarantors hereunder. The undersigned hereby expressly waives demand and notice of non-payment, non-performance, or non-observance and expressly agrees that the validity of this agreement and the obligations hereunder shall in no way be terminated, affected or impaired by reason of the assertion by Landlord against Tenant of any of the rights or remedies reserved to Landlord pursuant to the provisions of the Lease. The undersigned further covenants and agrees that this guaranty shall remain and continue in full force and effect as to any modification of this Lease, with or without notice to or consent of the undersigned. As a further inducement to Landlord to make the Lease and in consideration thereof, Tenant and the undersigned covenant and agree that, in any action or proceeding brought by either Landlord or the undersigned against the other on any matters whatsoever arising out of, under, or by virtue of the terms of the Lease or of this guaranty, Tenant and the undersigned shall and do hereby waive trial by jury. Landlord need not resort to any security or proceed against Tenant before enforcing its rights hereunder. Moreover, Landlord may sue the undersigned and/or the Tenant in any order or together. If Landlord deems it necessary to employ the services of an attorney to enforce its rights under this guaranty, Tenant shall pay Landlord's reasonable attorneys' fees, whether or not litigation is commenced. In the event of litigation under this guaranty, the prevailing party shall be entitled to recover its court costs and reasonable attorneys' fees from the other party. Attorneys' fees and court costs shall be deemed to include such fees and costs at all levels from pretrial through appeal.

GUARANTOR

Witness #1

Alexandra Hamdan
Witness #2

Marcus Kelly

Date:  04/24/2020

Address:

8430 Village Edge Circle #4
Fort Myers Florida 33919

23

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("**Agreement**") is made and entered into by and amongst BONITA BAY CLUB, INC. ("**Landlord**"); KHC Capital Group, LLC ("**KHC**"); Sandadi Medical Consultants, LLC ("**Sandadi**"); and Marcus Kelley ("**Kelley**").  KHC, Sandadi, and Kelley may at times be referenced collectively as "**Guarantors**."  Landlord, KHC, Sandadi, and Kelley may at times be individually referred to as a "**Party**" or collectively referred to as the "**Parties**."

## RECITATIONS

**WHEREAS**, Landlord and Ketamine Health Centers at Bonita Springs, LLC ("**Tenant**") executed a commercial Lease Agreement for the property located at 26800 South Tamiami Trail, Suite 310, Bonita Springs, Florida 34131 (the "**Lease**").

**WHEREAS**, Each of the Guarantors executed a Limited Guaranty of Lease for the Lease (collectively, the "**Guaranties**").

**WHEREAS**, the Parties are parties to a lawsuit pending in the Twentieth Judicial Circuit in and for Lee County, Florida, styled as follows: *Bonita Bay Club, Inc. v. Ketamine Health Centers at Bonita Springs, LLC, KHC Capital Group, LLC, Sandadi Medical Consultants, LLC, and Marcus Kelley*, and bearing Case No. 2024-CA-005161 (the "**Lawsuit**").

**WHEREAS**, the Lawsuit arises from certain disagreements and disputes related to the Lease and Guaranties (the "**Dispute**").

**NOW, THEREFORE**, to avoid the expense and uncertainties of litigating the Lawsuit, and to amicably resolve, fully and finally, their differences as to the Dispute, the Parties desire to fully compromise, finally settle, and release all claims alleged in the Lawsuit against the Guarantors and all allegations made against the Guarantors related to, arising from, or concerning the Dispute.  In consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency thereof acknowledged by the Parties, the Parties agree as follows:

## TERMS

1.    **Recitations**. The foregoing recitals are regarded by the Parties as true and correct and are expressly incorporated into this Agreement.

2.    **Effective Date**. The Effective Date of this Agreement shall be the date when it is signed by the last of the Parties hereto, as evidenced by the handwritten dates of the Parties' signatures below.

3.    **Disputed Claims**. This Agreement is entered into by the Parties for the purpose of compromising and settling matters in the Lawsuit and Dispute between and among them.

4.    **No Admissions of Liability**. Neither this Agreement, nor anything contained in this Agreement, shall constitute or be construed as an admission of liability on behalf of the Parties or their respective agents, members, parents, affiliates, controlling parties, assigns, and/or

successors, or an admission as to the validity of the demands, obligations, claims, or defenses asserted by the Parties.  The Parties' willingness to enter this Agreement, and the terms hereof, shall not otherwise indicate or reflect on the truth, validity, or relative merit of any party's claims, positions, allegations, or defenses. By entering into this Agreement, no Party is admitting wrongdoing, fault, or liability for any of the claims, causes of action, or allegations made in the Lawsuit, or for any other claims, causes of action, or allegations arising out of or related to the Project or Dispute.

5.      **Payment**. Guarantors shall pay Landlord a total of **$57,500.00** (the "**Payment**") by wire transfer **within ten (10)** days after Guarantors' counsel Jack Morgan, Esq. (jmorgan@lawdefined.com) receives written wire instructions from Landlord's counsel Reed Baker, Esq. (reed.baker@quarles.com) by email. Prior to initiating payment, Guarantors shall confirm the wire instructions with Mr. Baker via telephone (239-434-4961).  If Guarantors fail to timely pay Landlord the entirety of the Payment, Landlord shall be entitled to collect the full amount of the Payment from the Guarantors, jointly and severally.

6.      **Dismissal With Prejudice**. Within **five (5) days** of receipt of the Payment, Landlord shall dismiss all claims against the Guarantors in the Lawsuit with prejudice.  Landlord shall perform any undertakings requested by the Court, or Guarantors to secure dismissal of the claims against Guarantors.  All claims and allegations made against Tenant in the Lawsuit shall remain in full force and effect and pending and shall not be dismissed.

7.      **Complete and General Releases**. Except for and subject to the covenants, terms, obligations, conditions, and undertakings set forth in this Agreement, the Parties agree to a release of claims as follows:

   a.  Landlord releases and forever discharges Guarantors and their parent companies, subsidiaries, affiliates, officers, directors, shareholders, partners, managers, attorneys, trustees, predecessors, successors, representatives, insurers, assignees, agents, employees, beneficiaries, heirs, assigns, estates, and all persons acting by, through or in any way on behalf of Guarantors (collectively, the "**Guarantor Released Parties**"), of and from any and all complaints of any nature, claims, debts, defenses, liabilities, costs, attorneys' fees, actions, suits at law or equity, demands, investigations, prosecutions, contracts, expenses, damages, whether general, special, or punitive, exemplary, contractual or extra-contractual, and causes of action of any kind or nature which Landlord may now have or claim to have against Guarantor Released Parties, whether known or unknown, including, without limitation, all claims or causes of action which in any way, directly or indirectly, or in any other way arises from or are connected with, or which could have been asserted, in connection with the Lawsuit, Lease, Guaranties or Dispute, which may exist from the beginning of time to the Effective Date of this Agreement;

    b. Notwithstanding anything to the contrary:

        a. The Guarantor Released Parties group in par. 7(a) shall not be interpreted or determined to include Tenant. Tenant is expressly excluded and excepted from the Guarantor Released Parties. The release set forth in par. 7(a) does not and shall not apply to or include Tenant. All claims against Tenant remain valid and outstanding; and

        b. If Tenant fails to pay Landlord all amounts owed under the Lease as alleged in the Lawsuit, and any of Tenant's assets were fraudulently transferred to any of the Guarantors, Landlord retains all rights and remedies available under Florida law, including without limitation under ch. 726, F.S., to seek and recover the full value of the transferred assets from Guarantors, and any amounts sought or recoverable by Landlord from the Guarantors as a result of such fraudulent transfers shall not be subject to any limitations or restrictions set forth in the Guaranties or this Agreement;

    c. Guarantors release and forever discharge Landlord and its respective attorneys, employees, officers, managers, principals, accountants, trustees, representatives, insurers, assignees, agents, beneficiaries, administrators, and all persons acting by, through or in any way on behalf of the Landlord of and from any and all complaints of any nature, claims, debts, defenses, liabilities, costs, attorneys' fees, actions, suits at law or equity, demands, investigations, prosecutions, contracts, expenses, damages, whether general, special, or punitive, exemplary, contractual or extra-contractual, and causes of action of any kind or nature which Guarantors may now have or claim to have against Landlord including, without limitation, all claims or causes of action which in any way, directly or indirectly, or in any other way arises from or are connected with, or which could have been asserted, in connection with the Lawsuit or Dispute, which may exist from the beginning of time to the Effective Date of this Agreement;

    8. **Breach and Default**. Upon any breach of any covenant, condition, term, or obligation of this Agreement, the Parties shall be entitled to all remedies available under this Agreement and Florida law.

    9. **Notice**. Except as specified, any and all notices or delivery of letters or documents or things to be made in accordance with this Agreement shall be made in writing and shall be deemed to have been duly given, when received, if delivered personally, by email, or by overnight courier service requiring signature upon delivery to:

|   |   |
|---|---|
| **Bonita Bay Club, Inc.** | **KHC Capital Group, LLC** |
| Quarles & Brady LLP | Aloia, Roland, Lubell & Morgan, PLLC |
| c/o Benjamin B. Brown, Esq. | c/o Jack C. Morgan III, Esq. |
| 1395 Panther Lane, Suite 300 | 2222 Second Street |
| Naples, Florida 34109 | Fort Myers, Florida 33901 |
| | |
| **Sandadi Medical Consultants, LLC** | **Marcus Kelley** |
| Aloia, Roland, Lubell & Morgan, PLLC | Aloia, Roland, Lubell & Morgan, PLLC |
| c/o Jack C. Morgan III, Esq. | c/o Jack C. Morgan III, Esq. |
| 2222 Second Street | 2222 Second Street |
| Fort Myers, Florida 33901 | Fort Myers, Florida 33901 |

10. **Attorneys' Fees**. Except as included in the Payment, the Parties shall bear their own attorneys' fees and costs in connection with the Lawsuit. In the event an action or proceeding is brought to enforce or interpret this Agreement, or in connection with any dispute arising out of this Agreement, or if any Party breaches or defaults in its obligations under this Agreement and court enforcement proceedings ensue, the prevailing party to any such litigation shall be entitled to recover all of its attorneys' fees and costs incurred in the trial court, appellate court, and all intermediate court proceedings, including, without limitation, the reasonable attorneys' fees and costs incurred in litigating entitlement to, the amount of, and recovery of the attorneys' fees and costs due to the prevailing party.

11. **Governing Law**. This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Florida, without consideration of its conflicts of law provisions.

12. **Jurisdiction and Venue**. Any civil action or legal proceeding arising out of or relating to this Agreement shall be brought in the appropriate county, state or federal court located exclusively in Lee County, Florida. Each of the Parties irrevocably submits to the jurisdiction of such courts for the purpose of any such civil action or legal proceeding, and expressly waives all right to challenge or otherwise limit such jurisdiction and venue.

13. **Voluntary Agreement**. The Parties specifically waive any and all rights or ability for them to: (a) claim that they were fraudulently induced to enter into this Agreement; (b) claim that they entered into this Agreement by virtue of any alleged duress; or (c) claim that they entered into the Agreement via mistake of fact or law, regardless of whether such alleged mistake was unilateral or mutual.

14. **Advice of Counsel**. The Parties warrant and represent that they have read this Agreement, that they have been or had the opportunity to be fully advised in connection with this Agreement by legal counsel of their own choice, that they understand this Agreement's terms and legal effect, and that they sign this Agreement as their own free act and after due consideration by each Party.

15.     **Continuity of Agreement**. This Agreement shall inure to the benefit of and be binding upon the Parties' heirs, estates, successors, assigns, and transferees.

16.     **Agreement Jointly Prepared**. The Parties agree each Party has had the opportunity to be independently advised by counsel, and each has cooperated and had the opportunity to assist in the drafting, preparation, and negotiation of this Agreement. Accordingly, the Parties hereto acknowledge and agree that this Agreement shall not be construed or interpreted in favor of or against any Party by virtue of the identity of any alleged preparer.

17.     **Headings**. Paragraph headings are provided for convenience only and shall not affect the interpretation of this Agreement.

18.     **Entire Agreement**. This Agreement constitutes the entire agreement and understanding between and among the undersigned Parties concerning the matters set forth herein. No other communications (written or oral) or documents, including without limitation, correspondence between counsel, shall be considered or construed as a part of or interpretation of this Agreement.

19.     **Modification of Agreement**. All negotiations relating to this Agreement are merged herein. There are no promises, agreements, conditions, undertakings, warranties, or representations, oral or written, express or implied, among the Parties as to such matters other than as set forth herein. No waiver, amendment, change, or modification of this Agreement shall be valid unless the same is made in writing and is signed by all Parties to this Agreement. The Parties agree not to make any claim at any time or place that this Agreement has been verbally modified in any respect whatsoever.

20.     **Neutral Construction**. This Agreement shall not be construed more strictly against one Party than against the other Parties by virtue of the fact that this Agreement may have been drafted or prepared by counsel for one of the Parties, it being recognized that all Parties to this Agreement have contributed substantially and materially to the preparation of this Agreement. Any uncertainty or ambiguity in the Settlement Agreement shall not be interpreted in favor of, or against any one Party.

21.     **Counterparts**. This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which when taken together shall constitute one and the same instrument. Such counterparts shall together constitute one and the same document. The Parties agree that facsimile, PDF, JPEG, and/or other electronically transmitted or scanned signatures shall be treated as original signatures for all purposes.

22.     **Severability of Unenforceable Provisions**. The provisions of this Agreement are severable. If any portion or provision of this Agreement (including, without implication of limitation, any portion or provision of any section of this Agreement) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable, such portion or provision shall be severed from this Agreement, and the remainder of this Agreement shall not be affected by such determination and severance, and shall be valid and enforceable to the fullest extent permitted by law.

23.    **Authorization, Non-Assignment**. Each of the Parties to this Agreement represents and warrants to each of the other parties that the signatory on behalf of each Party is authorized to sign for and bind that Party and that they are the sole holders of the claims alleged herein and have not assigned or transferred the rights to any claim that is the subject of this Agreement.

24.    **Good Faith**. The Parties hereby agree to cooperate and undertake all conditions and requirements of this Agreement in good faith.

25.    **Remedies**. Upon any default under this Agreement, the Parties' rights and obligations hereunder shall be enforced broadly, and shall include all available forms and procedures of relief at law and in equity, including without limitation, through injunctive relief, specific performance, as well as claims for monetary damages.

26.    **Warranties**. The Parties represent and warrant to each other that each is the sole and lawful owner of all right, title and interest in and to every claim and other matter which each releases in this Agreement and that they have not previously assigned or transferred, or purported to do so, to any person or other entity any right, title or interest in any such claim or other matter. In the event that such representation is false, and any such claim or matter is asserted against either Party by anyone who is the assignee or transferee of such a claim or matter, then the Party who assigned or transferred such claim or matter shall fully indemnify, defend and hold harmless the Party against whom such claim or matter is asserted and its successors from and against such claim or matter.

27.    **WAIVER OF JURY TRIAL**. EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION, DIRECTLY OR INDIRECTLY, ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT. EACH PARTY: (I) CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER; AND (II) ACKNOWLEDGES THAT SUCH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE PROVISIONS OF THIS SECTION.


IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed as of the Effective Date.


