DAVID M. POITRAS – Bar No. 141309
SUSAN K. SEFLIN - Bar No. 213865
JESSICA S. WELLINGTON - Bar No. 324477
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: dpoitras@bg.law
sseflin@bg.law
jwellington@bg.law

Attorneys for Chapter 11 Debtors and Debtors in Possession

FILED & ENTERED

JUL 31 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Cetulio DEPUTY CLERK

CHANGES MADE BY COURT

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

In re:

Irwin Naturals *et al.*,

Debtors and Debtors in Possession,

☐ Affects Irwin Naturals

☐ Affects Irwin Naturals Inc.

☐ Affects 5310 Holdings, LLC

☐ Affects DAI US HoldCo Inc.

☒ Affects All Debtors

Case No. 1:24-bk-11323-VK

Chapter 11

Jointly Administered With: Case No. 1:24-bk-11324-VK, Case No. 1:24-bk-11325-VK. Case No. 1:24-bk-11326-VK

**ORDER APPROVING DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING (A) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES (OTHER THAN THOSE EXPRESSLY ASSUMED BY BUYER) PURSUANT TO 11 U.S.C. §§ 363(B) AND (F); (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND DETERMINING CURE AMOUNTS; (C) WAIVING THE 14-DAY STAY PERIODS OF BANKRUPTCY RULES 6004(H) AND 6006(D); (D) DETERMINING THAT BUYER IS ENTITLED TO PROTECTION PURSUANT TO 11 U.S.C. § 363(M); AND (E) GRANTING RELATED RELIEF**

**<u>Hearing</u>:**
Date: July 30, 2025
Time: 10:30 a.m.
Place: Courtroom 301
21041 Burbank Blvd
Woodland Hills, CA 91367

Upon consideration of the *Motion for Entry of an Order Authorizing and Approving (A) the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances (Other than Those Expressly Assumed by the Buyer) Pursuant to 11 U.S.C. sections 363(b) and (f); (B) Assumption and Assignment of Executory Contracts and Unexpired Leases and Determining Cure Amounts; (C) Waiving the 14-Day Stay Periods of Bankruptcy Rules 6004(h) and 6006(d); (D) Determining that the Buyer is Entitled to Protection Pursuant to 11 U.S.C. section 363(m); and (E) Granting Related Relief* [Docket No. 666] (the "Sale Motion") filed by Irwin Naturals, a Nevada corporation ("Irwin Nevada") and its related debtor entities (collectively, the "Debtors") in the above-captioned chapter 11 cases (these "Chapter 11 Cases"); and the Court having entered its *Order (A) Approving Bidding Procedures in Connection with Sale of the Debtors' Assets, (B) Approving the Designation of a Stalking Horse, (C) Approving Procedures Related to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of Notices Related to the Auction and Sale and, (E) Scheduling the Sale Hearing* [Docket No. 631] (the "Bidding Procedures Order"), on June 18, 2025, which, among other things, (i) approved the Bidding Procedures[1] used in connection with the sale; (ii) authorized the Debtors to designate FitLife Brands, Inc. as the Stalking Horse Bidder, and provide the Expense Reimbursement and Break-Up Fee in connection therewith; (iii) scheduled an Auction and a Sale Hearing (as defined in the Bidding Procedures Order); (iv) approved the Sale Notice (as defined in the Bidding Procedures Order); (v) authorized the Assumption Procedures (as defined in the Bidding Procedures Order); (vi) approved the form and manner of notice to each relevant non-debtor counterparty to a Contract of (A) the Debtors' calculation of Cure Costs and (B) the Assumption/ Assignment Notice (as defined in the Bidding Procedures Order); and (vii) granted related relief; and the

[1] Capitalized terms used, but not defined herein, shall have the meanings ascribed to them in the Asset Purchase Agreement (as defined below).

Debtors having solicited bids in accordance with the Bidding Procedures; and the Debtors having conducted the Auction in accordance with the Bidding Procedures; and the Debtors having selected FitLife Brands, Inc. ("FitLife"), or its designee as the Successful Bidder, and FitLife having designated IN Acquisition Corp. ("INAC") as its designee (FitLife and INAC are each referred to herein as the "Successful Bidder" or the "Buyer") as having the highest or otherwise best Qualified Bid (as defined in the Bidding Procedures Order) for the Purchased Assets as set forth in the asset purchase agreement filed on July 30, 2025 [Docket No. 732], as modified as set forth in paragraph 51 hereof (the "Asset Purchase Agreement") entered into with the Successful Bidder, and which are the subject of this order (this "Sale Order"), at the conclusion of the Auction; and the Court having conducted and concluded a hearing on July 30, 2025 at 10:30 a.m. prevailing Pacific Time (the "Sale Hearing"), to consider approval of the sale of the Purchased Assets under the Asset Purchase Agreement (the "Sale") free and clear of all "liens" (as defined in section 101(37) of title 11 of the United States Code (the "Bankruptcy Code")), "claims" (as defined in section 101(5) of the Bankruptcy Code), encumbrances and interests; and all parties-in-interest having been heard, or having had the opportunity to be heard, regarding the Sale; and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bidding Procedures Order, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the United States Bankruptcy Court for the Central District of California (the "Local Rules"), and that, except as otherwise ordered herein, no further notice is necessary; and upon the record of the Sale Hearing, the declarations of Klee Irwin, Vincent Willis, Bradley Sharp, and Dayton Judd filed in support of the Sale, and this Court having reviewed any objections asserted at the Sale Hearing and having found and determined that the relief sought at the Sale Hearing and entry of this Order is in the best interests of the Debtors, the Debtors' estates, their creditors and all other parties in

interest; therefore after due deliberation thereon, and sufficient cause appearing therefor, this Court makes the following Findings of Facts and Conclusions of Law:

**IT IS HEREBY FOUND AND DETERMINED THAT**:[2]

A. **Bankruptcy Petitions**. On August 9, 2024 (the "Petition Date"), the Debtors commenced these Chapter 11 Cases by filing petitions for relief under chapter 11 of the Bankruptcy Code. Pursuant to the Court's Order dated August 14, 2024, the Chapter 11 Cases are jointly administered under Case No. 24-11323.

B. **Jurisdiction and Venue**. The Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) and the *General Order No.13-05* entered by the United States District Court for the Central District of California on July 1, 2013. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C. **Final Order**. This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Time is of the essence in closing the Sale referenced herein, the Debtors and Buyer intend to close the Sale as soon as practicable, and there is no just reason for delay in the implementation of this Sale Order. Specifically, the proposed Closing Date set forth in the Asset Purchase Agreement is August 1, 2025 (unless extended by the Parties pursuant to the terms of the Asset Purchase Agreement) and accordingly, the Sale must be approved and consummated promptly in order to maximize the value to the Debtors, their estates, their creditors, and all other parties-in-interest. Accordingly, there is cause to lift the stays contemplated by rules 6004(h) and 6006(d) of the Bankruptcy Rules. The Court finds that there is no just reason

[2] This Sale Order shall be deemed to incorporate all findings of fact and conclusions of law made on the record at the hearing for consideration of the entry of the Bidding Procedures Order and the Sale Hearing pursuant to Bankruptcy Rule 7052. In addition, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate pursuant to Bankruptcy Rule 7052.

for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

D. **Statutory Predicates**. The statutory predicates for the relief sought in the Sale Motion are sections 105, 363, 364, 365, and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008, and rules 2002-1 and 6004-1 of the Local Rules.

