DAVID M. POITRAS – Bar No. 141309
SUSAN K. SEFLIN - Bar No. 213865
JESSICA S. WELLINGTON - Bar No. 324477
**BG LAW LLP**
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:  (818) 827-9099
Email:    dpoitras@bg.law
        sseflin@bg.law
        jwellington@bg.law

Attorneys for Chapter 11 Debtors and
Co-Plan Proponents

JEFFREY I. GOLDEN – Bar No. 133040
RYAN W. BEALL - Bar No. 313774
**GOLDEN GOODRICH LLP**
3070 Bristol Street, Suite 640
Costa Mesa, CA 92626
Telephone:  (714) 966-1000
Facsimile:  (714) 966-1002
Email:    jgolden@go2.law
        rbeall@go2.law

Attorneys for Official Committee of Unsecured
Creditors of Irwin Naturals and Irwin Naturals Inc.
and Co-Plan Proponents

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re<br><br>Irwin Naturals[1] *et al.*,<br><br>            Debtors and Debtors<br>            in Possession. | Case No. 1:24-bk-11323-VK<br><br>Chapter 11<br><br>(Jointly Administered with: Case No. 1:24-bk-11324-VK. Case No. 1:24-bk-11325, and Case No. 1:24-bk-11326-VK) |

☐   Affects Irwin Naturals, a Nevada corporation, *dba* IN Holdings, Inc.

☐   Affects Irwin Naturals, Inc. *dba* IN Holdings Canada, Inc.

☐   Affects 5310 Holdings, LLC

☐   Affects DAI US HoldCo Inc.

☒   Affects All Debtors

**DEBTORS' AND COMMITTEE'S JOINT CHAPTER 11 PLAN OF REORGANIZATION**

**Plan Objection Deadline: 10:00 p.m. PDT on _____**

**Ballot Deadline:  10:00 p.m. PDT on _____**

**Confirmation Hearing:**
Date:    TBD
Time:    TBD
Place:   Courtroom 301
         21041 Burbank Blvd
         Woodland Hills, CA 91367

---

[1] Irwin Naturals' name has changed to IN Holdings, Inc. and Irwin Naturals, Inc.'s name has changed to IN Holdings Canada, Inc. Debtors filed a motion to update the names.

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................................1

II.   DEFINITIONS AND EXHIBITS................................................................................7

    A.    Definitions..........................................................................................................7

    B.    Exhibits. ...........................................................................................................18

    C.    Computing Time Periods. .................................................................................18

    D.    Notices and Delivery of Documents. ...............................................................18

III.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER
    THIS PLAN ..........................................................................................................18

    A.    What Creditors and Interest Holders Will Receive Under this Plan.....................18

    B.    Unclassified Claims. .........................................................................................19

        1.    Administrative Claims. ..........................................................................19

        2.    Priority Tax Claims................................................................................22

    C.    Classified Claims and Interests.........................................................................24

        1.    Class of Secured Claims. .......................................................................24

        2.    Classes of Priority Unsecured Claims.....................................................25

        3.    Classes of General Unsecured Claims. ....................................................25

        4.    Classes of Interest Holders.....................................................................26

    D.    Means of Effectuating the Plan and Implementation of the Plan. .......................27

        1.    Plan Funding. ........................................................................................27

        2.    Composition of the Debtors Post-Confirmation. ......................................28

        3.    Plan Distribution Trust...........................................................................28

            a.    Establishment of the Plan Distribution Trust................................28

            b.    Plan Distribution Trust Assets .....................................................28

            c.    The Term of the Plan Distribution Trust.......................................29

            d.    The Plan Distribution Trustee ......................................................29

                (i)    **Appointment**................................................................29

i

(ii)    **Term of the Plan Trustee** ................................30

(iii)    **The Plan Distribution Trustee's Powers and Duties**.....30

(iv)    **Trust Distributions** ................................31

(v)    **Federal Income & Taxation of the Plan Distribution Trust** ................................32

(vi)    **Beneficiaries of the Plan Distribution Trust**................32

(vii)    **Subordination** ................................33

4.    Objections to Claims. ................................33

5.    Payment Upon Resolution of Disputed Claims. ................................34

6.    Reservation of Rights of Reorganized Debtors to Prosecute Post-Bankruptcy Litigation. ................................35

(i)    Lenders. ................................35

(ii)    Insiders. ................................35

(iii)    Other Claims. ................................36

7.    Payment of Professional Fees and Expenses Incurred After the Effective Date. ................................36

8.    Distributions to Be Made Pursuant to this Plan. ................................36

9.    Corporate Matters. ................................37

10.    Release of Liens. ................................37

11.    Exemption from Transfer Taxes. ................................37

12.    Exculpations and Releases. ................................38

E.    Other Provisions of the Plan. ................................38

1.    Executory Contracts and Unexpired Leases. ................................38

2.    Risk Factors. ................................39

3.    Changes in Rates Subject to Regulatory Commission Approval................39

F.    Retention of Jurisdiction. ................................39

G.    Amendments to Corporate Documents. ................................41

H.    Dissolution of the Committee. ................................41

I.    Miscellaneous Issues Regarding Plan Distribution................................41

1.    No Fractional Distributions. ................................41

3075741

**2.** Name and Address of Holder of Claim.................................................41

**3.** Unclaimed Distribution...................................................................41

**4.** De Minimus Cash Distributions. ....................................................42

**IV.** EFFECT OF CONFIRMATION OF THE PLAN .................................................42

**A.** Discharge. .....................................................................................42

**B.** Continuing Stay/Injunction. .........................................................43

**C.** Modification of the Plan. ...............................................................44

**D.** Post-Confirmation Status Reports.................................................44

**E.** United States Trustee Reporting Obligations and Fees. ...............44

**F.** Post-Confirmation Conversion/Dismissal – Local Bankruptcy Rule 3020-1(e). ..45

**G.** Final Decree....................................................................................45

iii

3075741

# TABLE OF AUTHORITIES

Page

## STATUTES

11 U.S.C. § 101 ................................................................................................................8

11 U.S.C. § 1102 ..............................................................................................................10

11 U.S.C. § 1103 ........................................................................................................15, 16

11 U.S.C. § 1112(b) .........................................................................................................45

11 U.S.C. § 1125 ..............................................................................................................11

11 U.S.C. § 1127 ..............................................................................................................40

11 U.S.C. § 1129 ..............................................................................................................37

11 U.S.C. § 1141 ..............................................................................................................42

11 U.S.C. § 1141(d)(1)(A) ..............................................................................................42

11 U.S.C. § 1141(d)(1)(A)(i) ..........................................................................................42

11 U.S.C. § 1141(d)(1)(A)(ii) .........................................................................................42

11 U.S.C. § 1141(d)(1)(A)(iii) ........................................................................................42

11 U.S.C. § 1146(c) .........................................................................................................37

11 U.S.C. § 327 ..........................................................................................................15, 16

11 U.S.C. § 328 ..........................................................................................................15, 16

11 U.S.C. § 329 ................................................................................................................16

11 U.S.C. § 330 ..........................................................................................................15, 16

11 U.S.C. § 330(a) .............................................................................................................7

11 U.S.C. § 331 ......................................................................................................7, 15, 16

11 U.S.C. § 501 ................................................................................................................42

11 U.S.C. § 502(c) ...........................................................................................................34

11 U.S.C. § 502(g) .....................................................................................................17, 42

11 U.S.C. § 502(h) ...........................................................................................................42

11 U.S.C. § 502(i) ............................................................................................................42

11 U.S.C. § 503(b) .......................................................................................................7, 15

3075741

11 U.S.C. § 503(b)(2) ................................................................................................................16

11 U.S.C. § 503(b)(3)(D) ..........................................................................................................15

11 U.S.C. § 503(b)(4) ................................................................................................................15

11 U.S.C. § 506(a) .....................................................................................................................17

11 U.S.C. § 507(a) .....................................................................................................................15

11 U.S.C. § 507(a)(1) .................................................................................................................19

11 U.S.C. § 507(a)(2) ...................................................................................................................7

11 U.S.C. § 507(a)(3) .................................................................................................................25

11 U.S.C. § 507(a)(4) .................................................................................................................25

11 U.S.C. § 507(a)(5) .................................................................................................................25

11 U.S.C. § 507(a)(6) .................................................................................................................25

11 U.S.C. § 507(a)(7) .................................................................................................................25

11 U.S.C. § 507(a)(8) ...........................................................................................................15, 22

11 U.S.C. § 510 ............................................................................................................................8

11 U.S.C. § 521 ..........................................................................................................................16

11 U.S.C. § 541 ............................................................................................................................8

11 U.S.C. § 542 ............................................................................................................................8

11 U.S.C. § 544 ............................................................................................................................8

11 U.S.C. § 545 ............................................................................................................................8

11 U.S.C. § 547 ............................................................................................................................8

11 U.S.C. § 551 ............................................................................................................................8

11 U.S.C. § 553 .......................................................................................................................8, 17

28 U.S.C. § 1930 ..........................................................................................................................7

28 U.S.C. § 1930(a)(6) .........................................................................................................19, 45

## <u>RULES</u>

Federal Rules of Bankruptcy Procedure 1000 ...........................................................................36

Federal Rules of Bankruptcy Procedure 1009 ...........................................................................16

Federal Rules of Bankruptcy Procedure 3020(e) .........................................................................1

v

Federal Rules of Bankruptcy Procedure 3022 ................................................................................45

Federal Rules of Bankruptcy Procedure 9006(a) ...................................................................9, 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3075741

**IN Holdings, Inc., a Nevada corporation, *fka* Irwin Naturals and its related debtor entities (collectively, the "Debtors"), and the Official Committee of Unsecured Creditors appointed in the bankruptcy cases of IN Nevada and IN Holdings Canada, Inc. are the proponents of this joint chapter 11 plan (as may be further amended or modified, the "Plan"). The Debtors and the Committee (the "Plan Proponents") reserve the right to make further amendments and modifications to this Plan.

**THE PLAN PROPONENTS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS PLAN AND ACCOMPANYING DISCLOSURE STATEMENT. THE PLAN PROPONENTS HAVE NOT AUTHORIZED ANY REPRESENTATION CONCERNING THE DEBTORS, THE COMMITTEE, THE VALUE OF THE DEBTORS' PROPERTY OR THE TREATMENT OF CLAIMS OTHER THAN AS SET FORTH IN THIS PLAN AND THE DISCLOSURE STATEMENT.**

3075741

# I.    INTRODUCTION

IN Holdings, Inc. ("IN Nevada") *fka* Irwin Naturals, a Nevada corporation, IN Holdings Canada, Inc. ("IN Canada") *fka* Irwin Naturals, Inc., a British Columbia corporation, DAI US HoldCo, Inc. ("DAI") and 5310 Holdings, LLC ("5310" and collectively, with IN Nevada, IN Canada and DAI, each a "Debtor" and collectively, the "Debtors") are the chapter 11 debtors in possession in the above-captioned chapter 11 bankruptcy cases. On August 9, 2024, the Debtors commenced their bankruptcy cases by filing voluntary petitions under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* ("Bankruptcy Code"). These cases are pending before the Honorable Victoria Kaufman, United States Bankruptcy Judge for the Central District of California (the "Court" or "Bankruptcy Court"). The Official Committee of Unsecured Creditors (the "Committee") was appointed in the bankruptcy cases of IN Nevada and IN Canada on August 31, 2024. The Debtors and the Committee (collectively, the "Plan Proponents") are jointly filing this chapter 11 plan (as may be further amended or modified, the "Plan"). Concurrently with the filing of this Plan, the Plan Proponents filed their disclosure statement (as may be further amended or modified, the "Disclosure Statement") which describes the Plan. Please be advised that the Plan should be read in conjunction with the Disclosure Statement and that there are disclosures and information provided in the Disclosure Statement which are not included in this Plan.

The effective date ("Effective Date") of the plan will be the second business day after entry of the order confirming the Plan (the "Confirmation Order"), provided the Bankruptcy Court has waived the provisions of Rule 3020(e) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and no stay of the Confirmation Order is in effect.[2]

The Plan is a reorganizing plan – which will be funded by the sale proceeds from the sale of the Debtors' supplement business, which sale closed on August 8, 2025. Among other assets, the

---

[2] If the Bankruptcy Court does not waive the provisions of Bankruptcy Rule 3020(e), then the Effective Date will be the second business day which is at least fifteen (15) days following the date of entry of the Confirmation Order, assuming there has been no appeal from and order staying the effectiveness of the Confirmation Order.  If there has been an order entered staying the effectiveness of the Plan Confirmation Order, the Effective Date shall be the second business day after the stay is no longer in effect with respect to the Confirmation Order.