*REVIEWED, ACKNOWLEDGED, AND AGREED UPON by:*

**BONITA BAY CLUB, INC.**

By: _____

_____
     *[Print Name and Title]*

_____
Date


**KHC CAPITAL GROUP, LLC**

By: _____

_____
     *[Print Name and Title]*

_____
Date


**SANDADI MEDICAL CONSULTANTS, LLC**

By: _____

_____
     *[Print Name and Title]*

_____
Date


**MARCUS KELLEY**

_____

_____
Date

DocuSign Envelope ID: 5957DA9E-9522-4444-9473-073C8C683B1B

# ASSIGNMENT AGREEMENT

## ASSIGNMENT OF MEMBERSHIP INTERESTS
### (Membership Interests)

THIS ASSIGNMENT OF MEMBERSHIP INTERESTS (the "**Assignment**") is made and entered into as of May 19, 2022 (the "**Effective Date**") by Dennis Diaz ("Diaz"), Michael Tomas ("Tomas"), Raul Cruz ("Cruz"), Jason Altman ("Altman"), Jason Wigley ("Wigley"), Javier Lopez ("Lopez"), Western Bridge Capital, LLC, a Florida limited liability company ("WBC"), Mario Quintero ("Quintero"), Alex Quinones ("Quinones"), Juan Ojeda ("Ojeda"), David Riesco ("Riesco"), Sandadi Medical Consultants, LLC, a Florida limited liability company ("SMC"), and Kelley Anesthesia, LLC, a Florida limited liability company ("Kelley", KHC, Diaz, Tomas, Cruz, Altman, Wigley, Lopez, WBC, Quintero, Quinones, Ojeda, Riesco, and SMC collectively "**Assignor**" of their respective interest) and Irwin Naturals Inc. ("**Assignee**"). All capitalized terms used, but not defined, in this Assignment shall have the same meanings assigned to such terms in that certain Membership Interest Purchase Agreement dated as of April 17, 2022 (the "**Purchase Agreement**"), by and among Assignor, Assignees, Purchaser, the Company and Seller Parties.

WHEREAS, Diaz, Tomas, Cruz, and Altman (collectively, the "KCG Members") own all of the membership interest of KHC Capital Group, LLC, a Florida limited liability company ("KCG"), (the "KCG Membership Interest").

WHEREAS, KCG owns all of the membership interest of Ketamine Management, LLC, a Florida limited liability company ("KM") (the "KM Membership Interest").

WHEREAS, KCG owns all of the membership interest of Ketamine Health Centers, LLC, a Florida limited liability company ("KHC"), (the "Miami Membership Interest").

WHEREAS, Wigley, Lopez, WBC, Quintero, Quinones (the "Weston Members"), and KCG own all of the membership interest in Ketamine Health Centers of Weston, LLC, a Florida limited liability company ("KHC Weston") (the "Weston Membership Interest").

WHEREAS, Ojeda, WBC, Quintero (the "WPB Members"), and KCG own all of the membership interest in Ketamine Health Centers of West Palm Beach, LLC, a Florida limited liability company ("KHC WPB"), (the "WPB Membership Interest").

WHEREAS, Ojeda, Riesco (the "Orlando Members"), and KCG own all of the membership interest in Ketamine Health Centers of Orlando, LLC, a Florida limited liability company ("KHC Orlando"), (the "Orlando Membership Interest").

WHEREAS, SMC, Kelley (the "Bonita Members"), and KCG own all of the membership interest in Ketamine Health Centers at Bonita Springs, LLC, a Florida limited liability company ("KHC Bonita") (the "Bonita Interest")

Collectively the KCG Membership Interest, KM Membership Interest, Miami Membership Interest, Weston Membership Interest, WPB Membership Interest, Orlando Membership Interest, and the Bonita Interest are the "Membership Interests".

1

DocuSign Envelope ID: 5957DDAF-9539-4441-9473-0F7C8C693B1B

For good and valuable consideration, the receipt and adequacy of which are acknowledged, the parties agree as follows:

1.    Assignor hereby sells, transfers, assigns, conveys, and otherwise delivers to Assignee one hundred percent (100%) of the Membership Interests and all of Assignor's rights in and to the Membership Interests.

2.    Assignee hereby accepts the assignment with respect to the Membership Interests.

3.    This Assignment will be governed by and construed in accordance with the laws of the State of California, excluding the choice or conflicts of law rules.

4.    This Assignment has been executed, delivered, and construed in accordance with the Purchase Agreement.

5.    This Assignment may be executed in any number of counterparts, each of which will be deemed to be an original and all of which together will constitute one instrument.  Signatures of the parties transmitted by facsimile or other electronic transmission shall be deemed to be their original signatures for all purposes.

[*Signatures on following page*]

The parties have executed this Assignment as of the Effective Date.

<u>Assignor/Members:</u>

Dennis Diaz

Michael Tomas

Raul Cruz

Jason Altman

Jason Wigley

Javier Lopez

Mario Quintero

Alex Quinones

Juan Ojeda

David Riesco

Western Bridge Capital, LLC
a Florida limited liability company

By: _____
Name: Johnny Williamescue

By: _____
Name: Evelyn Maria Kleiber

3

By: _____

Name: _Ritchie Antoine Zamis Fevrier_


**Sandadi Medical Consultants, LLC**

a Florida limited liability company


By _____

Name: _Jennifer Sandadi_


By: _____

Name: _Samith Sandadi_


**Kelley Anesthesia, LLC**

a Florida limited liability company


By: Marcus Kelley _____

Name: _Marcus Kelley_


<u>Assignee</u>:


**Irwin Naturals, Inc.**

a British Columbia corporation


KLEE IRWIN _____

Name: _Klee Irwin_

Title: __CEO__

4

*Executable*

## <u>MEMBERSHIP INTEREST PURCHASE AGREEMENT</u>

THIS MEMBERSHIP INTEREST PURCHASE AGREEMENT (this "<u>Agreement</u>"), is entered into and made on April 17, 2022 (the "<u>Effective Date</u>") by and among Irwin Naturals Inc. (the "Parent"), a British Columbia corporation and Irwin Naturals Emergence, Inc., a Nevada corporation (the "<u>Purchaser</u>"), KHC Capital Group, LLC, a Florida limited liability company ("<u>KCG</u>"), Ketamine Health Centers, LLC, a Florida limited liability company ("<u>KHC</u>"), Ketamine Management, LLC, a Florida limited liability company ("<u>KM</u>"), Ketamine Health Centers of Weston, LLC, a Florida limited liability company ("<u>KHC Weston</u>"), Ketamine Health Centers of West Palm Beach, LLC, a Florida limited liability company ("<u>KHC WPB</u>"), Ketamine Health Centers of Orlando, LLC, a Florida limited liability company ("<u>KHC Orlando</u>"), Ketamine Health Centers, LLC of Bonita Springs, a Florida limited liability company ("<u>KHC Bonita</u>"; collectively with KCG, KHC, KM, KHC Weston, KHC WPB, and KHC Orlando, "the <u>Company</u>"), and Dennis Diaz ("<u>Diaz</u>"), Michael Tomas ("<u>Tomas</u>"), Raul Cruz ("<u>Cruz</u>"), Jason Altman ("<u>Altman</u>"), Jason Wigley ("<u>Wigley</u>"), Javier Lopez ("<u>Lopez</u>"), Western Bridge Capital, LLC, a Florida limited liability company ("<u>WBC</u>"), Mario Quintero ("<u>Quintero</u>"), Alex Quinones ("<u>Quinones</u>"), Juan Ojeda ("<u>Ojeda</u>"), David Riesco ("<u>Riesco</u>"), Sandadi Medical Consultants, LLC, a Florida limited liability company ("<u>SMC</u>"), and Kelley Anesthesia, LLC, a Florida limited liability company ("<u>Kelley</u>", KHC, Diaz, Tomas, Cruz, Altman, Wigley, Lopez, WBC, Quintero, Quinones, Ojeda, Riesco, and SMC and collectively with Company, the "<u>Seller</u>" or "<u>Seller Parties</u>").  Seller Parties, Parent, and Purchaser are each a "<u>Party</u>" and collectively, the "<u>Parties</u>".

## <u>RECITALS</u>:

WHEREAS, Diaz, Tomas, Cruz, and Altman (collectively, the "<u>KCG Members</u>") own all of the membership interest of KCG (the "<u>KCG Membership Interest</u>").

WHEREAS, KCG owns all of the membership interest of KM (the "<u>KM Membership Interest</u>").

WHEREAS, KCG owns all of the membership interest of KHC (the "<u>Miami Membership Interest</u>").

WHEREAS, Wigley, Lopez, WBC, Quintero, Quinones (the "<u>Weston Members</u>"), and KCG own all of the membership interest in KHC Weston (the "<u>Weston Membership Interest</u>").

WHEREAS, Ojeda, WBC, Quintero (the "<u>WPB Members</u>"), and KCG own all of the membership interest in KHC WPB (the "<u>WPB Membership Interest</u>").

WHEREAS, Ojeda, Riesco (the "<u>Orlando Members</u>"), and KCG own all of the membership interest in KHC Orlando (the "<u>Orlando Membership Interest</u>").

WHEREAS, SMC, Kelley (the "<u>Bonita Members</u>"), and KCG own all of the membership interest in KHC Bonita (the "<u>Bonita Interest</u>"; collectively with the KCG Membership Interest, KM Membership Interest, Miami Membership Interest, Weston Membership Interest, WPB Membership Interest, and Orlando Membership Interest, the "<u>Membership Interest</u>").

WHEREAS, the KCG Members, Weston Members, WPB Members, Orlando Members, and Bonita Members (each a "<u>Member</u>" and collectively, the "<u>Members</u>") collectively desire and intend to sell the Membership Interest to Purchaser at the price and on the terms and subject to the condition set forth below.

1

DocuSign Envelope ID: C55CA820-5F2A-4ACO-84CF-40B42BCA6B55

*Executable*

WHEREAS, the Purchaser desires and intends to acquire the Membership Interest from the Members at the price and on the terms and subject to the conditions set forth below. It should be noted that EBITDA was used as the threshold for consideration in the transaction because it represents the outcome of running an efficient and successful business as opposed to being based on any actions that would be solely taken to increase revenues on their own.

NOW, THEREFORE, in consideration of the premises and mutual agreements, covenants and provisions contained herein, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound hereby, agree as follows:

## ARTICLE I
### INCORPORATION OF RECITALS; PURCHASE AND SALE CONSIDERATION; WAIVER

(1)     Incorporation of Recitals. The Recitals set forth above are hereby incorporated into and made a part of this Agreement.

(2)     Purchase and Sale of Membership Interest. Subject to the terms and conditions of this Agreement, at the Closing (as defined below), the Members shall sell, convey, transfer, and assign, upon the terms and conditions hereinafter set forth, to Purchaser, free and clear of all Encumbrances, and Purchaser shall purchase and accept from the Members the Membership Interest, which comprises of all of the membership interest of the Company.

(3)     Payment of Purchase Price. Subject to the terms and condition set forth herein, the total purchase consideration (the "Purchase Consideration") for the Purchased Assets shall be, and paid, as follows:

(a)     At Closing, Parent will issue to the Members, in the form of Consideration Shares, the number of Consideration Shares equal to 1,066,667 Subordinate Voting Shares (as defined below) (the "Closing Consideration") as calculated in accordance with (4) of this Article I. The Consideration Shares will be allocated among the Members as set forth on Exhibit A attached hereto (the "Member Consideration Allocation"). Stock certificates in such amounts as set forth in the Member Consideration Allocation shall be delivered to the Members at Closing. The Consideration Shares representing the Closing Consideration will, when issued in accordance with the terms of this Agreement, be duly authorized, validly issued, fully paid and nonassessable.

(b)     At Closing, Purchaser will either, at no cost to Sellers, assume or payoff all existing indebtedness of Sellers described in Schedule 3.17 of the Disclosure Schedules attached hereto (the "Debt Assumption"). The assumption or payoff of such indebtedness by Purchaser will be described in Schedule 3.17 of the Disclosure Schedules attached hereto. For the purposes of clarification, such debt that is not paid off at Closing will still be owed by and in the name of Company, which shall be owned by Purchaser.

(c)     By no later than March 31, 2023, Parent will issue additional Consideration Shares to the Members in proportion to the Member Consideration Allocation, in an amount (the "First Earn Out Payment") that equals the difference between (i) ten (10) times the 2022 final EBITDA of the Company (the "2022 EBITDA") and (ii) the value, in US Dollars (at the time of Closing) of the Closing Consideration (the "Aggregate Value of Closing Consideration Shares"). On or prior to January 31, 2023, Purchaser and Parent will deliver to Seller a written statement (the "First Earn Out Statement") that includes, in reasonable detail, its calculation of the First Earn Out Payment (which shall in no event be less than zero), in a manner and on a basis consistent with the definitions set forth herein and the preparation of the sample calculation set forth on Exhibit B attached hereto, including (x) the 2022 EBITDA of the Company, (y) the Aggregate

*Executable*

Value of Closing Consideration Shares, and (z) the aggregate amount of Consideration Shares payable to the Members, representing the First Earn Out Payment, if any. Until the First Earn Out Payment is finally determined and paid to the Members in accordance with the terms hereof, Parent, Purchaser will make available to the Members reasonable access during normal business hours to all relevant work papers, schedules, memoranda and other documents prepared or relied upon by Parent and Purchaser (including its outside accountants, financial advisors and financial staff), as well as reasonable access to all such representatives, in each case to the extent that they relate to the determination of the First Earn Out Payment. Each of Parent and Purchaser shall, and shall cause its Affiliates and their respective representatives to, reasonably cooperate with Members and their representatives in their review of the information and documentation requested by Members and their representatives and respond to Members' and their representatives' questions and document requests in a timely manner. Such request shall be pursuant to prior notice of at least one (1) week. Members agree not to abuse such audit rights included herein and will make a good faith effort to coordinate such request as to mitigate any potential disruption to Purchaser and Parent. If the Members disagree with the computation of the First Earn Out Payment as reflected in the First Earn Out Statement, which may not include disputes over the standards of the calculation as set out and agreed to in the definitions herein, Members may, within thirty (30) days after receipt of the First Earn Out Statement, deliver a notice (an "Objection Notice") to Parent and Purchaser setting forth Members' calculation of the First Earn Out Payment. If the aspects of the First Earn Out Statement that remain subject to Members' objection (the "Disputed Items") are not resolved by the Parties within twenty (20) days after Seller's delivery of its Objection Notice, the Disputed Items will be submitted to arbitration and resolution by a single partner with an independent and impartial accounting firm selected in good faith by Parent and Members, which is not an accounting firm used by Parent, Purchaser, Members or any of their respective Affiliates (the "Accountant"). The Accountant will review the Disputed Items and will resolve the dispute with respect to all of the Disputed Items and, based on such determination, adopting all of Members' final calculations of the Disputed Items, all of Parent's/Purchaser's final calculations of the Disputed Items, or a position between the positions of the Parent/Purchaser and Members. The decision of the Accountant will be final and binding, and the costs and expenses of the Accountant will be split equally between Parent/Purchaser and Members. The Parties shall use their commercially reasonable efforts to cause the Accountant to render a written decision resolving the matters submitted to it within thirty (30) days following the submission thereof. The parties further agree that the Accountant shall not engage in any *ex-parte* communications with any of the Parties thereto (including any of their respective representatives). If such dispute is ongoing past the payment date set out in Article (I)(1)(c), such satisfaction of the First Earnout Payment shall not be due until thirty (30 days after the written decision resolving such matters.