E. **Notice**. As evidenced by the certifications of service [Docket Nos. 639, 656, 663, 687, 688 and 719] previously filed with the Court, and based on the representations of counsel at the Sale Hearing, proper, timely, adequate and sufficient notice of the Motion, the Asset Purchase Agreement, this Sale Order and the Sale Hearing, have been provided in accordance with the Bidding Procedures Order, sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008, and 9014, and Local Rules 2002-1 and 6004-1. Such notice was good and sufficient and appropriate under the particular circumstances and all known creditors of the Debtors and other parties-in-interest in these Chapter 11 Cases were offered a reasonable opportunity to object and be heard. No other or further notice of the Motion, including, without limitation, the Asset Purchase Agreement, the Sale Hearing, or the entry of this Sale Order was or is necessary or shall be required.

F. As evidenced by the certification of service [Docket Nos. 639, 656, 657, 663, 687, 691, 703, 704 and 719], the assumption and assignment notices [Docket Nos. 640, 689, 694 and 700] (collectively, the "Assumption/Assignment Notices" have been provided to each of the non-Debtor counterparties (each a "Counterparty" and collectively, the "Counterparties") to each Executory Contract identified thereon, including the Executory Contracts that are Assigned Contracts.

G. The service of the Assumption/Assignment Notice was sufficient under the circumstances and no further notice need be given in respect of assumption and assignment of

the Assigned Contracts or the proposed Cure Costs related thereto, if any. The Counterparties to the Assigned Contracts have had a reasonable opportunity to object to the assignment and/or assumption and assignment, as applicable, of the Assigned Contracts and the associated Cure Costs and to be heard at the Sale Hearing.

H. **Opportunity to Object**. A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all creditors of the Debtors and other parties-in-interest in these Chapter 11 Cases, including, without limitation, the following: (i) counsel to the Committee; (ii) counsel to East West Bank ("EWB"), the Agent for the Debtors' secured creditors; (iii) all persons and entities known by the Debtors to have asserted any lien, claim, interest, or encumbrance in the Purchased Assets (for whom identifying information and addresses are available to the Debtors); (iv) all relevant non-debtor parties to any Contract that may be assigned, assumed and assigned, or rejected in connection with the Sale; (v) all of the Debtors' known creditors and shareholders (for whom identifying information and addresses are available to the Debtors) including all parties appearing on the Debtors' creditor matrix; (vi) any party that has filed a proof of claim in these Chapter 11 Cases; (vii) any governmental authority known to have a claim against the Debtors in these Chapter 11 Cases; (viii) the office of the U.S. Trustee; (ix) all applicable federal, state, and local taxing authorities, including the Internal Revenue Service; and (x) all of the parties entitled to notice pursuant to Bankruptcy Rule 2002.

I. **Title in the Purchased Assets**. The Purchased Assets constitute property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is vested in the applicable Debtor.

J. **Extensive Efforts by the Debtors**. The Debtors, along with Bradley Sharp in his capacity as the independent director, have worked with their counsel and their court-approved investment banker STS Capital Partners M&A Advisers Inc. ("STS") to implement a process to

pursue a transaction or transactions that would allow the Debtors to attempt to maximize the value of the Purchased Assets.

K. **Business Justification**. The Debtors have demonstrated good, sufficient, and sound basis and compelling circumstances to sell the Purchased Assets to the Buyer pursuant to the terms and conditions of the Asset Purchase Agreement. Such action is an appropriate exercise of the Debtors' business judgment and in the best interest of the Debtors, their estates, and their creditors. The Successful Bid constitutes the highest and otherwise best offer for the Purchased Assets. Entry of this Sale Order (and all provisions hereof) is a condition precedent to the Buyer consummating its obligations under the Asset Purchase Agreement.

L. **Opportunity to Bid**. The Debtors and their professionals marketed the Purchased Assets appropriately in the timeframe allotted them given the facts and circumstances of the Chapter 11 Cases and conducted the marketing and sale process (including the Auction) as set forth in the Motion in good faith without collusion and in accordance with the Bidding Procedures and the Bidding Procedures Order. The marketing process set forth in the Bidding Procedures and the Bidding Procedures Order was fair in substance and procedure and afforded a full and fair opportunity for any party to make a higher or otherwise better offer to purchase the Purchased Assets. Based upon the record of these proceedings, all creditors and shareholders of the Debtors, other parties-in-interest in these Chapter 11 Cases, and prospective bidders have been afforded a reasonable and fair opportunity to bid for the Purchased Assets.

M. **Auction**. The Debtors, in the exercise of their reasonable discretion conducted an auction which concluded on July 28, 2025, for the Purchased Assets being purchased by the Buyer under the Asset Purchase Agreement (the "Auction"). The Auction complied with the Bidding Procedures and the Bidding Procedures Order.

N. **Highest or Otherwise Best Offer**. The total consideration provided by the Buyer for the Purchased Assets is the highest or otherwise best offer for the Purchased Assets received by the Debtors. At the conclusion of the Auction, the Debtors, in exercising their reasonable discretion and business judgment, determined that the Buyer submitted the highest or otherwise best offer for the Purchased Assets identified in the Asset Purchase Agreement. Thus, as required by the Bidding Procedures, the Debtors declared the Buyer the Successful Bidder for the Purchased Assets set forth in the Asset Purchase Agreement, and that the Back-up Bidder IN Holdings, LLC ("IN Holdings")[3] submitted the second highest or otherwise best offer for such assets, in accordance with the Bidding Procedures, the Bidding Procedures Order and the Asset Purchase Agreement, and such determination constitutes the valid and sound exercise of the Debtors' business judgment. The Debtors, the Buyer, and their respective agents and representatives, have complied in all respects with the Bidding Procedures and Bidding Procedures Order.

O. **Good Faith Purchaser**. The Asset Purchase Agreement and the Sale have been negotiated by the Debtors and the Buyer, and their respective agents and representatives, in good faith, at arms' length, and without collusion or fraud. The terms and conditions of the Asset Purchase Agreement, including the consideration to be paid by the Buyer to the Debtors pursuant to the Asset Purchase Agreement for the Purchased Assets identified in such agreement, are fair and reasonable and the Sale is in the best interest of the Debtors, their estates, and their creditors. The Buyer is a "good faith purchaser" entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code and any other applicable bankruptcy or non-bankruptcy law with respect to the sale and assignment of the Purchased Assets that the Buyer is acquiring pursuant to

[3] In the event the Buyer does not close and the Debtors decide to close with the Back-Up Bidder, the Debtors will lodge an amended sale order with the necessary findings as they pertain to the Back-Up Bidder.

the Asset Purchase Agreement.