3075741

Debtors retain significant net operating losses ("NOLs") and are in the process of determining whether they start a new consumer packaged goods business and/or merge with an existing consumer packaged goods business. The Plan provides for, among other things, (a) the appointment of a plan distribution agent (the "Plan Distribution Trustee") and the creation of a plan distribution trust (the "Plan Distribution Trust") that will hold certain cash sufficient in an amount to pay certain claims (the "Trust Assets"), (b) the distribution of payments by the Plan Distribution Trustee and the Reorganized Debtors in accordance with the Plan, and (c) for the Debtors to continue as going concerns to establish a new business.

There are four primary groups of creditor claims and interests in these cases consisting of: (i) priority tax and employee claims; (ii) the claims of the Debtors' pre-petition secured creditors (i.e., creditors who purport to assert a lien against certain of the Debtors' assets as collateral for their alleged claims);[3] (iii) the claims of the Debtors' non-priority general unsecured creditors; and (iv) the equity interests of the Debtors' current shareholders.

The following is a summary of the Plan:

1.    <u>Reorganization:</u> The Plan provides for a reorganization with all four entities to emerge as Reorganized Debtors. Among other assets, the Debtors have significant NOLs and intend on starting a new consumer packaged goods business and/or acquiring a consumer-packaged goods business.

2.    <u>Plan Funding:</u> The Debtors currently have $23,537,132.20 in cash, which is more than sufficient to pay all allowed claims in full, with interest if applicable.

3.    The Plan segregates Claims[4] into Classes and treats them as summarized immediately below, which summaries are subject to the provisions specified in Article IV below and in Article III of the Plan. The following is a summary of the Plan:

/ / /

---

[3] The Debtors do not intend, nor should any provision of either the Plan or Disclosure Statement be construed, as an admission of any kind as to the nature, extent, or priority of any purported lien(s), encumbrance(s), or charge(s) of any kind, nature, or extent against the Debtors' assets or property.

[4] Any capitalized term not yet defined will be defined in Article II of this Plan.

3075741

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| N/A | Administrative Claims (Professional Fees) | Estimated Between Approximately $3 million and $5.5 million. | Full payment, subject to Bankruptcy Court approval as may be required. Payment to be made by the Plan Distribution Trustee. |
| N/A | Administrative Claims (Incurred in the Ordinary Course of Business) | Estimated at $50,000 | Allowed Administrative Claims representing post-Petition Date liabilities incurred by the Debtors in the ordinary course of business, for which no approval by the Bankruptcy Court is required, shall be paid in full in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such liabilities and any agreements relating thereto. The Reorganized Debtors are responsible for these payments (and not the Plan Distribution Trust). |
| N/A | Priority Tax Claim of Canada Revenue Agency | Estimated at $17,438.37. | Full payment within fourteen days of the Effective Date). Payment to be made by the Plan Distribution Trustee. |
| N/A | Priority Tax Claim of CA Department of Tax and Fee Administration | Estimated at $2,697.30. | Full payment within fourteen days of the Effective Date. Payment to be made by the Plan Distribution Trustee. |
| N/A | Priority Tax Claim of State of Washington | Estimated at $907.62. | Full payment within fourteen days of the Effective Date. Payment to be made by the Plan Distribution Trustee. |
| N/A | Priority Tax Claim of Massachusetts Department of Revenue | Proof of Claim No. 1-1 filed in Case No. 1:24-bk-11326-VK in the amount of $1,451.53. | The Debtors are in the process of investigating this claim. If allowed, full payment by the Plan Distribution Trustee. |
| N/A | Priority Tax Claim of Michigan Department of Treasury | Proof of Claim No. 6-1 filed in Case No. 1:24-bk-11326-VK in the amount of $5,879.43. | The Debtors are in the process of investigating this claim. If allowed, full payment by the Plan Distribution Trustee. |
| N/A | Priority Tax Claim of Oregon Department of Revenue | Proof of Claim No. 36-2 filed in Case No. 1:24-bk-11323-VK in the amount of $10,942.54. | The Debtors are in the process of investigating this claim. If allowed, full payment by the Plan Distribution Trustee. |
| N/A | Priority Tax Claims of the Internal Revenue Service ("IRS") | Estimated at $0. | While the IRS has filed millions of dollars of claims against the Estates, the Debtors' accountant is in the process of resolving each alleged claim. The Debtors do not believe that they will ultimately have any liability to the IRS. |

3

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| | | | To the extent the IRS has Allowed Claims in these cases, they will be paid in full within the later of fourteen days of the Effective Date or entry of an order allowing the IRS claim(s) by the Reorganized Debtors (and not by the Plan Distribution Trustee). |
| N/A | Priority Tax Claim of Franchise Tax Board ("FTB") | Proof of Claim No. 2-1 filed in Case No. 1:24-bk-11323-VK in the amount of $2,854.52.<br><br>Proof of Claim No. 60-1 filed in Case No. 1:24-bk-11323-VK in the amount of $98,210.37.<br><br>Proof of Claim No. 5-1 filed in Case No. 1:24-bk-11326-VK in the amount of $26,394.93.<br><br>Estimated at $3,000 | The Debtors believe the FTB's claims will be reduced significantly once they file their 2023 tax returns. To the extent the FTB has an allowed claim, such amount will be paid by the Plan Distribution Trustee. The Debtors believe they owe less than $3,000 to the FTB. |
| 1 | Previously Secured claim of East West Bank, as Agent ("EWB") and CFG Bank ("CFG")<br><br>Collateral Description: None. EWB has been paid $25,658,075.80 post-petition by the Debtors. As such, pursuant to Section 5.06 of the Security Agreement dated February 1, 2023 between the Debtors and EWB (the "Security Agreement"), all security interests granted in the Security Agreement were released and terminated when all obligations were paid in full in cash  (other than unasserted contingent indemnification obligations and/or unasserted expense reimbursement obligations).<br><br>*Debtors reserve all | Filed Claim: Claim 48 [Case No. 11323]: $19,381,507.84 plus interest and fees.<br>Duplicate Claims:<br>Claim 1 [Case No. 11325]<br>Claim 3 [Case No. 11326]<br>Claim 5 [Case No. 11324] | **The Debtors scheduled this claim as Unliquidated and Disputed and reserve all rights with respect to objecting to amounts paid to EWB for excessive fees and to assert affirmative claims against EWB and CFG.<br><br>**Treatment:**<br><br>The Debtors' position is that EWB has been paid in full and is no longer a secured creditor or otherwise entitled to charge fees and costs to the estates after August 11, 2025.<br><br>Notwithstanding, if it is determined that EWB is owed any additional amount (other than unasserted contingent indemnification obligations and/or unasserted expense reimbursement obligations), the Plan provides that such claim will be paid in full by the Reorganized Debtors within three (3) business days of the date that EWB submits an accounting and invoice to the Debtors or on the Effective Date in an amount determined by the Bankruptcy Court.<br><br>In light of payment in full, the Security Agreement specifically provides that any and all security interests granted by the Security Agreement "shall be released and terminated when all |

3075741

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| | their rights to assert claims against EWB | | Obligations have been paid in full in cash (other than unasserted contingent indemnification obligations and unasserted expense reimbursement obligations) and when the Commitments have terminated." *See*, Section 5.06 of the Security Agreement.<br><br>**Unimpaired. Not Entitled to Vote.** |
| 2 | Wage Related Claims (Pre-Petition) | $5,991.80 | Paid in full within fourteen days of the Effective Date by the Plan Distribution Trustee.<br><br>**Impaired; Entitled to Vote** |
| 3 | General Unsecured Claims [Excluding Insider Claims] | Estimated at approximately $5 to $7 million.  (This number may change based upon the resolution of objections to Disputed Claims.)<br><br>[This estimation does not include any intercompany claims as the Debtors' have agreed to subordinate all of their intercompany claims to those of Allowed General Unsecured Claims.] | **Treatment:**<br><br>Allowed General Unsecured Claims will be paid in full within fourteen days of the Effective Date (assuming the Plan Distribution Trustee is in possession of a W-9 for each creditor holding an Allowed Claim)[5] by the Plan Distribution Trustee.<br><br>Interest shall accrue at the California default state law rate of 10% on all Allowed General Unsecured Claims commencing as of the Petition Date.<br><br>Upon resolution of the Debtors' objections to disputed General Unsecured Claims, the respective claimants shall be paid their Allowed General Unsecured Claim in full within ten (10) days of a final non-appealable order allowing such claim.<br><br>The treatment proposed herein shall be in full settlement and satisfaction of all General Unsecured Claims.<br><br>**Impaired; Entitled to Vote** |

---

[5] If the Debtors and/or the Plan Distribution Trustee are not in possession of a W-9 for any creditor, the Debtors and/or the Plan Distribution Trustee will send a written request to such creditor(s). Payment will be paid only after the receipt of a W-9 from such creditor.

5

3075741

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| 4 | General Unsecured Claim of Insider Klee Irwin | $1,035,682.49 (plus 4.43% interest from the Petition Date)<br><br>Subordinated Promissory Note Dated October 19, 2023<br><br>Proof of Claim No. 55 | **Treatment:**<br><br>Subordinated to Allowed General Unsecured Claims of non-insiders. Paid in full after the payment in full of Class 3 Allowed Claims by the Plan Distribution Trustee.<br><br>**Impaired; Entitled to Vote** |
| 5 | General Unsecured Claim of Insider Mark Green | $1 million due only upon certain types of liquidation events as described in the contract<br><br>Proof of Claim No. 63 | **Treatment:**<br><br>Subordinated to Allowed General Unsecured Claims of non-insiders.<br><br>Late filed and no basis for claim per contract terms. The Debtors intend to object. If allowed, payment in full after payment in full of Class 3 Allowed Claims by the Plan Distribution Trustee.<br><br>**Impaired; Entitled to Vote** |
| 6 | IN Holdings, Inc. ("IN Nevada")<br>Equity Interests of Klee Irwin (90% Non-Voting Interest), Klee & Margareth Irwin Children's Trust (10% Non-Voting Interest) and DAI US HoldCo, Inc. (100% Voting Interest) | IN Nevada's current equity holders who collectively own 100% of IN Nevada. | **Treatment:**<br><br>Equity holders shall retain their respective interests.<br><br>**Unimpaired. Not Entitled to Vote.** |
| 7 | IN Holdings Canada, Inc. ("IN Canada") - Equity Interest of Public Shareholders | IN Canada owns DAI, which owns 2% of IN Nevada. | **Treatment:** IN Canada will remain a public company. IN Canada Shareholders may elect their treatment as follows: IN Canada Shareholders will retain their existing number of equity shares unless IN Canada Shareholders vote to receive a pro rata cash distribution of $225,000 (eligible only for non-insider shareholders).<br><br>**Impaired; Entitled to Vote.** |
| 8 | DAI US HoldCo<br>Owned 100% by IN Canada | | **Treatment:** All Equity Interest shall remain the same.<br><br>**Unimpaired. Not Entitled to Vote** |
| 9 | 5310 Holdings, LLC<br><br>Owned 100% by IN Nevada | | **Treatment:** All Equity Interest shall remain the same.<br><br>**Unimpaired. Not Entitled to Vote** |

6

3075741

## II.    DEFINITIONS AND EXHIBITS

**A.    Definitions.**

For the purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article II.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning(s) ascribed to such terms in the Bankruptcy Code or the Bankruptcy Rules, in that order or priority.  Throughout this Plan, the use of the masculine, feminine, neuter, plural or singular shall be understood to include each of the others as the context may reasonably dictate.  As used in this Plan, the following definitions shall apply:

1.    **5310.** One of the four jointly administered affiliated Debtors, 5310 Holdings, LLC ("5310"), Case No. 1:24-bk-11325-VK, is a wholly owned subsidiary of IN Nevada, and previously owned substantially all of the Debtors' intellectual property. 5310 will become a Reorganized Debtor and will hold any of the Debtors' future intellectual property.

2.    **Administrative Claim.**  A Claim for costs and expenses of administration allowed under Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(2) of the Bankruptcy Code including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the business of the Debtors (such as wages, salaries or commissions for services); (b) compensation for legal, financial advisory, accounting and other services, and reimbursement of expenses awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

3.    **Administrative Claims Bar Date.**  The date which is thirty (30) days after the Effective Date.

4.    **Allowed Administrative Claim.**  An Administrative Claim which is an Allowed Claim.

5.    **Allowed Claim.**  A Claim against the Debtors and/or the Estates as to which no objection has been filed, or if an objection has been filed, has either been overruled or otherwise resolved by the allowance of such Claim by the Bankruptcy Court, if the Claim was: (1) scheduled in

3075741

the list of creditors prepared and filed with the Bankruptcy Court by the Debtors and not listed as

disputed, contingent or unliquidated as to amount; or (2) the subject of a timely filed proof of claim;

or (3) which has been allowed by order of the Bankruptcy Court.