(d)      Parent will issue additional Consideration Shares to the Members in proportion to the Member Consideration Allocation in an amount equal to Two Hundred Fifty Thousand and 00/100 US Dollars ($250,000) for each additional clinic (each a "Spoke Clinic") opened and operated by any Member of KHC, KHC Weston, KHC WPB, KHC Orlando, KHC Bonita, or KCG on behalf of the Purchaser that reaches an annualized EBITDA of One Hundred Twenty-Five Thousand and 00/100 US Dollars ($125,000.00) over any annualized 150-day rolling period in the three (3) years following the Closing Date (the "Second Earn Out"; collectively with the First Earn Out Payment, the "Earn Out Consideration"). ; provided, however, that in the case of any Spoke Clinic owned or operated by KCG (including any successor entity or assignee), such clinic must be opened and operated by another Member (other than KCG) in order for such clinic to be deemed a "Spoke Clinic" hereunder. The Second Earn Out can only be earned one (1) time for each qualifying Spoke Clinic up to a maximum of ten (10) Spoke Clinics. The Second Earn Out shall be payable and issued to the Members within sixty (60 days of a Spoke Clinic achieving such EBITDA threshold. On or prior to the six (6) month anniversary of the opening of any such Spoke Clinic, and on a quarterly basis thereafter, Purchaser and Parent will deliver to Members a written statement (the "Second Earn Out Statement") that includes, in reasonable detail, its calculation of the EBITDA of such Spoke Clinic, in a manner and on a basis consistent

3

with the definitions set forth herein and the preparation of the sample calculation set forth on Exhibit B attached hereto. Until the Second Earn Out is finally determined and paid to the Members in accordance with the terms hereof, Parent and Purchaser will make available to the Members reasonable access, during normal business hours to all relevant work papers, schedules, memoranda and other documents prepared or relied upon by Parent and Purchaser (including its outside accountants, financial advisors and financial staff), as well as reasonable access to all such representatives, in each case to the extent that they relate to the Spoke Clinics and the determination of the Second Earn Out, including with respect to the calculation of the EBITDA for any such Spoke Clinic. Such request shall be pursuant to prior notice of at least one (1) week. Members agree not to abuse such audit rights included herein and will make a good faith effort to coordinate such request as to mitigate any potential disruption to Purchaser and Parent. Each of Parent and Purchaser shall, and shall cause its Affiliates and their respective representatives to, reasonably cooperate with Members and their representatives in their review of the information and documentation requested by Members and their representatives and respond to Members' and their representatives' questions and document requests in a timely manner. If the Members disagree with the computation of EBITDA as reflected in any Second Earn Out Statement, which may not include disputes over the standards of the calculation as set out and agreed to in the definitions herein, the Members may, within thirty (30) days after receipt of the applicable Second Earn Out Statement, deliver a notice to Parent and Purchaser setting forth Members' calculation of the EBITDA for any such Spoke Clinic. Any dispute between Parent/Purchaser and Members will be resolved pursuant to the methodology set forth in Article I(3)(c) above, *mutatis mutandis*.

(e) Except as expressly set forth herein, from and after the Closing, Purchaser will have the right to conduct the business of the Company and the Spoke Clinics in its good faith discretion, consistent with prudent business practice. Notwithstanding the foregoing, during the period in which Members are entitled to receive any Earn Out Consideration, Purchaser agrees (i) not to, directly or indirectly take any action, or fail to take any action, or permit anything to be done in bad faith, with respect to the business of the Company or any Spoke Clinic with the purpose or effect of reducing the EBITDA of the Company, the EBITDA of any Spoke Clinic, or otherwise reducing the amount of, or avoiding the making of, the Earn Out Consideration, (ii) to cause the books and records of the Company and each Spoke Clinic to be maintained in a manner so that the EBITDA of the Company and the EBITDA of any Spoke Clinic may be properly determined, calculated and reviewed in accordance with the terms of this Agreement, (iii) it will maintain sufficient working capital for the operation of the Company's and each Spoke Clinic's business substantially in its current form, and (iv) it shall not divert revenues away from the Company or any of its subsidiaries or any Spoke Clinics.

(4) The proportion of Subordinate Voting Shares versus Proportionate Voting Shares to be issued in satisfaction of the Closing Consideration and any Earn-Out Consideration will be solely determined in good faith by Purchaser based on tax and legal advice of Purchaser, after giving consideration to the impact of same on the foreign private issuer status of Irwin Naturals Inc. The Closing Consideration shall be satisfied by the issuance by Irwin Naturals Inc. of such number of Consideration Shares based on the volume weighted average closing price of the Subordinate Voting Shares on the facilities of the Canadian Securities Exchange (the "CSE") or such other recognized Canadian stock exchange on which the Subordinate Voting Shares are then trading for the twenty (20) trading days immediately prior to the Effective Date, or at the time any  is vested, or such other price as may be mandated by the applicable policies of such exchange or agreed upon by the parties within such applicable policies.

(5) Defined Terms. The following terms shall have the following meanings when used in this Agreement:

*Executable*

(a)  "Action" means any suit, action, claim, dispute, investigation, agency review, hearing, arbitration, litigation or similar proceeding at law or in equity before any Governmental Entity, contractor of a Governmental Entity, arbitration panel or mediator.

(b)  "Actual Fraud" means willful misconduct, intentional fraud, criminal actions, or knowing or intentional material breach of any representation or warranty in this Agreement

(c)  "Affiliate" of a Person means any other Person that directly or indirectly, through one or more intermediaries, controls, is Controlled by, or is under common Control with, such Person.

(d)  "Business" means the operation of the Ketamine Health Centers defined in the Recitals.

(e)  "Code" means the Internal Revenue Code of 1986, as amended from time to time.

(f)  "Consideration Shares" means a combination of subordinate voting shares of Irwin Naturals Inc. (the "Subordinate Voting Shares") and/or proportionate voting shares of Irwin Naturals Inc. (the "Proportionate Voting Shares").

(g)  "Control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

(h)  "Disclosure Schedules" means the disclosure schedules delivered by concurrently with the execution, closing, and delivery of this Agreement.

(i)  "EBITDA" shall means earnings before interest, taxes, depreciation, and amortization determined in accordance with GAAP consistently applied.

(j)  "Encumbrance(s)" means any lien, charge, assessment, liability, agreement, lease, judgment, claim, right (including without limitation any franchise rights of any third party), demand, security interest, mortgage, pledge, easement, reservation, restriction, covenant, encumbrance and other exception of any nature whatsoever.

(k)  "Fundamental Representation" means the representations set forth in Article III(A)(1), (2) and (3) and Article III(B)(1), (2) and (3).

(l)  "GAAP" means generally accepted accounting principles in effect in the United States, consistently applied.

(m)  "Governmental Authority" means any (a) nation, state, commonwealth, province, territory, county, municipality, district or other jurisdiction of any nature, or any political subdivision thereof, (b) federal, state, local, municipal, foreign or other government or (c) governmental or quasi-governmental authority of any nature (including any governmental division, department, agency, commission, instrumentality, official, organization, body, contractor, agent or other entity and any court, arbitrator or other tribunal).

(n)  "Governmental Order" means any order, writ, judgment, injunction, decree, determination, penalty, or award entered by or with any Governmental Authority.

DocuSign Envelope ID: C5CAB39C-5E9A-4AC0-A4CF-40B43BC4C355

*Executable*

(o)      "Law" means any statute, law, ordinance, regulation, rule, code, treaty, or other requirement of any Governmental Authority.

(p)      "Liabilities" means liabilities, obligations, or commitments of any nature whatsoever, whether asserted or unasserted, known or unknown, absolute or contingent, accrued or unaccrued, matured or unmatured, or otherwise.

(q)      "LLC Agreement" means that certain limited liability company agreement of the each KCG, KHC, KM, KHC Weston, KHC WPB, KHC Orlando and KHC Bonita.

(r)      "Material Adverse Effect" means any event, occurrence, fact, condition or change that is materially adverse to (a) the business, results of operations, financial condition or assets of the Company, or (b) the ability of Sellers to consummate the transactions contemplated hereby; provided, however, that "Material Adverse Effect" shall not include any event, occurrence, fact, condition or change, directly or indirectly, arising out of or attributable to: (i) general economic or political conditions; (ii) conditions generally affecting the industries in which the Company operates; (iii) acts of war (whether or not declared), armed hostilities or terrorism; (iv) any action required or permitted by this Agreement or any action taken (or omitted to be taken) with the written consent of or at the written request of Purchaser; (v) any changes in applicable accounting rules; (vi) any natural or man-made disaster or acts of God; (vii) any epidemics, pandemics, disease outbreaks, or other public health emergencies; or (viii) any failure by the Company to meet any internal or published projections, forecasts or revenue or earnings predictions (provided that the underlying causes of such failures (subject to the other provisions of this definition) shall not be excluded).

(s)      "Members' Knowledge" means the actual knowledge of Diaz, Tomas, Cruz or Altman.

(t)      "Organizational Documents" means the articles of incorporation, certificate of incorporation, charter, bylaws, articles or certificate of formation, regulations, operating agreement, LLC Agreement, and all other similar documents, instruments or certificates executed, adopted, or filed in connection with the creation, formation, or organization of a Person, including any amendments thereto.

(u)      "Person" means any individual, partnership, limited liability company, limited liability partnership, corporation, association, joint stock company, trust, joint venture, or unincorporated organization or Governmental Authority (or any department, agency or political subdivision thereof).

(v)      "Pre-Closing Tax Period" means any taxable period ending on or before the Closing Date and, with respect to any taxable period beginning before and ending after the Closing Date, the portion of such taxable period ending on and including the Closing Date.

(w)      "Taxes" means all federal, state, local, foreign, and other income, gross receipts, sales, use, production, ad valorem, transfer, franchise, registration, profits, license, lease, service, service use, withholding, payroll, employment, unemployment, estimated, excise, severance, environmental, stamp, occupation, premium, property (real or personal), real property gains, windfall profits, customs, duties, or other taxes, fees, assessments, or charges of any kind whatsoever, together with any interest, additions, or penalties with respect thereto and any interest in respect of such additions or penalties

DocuSign Envelope ID: C55CA839C-3F2A-4AC0-94CF-40B43BSA5B55

*Executable*

## ARTICLE II
## DUE DILIGENCE; CLOSING; DELIVERABLES

(1)      Due Diligence. Purchaser, or its designated representative(s), shall have fourteen (14) days from the Effective Date (the "Due Diligence Period") in which to conduct its inspections of the books, records, documents, personnel, properties and facilities relating to Company's' operations and/or Company's Clinic, and all other relevant legal, financial, and technical data relating thereto (the "Due Diligence Inspections"). The Company shall use commercially reasonable efforts to arrange for all the collection and production or access to the items necessary for Purchaser to conduct the Due Diligence Inspections and shall cooperate with Purchase to effectuate Purchaser's Due Diligence Inspections; *provided, however*, that any such inspections at any facility of the Company shall be conducted during normal business hours upon reasonable advance notice to Sellers, under the supervision of Sellers' personnel and in such a manner as not to interfere with the normal operations of the Company. All requests by Purchaser for access pursuant to this Section shall be submitted or directed exclusively to Tomas and Julieta Radiche or such other individuals as Sellers may designate in writing from time to time. Prior to the Closing, without the prior written consent of Sellers, which may not be unreasonably withheld, neither Parent or Purchaser or their representatives shall knowingly contact any employees, suppliers or customers of the Company. At Purchaser's election, Purchaser may extend the Due Diligence Period for an additional fifteen (15) days (the "Extended Due Diligence Period") by giving written notice to Seller at least three (3) days prior to the expiration of the Due Diligence Period. Purchaser, in its sole discretion, may elect to waive any portion of the Due Diligence Period or Extended Due Diligence Period, as the case may be, and proceed to Closing as provided in Article II(2).

(2)      Closing. The closing of the transactions contemplated by this Agreement (the "Closing") shall take place through the electronic exchange of signatures as permitted by applicable Law within ten (10) business days after the last of the conditions set forth in Article II(5) have been satisfied or waived, as the case may be, or as otherwise mutually agreed by the Seller and Purchaser (the "Closing Date").

(3)      Deliveries by Sellers.  Subject to the terms and conditions of this Agreement, at or before the Closing, Sellers shall deliver or cause to be delivered to Purchaser (collectively the "Seller's Closing Deliverables"), the following:

(a)      Employment Agreement, in the form attached hereto as Exhibit C duly executed by Cruz, Lopez, Dr. Samith Sandadi ("Sandadi"), and Dr. Rosemary Daly ("Daly");

(b)      Assignment of Membership Interest duly executed by each Member, in the form attached hereto as Exhibit D;

(c)      Copies of all third-party approvals and consents to the transaction set forth in Schedule 2.3 hereto;

(d)      Certificates of good standing from the Secretary of State of the State of Florida for each company comprising Company, dated no sooner than ten (10) days prior to the Closing;

(e)      Member's certificate for each company comprising Company dated no sooner than ten (10) days prior to the Closing;

(f)      A copy of the resolutions for each company comprising Company authorizing such company to consummate the transactions contemplated herein;

(g)     Proof of valid medical and DEA licenses, in good standing, in the States of Florida for Cruz, Lopez, Sandadi and Daly; and

(h)     All other documents Purchaser reasonably determines are necessary to consummate the transactions contemplated by this Agreement.

(4)     <u>Deliveries by Purchaser</u>.  Subject to the terms and conditions of this Agreement, at or before the Closing and upon receipt of Seller's Closing Deliveries in escrow, Purchaser shall deliver or cause to be delivered to the Members (collectively, the "<u>Purchaser's Closing Deliveries</u>"), the following:

(a)     the issuance of the Closing Consideration to the Members, which will be allocated among the Members as set forth in the Member Consideration Allocation, including duly authorized, validly issued, fully paid and nonassessable stock certificates, or direct registration receipt, representing the Closing Consideration in such amounts as set forth in the Member Consideration Allocation;

(b)     Certificates of good standing from the Province of British Columbia and the State of Nevada for each of Parent and Purchaser, dated no sooner than ten (10) days prior to the Closing;

(c)     Officer's certificate for each of Parent and Purchaser dated no sooner than ten (10) days prior to the Closing;

(d)     A copy of the resolutions for each of Parent and Purchaser authorizing such company to consummate the transactions contemplated herein; and

(e)     All other documents Sellers reasonably determine are necessary to consummate the transactions contemplated by this Agreement.

(5)     <u>Conditions Precedent</u>. The obligations of the Purchaser and Sellers to consummate the transaction contemplated hereby will be subject to the fulfillment or waiver of the following conditions precedent:

a.      <u>Purchaser's Conditions Precedent</u>. Purchaser's obligation to consummate the transaction contemplated hereby will be subject to the fulfillment or waiver of the following:

i.      receipt of Seller's Closing Deliverables;

ii.     the results of Due Diligence Investigations of the Company, its assets and financial condition being reasonably satisfactory to Purchaser in all material respects;

iii.    no Material Adverse Effect will have occurred and be continuing as to the Company as of the Closing Date;

iv.     the representations and warranties of Sellers contained in <u>Article III</u> shall be true and correct in all respects as of the Closing Date with the same effect as though made at and as of such date (except those representations and warranties that address matters only as of a specified date, which shall be true and correct in all respects as of that specified date), except where the failure of such representations and warranties to be true and correct would not have a Material Adverse Effect;

DocuSign Envelope ID: C55CAB29C-5F9A-4AC0-84CF-40B43B5A5B55

*Executable*

        v.      material compliance by Sellers with the terms of Agreement;

        vi.      there will have been no material breach of the covenants of Sellers contained in this Agreement; and

        vii.      no Governmental Authority shall have enacted, issued, promulgated, enforced or entered any Governmental Order which is in effect and has the effect of making the transactions contemplated by this Agreement illegal, otherwise restraining or prohibiting consummation of such transactions or causing any of the transactions contemplated hereunder to be rescinded following completion thereof.

        b.      <u>Seller's Conditions Precedent</u>. Sellers' obligation to consummate the transaction contemplated hereby will be subject to the fulfillment or waiver of the following:

        i.      receipt of Purchaser's Closing Deliverables;

        ii.      evidence in form and substance satisfactory to Sellers that all of the indebtedness of the Company, as set forth in Schedule 3.17 hereto, has been assumed by Purchaser or paid off in full by Purchaser at Closing, in accordance with the amounts and terms set forth in Schedule 3.17 hereto;

        iii.      no Material Adverse Effect will have occurred and be continuing as to the Parent or Purchaser as of the Closing Date;

        iv.      material compliance by Parent and Purchaser with the terms of this Agreement;

        v.      there will have been no material breach of the covenants of Parent or Purchaser contained in this Agreement;

        vi.      no Governmental Authority shall have enacted, issued, promulgated, enforced or entered any governmental order which is in effect and has the effect of making the transactions contemplated by this Agreement illegal, otherwise restraining or prohibiting consummation of such transactions or causing any of the transactions contemplated hereunder to be rescinded following completion thereof; and

        vii.      Seller shall operate Company consistent with their ordinary course of business prior to Closing, and any capital expenditure, indebtedness, payment, withdrawal, or other monetary payment exceeding $25,000 in the aggregate shall be approved by Purchaser.

## ARTICLE III
## <u>REPRESENTATIONS AND WARRANTIES</u>

        A.      Except as set forth in the schedule delivered by Members to Purchaser concurrently with the execution and delivery of this Agreement and incorporated by reference herein (the "<u>Disclosure Schedule</u>"), each Member and the Company, jointly and severally, in each case as applicable, represents and warrants to Purchaser as follows:

        (1)      <u>Organization and Good Standing</u>.