P. The Asset Purchase Agreement and sale price were not controlled by an agreement between or among potential or actual bidders within the meaning of section 363(n) of the Bankruptcy Code. The Debtors and the Buyer have not engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. The Buyer is entitled to all the protections and immunities of section 363(m) of the Bankruptcy Code. In particular, (i) the Buyer recognized that the Debtors were free to deal with any other party interested in purchasing the Purchased Assets; (ii) the Buyer in no way induced or caused the chapter 11 filing by the Debtors; (iii) the Debtors have not violated section 363(n) of the Bankruptcy Code by any action or inaction; (iv) no common identity of directors, managers, officers, or controlling stockholders exist between the Buyer on one hand, and the Debtors on the other hand; (v) Buyer complied with the Bid Procedures and all provisions of the Bid Procedure Order; and (vi) all payments to be made, and all other material agreements or arrangements entered into by Buyer in connection with the Sale Transaction have been disclosed.

Q. An injunction against creditors of the Debtors and third parties pursuing Claims (defined below), Encumbrances (defined below), any liabilities of the Debtors that are not Assumed Liabilities pursuant to the Asset Purchase Agreement (the "Excluded Liabilities") and/or successor liability claims against the Buyer is necessary to induce the Buyer to close the Sale; the issuance of such an injunction is therefore necessary to avoid irreparable injury to the Debtors' estates and will benefit all creditors of the Debtors. Such injunction shall not apply to any rights of the Debtors under the Asset Purchase Agreement.

R. The Buyer has acted in good faith negotiating with the Debtors, submitting a bid, and participating in the Auction.

S. **Corporate Power and Authority**. Subject to the entry of this Sale Order, the Debtors have full corporate power and authority to execute and deliver the Asset Purchase Agreement and to perform all of their respective obligations thereunder, and the sale of the Purchased Assets have been duly and validly authorized by all corporate authority necessary to consummate the Sale. No consents or approvals, other than as expressly provided for in the Asset Purchase Agreement and the entry of this Sale Order, are required by the Debtors to consummate the Sale.

T. **Free and Clear**. The Debtors may sell the Purchased Assets free and clear of any (i) debts arising under, relating to, or in connection with any act of the Debtors or claims (including all "claims" as defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, restrictive covenants, covenants not to compete, rights to refunds, escheat obligations, and interests (including, without limitation, equity interests), of any kind and nature, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, applicable law, equity, or otherwise (including, without limitation, rights with respect to claims and Encumbrances (x) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or Buyer's interests in the Purchased Assets, or any similar rights, (y) in respect of taxes owed on behalf of, or otherwise payable, by the Debtors, including, but not limited to, sales, income, use, or any other type of tax, or (z) in respect of restrictions, rights of first refusal, charges, or interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership) relating to, accruing, or arising any time prior to the Closing Date (all items listed in this clause (i), collectively,

"Claims"); or (ii) liens (as defined in section 101(37) of the Bankruptcy Code), defenses (including rights of setoff and recoupment), and interests, in each case, in, on, or related to the Purchased Assets, including security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, purchase options, rights of first refusal or offer, deeds of trust, hypothecations, mechanics' and materialman's liens, rights of way, assignments, preferences, debts, easements, charges, suits, licenses, options, rights of recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state, and local taxes), covenants, put options, title defects, or other survey defects of any kind, indentures, instruments, leases, options, off-sets, causes of action, contract rights, any restriction on or transfer or other assignment, as security or otherwise, of or relating to use, quiet enjoyment, voting, transfer, receipt of income or exercise of any other attribute of ownership, in each case to the fullest extent of the law, in each case, of any kind or nature in, on, or related to the Purchased Assets, known or unknown, whether prepetition or postpetition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non- material, statutory or non-statutory, matured or unmatured, legal or equitable, including any and all such liabilities, causes of action, contract rights and claims arising out of the Debtors' continued operations following the Closing Date (all items listed in this clause (ii), collectively, "Encumbrances"), other than, in each case of clause (i) and (ii) above, the Assumed Liabilities.

U. Buyer would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby if the Sale to Buyer and the assumption of any Assumed Liabilities by Buyer were not free and clear of all Claims and Encumbrances other than the Assumed Liabilities.

V. The Debtors may sell the Purchased Assets free and clear of any Claims or Encumbrances of any kind or nature whatsoever (other than the Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Each entity with an Encumbrance on or in the Purchased Assets to be transferred on the Closing Date: (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Encumbrance; (iii) has a lien on the Purchased Assets and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; or (iv) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those holders of such Encumbrances who did not object, or withdrew their objections to the Motion, are deemed, subject to the terms of this Sale Order, to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All holders of Claims and/or Encumbrances (other than the Assumed Liabilities) are adequately protected by having their respective Claims and/or Encumbrances attach to the sale proceeds received by the Debtors (if any) that are ultimately attributable to the property against or in which such Claims and/or Encumbrances are asserted, subject to the terms of such Claims and/or Encumbrances, with the same validity, force, and effect, and in the same order of priority, which such Claims and/or Encumbrances now have against the Purchased Assets or their sale proceeds (if any) subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

W. The sale, conveyance, assignment and transfer of any personally identifiable information (if any) pursuant to the terms of the Asset Purchase Agreement and this Sale Order complies with the terms of the Debtors' policy regarding the transfer of such personally identifiable information as of the Petition Date and, as a result, consummation of the Sale is

permitted, to the extent applicable, pursuant to Section 363(b)(1)(A) of the Bankruptcy Code. Accordingly, appointment of a consumer privacy ombudsman in accordance with sections 363(b)(1) or 332 of the Bankruptcy Code is not required with respect to the Sale.

X. **No Successor or Transferee Liability**. The transaction contemplated under the Asset Purchase Agreement does not amount to a consolidation, merger, or *de facto* merger of the Buyer with the Debtors and/or the Debtors' estates, there is not substantial continuity between the Debtors and the Buyer, there is no common identity between the Debtors and the Buyer, there is no commonality of ownership or control between Debtors and the Buyer, there is no continuity of enterprise between the Debtors and the Buyer, the Buyer is not a mere continuation of the Debtors or their estates, and the Buyer does not constitute a successor to the Debtors or their estates in any way. The Buyer would not have acquired the Purchased Assets but for the protections set forth herein against potential claims based upon "successor liability" or similar theories.

The Buyer shall have no responsibility for, and the Purchased Assets are sold free and clear of, any successor liability, including the following, unless otherwise specified in the Asset Purchase Agreement: (a) any liability or other obligation of the Debtors or related to the Purchased Assets or (b) any Claims against the Debtors or any of their predecessors or affiliates. The Buyer shall have no liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations ("Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent,

liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing. Except to the extent expressly included in the Assumed Liabilities with respect to the Buyer, the Buyer shall have no liability or obligation under or any foreign, federal, state, local, labor, employment, or environmental law by virtue of the Buyer's purchase of the Purchased Assets or assumption of the Assumed Liabilities.

Y. **No Fraudulent Transfer**. The Sale is not for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia. Neither the Debtors nor the Buyer have entered into the Asset Purchase Agreement or are consummating the Sale with any fraudulent or otherwise improper purpose.

Z. **Fair Consideration**. The consideration provided for by the Buyer for the Purchased Assets indicated in the Asset Purchase Agreement constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, section 548 of the Bankruptcy Code or any similar state or federal law), and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia.

AA. **Compliance with Bankruptcy Code**. The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including without limitation sections 105(a), 363(b), 363(f), 363(k), 363(m), 365(b) and 365(f) of the Bankruptcy Code and all of the applicable requirements of such sections have been or will be complied with in respect to the Sale as of the Closing Date.