**6.**    **Allowed Priority Claim.**  A Priority Claim which is an Allowed Claim.

**7.**    **Allowed Priority Tax Claim.**  A Priority Tax Claim which is an Allowed

Claim.

**8.**    **Allowed Professional Fees.**  The amount of fees and costs incurred by

Professionals engaged by the Debtors or the Committee in connection with the Cases which are (1)

timely requested by application filed on or prior to the Administrative Claims Bar Date; and (2)

which are allowed by order of the Bankruptcy Court.

**9.**    **Allowed Secured Claim.**  A Secured Claim which is an Allowed Claim.

**10.**    **Allowed General Unsecured Claim.**  A General Unsecured Claim which is

an Allowed Claim.

**11.**    **Assets.**  All tangible and intangible assets of every kind and nature of the

Debtors and their Estates, and all proceeds thereof, wherever located, as of the Effective Date.

**12.**    **Avoidance Actions.**  Causes of Action arising under Bankruptcy Code

sections 510, 541, 542, 544, 545, 547 through 551 and/or 553, or under related state or federal

statutes and common law including, without limitation, fraudulent transfer laws, whether or not

litigation is commenced to prosecute such Causes of Action.

**13.**    **Ballot.**  The form of ballot or ballots that will be distributed electronically

with the Disclosure Statement to holders of Claims entitled to vote under the Plan in connection with

the solicitation of votes to accept or to reject the Plan.

**14.**    **Bankruptcy Code.**  Title 11 of the United States Code (11 U.S.C. §§ 101 *et

seq.*), as now in effect or hereafter amended.  All citations in the Disclosure Statement or in the Plan

to section numbers are to the Bankruptcy Code unless otherwise expressly indicated.

**15.**    **Bankruptcy Court.**  The United States Bankruptcy Court for the Central

District of California (San Fernando Valley Division), or such other federal court with competent

jurisdiction over the Cases.

8

3075741

16. **Bankruptcy Rules.** Federal Rules of Bankruptcy Procedure, as now in effect or hereafter amended.

17. **Bar Date.** December 20, 2024 for non-governmental creditors; and February 5, 2025 for governmental units.  See, Doc. No. 200.

18. **Beneficiaries.** The Holders of Certain Allowed Claims and the Holders of Disputed Claims who, pursuant to the Plan, are entitled to any Distributions from the Plan Distribution Trust.

19. **Business Day.** Any day, other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

20. **Cases.** This Chapter 11 bankruptcy cases, filed by the Debtors, pending in the Bankruptcy Court and jointly administered under Case No. 1:24-bk-11323-VK.

21. **Cash.** Currency, checks, negotiable instruments and wire transfers of immediately available funds.

22. **Causes of Action.** Any and all causes of action, Avoidance Actions, suits, rights of action, rights to legal remedies, rights to equitable remedies, rights to payment of any amounts owing to the Debtors or the Estates for any reason whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, that the Debtors and/or Estates may hold against any Person but excluding those Persons who are released or exculpated, or against whom claims were waived, pursuant to the Plan. For the avoidance of doubt, any causes of action purchased by FitLife pursuant to the Sale Order are excluded from the definition of Causes of Action.

23. **Claim.** Any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, against the Debtors and/or the Estates, and any right to any legal or equitable remedy for breach of any obligation giving rise to a right to payment, whether or not such right is an equitable remedy or is reduced to judgment, liquidated, unliquidated, fixed,

9

3075741

contingent, matured, unmatured, disputed, undisputed, secured or unsecured, against the Debtors
and/or the Estates.

24.    **Claimant.**  A Person who holds a Claim.

25.    **Claim Chart.**  **Exhibit A** to the Disclosure Statement which lists all Claims
filed against the Debtors as of the date reflected therein.

26.    **Claims Objection Deadline.**  Two hundred and seventy (270) days following
the Effective Date, which date may be extended by the Bankruptcy Court upon motion of any party
in interest for cause.

27.    **Class.**  A category of Claims which are substantially similar to each other and
into which Allowed Claims are grouped and classified pursuant to the Plan, unless a member of the
Class has agreed to a subordinated treatment.  The Classes provided for in the Plan are summarized
in Article IV of the Disclosure Statement and Article III of the Plan.

28.    **Committee.**  The Official Committee of Unsecured Creditors appointed by
the OUST on August 31, 2024 [Doc. No. 69] in the bankruptcy cases of IN Nevada and IN Canada,
pursuant to § 1102 of the Bankruptcy Code.

29.    **Confirmation.**  The entry of the Confirmation Order on the docket of the
Bankruptcy Court.

30.    **Confirmation Date.**  The date upon which the Confirmation occurs.

31.    **Confirmation Hearing.**  The hearing or hearings held by the Bankruptcy
Court to consider and rule upon the Debtors' request for confirmation of the Plan.

32.    **Confirmation Order.**  The order entered by the Bankruptcy Court confirming
the Plan.

33.    **Creditor.**  A Person asserting a Claim; *aka* a Claimant.

34.    **Cure Claim.**  A claim based upon the Debtors' default on an Executory
Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors under
sections 365 or 1123 of the Bankruptcy Code.

3075741

**35.** **DAI.** One of the four jointly administered affiliated Debtors, DAI US HoldCo, Inc. ("DAI"), Case No. 1:24-bk-11326-VK, is a holding company that owns 2% of IN Nevada as of the Petition Date.

**36.** **Debtors.** IN Nevada, IN Canada, 5310 and DAI, the jointly administered chapter 11 debtors in these Cases.

**37.** **Disallowed.** With respect to a Claim, or any portion thereof, that (a) has been disallowed by a Final Order, (b) is Scheduled at zero, or as contingent, disputed or unliquidated and as to which no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (c) is not Scheduled, and as to which (i) no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (ii) no request for payment of an Administrative Claim has been filed by the Administrative Claims Bar Date, as appropriate, or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law.

**38.** **Disclosure Statement.** The *Joint Disclosure Statement* (as may be further amended or modified) prepared by the Debtors and Committee as required by § 1125 of the Bankruptcy Code describing the Plan and filed concurrently herewith.

**39.** **Disputed Claim.** Disputed Claims include: (i) a Claim which has been scheduled as disputed, contingent or unliquidated where a Proof of Claim has not been timely filed thereafter; (ii) a Claim as to which an objection has been timely filed with the Bankruptcy Court, and which objection has not been withdrawn on or before any date fixed for filing such objections by the Plan or by order of the Bankruptcy Court and has not been overruled or denied by a Final Order; and (iii) any Claim listed as a Disputed Claim on the Claim Chart.

**40.** **Distribution(s).** Any distribution by the Plan Distribution Agent to any Class, Claimant or Creditor.

**41.** **Effective Date.** The second Business Day after the Confirmation Date, provided that the Bankruptcy Court has waived the provisions of Bankruptcy Rule 3020(e) and no stay of the Confirmation Order is in effect. If the Bankruptcy Court does not waive the provisions of

11

Bankruptcy Rule 3020(e), then the Effective Date will be the second Business Day which is at least

fifteen (15) days following the date of entry of the Confirmation Order, providing there has been no

appeal from and order staying the effectiveness of the Confirmation Order.  If there has been an

order entered staying the effectiveness of the Confirmation Order, the Effective Date shall be the

second Business Day after the stay is no longer in effect with respect to the Confirmation Order.

42. **Equity Interest.**  An "equity security" as defined in § 101(16) of the

Bankruptcy Code.

43. **Equity Holder(s).**  A holder of any Equity Interest of any of the Debtors.

44. **Estates.**  The estates of the Debtors created upon commencement of the Cases

pursuant to § 541 of the Bankruptcy Code.

45. **Exculpated Claim.**  Any Claim or Cause of Action based on conduct taken or

omitted to be taken in good faith after the Petition Date and on or before the Effective Date (except

with respect to any post-Effective Date modification or amendments to the Plan) in connection with,

or arising out of the formulating, negotiating, soliciting, preparing, or confirming the Plan,

Disclosure Statement and all exhibits thereto and/or the transactions contemplated therein, or a

contract, instrument, release or other agreement or document created or entered into in connection

with the Plan.

46. **Executory Contract.**  A contract to which the Debtors are a party that is

subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

47. **EWB.**  The Debtors' former secured creditor, East West Bank, as Agent

("EWB").

48. **Final Fee Application(s).** The final request for payment of Professional Fee

Claims.

49. **Final Cash Collateral Order.**  The *Final Order: (I) Authorizing Debtor to

Obtain Post-Petition Financing, (II) Granting Liens and Administrative Expense Claims, (III)

Authorizing Debtors' Use of Cash Collateral, (IV) Modifying the Automatic Stay, and (V) Granting

Other Related Relief* [Doc. No. 266] entered by the Bankruptcy Court on December 9, 2024.

50. **Final Order.**  An order or judgment of the Bankruptcy Court, as entered on

3075741

the applicable docket, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargue, or rehear have been waived in writing in form and substance satisfactory to the Debtors prior to the Effective Date, or to the Reorganized Debtors or Plan Distribution Agent after the Effective Date, or, in the event that an appeal, writ of certiorari, or re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which re-argument or rehearing was sought and denied, and the time to take any further appeal, petition for certiorari or move for re-argument or rehearing shall have expired.

51.    **General Unsecured Claim.**  A Claim against the Debtors that is not secured by a charge against, or interest in, any of the Debtors' Assets, that is not an Administrative Claim, a Priority Claim, or a Priority Tax Claim.

52.    **Holder(s).**  A Person holding a Claim or Interest against the Debtors, provided, however, with respect to transfers of Claims governed by Bankruptcy Rule 3001(e), in order for the transferor to be deemed the Holder of the Claim for distribution purposes, the deadline for any objection to the proposed transfer of a Claim must have passed with either (1) no objection to the transfer having been filed, or (2) any objection to such transfer having been resolved in favor of the transferor by no later than the Confirmation Date.  In other words, after the Effective Date, without the express consent of the Reorganized Debtors or the Plan Distribution Trustee, no transfer of Claims will be recognized by the Reorganized Debtors or the Plan Distribution Trustee for Distributions made pursuant to the Plan.

53.    **Independent Director.** The Debtors have appointed Bradley Sharp as the independent director of IN Nevada effective as of March 18, 2025 pursuant to a Resolution of the Board of Directors of IN Nevada dated March 18, 2025, a Written Consent of Shareholders of Irwin Naturals to Elect Special Restructuring Independent Director dated March 18, 2025, an engagement agreement between the Debtors and Development Specialists, Inc. dated March 4, 2025, and an

13

3075741

Indemnification Agreement dated March 5, 2025. Pursuant to the aforementioned documents, the Independent Director is vested with the sole authority to approve all Liquidation Event(s) on behalf of IN Nevada. "Liquidation Events" include a sale of IN Nevada's equity or assets, a re-financing and/or the Plan. The Debtors' appointment of the Independent Director was approved pursuant to Court order entered April 24, 2025 [Doc. No. 546].

54.    **Impaired.**  When used in reference to a Claim, Interest or Class, a Claim, Interest or Class that is impaired within the meaning of § 1124 of Bankruptcy Code.

55.    **IN Canada.**  One of the four jointly administered affiliated Debtors, IN Holding Canada, Inc. ("IN Canada"), *fka* Irwin Naturals, Inc., a British Columbia corporation, Case No. 1:24-bk-11324-VK, is currently the ultimate parent of all the other Debtors and it is a public company.

56.    **IN Nevada.** One of the four jointly administered affiliated Debtors, IN Holdings, Inc. ("IN Nevada"), *fka* Irwin Naturals, a Nevada corporation, Case No. 1:24-bk-11323-VK, is the operating entity.

57.    **IN Canada Shareholders.** Shareholders who currently hold shares in IN Canada.

58.    **Interest.**  When "Interest" is used in the context of holding an equity security or unit of the Debtors (and not used to denote (i) the compensation paid for the use of money for a specified time and usually denoted as a percentage rate of interest on a principal sum of money, or (ii) a security interest in property), then "Interest" shall mean an interest or share in the Debtors of the type described in the definition of "Equity Interest."

59.    **Noticing Agent.**  Omni is the claims and noticing agent employed in the Debtors' bankruptcy cases.

60.    **OUST.**  Office of the United States Trustee for Region 16.

61.    **Person.**  Person shall have the same meaning as in § 101(41) of the Bankruptcy Code.

62.    **Petition Date.**  August 9, 2024, the date on which the Debtors filed their respective voluntary petition for relief under chapter 11, thereby commencing these Cases.

63. **Plan.** This *Joint Chapter 11 Plan of Reorganization* (as may be further amended or modified) proposed by the Debtors and Committee and including, without limitation, all exhibits, supplements, appendices and schedules thereto, either in its present form or as it may be altered, amended, supplemented, or modified from time to time.