DocuSign Envelope ID: C5CA829C-5E0A-4AC0-94CF-40B13DC6SB55

*Executable*

(a)        The Company is duly organized, validly existing, and in good standing (or its equivalent) under the laws of its jurisdiction of incorporation or organization, and is duly qualified to do business as a foreign and/or domestic entity and is in good standing (or its equivalent) under the laws of the State of Florida, which, to the Members' Knowledge constitute every jurisdiction in which either the ownership or use of the assets or properties owned or used by the Company, or the nature of the activities conducted by the Company, requires such qualification, except where the failure to be so qualified would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect. The Company has the full power and authority to carry on its business as it is now being conducted and to own, lease and operate its properties and assets.

(b)        Section 3.01(b) of the Disclosure Schedule lists as to the Company, its type of entity, its jurisdiction of organization, and its stockholders, members, partners, or other equity holders, as applicable. The Members have made available to Purchaser, copies of the Organizational Documents of the Company, as currently in effect.

(c)        Section 3.01(c) of the Disclosure Schedule lists each individual Member, his or her state of residence.

(2)        Authority; No Conflict.

(a)        Each Member has all necessary power and authority to execute and deliver this Agreement, to perform his, her or its obligations hereunder and to consummate the transactions contemplated hereby. The execution and delivery of this Agreement by Members and the consummation by Members of the transactions contemplated hereby have been duly and validly authorized by all necessary action and no other proceedings on the part of Members are necessary to authorize this Agreement or to consummate the transactions contemplated hereby. This Agreement has been duly and validly executed and delivered by Members and, assuming the due execution and delivery by all other parties hereto, constitutes the legal, valid and binding obligations of Members, enforceable against such Persons in accordance with its terms subject to the effect of (i) applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relative to the rights of creditors generally and (ii) rules of law and equity governing specific performance, injunctive relief and other equitable remedies.

(b)        The Members have no option or other right to acquire any additional securities of the Company. There are no rights, options, contracts or obligations outstanding in favor of any party for the purchase of the Membership Interest except as contemplated by the transactions described in this Agreement or the LLC Agreement, nor are there any agreements to which Members are a party with respect to the sale or other disposition of the Membership Interest, voting of the Membership Interest, or otherwise affecting the Company or the ownership, control, or management of the Company except as contemplated by the transactions described in this Agreement or as set forth in the LLC Agreement.

(c)        Neither the execution and delivery of this Agreement nor the consummation of any of the transactions contemplated hereby do or will, directly or indirectly (with or without notice or lapse of time or both), (i) contravene, conflict with, or result in a violation of any provision of the organizational documents of the Members; (ii) contravene, conflict with, or result in a violation of, any applicable Laws to which Members, or any of the assets owned or used by the Company, is subject; (iii) contravene, conflict with, or result in a violation of any of the material terms or material requirements of, or give any Governmental Authority the right to revoke, withdraw, suspend, cancel, terminate, or materially modify, any Governmental Authorization that is held by the Company, or that otherwise relates to the business of, or any of the assets owned or used by, the Company; (iv) assuming all third-party consents listed on Schedule 2.3 have been obtained, contravene, conflict with, or result in a violation or breach of any

10

DocuSign Envelope ID: C56A229C-5F2A-4AC0-94CF-40B13DC4CB55

*Executable*

provision of, or constitute a default under, or give any Person the right to accelerate the maturity or performance of, or to cancel, terminate, or modify, any Contract or any other material lease or material agreement to which the Company or any Member is a party; (v) require a consent from any Person (including any Governmental Authority), except for those consents set forth in the Disclosure Schedule; or (vi) result in the imposition or creation of any Encumbrances upon or with respect to any of the assets of the Company or equity interests in the Company held by the Members.

    (3)    <u>Capitalization</u>.

    (a)    Each Member is the record owner of and has good and valid title to the Membership Interests, free and clear of all Encumbrances. The Membership Interests constitute 100% of the total issued and outstanding membership interests in the Company. The Membership Interests have been duly authorized and are validly issued, fully-paid, and non-assessable. Upon consummation of the transactions contemplated by this Agreement, Purchaser shall own all of the Membership Interests, free and clear of all Encumbrance.

    (b)    The Membership Interests were issued in compliance in all material respects with applicable Law. The Membership Interests were not issued in violation of the Governing Documents or any other agreement, understanding, arrangement, or commitment to which any Seller or the Company is a party and are not subject to or in violation of any preemptive or similar rights of any Person.

    (c)    Except as set out in <u>Section 3.03(c)</u> of the Disclosure Schedules, there are no outstanding or authorized options, warrants, convertible securities, or other rights, agreements, or commitments of any character relating to the membership interests in the Company or obligating any Seller or the Company to issue or sell any membership interests (including the Membership Interests), or any other interest, in the Company. Other than the Governing Documents, there are no voting trusts, proxies, or other agreements or understandings in effect with respect to the voting or transfer of any of the Membership Interests.

    (4)    <u>Financial Statements</u>. During the Due Diligence Period, the Company has delivered or will deliver to Purchaser (collectively as presented hereunder, the financial statements of the Company (balance sheet, statement of operations, changes in Members' equity and statement of cash flows) for the fiscal years ended 2020, 2021, and 2022, up to the month February ("<u>Financial Statements</u>"), to be reviewed and audited by Purchaser. The Financial Statements fairly present in all material respects the financial condition, operating results and cash flow of the Company.

    (5)    <u>No Undisclosed Liabilities</u>. Section 3.05 of the Disclosure Schedules sets forth a complete and accurate listing of all Persons (a) to which the Company is indebted as of the Effective Date, or (b) that as of the Effective Date possess any Membership Interest, any assets or properties of the Company, or any assets securing any portion of Company indebtedness (each such Person, a "<u>Creditor</u>"), together with the amount and description of the indebtedness owed to each Creditor as of the Effective Date.

    (6)    <u>Absence of Certain Changes</u>.

    (a)    Since December 31, 2021, the Company has conducted its business only in the ordinary course of business, and except as set forth in Section 3.06 of the Disclosure, has not:

    (i)    suffered any change in its properties, assets, reserves, business, financial condition or prospects, except for such changes that have not resulted in a Material Adverse Effect;

DocuSign Envelope ID: C59A839C-5F9A-4AC0-94CF-40B13BC45B55

*Executable*

(ii)      suffered any loss, destruction, theft or other casualty affecting any of its properties, assets or business (whether or not covered by insurance), except for any losses, destruction, theft or other casualty that have not resulted in a Material Adverse Effect;

(iii)      cancelled, compromised, waived or released any right or claim (or series of related rights and claims) outside the ordinary course of business;

(iv)      been subject to any other event or condition that has resulted in a Material Adverse Effect;

(v)      borrowed or agreed to borrow any funds, or incurred or assumed or became subject to, whether directly or by way of guarantee or otherwise, any liability, except liabilities incurred in the ordinary course of business;

(vi)      made any changes in or amendments to any of its licenses, Governmental Authorizations, leases or other agreements (including the applicable medical licenses), except for such changes that have not resulted in a Material Adverse Effect; and

(vii)      made any change to its Organizational Documents.

(7)      <u>Properties and Assets</u>.

(a)      <u>Section 3.07(a)</u> of the Disclosure Schedule sets forth a true, complete and correct list of all tangible personal property with a value in excess of $5,000.00, as to the Company, regardless of whether owned or leased by the Company as of the Effective Date. All tangible personal property used by the Company in the conduct of the Business is either owned by the Company or leased by the Company.

(b)      The Company has good, valid and marketable title to all of its owned material properties and owned assets, real, personal and mixed, tangible and intangible.

(8)      <u>Subsidiaries</u>. Except as set forth on <u>Schedule 3.08</u> of the Disclosure Schedules, the Company does not own, beneficially or of record, any equity interest in any corporation, limited liability company, partnership, joint venture or other entity.

(9)      <u>Contracts</u>. Section 3.09 of the Disclosure Schedule sets forth a complete and correct list of material contracts, agreements, leases, licenses and obligations to which the Company or any of the Members (solely relating to the Business) is a party or bound (the "<u>Contracts</u>") as of the Effective Date and that provide for annual payments in excess of $10,000.00. The Contracts are valid, binding and enforceable in accordance with their respective terms, and to the Members' Knowledge are in full force and effect

(10)      <u>Compliance with Laws; Permits</u>.

(a)      To Members' Knowledge, the Company has complied, and is now complying, with all Laws, in all material respects, applicable to it or its business, properties, or assets, except where the failure to be in compliance would not have a Material Adverse Effect.

(b)      All permits, licenses, franchises, approvals, registrations, certificates, variances, and similar rights obtained, or required to be obtained, from Governmental Authorities (collectively, "<u>Permits</u>") that are required for the Company to conduct its business as presently conducted have been obtained and are valid and in full force and effect. Section 3.10(b) of the Disclosure Schedules list all current

12

Permits issued to the Company and to Members' Knowledge no event has occurred that would reasonably be expected to result in the revocation or lapse of any such Permit.

    (11)    <u>Legal Proceedings; Governmental Orders</u>.

    (a)    As of the Effective Date, there are no claims, actions, causes of action, demands, lawsuits, arbitrations, inquiries, audits, notices of violation, proceedings, litigation, citations, summons, subpoenas, or investigations of any nature, whether at law or in equity (collectively, "<u>Actions</u>") pending or, to Company or Members' Knowledge, threatened against or by the Company, any Seller, or any Affiliate of any Seller: (i) relating to or affecting the Company or any of the Company's properties or assets; or (ii) that challenge or seek to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement and to Members' Knowledge no event has occurred that may give rise to, or serve as a basis for, any such Action.

    (b)    There are currently no outstanding Governmental Orders against, relating to, or affecting the Company or any of its properties or assets.

    (12)    <u>Insurance</u>. <u>Section 3.12</u> of the Disclosure Schedules sets forth a true and complete list of all current policies or binders of insurance maintained by any Seller or its Affiliates (including the Company) and relating to the assets, business, operations, employees, officers, and Members (collectively, the "<u>Insurance Policies</u>"). Such Insurance Policies: (a) are in full force and effect as of the Effective Date; (b) are valid and binding in accordance with their terms; (c) are provided by carriers who, to Members' Knowledge are financially solvent; and (d) have not been subject to any lapse in coverage. Neither the Sellers nor the Company has received any written notice of cancellation of, premium increase with respect to, or alteration of coverage under, any of such Insurance Policies. As of the Effective Date, all premiums due on such Insurance Policies have been paid. None of Sellers nor the Company is in default under, or has otherwise failed to comply with, in any material respect, any provision contained in any Insurance Policy. To Members' Knowledge, the Insurance Policies are of the type and in the amounts customarily carried by Persons conducting a business similar to the Company and are sufficient for compliance with all applicable Laws and Contracts to which the Company is a party or by which it is bound.

    (13)    <u>Employee Benefit Matters</u>.

    (a)    <u>Section 3.13(a)</u> of the Disclosure Schedules contains a true and complete list of each material "employee benefit plan" as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974 (as amended, and including the regulations thereunder, "<u>ERISA</u>"), whether or not written and whether or not subject to ERISA, and each supplemental retirement, compensation, employment, consulting, profit-sharing, deferred compensation, incentive, bonus, equity, change in control, retention, severance, salary continuation, and other similar agreement, plan, policy, program, practice, or arrangement which is or has been established, maintained, sponsored, or contributed to by the Company or under which the Company has or may have any Liability (each, a "<u>Benefit Plan</u>").

    (b)    For each Benefit Plan, Sellers have made available to Purchaser accurate, current, and complete copies of each of the following: (i) the plan document with all amendments, or if not reduced to writing, a written summary of all material plan terms; (ii) any written contracts and arrangements related to such Benefit Plan, including trust agreements or other funding arrangements, and insurance policies, certificates, and contracts; and (iii) any material notices, audits, inquiries, or other correspondence from, or filings with, any Governmental Authority relating to the Benefit Plan.

DocuSign Envelope ID: C56A329C-5E2A-4AC0-94CF-40B13BC45B55

*Executable*

(c)  Each Benefit Plan and related trust has been established, administered, and maintained in accordance in all material respects with its terms and in compliance in all material respects with all applicable Laws (including ERISA and the Code). Nothing has occurred with respect to any Benefit Plan that has subjected or could subject the Company or, with respect to any period on or after the Closing Date, Purchaser to a civil action, penalty, surcharge, or Tax under applicable Law or which would jeopardize the previously determined qualified status of any Benefit Plan. To Members' Knowledge, all benefits, contributions, and premiums relating to each Benefit Plan have been timely paid in accordance in all material respects with the terms of such Benefit Plan and all applicable Laws and accounting principles. To Members' Knowledge, benefits accrued under any unfunded Benefit Plan have been paid, accrued, or adequately reserved for to the extent required by GAAP.

(d)  The Company has not incurred and, to Members' Knowledge, does not reasonably expect to incur: (i) any Liability under Title I or Title IV of ERISA, any related provisions of the Code, or applicable Law relating to any Benefit Plan; or (ii) any Liability to the Pension Benefit Guaranty Corporation. No complete or partial termination of any Benefit Plan has occurred or, to Members' Knowledge, is expected to occur.

(e)  The Company has not now or at any time within the previous six years contributed to, sponsored, or maintained: (i) any "multiemployer plan" as defined in Section 3(37) of ERISA; (ii) any "single-employer plan" as defined in Section 4001(a)(15) of ERISA; (iii) any "multiple employer plan" as defined in Section 413(c) of the Code; (iv) any "multiple employer welfare arrangement" as defined in Section 3(40) of ERISA; (v) a leveraged employee stock ownership plan described in Section 4975 (e)(7) of the Code; or (vi) any other Benefit Plan subject to required minimum funding requirements.

(f)  Other than as required under Sections 601 to 608 of ERISA or other applicable Law, no Benefit Plan provides post-termination or retiree welfare benefits to any individual for any reason.

(14)  <u>Employment Matters</u>.

(a)  <u>Section 3.14(a)</u> of the Disclosure Schedules lists: (i) all employees, independent contractors, and consultants of the Company; and (ii) for each individual described in clause (i), (A) the individual's title or position, hire date, and compensation, (B) any Contracts entered into between the Company and such individual, and (C) the fringe benefits provided to each such individual. All compensation payable to all employees, independent contractors, or consultants of the Company for services performed on or prior to the Effective Date have been paid in full.

(b)  The Company is not, and has not been, a party to or bound by any collective bargaining agreement or other Contract with a union or similar labor organization (collectively, "<u>Union</u>"), and no Union has represented or purported to represent any employee of the Company. There has never been, nor has there been any threat of, any strike, work stoppage, slowdown, picketing, or other similar labor disruption or dispute affecting the Company or any of its employees.

(c)  The Company is and has been in compliance in all material respects with: (i) all applicable employment Laws and agreements regarding hiring, employment, termination of employment, plant closings and mass layoffs, employment discrimination, harassment, retaliation, and reasonable accommodation, leaves of absence, terms and conditions of employment, wages and hours of work, employee classification, employee health and safety, engagement and classification of independent contractors, payroll taxes, and immigration with respect to all employees, independent contractors, and contingent workers; and (ii) all applicable Laws relating to the relations between it and any labor organization, trade union, work council, or other body representing employees of the Company.

DocuSign Envelope ID: C56A329C-5E9A-4AC0-94CF-40B13BC45B55

*Executable*

(15)     Taxes.

(a)     All returns, declarations, reports, information returns and statements, and other documents relating to Taxes (including amended returns and claims for refund) (collectively, "Tax Returns") required to be filed by the Company on or before the Closing Date have been timely filed. Such Tax Returns are true, correct, and complete in all material respects. All Taxes due and owing by the Company (whether or not shown on any Tax Return) have been timely paid. Except as set forth in Section 3.15(a) of the Disclosure Schedules, no extensions or waivers of statutes of limitations have been given or requested with respect to any Taxes of the Company. Sellers have delivered to Purchaser copies of all Tax Returns and examination reports of the Company and statements of deficiencies assessed against, or agreed to by, the Company for all Tax periods ending after 2018 or a later thereafter if such entity was not in existence as of 2018.