BB. **Use of Proceeds**. The Purchased Assets constitute Collateral, Cash Collateral, and/or Adequate Protection Collateral as such terms are used and defined in that certain *Further*

*Order Authorizing Debtors to Use Cash Collateral and Granting Replacement Liens* [Docket No. 545] (the "Cash Collateral Order").

CC. **Sale Transactions Not a Sub Rosa Plan**. The sale and assignment of the Purchased Assets and the assumption of the Assumed Liabilities outside of a plan of reorganization pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The Sale does not constitute a *sub rosa* chapter 11 plan.

DD. **Best Interest of the Estate**. The Sale contemplated by the Asset Purchase Agreement is in the best interest of the Debtors, their estates, their creditors, interest holders and all other parties-in-interest in these Chapter 11 Cases.

EE. **Waiver of Bankruptcy Rules 6004 and 6006**. The sale of the Purchased Assets must be approved and consummated promptly to preserve and maximize the value of the Purchased Assets. Time, therefore, is of the essence in effectuating the Asset Purchase Agreement. As such, the Debtors and the Buyer intend to close the sale of the Purchased Assets and will be acting in good faith, pursuant to section 363(m) of the Bankruptcy Code, in closing the Sale contemplated by the Asset Purchase Agreement after the entry of this Order within the time constraints set forth in the Asset Purchase Agreement. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Asset Purchase Agreement. Accordingly, cause has been shown as to why this Order should not be subject to any stay, including, without limitation, as provided by Bankruptcy Rules 6004(h) and 6006(d).

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT**:

1. **Relief Granted**. The relief requested in the Motion is hereby granted in its entirety.

2. **Objections Overruled**. All objections and responses to the Motion, this

Sale Order, or the relief granted herein (including all reservations of rights included therein) that have not been overruled, withdrawn, waived, settled, or otherwise resolved, are hereby overruled and denied on the merits with prejudice.

3. **Notice**. Notice of the Motion, the Auction, the assumption and assignment of the Assigned Contracts (including proposed Cure Costs related thereto), the Sale Hearing, and the Sale was reasonable, sufficient, fair and equitable under the circumstances and complied in all respects with the Bidding Procedures, sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008, and 9014, and Local Rules 2002-1 and 6004-1.

4. **Prior Findings of Fact and Conclusions of Law**. The Court's findings of fact and conclusions of law in the Bidding Procedures Order shall remain in full force and effect.

5. **Approval**. The Asset Purchase Agreement and all ancillary documents related thereto are hereby approved and authorized in all respects and shall be deemed in full force and effect, and the Debtors and the Buyer are hereby authorized, empowered, and directed to fully and timely perform under, consummate, and implement the terms of the Asset Purchase Agreement and to execute, deliver, perform under, or enter into any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Asset Purchase Agreement and this Sale Order, including, without limitation, deeds, assignments, patents, trademarks, copyrights, stock powers, transfers of membership interests and other instruments of transfer, and to take all further actions as may reasonably be requested by the Debtors or the Buyer, as applicable, for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to possession any or all of the Purchased Assets, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Asset Purchase Agreement, without any further corporate action or orders

of the Court.

6. **Good Faith**. The Buyer is a good faith purchaser of the Purchased Assets set forth in the Asset Purchase Agreement and is hereby granted and entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code. Pursuant to section 363(m) of the Bankruptcy Code, neither the reversal nor modification on appeal of this Sale Order under section 363(b) or (c) of the Bankruptcy Code shall affect the validity of the sale of the Purchased Assets under this Sale Order to the Buyer, which purchased the Purchased Assets in good faith, whether or not the Buyer knew of the pendency of the appeal unless this Sale Order and the sale of the Purchased Assets were stayed pending appeal prior to Closing.

7. **Section 363(n) of the Bankruptcy Code**. The Sale approved by this Sale Order is not subject to avoidance or any recovery or damages pursuant to section 363(n) or any other section of the Bankruptcy Code.

8. **Documentation**. The Debtors are authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the Sale contemplated by the Asset Purchase Agreement, any related agreements, and this Sale Order, including amended and restated certificates or articles of incorporation, by-laws, or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate, and all such officials are hereby authorized to accept the foregoing. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

9. **Domain Names.** Debtors shall, within thirty (30) days following the date of entry of this Order, cease and forever desist from using the Domain Names (as defined in the Domain Name Transfer Agreement which is attached as an exhibit to the Asset Purchase Agreement) or any mark or name confusingly similar thereto, including but not limited to as a trademark, trade name, business name, or service mark. Notwithstanding the foregoing, and for the purposes of clarity, Debtors may use the registered corporate names of "Irwin Naturals" (Nevada) and "Irwin Naturals, Inc." (BC Corporation) for a period of thirty (30) days following the Closing. During this thirty (30) day period the Debtors shall take such steps as necessary to change their legal names. After this thirty (30) day period the Debtors and shall cease using the names "Irwin Naturals" and/or "Irwin Naturals Inc."

10. **Cooperation**. The Debtors are hereby authorized and directed to cooperate with the Buyer as reasonably requested by the Buyer and take all actions and execute all documents reasonably and in good faith determined to be necessary to ensure that the Sale related to the Buyer is consummated in accordance with the Asset Purchase Agreement, and the Debtors are authorized to make such modifications or supplements reasonably acceptable to the Debtors and the Buyer to any bill of sale or other document or instrument executed or to be executed in connection with the Closing to the Buyer to facilitate such consummation as contemplated by the Asset Purchase Agreement.

11. **Duty to Close**. Neither the Debtors nor the Buyer shall have any obligation to proceed with the Closing of the Sale to the Buyer until all conditions precedent to their respective obligations to proceed have been met, satisfied or waived in accordance with the terms of the Asset Purchase Agreement.

12. **Valid Transfer**. Effective as of the Closing of the Sale and with respect to the Sale, the sale and assignment of the Purchased Assets by the Debtors to the Buyer pursuant to the

terms of the Asset Purchase Agreement shall constitute a legal, valid and effective transfer of the Purchased Assets, as applicable, notwithstanding any requirement for approval or consent by any person, and shall vest the Buyer with all right, title, and interest of the Debtors in and to the Purchased Assets and Assigned Contracts, free and clear of all Claims, Encumbrances, and Excluded Liabilities, as applicable (other than the Assumed Liabilities) pursuant to section 363(f) of the Bankruptcy Code. Upon the occurrence of the Closing, this Sale Order shall be considered and constitute, for any and all purposes, a full and complete general assignment, conveyance, and transfer of the Purchased Assets (including the Assigned Contracts) to the Buyer pursuant to the Asset Purchase Agreement and/or a bill of sale or assignment transferring indefeasible right, title and interest in the Purchased Assets set forth in the Asset Purchase Agreement, including the Assigned Contracts, and all other rights and interests associated with or appurtenant to the Purchased Assets, including, without limitation, warranty rights, intellectual property rights (including, without limitation, rights to all associated patents, trademarks, copyrights, regulatory approvals, permits, and registrations) and other non-executory contract rights, inclusive of all ancillary documents, agreements, modifications, ratifications, amendments, novations, purchase orders, court orders, or any other related documents or agreements made or issued in connection therewith, to the Buyer, all to the extent set forth in the Asset Purchase Agreement.