64. **Plan Distribution Trust.** The certain trust as created by the Plan and Confirmation Order.

65. **Plan Distribution Trustee.** The agent appointed to disburse payments to Holders of Allowed Claims in accordance with the terms of the Plan.

66. **Post-Confirmation Status Report.** The post-confirmation status report to be filed by the Reorganized Debtors and/or Plan Distribution Agent if so ordered by the Bankruptcy Court.

67. **Priority Claim.** A Claim entitled to priority under § 507(a) of the Bankruptcy Code, other than a Priority Tax Claim pursuant to § 507(a)(8) of the Bankruptcy Code.

68. **Priority Tax Claim.** A Claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

69. **Professional Fee Applications.** Applications filed pursuant to sections 330, 331 or 503(b)(4) of the Bankruptcy Code for allowance of Administrative Claims relating to the compensation and reimbursement of expenses of Professionals employed pursuant to an order of the Bankruptcy Court under sections 327 or 1103 of the Bankruptcy Code for services provided and expenses incurred prior to the Effective Date.

70. **Professional Fee Claims.** (A) a claim under sections 327, 328, 330, 331, 503(b), 1103 or 1106 of the Bankruptcy Code for compensation for professional services rendered or expenses incurred on and after the Petition Date and prior to the Effective Date on behalf of the Estate by a Professional duly employed and authorized by an Order of the Bankruptcy Court; or (b) a claim under § 503(b)(4) of the Bankruptcy Code for reasonable compensation for professional services rendered by an attorney or accountant of an entity whose expense is allowable under § 503(b)(3)(D) of the Bankruptcy Code for making a substantial contribution to the Estates.

71. **Professionals.** Those Persons (i) that are subject to the retention pursuant to

3075741

an order of the Bankruptcy Court in accordance with sections 327, 1103 and/or 1106 of the

Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant

to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code or (ii) for which compensation and

reimbursement has been allowed by the Bankruptcy Court pursuant to sections 330 and 503(b)(2) of

the Bankruptcy Code.

72.    **Proponents.** The proponents of the Plan are the Debtors and the Committee.

73.    **Pro Rata.**  Pro rata means proportionate so that the ratio of (a) the amount of

consideration distributed on account of an Allowed Claim to (b) the amount of the Allowed Claim is

the same as the ratio of (x) the amount of consideration available for distribution on account of all

Allowed Claims in the Class in which the Allowed Claim is included to (y) the amount of all

Allowed Claims in that Class.

74.    **Reorganized Debtors.**  IN Nevada, IN Canada, DAI and 5310 following the

occurrence of the Effective Date.

75.    **Sale Closing.** The sale of the Debtors' supplement business, which closed on

August 8, 2025.

76.    **Sale Order.** The *Order Approving Debtors' Motion for Order Authorizing*

*and Approving (A) the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens,*

*Claims, Interests and Encumbrances (Other than Those Expressly Assumed by the Buyer) Pursuant*

*to 11 U.S.C. Sections 363(b) and (f); (B) Assumption and Assignment of Executory Contracts and*

*Unexpired Leases and Determining Cure Amounts; (C) Waiving the 14-Day Stay Periods of*

*Bankruptcy Rules 6004(h) and 6006(d); (D) Determining that the Buyer is Entitled to Protection*

*Pursuant to 11 U.S.C. section 363(m); and (E) Granting Related Relief* [Doc. No. 740] entered on

July 31, 2025.

77.    **Scheduled**.  Scheduled means the information set forth in the Schedules.

78.    **Schedules.**  The Schedules of Assets and Liabilities filed by the Debtors in

accordance with § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as the same may be

amended from time to time in accordance with Bankruptcy Rule 1009 prior to the Effective Date.

IN Nevada's Schedules: Doc. No. 96; IN Canada's Schedules: Doc. No. 16 in 1:24-bk-11324-VK;

5310's Schedules: Doc. No. 16 in 1:24-bk-11325-VK; DAI's Schedules: Doc. No. 16 in 1:24-11326-VK.

     **79.**   **Secured Claim.** A Claim that is secured by a lien against any Assets to the extent of the value of the Estate's interest in such Assets, or to the extent of the amount of such Claim subject to setoff in accordance with § 553 of the Bankruptcy Code, in either case determined pursuant to § 506(a) of the Bankruptcy Code.

     **80.**   **Stalking Horse Bidder.** FitLife Brands, Inc. ("FitLife") was the designated Stalking Horse Bidder pursuant to that certain *Asset Purchase and Sale Agreement* (the "APA") entered into between and among the Debtors and FitLife on or about June 10, 2025.

     **81.**   **Trust Assets.** That certain cash in the amount of $13.5 million held by the Plan Distribution Trust.

     **82.**   **Unclaimed Distribution.** Any Distribution made by the Plan Distribution Agent to the address of the recipient reflected in the Schedules (or on any Proof of Claim filed by the Claimant), by: (a) checks which have been returned as undeliverable without a proper forwarding address; (b) checks which were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same; (c) checks which have not been cashed for a period of ninety (90) days after the date such checks were issued, or (d) disbursements that were not made because the Holder of such Allowed Claim failed to provide required tax information within forty-five (45) days after the Plan Distribution Agent have sent any request for same to such Claimant's address as reflected in the Schedules and/or such Claimant's Proof of Claim.

     **83.**   **Unclassified Claim.** Any Claim which is not part of any Class, including Administrative Claims and Priority Tax Claims.

     **84.**   **Unimpaired.** A Claim is unimpaired when it is within a class that is not impaired within the meaning of § 1124 of the Bankruptcy Code.

     **85.**   **Unsecured Claim.** Any Claim, including without limitation any claim arising under § 502(g) of the Bankruptcy Code, that is not secured by a lien on, security interest in, or charge against, any Asset.

17

**B.    Exhibits.**

All Exhibits to the Disclosure Statement and this Plan are incorporated into and are part of this Plan as if set forth in full herein.

**C.    Computing Time Periods.**

In computing any period of time prescribed or contemplated by the Plan, Bankruptcy Rule 9006(a) shall apply.

**D.    Notices and Delivery of Documents.**

All notices, correspondence, and other deliveries under the Plan must be directed as follows:

| | |
|---|---|
| To the Debtors or Reorganized Debtors: | IN Holdings, Inc. et al<br>1968 S. Coast Hwy #5310<br>Laguna Beach, CA 92651 |
| To the Plan Distribution Trustee or Plan Distribution Trust | IN Plan Distribution Trust<br>c/o Bradley D. Sharp<br>333 South Grand Ave., Ste 4100<br>Los Angeles, CA 90071 |
| With a Copy to: | Susan K. Seflin<br>BG Law LLP<br>21650 Oxnard St., Suite 500<br>Woodland Hills, CA 91367<br>Fax: (818) 827-9099<br>Email: sseflin@bg.law |
| To the Committee: | Jeffrey I. Golden<br>Golden Goodrich<br>3070 Bristol Street, Suite 640<br>Costa Mesa, CA 92626<br>Fax: (714) 966-1002<br>Email: jgolden@go2.law |

**III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THIS PLAN**

**A.    What Creditors and Interest Holders Will Receive Under this Plan.**

As required by the Bankruptcy Code, the Plan classifies Claims and Interests in various Classes according to their right of priority under the Bankruptcy Code.  The Plan states whether each Class of Claims or Interests in impaired or unimpaired.  The Plan provides the treatment each Class will receive.

3075741

**B.      Unclassified Claims.**

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtors have not placed the following Unclassified Claims in a Class.

**1.      Administrative Claims.**

Administrative Claims are for costs or expenses of administering the Debtors' Chapter 11 Cases which are allowed under Bankruptcy Code Section 507(a)(1).  The majority of Allowed Administrative Claims representing post-Petition Date liabilities incurred by the Debtors in the ordinary course of business were paid by FitLife in connection with the sale of the Debtors' supplement business. The remaining Administrative Claims are estimated below. The Bankruptcy Code requires that all Administrative Claims be paid on the Effective Date unless a particular Claimant agrees to a different treatment.  After the Effective Date, while IN Nevada's chapter 11 case remains open, the Reorganized Debtors and, if applicable, the Plan Distribution Trustee will (i) file with the United States Trustee quarterly reports; and (ii) timely pay fees incurred pursuant to 28 U.S.C. Section 1930(a)(6).[6]

The following chart lists all of the Debtors' Section 507(a)(1) administrative claims and their treatment under the Plan. The Plan Proponents reserve the right to object to the administrative claims listed below and these amounts are provided as estimates. The Plan Proponents believe that the total amount owed will be less than what is reflected in the below chart.

/ / /

/ / /

/ / /

---

[6] The quarterly fees owed to the United States Trustee are due and owing every quarter, without the requirement for the United States Trustee to file an administrative claim or a proof of claim. There is also no bar date for quarterly fees.

3075741

| Name | Amount Owed[7] | Treatment |
|---|---|---|
| Administrative Claims (Incurred in the Ordinary Course of Business) | Estimated at approximately $50,000. | Allowed Administrative Claims representing post-Petition Date liabilities incurred by the Debtors or the Reorganized Debtors in the ordinary course of business, for which no approval by the Bankruptcy Court is required, shall be paid in full in the ordinary course of business by the Reorganized Debtors in accordance with the terms and conditions of the particular transaction giving rise to such liabilities and any agreements relating thereto. |
| BG Law LLP, bankruptcy counsel to the Debtors | Approximately $700,000 in addition to the post-petition payments made to BG pursuant to the order approving the Fee Procedures Motion [Doc. No. 214] (the "Interim Compensation Order"). | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses by the Plan Distribution Trustee, unless otherwise agreed to. |
| Province, LLC, financial advisor to the Debtors | Approximately $700,000 in addition to the post-petition payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses by the Plan Distribution Trustee, unless otherwise agreed to. |
| Jerrel G John, bookkeeper and accountant to the Debtors | Approximately $50,000 in addition to the post-petition payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses by the Plan Distribution Trustee, unless otherwise agreed to. |
| Marula Capital Group, financial advisor – valuation services to the Debtors | Approximately $50,000 in addition to amounts paid to Marula Capital Group pursuant to its employment order [Doc. No. 135] and pursuant to any payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses by the Plan Distribution Trustee, unless otherwise agreed to. |

---

[7] The amounts set forth in this chart are estimates of the administrative claim amounts that the Plan Proponents believe each administrative claimant may be entitled to on the Effective Date in addition to any amounts paid to such claimant pursuant to the Interim Compensation Order.  The amounts set forth in this chart are subject to change.

3075741

| Name | Amount Owed[7] | Treatment |
|------|----------------|-----------|
| Golden Goodrich LLP, counsel to the Committee | Approximately $250,000 in addition to the post-petition payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses by the Plan Distribution Trustee, unless otherwise agreed to. |
| Force Ten Partners, LLC, financial advisor to the Committee | Approximately $200,000 in addition to the post-petition payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses by the Plan Distribution Trustee, unless otherwise agreed to. |
| Omni, noticing and solicitation agent for the Debtors | $0 | Paid by the Debtors or the Reorganized Debtors in the ordinary course of business pursuant to the order approving Omni's employment [Doc. No. 134] |
| STS Capital | 3% of any Sale transaction if FitLife is the successful buyer and the purchase price is less than $41 million, or a $3 million fee if an alternate party is the ultimate buyer under the Sale. | Unless and until General Unsecured Claims are paid in full, STS's fee is capped at 3%. STS will not be entitled to any additional payment by the Plan Distribution Trustee until after all Allowed General Unsecured Claims have been paid in full. |
| **TOTAL** | Between Approximately $4 million and $6 million estimated | Paid in the manner described above |

Reservation of Rights

**Nothing in the Plan or Disclosure Statement and nothing set forth in the above chart should be construed as an admission by the Plan Proponents or any other party as to the validity of the asserted / projected Professional Fee Claims.  The Debtors, the Committee, the OUST, the Creditors and all other parties in interest reserve all rights to object to Professional Fee Claims.**

Court Approval of Fees Required:

The Bankruptcy Court must approve, or must have previously approved on a final basis, all Professional Fee Claims listed in the foregoing chart before they may be paid. Only the amount of fees and expenses approved by the Bankruptcy Court is required to be paid under the Plan. The

21

3075741

administrative claim amounts set forth above for professional fees and expenses simply represent the Debtors' best estimate as to the amount of Allowed Professional Fee Claims, which estimates assume that the Debtors make all of the post-petition professional fee monthly payments that the Bankruptcy Court may authorize the Debtors to make. The actual Administrative Claims for Professional fees and expenses may be higher or lower. By voting to accept the Plan, Creditors are not acknowledging the validity of, or consenting to the amount of, any of these Administrative Claims for professional fees and expenses, and Creditors are not waiving any of their rights to object to the allowance of any of these Professional Fee Claims.  Also, the Professionals employed in these Cases may, prior to the Effective Date, seek Court approval of interim fees and expenses incurred in excess of the post-petition professional fee monthly payments received by such Professionals, pursuant to orders of the Bankruptcy Court.  To the extent any such interim fees and expenses are allowed by the Bankruptcy Court and paid by the Debtors prior to the Effective Date, that will reduce the amount of professional fees and expenses to be paid by the Reorganized Debtors.