(b)     The Company has withheld and paid each Tax required to have been withheld and paid in connection with amounts paid or owing to any employee, independent contractor, creditor, customer, member, or other party, and complied in all material respects with all information reporting and backup withholding provisions of applicable Law.

(c)     The Company has not been a member of an affiliated, combined, consolidated, or unitary Tax group for Tax purposes. The Company has no Liability for Taxes of any Person (other than the Company) under Treasury Regulations Section 1.1502-6 (or any corresponding provision of state, local, or foreign Law), as transferee or successor, by contract, or otherwise.

(d)     As of the Effective Date, there are no liens for Taxes (other than for current Taxes not yet due and payable) upon the assets of the Company.

(e)     The Company has been treated as a disregarded entity for U.S. federal, state, and local income tax purposes since its formation.

(f)     No Seller is a "foreign person" as that term is used in Treasury Regulations Section 1.1445-2.

(16)     Consents. The execution and delivery of this Agreement, the consummation of the transactions contemplated hereby and the performance by Member of this Agreement in accordance with its terms and conditions will not require the approval or consent of any Governmental Authority.

(17)     Debt Schedule. Section 3.17 of the Disclosure Schedules set forth a complete, true, and accurate list of all debts to be assumed or paid off in full by Purchaser as part of the Debt Assumption and there are no other Company debts or obligations not otherwise disclosed on Section 3.17 of the Disclosure Schedules.

(18)     Medical License. KHC, KHC Weston, KHC WPB, KHC Bonita, and KHC Orlando have only performed services to patients through duly licensed physicians or medical providers.   Seller represents that the Seller is not currently nor has been excluded from participation in any federal or state health care program.

(19)     Securities.

a.     Purchase Entirely for Own Account.   This Agreement is made with in reliance upon Seller Parties' representation to Purchaser and Parent, which by Seller Parties' execution of this

DocuSign Envelope ID: C59A3B9C-5E9A-4AC0-94CF-49B13DC4CBB5

Agreement, Seller Parties hereby confirm, that the Consideration Shares to be acquired by the Seller Parties will be acquired for investment for Seller Parties' own account, not as a nominee or agent, and not with a view to the resale or distribution of any part thereof in violation of the Securities Act or applicable state law, and that Seller Parties has no present intention of selling, granting any participation in, or otherwise distributing the same in violation of the Securities Act or applicable state law. By executing this Agreement, Seller Parties further represents that Seller Parties do not presently have any contract, undertaking, agreement or arrangement with any Person to sell, transfer or grant participations to such Person or to any third Person, with respect to any of the Consideration Shares.

        b.      <u>Disclosure of Information</u>.  Seller Parties have had an opportunity to discuss Parent's business, management, financial affairs and the terms and conditions of the offering of the Consideration Shares with Parent's management.

        c.      <u>Restricted Securities</u>.  Seller Parties understand that the Consideration Shares have not been, and will not be, registered under the Securities Act, by reason of a specific exemption from the registration provisions of the Securities Act which depends upon, among other things, the bona fide nature of the investment intent and the accuracy of Seller Parties' representations as expressed herein. Seller Parties understand that the Consideration Shares are "restricted securities" under applicable U.S. federal and state securities laws and that, pursuant to these laws, Seller Parties must hold the Consideration Shares indefinitely unless they are registered with the SEC and qualified by state authorities, or an exemption from such registration and qualification requirements is available. Seller Parties further acknowledge that if an exemption from registration or qualification is available, it may be conditioned on various requirements including, but not limited to, the time and manner of sale, the holding period for the Consideration Shares, and on requirements relating to Parent which are outside of Seller Parties' control, and which Parent is under no obligation and may not be able to satisfy.

        d.      <u>Legends</u>.  Seller Parties understand that the Consideration Shares and any securities issued in respect of or exchange for the Consideration Shares, may be notated with one or all of the following legends plus any legend required by the securities laws of any state to the extent such laws are applicable to the Consideration Shares represented by the certificate, instrument, or book entry so legended:

        "THE SHARES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AND HAVE BEEN ACQUIRED FOR INVESTMENT AND NOT WITH A VIEW TO, OR IN CONNECTION WITH, THE SALE OR DISTRIBUTION THEREOF. NO SUCH TRANSFER MAY BE EFFECTED WITHOUT AN EFFECTIVE REGISTRATION STATEMENT RELATED THERETO OR AN OPINION OF COUNSEL IN A FORM SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED UNDER THE SECURITIES ACT OF 1933. THE SALE, PLEDGE, HYPOTHECATION, OR TRANSFER OF THE SECURITIES REPRESENTED HEREBY IS SUBJECT TO, AND IN CERTAIN CASES PROHIBITED BY, AN AGREEMENT BY AND BETWEEN THE STOCKHOLDER AND THE CORPORATION, COPIES OF WHICH AGREEMENT MAY BE OBTAINED UPON WRITTEN REQUEST TO THE SECRETARY OF THE CORPORATION."

        e.      [The Members acknowledge and agree that the (A) Consideration Shares will be subject to a lock up and will be restricted from transfer or sale until the earlier of (i) twelve (12) months from the Closing Date, or (ii) after Parent's United States based Initial Public Offering ("IPO") subject to any underwriter required lock-up so long as Purchaser or Parent insiders are subject to the same lock-up or as otherwise mandated by law or regulation. Notwithstanding anything herein to the contrary, if the time

DocuSign Envelope ID: C5GA32DC-5F2A-4AC0-94CF-40B12DC16B5F

*Executable*

period prescribed in Article I(5) conflicts with any applicable underwriter lock-up or other rule, law or regulation the prescribed lock-up shall be deemed void in favor of the underwriter lock-up or other rule, law or regulation ("Lock-Up"). Moreover, if Members choose to make a transfer or sale of the Consideration Shares once such Lock-Up is no longer applicable, Members agree to notify Parent in writing, and Parent shall have thirty (30) days from delivery of the notice (the "Notice Period") to Purchase such Consideration Shares for an amount agreed upon by both parties, or may facilitate the immediate private placement for the sale or transfer of such Consideration Shares subject to the approval of Members which must close in the thirty (30) day time frame above unless an extended time is agreed to by the transferring or selling Member. Members may not otherwise sell or transfer the Consideration Shares included in the notice to Parent during such Notice Period.]

      f.    "Market Stand-off" Agreement. Each Seller hereby agrees that it will not, without the prior written consent of the managing underwriter, during the period commencing on the date of the final prospectus relating to the registration by the Parent of shares of its Common Stock or any other equity securities under the Securities Act on a registration statement on Form S-1, and ending on the date specified by the Parent and the managing underwriter (such period not to exceed one hundred eighty (180) days in the case of the IPO, or such other period as may be requested by the Parent or an underwriter to accommodate regulatory restrictions on (1) the publication or other distribution of research reports and (2) analyst recommendations and opinions, including, but not limited to, the restrictions contained in applicable FINRA rules, or any successor provisions or amendments thereto), (i) lend; offer; pledge; sell; contract to sell; sell any option or contract to purchase; purchase any option or contract to sell; grant any option, right, or warrant to purchase; or otherwise transfer or dispose of, directly or indirectly, any shares of common stock or any securities convertible into or exercisable or exchangeable (directly or indirectly) for common stock held immediately before the effective date of the registration statement for such offering  or (ii) enter into any swap or other arrangement that transfers to another, in whole or in part, any of the economic consequences of ownership of such securities, whether any such transaction described in clause (i) or (ii) above is to be settled by delivery of common stock or other securities, in cash, or otherwise. The foregoing provisions of this <u>Section</u> shall not apply to the sale of any shares to an underwriter pursuant to an underwriting agreement and shall be applicable to the holders only if all officers and directors are subject to the same restrictions. The underwriters in connection with such registration are intended third-party beneficiaries of this <u>Section</u> and shall have the right, power and authority to enforce the provisions hereof as though they were a party hereto. Each holder further agrees to execute such agreements as may be reasonably requested by the underwriters in connection with such registration that are consistent with this <u>Section</u> or that are necessary to give further effect thereto.]

    (20)    <u>No Broker</u>. No broker or finder was engaged by Seller in connection with this Agreement or the Transactions contemplated hereby.

    (21)    <u>No Other Representations and Warranties</u>. Except for the representations and warranties expressly set forth in this Agreement (including the related portions of the Disclosure Schedule), none of Seller or any of its representatives makes, or has made, and any such Persons specifically negate and disclaim, any express or implied representation or warranty of any kind whatsoever, either written or oral, with respect to Seller, the Company, the Membership Interest, and the transactions contemplated in this Agreement and the other transaction documents, including any representation or warranty as to the accuracy or completeness of any information regarding the Company furnished or made available to Parent, Purchaser, its Affiliates and their respective representatives or as to the future revenue, profitability or success of the Company.

    B.    Each of Parent and Purchaser jointly and severally, in each case as applicable, represents and warrants to Seller as follows:

DocuSign Envelope ID: C59A829C-5F8A-4AC0-94CF-40B13BC6SB55

*Executable*

(1)  <u>Organization and Good Standing</u>. Each of Parent and Purchaser is duly organized, validly existing, and in good standing (or its equivalent) under the laws of its jurisdiction of incorporation or organization, and is duly qualified to do business as a foreign and/or domestic entity and is in good standing (or its equivalent) under the laws of Province of British Columbia (in the case of Parent) and the State of Nevada (in the case of Purchaser), which, to Purchaser's knowledge ("**Purchaser's Knowledge**") constitute every jurisdiction in which either the ownership or use of the assets or properties owned or used by Parent and Purchaser, or the nature of the activities conducted by Parent and Purchaser, requires such qualification, except where the failure to be so qualified would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect. Each of Parent and Purchaser has the full power and authority to carry on its business as it is now being conducted and to own, lease and operate its properties and assets.

(2)  <u>Authority; No Conflict</u>.

(a)  Each of Parent and Purchaser has all necessary power and authority to execute and deliver this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby. The execution and delivery of this Agreement by Parent and Purchaser and the consummation by Parent and Purchaser of the transactions contemplated hereby have been duly and validly authorized by all necessary action and no other proceedings on the part of Parent and Purchaser are necessary to authorize this Agreement or to consummate the transactions contemplated hereby. This Agreement has been duly and validly executed and delivered by Parent and Purchaser and, assuming the due execution and delivery by all other parties hereto, constitutes the legal, valid and binding obligations of Parent and Purchaser, enforceable against such Persons in accordance with its terms subject to the effect of (i) applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relative to the rights of creditors generally and (ii) rules of law and equity governing specific performance, injunctive relief and other equitable remedies.

(b)  Neither the execution and delivery of this Agreement nor the consummation of any of the transactions contemplated hereby do or will, directly or indirectly (with or without notice or lapse of time or both), (i) contravene, conflict with, or result in a violation of any provision of the organizational documents of Parent and Purchaser; (ii) contravene, conflict with, or result in a violation of, in each case in any material respect, any applicable Laws to which Parent or Purchaser, or any of the assets owned or used by Parent or Purchaser, is subject; (iii) contravene, conflict with, or result in a violation of any of the material terms or material requirements of, or give any Governmental Authority the right to revoke, withdraw, suspend, cancel, terminate, or materially modify, any Governmental Authorization that is held by Parent or Purchaser, or that otherwise relates to the business of, or any of the assets owned or used by, Parent or Purchaser; (iv) contravene, conflict with, or result in a violation or breach of any provision of, or constitute a default under, or give any Person the right to accelerate the maturity or performance of, or to cancel, terminate, or modify, any Contract or any other material lease or material agreement to which Parent or Purchaser is a party; or (v) require a consent from any Person (including any Governmental Authority).

(2)  <u>Capitalization</u>.

(c)  Parent's stock consists of 321,968,241 authorized shares reserved for issuance pursuant to conversion rights, of which 1,200,001 shares are issued and outstanding as of the Effective Date.  All of the outstanding shares of Parent's stock have been duly authorized and validly issued, and is fully paid, and nonassessable. The Consideration Shares, when issued pursuant to the terms of this Agreement, will be validly issued, fully paid and nonassessable. Prior to the Closing Date, Buyer will take appropriate action to reserve a sufficient number of authorized but unissued shares of Parent's stock

necessary for the issuance of the Consideration Shares, including, without limitation, in connection with the Earn Out Consideration.

(3)     <u>Securities Reports; Financial Statements</u>. To Parent's Knowledge, Parent has filed all reports, schedules, forms, statements and other documents required to be filed by the Parent under the rules and regulations promulgated by the Canadian Securities or similar relevant provincial securities acts, thereof, for the one year preceding the date hereof (or such shorter period as Parent was required by law or regulation to file such material) (the foregoing materials, including the exhibits thereto and documents incorporated by reference therein, being collectively referred to herein as the "<u>CSE Reports</u>") on a timely basis or has received a valid extension of such time of filing and has filed any such CSE Reports prior to the expiration of any such extension. As of their respective dates, the CSE Reports complied in all material respects with the requirements of rules and regulations promulgated by the Canadian Securities Administrators or similar relevant provincial securities acts, as applicable, and none of the CSE Reports, when filed, contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading. To Parent's Knowledge, the financial statements of Parent included in the CSE Reports comply in all material respects with applicable accounting requirements and the rules and regulations of any and all applicable governmental securities regulator with respect thereto as in effect at the time of filing. Such financial statements have been prepared in accordance with the International Financial Reporting Standards as adopted by the International Accounting Standards Board from time to time (the "**IFRS**") applied on a consistent basis during the periods involved, except as may be otherwise specified in such financial statements or the notes thereto and except that unaudited financial statements may not contain all footnotes required by IFRS, and fairly present in all material respects the financial position of Parent and its consolidated subsidiaries (including Purchaser) as of and for the dates thereof and the results of operations and cash flows for the periods then ended, subject, in the case of unaudited statements, to normal, immaterial, year-end audit adjustments.

(4)     <u>Compliance with Laws</u>. To Parent and Purchaser's Knowledge each of Parent and Purchaser has complied, and is now complying, with all Laws, in all material respects, applicable to it or its business, properties, or assets, except where the failure to be in compliance would not have a Material Adverse Effect.

(5)     <u>Legal Proceedings; Governmental Orders</u>.

(a)     As of the Effective Date, there are no Actions pending or, to Parent or Purchaser's Knowledge, threatened against or by Parent, Purchaser, or any Affiliate of Parent or Purchaser: (i) relating to or affecting Parent or Purchaser or any of the their respective properties or assets that would impair their ability to consummate the transaction as contemplated by this Agreement; or (ii) that challenge or seek to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement.

(b)     To Parent and Purchaser's Knowledge, there are currently no outstanding Governmental Orders against, relating to, or affecting Parent or Purchaser or any of their respective properties or assets challenge or seek to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement.

(6)     <u>Sufficiency of Funds</u>. Each of Parent and Purchaser has and will have sufficient cash on hand, or in the case of Parent, sufficient Consideration Shares available for issuance, to enable it to make payment of the consideration contemplated under this Agreement (including, without limitation, the Closing Consideration and the Earn Out Consideration) and consummate the transactions contemplated by this Agreement.

DocuSign Envelope ID: C56AB29C-5FDA-4AC0-94CF-10B13BC45B55

*Executable*

(7)     No Broker.  No broker or finder was engaged by Parent or Purchaser in connection with this Agreement or the Transactions contemplated hereby.

(8)     Independent Investigation. Each of Parent and Purchaser acknowledges and agrees that: (a) in making its decision to enter into this Agreement and to consummate the transactions contemplated hereby, it has relied solely upon its own investigation and the express representations and warranties of Seller set forth in Article III(A) of this Agreement (including related portions of the Disclosure Schedules) and the certificates, instruments and agreements delivered pursuant hereto; (b) neither Seller, the Company nor any other Person has made any representation or warranty as to Seller or the Company, or this Agreement, except as expressly set forth in Article III(A)  of this Agreement (including the related portions of the Disclosure Schedules) and the certificates, instruments and agreements delivered pursuant hereto; and (c)  any claims the Parent or Purchaser may have for breach of any representation or warranty will be based solely and exclusively on the representations and warranties of Seller, Members and the Company expressly set forth in this Agreement (including related portions of the Disclosure Schedules).