13. **<u>Free and Clear</u>**. Except to the extent specifically provided in the Asset Purchase Agreement and/or this Sale Order, upon the occurrence of a Closing under the Asset Purchase Agreement, the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to sections 105, 363(b), 363(f) and 365(b)(1) and 365(f)(2) of the Bankruptcy Code, to sell, assign, convey, and transfer the Purchased Assets under the Asset Purchase Agreement to the Buyer and assign the Assigned Contracts to the Buyer, as applicable. Except, and solely,

to the extent specifically provided in the Asset Purchase Agreement or this Sale Order, the sale and assignment of the Purchased Assets and the assignment of the Assigned Contracts, to the Buyer pursuant to the Asset Purchase Agreement vests the Buyer with all right, title and interest of the Debtors in and to the Purchased Assets, free and clear of any and all Encumbrances, Claims, Excluded Liabilities, as applicable, and other liabilities of any kind or nature whatsoever (except for the Assumed Liabilities), whether known or unknown as of the Closing Date, now existing or hereafter arising, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, whether imposed by agreement, understanding, law, equity, or otherwise, with all such Encumbrances, Claims, and Excluded Liabilities, to attach to the proceeds of the sale and assignment of the Purchased Assets with the same priority, validity, force, and effect as they now have in or against the Purchased Assets. The Motion shall be, and hereby is, deemed to have provided sufficient notice as to the sale and assignment of the Purchased Assets free and clear of all Encumbrances, Claims, and Excluded Liabilities. After the Closing, no holder of any Claim or Encumbrance on any of the Purchased Assets subject to such Closing may interfere with the Buyer's enjoyment of the Purchased Assets, as applicable, based on or related to such Claim or Encumbrance, or any actions that the Debtors may take or fail to take in these Chapter 11 Cases. For the avoidance of doubt, nothing in this Sale Order shall limit or otherwise impact any possessory lien(s) of Coast Warehouse, TLS Transportation and/or Probus Logistics, Inc. on the property of Debtors in Coast Warehouse's, TLS Transportation's and/or Probus Logistics, Inc.'s possession, respectively, as of the Closing Date, and Buyer assumes the Purchased Assets subject to said possessory lien(s).

14. The provisions of this Sale Order authorizing the sale and assignment of the Purchased Assets free and clear of Claims, Encumbrances, and Excluded Liabilities (other than the Assumed Liabilities), as applicable, shall be self-executing, and none of the Debtors nor the

Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

15. **<u>Authorization to Creditors</u>**. On and after the Closing Date, each of the Debtors' applicable creditors are authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release their Encumbrances, if any, in the Purchased Assets, as such Encumbrances may otherwise exist. If any person or entity that has filed financing statements, mortgages, mechanics liens, *lis pendens* or other documents, instruments, notices or agreements evidencing any Encumbrance against or in the Purchased Assets shall not have delivered to the Debtors or the Buyer before such Closing, in proper form for filing and executed by the appropriate parties, termination statements, releases, or instruments of satisfaction that the person or entity has with respect to the Purchased Assets subject to such Sale, then with regard to the Purchased Assets, (i) each of the Debtors and the Buyer is authorized and directed to execute and file such termination statements, releases, instruments of satisfaction or other documents on behalf of the person or entity with respect to the Purchased Assets; and (ii) each of the Debtors or the Buyer, as applicable, is authorized and directed to file, register or otherwise record a certified copy of this Sale Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances against the Purchased Assets.

16. **<u>Authorization to Government Agencies</u>**. Each and every Governmental Authority, filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state, and local official, and any other persons and entity who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or

insure any title in or to the Purchased Assets, is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale contemplated by the Asset Purchase Agreement or this Sale Order. All such entities described above in this paragraph are authorized to strike all recorded Encumbrances against the Purchased Assets from their records, official and otherwise in connection with the Closing of the Sale.

17. **Direction to Surrender Possession or Control**. All persons or entities, presently or on or after the Closing Date, in possession or control of some or all of the Purchased Assets, are authorized and directed to surrender possession and control of the Purchased Assets to the Buyer on the Closing Date of the Sale or at such time thereafter as the Buyer may request.

18. **Licenses and Permits**. To the extent provided in the Asset Purchase Agreement and available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any permit, license, certificate, approval, consent, permission, clearance, designation, qualification, or authorization issued, granted, given, or otherwise made available by or under the authority of any Governmental Authority or pursuant to any law (a "Governmental Authorization"), any other license, permit, registration, and any other governmental approval of the Debtors with respect to the Purchased Assets and the Assigned Contracts, and all such licenses, permits, registrations, and Governmental Authorizations, Intellectual Property, and any other approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date.

19. To the extent provided by section 525 of the Bankruptcy Code, no Governmental Authority may revoke or suspend any Governmental Authorization or other approval, permit, or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale.

20. **No Successor Liability**. Except as is expressly set forth in the Asset Purchase Agreement or this Sale Order, the Buyer, and/or any of its affiliates, predecessors, successors, assigns, current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors and representatives (each of the foregoing in its individual capacity), and each of their respective affiliates, predecessors, successors, assigns, current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors and representatives (each of the foregoing in its individual capacity), are not and shall not be (i) deemed a "successor" in any respect to the Debtors and their estates as a result of the consummation of the Sale contemplated by the Asset Purchase Agreement or any other event occurring in these Chapter 11 Cases under any theory of law or equity (other than with respect to Assumed Liabilities assumed by the Buyer under the Asset Purchase Agreement); (ii) deemed to have, *de facto* or otherwise, merged or consolidated with or into the Debtors or their estates; (iii) deemed to have a common identity with the Debtors; (iv) deemed to have a common ownership or control with the Debtors; (v) deemed to have a continuity of enterprise with the Debtors; or (vi) deemed to be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors. Except for the Assumed Liabilities, or as otherwise expressly provided in this Sale Order and/or the Asset Purchase Agreement, the transfer of the Purchased Assets to the Buyer under the Asset Purchase Agreement shall not result in the Buyer or its affiliates, predecessors, successors, assigns, members, partners, directors, officers, or principals and/or shareholders (or equivalent) (i) having any liability or responsibility for any Claim, whether known or unknown, against the Debtors or against any insider of the Debtors (including, without limitation, for any Excluded Liabilities, as applicable); (ii) having any liability whatsoever with respect to, or be

required to satisfy in any manner, whether at law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any Encumbrance or Excluded Liability, as applicable; or (iii) having any liability or responsibility to the Debtors, their estates or any third-party, including, without limitation, on account of (a) any foreign, federal, state, or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101, *et seq.*) ("WARN"), Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act (29 U.S.C. § 151, *et seq.*); (b) any environmental liabilities, debts, claims, or obligations arising from conditions prior to the Closing Date (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA; (c) any liabilities, penalties, costs, debts, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations); (d) any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine; or (e) any consumer protection law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, including, without limitation, any liabilities, penalties, costs, debts, or obligations imposed by the Federal Trade Commission and/or Bureau of Consumer Protection required to be paid by the Debtors. The Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation described in this paragraph (other than, solely with respect to any Assumed Liabilities).