**The last day to file any Administrative Claims (but NOT for ordinary post-petition operating obligations or Professional Fee Claims) is thirty (30) days after the Effective Date.** Administrative expenses will be paid on the later of the Effective Date or 10 days after the entry of a Final Order allowing the administrative expense, unless the administrative claimant has consented otherwise in writing.  On or before the Effective Date, the Debtors or the Plan Distribution Trustee will serve notice of an administrative bar date on all potential administrative claimants.

**2.      Priority Tax Claims.**

Priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code.  The Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the Petition Date.  The Debtors believe that they owe the following priority tax claims:

/ / /

/ / /

22

3075741

| Class No. | Description | Estimated Amount | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| N/A | Priority Tax Claim of Canada Revenue Agency | Estimated at $17,438.37. | Full payment by the Plan Distribution Trustee within fourteen days of the Effective Date. |
| N/A | Priority Tax Claim of CA Department of Tax and Fee Administration | Estimated at $2,697.30. | Full payment by the Plan Distribution Trustee within fourteen days of the Effective Date. |
| N/A | Priority Tax Claim of State of Washington | Estimated at $907.62. | Full payment by the Plan Distribution Trustee within fourteen days of the Effective Date. |
| N/A | Priority Tax Claim of Massachusetts Department of Revenue | Proof of Claim No. 1-1 filed in Case No. 1:24-bk-11326-VK in the amount of $1,451.53. | The Debtors are in the process of investigating this claim. If allowed, full payment by the Plan Distribution Trustee. |
| N/A | Priority Tax Claim of Michigan Department of Treasury | Proof of Claim No. 6-1 filed in Case No. 1:24-bk-11326-VK in the amount of $5,879.43. | The Debtors are in the process of investigating this claim. If allowed, full payment by the Plan Distribution Trustee. |
| N/A | Priority Tax Claim of Oregon Department of Revenue | Proof of Claim No. 36-2 filed in Case No. 1:24-bk-11323-VK in the amount of $10,942.54. | The Debtors are in the process of investigating this claim. If allowed, full payment by the Plan Distribution Trustee. |
| N/A | Priority Tax Claims of the Internal Revenue Service ("IRS") | Estimated at $0. | While the IRS has filed millions of dollars of claims against the Estates, the Debtors' accountant is in the process of resolving each alleged claim. The Debtors do not believe that they will ultimately have any liability to the IRS. To the extent the IRS has Allowed Claims in these cases, they will be paid in full within the later of fourteen days of the Effective Date or entry of an order allowing the IRS claim(s). To the extent the IRS has any allowed claims, such claims shall be paid by the Reorganized Debtors (and not the Plan Distribution Trustee). |
| N/A | Priority Tax Claim of Franchise Tax Board ("FTB") | Proof of Claim No. 2-1 filed in Case No. 1:24-bk-11323-VK in the amount of $2,854.52.<br><br>Proof of Claim No. 60-1 filed in Case No. 1:24-bk-11323-VK in the amount of $98,210.37.<br><br>Proof of Claim No. 5-1 filed in Case No. 1:24-bk-11326-VK in the amount of $26,394.93.<br><br>Estimated at $3,000 | The Debtors believe the FTB's claims will be reduced significantly once they file their 2023 tax returns. To the extent the FTB has an allowed claim, such amount will be paid by the Plan Distribution Trustee. The Debtors believe they owe less than $3,000 to the FTB. |

23

3075741

**C.    Classified Claims and Interests.**

    **1.    Class of Secured Claims.**

    Secured Claims are claims secured by liens on property of the estate.  The following chart sets forth the description and treatment of the Debtors' known Secured Claims.

| CLASS # | DESCRIPTION | IMPAIRED (YES/NO) | TREATMENT |
|---|---|---|---|
| 1 | Previously Secured claim of East West Bank, as Agent ("EWB") and CFG Bank ("CFG")<br><br>Collateral Description:  None. EWB has been paid $25,658,075.80 post-petition by the Debtors. As such, pursuant to Section 5.06 of the Security Agreement dated February 1, 2023 between the Debtors and EWB (the "Security Agreement"), all security interests granted in the Security Agreement were released and terminated when all obligations were paid in full in cash  (other than unasserted contingent indemnification obligations and/or unasserted expense reimbursement obligations).<br><br>*Debtors reserve all their rights to assert claims against EWB<br><br>Filed Claim: Claim 48 [Case No. 11323]: $19,381,507.84 plus interest and fees.<br>Duplicate Claims:<br>Claim 1 [Case No. 11325]<br>Claim 3 [Case No. 11326]<br>Claim 5 [Case No. 11324] | No. | **The Debtors scheduled this claim as Unliquidated and Disputed and reserve all rights with respect to objecting to amounts paid to EWB for excessive fees and to assert affirmative claims against EWB and CFG.<br><br><u>Treatment:</u><br><br>The Debtors' position is that EWB has been paid in full and is no longer a secured creditor or otherwise entitled to charge fees and costs to the estates after August 11, 2025.<br><br>Notwithstanding, if it is determined that EWB is owed any additional amount (other than unasserted contingent indemnification obligations and/or unasserted expense reimbursement obligations), the Plan provides that such claim will be paid in full by the Reorganized Debtors within three (3) business days of the date that EWB submits an accounting and invoice to the Debtors or on the Effective Date in an amount determined by the Bankruptcy Court.<br><br>In light of payment in full, the Security Agreement specifically provides that any and all security interests granted by the Security Agreement "shall be released and terminated when all Obligations have been paid in full in cash (other than unasserted contingent indemnification obligations and unasserted expense reimbursement obligations) and when the Commitments have terminated." *See*, Section 5.06 of the Security Agreement.<br><br>**Unimpaired. Not Entitled to Vote.** |

3075741

**2.**     **Classes of Priority Unsecured Claims.**

Certain Priority Claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in Classes.  These types of Claims are entitled to priority treatment as follows:  the Bankruptcy Code requires that each holder of such a Claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim.  The Debtors do not believe that there are any valid outstanding Section 507(a)(3), (5), (6), or (7) priority unsecured claims.  If there are any allowed priority unsecured claims as of the Effective Date, these claims will be paid in full by the Plan Distribution Trustee on the Effective Date (or as soon as practicable thereafter).  All allowed Section 507(a)(3), (5), (6), or (7) priority unsecured claims, if any, will be characterized as Priority Claims.

There is one valid outstanding Section 507(a)(4) priority unsecured claim, which claim and treatment are set forth below:

| CLASS # | DESCRIPTION | IMPAIRED (Yes/No) | TREATMENT |
|---|---|---|---|
| 2 | Employee Wage Claim of $5,991.80 | Yes. | Paid by the Plan Distribution Trustee in full within 14 days of the Effective Date. **Impaired; entitled to vote.** |

**3.**     **Classes of General Unsecured Claims.**

General Unsecured Claims are classified and treated as follows:

[Remainder of Page Intentionally Blank]

25

3075741

| CLASS # | DESCRIPTION | IMPAIRED (Yes/No) | TREATMENT |
|---|---|---|---|
| 3 | General Unsecured Claims [Excluding Insider Claims]<br><br>Estimated at approximately $5 to $7 million. (This number may change based upon resolution of objections to Disputed Claims.)<br><br>[This estimation does not include any intercompany claims as the Debtors' have agreed to subordinate all of their intercompany claims to those of Allowed General Unsecured Claims.] | Yes. | **Treatment:**<br>Allowed General Unsecured Claims will be paid in full by the Plan Distribution Trustee within fourteen days of the Effective Date (assuming the Plan Distribution Trustee is in possession of a W-9 for each creditor holding an Allowed Claim)[8].<br>Interest shall accrue at the California default state law rate of 10% on all Allowed General Unsecured Claims commencing as of the Petition Date.<br>Upon resolution of the Debtors' objections to disputed General Unsecured Claims, the respective claimants shall be paid their Allowed General Unsecured Claim in full within ten (10) days of a final non-appealable order allowing such claim.<br>The treatment proposed herein shall be in full settlement and satisfaction of all General Unsecured Claims. |
| 4 | General Unsecured Claim of Insider Klee Irwin ($1,035,682.49 – plus 4.43% interest from the Petition Date)<br><br>Subordinated Promissory Note Dated October 19, 2023<br><br>Proof of Claim No. 55 | Yes. | **Treatment:**<br>Subordinated to Allowed General Unsecured Claims of non-insiders. Paid in full after the payment in full of Class 3 Allowed Claims by the Plan Distribution Trustee.<br>**Impaired; Entitled to Vote** |
| 5 | General Unsecured Claim of Insider Mark Green ($1 million due only upon certain types of liquidation events as described in the contract ) | Yes. | **Treatment:**<br>Subordinated to Allowed General Unsecured Claims of non-insiders.<br>Late filed and no basis for claim per contract terms. The Debtors intend to object. If allowed, payment by the Plan Distribution Trustee after payment in full of Class 3 Allowed Claims.<br>**Impaired; Entitled to Vote** |

## 4.      Classes of Interest Holders.

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the

---

[8] If the Debtors and/or the Plan Distribution Trustee are not in possession of a W-9 for any creditor, the Debtors and/or the Plan Distribution Trustee will send a written request to such creditor(s). Payment will be paid only after the receipt of a W-9 from such creditor.

Debtor.  The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (YES/NO) | TREATMENT |
|---|---|---|---|
| 6 | **IN Nevada** IN Nevada's current equity holders who collectively own 100% of IN Nevada: Equity Interests of Klee Irwin (90% Non-Voting Interest), Klee & Margareth Irwin Children's Trust (10% Non-Voting Interest) and DAI US HoldCo, Inc. (100% Voting Interest) | Yes. | **Treatment:** Equity holders shall retain their respective interests. **Unimpaired. Not Entitled to Vote.** |
| 7 | **IN Canada** - Equity Interest of Public Shareholders IN Canada owns 100% of DAI, which owns 2% of IN Nevada. | Yes. | **Treatment:** IN Canada will remain a public company. IN Canada Shareholders may elect their treatment as follows: IN Canada Shareholders will retain their existing number of equity shares unless IN Canada Shareholders vote to receive a pro rata cash distribution of $225,000 (eligible only for non-insider shareholders). **Impaired; Entitled to Vote.** |
| 8 | **DAI US HoldCo** Owned 100% by IN Canada, owns 2% of IN Nevada but owns 100% Voting Shares. | No. | **Treatment:** All Equity Interest shall remain the same. **Unimpaired. Not Entitled to Vote** |
| 9 | **5310 Holdings, LLC** Owned 100% by IN Nevada | No. | **Treatment:** All Equity Interest shall remain the same. **Unimpaired. Not Entitled to Vote** |

**D.    Means of Effectuating the Plan and Implementation of the Plan.**

   **1.    Plan Funding.**

The Plan will be funded by the Debtors' cash of $20.5 million. The Reorganized Debtors will be responsible for directly paying, among other things, any allowed claim of the IRS, any allowed claim of EWB, ordinary course administrative expenses, and UST quarterly fees. The Plan

Distribution Trustee will be responsible for paying all other allowed claims including pre-Effective Date professional fees, administrative tax claims, 503(b)(9) claims, priority claims and general unsecured claims. The Plan Distribution Trust will be funded with $13.5 million in Cash contributed by the Reorganized Debtors from the aforementioned $20.5 million in Cash on the Effective Date. Against this amount, the total amount of claims to be paid from the Plan Distribution Trust are approximately $13.27 million.  A chart summarizing such claims is set forth at page 68 of the Disclosure Statement discussing feasibility.

**2.    Composition of the Debtors Post-Confirmation.**

On the Effective Date, IN Canada will remain a British Columbia Corporation and a public company. IN Canada's CEO will remain Klee Irwin, and the make up of the current board of directors shall remain intact.

On the Effective Date, IN Nevada will remain a Nevada corporation.  IN Nevada's CEO will remain Klee Irwin. IN Nevada's Independent Director position will terminate on the Effective Date.

On the Effective Date, Mr. Irwin shall continue as the CEO of DAI.

On the Effective Date, IN Nevada will continue to be the managing member of 5310.