## ARTICLE IV
### SURVIVAL OF REPRESENTATIONS AND WARRANTIES; INDEMNITY

(1)     All representations and warranties contained in this Agreement that are not Fundamental Representations shall survive the Closing until the date that is twelve (12) months from the Closing Date. Fundamental Representations and covenants contained herein will survive the Closing and continue in full force and effect until barred by the applicable statute of limitations (giving effect to any waiver, mitigation or extension thereof to the extent required by law).  All post-Closing covenants and agreements of the parties contained herein shall survive the Closing indefinitely unless another period is explicitly specified herein. Notwithstanding the foregoing, any claims which are timely asserted in good faith with reasonable specificity (to the extent known at such time) and in writing by notice from the non-breaching party to the breaching party prior to the expiration date of the applicable survival period shall not thereafter be barred by the expiration of the relevant representation or warranty and such claims shall survive until finally resolved.

(2)     Indemnification by Sellers. Subject to the other terms and conditions of this Article IV, each Seller severally, not jointly, shall indemnify and defend each of Purchaser and its Affiliates, including Parent and the Company) and their respective Representatives (collectively, the "Purchaser Indemnitees") against, and shall hold each of them harmless from and against, and shall pay and reimburse each of them for, any and all Losses incurred or sustained by, or imposed upon, the Purchaser Indemnitees based upon, arising out of, with respect to, or by reason of:

(a)     any inaccuracy in or breach of any of the representations or warranties of Sellers contained in this Agreement or the other transaction documents contemplated hereby; or

(b)     any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by Sellers pursuant to this Agreement or the other transaction documents contemplated hereby.

(3)     Indemnification by Parent and Purchaser. Subject to the other terms and conditions of this Article IV, Parent and Purchaser shall, jointly and severally, indemnify and defend each of Sellers and their Affiliates and their respective Representatives (collectively, the "Seller Indemnitees") against, and shall hold each of them harmless from and against, and shall pay and reimburse each of them for, any and all Losses incurred or sustained by, or imposed upon, the Seller Indemnitees based upon, arising out of, with respect to, or by reason of:

*Executable*

    (a)   any inaccuracy in or breach of any of the representations or warranties of Parent and Purchaser contained in this Agreement or the other Transaction Documents;

    (b)   any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by Parent or Purchaser pursuant to this Agreement; or

    (c)   the Company's conduct of its Business following the Closing unless caused by the gross negligence or intentional malfeasance of Members.

   (4)   <u>Indemnification Procedures</u>.

    (a)   Whenever any claim shall arise for indemnification hereunder, the party entitled to indemnification (the "<u>Indemnified Party</u>") shall promptly provide written notice of such claim to the other party (the "<u>Indemnifying Party</u>").

    (b)   In connection with any claim by an Indemnified Party on account of a Loss that does not result from a third-party claim, the written notice provided by the Indemnified Party to the Indemnifying Party shall describe the claim in reasonable detail, shall include copies of all material written evidence thereof and shall indicate the estimated amount, if reasonably practicable, of the Loss that has been or may be sustained by the Indemnified Party. The Indemnifying Party shall have thirty (30) days after its receipt of such notice to respond in writing to such claim. During such 30-day period, the Indemnified Party shall allow the Indemnifying Party and its professional advisors to investigate the matter or circumstance alleged to give rise to the claim, and whether and to what extent any amount is payable in respect of the claim and the Indemnified Party shall assist the Indemnifying Party's investigation by giving such information and assistance (including access to the Company's premises and personnel and the right to examine and copy any accounts, documents or records) as the Indemnifying Party or any of its professional advisors may reasonably request. If the Indemnifying Party does not so respond within such 30-day period, the Indemnifying Party shall be deemed to have rejected such claim, in which case the Indemnified Party shall be free to pursue such remedies as may be available to the Indemnified Party on the terms and subject to the provisions of this Agreement.

    (c)   In connection with any claim giving rise to indemnity hereunder resulting from or arising out of any Action by a Person who is not a party to this Agreement, the Indemnifying Party, at its sole cost and expense and upon written notice to the Indemnified Party, may assume the defense of any such Action with counsel reasonably satisfactory to the Indemnified Party. The Indemnified Party shall be entitled to participate in the defense of any such Action, with its counsel and at its own cost and expense. If the Indemnifying Party does not assume the defense of any such Action, the Indemnified Party may, but shall not be obligated to, defend against such Action in such manner as it may deem appropriate, including settling such Action, after giving notice of it to the Indemnifying Party, on such terms as the Indemnified Party may deem appropriate and no action taken by the Indemnified Party in accordance with such defense and settlement shall relieve the Indemnifying Party of its indemnification obligations herein provided with respect to any damages resulting therefrom. The Indemnifying Party shall not settle any

DocuSign Envelope ID: C59A339C-5F9A-4AC0-94CF-40B13BC45B55

Action without the Indemnified Party's prior written consent (which consent shall not be unreasonably withheld or delayed).

(5)   <u>Certain Limitations on Indemnification</u>.

(a)   Subject to the terms and conditions set forth herein, any Losses payable to a Purchaser Indemnitee pursuant to this Article IV (other than Losses arising from Actual Fraud or any inaccuracy in or breach of any of the Seller's representations set forth in <u>Article III(A)(1), (2) and (3)</u>) shall be satisfied by a turnover of that number of shares of the Consideration Shares that represent an amount in the value of such shares equal to the amount of the Loss. By way of example and not limitation, if the amount of Losses under an indemnification claim hereunder is determined to be $30,000, then the number of the Consideration Shares to be turned over to the Purchaser shall be such number of shares that in the aggregate have a value equal to $30,000. For the avoidance of doubt, Seller's obligation to indemnify any and all Purchaser Indemnitees for any Losses payable to a Purchaser Indemnitee pursuant to this Article IV (other than Losses arising from Actual Fraud or any inaccuracy in or breach of any of the Seller's representations set forth in <u>Article III(A)(1), (2) and (3)</u>) shall be solely limited to the delivery of stock certificates representing a number of shares of Parent's Subordinate Voting Shares, such number of Subordinate Voting Shares computed in accordance with this Section and never greater than 480,000.15 Subordinate Voting Shares in the aggregate.

(b)   Subject to the terms and conditions set forth herein, any Losses payable to a Purchaser Indemnitee pursuant to this Article IV for Losses arising from Actual Fraud or any inaccuracy in or breach of any of the Seller's representations set forth in <u>Article III(A)(1), (2) and (3)</u>) shall not be subject to the limitations set forth in <u>Article IV(5)(a)</u> above; *provided*, *however*, that in no event shall the Seller's aggregate liability for any Losses contemplated in this Section will not exceed an amount equal to the Aggregate Value of the consideration herein.

(c)   Notwithstanding anything set forth in this Agreement to the contrary, no Seller will be liable for the breach of any representation made in <u>Article III(A)</u> by another Seller (solely in the case of any representation that is specific to such Seller) or the breach of any covenant or agreement by another Seller.

(d)   Sellers shall not have any liability for Losses pursuant to this <u>Article IV</u> (other than Losses arising from Actual Fraud or any inaccuracy in or breach of any of the Seller's representations set forth in <u>Article III(A)(1), (2) and (3)</u>) unless and until the aggregate dollar amount of all Losses related thereto for which the Sellers would otherwise be required to provide indemnification exceeds an amount equal to $10,000 (the "<u>Deductible</u>"), at which point, subject to the other provisions in this <u>Article IV</u>, Seller's shall only be required to pay or be liable for Losses in excess of the Deductible.

(e)   Indemnification by Seller as an indemnifying party pursuant to this <u>Article IV</u> in respect of any Losses shall be limited to the amount of any liability or damage that remains after deducting therefrom any insurance proceeds and any indemnity, contribution or other similar payment received or reasonably expected to be

DocuSign Envelope ID: C5CA229C-5E9A-4AC0-94CF-49B13DC45B55

received by a Purchaser Indemnity (or the Company) in respect of any such claim. The Purchaser Indemnity shall use its commercially reasonable efforts to recover under insurance policies or indemnity, contribution or other similar agreements for any Losses prior to seeking indemnification under this Agreement.

(f)      In no event shall Seller's be liable to any Purchaser Indemnity for any punitive, incidental, consequential, special or indirect damages, including loss of future revenue or income, loss of business opportunity relating to the breach or alleged breach of this Agreement, or diminution of value.

(6)      <u>Exclusive Remedy</u>. The Parties acknowledge and agree that the foregoing indemnification provisions in this <u>Article IV</u> will be the sole and exclusive remedy after the Closing with respect to a breach of the representations, warranties and covenants contained in this Agreement, except in the case of Actual Fraud; <u>provided</u>, <u>however</u>, that this <u>Article IV</u> will not prohibit equitable remedies, including, specific performance or injunctive relief or claims arising under other ancillary agreements that may be executed to effectuate the Closing.

(7)      <u>Tax Treatment</u>. All indemnification payments made under this Agreement shall be treated by the Parties as an adjustment to the Closing Consideration for Tax purposes, unless otherwise required by Law.

ARTICLE V
POST CLOSING OBLIGATIONS; TAX COVENANTS

(1)      <u>Further Assurances</u>. Following the Closing, the Parties shall deliver to the other Party such other corporate resolutions, certificates, instruments and documents, in form and substance reasonably satisfactory, as may be reasonably requested by the Parties in connection with the transactions contemplated by this Agreement.

(2)      <u>Medical License.</u> As set forth in this Agreement, Cruz, Lopez, Sandadi, and Daly shall permit the use of his/her Medical License and DEA License to the Company following the Closing Date for the purpose of operating a medical facility in Florida, which may only be revoked on no less than one hundred twenty (120) days' written notice to Purchaser.

(3)      <u>Tax Covenants</u>.

(a)      Without the prior written consent of Purchaser, Sellers shall not, to the extent it may affect or relate to the Company: (i) make, change, or rescind any Tax election; (ii) amend any Tax Return; (iii) take any position on any Tax Return; or (iv) take any action, omit to take any action, or enter into any other transaction that would have the effect of increasing the Tax liability or reducing any Tax asset of Purchaser or the Company, in respect of any taxable period that begins after the Closing Date or, in respect of any taxable period that begins before and ends after the Closing Date (each such period, a "<u>Straddle Period</u>"), the portion of such Straddle Period beginning after the Closing Date.

(b)      All transfer, documentary, sales, use, stamp, registration, value added, and other such Taxes and fees (including any penalties and interest) incurred in connection with this Agreement and the other transaction documents contemplated hereby shall be borne and paid by Sellers when due. Sellers shall, at their own expense, timely file any Tax Return or other document with respect to such Taxes or fees (and Purchaser shall cooperate with respect thereto as necessary).

DocuSign Envelope ID: C59A329C-5E9A-4AC0-94CF-40B12DC6CB55

*Executable*

(c)        Purchaser shall prepare, or cause to be prepared, all Tax Returns required to be filed by the Company after the Closing Date with respect to any taxable period or portion thereof ending on or before the Closing Date and all Straddle Period Tax Returns. Any such Tax Return shall be prepared in a manner consistent with past practice (unless otherwise required by Law) and without a change of any election unless mandated by law or any accounting method.

(d)        <u>Straddle Period</u>. In the case of Taxes that are payable with respect to a Straddle Period, the portion of any such Taxes that are allocated to Pre-Closing Tax Periods for purposes of this Agreement shall be: (a) in the case of Taxes (i) based upon, or related to, income, receipts, profits, wages, capital, or net worth, (ii) imposed in connection with the sale, transfer, or assignment of property, or (iii) required to be withheld, the amount of Taxes which would be payable if the taxable year ended with the Closing Date; and (b) in the case of other Taxes, the amount of such Taxes for the entire period multiplied by a fraction, the numerator of which is the number of days in the period ending on the Closing Date and the denominator of which is the number of days in the entire period.

(4)        <u>Seller Restrictive Covenants</u>.

(a)        <u>Non-Competition</u>.  Seller and each Member agree that for the period starting on the Closing Date and ending on the fifth (5th) anniversary of the Closing Date (the "<u>Non-Compete Term</u>"), neither Seller nor Shareholder will directly or indirectly, whether for itself or themselves or for any person, company, entity, own, manage, operate, advise, join, control, or engage or participate in the ownership, management, operation, or control of, or be connected as a shareholder (other than owning less than three percent (3%) of the equity interests in a US publicly traded company), member, equity holder, director, officer, agent, partner, joint venturer, consultant, advisor, or employee of or otherwise with, or finance or guaranty any obligation of, any business or organization other than the Company and the Subsidiaries which provides or engages in any business that provides Ketamine related therapy for mental health patients and pain management as a core component of such business. For purposes of clarity, working at a hospital or clinic that utilizes Ketamine as anesthetic for various procedures would not be considered a violation of this section.

(b)        <u>Non-Solicitation</u>. Seller and each Member covenant and agree that during the Non-Compete Term, neither Seller nor any Member will not directly or indirectly: (a) solicit, offer employment to or employ any then-current employee of the Company or any person who was employed by the Company during the preceding twelve (12) months, or encourage any person not to become an employee of the Company or to terminate such person's employment with the Company, or otherwise interfere with the Company's relations with its employees; (b) induce or attempt to induce any customer, supplier, licensee or other person to cease doing business with the Company or in any way interfere with the relationship between any such customer, supplier, licensee or other business entity and the Company; or except on behalf of the Company, solicit any business from any person who is a customer of the Company, whether or not Seller or any Member had personal contact with such person. Neither Seller nor any Member shall, at any time during or after the Non-Compete Term or thereafter, disparage the Company, the business conducted by the Company or any member, manager, officer, employee, affiliate or agent of the Company.

(c)        <u>Non-Disparagement</u>.  Seller agrees that it shall not, and shall cause each of such Seller's respective affiliates not to, make any negative or disparaging statements or communications regarding the business, the Company, Purchaser or any of their affiliates (including their respective direct, indirect, former and current equity holders) or any of its or their respective services, products or practices, any of its or their respective representatives, either orally or in writing, at any time from and after the Effective Date.

     (5)    <u>Director and Officer Indemnification Insurance</u>.

     (a)    Each of Parent and Purchaser agrees that all rights to indemnification, advancement of expenses and exculpation by the Company existing prior to March 31, 2022 and **disclosed to Parent and Purchaser prior to the execution of this Agreement** in favor of each Person who is now, or has been at any time prior to the date hereof or who becomes prior to the Closing Date, an officer or manager of the Company, as provided in the organizational documents of the Company, in each case as in effect on the date of this Agreement, shall survive the Closing Date and shall continue in full force and effect in accordance with their respective terms.

     (b)    The Company shall, and Purchaser shall cause the Company to obtain as of the Closing Date "tail" insurance policies with a claims period of six (6) years, or shall maintain such policies for at least an equivalent amount of time, from the Closing Date with at least the same coverage and amounts, and containing terms and conditions that are not less advantageous to the managers and officers of the Company, in each case with respect to claims arising out of or relating to events which occurred on or prior to the Closing Date (including in connection with the transactions contemplated by this Agreement).

## ARTICLE VI
### MISCELLANEOUS

     (1)    <u>Notices</u>. Any notice or other communication required or permitted hereunder shall be in writings and shall be delivered personally, sent by facsimile transmission or sent by certified, registered or express mail, postage prepaid.  Any such notice shall be deemed given when so delivered personally, telegraphed, telexed or sent by facsimile transmission or, if mailed, two days after the date of deposit in the United States mail (seven days if addressed to a point outside the United States), as set forth on the signature page. Each Party may, by notice given in accordance with this <u>Section 6.01</u> to the other Parties, designate another address or Person for receipt of notices hereunder.

     (2)    <u>Expenses</u>. The Parties to this Agreement shall bear their respective expenses incurred in connection with the preparation, execution and performance of this Agreement and the transactions contemplated hereby.

     (3)    <u>Entire Agreement</u>.  This Agreement contains the entire agreement among the Parties and supersedes all prior agreements, written or oral, with respect thereto.

     (4)    <u>Binding Effect</u>. This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective heirs, personal representatives, successors and any permitted assigns.