21. Without limiting the generality, effect, or scope of the foregoing, as a result of the

Closing of the Sale to the Buyer, the Buyer, and/or any of its affiliates, predecessors, successors, assigns, members, partners, directors, officers, principals and shareholders (or equivalent) shall, on and following the Closing Date, have no successor or vicarious liabilities of any kind or character, including, without limitation, any theory of antitrust, environmental, transferee liability, continuity of enterprise, mere continuation, labor law, bulk sales law, employment or benefits law, alter ego, veil piercing, escheat, *de facto* merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, whether imposed by agreement, understanding, law, equity, or otherwise with respect to the Debtors or any obligations of the Debtors relating to the period prior to the Closing Date, including, without limitation, (i) United States or foreign pension liabilities or liabilities on account of any federal, state, or other taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to, calculated or determined with respect to, or based in whole or in any part upon the operation of the Purchased Assets on or prior to such Closing Date; or (ii) any taxes in connection with, or in any way related to, the cancellation of debt of the Debtors.

22. **Injunction**. Except to the extent expressly included in the Assumed Liabilities, all persons and entities, including, but not limited to, the Debtors, their employees, their former employees, all debt security holders, equity holders, interest holders, licensors, administrative agencies, governmental units (as defined in section 101(27) of the Bankruptcy Code), tax and regulatory authorities, secretaries of state, federal, state, and local officials, lenders, contract parties, bidders, lessors, other parties-in-possession of any of the Purchased Assets at any time, trade creditors, holders of rejection damages claims, and all other creditors holding any Claims, Encumbrances, or Excluded Liabilities of any kind or nature whatsoever against or in the Debtors

or in the Debtors' interests in the Purchased Assets (whether known or unknown as of the Closing Date, now existing or hereafter arising, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Debtors' business, on or prior to the Closing Date (including but not limited to products liability claims relating to the sale of products sold by the Debtors prior to the Closing Date, whether known or unknown, asserted or unasserted), the Sale (other than the Buyer's obligations under this Sale Order and the Asset Purchase Agreement, and all other ancillary agreements, documents or instruments entered into in connection with the Asset Purchase Agreement), or the transfer of the Purchased Assets to the Buyer shall be and hereby are forever barred, estopped, and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing in any manner any action, claim or other proceeding of any kind, directly or indirectly, against the Buyer, and/or any of its affiliates, predecessors, successors, assigns, current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors and representatives (each of the foregoing in its individual capacity) or any of their respective affiliates, predecessors, successors, assigns, current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors and representatives (each of the foregoing in its individual capacity), their property or the Purchased Assets that relate to such pre-Closing Claims, Encumbrances or Excluded Liabilities. In connection with the foregoing, actions that are barred against the Buyer, and/or any of its affiliates, predecessors, successors, assigns, current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent),

financial advisors and representatives (each of the foregoing in its individual capacity) or any of their respective affiliates, predecessors, successors, assigns, current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors and representatives (each of the foregoing in its individual capacity), their property or the Purchased Assets hereby include, without limitation (other than, solely with respect to any Assumed Liabilities): (i) the commencement or continuation of any action or other proceeding; (ii) the enforcement, attachment, collection, or recovery of any judgment, award, decree or order; (iii) the creation, perfection, or enforcement of any Claim or Encumbrance; (iv) subject to applicable law, the assertion of any right of setoff, subrogation, recoupment, reversion, assignment, or specific performance of any kind; (v) the commencement or continuation of any action that does not comply with, or is inconsistent with, the provisions of this Sale Order, any actions contemplated or taken in respect hereof, or the Asset Purchase Agreement excluding any such rights of the Debtors under, related to, or arising from the Asset Purchase Agreement; and (vi) the revocation, termination, failure, or refusal to renew any Governmental Authorization or other license, permit, registration, or governmental authorization or approval to operate any of the Purchased Assets or conduct the businesses associated with the Purchased Assets. Following the Closing Date, no Person that was the holder of an Encumbrance on, in, or against any of Purchased Assets prior to the Closing Date shall interfere with the Buyer's title to, license of, or use and enjoyment of the Purchased Assets based on or related to such Encumbrance, or any actions that the Debtors may take in these Chapter 11 Cases. For the sake of clarity, the holder of a pre-Closing Allowed Claim, Encumbrance, or Excluded Liability shall look solely to the proceeds of the sale. Nothing in the Sale Order is intended to or shall release any claim that a claim holder or interest holder may hold directly against the Buyer that is unrelated to the Debtors and/or the Purchased Assets

pre-Closing, nor shall the injunction prevent any action to enforce any such direct claim that is unrelated to the Debtors and/or the Purchased Assets pre-Closing. For the avoidance of doubt, nothing in this paragraph 22 is intended to or shall affect, resolve, determine, bar, estop, or enjoin any claims, actions or proceedings against the Debtors or any of the Debtors' affiliates, current and former members, officers, or directors, or any assets of the Debtors that are not Purchased Assets.

23. **No Bulk Sales; No Brokers**. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale or the other transactions contemplated by the Asset Purchase Agreement or this Sale Order. The Buyer is not and will not become obligated to pay any fee or commission or like payment to any broker, finder, or financial advisor as a result of the consummation of the Sale or any other transactions contemplated by the Asset Purchase Agreement or this Sale Order based upon any arrangement made by or on behalf of the Debtors.

24. **Assumption and Assignment of Assigned Contracts**. Under Sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors' assumption of the Assigned Contracts and assignment thereof to the Buyer free and clear of all Claims, Encumbrances and Excluded Liabilities pursuant to the terms set forth in the Asset Purchase Agreement are hereby approved, and the requirements of Sections 365(b)(1) and 365(f)(2) (including Section 365(b)(3) to the extent applicable) of the Bankruptcy Code with respect thereto are hereby deemed satisfied. Each of the Counterparties is hereby forever barred, estopped and permanently enjoined from raising or asserting against the Debtors, Buyer or their property any assignment fee, default, breach, claim, pecuniary loss, liability, or obligation (whether known or unknown as of the Closing Date, now existing or hereafter arising, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, whether imposed by agreement, understanding, law, equity, or otherwise) arising under or out

of, in connection with, or in any way related to the Assigned Contracts existing as of the Closing Date or arising by reason of the assumption, assignment and/or Sale except to the extent constituting an allowed Cure Amount which shall be payable pursuant to the terms of the Asset Purchase Agreement. Pursuant to the terms of the Asset Purchase Agreement, the Buyer shall be liable solely for all Cure Amounts and obligations and liabilities arising after the Closing Date under the Assigned Contracts.

25. Each of the Assigned Contracts shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms as of the date of this Sale Order, subject to any amendments or modifications agreed to between a Counterparty and the Buyer. Upon the Closing, in accordance with Sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assigned Contracts, subject to any amendments or modifications agreed to between a Counterparty and the Buyer, which amendments or modifications must be agreed to in writing between the Buyer and the related contract party. Each Counterparty shall be, and is, hereby deemed to consent to the assignment of the Assigned Contracts to the Buyer. The assignment of each of the Assigned Contracts is deemed to be made in good faith under, and is entitled to the protections of, Section 363(m) of the Bankruptcy Code.