**3.    Plan Distribution Trust.**

a.    <u>Establishment of the Plan Distribution Trust</u>

The Plan Distribution Trust shall be established and shall become effective on the Effective Date. The Plan Distribution Trust is created pursuant to the Plan and the Confirmation Order, and no separate trust instrument shall be required. The sole purpose of the Plan Distribution Trust will be to hold $13.5 million in Cash to make the Distributions required of it by the Plan. Each creditor holding an Allowed Claim will receive in full satisfaction, settlement, release and discharge of such Claim, payment in full of such Allowed Claim from the Plan Distribution Trust.

b.    <u>Plan Distribution Trust Assets</u>

The Plan Distribution Trust will be funded with the Trust Assets, which consist of $13.5 million in Cash free and clear of all liens, claims, encumbrances and/or interests of any party. The Plan Distribution Trustee may retain a distribution agent (or any other party he or she deems appropriate) to assist with Distributions.

c.     The Term of the Plan Distribution Trust

The initial term of the Plan Distribution Trust shall be two (2) years (the "Initial Term"); provided, however, that the term of the Plan Trust may be automatically extended for an additional two-year term by the Plan Distribution Trustee upon the filing of a notice by the Plan Distribution Trustee prior to the expiration of the Initial Term and the Plan Distribution Trustee will serve such notice on the Reorganized Debtors' counsel. Thereafter, the term of the Plan Trust may be extended for a further finite term upon a finding of "cause" by the Court. The Plan Distribution Trustee may seek such an extension of the Plan Distribution Trust's term by motion filed by the expiration of the term to be extended. The Plan Distribution Trust may be terminated earlier than its scheduled termination if the Plan Distribution Trustee has completed all payments required under the Plan, has paid any taxes, fees and penalties associated with the Plan Distribution Trustee's administration of the Trust Assets, and has performed all other duties required by the Plan. Upon the termination of the Plan Distribution Trust, the Plan Distribution Trustee shall be discharged and exonerated and any assets remaining in the Plan Distribution Trust shall revest in the Reorganized Debtors.

d.     The Plan Distribution Trustee

(i)     **Appointment**

The appointment of the Plan Distribution Trustee shall be effective as of the Effective Date. Bradley Sharp of Development Specialists, Inc. ("DSI") shall be the initial Plan Distribution Trustee. The Plan Distribution Trustee may resign upon sixty (60) days' advance written notice to the Reorganized Debtors so long as a replacement trustee has been appointed. The Plan Distribution Trustee may be removed by order of the Court for "cause." The Plan Distribution Trustee shall bill his and DSI's time on an hourly basis and estimate that fees will be approximately $75,000.

The Plan Trustee shall act as a fiduciary and shall not be personally liable in connection with the affairs of the Plan Distribution Trust or to any person except for such of the Plan Distribution Trustee's acts or omissions that constitute fraud, willful misconduct, or gross negligence, as determined by a court of competent jurisdiction. In addition, the Plan Distribution Trustee shall be indemnified by the Plan Distribution Trust against and held harmless by the Plan Distribution Trust from any losses, claims, damages, liabilities, or expenses (including without limitation, attorneys'

3075741

fees, disbursements, and related expenses) to which the Plan Distribution Trustee may become

subject in connection with any action, suit proceeding, or investigation brought or threatened against

the Plan Distribution Trustee in connection with any matter arising out of or related to the Plan

Distribution Trust (other than in respect of acts or omissions that constitute fraud, willful

misconduct, or gross negligence, as determined by a court of competent jurisdiction).

The Plan Trustee shall be entitled to obtain customary fiduciary and/or errors and omissions

liability insurance at the expense of the Plan Distribution Trust and engage independent legal

counsel and financial advisors to assist with its evaluation of any matters with respect to the Plan

Distribution Trust at the expense of the Plan Distribution Trust.

(ii)    <b>Term of the Plan Trustee</b>

Unless the Plan Distribution Trustee resigns, dies or is removed by Court order earlier, the

Plan Distribution Trustee's term shall expire upon termination of the Plan Distribution Trust pursuant

to the Plan. In the event the Plan Distribution Trustee resigns, dies or is removed by Court order

prior to termination of the Plan Trust, the Reorganized Debtors shall appoint a successor trustee.

Upon the termination of the Plan Distribution Trust, the Plan Distribution Trustee may destroy or

otherwise dispose of the books and records of the Plan Distribution Trust.

(iii)    <b>The Plan Distribution Trustee's Powers and Duties</b>

On the Effective Date, the Plan Distribution Trustee shall have the rights, powers and duties

set forth in the Plan and the Confirmation Order. The Plan Distribution Trustee shall be governed in

all things by the terms of the Plan and the Confirmation Order, and the Plan Distribution Trustee

shall administer the Plan Distribution Trust in accordance with the Plan. The Plan Distribution

Trustee shall be authorized, empowered and directed to take all actions necessary to comply with the

Plan and exercise and fulfill the duties and obligations arising thereunder, including, without

limitation to:

- Employ, retain, and replace one or more attorneys, accountants and advisors as
  necessary to discharge the duties of the Plan Distribution Trustee under the Plan and
  to pay such professionals their reasonable and necessary fees and costs from the Trust
  Assets in the ordinary course of business without further order of the Bankruptcy

Court;

- Open, maintain and administer bank accounts for Cash of the Plan Distribution Trust as necessary to discharge the duties of the Plan Distribution Trustee under the Plan;

- Make Distributions to the Holders of Allowed Claims in accordance with the Plan;

- Administer the Plan Distribution Trust in accordance with the terms of the Plan;

- Incur and pay from the Trust Assets reasonable and necessary expenses in connection with the performance of the Plan Distribution Trustee's duties under the Plan;

- Represent the Plan Distribution Trust before the Court and other courts of competent jurisdiction with respect to matters concerning the Plan Distribution Trust;

- Comply with applicable orders of the Court and any other court of competent jurisdiction over the matters set forth in the Plan;

- Comply with all applicable laws and regulations concerning the matters set forth in the Plan

- Exercise such other powers as may be vested in the Plan Distribution Trust pursuant to the Plan, the Confirmation Order, or other Final Orders of the Court;

- Execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Plan Distribution Trust;

- Seek a determination of tax liability under § 505 of the Code, pay taxes, if any, related to the Plan Distribution Trust, and file, if necessary, any and all tax and information returns required with the respect to the Plan Distribution Trust, including, if appropriate, treating the Plan Distribution Trust as a "grantor trust" pursuant to Treas. Reg. 1.671-4 or otherwise, make tax elections by and on behalf of the Plan Distribution Trust, and pay taxes, if any, payable by the Plan Distribution Trust; and

- Cause to be prepared and to file federal, state, and local tax returns related to the Plan Distribution Trust as necessary.

(iv)    **Trust Distributions**

The Plan Distribution Trustee will make the Distributions to the Holders of Allowed Claims in accordance with the terms of the Plan. Persons dealing with the Plan Distribution Trustee, or

31

3075741

seeking to assert Claims against the Debtors, the Reorganized Debtors, the Estates, or the Plan Distribution Trust, shall look only to property of the Plan Distribution Trust to satisfy any liability to such Persons, and the Plan Distribution Trustee shall have no personal or individual obligation to satisfy any such liability.

(v)  **Federal Income & Taxation of the Plan Distribution Trust**

For federal income tax purposes, the Plan Distribution Trust is a "liquidating trust" within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45,1994-2 C.B. 124. The transfer of assets to the Plan Distribution Trust under the Plan is treated as a deemed transfer to the persons entitled to receive Distributions from the Plan Distribution Trust followed by a deemed transfer of assets by such persons to the Plan Distribution Trust. The persons entitled to receive Distributions under the Plan will be deemed the grantors and owners of the Plan Distribution Trust and its assets. The Plan Distribution Trust will be taxed as a "grantor trust" within the meaning of IRC Sections 671-677 (a non-taxable pass-through tax entity) owned by the persons entitled to receive Distributions under the Plan.

The Plan Distribution Trust will file federal income tax returns as a grantor trust under IRC Section 671 and Treasury Income Tax Regulation Section 1.671-4 and report, but not pay tax on, the Plan Distribution Trust's tax items of income, gain, loss deductions, and credits ("Tax Items"). The persons entitled to receive Distributions under the Plan will report such Tax Items on their federal income tax returns and pay any resulting federal income tax liability. The Plan Distribution Trust and the persons entitled to receive Distributions under the Plan will use consistent valuations of the assets transferred to the Plan Distribution Trust for all federal income tax purposes, such valuations to be determined by the Plan Distribution Trustee. The taxation of the Plan Trust does not alter the Reorganized Debtors' obligations to file appropriate tax returns and pay taxes.

(vi)  **Beneficiaries of the Plan Distribution Trust**

The Holders of Allowed Unsecured Claims under the Plan, or any successors to such Holders' Allowed Unsecured Claims ("Beneficiary" or "Beneficiaries") shall own a beneficial interest in the Plan Distribution Trust as otherwise set forth in the Plan and shall, subject to the Plan, be entitled to a Distribution, if any, in the amounts, and at the times, set forth in the Plan. Ownership

of a beneficial interest in the Plan Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Plan Distribution Trust by the Plan Distribution Trustee. The ownership of a beneficial interest in the Plan Distribution Trust shall not entitle any Beneficiary to any title in or to the Trust Assets or to any right to call for a partition or division of the Trust Assets or to require an accounting. The Plan Distribution Trustee shall make Distributions, if any, to the Beneficiaries in the manner provided in the Plan. The rights of the Beneficiaries arising under the Plan Trust may be deemed "securities" under applicable law.

However, such rights have not been defined as "securities" under the Plan because (a) the intent of the Plan is that such rights shall not be securities, and (b) if the rights arising under the Plan Distribution Trust are deemed to be "securities," the exemption from registration under § 1145 of the Bankruptcy Code is intended to be applicable to such securities.

(vii) <strong>Subordination</strong>

The total estimated claims for claims to be paid through the Plan Distribution Trust are $13.2 million and the Plan Distribution Trust is to be funded with $13.5 million on the Effective Date. Of the $13.2 million in claims, approximately $1 million of the allowed claims is the claim of Klee Irwin, the Debtors' principal and an insider of these estates. Mr. Irwin's claim shall be subordinated to all other claims and will not be paid until all claims have been administered and paid and all other Plan Distribution Trust obligations have been paid in full unless the Plan Distribution Trustee determines in his sole discretion that there are sufficient reserves to allow for the payment of such claim. Per the STS employment order [Doc. No. 450], the payment of STS's fee beyond 3% is waived until the payment in full of all Allowed General Unsecured Claims.

**4.     Objections to Claims.**

The claims Bar Date in these cases was December 20, 2024 for non-governmental entities [Doc. No. 200]. The Bar Date in these cases was February 5, 2025 for governmental entities. Attached as **Exhibit A** to the Disclosure Statement is a Claim Chart, which identifies all of the Debtors' scheduled claims and all of the filed proofs of claims which have been filed to date against the Debtors. Following Confirmation of the Plan, the Reorganized Debtors shall be the sole entities

with the standing and authority to file objections to Claims in these cases, and shall have the right to file objections to all Claims which are inconsistent with the Debtors' books and records unless the Reorganized Debtors deems the inconsistency to be insignificant.  **Any proof of claim that is filed with the Bankruptcy Court and/or served on the Debtors after the Effective Date <u>will be deemed invalid</u> (without the need for the Reorganized Debtors to file an objection to such late-filed claim) unless the claimant files a motion for leave of Court to file such claim.**

As provided by Section 502(c) of the Bankruptcy Code, the Bankruptcy Court may estimate any contingent, unliquidated or disputed claim for purposes of Confirmation of the Plan.  The Bankruptcy Court shall retain jurisdiction over the Debtors, the Plan Distribution Trust, these Cases and these Estates to resolve and to adjudicate any and all such objections to Claims which are commenced or continued following the Confirmation of the Plan.  Nothing contained in the Plan shall constitute a waiver or release by the Debtors of any rights of setoff or recoupment, or of any defense, the Debtors or the Reorganized Debtors may have with respect to any claim, or of any basis that the Debtors may have to object to any such claim.

**<u>Any Proof of Claim or Interest that is filed with the Bankruptcy Court and/or served on the Debtors or Plan Distribution Trustee after the Effective Date will be deemed invalid unless the Claimant files a motion for leave of Court to file such Claim.</u>**

The Debtors specifically reserve the right to file objections to any and all Claims set forth in **Exhibit A** to the Disclosure Statement, and to any subsequently filed proofs of claim. An order confirming the Plan shall not be *res judicata*, collateral estoppel, or other bar to the Debtors' rights to object to such Claims after the Effective Date.

**5.      Payment Upon Resolution of Disputed Claims.**

The Plan Distribution Trustee will not make any payment to the holder of a Disputed Claim until such Disputed Claim becomes an Allowed Claim.