     (5)    <u>No Third-Party Beneficiary</u>.  Except as expressly contemplated in Article IV, defined as the Seller Indemnities and Purchaser Indemnities, this Agreement is made solely for the benefit of the parties to this Agreement.  Nothing contained in this Agreement shall be deemed to give any person, partnership, joint venture, corporation, Governmental Entity any right to enforce any of the provisions of this Agreement, nor shall any of them be a third-party beneficiary of this Agreement.

     (6)    <u>Waivers and Amendments; Non-Contractual Remedies; Preservation of Remedies</u>.  This Agreement may be amended, superseded, cancelled, renewed or extended, and the terms hereof may be waived, only by a written instrument signed by the Parties hereto or, in the case of a waiver, by the Party waiving compliance.

DocuSign Envelope ID: C56AB29C-5F9A-4AC0-94CF-40B13BC6BB55

*Executable*

(7)    <u>Waiver of Jury Trial</u>. AS A SPECIFICALLY BARGAINED FOR INDUCEMENT FOR EACH OF THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT (AFTER HAVING THE OPPORTUNITY TO CONSULT WITH COUNSEL), EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY LITIGATION, ACTION, PROCEEDING, CROSS-CLAIM, OR COUNTERCLAIM IN ANY COURT (WHETHER BASED ON CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF, RELATING TO OR IN CONNECTION WITH (i) THIS AGREEMENT OR THE VALIDITY, PERFORMANCE, INTERPRETATION, COLLECTION OR ENFORCEMENT HEREOF OR (ii) THE ACTIONS OF SUCH PARTY IN THE NEGOTIATION, AUTHORIZATION, EXECUTION, DELIVERY, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT HEREOF.

(8)    <u>Construction</u>. Where specific language is used to clarify by example a general statement contained herein, such specific language shall not be deemed to modify, limit or restrict in any manner the construction of the general statement to which it relates.  The language used in this Agreement shall be deemed to be language chosen by the Parties to express their mutual intent, and no rule of strict construction shall be applied against any Party hereto.

(9)    <u>Section Headings</u>.  The Section headings contained in this Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

(10)    <u>Governing Law, Jurisdiction, and Venue</u>. This Agreement shall be governed by the laws of the State of Delaware without regard to conflict of law principles.  Each party hereby irrevocably: (a) submits to the exclusive jurisdiction of any state or federal court sitting in Los Angeles, California, in any action arising out of or relating to this Agreement; (b) agrees that all claims in respect of such action may be heard and determined only in any such court; (c) hereby waives any claim of inconvenient forum or other challenge to venue in such court; and (d) agrees not to bring any action arising out of or relating to this Agreement in any other court.

(11)    <u>Severability of Provisions</u>.  Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable Law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable under any applicable Law in any jurisdiction, such provision will be ineffective only to the extent of such invalidity, illegality, or unenforceability, without invaliding the remainder of this Agreement.

(12)    <u>Binding Effect; Assignment</u>. This Agreement shall be binding upon and inure to the benefit of the Parties and their legal representatives, successors and permitted assigns. This Agreement is not assignable by either of the Parties hereto except with the express prior written consent of the other Party.

(13)    <u>Confidentiality</u>.  Each party acknowledges that it will keep the terms of this Agreement confidential and not disclose same to any other party without the prior written consent of the other party. Notwithstanding the foregoing, either party may freely discuss the terms of this Agreement and the Purchase agreement with their accounts and/or attorneys, or as otherwise required by law or by order of a court of competent jurisdiction.

(14)    <u>Counterparts; Facsimile</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  This Agreement may be executed and delivered by facsimile transmission or electronic mail, and a facsimile or electronic version of this Agreement or of a signature of a party will be effective as an original.

DocuSign Envelope ID: C5C4B29C-5F9A-4AC0-94CF-49B43BC9CB55

*Executable*

(15)    <u>Notice</u>. All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given: (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by e-mail of a PDF document if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section:

| | |
|---|---|
| If to Seller or Members: | c/o Mike Tomas<br>E-mail: mtomas6@bellsouth.net<br>Address: 7300 SW 80th Ct.<br>Miami, Florida 33143 |
| with a copy to: | Dennis Diaz<br>E-mail: dennisdiaz02@gmail.com<br>Address: 9841 SW 130 St.,<br>Miami, Florida 33176 |
| If to Purchaser: | Irwin Naturals Emergence, Inc.<br>5310 Beethoven Street<br>Los Angeles, CA 90066<br>E-mail:joseph@irwinnaturals.com<br>Attention: Joseph Axelrod, General Counsel |
| with a copy to: | Clark Hill PLC<br>500 Woodward Ave #3500<br>Detroit, MI 48226<br>E-mail: kwashburn@clarkhill.com<br>Attention: Kevin Washburn |

(16)    <u>Advice from Independent Legal Counsel; Voluntary Agreement</u>. The Members represent and warrant that (a) each of them is represented or has had the opportunity to be represented, by legal and tax counsel of its choice, (b) each of them has consulted with such counsel regarding this Agreement, (c) each of them is fully aware of the meaning and the tax and other consequences of the provisions contained herein, (d) except as set forth herein and the other documents contemplated herein and therein, each of them has not relied in any way on any representation or other statement made by any other Member or its legal or tax counsel or by any other Person and (e) each of them has entered into this Agreement voluntarily and without coercion or duress of any kind.

*[Signatures to Follow]*

IN WITNESS WHEREOF, the Parties have executed this Membership Interest Purchase Agreement as of the Effective Date.

**SELLER PARTIES**:

KHC Capital Group, LLC
a Florida limited liability company

By: _____
Name: Dennis Diaz
Title: coo
Address: Address
_____

Email: dennisdiaz02@gmail.com

Ketamine Health Centers, LLC
a Florida limited liability company

By _____
Name: Dennis Diaz
Title: coo
Address: Address
_____

Email: dennisdiaz02@gmail.com

Ketamine Management, LLC
a Florida limited liability company

By: _____
Name: Dennis Diaz
Title: coo
Address: Address
_____

Email: dennisdiaz02@gmail.com

Ketamine Health Centers Weston, LLC
a Florida limited liability company

By: _____
Name: 99CF3AFD7A0D40A...
Title: coo
Address: Address
_____

DocuSign Envelope ID: C59A339C-5E9A-4AC0-94CF-40B13DC4CB55

Email: dennisdiaz02@gmail.com

Ketamine Health Centers West Palm, LLC
a Florida limited liability company

By: _____

Name: Dennis Diaz

Title: COO

Address: Address

_____

Email: dennisdiaz02@gmail.com

Ketamine Health Centers Orlando, LLC
a Florida limited liability company

By: _____

Name: _____

Title: COO

Address: Address

_____

Email: dennisdiaz02@gmail.com

Ketamine Health Centers Bonita Springs, LLC
a Florida limited liability company

By: _____

Name: Dennis Diaz

Title: COO

Address: Address

_____

Email: dennisdiaz02@gmail.com

**MEMBERS:**

DocuSign Envelope ID: C56A339C-5E9A-4AC0-94CF-40B13DC4CB55

Raul Cruz

Jason Wigley

Western Bridge Capital, LLC
a Florida limited liability company

By: _____
Name: _____
Title: Owner
Address: Address
_____
_____

Email: qxpress12@gmail.com

Sandadi Medical Consultants, LLC
a Florida limited liability company

By: _____
Name: _____ ies
Title: Owner
Address: Address
_____
_____

Email: qxpress12@gmail.com

Kelley Anesthesia, LLC
a Florida limited liability company

By: _belley Anesthesia_
528FD7F5EF984AB...
Name: _____
Title: coo
Address: Address

_____

Email: dennisdiaz02@gmail.com

**PURCHASER**:

Irwin Naturals Emergence, Inc.
a Nevada corporation

By: KLEE IRWIN
EE5984AE513E486...
Name: _____
Title: coo
Address: Address

_____

Email: dennisdiaz02@gmail.com

**Parent**

Irwin Naturals, Inc.
a British Columbia corporation

By: KLEE IRWIN
EE5984AE513E486...
Name: _____
Title: coo
Address: Address

_____

Email: dennisdiaz02@gmail.com

DocuSign Envelope ID: C59AB29C-5E9A-4AC0-94CF-40B12DC4SB55

### <u>EXHIBIT A</u>

**Member Allocation Consideration**

DocuSign Envelope ID: C5CAB29C-5F2A-4AC0-94CF-40B13DC4CB55

## EXHIBIT B

**Sample Earnout Calculation**

DocuSign Envelope ID: C56A329C-5E2A-4AC0-94CF-40B13DC45B55

## EXHIBIT C

**Employment Agreement**

DocuSign Envelope ID: C59AB39C-5E9A-4AC0-94CF-40B13DC4CB55

## EXHIBIT D

**Membership Interest Assignment**

DocuSign Envelope ID: C59A239C-5F9A-4AC0-94CF-40B13DC4GB55

**Schedule 3.03(c)**

Capitalization

DocuSign Envelope ID: C59AB29C-5F2A-4AC0-94CF-40B13DC4SB55

**Schedule 3.05**

Undisclosed Liabilities

DocuSign Envelope ID: C59AB39C-5E2A-4AC0-94CF-49B13DC4CB55

**Schedule 3.07(a)**

Tangible Personal Property

DocuSign Envelope ID: C59AB39C-5F9A-4AC0-94CF-49B12DC45B55

## **Schedule 3.08**

Subsidiaries

DocuSign Envelope ID: C56AB39C-5E9A-4AC0-94CF-40B13DG6GB85

**Schedule 3.09**

Contracts

DocuSign Envelope ID: C56A329C-5F2A-4AC0-94CF-49B13DCfGB55

**Schedule 3.10(b))**

Permits

DocuSign Envelope ID: C56AB29C-5E9A-4AC0-94CF-49B12DC4SB55

## Schedule 3.12

Insurance

DocuSign Envelope ID: C56A320C-5F2A-4AC0-94CF-40B13DC45B55

**Schedule 3.13(a)**

Benefit Plans

DocuSign Envelope ID: C56A939C-5F9A-4AC0-94CF-49B13DC6CB55

**Schedule 3.12(a)**

Employment Matters

DocuSign Envelope ID: C59AB29C-5F9A-4AC0-94CF-40B13DC45B55

## Schedule 3.17

Debt Schedule

**BONITA BAY**
C L U B

May 5, 2022

*Via email*  *jradiche@ketaminehealthcenters.com*

Ketamine Health Centers at Bonita Springs, LLC
Attn:  Julieta Radiche

Re:   Assignment of ownership interest in Ketamine Health Centers at Bonita Springs, LLC, a Florida limited
       liability company to Irwin Naturals Inc., a British Columbia corporation with a subsequent transfer of
       interest to Irwin Naturals Emergence, Inc., a Nevada corporation

Dear Julieta:

Per section 10 of that certain Lease Agreement dated as of April 24, 2020 ("Lease"), with Ketamine Health
Centers at Bonita Springs, LLC, a Florida limited liability company, as "Tenant" and Bonita Bay Club, Inc.,
as "Landlord", you have requested that Landlord consent to the assignment of the ownership interest in
Tenant to Irwin Naturals Inc., a British Columbia corporation with a subsequent transfer of such ownership
interest to Irwin Naturals Emergence, Inc., a Nevada corporation.

This letter evidences our consent to such transfers in ownership interest in the Tenant.  Nothing herein
shall constitute a consent to any future or subsequent transfers of ownership interest in the Tenant or
any assignment of the Lease to any third party, whether such third party is an affiliate or not.

Very truly yours,

Bonita Bay Club, Inc.
a Florida not-for-profit corporation

By: _Frederick Fung_
Frederick Fung, as General Manager

March 5, 2024

*Via E-mail Only*

Irwin Naturals
5310 Beethoven St,
Los Angeles, CA 90066
c/o Joseph Axelrod
Joseph@irwinnaturals.com

With copy to:
Quarles
1395 Panther Lane Suite 300
Naples, FL 34109
c/o Benjamin Brown
Benjamin.brown@quarles.com

RE:     *Breach of Lease Agreements*

Dear Mr. Axelrod:

We are in receipt of a Breach of Lease letter dated February 16, 2024 in regards to the Bonita Bay Club Lease and a Notice to Pay Rent or Surrender dated January 12, 2024 in regards to the Galloway Road Partners Lease. These letters were sent out to the original owners of Ketamine Health Centers as well as the Ketamine Health entities and are included in this communication.

Pursuant to the Membership Interest Purchase Agreement dated April 17, 2022 and the Consent to Assignment of the lease agreements dated on or around May 5, 2022, the prior owners of Ketamine Health Centers including Dennis Diaz ("Diaz"), Michael Tomas ("Tomas"), Raul Cruz ("Cruz"), Jason Altman ("Altman"), Jason Wigley ("Wigley"), Javier Lopez ("Lopez"), Western Bridge Capital, LLC, a Florida limited liability company ("WBC"), Mario Quintero ("Quintero"), Alex Quinones ("Quinones"), Juan Ojeda ("Ojeda"), David Riesco ("Riesco"), Sandadi Medical Consultants, LLC, a Florida limited liability company ("SMC"), and Kelley Anesthesia, LLC, a Florida limited liability company ("Kelley") are not responsible for the leases that Irwin Naturals took over including:

- 9408 SW 87th Ave Suite 302, Miami FL 33176
- 1411 N Flagler Drive, Suite 9300B, West Palm Beach FL 33401
- 26800 S Tamiami Trail Suite 310, Bonita Springs, FL 34134
- 616 E Altamonte Dr Suite 206, Altamonte Springs, FL 32701

We kindly request that Irwin Naturals take ownership of the lease and lease communications as they are Irwin Natural's responsibility per the agreements stated herein.

Thank you,

Dennis Diaz
Partner



Aloia, Roland, Lubell & Morgan, PLLC
2222 Second Street
Fort Myers, FL 33901

P: 239-791-7950
F: 239-791-7951
finance@lawdefined.com

Office Hours
8:30 A.M. – 5:00 P.M. EST

September 6, 2024

**<u>Via Email</u>**
Marcus Kelley
marcuskelley88@gmail.com

    Re:   *Sandadi Medical Consultants, LLC adv. Bonita Bay Club, Inc*

Marcus:

    In regard to the above-mentioned matter, it was requested that you wire funds in the amount of $11,250.00. Please be advised that Aloia, Roland, Lubell & Morgan, PLLC has received funds via wire transfer in the amount of $11,250.00, from Marcus Kelley on September 6, 2024.

If you have any questions or need additional information, please do not hesitate to contact our office.


Sincerely,

ALOIA ROLAND LUBELL & MORGAN, PLLC

Jill Cory
Director of Finance & Compliance
Finance & Compliance

# Aloia | Roland

### ATTORNEYS AT LAW

Aloia, Roland, Lubell & Morgan, PLLC
2222 Second Street
Fort Myers, FL 33901

P: 239-791-7950
F: 239-791-7951
finance@lawdefined.com

Office Hours
8:30 A.M. – 5:00 P.M. EST

November 6, 2024

**Via Email**
Marcus Kelley
marcuskelley88@gmail.com

Re:   *Sandadi Medical Consultants, LLC adv. Bonita Bay Club, Inc*

Marcus:

In regard to the above-mentioned matter, it was requested that you wire funds in the amount of $3,125.00. Please be advised that Aloia, Roland, Lubell & Morgan, PLLC has received funds via wire transfer in the amount of $3,125.00, from Marcus Kelly on November 6, 2024.

If you have any questions or need additional information, please do not hesitate to contact our office.