26. **Adequate Assurance.** The Buyer has provided adequate assurance of its future performance under the Assigned Contracts within the meaning of Sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code (including Section 365(b)(3) to the extent applicable). All other requirements and conditions under Sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts have been satisfied.

27. **Cure Amounts.** Payment of the Cure Amounts by the Buyer set forth in the Contract & Cure Schedule in accordance with the Asset Purchase Agreement are hereby authorized and directed. All defaults shall be deemed cured and shall no longer exist upon the payment or other satisfaction by the Buyer of the Cure Amounts set forth in the Assumption/Assignment Notice against which no timely objections have been properly filed and served and, for the avoidance of doubt, no Counterparty shall be entitled to a claim against the Buyer, Debtors or the Debtors' estate for any such default. Except for the Cure Amounts set forth on the Contract & Cure Schedule, there are no defaults existing under the Assigned Contracts, nor is there any event or condition existing on the Closing Date which, with the passage of time or giving of notice, or both, would constitute such a default.

28. **Notice of Assumption and Assignment**. In accordance with the Assumption Procedures, the Debtors have served the Assumption/Assignment Notice that the Debtors have filed with the Court on the respective Counterparties identified on the respective schedules attached thereto. The schedules to the Assumption/ Assignment Notices included (i) a description of the Assigned Contract; (ii) the name of the Counterparty to the Assigned Contract; (iii) any applicable Cure Costs; (iv) a notice that each Assigned Contract may be assumed by the Debtors and assigned to the Successful Bidder submitting the highest or otherwise best bid for the Debtors' assets, inclusive of all ancillary documents, agreements, modifications, ratifications, amendments, novations, orders, purchase orders, court orders, or any other related documents or agreements made or issued in connection therewith; and (v) the deadline by which any Counterparty must file an objection to the proposed assumption and assignment. No other or further notice is required.

29. The Assumption/Assignment Notices may be supplemented or revised by the Buyer prior to the date of the Closing (or, with respect to Disputed Contracts (defined below),

such later date to the extent set forth in this Sale Order).

30. Any Counterparties to an Assigned Contract who has not timely filed and served an objection in accordance with the Hearing notice shall be barred from objecting, or asserting monetary or non-monetary defaults, with respect to any such Assigned Contract, and such Assigned Contract shall be deemed assumed by the Debtors and assigned to the Buyer on the Closing Date pursuant to this Sale Order.

31. From the date of the entry of the Sale Order, the Debtors may, in consultation with the Buyer, settle objections to assumption and assignment of any Assigned Contract, including to proposed Cure Amounts, without any further notice to or action by any party or order of the Court (including by paying any agreed Cure Amount). Unless the Court orders otherwise, contemporaneously with the resolution of any such objection, the Executory Contract underlying such objection shall be deemed an Assigned Contract to the Buyer without the necessity of obtaining any further order of the Court.

32. **No Fees for Assumption and Assignment.** There shall be no accelerations, assignment fees, increases or any other fees charged to the Buyer, its successors or assigns, or the Debtors as a result of the assumption and assignment of the Assigned Contracts.

33. **Anti-Assignment Provisions Unenforceable.** No Sections or provisions of the Assigned Contracts that purport to: (a) prohibit, restrict, or condition the Debtors' assignment of the Assigned Contracts, including, but not limited to, the conditioning of such assignment on the consent of the Counterparties; (b) authorize the termination, cancellation, or modification of the Assigned Contracts based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances; (c) declare a breach or default as a result of a change in control in respect of the Debtors; or (d) provide for additional payments, penalties, conditions, renewals, extensions, charges, other financial accommodations in favor of the non-Debtor third party to the

Assigned Contracts, or modification of any term or condition upon the assignment of a Assigned Contract or the occurrence of the conditions set forth in subsection (b) above, shall have any force and effect, and such provisions constitute unenforceable anti-assignment provisions under 11 U.S.C. § 365(f) and/or are otherwise unenforceable under 11 U.S.C. § 365(e). The entry of this Sale Order constitutes the consent of the Counterparties to the assumption and assignment of such agreements without the necessity of obtaining such party's consent, written or otherwise, to such assumption or assignment. All Assigned Contracts shall remain in full force and effect, without existing default(s), subject only to payment of the applicable Cure Amounts, and to any amendments or modifications agreed to between a Counterparty and the Buyer.

34. **Direction to Counterparties**. All Counterparties shall cooperate and expeditiously execute and deliver, upon the reasonable request of the Debtors, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale involving the Buyer. Any Counterparty to an Assigned Contract that is a supply agreement is hereby directed to fulfill any and all pending orders or purchase orders pursuant to such Assigned Contract unless the Buyer expressly agrees otherwise in writing.

35. **Failure to Specify Provisions**. The failure specifically to include any particular provisions of the Asset Purchase Agreement or any related agreements in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors, and the Buyer that the Asset Purchase Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Sale Order. Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

36. **Failure to Enforce Assigned Contracts**. The failure of the Debtors or the Buyer

on or before the Closing to enforce one or more terms or conditions of any Assigned Contract shall not constitute a waiver of any such terms or conditions, or of the Debtors' or the Buyer's rights to enforce every term and condition of the Assigned Contracts.

37. **Transferred Employees**. Any employee who is not a Transferred Employee, as defined in the Asset Purchase Agreement, shall be prohibited and enjoined as of the Closing Date from taking any actions with respect to the Business on or after the Closing Date, including but not limited to (i) purporting to act on behalf of the Debtors, the Buyer, or the Business or performing or purporting to perform any functions with respect to the Business in any way whatsoever, (ii) accessing, viewing, copying, replicating, modifying, or otherwise interacting in any way whatsoever with any of the Debtors' books, records, archives, accounts, servers, platforms, or any other property constituting Purchase Assets and/or relating to the Business as of the Closing Date, or (iii) accessing or attempting to access any physical location, including but not limited to any office, production facility, warehouse, laboratory, or any other physical location relating to the Business or the Buyer, in each case, except as otherwise may be agreed in writing beforehand by the Buyer or as otherwise provided for in the APA.

38. **Starting Cash**. At Closing, Debtors shall leave for the benefit of Buyer cash in Debtors' operating accounts equivalent to the sum of all accrued but unpaid payroll due as of the Closing Date to those employees whom Buyer has designated to hire, with the foregoing amounts set forth in Schedule 9.3(a) of the Asset Purchase Agreement, which Schedule shall be updated one day before Closing. Further, the Debtors shall transfer their operating accounts that are used for customer remittances together with the Starting Cash, as provided for in the Asset Purchase Agreement, to Buyer at Closing as a Purchased Asset after withdrawing from such Operating Account all amounts in excess of the Starting Cash. Notwithstanding anything to the contrary herein or in the Asset Purchase Agreement, the Debtors' transfer of any such operating accounts

shall be subject to the terms of any account agreements with EWB, in its capacity as the Debtors' cash management bank. governing such accounts or the Buyer's entry into an account agreement in form and substance acceptable to EWB in its sole discretion. Further, prior to the effectiveness of any such transfer, the Buyer shall complete all "know-your-customer" and other compliance requirements as may be requested by EWB.