**6.      Reservation of Rights of Reorganized Debtors to Prosecute Post-Bankruptcy
Litigation.**

(i)      <u>Lenders.</u>

The Debtors reserve their rights to file and prosecute litigation against EWB and
CFG. The Debtors believe they have significant potential claims against the Lenders for
unreasonable aggressive actions EWB took pre-petition including, but not limited to, (i)
attempting to and succeeding in taking control of the Debtors' business by limiting the
Debtors' ability to employ historically successful business procedures, (ii) forcing the
Debtors to incur and pay unreasonable fees of EWB's professionals and professionals that
EWB forced the Debtors to retain, (iii) restricting the Debtors' ability to access funds
available under the applicable loan agreements while at the same time charging the Debtors
interest on those funds, (iv) restricting the Debtors' ability to utilize cash flow from
operations, and (v) increasing pressure on the Debtors and their management to force the
Debtors to release claims against the Lenders for which the Lenders should be held
accountable.  The Lenders continued this unreasonable pattern of behavior post-petition. The
Debtors expressly reserve their right to pursue affirmative claims against the Lenders both in
contract and in tort for the Lenders malicious and bad faith conduct including for
compensatory and punitive damages and/or repayment of amounts paid to the Lenders for
excessive interest and other costs on account of the Lenders' claim.

(ii)      <u>Insiders.</u>

The Debtors' principal and CEO Klee Irwin currently owes the Debtor $4,143,304.45
in loans as of the Petition Date.  Pursuant to the APA with FitLife, all of the Debtor's Claims
and /or causes of action, including loans and/or other receivables and/or notes payable to the
Debtors existing as of the closing date against Klee Irwin (collectively, the "Irwin Claims")
constitute Excluded Assets under the APA to remain with the Debtors on the condition that,
and if and only if, Klee Irwin executes an agreement in form and substance reasonably
acceptable to FitLife which provides for a release of claims and a non-disparagement
agreement from Klee Irwin in favor of FitLife and its affiliates (the "NDA").  The deadline

3075741

by which Mr. Irwin must execute the NDA has been extended by agreement until September

15, 2025.  If Mr. Irwin does not execute the NDA in favor of FitLife, then pursuant to the

APA, the Irwin Claims shall constitute Purchased Assets acquired by, and belonging to

FitLife. To the extent these claims are retained by the Debtors, the Debtors do not intend to

pursue collection against Mr. Irwin at this time because the Debtors believe that Mr. Irwin's

notes are not currently collectible and because the Debtors believe that all Allowed Claims

will be paid in full. Nevertheless, the Debtors will retain these claims against Mr. Irwin

(unless such claims are acquired by FitLife).

   (iii) Other Claims.

   The Debtors' are reserving their rights with respect to other Avoidance Actions and

Causes of Action that were not purchased by FitLife in connection with the sale of the

Debtors' supplement business. Among other things, the Debtors may pursue claims against

Adam Berk related to a past due note. The Debtors may supplement this section with

additional claims as appropriate.

  **7.**  **Payment of Professional Fees and Expenses Incurred After the Effective Date.**

   The Reorganized Debtors and the Plan Distribution Trustee shall be entitled to employ such

professionals that they deem appropriate and to pay the fees and expenses incurred by such

professionals in the ordinary course without any further order of the Bankruptcy Court.

  **8.**  **Distributions to Be Made Pursuant to this Plan.**

   Except as otherwise agreed to by the Plan Distribution Trustee or Reorganized Debtors in

writing, Distributions to be made to holders of Allowed Claims pursuant to the Plan may be

delivered by regular mail, postage prepaid, to the address shown in the Debtors' Schedules, as they

may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different

address is stated in a proof of claim duly filed with the Bankruptcy Court, to such address.  Checks

issued to pay Allowed Claims shall be null and void if not negotiated within ninety (90) days after

the date such check was mailed to the intended recipient.  Those funds represented by voided checks

that were not timely negotiated shall become the property of the Plan Distribution Trust or, as

applicable, the Reorganized Debtors.

Beneficiaries of the Plan Distribution Trust (each a "Beneficiary" and collectively, the "Beneficiaries") shall be required to certify such Beneficiary's taxpayer identification number, and that payments to such Beneficiary are exempt from backup withholding.  Any Beneficiary who fails to provide this certification to the Plan Distribution Trustee within thirty (30) days of the mailing of the Plan Distribution Trustee's request to such Beneficiary for same, shall forfeit and not be entitled to receive any Distribution. The Plan Distribution Trustee shall file with the Bankruptcy Court a "Notice of Forfeiture" reflecting any beneficial interests in the Plan Distribution Trust which have been forfeited pursuant to this paragraph.

**9.      Corporate Matters.**

The occurrence of the Effective Date shall constitute all approvals, consents and actions required by any officers of the Debtors under applicable law, and shall enable the Debtors or the Reorganized Debtors to execute any documents, instruments or agreements, and to take all corporate and other actions that are specified in the Plan or the Plan Confirmation Order that are necessary or appropriate to perform, implement and effectuate the Plan.

**10.      Release of Liens.**

Because all Allowed Claims are being paid in full, on the Effective Date, all liens or other security interests in or against property of the Estates shall be released. The Reorganized Debtors shall be empowered to file such pleadings and/or record such documents or instruments as necessary to eliminate, expunge or release such liens from their respective assets.

**11.      Exemption from Transfer Taxes.**

Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under § 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax. Transfers under the Plan that are exempt from taxes under § 1146(c) of the Bankruptcy Code include all transfers by the Debtors after the commencement of their chapter 11 Cases in contemplation of the Plan but prior to the Effective Date, and all transfers to and by the Debtors and the Plan Distribution Trustee.  The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and other similar taxes.

37

12.    **Exculpations and Releases.**

*To the maximum extent permitted by law, neither the Debtors, Klee Irwin, Dan Wing, Mark Green, the Reorganized Debtors, the Independent Director, the Committee members, nor any of their Professionals (collectively, the "Exculpated Parties"), shall have or incur liability to any Holder of a Claim or Equity Holder, or any other party in interest with respect to any claim or Cause of Action based on conduct taken or omitted to be taken in good faith after the Petition Date and on or before the Effective Date in connection with, or arising out of the formulating, negotiating, soliciting, preparing or confirming the Plan, Disclosure Statement and all exhibits thereto and/or the transactions contemplated therein, or a contract, instrument, release or other agreement or document created or entered into in connection with the Plan (collectively, the "Exculpated Claims"). The foregoing exculpation shall have no effect on liability of any Exculpated Party that results from any act or omission that is determined in a Final Order to have constituted fraud, gross negligence, willful misconduct, or professional malpractice. For the avoidance of doubt, the exculpation provided herein: (i) shall only apply to conduct which occurred from the Petition Date through the Effective Date, with the exception of conduct relating to post-Effective Date modifications or amendments of the Plan, and (ii) with respect to Professionals, shall only apply to Exculpated Claims arising during the period such Professional was a Bankruptcy Court approved Professional and shall not apply to any Exculpated Claims arising prior thereto or thereafter.*

E.    **Other Provisions of the Plan.**

1.    **Executory Contracts and Unexpired Leases.**

The Debtors do not believe they will be assuming any executory contracts or unexpired leases under the Plan.  If this changes, the Debtors will update this information in an amended disclosure statement. To the extent that there are any executory contracts or unexpired leases which have not been previously rejected, then such executory contract or unexpired lease shall be deemed rejected on the Effective Date.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE

3075741

1    WHICH IS REJECTED ON THE EFFECTIVE DATE SHALL BE THIRTY (30) DAYS AFTER

2    THE EFFECTIVE DATE.  Any claim based on the rejection of an unexpired lease or executory

3    contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders

4    otherwise.  Any Allowed Claim resulting from the rejection of an unexpired lease or executory

5    contract will be classified and treated as a Class 3 Allowed Claim.

6              **2.      Risk Factors.**

7              The Plan Proponents do not believe that there is any risk of non-performance of the Plan

8    since the Plan Distribution Trust is to be funded with $13.5 million, which is approximately $1

9    million more than the high estimate for the total amount of claims in these cases.

10             **3.      Changes in Rates Subject to Regulatory Commission Approval.**

11             The Debtors are not subject to governmental regulatory commission approval of their rates.

12   **F.      Retention of Jurisdiction.**

13             Following the Confirmation of the Plan and occurrence of the Effective Date, in addition to

14   jurisdiction which exists in any other court, the Bankruptcy Court shall retain such jurisdiction as is

15   legally permissible including for the following purposes:

16             1.      To resolve any and all disputes regarding the operation and interpretation of the Plan

17   and the Confirmation Order;

18             2.      To determine the allowability, classification, or priority of Claims and to consider any

19   objection to claim or interest whether such objection is filed before or after the Effective Date;

20             3.      To determine the extent, validity and priority of any lien asserted against any Asset or

21   property of the Debtors or the Debtors' Estates;

22             4.      To construe and take any action to enforce the Plan, the Confirmation Order, and any

23   other order of the Bankruptcy Court, issue such orders as may be necessary or appropriate for the

24   implementation, execution, performance, and consummation of the Plan, the Confirmation Order,

25   and all matters referred to in the Plan and the Confirmation Order, and to determine all matters that

26   may be pending before the Bankruptcy Court in this Case on or before the Effective Date;

27

28

3075741

5.      To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of Professionals for the period on or before the Effective Date;

6.      To determine any request for payment of administrative expenses;

7.      To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any Claims resulting therefrom;

8.      To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of these Cases whether before, on, or after the Effective Date, including Claims, Causes of Action, and Avoidance Actions, and the Reorganized Debtors shall have the right to commence in the Bankruptcy Court any Causes of Action, including any Avoidance Actions, after the Effective Date, and to continue with the prosecution in the Bankruptcy Court of any such claims, Causes of Action and Avoidance Actions which were commenced but not completed by the Debtors prior to the Effective Date;

9.      To determine such other matters and for such other purposes as may be contemplated by the Plan or Confirmation Order;

10.      To modify the Plan under § 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan, or to reconcile any inconsistency in the Plan, so as to carry out its intents and purposes;

11.      Except as otherwise provided in the Plan or the Confirmation Order, to issue injunctions, to take such other actions, or make such other orders, as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or implementation by any Person or other entity of the Plan or the Confirmation Order;

12.      To issue such orders in aid of consummation, and in aid of implementation, of the Plan and the Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any Person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

13.      To enter a final decree closing these Cases.

40

### G.    Amendments to Corporate Documents.

On the Effective Date, the Debtors' officers and board members and the Plan Distribution Trustee shall be authorized to amend any corporate documents as necessary and to take all actions necessary and appropriate to carry out the terms of the Plan.

### H.    Dissolution of the Committee.

On the Effective Date, the Committee, to the extent that it serves as the Official Committee of Unsecured Creditors appointed in the bankruptcy cases of IN Nevada and IN Canada, shall be dissolved and its members shall be released and discharged from all rights and duties arising from or related to these Cases.

### I.    Miscellaneous Issues Regarding Plan Distribution.

#### 1.    No Fractional Distributions.

No Distributions in fractions of hundredths of U.S. Dollars ($0.00's) (i.e., cents) shall be issued.  If the Distribution amount allocated to an Allowed Claim at the time of a Distribution hereunder would include fractions of cents, the amount to be distributed to the holder of such Claim shall be rounded down to the highest integral number of cents in the applicable Claim amount.

#### 2.    Name and Address of Holder of Claim.

For purposes of all distributions under the Plan, the Plan Distribution Trustee can rely on the name and address of the holder of each Allowed Claim as shown on any timely filed proof of claim and, if none, as shown on the Debtors' Schedules, except to the extent that the Plan Distribution Trustee first receives adequate written notice of a change of address, properly executed by the Holder or its authorized agent.

#### 3.    Unclaimed Distribution.

Any Unclaimed Distribution under the Plan shall be forfeited to the Plan Distribution Trust. An Unclaimed Distribution is any Distribution made by the Plan Distribution Trustee to the address of the recipient reflected in the Schedules (or on any Proof of Claim filed by the Claimant), by: (a) checks which have been returned as undeliverable without a proper forwarding address; (b) checks which were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same; (c) checks which have not been cashed for a period of ninety (90) days after the

3075741

date such checks were issued, or (d) disbursements that were not made because the Holder of such

Allowed Claim failed to provide required tax information within forty-five (45) days after the Plan

Distribution Trustee has sent any request for same to such Claimant's address as reflected in the

Schedules and/or such Claimant's Proof of Claim.

**4.     De Minimus Cash Distributions.**

Notwithstanding anything to the contrary in the Plan, no Cash Distributions shall be made on

account of any Allowed Claim if the Cash Distribution amount is less than $25.00.  Holders of

Allowed Claims who would otherwise be entitled to a Distribution in the amount of less than $25.00

shall receive no Distribution on account of such Allowed Claim because the value of such Allowed

Claim would be de minimus and the administrative costs associated with processing and mailing the

Distributions to the holder of such Allowed Claim would likely exceed the amount of the

Distribution.