Sincerely,

ALOIA ROLAND LUBELL & MORGAN, PLLC

Jill Cory
Director of Finance & Compliance
Finance & Compliance

# EXHIBIT 53

<table>
<tr><td colspan="2">

**Fill in this information to identify the case:**

Debtor 1    Irwin Naturals

Debtor 2    Irwin Naturals Inc
(Spouse, if filing)

United States Bankruptcy Court    **Central District of California**

Case number:   **24-11323**

</td>
<td>

**FILED**

**U.S. Bankruptcy Court**
**Central District of California**

12/20/2024

Kathleen J. Campbell, Clerk

</td></tr>
</table>

## Official Form 410
## Proof of Claim

12/24

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

### Part 1: Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | AmerisourceBergen Drug Corporation<br><br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor    ASD Specialty Healthcare LLC |
| **2. Has this claim been acquired from someone else?** | ☒ No<br>☐ Yes. From whom? |
| **3. Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**     **Where should payments to the creditor be sent?** (if different)<br><br>AmerisourceBergen Drug Corporation    Morton R. Branzburg, Esq.<br><br>Name     Name<br><br>Attention: Angela Rodenbeck, Cencora    Klehr Harrison Harvey Branzburg LLP<br>9075 Centre Pointe Drive    1835 Market Street, Suite 1400<br>West Chester, OH 45069<br>    Philadelphia, PA 19103<br><br>Contact phone   800-543-2111 ext 302     Contact phone   215-569-3007<br><br>Contact email   arodenbeck@cencora.com     Contact email   mbranzburg@klehr.com<br><br>Uniform claim identifier (if you use one): |
| **4. Does this claim amend one already filed?** | ☒ No<br>☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____<br>              MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No<br>☐ Yes. Who made the earlier filing? |

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

| | | |
|---|---|---|
| **6.** Do you have any number you use to identify the debtor? | ☑ No <br> ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ | |

| | | |
|---|---|---|
| **7.** How much is the claim? | $   105373.52 | **Does this amount include interest or other charges?** <br> ☐ No <br> ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| **8.** What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). <br><br> Limit disclosing information that is entitled to privacy, such as healthcare information. <br><br> pharmaceutical products sold to Debtor on credit |

| | |
|---|---|
| **9.** Is all or part of the claim secured? | ☐ No <br> ☑ Yes. The claim is secured by a lien on property. <br><br> **Nature of property:** <br> ☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*. <br> ☐ Motor vehicle <br> ☑ Other. Describe:    see UCC–1 Financing Statements attached <br><br> **Basis for perfection:**    UCC–1FinancingStatements <br><br> Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.) <br><br> **Value of property:**   $ _____ <br><br> **Amount of the claim that is secured:**   $   105373.52 <br><br> **Amount of the claim that is unsecured:**   $   0.00     (The sum of the secured and unsecured amounts should match the amount in line 7.) <br><br> **Amount necessary to cure any default as of the date of the petition:**   $ _____ <br><br> **Annual Interest Rate** (when case was filed)   0    % <br> ☑ Fixed <br> ☐ Variable |

| | |
|---|---|
| **10.** Is this claim based on a lease? | ☑ No <br> ☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| **11.** Is this claim subject to a right of setoff? | ☑ No <br> ☐ Yes. Identify the property: _____ |

| | | |
|---|---|---|
| Official Form 410 | Proof of Claim | page 2 |

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No ☐ Yes. *Check all that apply.* | | Amount entitled to priority |
|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies  $ _____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    12/20/2024
                    MM / DD / YYYY

/s/  /s/ Debra A. Willet
Signature

Print the name of the person who is completing and signing this claim:

Name        /s/ Debra A. Willet
            First name     Middle name     Last name

Title       Senior Counsel

Company     AmerisourceBergen Drug Corporation
            Identify the corporate servicer as the company if the authorized agent is a servicer

Address     1 West First Avenue
            Number    Street
            Conshohocken, PA 19428
            City   State   ZIP Code

Contact phone   614-602-9926        Email   debi.willet@cencora.com

Official Form 410                   Proof of Claim                          page 3

**Attachment to Proof of Claim**

Debtor: Irwin Naturals, successor in interest to Serenity Health, LLC
United States Bankruptcy Court for the Central District of California - San Fernando Valley
Division, Case No. 24-11323-VK

AmerisourceBergen Drug Corporation ("ABDC") and ASD Specialty Healthcare, LLC ("ASD"
and together with ABDC, the "ABC Parties") hereby submits this Proof of Claim in the above-
captioned case. The claims of the ABC Parties' against the Debtor are as follows and based upon
the following facts:

Basis for and Amount of Claim:

1.      On August 9, 2024 (the "Petition Date"), Debtor filed a voluntary petition for relief under
chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District
of California - San Fernando Valley Division (the "Bankruptcy Court").

2.      As set forth on the Proof of Claim, as of the Petition Date, ABC Parties have a secured
pre-petition claim in the aggregate amount of $105,373.52, exclusive of permitted attorney's
fees.  A statement setting forth the claim amount is attached hereto as Exhibit A.

**BACKGROUND**

3.      On or about October 25, 2021, Serenity Health, LLC executed and delivered to the ABC
Parties a Credit Application and Agreement ("Credit Agreement"). Thereafter, Irwin Naturals
acquired Serenity Health, LLC on or about February 16, 2023. The Credit Agreement contains a
security interest grant in substantially all of the assets of Serenity Health, LLC to secure all
obligations of Serenity Health, LLC to the ABC Parties as further described in the Credit
Agreement. The Credit Agreement contains confidential and proprietary information and may be
provided upon request.

4.      On October 27, 2021, ABDC filed a UCC-1 financing statement with the Kentucky
Secretary of State, perfecting its security interest in the Collateral described in the Credit
Agreement.  A copy of the UCC-1 Financing Statement is attached hereto as Exhibit B.

5.      On October 27, 2021, ASD filed a UCC-1 financing statement with the Kentucky
Secretary of State, perfecting its security interest in the Collateral described in the Credit
Agreement.  A copy of the UCC-1 Financing Statement is attached hereto as Exhibit C.

Distributions:

6.      Any distributions on account of this Proof of Claim should be directed as follows:

        AmerisourceBergen Drug Corporation
        ASD Specialty Healthcare, LLC
        Attn: Angela Rodenbeck

11259546.v1

9075 Centre Pointe Drive, Suite 140
West Chester, OH  45069

Reservation of Rights:

7.      In executing and filing this Proof of Claim, ABC Parties not waiving in any manner or under any circumstances any security interest it now has or may be determined to have at any time, nor is it waiving any claim, action, or cause of action it may have against Debtor or any other entity or person, including the right to assert amounts in amounts different from the amounts set forth herein, nor is it waiving any defense, offset, recoupment, counterclaim or similar right or remedy it may now have or at any time has against Debtor or any other entity or person or with respect to any legal or equitable proceeding now existing or hereafter commenced.  The ABC Parties reserve the right to amend or supplement this Proof of Claim in any respect including, but not limited to, the assertion, by proof of claim or other application to this Bankruptcy Court, for any amount that becomes due under any of the various agreements, pursuant to court order or otherwise, and continuing costs, fees and expenses (including legal fees and disbursements) arising in relation to the claims asserted herein or any of the agreements and the assertion of an administrative expense priority and adequate protection for any such claim or claims.

Exhibit A

| SAP Customer Number | Customer Name | Document Type | Document Number | Reference | Invoice Date | Due Date | Invoice Amount Due. | Purchase Order Numbe | Status |
|---|---|---|---|---|---|---|---|---|---|
| 0100304991 | SERENITY HEALTH | Invoice | 3128154232 | 3128154232 | 3/28/2023 | 7/26/2023 | 22,245.36 | 202303211 | Pre-Petition |
| 0100304991 | SERENITY HEALTH | Invoice | 3128773132 | 3128773132 | 4/3/2023 | 8/1/2023 | 11,122.68 | 202303301 | Pre-Petition |
| 0100304991 | SERENITY HEALTH | Invoice | 3129376862 | 3129376862 | 4/9/2023 | 8/7/2023 | 11,122.68 | 202304031 | Pre-Petition |
| 0100304991 | SERENITY HEALTH | Invoice | 3130005205 | 3130005205 | 4/13/2023 | 8/11/2023 | 11,122.68 | 202304071 | Pre-Petition |
| 0100304991 | SERENITY HEALTH | Invoice | 3130486079 | 3130486079 | 4/18/2023 | 8/16/2023 | 11,122.68 | 202304131 | Pre-Petition |
| 0100304991 | SERENITY HEALTH | Invoice | 3132321129 | 3132321129 | 5/4/2023 | 9/1/2023 | 11,122.68 | 202304181 | Pre-Petition |
| 0100304991 | SERENITY HEALTH | Invoice | 3133239986 | 3133239986 | 5/14/2023 | 9/11/2023 | 11,122.68 | 202305031 | Pre-Petition |
| 0100304991 | SERENITY HEALTH | Invoice | 3134649372 | 3134649372 | 5/25/2023 | 9/22/2023 | 11,122.68 | 202305111 | Pre-Petition / Late fees |
| 0100304991 | SERENITY HEALTH | Late Charge fee | 0804118902 | | 6/30/2023 | 7/30/2023 | 363.86 | | Pre-Petition Late fees |
| 0100304991 | SERENITY HEALTH | Late Charge fee | 0804173514 | | 7/31/2023 | 8/30/2023 | 676.51 | | Pre-Petition Late fees |
| 0100304991 | SERENITY HEALTH | Late Charge fee | 0804222896 | | 8/31/2023 | 9/30/2023 | 1,267.06 | | Pre-Petition Late fees |
| 0100304991 | SERENITY HEALTH | Late Charge fee | 0804249085 | | 9/30/2023 | 10/30/2023 | 1,431.61 | | Pre-Petition Late fees |
| 0100304991 | SERENITY HEALTH | Late Charge fee | 0804315807 | | 10/31/2023 | 11/30/2023 | 1,530.36 | | Pre-Petition Late fees |
| | | | | | Total | | 105,373.52 | | |

Exhibit B

## UCC FINANCING STATEMENT

**2021-3176541-42.01**
Kentucky Secretary of State
File Date     10/27/2021 8:03:24 PM
Status        Active
Fee           $5.00

Name and address of filer:

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

This document is a representation of a
filing made electronically at the
Kentucky Secretary of State's web site

DEBTOR'S EXACT FULL LEGAL NAME

| a. ORGANIZATION'S NAME SERENITY HEALTH | | | | |
|---|---|---|---|---|
| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| c. MAILING ADDRESS 444 MARKS RIDGE RD | CITY BARDSTOWN | KY | POSTAL CODE 40004-8217 | COUNTRY USA |

SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)

| a. ORGANIZATION'S NAME AMERISOURCEBERGEN DRUG CORP | | | | |
|---|---|---|---|---|
| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| c. MAILING ADDRESS 1300 MORRIS DRIVE | CITY CHESTERBROOK | PA | POSTAL CODE 19087 | COUNTRY USA |

4. This FINANCING STATEMENT covers the following collateral:

All of Debtor's personal property, wherever located, and now owned or hereafter acquired or arising
consisting of (a) Accounts; (b) Inventory; (c) Equipment; and (d) General Intangibles and all Proceeds of
the foregoing. All capitalized terms used herein and not defined have the meaning set forth in the
Uniform Commercial Code as in effect in any jurisdiction in which any of the Collateral may at the time be
located.

# Exhibit C

## UCC FINANCING STATEMENT

Name and address of filer:

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

**2021-3176544-75.01**
Kentucky Secretary of State
File Date    10/27/2021 8:07:08 PM
Status       Active
Fee          $5.00

This document is a representation of a
filing made electronically at the
Kentucky Secretary of State's web site

DEBTOR'S EXACT FULL LEGAL NAME

| a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| SERENITY HEALTH | | | | | |
| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| c. MAILING ADDRESS | CITY | | POSTAL CODE | | COUNTRY |
| 444 MARKS RIDGE RD | BARDSTOWN | KY | 40004-8217 | | USA |

SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)

| a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Asd Specialty Healthcare, LLC | | | | | |
| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| c. MAILING ADDRESS | CITY | | POSTAL CODE | | COUNTRY |
| 5025 Plano Parkway | Carrollton | TX | 75010 | | USA |

4. This FINANCING STATEMENT covers the following collateral:

All of Debtor's personal property, wherever located, and now owned or hereafter acquired or arising
consisting of (a) Accounts; (b) Inventory; (c) Equipment; and (d) General Intangibles and all Proceeds of
the foregoing. All capitalized terms used herein and not defined have the meaning set forth in the
Uniform Commercial Code as in effect in any jurisdiction in which any of the Collateral may at the time be
located.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367**.

A true and correct copy of the document(s) entitled: **DEBTORS' SECOND OMNIBUS OBJECTION TO CLAIMS INCONSISTENT WITH DEBTORS' BOOKS AND RECORDS; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF JOSEPH AXELROD** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the document(s) were served by the court via NEF and hyperlink to the document. On **July 10, 2025,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Kyra E Andrassy**    kandrassy@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- **Jessica L Bagdanov**    jbagdanov@bg.law, ecf@bg.law
- **Ryan W Beall**    rbeall@go2.law,
  kadele@go2.law;dfitzgerald@go2.law;rbeall@ecf.courtdrive.com;cmeeker@go2.law
- **Anthony Bisconti**    tbisconti@bklwlaw.com, 1193516420@filings.docketbird.com,docket@bklwlaw.com
- **Matthew Bouslog**    mbouslog@allenmatkins.com, ncampos@allenmatkins.com
- **Katherine Bunker**    kate.bunker@usdoj.gov
- **Robert Allen Curtis**    rcurtis@foleybezek.com
- **Erin R. Fay**    efay@wsgr.com, lmcgee@wsgr.com
- **Jeffrey I Golden**    jgolden@go2.law,
  kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b117954@notify.bestcase.com
- **Alphamorlai Lamine Kebeh**    MKebeh@allenmatkins.com, mdiaz@allenmatkins.com
- **Alexandria Lattner**    alattner@sheppardmullin.com, ehwalters@sheppardmullin.com
- **Matthew A Macdonald**    matthew.macdonald@wsgr.com
- **Sina Maghsoudi**    sinalegal@gmail.com,
  g8645@notify.cincompass.com;maghsoudi.sinab128731@notify.bestcase.com
- **David W. Meadows**    david@davidwmeadowslaw.com
- **Douglas A Plazak**    dplazak@rhlaw.com
- **David M Poitras**    dpoitras@bg.law
- **Terrel Ross**    tross@trcmllc.com
- **Susan K Seflin**    sseflin@bg.law
- **Jonathan Seligmann Shenson**    jshenson@greenbergglusker.com,
  calendar@greenbergglusker.com;cmillerwatkins@greenbergglusker.com
- **Yuriko M Shikai**    yshikai@neufeldmarks.com
- **Ashley M Teesdale**    ateesdale@bg.law, ecf@bg.law
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov
- **Ronghua Sophia Wang**    sophia.wang@afslaw.com, yvonne.li@afslaw.com
- **Pamela Kohlman Webster**    pwebster@buchalter.com, smartin@buchalter.com
- **Jessica Wellington**    jwellington@bg.law, ecf@bg.law

☐        Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **July 10, 2025,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.


*Courtesy Copy to Judge Kaufman


(cont. on next page)

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**\*Served by Regular Mail as an Attachment to the Notice Filed Concurrently Herewith:**

| | | |
|---|---|---|
| | **Proof of Claim No. 14 & 15**<br>Reskin CPAs PSC<br>3046 Breckenridge Lane Suite 203<br>Louisville, KY 40220 | **Proof of Claim No. 16**<br>Gordon Investigative Group LLC<br>1795 Alysheba Way Suite 3202<br>Lexington, KY 40509 |
| **Proof of Claim No. 19**<br>JP Orlando LLC<br>4403 Vineland Road<br>Suite B9<br>Orlando, FL 32811 | **Proof of Claim No. 44**<br>Dennis Diaz<br>9841 SW 130th Street<br>Miami, FL 33176 | **Proof of Claim No. 45**<br>Mike Tomas<br>7300 SW 80th Ct.<br>Miami, FL 33143 |
| **Proof of Claim No. 46**<br>Raul Cruz<br>5745 SW 51st St.<br>Miami, FL 33155 | **Proof of Claim No. 51**<br>Marcus Kelley<br>8777 Banyan Cove Circle<br>Fort Myers, FL 33919 | **Proof of Claim No. 53**<br>AmerisourceBergen Drug Corporation<br>Attention: Angela Rodenbeck, Cencora<br>9075 Centre Pointe Drive<br>West Chester, OH 45069 |

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **_____, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 10, 2025 | Jessica Studley | /s/ Jessica Studley |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**