39. **No Waiver of Rights.** Nothing in this Sale Order shall be deemed to impair, waive, release, extinguish, or estop the Debtors, their estates, their creditors or shareholders from asserting, or impairing or diminishing any right (including any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any Claims, Encumbrances, Excluded Liabilities, Excluded Assets or other assets of the Debtors remaining in the Debtors' estates after the completion of the Closing.

40. To the extent that the Debtors receive any of the Purchased Assets (including, for the avoidance of doubt, any receivables) following the Closing, such Purchased Assets (i) shall be held in trust by the Debtors for the exclusive benefit of Buyer; (ii) shall not constitute property of the Debtors' estates; and (iii) shall be transferred to Buyer as soon as reasonably practicable. To the extent that Buyer receives any of the Excluded Assets following the Closing, such Excluded Assets (i) shall be held in trust by Buyer for the exclusive benefit of the Debtors' estates; (ii) shall not constitute Buyer's property; and (iii) shall be transferred to the Debtors' estates as soon as reasonably practicable.

41. **Back-up Bids**. At the Auction, the Debtors designated IN Holdings as the Back-up Bidder for the assets that are subject to the Asset Purchase Agreement. The Back-up Bid of the Back-up Bidder shall remain open and irrevocable until August 22, 2025 per agreement of IN Holdings and as otherwise set forth in the Bidding Procedures and Bidding Procedures Order, and, in the event that the Successful Bidder shall fail to close pursuant to the terms of the Asset

Purchase Agreement, the Debtors shall consummate the sale with the Back-Up Bidder in accordance with the Bidding Procedures and Bidding Procedures Order.

42. **Good Faith Deposits**. The Good Faith Deposit(s) shall be returned to each Qualified Bidder as set forth in the Bidding Procedures.

43. **Payment of Principal and Adequate Protection**. At Closing, the Debtors shall pay or cause to be paid to the Agent, for the benefit of the Lenders: (i) $17,998,417.44 in immediately available funds on account of the principal amount due under the Loan (as defined in the Cash Collateral Order) as of the Petition Date (the "Principal Payment"), and (ii) $5,469,829.47 on account of interest, fees, costs and other obligations claimed due and owing by the Lenders estimated as of July 30, 2025 (the "Fee Payment" and collectively, with the Principal Payment, the "Payment"), which Fee Payment is being made by the Debtors with a full reservation of all rights and claims of the Debtors (and other parties in interest) to object to and otherwise recover all or a portion of the Fee Payment. All of the Debtors', the Agent's and Lenders' respective rights are fully reserved. All proceeds of the Purchased Assets shall constitute Collateral, Cash Collateral, and/or Adequate Protection Collateral as such terms are used and defined in the Cash Collateral Order and the liens, Claims, and Encumbrances of the Agent and Lenders shall attach to such proceeds with the same validity, force, and effect, and in the same order of priority, which such liens, Claims and/or Encumbrances now have against the Purchased Assets or their sale proceeds (if any) subject to any rights, claims, and defenses the Debtors or their estates, as applicable may possess with respect thereto.

44. **Binding Order**. This Sale Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, the Debtors, their estates, the Buyer, the Back-up Bidder, and their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in

any chapter 7 case if these cases are converted from chapter 11, all creditors of the Debtors (whether known or unknown), all Governmental Authorities, filing agents, filing officers, title agents, recording agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets. The Asset Purchase Agreement and the Sale shall not be subject to rejection or avoidance under any circumstances. This Sale Order and the Asset Purchase Agreement shall inure to the benefit of the Debtors, their estates, their creditors, the Buyer and their respective successors and assigns.

45. **No Stay of Order**. The provisions of Bankruptcy Rules 6004 and 6006, and to the extent applicable under the Bankruptcy Rules, Rules 54(b) and 62(a) of the Federal Rules of Civil Procedure, staying the effectiveness of this Sale Order for fourteen (14) days are hereby waived, and this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. Any party desiring to appeal this Sale Order must exercise due diligence in filing an appeal, pursuing a stay, and obtaining a stay prior to the Closing, or risk its appeal being foreclosed as moot.

46. **Lift of Automatic Stay**. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court, to allow the Buyer to deliver any notice provided for in the Asset Purchase Agreement and allow the Buyer to take any and all actions permitted under the Asset Purchase Agreement.

47. **Retention of Jurisdiction**. The Court shall retain jurisdiction to (i) interpret, implement, and enforce the terms and provisions of this Sale Order, the Bidding Procedures Order,

and the Asset Purchase Agreement, including any amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, in all respects; (ii) decide any disputes concerning this Sale Order, the Asset Purchase Agreement or the rights and duties of the parties hereunder or thereunder or any issues relating to the Asset Purchase Agreement and this Sale Order including, but not limited to, the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Purchased Assets and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Encumbrances; and (iii) enforce the injunctions set forth herein.

48. **Subsequent Plan Provisions**. Unless otherwise provided herein, nothing contained in any Chapter 11 plan confirmed in these Chapter 11 Cases or any order confirming any such plan or any other order in these Chapter 11 Cases (including any order entered after any conversion of these Chapter 11 Cases into cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from the provisions of the Asset Purchase Agreement or this Sale Order and, to the extent of any such conflict, subject to this paragraph, the terms of this Sale Order and the Asset Purchase Agreement shall control.

49. **Further Assurances**. From time to time, as and when requested by the other, the Debtors and the Buyer, as the case may be, shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary to consummate the Sale with respect to the Buyer, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise secure, in the Buyer its right, title, and interest in and to the Purchased Assets subject to the provisions of the Asset Purchase Agreement.

50. **Transfer of Personally Identifiable Information.** The sale, conveyance,

assignment and transfer of any personally identifiable information (if any) pursuant to the terms of the Asset Purchase Agreement shall comply with the terms of the Debtors' policy regarding the transfer of such personally identifiable information that was in effect as of the Petition Date.

51. **Modification of Asset Purchase Agreement**. The Asset Purchase Agreement is hereby modified as follows but shall remain in full force and effect in all other respects:

A. IN Acquisition Corp. shall be, and hereby is, named and approved as FitLife's permitted designee under the terms of the Asset Purchase Agreement;

B. Section 4.1(b) shall be, and hereby is, amended and replaced with the following: "(b) The consideration for the Purchased Assets shall be cash consideration in the amount of Forty-Two Million Dollars ($42,000,000.00) *plus* at FitLife's election and in its sole discretion, either (i) shares of common stock in FitLife Brands, Inc. (NASDAQ: FTLF) having a value of $500,000 based upon the volume weighted average price of such stock during the thirty (30) day period immediately preceding the date of the Auction (July 28, 2025), or (ii) $500,000 in cash"; and

C. Schedule 5.2(a) (Contract and Cure Schedule) shall be, and hereby is, amended to include that certain Master Agreement and Order Form with SPINS LLC having a cure amount of $25,000.02.

*[Remainder of Page Intentionally Blank]*

52. **Governing Terms**. Unless otherwise provided herein, to the extent this Sale Order is inconsistent with the terms of the Asset Purchase Agreement (including all ancillary documents executed in connection with the Asset Purchase Agreement), this Sale Order shall govern.

53. **Headings**. The headings in this Sale Order are for purposes of reference only and shall not limit or otherwise affect the meaning of the Sale Order.

# # #

Date: July 31, 2025

Victoria S. Kaufman
United States Bankruptcy Judge