## IV.     EFFECT OF CONFIRMATION OF THE PLAN

**A.     Discharge.**

On the Effective Date, the Debtors will receive a discharge under the Plan pursuant to and in

accordance with the provisions of § 1141 of the Bankruptcy Code because the Plan does not provide

for a liquidation of all or substantially all of the property of the Debtors' Estates and the Debtors will

engage in business after consummation of the Plan.  Pursuant to § 1141(d)(1)(A), confirmation of

the Plan will discharge "the debtor[s] from any debt that arose before the date of such confirmation,

and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not – (i)

a proof of claim based on such debt is filed or deemed filed under section 501 of this title; (ii) such

claim is allowed under section 502 of this title; or (iii) the holder of such claim has accepted the plan

…".  11 U.S.C. §§ 1141(d)(1)(A)(i), (ii) and (iii).  **In other words, Confirmation of the Plan will**

**effectuate a discharge as to all debts or liabilities, whether contingent, unliquidated, disputed,**

**known or unknown, that were incurred or arose before Confirmation of the Plan.**  This

includes all types of Claims and obligations arising out of and/or including, but not limited to, (i) all

causes of action under state and Federal law (e.g., breach of contract, breach of fiduciary duty, false

advertising, etc.), (ii) trade payables, (iii) landlord claims, (iv) tax Claims including interest, (v)

environmental claims, (vi) employee related claims and (vii) any other known or unknown Claim from any debt arising prior to Plan Confirmation.

**The Plan shall bind the holders of all Claims whether or not they vote to accept the Plan. The rights afforded in the Plan and the treatment of all Claims therein shall be in complete satisfaction, discharge and release of all Claims against the Debtors or their Assets of any nature whatsoever except as otherwise specifically provided in the Plan. Except as set forth in the Plan, all Claims shall be forever satisfied, discharged and released in full on the Effective Date, and all holders of Claims shall be forever precluded and enjoined from asserting Claims against the Reorganized Debtors. Any litigation pending prepetition and/or initiated postpetition in any court other than the Bankruptcy Court where relief from stay was not obtained from the Bankruptcy Court shall be deemed discharged upon Plan Confirmation and the occurrence of the Effective Date.**

**B.    Continuing Stay/Injunction.**

The automatic stay is lifted upon the Effective Date as to property of the Estates. However, the stay continues to prohibit collection or enforcement of prepetition Claims against the Reorganized Debtors or the Plan Distribution Trust's property until the earlier of the date: (1) the Debtors' bankruptcy Cases are closed, or (2) the Debtors' bankruptcy Cases are dismissed. Therefore, all parties bound by the Plan shall take no action with respect to, and are enjoined from, collecting or enforcing their prepetition Claims against the Reorganized Debtors and the Plan Distribution Trustee as set forth herein, and as otherwise provided by operation of law, until the earlier of the date that (1) the Debtors' bankruptcy Cases are closed, or (2) the Debtors' bankruptcy Cases are dismissed.

**The Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any Claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.**

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an interest or other right of an equity holder that is impaired pursuant to the terms of the Plan are

permanently enjoined from taking any of the following actions against the Debtors, the Debtors' Estates, the Reorganized Debtors or their property on account of any such discharged Claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (v) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

**By accepting distribution pursuant to the Plan, each holder of an Allowed Claim receiving a Distribution pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this Section.**

**C.    Modification of the Plan.**

The Plan Proponents may modify the Plan at any time before confirmation.  However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on the Plan if the Debtors modify the Plan before confirmation.  The Debtors, the Reorganized Debtors or the Plan Distribution Trustee, as the case may be, may also seek to modify the Plan at any time after Confirmation of the Plan so long as (1) the Plan has not been substantially consummated, and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**D.    Post-Confirmation Status Reports.**

Until final decrees closing the Debtors' Cases are entered, the Reorganized Debtors shall file regular status reports if so ordered by the Bankruptcy Court.

**E.    United States Trustee Reporting Obligations and Fees.**

Within five (5) business days of the Effective Date, the Reorganized Debtors shall file a notice of the Plan's Effective Date.  Following the Effective Date of the Plan, the Reorganized Debtors and the Plan Distribution Trustee shall each file a quarterly Post-confirmation Report, UST Form 11-PCR ("PCR"), and be obligated to pay a quarterly fee pursuant to 28 U.S.C. § 1930(a)(6) for each calendar quarter, or portion thereof, until one of the following occurs: (1) the date of the final decree; (2) the conversion of the case to a case under another chapter; or (3) the dismissal of the

3075741

1    case. If any order has been entered on the docket that vacates any of the above orders or reopens the

2    case for a reason other than that which is purely administrative the filing of the PCRs shall be

3    resumed, and quarterly fees shall start to accrue.

4    **F.      Post-Confirmation Conversion/Dismissal – Local Bankruptcy Rule 3020-1(e).**

5              A Creditor or any other party in interest may bring a motion to convert or dismiss the Cases

6    under § 1112(b) of the Bankruptcy Code after the Plan is confirmed if there is a default in

7    performing the Plan. If the Bankruptcy Court orders the Cases converted to chapter 7 after the Plan

8    is confirmed, then all property that had been property of the chapter 11 Estates, and that has not been

9    disbursed pursuant to the Plan, will revest in the respective chapter 7 estate, and the automatic stay

10   will be re-imposed upon the revested property, but only to the extent that relief from stay was not

11   previously authorized by the Bankruptcy Court during these Cases. The Plan Confirmation Order

12   may also be revoked under very limited circumstances. The Bankruptcy Court may revoke the Plan

13   Confirmation Order if it was procured by fraud and if a party in interest brings an adversary

14   proceeding to revoke confirmation within 180 days after the entry of the Plan Confirmation Order.

15   **G.      Final Decree.**

16             Once the estates have been fully administered as referred to in Bankruptcy Rule 3022, the

17   Reorganized Debtors shall file a motion with the Bankruptcy Court to obtain a final decree to close

18   these cases. The Reorganized Debtors shall be responsible for the timely payment of all fees

19   incurred pursuant to 28 U.S.C. § 1930(a)(6).

20   DATED:  September 10, 2025                IN Holdings, Inc., a Nevada Corporation

21

22                                            By:_____

23                                                 Klee Irwin, Chief Executive Officer

24   DATED:  September 10, 2025                IN Holdings, Inc., a Nevada Corporation

25

26                                                   See Attached
                                              By:_____

27                                                 Bradley Sharp, Independent Director

28

45

case.  If any order has been entered on the docket that vacates any of the above orders or reopens the

case for a reason other than that which is purely administrative the filing of the PCRs shall be

resumed, and quarterly fees shall start to accrue.

**F.    Post-Confirmation Conversion/Dismissal – Local Bankruptcy Rule 3020-1(e).**

A Creditor or any other party in interest may bring a motion to convert or dismiss the Cases

under § 1112(b) of the Bankruptcy Code after the Plan is confirmed if there is a default in

performing the Plan.  If the Bankruptcy Court orders the Cases converted to chapter 7 after the Plan

is confirmed, then all property that had been property of the chapter 11 Estates, and that has not been

disbursed pursuant to the Plan, will revest in the respective chapter 7 estate, and the automatic stay

will be re-imposed upon the revested property, but only to the extent that relief from stay was not

previously authorized by the Bankruptcy Court during these Cases.  The Plan Confirmation Order

may also be revoked under very limited circumstances.  The Bankruptcy Court may revoke the Plan

Confirmation Order if it was procured by fraud and if a party in interest brings an adversary

proceeding to revoke confirmation within 180 days after the entry of the Plan Confirmation Order.

**G.    Final Decree.**

Once the estates have been fully administered as referred to in Bankruptcy Rule 3022, the

Reorganized Debtors shall file a motion with the Bankruptcy Court to obtain a final decree to close

these cases.  The Reorganized Debtors shall be responsible for the timely payment of all fees

incurred pursuant to 28 U.S.C. § 1930(a)(6).

DATED:  September 10, 2025                    IN Holdings, Inc., a Nevada Corporation


By:_____
            Klee Irwin, Chief Executive Officer


DATED:  September 10, 2025                    IN Holdings, Inc., a Nevada Corporation


By:_____
            Bradley Sharp, Independent Director

3075741

DATED:  September 10, 2025

IN Holdings Canada, Inc., a British Columbia Corporation

By:_____
       Klee Irwin, Chief Executive Officer

DATED:  September 10, 2025

5310 Holdings, LLC

By:_____
       Klee Irwin, as CEO of IN Holdings, Inc., a Nevada corporation, Managing Member of 5310 Holdings, LLC

DATED:  September 10, 2025

DAI US HoldCo Inc.,

By:_____
       Klee Irwin, Chief Executive Officer

Submitted By:

BG Law LLP

By: _/s/ Susan K. Seflin_____
       Susan K. Seflin
Attorneys for Chapter 11 Debtors
and  Co-Plan Proponents

Submitted By:

Golden Goodrich

By:_____See Attached_____
       Jeffrey I. Golden
Attorneys for Official Committee of
Unsecured Creditors and Co-Plan
Proponents

46

3075741

DATED:  September 10, 2025

IN Holdings Canada, Inc., a British Columbia Corporation

By:_____
    Klee Irwin, Chief Executive Officer

DATED:  September 10, 2025

5310 Holdings, LLC

By:_____
    Klee Irwin, as CEO of IN Holdings, Inc., a
Nevada corporation, Managing Member of 5310
Holdings, LLC

DATED:  September 10, 2025

DAI US HoldCo Inc.,

By:_____
    Klee Irwin, Chief Executive Officer

Submitted By:

BG Law LLP

By: _/s/ Susan K. Seflin_____
    Susan K. Seflin
Attorneys for Chapter 11 Debtors
and  Co-Plan Proponents

Submitted By:

Golden Goodrich

By:_____
    Jeffrey I. Golden
Attorneys for Official Committee of
Unsecured Creditors and Co-Plan
Proponents

3075741

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367**.

A true and correct copy of the document(s) entitled: **DEBTORS' AND COMMITTEE'S JOINT CHAPTER 11 PLAN OF REORGANIZATION**   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the document(s) were served by the court via NEF and hyperlink to the document. On **September 10, 2025,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **September 10, 2025,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
*The Honorable Victoria Kaufman

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **_____,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Served via email on EWB's counsel, committee counsel and UST counsel:

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 10, 2025 | JESSICA STUDLEY | /s/ Jessica Studley |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Kyra E Andrassy    kandrassy@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- Jessica L Bagdanov    jbagdanov@bg.law, ecf@bg.law
- Ryan W Beall    rbeall@go2.law,
  kadele@go2.law;dfitzgerald@go2.law;rbeall@ecf.courtdrive.com;cmeeker@go2.law
- Anthony Bisconti    tbisconti@bklwlaw.com, 1193516420@filings.docketbird.com,docket@bklwlaw.com
- Matthew Bouslog    mbouslog@allenmatkins.com, ncampos@allenmatkins.com
- Katherine Bunker    kate.bunker@usdoj.gov
- Robert Allen Curtis    rcurtis@foleybezek.com
- Erin R. Fay    efay@wsgr.com, lmcgee@wsgr.com
- Jeffrey I Golden    jgolden@go2.law,
  kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b1179
  54@notify.bestcase.com
- Alphamorlai Lamine Kebeh    MKebeh@allenmatkins.com, mdiaz@allenmatkins.com
- Alexandria Lattner    alattner@sheppardmullin.com, ehwalters@sheppardmullin.com
- Matthew A Macdonald    matthew.macdonald@wsgr.com
- Sina Maghsoudi    sinalegal@gmail.com,
  g8645@notify.cincompass.com;maghsoudi.sinab128731@notify.bestcase.com
- David W. Meadows    david@davidwmeadowslaw.com
- Douglas A Plazak    dplazak@rhlaw.com
- David M Poitras    dpoitras@bg.law
- Terrel Ross    tross@trcmllc.com
- Susan K Seflin    sseflin@bg.law
- Jonathan Seligmann Shenson    jshenson@greenbergglusker.com,
  calendar@greenbergglusker.com;cmillerwatkins@greenbergglusker.com
- Yuriko M Shikai    yshikai@neufeldmarks.com
- Ashley M Teesdale    ateesdale@bg.law, ecf@bg.law
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Ronghua Sophia Wang    sophia.wang@afslaw.com, yvonne.li@afslaw.com
- Pamela Kohlman Webster    pwebster@buchalter.com, smartin@buchalter.com
- Jessica Wellington    jwellington@bg.law, ecf@bg.law

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**