DAVID M. POITRAS – Bar No. 141309
SUSAN K. SEFLIN - Bar No. 213865
JESSICA S. WELLINGTON - Bar No. 324477
**BG LAW LLP**
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:  (818) 827-9099
Email:     dpoitras@bg.law
           sseflin@bg.law
           jwellington@bg.law

Attorneys for Chapter 11 Debtors and
Co-Plan Proponents

JEFFREY I. GOLDEN – Bar No. 133040
RYAN W. BEALL - Bar No. 313774
**GOLDEN GOODRICH LLP**
3070 Bristol Street, Suite 640
Costa Mesa, CA 92626
Telephone:  (714) 966-1000
Facsimile:  (714) 966-1002
Email:     jgolden@go2.law
           rbeall@go2.law

Attorneys for Official Committee of Unsecured
Creditors of Irwin Naturals and Irwin Naturals Inc.
and Co-Plan Proponents

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re | Case No. 1:24-bk-11323-VK |
| Irwin Naturals[1] *et al.*, | Chapter 11 |
| Debtors and Debtors in Possession. | (Jointly Administered with: Case No. 1:24-bk-11324-VK. Case No. 1:24-bk-11325, and Case No. 1:24-bk-11326-VK) |

☐ Affects Irwin Naturals, a Nevada corporation, *dba* IN Holdings, Inc.

☐ Affects Irwin Naturals, Inc. *dba* IN Holdings Canada, Inc.

☐ Affects 5310 Holdings, LLC

☐ Affects DAI US HoldCo Inc.

☒ Affects All Debtors

**JOINT DISCLOSURE STATEMENT DESCRIBING DEBTORS' AND COMMITTEE'S JOINT CHAPTER 11 PLAN OF REORGANIZATION**

**Plan Objection Deadline: 10:00 p.m. PDT on _____**

**Ballot Deadline:  10:00 p.m. PDT on _____**

**Disclosure Statement Hearing:**
Date:     October 1, 2025
Time:     2:00 p.m.

**Confirmation Hearing:**
Date:     TBD
Time:     TBD
Place:    Courtroom 301
          21041 Burbank Blvd
          Woodland Hills, CA 91367

---

[1] Irwin Naturals' name has changed to IN Holdings, Inc. and Irwin Naturals, Inc.'s name has changed to IN Holdings Canada, Inc. Debtors filed a motion shortly to update the names.

# TABLE OF CONTENTS

Page

**I.**    INTRODUCTION ...................................................................................................1

    **A.**    Purpose of this Disclosure Statement. ...................................................7

    **B.**    Purpose and Effect of the Plan.............................................................8

    **C.**    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing..............9

        **1.**    Time and Place of the Plan Confirmation Hearing.......................9

        **2.**    Deadline for Voting For or Against the Plan...............................9

        **3.**    Deadline for Objecting to the Confirmation of the Plan..................9

    **D.**    Identity of Persons to Contact for More Information Regarding the Plan.............10

    **E.**    Disclaimer. ........................................................................................10

    **F.**    Forward-Looking Statements...............................................................11

**II.**    DEFINITIONS AND EXHIBITS........................................................................12

    **A.**    Definitions..........................................................................................12

    **B.**    Exhibits. ............................................................................................23

    **C.**    Computing Time Periods. ...................................................................23

    **D.**    Notices and Delivery of Documents. ...................................................23

**III.**    BACKGROUND .................................................................................................24

    **A.**    Description and History of the Debtors' Business and a Summary of the Circumstances that Led to the Filing of the Debtors' Chapter 11 Cases. ..............24

        **1.**    General Background. ...................................................................24

        **2.**    The Debtors' Prepetition Lenders and Events Leading to the Debtors' Chapter 11 Filings....................................................24

        **3.**    The Debtors' Other Indebtedness. ...............................................26

    **B.**    Management, Principals, and Affiliates of the Debtors' Business. ........................26

    **C.**    Litigation............................................................................................27

        **1.**    Media Max Network, LLC v. Media Brokers International, Inc. et al. [IN Nevada] ............................................................27

        **2.**    Reese v. Irwin Naturals, et al. [IN Nevada]................................27

i

3.    Vaughn v. Irwin Naturals [IN Nevada]......................................................28

4.    (In re: Bed Bath & Beyond, Inc., et al., Debtor) Adversary proceeding: Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1, Inc., (f/k/a Bed Bath & Beyond Inc.) v. Irwin Naturals et al. [IN Nevada]......................................................28

5.    EMA Anesthesia v. Irwin Naturals Emergence, et al. [IN Canada] ..........29

6.    Benvenutti v. Irwin Naturals [IN Nevada]................................................29

7.    Dawn Patrol DBA Full Stream Group v. Irwin Naturals [IN Nevada]......29

8.    Avi Jones v. Irwin Naturals ......................................................................30

9.    Rebecca Rausch, et al. v. Applied Nutrition ..............................................30

D.    Significant Events During the Bankruptcy. ..........................................................30

1.    First Day Motions. ...................................................................................31

2.    Appointment of Committee. ......................................................................32

3.    Employment of Professionals. ..................................................................32

4.    Additional Cash Collateral Motions. ........................................................35

5.    Independent Director. ...............................................................................35

6.    Claim Objections. .....................................................................................36

7.    Prosecution of Avoidance Actions & Other Potential Claims....................36

8.    Exclusivity. ..............................................................................................37

9.    Competing Plans. ......................................................................................37

10.   Sale............................................................................................................38

IV.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN ............................................................................................................39

A.    What Creditors and Interest Holders Will Receive Under the Plan.....................39

B.    Unclassified Claims. ..........................................................................................39

1.    Administrative Claims. .............................................................................39

2.    Priority Tax Claims...................................................................................43

C.    Classified Claims and Interests...........................................................................44

1.    Class of Secured Claims. ..........................................................................44

2.    Classes of Priority Unsecured Claims.......................................................45

ii

3074414

3.    Classes of General Unsecured Claims. ....................................................46

4.    Classes of Interest Holders...........................................................................47

D.    Means of Effectuating the Plan and Implementation of the Plan. .........................47

1.    Plan Funding. ................................................................................................47

2.    Composition of the Debtors Post-Confirmation. ........................................48

3.    Plan Distribution Trust..................................................................................48

a.    Establishment of the Plan Distribution Trust..................................48

b.    Plan Distribution Trust Assets ........................................................48

c.    The Term of the Plan Distribution Trust.........................................49

d.    The Plan Distribution Trustee .........................................................49

(i)    **Appointment** ......................................................................49

(ii)    **Term of the Plan Trustee** .................................................50

(iii)    **The Plan Distribution Trustee's Powers and Duties**.....50

(iv)    **Trust Distributions** ..........................................................52

(v)    **Federal Income & Taxation of the Plan Distribution Trust** ...............................................................................52

(vi)    **Beneficiaries of the Plan Distribution Trust**.................52

(vii)    **Subordination** ..................................................................53

4.    Objections to Claims.....................................................................................53

5.    Payment Upon Resolution of Disputed Claims. ..........................................54

6.    Reservation of Rights of Reorganized Debtors to Prosecute Post-Bankruptcy Litigation. ................................................................................55

(i)    Lenders...................................................................................55

(ii)    Insiders. .................................................................................55

(iii)    Other Claims. .........................................................................56

7.    Payment of Professional Fees and Expenses Incurred After the Effective Date. .............................................................................................56

8.    Distributions to Be Made Pursuant to the Plan............................................56

9.    Corporate Matters. ........................................................................................57

10.    Release of Liens............................................................................................57

iii

3074414

|  | 11. | Exemption from Transfer Taxes. | 57 |
|  | 12. | Exculpations and Releases. | 58 |
| E. | | Other Provisions of the Plan. | 58 |
|  | 1. | Executory Contracts and Unexpired Leases. | 58 |
|  | 2. | Risk Factors. | 59 |
|  | 3. | Changes in Rates Subject to Regulatory Commission Approval | 59 |
| F. | | Retention of Jurisdiction. | 59 |
| G. | | Amendments to Corporate Documents. | 61 |
| H. | | Dissolution of the Committee. | 61 |
| I. | | Miscellaneous Issues Regarding Plan Distribution | 61 |
|  | 1. | No Fractional Distributions | 61 |
|  | 2. | Name and Address of Holder of Claim | 61 |
|  | 3. | Unclaimed Distribution | 61 |
|  | 4. | De Minimus Cash Distributions. | 62 |
| V. | IRS CIRCULAR 230 NOTICE | | 62 |
| VI. | TAX CONSEQUENCES OF THE PLAN | | 62 |
| VII. | CONFIRMATION REQUIREMENTS AND PROCEDURES | | 63 |
| A. | | Who May Vote or Object. | 63 |
| B. | | Who May Vote to Accept/Reject the Plan | 63 |
| C. | | What Is an Allowed Claim/Interest | 63 |
| D. | | What Is an Impaired Claim/Interest. | 64 |
| E. | | Who Is Not Entitled to Vote. | 64 |
| F. | | Who Can Vote in More Than One Class. | 65 |
| G. | | Votes Necessary to Confirm the Plan. | 65 |
| H. | | Votes Necessary for a Class to Accept the Plan. | 65 |
| I. | | Treatment of Non-accepting Classes. | 65 |
| J. | | Request for Confirmation Despite Nonacceptance by Impaired Class(es) | 65 |
| K. | | Liquidation Analysis. | 66 |

3074414

L.      Feasibility...................................................................................................67

VIII.  EFFECT OF CONFIRMATION OF THE PLAN ..........................................68

A.      Discharge. ..............................................................................................68

B.      Continuing Stay/Injunction.....................................................................69

C.      Modification of the Plan. ........................................................................70

D.      Post-Confirmation Status Reports...........................................................71

E.      United States Trustee Reporting Obligations and Fees. .........................71

F.      Post-Confirmation Conversion/Dismissal – Local Bankruptcy Rule 3020-1(e). ..71

G.      Final Decree............................................................................................71

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3074414

# TABLE OF AUTHORITIES

Page

## CASES

*In re Barakat,*
    99 F.3d 1520 (9th Cir. 1996), *cert. denied,* 520 U.S. 1143 (1997)....................................64

## STATUTES

11 U.S.C. § 101.......................................................................................................................14

11 U.S.C. § 1102.................................................................................................................15, 32

11 U.S.C. § 1103.................................................................................................................20, 21

11 U.S.C. § 1112(b)...............................................................................................................71

11 U.S.C. § 1125....................................................................................................................16

11 U.S.C. § 1127....................................................................................................................60

11 U.S.C. § 1129....................................................................................................................57

11 U.S.C. § 1129(a)(8)..........................................................................................................65

11 U.S.C. § 1129(b)...............................................................................................................65

11 U.S.C. § 1141....................................................................................................................68

11 U.S.C. § 1141(d)(1)(A).....................................................................................................68

11 U.S.C. § 1141(d)(1)(A)(i).................................................................................................69

11 U.S.C. § 1141(d)(1)(A)(ii)...............................................................................................69

11 U.S.C. § 1141(d)(1)(A)(iii)..............................................................................................69

11 U.S.C. § 1146(c)...............................................................................................................57

11 U.S.C. § 327.................................................................................................................20, 21

11 U.S.C. § 328......................................................................................................................21

11 U.S.C. § 329......................................................................................................................21

11 U.S.C. § 330.................................................................................................................20, 21

11 U.S.C. § 330(a).................................................................................................................13

11 U.S.C. § 331.............................................................................................................13, 20, 21

11 U.S.C. § 501......................................................................................................................69

3074414

11 U.S.C. § 502(c) ................................................................................................54

11 U.S.C. § 502(g) ............................................................................................23, 69

11 U.S.C. § 502(h) ................................................................................................69

11 U.S.C. § 502(i) ................................................................................................69

11 U.S.C. § 503(b) ............................................................................................12, 21

11 U.S.C. § 503(b)(2) ............................................................................................21

11 U.S.C. § 503(b)(3)(D) ........................................................................................21

11 U.S.C. § 503(b)(4) ........................................................................................20, 21

11 U.S.C. § 506(a) ................................................................................................22

11 U.S.C. § 507(a) ................................................................................................20

11 U.S.C. § 507(a)(1) ....................................................................................39, 40, 64

11 U.S.C. § 507(a)(2) ......................................................................................12, 64

11 U.S.C. § 507(a)(3) ............................................................................................45

11 U.S.C. § 507(a)(4) ............................................................................................45

11 U.S.C. § 507(a)(5) ............................................................................................45

11 U.S.C. § 507(a)(6) ............................................................................................45

11 U.S.C. § 507(a)(7) ............................................................................................45

11 U.S.C. § 507(a)(8) ....................................................................................20, 43, 64

11 U.S.C. § 510 ................................................................................................13

11 U.S.C. § 521 ................................................................................................22

11 U.S.C. § 541 ................................................................................................13

11 U.S.C. § 542 ................................................................................................13

11 U.S.C. § 544 ................................................................................................13

11 U.S.C. § 545 ................................................................................................13

11 U.S.C. § 547 ................................................................................................13

11 U.S.C. § 551 ................................................................................................13

11 U.S.C. § 553 ............................................................................................13, 22

28 U.S.C. § 1930 ................................................................................................13

3074414

28 U.S.C. § 1930(a)(6)............................................................................................................40, 72

## **RULES**

Federal Rules of Bankruptcy Procedure 1000 ....................................................................56

Federal Rules of Bankruptcy Procedure 1009 ....................................................................22

Federal Rules of Bankruptcy Procedure 3020(e) ..................................................................1

Federal Rules of Bankruptcy Procedure 3022 ....................................................................71

Federal Rules of Bankruptcy Procedure 9006(a) ............................................................14, 23

3074414

**IN Holdings, Inc., a Nevada corporation, *fka* Irwin Naturals and its related debtor entities (collectively, the "Debtors"), and the Official Committee of Unsecured Creditors appointed in the bankruptcy cases of IN Nevada and IN Holdings Canada, Inc. are the proponents of this joint disclosure statement (as may be further amended or modified, the "Disclosure Statement") and accompanying joint chapter 11 plan (as may be further amended or modified, the "Plan").  The Debtors and the Committee (the "Plan Proponents") reserve the right to make further amendments and modifications to this Disclosure Statement.

**THE PLAN PROPONENTS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. THE PLAN PROPONENTS HAVE NOT AUTHORIZED ANY REPRESENTATION CONCERNING THE DEBTORS, THE COMMITTEE, THE VALUE OF THE DEBTORS' PROPERTY OR THE TREATMENT OF CLAIMS OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.**

ix

# I.    INTRODUCTION

IN Holdings, Inc. ("IN Nevada") *fka* Irwin Naturals, a Nevada corporation, IN Holdings

Canada, Inc. ("IN Canada") *fka* Irwin Naturals, Inc., a British Columbia corporation, DAI US

HoldCo, Inc. ("DAI") and 5310 Holdings, LLC ("5310" and collectively, with IN Nevada, IN

Canada and DAI, each a "Debtor" and collectively, the "Debtors") are the chapter 11 debtors in

possession in the above-captioned chapter 11 bankruptcy cases. On August 9, 2024, the Debtors

commenced their bankruptcy cases by filing voluntary petitions under chapter 11 of the United

States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* ("Bankruptcy Code"). These cases are pending

before the Honorable Victoria Kaufman, United States Bankruptcy Judge for the Central District of

California (the "Court" or "Bankruptcy Court"). The Official Committee of Unsecured Creditors

(the "Committee") was appointed in the bankruptcy cases of IN Nevada and IN Canada on August

31, 2024. The Debtors and the Committee (collectively, the "Plan Proponents") are jointly filing this

disclosure statement (as may be further amended or modified, the "Disclosure Statement") which

describes the Plan Proponents' *Chapter 11 Plan of Reorganization* (as may be further amended or

modified, the "Plan").

Chapter 11 allows the Debtors, and, under some circumstances, creditors and other parties in

interest, to propose a plan of reorganization.  A plan may provide for a debtor to reorganize by

continuing to operate, to liquidate by selling the assets of its estate, or a combination of both. This

Plan is a reorganizing plan. The Debtors and the Committee are the parties proposing the Plan.

**THIS DOCUMENT IS THE DISCLOSURE STATEMENT FOR THE PLAN**

**PROPONENTS' CHAPTER 11 PLAN OF REORGANIZATION**.

The effective date ("Effective Date") of the plan will be the second business day after entry

of the order confirming the Plan (the "Confirmation Order"), provided the Bankruptcy Court has

waived the provisions of Rule 3020(e) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and no stay of the Confirmation Order is in effect.[2]

---

[2] If the Bankruptcy Court does not waive the provisions of Bankruptcy Rule 3020(e), then the
Effective Date will be the second business day which is at least fifteen (15) days following the date
of entry of the Confirmation Order, assuming there has been no appeal from and order staying the
effectiveness of the Confirmation Order.  If there has been an order entered staying the effectiveness

3074414

The Plan described in this Disclosure Statement is a reorganizing plan – which will be funded by the sale proceeds from the sale of the Debtors' supplement business, which sale closed on August 8, 2025. Among other assets, the Debtors retain significant net operating losses ("NOLs") and are in the process of determining whether they start a new consumer packaged goods business and/or merge with an existing consumer packaged goods business. The Plan provides for, among other things, (a) the appointment of a plan distribution agent (the "Plan Distribution Trustee") and the creation of a plan distribution trust (the "Plan Distribution Trust") that will hold certain cash sufficient in an amount to pay certain claims (the "Trust Assets"), (b) the distribution of payments by the Plan Distribution Trustee and the Reorganized Debtors in accordance with the Plan, and (c) for the Debtors to continue as going concerns to establish a new business.

There are four primary groups of creditor claims and interests in these cases consisting of: (i) priority tax and employee claims; (ii) the claims of the Debtors' pre-petition secured creditors (i.e., creditors who purport to assert a lien against certain of the Debtors' assets as collateral for their alleged claims);[3] (iii) the claims of the Debtors' non-priority general unsecured creditors; and (iv) the equity interests of the Debtors' current shareholders.

The following is a summary of the Plan:

1.    <u>Reorganization:</u> The Plan provides for a reorganization with all four entities to emerge as Reorganized Debtors. Among other assets, the Debtors have significant NOLs and intend on starting a new consumer packaged goods business and/or acquiring a consumer packaged goods business.

2.    <u>Plan Funding:</u> The Debtors currently have $23,537,132.20 in cash, which is more than sufficient to pay all allowed claims in full, with interest if applicable.

3.    The Plan segregates Claims[4] into Classes and treats them as summarized immediately

---

of the Plan Confirmation Order, the Effective Date shall be the second business day after the stay is no longer in effect with respect to the Confirmation Order.

[3] The Debtors do not intend, nor should any provision of either the Plan or Disclosure Statement be construed, as an admission of any kind as to the nature, extent, or priority of any purported lien(s), encumbrance(s), or charge(s) of any kind, nature, or extent against the Debtors' assets or property.

[4] Any capitalized term not yet defined will be defined in Article II of this Disclosure Statement.

2

3074414

below, which summaries are subject to the provisions specified in Article IV below and in Article III

of the Plan. The following is a summary of the Plan:

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| N/A | Administrative Claims (Professional Fees) | Estimated Between Approximately $3 million and $5.5 million. | Full payment, subject to Bankruptcy Court approval as may be required. Payment to be made by the Plan Distribution Trustee. |
| N/A | Administrative Claims (Incurred in the Ordinary Course of Business) | Estimated at $50,000 | Allowed Administrative Claims representing post-Petition Date liabilities incurred by the Debtors in the ordinary course of business, for which no approval by the Bankruptcy Court is required, shall be paid in full in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such liabilities and any agreements relating thereto. The Reorganized Debtors are responsible for these payments (and not the Plan Distribution Trust). |
| N/A | Priority Tax Claim of Canada Revenue Agency | Estimated at $17,438.37. | Full payment within fourteen days of the Effective Date). Payment to be made by the Plan Distribution Trustee. |
| N/A | Priority Tax Claim of CA Department of Tax and Fee Administration | Estimated at $2,697.30. | Full payment within fourteen days of the Effective Date. Payment to be made by the Plan Distribution Trustee. |
| N/A | Priority Tax Claim of State of Washington | Estimated at $907.62. | Full payment within fourteen days of the Effective Date. Payment to be made by the Plan Distribution Trustee. |
| N/A | Priority Tax Claim of Massachusetts Department of Revenue | Proof of Claim No. 1-1 filed in Case No. 1:24-bk-11326-VK in the amount of $1,451.53. | The Debtors are in the process of investigating this claim. If allowed, full payment by the Plan Distribution Trustee. |
| N/A | Priority Tax Claim of Michigan Department of Treasury | Proof of Claim No. 6-1 filed in Case No. 1:24-bk-11326-VK in the amount of $5,879.43. | The Debtors are in the process of investigating this claim. If allowed, full payment by the Plan Distribution Trustee. |
| N/A | Priority Tax Claim of Oregon Department of Revenue | Proof of Claim No. 36-2 filed in Case No. 1:24-bk-11323-VK in the amount of $10,942.54. | The Debtors are in the process of investigating this claim. If allowed, full payment by the Plan Distribution Trustee. |
| N/A | Priority Tax Claims of | Estimated at $0. | While the IRS has filed millions of |

3

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| | the Internal Revenue Service ("IRS") | | dollars of claims against the Estates, the Debtors' accountant is in the process of resolving each alleged claim. The Debtors do not believe that they will ultimately have any liability to the IRS. To the extent the IRS has Allowed Claims in these cases, they will be paid in full within the later of fourteen days of the Effective Date or entry of an order allowing the IRS claim(s) by the Reorganized Debtors (and not by the Plan Distribution Trustee). |
| N/A | Priority Tax Claim of Franchise Tax Board ("FTB") | Proof of Claim No. 2-1 filed in Case No. 1:24-bk-11323-VK in the amount of $2,854.52.<br><br>Proof of Claim No. 60-1 filed in Case No. 1:24-bk-11323-VK in the amount of $98,210.37.<br><br>Proof of Claim No. 5-1 filed in Case No. 1:24-bk-11326-VK in the amount of $26,394.93.<br><br>Estimated at $3,000 | The Debtors believe the FTB's claims will be reduced significantly once they file their 2023 tax returns. To the extent the FTB has an allowed claim, such amount will be paid by the Plan Distribution Trustee. The Debtors believe they owe less than $3,000 to the FTB. |
| 1 | Previously Secured claim of East West Bank, as Agent ("EWB") and CFG Bank ("CFG")<br><br>Collateral Description: None. EWB has been paid $25,658,075.80 post-petition by the Debtors. As such, pursuant to Section 5.06 of the Security Agreement dated February 1, 2023 between the Debtors and EWB (the "Security Agreement"), all security interests granted in the Security Agreement were released and terminated when all obligations were paid in full in cash  (other than unasserted contingent indemnification obligations and/or | Filed Claim: Claim 48 [Case No. 11323]: $19,381,507.84 plus interest and fees.<br>Duplicate Claims:<br>Claim 1 [Case No. 11325]<br>Claim 3 [Case No. 11326]<br>Claim 5 [Case No. 11324] | **The Debtors scheduled this claim as Unliquidated and Disputed and reserve all rights with respect to objecting to amounts paid to EWB for excessive fees and to assert affirmative claims against EWB and CFG.<br><br>**Treatment:**<br><br>The Debtors' position is that EWB has been paid in full and is no longer a secured creditor or otherwise entitled to charge fees and costs to the estates after August 11, 2025.<br><br>Notwithstanding, if it is determined that EWB is owed any additional amount (other than unasserted contingent indemnification obligations and/or unasserted expense reimbursement obligations), the Plan provides that such claim will be paid in full by the Reorganized Debtors within three (3) business days of the date that EWB submits an accounting and invoice to the Debtors or on the Effective Date in an amount determined by the Bankruptcy Court. |

3074414

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| | unasserted expense reimbursement obligations).<br><br>*Debtors reserve all their rights to assert claims against EWB | | In light of payment in full, the Security Agreement specifically provides that any and all security interests granted by the Security Agreement "shall be released and terminated when all Obligations have been paid in full in cash (other than unasserted contingent indemnification obligations and unasserted expense reimbursement obligations) and when the Commitments have terminated." *See*, Section 5.06 of the Security Agreement.<br><br>**Unimpaired. Not Entitled to Vote.** |
| 2 | Wage Related Claims (Pre-Petition) | $5,991.80 | Paid in full within fourteen days of the Effective Date by the Plan Distribution Trustee.<br><br>**Impaired; Entitled to Vote** |
| 3 | General Unsecured Claims [Excluding Insider Claims] | Estimated at approximately $5 to $7 million.  (This number may change based upon the resolution of objections to Disputed Claims.)<br><br>[This estimation does not include any intercompany claims as the Debtors' have agreed to subordinate all of their intercompany claims to those of Allowed General Unsecured Claims.] | **Treatment:**<br><br>Allowed General Unsecured Claims will be paid in full within fourteen days of the Effective Date (assuming the Plan Distribution Trustee is in possession of a W-9 for each creditor holding an Allowed Claim)[5] by the Plan Distribution Trustee.<br><br>Interest shall accrue at the California default state law rate of 10% on all Allowed General Unsecured Claims commencing as of the Petition Date.<br><br>Upon resolution of the Debtors' objections to disputed General Unsecured Claims, the respective claimants shall be paid their Allowed General Unsecured Claim in full within ten (10) days of a final non-appealable order allowing such claim.<br><br>The treatment proposed herein shall be in full settlement and satisfaction of all General Unsecured Claims.<br><br>**Impaired; Entitled to Vote** |

---

[5] If the Debtors and/or the Plan Distribution Trustee are not in possession of a W-9 for any creditor, the Debtors and/or the Plan Distribution Trustee will send a written request to such creditor(s). Payment will be paid only after the receipt of a W-9 from such creditor.

3074414

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| 4 | General Unsecured Claim of Insider Klee Irwin | $1,035,682.49 (plus 4.43% interest from the Petition Date)<br><br>Subordinated Promissory Note Dated October 19, 2023<br><br>Proof of Claim No. 55 | **Treatment:**<br><br>Subordinated to Allowed General Unsecured Claims of non-insiders. Paid in full after the payment in full of Class 3 Allowed Claims by the Plan Distribution Trustee.<br><br>**Impaired; Entitled to Vote** |
| 5 | General Unsecured Claim of Insider Mark Green | $1 million due only upon certain types of liquidation events as described in the contract<br><br>Proof of Claim No. 63 | **Treatment:**<br><br>Subordinated to Allowed General Unsecured Claims of non-insiders.<br><br>Late filed and no basis for claim per contract terms. The Debtors intend to object. If allowed, payment in full after payment in full of Class 3 Allowed Claims by the Plan Distribution Trustee.<br><br>**Impaired; Entitled to Vote** |
| 6 | IN Holdings, Inc. ("IN Nevada")<br>Equity Interests of Klee Irwin (90% Non-Voting Interest), Klee & Margareth Irwin Children's Trust (10% Non-Voting Interest) and DAI US HoldCo, Inc. (100% Voting Interest) | IN Nevada's current equity holders who collectively own 100% of IN Nevada. | **Treatment:**<br><br>Equity holders shall retain their respective interests.<br><br>**Unimpaired. Not Entitled to Vote.** |
| 7 | IN Holdings Canada, Inc. ("IN Canada") - Equity Interest of Public Shareholders | IN Canada owns DAI, which owns 2% of IN Nevada. | **Treatment:** IN Canada will remain a public company. IN Canada Shareholders may elect their treatment as follows: IN Canada Shareholders will retain their existing number of equity shares unless IN Canada Shareholders vote to receive a pro rata cash distribution of $225,000 (eligible only for non-insider shareholders).<br><br>**Impaired; Entitled to Vote.** |
| 8 | DAI US HoldCo<br>Owned 100% by IN Canada | | **Treatment:** All Equity Interest shall remain the same.<br><br>**Unimpaired. Not Entitled to Vote** |
| 9 | 5310 Holdings, LLC<br><br>Owned 100% by IN Nevada | | **Treatment:** All Equity Interest shall remain the same.<br><br>**Unimpaired. Not Entitled to Vote** |

3074414

**A.    Purpose of this Disclosure Statement.**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

**(1)    WHO CAN VOTE OR OBJECT,**

**(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what, if anything, your Claim will receive if the Plan is confirmed) AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD LIKELY RECEIVE IN A HYPOTHETICAL CHAPTER 7 LIQUIDATION,**

**(3)    THE HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THEIR BANKRUPTCY CASES,**

**(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

**(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND**

**(6)    WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  The Plan Proponents' counsel cannot tell you about your rights or offer any advice – especially legal advice. You are strongly encouraged to consult your own lawyer to obtain advice on how the Plan will affect you and what is the best course of action for you.  This Disclosure Statement may not be relied on for any purpose other than providing you with adequate information, as required by the Bankruptcy Code, to assist you in determining whether to vote to accept or reject the Plan.

Be sure to read the Plan as well as this Disclosure Statement.  If there are any inconsistencies between the Plan and this Disclosure Statement, the Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The Bankruptcy Court has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed

7

3074414

judgment about the Plan.  Any party can now solicit votes for or against the Plan.

**THE DEBTORS AND THE COMMITTEE HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT.  THE DEBTORS AND THE COMMITTEE HAVE NOT AUTHORIZED ANY REPRESENTATION CONCERNING THE DEBTORS,  THE COMMITTEE, THE VALUE OF THE DEBTORS' ASSETS OR THE TERMS OF THE PLAN OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.**

**B.      Purpose and Effect of the Plan.**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11, a debtor is authorized to reorganize its business for the benefit of its creditors and shareholders.  If reorganization is not feasible, chapter 11 allows a debtor to formulate and consummate a plan of liquidation, which sets forth the process for the orderly satisfaction of claims against and interests in a debtor pursuant to the priority rules of the Bankruptcy Code.

Confirmation of a plan of reorganization by a bankruptcy court makes the plan binding upon the debtor and any creditor of or interest holder in a debtor, whether or not such creditor or interest holder (i) is impaired (i.e., will receive less than 100% of its allowed claim) under the plan, (ii) has accepted the plan, or (iii) receives or retains any property under the plan.

In these chapter 11 Cases, the Plan provides for the Debtors to emerge from bankruptcy and for Allowed Claims to be paid in full within fourteen days of the Effective Date by the Plan Distribution Trustee, and for the pursuit of certain claims and Causes of Action.  Under the Plan, Claims against, and Equity Interests in, the Debtors are divided into Classes according to their relative seniority and other criteria as required under the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court and ultimately consummated, the Claims and Equity Interests of the various Classes will be treated in accordance with the provisions in the Plan established for each Class.

A summary of the Classes of Claims and Equity Interests, as well as their treatment under the Plan, is set forth above.  A more detailed description of the Classes of Claims against the Debtors

8

3074414

created under the Plan, the treatment of those Classes under the Plan and the property to be

distributed under the Plan is described in Section IV below and in Section III of the Plan.

**C.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.**

THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED

IN THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE

NOT YET BINDING ON ANYONE.  HOWEVER, IF THE BANKRUPTCY COURT LATER

CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON ALL CREDITORS,

INTEREST HOLDERS AND PARTIES IN INTEREST IN THESE CASES.

**1.      Time and Place of the Plan Confirmation Hearing**

The hearing where the Bankruptcy Court will determine whether or not to confirm the Plan

(the "Confirmation Hearing") will take place on _____, before the Honorable Victoria

S. Kaufman, United States Bankruptcy Judge for the Central District of California, in Courtroom

"301" of the United States Bankruptcy Court, Central District of California (San Fernando Valley

Division), located at 21041 Burbank Blvd., Woodland Hills, California 91367.  The Confirmation

Hearing will be held via ZoomGov.  Hearing information is available at https://ecf-

ciao.cacb.uscourts.gov/CiaoPosted/.

**2.      Deadline for Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot

("Ballot") sent to you as a PDF or via an electronic voting link, and return the Ballot via U.S. Mail,

personal delivery, overnight mail or electronically to:

Irwin Naturals Ballot Processing
C/O Omni Agent Solutions, Inc.
5955 DeSoto Ave., Suite 100
Woodland Hills, CA 91367
https://omniagentsolutions.com/IrwinNaturals-Ballots

**Your Ballot must be received by 10:00 p.m. Pacific time on** _____ or it will not be

counted.

**3.      Deadline for Objecting to the Confirmation of the Plan**

Objections to the Confirmation of the Plan must, by **10:00 p.m. Pacific time, on**

_____, (a) be filed with the Bankruptcy Court at 21041 Burbank Blvd., Woodland Hills,

3074414

CA 91367 and (b) be served upon the following:

**Debtors (Service Must be by Overnight, U.S. Mail or Messenger)**

IN Holdings et al.
1968 S. Coast Hwy #5310
Laguna Beach, CA 92651

**Counsel for the Debtors**
Susan K. Seflin
BG Law LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Fax: (818) 827-9099
Email: sseflin@bg.law

**Counsel for the Committee**
Jeffrey I. Golden
Golden Goodrich
3070 Bristol St., Ste 640
Costa Mesa, CA 92626
Fax: (714) 966-1002
Email: jgolden@go2.law

**Office of the United States Trustee**
Office of the U.S. Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017
Email: kate.bunker@usdoj.gov

**D.      Identity of Persons to Contact for More Information Regarding the Plan.**

Any interested party desiring further information about the Plan should contact (1) the

Debtors' counsel Susan K. Seflin, Esq., of BG Law LLP, 21650 Oxnard Street, Suite 500, Woodland

Hills, California 91367, Phone: (818) 827-9000, Email: sseflin@bg.law, or (2) the Committee's

counsel Jeffrey I. Golden, Esq., of Golden Goodrich, 3070 Bristol Street, Suite 640, Costa Mesa,

California 92626, Phone: (714) 966-1000, Email: jgolden@go2.law. Any request(s) for legal advice

with respect to the Plan, however, should be directed to your own counsel.

**E.      Disclaimer.**

The financial data relied upon in formulating the Plan is based on the Debtors' books and

records which, unless otherwise indicated, are unaudited.  Except as expressly stated, the

information contained in this Disclosure Statement is provided by the Debtors. The Debtors

represent that everything stated in this Disclosure Statement is true to the best of the Debtors'

3074414

knowledge.  The Bankruptcy Court has not yet determined whether the Plan is confirmable and makes no representation as to whether you should support or oppose confirmation of the Plan.

The contents of the Disclosure Statement should not be construed as legal, business or tax advice from the Plan Proponents or their counsel.

**THIS DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW OF THE PLAN BY EACH HOLDER OF A CLAIM OR INTEREST.  THIS DISCLOSURE STATEMENT IS INTENDED TO AID AND SUPPLEMENT SUCH REVIEW.  THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN.  THE PLAN IS THE OPERATIVE CONTROLLING LEGAL DOCUMENT.  AS SUCH, IF THERE IS ANY INCONSISTENCY BETWEEN THE TERMS AND PROVISIONS OF THIS DISCLOSURE STATEMENT AND THE PLAN, THEN THE TERMS AND PROVISIONS OF THE PLAN SHALL CONTROL. NEITHER THE PLAN, NOR THE DISCLOSURE STATEMENT, SHOULD BE CONSTRUED AS LEGAL, BUSINESS OR TAX ADVICE FROM THE PLAN PROPONENTS OR THEIR COUNSEL.**

**BG LAW LLP COMMENCED REPRESENTATION AS GENERAL RESTRUCTURING COUNSEL TO THE DEBTORS IN AUGUST OF 2024 AND HAS RELIED UPON INFORMATION DEVELOPED SINCE THEN IN CONNECTION WITH THE PREPARATION OF THIS DISCLOSURE STATEMENT.  PROVINCE, LLC WAS RETAINED AS FINANCIAL ADVISOR FOR THE COMPANY IN AUGUST OF 2024 AND HAS RELIED UPON INFORMATION RECEIVED FROM THE DEBTORS TO PREPARE THE LIQUIDATION ANALYSIS AND FINANCIAL PROJECTIONS ATTACHED AS EXHIBITS.**

**F.    Forward-Looking Statements.**

CERTAIN OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BY ITS NATURE FORWARD LOOKING AND CONTAINS ESTIMATES AND ASSUMPTIONS THAT MAY BE MATERIALLY DIFFERENT FROM ACTUAL FUTURE RESULTS.  Except as otherwise specifically and expressly stated herein, this Disclosure Statement

3074414

does not reflect any events that may occur subsequent to the date hereof and that may have a

material impact on the information contained in this Disclosure Statement.  The Debtors do not

anticipate that any amendments or supplements to this Disclosure Statement will be distributed to

reflect such occurrences.  Accordingly, the filing of this Disclosure Statement shall not under any

circumstance imply that the information herein is correct or complete as of any time *subsequent* to

the date hereof.

THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED

BY A CERTIFIED PUBLIC ACCOUNTING FIRM AND HAS NOT BEEN PREPARED IN

ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.

## II.    DEFINITIONS AND EXHIBITS

**A.    Definitions.**

For the purposes of this Disclosure Statement, except as expressly provided or unless the

context otherwise requires, all capitalized terms not otherwise defined shall have the meanings

ascribed to them in this Article II.  Any term used in this Disclosure Statement that is not defined

herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning(s)

ascribed to such terms in the Bankruptcy Code or the Bankruptcy Rules, in that order or priority.

Throughout this Disclosure Statement, the use of the masculine, feminine, neuter, plural or singular

shall be understood to include each of the others as the context may reasonably dictate.  As used in

this Disclosure Statement, the following definitions shall apply:

1.    **5310.** One of the four jointly administered affiliated Debtors, 5310 Holdings,

LLC ("5310"), Case No. 1:24-bk-11325-VK, is a wholly owned subsidiary of IN Nevada, and

previously owned substantially all of the Debtors' intellectual property. 5310 will become a

Reorganized Debtor and will hold any of the Debtors' future intellectual property.

2.    **Administrative Claim.**  A Claim for costs and expenses of administration

allowed under Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(2) of the

Bankruptcy Code including, without limitation: (a) the actual and necessary costs and expenses

incurred after the Petition Date of preserving the Estates and operating the business of the Debtors

(such as wages, salaries or commissions for services); (b) compensation for legal, financial advisory,

3074414

accounting and other services, and reimbursement of expenses awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

**3.** **Administrative Claims Bar Date.** The date which is thirty (30) days after the Effective Date.

**4.** **Allowed Administrative Claim.** An Administrative Claim which is an Allowed Claim.

**5.** **Allowed Claim.** A Claim against the Debtors and/or the Estates as to which no objection has been filed, or if an objection has been filed, has either been overruled or otherwise resolved by the allowance of such Claim by the Bankruptcy Court, if the Claim was: (1) scheduled in the list of creditors prepared and filed with the Bankruptcy Court by the Debtors and not listed as disputed, contingent or unliquidated as to amount; or (2) the subject of a timely filed proof of claim; or (3) which has been allowed by order of the Bankruptcy Court.

**6.** **Allowed Priority Claim.** A Priority Claim which is an Allowed Claim.

**7.** **Allowed Priority Tax Claim.** A Priority Tax Claim which is an Allowed Claim.

**8.** **Allowed Professional Fees.** The amount of fees and costs incurred by Professionals engaged by the Debtors or the Committee in connection with the Cases which are (1) timely requested by application filed on or prior to the Administrative Claims Bar Date; and (2) which are allowed by order of the Bankruptcy Court.

**9.** **Allowed Secured Claim.** A Secured Claim which is an Allowed Claim.

**10.** **Allowed General Unsecured Claim.** A General Unsecured Claim which is an Allowed Claim.

**11.** **Assets.** All tangible and intangible assets of every kind and nature of the Debtors and their Estates, and all proceeds thereof, wherever located, as of the Effective Date.

**12.** **Avoidance Actions.** Causes of Action arising under Bankruptcy Code sections 510, 541, 542, 544, 545, 547 through 551 and/or 553, or under related state or federal statutes and common law including, without limitation, fraudulent transfer laws, whether or not

3074414

litigation is commenced to prosecute such Causes of Action.

13. **Ballot.** The form of ballot or ballots that will be distributed electronically with the Disclosure Statement to holders of Claims entitled to vote under the Plan in connection with the solicitation of votes to accept or to reject the Plan.

14. **Bankruptcy Code.** Title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*), as now in effect or hereafter amended. All citations in the Disclosure Statement or in the Plan to section numbers are to the Bankruptcy Code unless otherwise expressly indicated.

15. **Bankruptcy Court.** The United States Bankruptcy Court for the Central District of California (San Fernando Valley Division), or such other federal court with competent jurisdiction over the Cases.

16. **Bankruptcy Rules.** Federal Rules of Bankruptcy Procedure, as now in effect or hereafter amended.

17. **Bar Date.** December 20, 2024 for non-governmental creditors; and February 5, 2025 for governmental units. See, Doc. No. 200.

18. **Beneficiaries.** The Holders of Certain Allowed Claims and the Holders of Disputed Claims who, pursuant to the Plan, are entitled to any Distributions from the Plan Distribution Trust.

19. **Business Day.** Any day, other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

20. **Cases.** This Chapter 11 bankruptcy cases, filed by the Debtors, pending in the Bankruptcy Court and jointly administered under Case No. 1:24-bk-11323-VK.

21. **Cash.** Currency, checks, negotiable instruments and wire transfers of immediately available funds.

22. **Causes of Action.** Any and all causes of action, Avoidance Actions, suits, rights of action, rights to legal remedies, rights to equitable remedies, rights to payment of any amounts owing to the Debtors or the Estates for any reason whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly

14

3074414

or derivatively, in law, equity or otherwise, that the Debtors and/or Estates may hold against any Person but excluding those Persons who are released or exculpated, or against whom claims were waived, pursuant to the Plan. For the avoidance of doubt, any causes of action purchased by FitLife pursuant to the Sale Order are excluded from the definition of Causes of Action.

23. **Claim.** Any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, against the Debtors and/or the Estates, and any right to any legal or equitable remedy for breach of any obligation giving rise to a right to payment, whether or not such right is an equitable remedy or is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, against the Debtors and/or the Estates.

24. **Claimant.** A Person who holds a Claim.

25. **Claim Chart.** **Exhibit A** to the Disclosure Statement which lists all Claims filed against the Debtors as of the date reflected therein.

26. **Claims Objection Deadline.** Two hundred and seventy (270) days following the Effective Date, which date may be extended by the Bankruptcy Court upon motion of any party in interest for cause.

27. **Class.** A category of Claims which are substantially similar to each other and into which Allowed Claims are grouped and classified pursuant to the Plan, unless a member of the Class has agreed to a subordinated treatment. The Classes provided for in the Plan are summarized in Article IV of the Disclosure Statement and Article III of the Plan.

28. **Committee.** The Official Committee of Unsecured Creditors appointed by the OUST on August 31, 2024 [Doc. No. 69] in the bankruptcy cases of IN Nevada and IN Canada, pursuant to § 1102 of the Bankruptcy Code.

29. **Confirmation.** The entry of the Confirmation Order on the docket of the Bankruptcy Court.

30. **Confirmation Date.** The date upon which the Confirmation occurs.

3074414

31.    **Confirmation Hearing.**  The hearing or hearings held by the Bankruptcy Court to consider and rule upon the Debtors' request for confirmation of the Plan.

32.    **Confirmation Order.**  The order entered by the Bankruptcy Court confirming the Plan.

33.    **Creditor.**  A Person asserting a Claim; *aka* a Claimant.

34.    **Cure Claim.**  A claim based upon the Debtors' default on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors under sections 365 or 1123 of the Bankruptcy Code.

35.    **DAI.** One of the four jointly administered affiliated Debtors, DAI US HoldCo, Inc. ("DAI"), Case No. 1:24-bk-11326-VK, is a holding company that owns 2% of IN Nevada as of the Petition Date.

36.    **Debtors.**  IN Nevada, IN Canada, 5310 and DAI, the jointly administered chapter 11 debtors in these Cases.

37.    **Disallowed.**  With respect to a Claim, or any portion thereof, that (a) has been disallowed by a Final Order, (b) is Scheduled at zero, or as contingent, disputed or unliquidated and as to which no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (c) is not Scheduled, and as to which (i) no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (ii) no request for payment of an Administrative Claim has been filed by the Administrative Claims Bar Date, as appropriate, or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law.

38.    **Disclosure Statement.**  This Disclosure Statement (as may be further amended or modified) prepared by the Debtors and Committee as required by § 1125 of the Bankruptcy Code describing the Plan.

39.    **Disputed Claim.**  Disputed Claims include: (i) a Claim which has been scheduled as disputed, contingent or unliquidated where a Proof of Claim has not been timely filed thereafter; (ii) a Claim as to which an objection has been timely filed with the Bankruptcy Court, and

3074414

which objection has not been withdrawn on or before any date fixed for filing such objections by the Plan or by order of the Bankruptcy Court and has not been overruled or denied by a Final Order; and (iii) any Claim listed as a Disputed Claim on the Claim Chart.

40.    **Distribution(s).**  Any distribution by the Plan Distribution Agent to any Class, Claimant or Creditor.

41.    **Effective Date.**  The second Business Day after the Confirmation Date, provided that the Bankruptcy Court has waived the provisions of Bankruptcy Rule 3020(e) and no stay of the Confirmation Order is in effect.  If the Bankruptcy Court does not waive the provisions of Bankruptcy Rule 3020(e), then the Effective Date will be the second Business Day which is at least fifteen (15) days following the date of entry of the Confirmation Order, providing there has been no appeal from and order staying the effectiveness of the Confirmation Order.  If there has been an order entered staying the effectiveness of the Confirmation Order, the Effective Date shall be the second Business Day after the stay is no longer in effect with respect to the Confirmation Order.

42.    **Equity Interest.**  An "equity security" as defined in § 101(16) of the Bankruptcy Code.

43.    **Equity Holder(s).**  A holder of any Equity Interest of any of the Debtors.

44.    **Estates.**  The estates of the Debtors created upon commencement of the Cases pursuant to § 541 of the Bankruptcy Code.

45.    **Exculpated Claim.**  Any Claim or Cause of Action based on conduct taken or omitted to be taken in good faith after the Petition Date and on or before the Effective Date (except with respect to any post-Effective Date modification or amendments to the Plan) in connection with, or arising out of the formulating, negotiating, soliciting, preparing, or confirming the Plan, Disclosure Statement and all exhibits thereto and/or the transactions contemplated therein, or a contract, instrument, release or other agreement or document created or entered into in connection with the Plan.

46.    **Executory Contract.**  A contract to which the Debtors are a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

47.    **EWB.**  The Debtors' former secured creditor, East West Bank, as Agent

3074414

("EWB").

48.    **Final Fee Application(s).** The final request for payment of Professional Fee Claims.

49.    **Final Cash Collateral Order.**  The *Final Order: (I) Authorizing Debtor to Obtain Post-Petition Financing, (II) Granting Liens and Administrative Expense Claims, (III) Authorizing Debtors' Use of Cash Collateral, (IV) Modifying the Automatic Stay, and (V) Granting Other Related Relief* [Doc. No. 266] entered by the Bankruptcy Court on December 9, 2024.

50.    **Final Order.**  An order or judgment of the Bankruptcy Court, as entered on the applicable docket, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargue, or rehear have been waived in writing in form and substance satisfactory to the Debtors prior to the Effective Date, or to the Reorganized Debtors or Plan Distribution Agent after the Effective Date, or, in the event that an appeal, writ of certiorari, or re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which re-argument or rehearing was sought and denied, and the time to take any further appeal, petition for certiorari or move for re-argument or rehearing shall have expired.

51.    **General Unsecured Claim.**  A Claim against the Debtors that is not secured by a charge against, or interest in, any of the Debtors' Assets, that is not an Administrative Claim, a Priority Claim, or a Priority Tax Claim.

52.    **Holder(s).**  A Person holding a Claim or Interest against the Debtors, provided, however, with respect to transfers of Claims governed by Bankruptcy Rule 3001(e), in order for the transferor to be deemed the Holder of the Claim for distribution purposes, the deadline for any objection to the proposed transfer of a Claim must have passed with either (1) no objection to the transfer having been filed, or (2) any objection to such transfer having been resolved in favor of the transferor by no later than the Confirmation Date.  In other words, after the Effective Date,

without the express consent of the Reorganized Debtors or the Plan Distribution Trustee, no transfer of Claims will be recognized by the Reorganized Debtors or the Plan Distribution Trustee for Distributions made pursuant to the Plan.

53. **Independent Director.** The Debtors have appointed Bradley Sharp as the independent director of IN Nevada effective as of March 18, 2025 pursuant to a Resolution of the Board of Directors of IN Nevada dated March 18, 2025, a Written Consent of Shareholders of Irwin Naturals to Elect Special Restructuring Independent Director dated March 18, 2025, an engagement agreement between the Debtors and Development Specialists, Inc. dated March 4, 2025, and an Indemnification Agreement dated March 5, 2025.  Pursuant to the aforementioned documents, the Independent Director is vested with the sole authority to approve all Liquidation Event(s) on behalf of IN Nevada. "Liquidation Events" include a sale of IN Nevada's equity or assets, a re-financing and/or the Plan. The Debtors' appointment of the Independent Director was approved pursuant to Court order entered April 24, 2025 [Doc. No. 546].

54. **Impaired.**  When used in reference to a Claim, Interest or Class, a Claim, Interest or Class that is impaired within the meaning of § 1124 of Bankruptcy Code.

55. **IN Canada.**  One of the four jointly administered affiliated Debtors, IN Holding Canada, Inc. ("IN Canada"), *fka* Irwin Naturals, Inc., a British Columbia corporation, Case No. 1:24-bk-11324-VK, is currently the ultimate parent of all the other Debtors and it is a public company.

56. **IN Nevada.** One of the four jointly administered affiliated Debtors, IN Holdings, Inc. ("IN Nevada"), *fka* Irwin Naturals, a Nevada corporation, Case No. 1:24-bk-11323-VK, is the operating entity.

57. **IN Canada Shareholders.** Shareholders who currently hold shares in IN Canada.

58. **Interest.**  When "Interest" is used in the context of holding an equity security or unit of the Debtors (and not used to denote (i) the compensation paid for the use of money for a specified time and usually denoted as a percentage rate of interest on a principal sum of money, or (ii) a security interest in property), then "Interest" shall mean an interest or share in the Debtors of

the type described in the definition of "Equity Interest."

**59.**    **Noticing Agent.**    Omni is the claims and noticing agent employed in the Debtors' bankruptcy cases.

**60.**    **OUST.**    Office of the United States Trustee for Region 16.

**61.**    **Person.**    Person shall have the same meaning as in § 101(41) of the Bankruptcy Code.

**62.**    **Petition Date.**    August 9, 2024, the date on which the Debtors filed their respective voluntary petition for relief under chapter 11, thereby commencing these Cases.

**63.**    **Plan.**    The *Joint Chapter 11 Plan of Reorganization* (as may be further amended or modified) proposed by the Debtors and Committee and including, without limitation, all exhibits, supplements, appendices and schedules thereto, either in its present form or as it may be altered, amended, supplemented, or modified from time to time.

**64.**    **Plan Distribution Trust.**    The certain trust as created by the Plan and Confirmation Order.

**65.**    **Plan Distribution Trustee.**    The agent appointed to disburse payments to Holders of Allowed Claims in accordance with the terms of the Plan.

**66.**    **Post-Confirmation Status Report.**    The post-confirmation status report to be filed by the Reorganized Debtors and/or Plan Distribution Agent if so ordered by the Bankruptcy Court.

**67.**    **Priority Claim.**    A Claim entitled to priority under § 507(a) of the Bankruptcy Code, other than a Priority Tax Claim pursuant to § 507(a)(8) of the Bankruptcy Code.

**68.**    **Priority Tax Claim.**    A Claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

**69.**    **Professional Fee Applications.**    Applications filed pursuant to sections 330, 331 or 503(b)(4) of the Bankruptcy Code for allowance of Administrative Claims relating to the compensation and reimbursement of expenses of Professionals employed pursuant to an order of the Bankruptcy Court under sections 327 or 1103 of the Bankruptcy Code for services provided and expenses incurred prior to the Effective Date.

3074414

70.    **Professional Fee Claims.** (A) a claim under sections 327, 328, 330, 331, 503(b), 1103 or 1106 of the Bankruptcy Code for compensation for professional services rendered or expenses incurred on and after the Petition Date and prior to the Effective Date on behalf of the Estate by a Professional duly employed and authorized by an Order of the Bankruptcy Court; or (b) a claim under § 503(b)(4) of the Bankruptcy Code for reasonable compensation for professional services rendered by an attorney or accountant of an entity whose expense is allowable under § 503(b)(3)(D) of the Bankruptcy Code for making a substantial contribution to the Estates.

71.    **Professionals.** Those Persons (i) that are subject to the retention pursuant to an order of the Bankruptcy Court in accordance with sections 327, 1103 and/or 1106 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to sections 330 and 503(b)(2) of the Bankruptcy Code.

72.    **Proponents.** The proponents of the Plan are the Debtors and the Committee.

73.    **Pro Rata.** Pro rata means proportionate so that the ratio of (a) the amount of consideration distributed on account of an Allowed Claim to (b) the amount of the Allowed Claim is the same as the ratio of (x) the amount of consideration available for distribution on account of all Allowed Claims in the Class in which the Allowed Claim is included to (y) the amount of all Allowed Claims in that Class.

74.    **Reorganized Debtors.** IN Nevada, IN Canada, DAI and 5310 following the occurrence of the Effective Date.

75.    **Sale Closing.** The sale of the Debtors' supplement business, which closed on August 8, 2025.

76.    **Sale Order.** The *Order Approving Debtors' Motion for Order Authorizing and Approving (A) the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances (Other than Those Expressly Assumed by the Buyer) Pursuant to 11 U.S.C. Sections 363(b) and (f); (B) Assumption and Assignment of Executory Contracts and Unexpired Leases and Determining Cure Amounts; (C) Waiving the 14-Day Stay Periods of*

21

3074414

*Bankruptcy Rules 6004(h) and 6006(d); (D) Determining that the Buyer is Entitled to Protection*

*Pursuant to 11 U.S.C. section 363(m); and (E) Granting Related Relief* [Doc. No. 740] entered on

July 31, 2025.

77.    **Scheduled**.  Scheduled means the information set forth in the Schedules.

78.    **Schedules.**  The Schedules of Assets and Liabilities filed by the Debtors in

accordance with § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as the same may be

amended from time to time in accordance with Bankruptcy Rule 1009 prior to the Effective Date.

IN Nevada's Schedules: Doc. No. 96; IN Canada's Schedules: Doc. No. 16 in 1:24-bk-11324-VK;

5310's Schedules: Doc. No. 16 in 1:24-bk-11325-VK; DAI's Schedules: Doc. No. 16 in 1:24-11326-

VK.

79.    **Secured Claim.**  A Claim that is secured by a lien against any Assets to the

extent of the value of the Estate's interest in such Assets, or to the extent of the amount of such

Claim subject to setoff in accordance with § 553 of the Bankruptcy Code, in either case determined

pursuant to § 506(a) of the Bankruptcy Code.

80.    **Stalking Horse Bidder.** FitLife Brands, Inc. ("FitLife") was the designated

Stalking Horse Bidder pursuant to that certain *Asset Purchase and Sale Agreement* (the "APA")

entered into between and among the Debtors and FitLife on or about June 10, 2025.

81.    **Trust Assets.**  That certain cash in the amount of $13.5 million held by the

Plan Distribution Trust.

82.    **Unclaimed Distribution.**  Any Distribution made by the Plan Distribution

Agent to the address of the recipient reflected in the Schedules (or on any Proof of Claim filed by the

Claimant), by: (a) checks which have been returned as undeliverable without a proper forwarding

address; (b) checks which were not mailed or delivered because of the absence of a proper address to

which to mail or deliver the same; (c) checks which have not been cashed for a period of ninety (90)

days after the date such checks were issued, or (d) disbursements that were not made because the

Holder of such Allowed Claim failed to provide required tax information within forty-five (45) days

after the Plan Distribution Agent have sent any request for same to such Claimant's address as

reflected in the Schedules and/or such Claimant's Proof of Claim.

3074414

83.    **Unclassified Claim.**  Any Claim which is not part of any Class, including Administrative Claims and Priority Tax Claims.

84.    **Unimpaired.**  A Claim is unimpaired when it is within a class that is not impaired within the meaning of § 1124 of the Bankruptcy Code.

85.    **Unsecured Claim.**  Any Claim, including without limitation any claim arising under § 502(g) of the Bankruptcy Code, that is not secured by a lien on, security interest in, or charge against, any Asset.

**B.    Exhibits.**

All Exhibits to this Disclosure Statement are incorporated into and are part of this Disclosure Statement as if set forth in full herein.

**C.    Computing Time Periods.**

In computing any period of time prescribed or contemplated by the Plan, Bankruptcy Rule 9006(a) shall apply.

**D.    Notices and Delivery of Documents.**

All notices, correspondence, and other deliveries under the Plan must be directed as follows:

| | |
|---|---|
| To the Debtors or Reorganized Debtors: | IN Holdings, Inc. et al<br>1968 S. Coast Hwy #5310<br>Laguna Beach, CA 92651 |
| To the Plan Distribution Trustee or Plan Distribution Trust | IN Plan Distribution Trust<br>c/o Bradley D. Sharp<br>333 South Grand Ave., Ste 4100<br>Los Angeles, CA 90071 |
| With a Copy to: | Susan K. Seflin<br>BG Law LLP<br>21650 Oxnard St., Suite 500<br>Woodland Hills, CA 91367<br>Fax: (818) 827-9099<br>Email: sseflin@bg.law |
| To the Committee: | Jeffrey I. Golden<br>Golden Goodrich<br>3070 Bristol Street, Suite 640<br>Costa Mesa, CA 92626<br>Fax: (714) 966-1002<br>Email: jgolden@go2.law |

23

3074414

# III.    BACKGROUND

**A.    Description and History of the Debtors' Business and a Summary of the Circumstances that Led to the Filing of the Debtors' Chapter 11 Cases.**

## 1.    General Background.

Prior to the sale of its supplement business in August of 2025, IN Nevada was a popular dietary supplement company that was founded in 1994 and operated profitably for approximately thirty years.

## 2.    The Debtors' Prepetition Lenders and Events Leading to the Debtors' Chapter 11 Filings.

[6]In the fall of 2022, East West Bank, as Agent ("EWB") and CFG Bank ("CFG" and collectively, with EWB, the "Lenders") agreed to form a syndicate, wherein EWB would be the main lender in a new lending facility focused on providing cash for the roll-up that the Debtors and Emergence could use to fund acquisitions.

At the beginning of 2023, the Irwin Companies secured a credit facility ("Credit Facility") from EWB, as agent for the syndicate, for up to $40.0 million in up to two equal parts: (1) up to a $20 million revolving line of credit that was meant to support IN Nevada's day-to-day operations (the "Line of Credit"), a version of which was already in place as of December 2021 between EWB and the Debtors and was to be replaced by this new Credit Facility; and (2) a $20 million delayed-draw term loan facility (the "Term Loan") that was to be used to support Emergence's clinic roll-up ("Roll-Up").  The Credit Facility was governed by a credit agreement ("Credit Agreement").

The Roll-Up did not pan out as planned in 2023 due to many market factors outside of the Debtors' control. However, the Debtors' financial burden was exacerbated by EWB's substantial excessive and unreasonable control over their business affairs and imposition of unconscionable constraints on the Debtors. After the Credit Facility was only a little over a year old, the Irwin

---

[6] For the avoidance of doubt, the allegations set forth herein regarding EWB are solely those of the Debtors. Nothing in this Disclosure Statement shall be deemed to constitute a statement or position of the Committee with respect to such matters.

3074414

Companies received three notices of default from EWB for failure to meet certain technical covenants of the Credit Agreement, notwithstanding that the Irwin Companies had never been late on any debt service payments to EWB and the Irwin Companies' efforts to improve their overall financial condition. Those efforts included renegotiating payment terms with customers and suppliers, exploring options to amend or refinance their debt, reducing operating costs and expenditures, conducting multiple rounds of personnel layoffs, terminating as many third-party contracts and services as possible, closing the debt-accruing Emergence clinics, and more. Furthermore, in an attempt to pay off EWB, the Debtors offered to EWB to put the Irwin Companies up for sale, including signing an engagement agreement in October 2023 with a well-respected investment banker with prior experience selling foundational companies in the nutrition and wellness equity markets. This effort was not successful because EWB refused to cooperate in the process. Although the investment banker again tried to re-engage and initiate the sale process again in the fall of 2024, a complaint filed (but never served) by EWB against the Debtors in the summer of 2024 garnered negative media attention and caused the investment banker to terminate the engagement prior to ever marketing the business, contacting any third parties, and/or taking any other actions that would constitute 'going to market' in an equity sale.[7]

EWB engaged in other instances of unnecessarily bad faith conduct including, but not limited to, exerting undue and unreasonable excessive control over the Irwin Companies' operations, finances, and decision-making, putting a third party director in place for the purpose of preventing the Debtors from pursuing litigation or court restructuring and sweeping the Debtors' bank accounts daily (leaving the Debtors with no liquidity other than the trickle of funds EWB determined was acceptable to EWB) – all while the Debtors were not in monetary default on the indebtedness owed to EWB. The Debtors' vendors paid the price for EWB's actions that directed payments away from

---

[7] The Debtors also obtained another investment banker pre-petition to solicit take-out financing and received a pre-petition term sheet that would have taken out the Lenders' debt in full. This take-out financing was unsuccessful because EWB knew how its complaint was hindering the refinancing but refused to dismiss the complaint. The aforementioned term sheet was withdrawn. EWB did dismiss its complaint (on July 5, 2025) but by that point it was too late to get any of the lenders back to the table.

3074414

the vendors to EWB. Finally, upon the resignation of the EWB installed director, the Debtors were able to file these cases to regain control over their businesses and to attempt to reorganize their debt in order to return to their prior financial stability and profitability.

EWB and the Lenders dispute the Debtors' characterization of the events leading to the filing of the Chapter 11 Cases and the issues among the parties. EWB contends that, shortly after entering into the Credit Agreement, key elements of the Debtors' business plan failed and that the Debtors were in default for failure to comply with multiple covenants. The Debtors assert that whether they had or had not missed certain covenants, importantly they had never missed a single required debt service payment to EWB prior to or after the Petition Date. EWB contends that, prior to the Petition Date, it validly exercised remedies including appointing a third party director to protect the Lenders' collateral against alleged mismanagement and create the opportunity for independent decision making at the Debtors.  The Debtors contend that what the Lenders did was not in accordance with their written agreements and was unreasonable and in bad faith.

Other than the lienholders disclosed above, there are no other parties that assert a security interest against the Debtors or their assets.

**3.      The Debtors' Other Indebtedness.**

The Debtors believes that they have approximately $5 million in valid general unsecured debt. A of the date this Disclosure Statement, approximately $7 million in general unsecured claims have been filed against the Estates. The Debtors believe objections to claims will reduce the allowed amount of non-insider general unsecured claims to approximately $5 million.

**B.      Management, Principals, and Affiliates of the Debtors' Business.**

At the time of the Petition Date and as of the date of the filing of this Disclosure Statement, Klee Irwin was, and is, the Chief Executive Officer ("CEO") of IN Nevada, IN Canada and DAI. The managing member of 5310 is IN Nevada.  Mr. Irwin founded the Debtors' nutraceutical business in 1994.  IN Nevada, successor in interest to a prior entity, was incorporated in Nevada in January 2002.

IN Nevada is the operating entity through which the Debtors' business is conducted. IN Canada is the ultimate "parent company" of the Debtors. IN Canada does not have any employees

3074414

and only transacts limited business with its subsidiaries. DAI is a wholly owned subsidiary of IN

Canada. DAI is solely a holding company that owns 100% of the Class A Voting Shares of IN

Nevada amounting to 2% of beneficial ownership of IN Nevada (with Klee Irwin owning the other

98% personally or through his family trust in the form of 100% of the Class B non-voting shares of

IN Nevada). 5310 is a wholly owned subsidiary of IN Nevada.

**C.    Litigation.**

The actions below are either actions that were pending on the Petition Date or actions that

have been filed or asserted post-petition.

**1.    Media Max Network, LLC v. Media Brokers International, Inc. et al. [IN
Nevada]**

On March 6, 2024, publishing company Media Max Network, LLC ("MMN") filed a breach

of contract suit against Media Brokers International, Inc. ("MBI") and IN Nevada in Fulton County

State Court, GA (case no. 24EV001793). MMN's claim is based on allegedly unpaid invoices by

MBI. IN Nevada's contractual relationship is solely with codefendant MBI, who places

advertisements for IN Nevada. IN Nevada does not have a contractual relationship or contractual

privity with MMN. On July 1, 2024, default judgment was granted as to liability against IN Nevada.

On September 13, 2024, default judgment was entered as to damages against IN Nevada in the

amount of approximately $79,000. IN Nevada advised MMN's counsel of the bankruptcy and the

automatic stay.  In response, MMN's counsel filed a motion to vacate the judgment against IN

Nevada on November 4, 2024, and cited the fact that the matter should be stayed subject to

bankruptcy rules.  Specifically, MMN's counsel stated in its state court filing "Additionally, Plaintiff

learned that Defendant Irwin filed a Chapter 11 bankruptcy petition in the Central District of

California, on August 9, 2024, Case No. 1:24-bk-11323-VK, which in effect stayed Plaintiff's action

against Irwin." The accompanying order on the motion to vacate was entered in December 2024.

This litigation is currently stayed. MMN filed Proof of Claim No. 40 in the amount of an $80,499.57

general unsecured claim. The Debtors intend to object to this claim.

**2.    Reese v. Irwin Naturals, et al. [IN Nevada]**

On July 8, 2021, plaintiffs Herman and Jasminn Reese filed a personal injury and products

3074414

liability lawsuit against IN Nevada and its contract manufacturer Robinson Pharma in Los Angeles

County, California (case no. 21STCV25158). The plaintiffs allege that Herman Reese sustained

certain injuries caused by his use of an IN Nevada dietary supplement. The case was in the discovery

phase, with fact witness (non-expert) depositions being taken and scheduled. On August 19, 2024,

IN Nevada filed a Notice of Bankruptcy Filing and Automatic Stay; the court entered a minute order

on August 21 staying the case accordingly.  The court also set a status conference on December 19,

2024 for an update on IN Nevada's bankruptcy. On October 9, 2024 the Reese plaintiffs filed a

motion for relief from the automatic bankruptcy stay in IN Nevada's bankruptcy matter, on the basis

that they would seek recovery solely from applicable insurance. IN Nevada did not oppose the

motion and, accordingly, the request for relief from stay was granted. Plaintiffs have not filed a

proof of claim and the Debtors scheduled this claim as contingent, unliquidated and disputed.

**3.    Vaughn v. Irwin Naturals [IN Nevada]**

On January 19, 2024, plaintiff Trisha Vaughn filed a class action lawsuit against IN Nevada

in Los Angeles Superior Court (case no. 24STCV01558) alleging damages due to alleged

false/misleading advertising on an IN Nevada weight management supplement. IN Nevada filed an

answer to the complaint on April 8, 2024. Discovery has not yet begun. On August 23, 2024, IN

Nevada filed a Notice of Bankruptcy Filing and Automatic Stay; the court entered a minute order on

August 26 staying the case accordingly. Plaintiff did not file a proof of claim and the Debtors

scheduled this claim as contingent, unliquidated and disputed.

**4.    (In re: Bed Bath & Beyond, Inc., et al., Debtor) Adversary proceeding: Michael**
**Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1, Inc., (f/k/a Bed**
**Bath & Beyond Inc.) v. Irwin Naturals et al. [IN Nevada]**

On May 17, 2024, Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1,

Inc. (f/k/a Bed Bath & Beyond Inc.) ("BBB") filed an adversary complaint in BBB's chapter 11 case

against IN Nevada and Performance Sales & Marketing, Inc. in the U.S. Bankruptcy Court in the

District of New Jersey. The adversary action seeks to avoid and recover transfers made in connection

with vendor programs, credits, and deductions that occurred prior to BBB's bankruptcy filing. Post-

petition, IN Nevada advised plaintiff's counsel of its bankruptcy and need for stay. Plaintiff's counsel

3074414

has since responded and agreed not to proceed with litigation subject to the adjournment of these proceedings. Plaintiff filed a proof of claim in the amount of a $63,633.89 general unsecured claim.

**5.      EMA Anesthesia v. Irwin Naturals Emergence, et al. [IN Canada]**

On January 25, 2024, plaintiff EMA Anesthesia filed a breach of contract lawsuit against Serenity Health, LLC; Irwin Naturals Emergence, Inc.; and Irwin Naturals, Inc. (collectively, "Defendants") in Jefferson County Circuit Ct., Kentucky (case no. 23CI-0612, the "KY Action"). The claim was based on alleged unpaid invoices for anesthesia services provided by plaintiff. The parties in the KY Action entered into a stipulated/consent judgment on February 21, 2024 whereby the Defendants agreed to be jointly and severally liable for payment to EMA Anesthesia. The court entered the consent judgment on March 5, 2024. On June 5, 2024, plaintiff filed a lawsuit in Los Angeles Superior Court (case no. 24SMCP00287) to enforce the KY Action judgement in California. Plaintiff filed writ of Execution for Orange County on August 1, 2024, and writ of execution for Los Angeles County on August 20, 2024. Plaintiff has not filed a proof of claim and the Debtors scheduled this claim as disputed.

**6.      Benvenutti v. Irwin Naturals [IN Nevada]**

In September 2024, the Debtors received a demand letter regarding a potential worker's comp claim for Myrna Benvenutti. Ms. Benvenutti filed a worker's compensation claim against Irwin Naturals in the Los Angeles Superior Court, Worker's Compensation Appeals Board (case no. ADJ19881843). In November 2024, the Debtors' workers compensation provider denied Ms. Benvenutti's claim due to a lack of evidence. Moreover, Ms. Benvenutti entered into a severance agreement with the Debtors July 31, 2024 pursuant to which Ms. Benvenutti waived all claims against the Debtors in exchange for monetary consideration. The Debtors do not believe that this claim has any validity. However, to the extent that there is any liability, the Debtors expect it to be covered by the Debtors' workers compensation policy. Plaintiff has not filed a proof of claim.

**7.      Dawn Patrol DBA Full Stream Group v. Irwin Naturals [IN Nevada]**

Full Stream Group filed a breach of contract lawsuit on April 8, 2024 in Los Angeles Superior Court (case no. 24SMCV01647) stemming from alleged unpaid invoices. The damages alleged total $89,977.60, plus attorney's fees, interest and costs. IN Nevada was unable to retain

3074414

counsel for this matter and default judgment was entered against Irwin Naturals on June 27, 2024 in the amount of $103,733.83. A writ of execution was entered on July 31, 2024 in the amount of $104,335.42. Plaintiff filed Proof of Claim No. 7 in the amount of a $103,733.83 general unsecured claim, which the Debtors intend on objecting to.

**8.    Avi Jones v. Irwin Naturals**

Post-petition, on April 15, 2025, IN Nevada and Emergence received a demand letter dated April 8, 2025, from the counsel of Avi Jones alleging claims for damages under the Consumer Legal Remedies Act (CLRA). Specifically, Jones and his counsel are alleging that the Irwin product "Stored Fat Belly Burner" contains false and misleading advertising.

Irwin Naturals maintains that this demand letter lacks merit as the product in question, Stored Fat Belly Burner has the adequate substantiation necessary to make its claims, uses only allowed dietary ingredients, and only makes the allowed structure function claims which are compliant under DSHEA. A complaint was filed against IN Nevada, IN Canada and Klee Irwin post-petition on June 5, 2025. As to IN Nevada and IN Canada, the filing of the complaint is void and otherwise stayed pursuant to section 362 of the Bankruptcy Code.   Plaintiff filed a late proof of claim. Plaintiff has also informed the Debtors that it plans on filing a relief from stay motion to pursue injunctive relief. The Debtors have informed plaintiff's counsel that all assets relevant to the Debtors' supplement business have been sold and the Debtors are no longer selling the product at issue in the complaint, meaning such injunctive relief would be moot at this point in time.

**9.    Rebecca Rausch, et al. v. Applied Nutrition**

On May 13, 2025, the Debtors received a demand letter dated April 24, 2025 from the plaintiffs' counsel alleging claims for damages under the CLRA and makes the same claims. The letter was addressed to a similarly named entity existing in the United Kingdom, but references a product previously sold by IN Nevada and sent to the Debtors previous office address.   The Debtors sent a stay notice to Ms. Rausch's counsel on June 9, 2025.

**D.    Significant Events During the Bankruptcy.**

The following is a list of significant events which have occurred during these cases:

3074414

### 1.    First Day Motions.

The Debtors filed their Cases pro per, and did not retain bankruptcy counsel until August 13, 2024.  The Debtors' and their counsel's efforts during the early part of these Cases focused on obtaining authority to, among other things, secure use of cash collateral, maintain certain prepetition accounts, pay certain critical vendors, and pay pre-petition wages, salaries, and other compensation, which were each critical elements of the continuation of the Debtors' business operations.

**Cash Collateral Motion.**  On August 15, 2024, the Debtors filed their *Emergency Motion for Authority to: (A) Use Cash Collateral on an Interim Basis Pending a Final Hearing; (B) Grant Replacement Liens; and (C) Set Final Hearing* [Doc. No. 19] (the "Cash Collateral Motion").  The Cash Collateral Motion has been granted on an interim basis three times pursuant to Court orders entered on August 16, 2024 [Doc. No. 34], September 6, 2024 [Doc. No. 71] and September 27, 2024 [Doc. No. 115].  The Debtors and EWB negotiated a consensual proposed form of order for the final use of cash collateral, which order was entered on December 9, 2024 [Doc. No. 266].

**Cash Management Motion.**  On August 15, 2024, the Debtors filed their *Emergency Motion for Order (I) Authorizing the Continued Use of the Debtors' Cash Management System, (II) Authorizing the Maintenance of the Debtors' Pre-Petition Bank Accounts, and (III) Requiring Banks to Release Administrative Holds and/or Freezes on the Debtors' Pre-Petition Bank accounts* [Doc. No. 21] (the "Cash Management Motion").  The Bankruptcy Court entered its interim order granting the Cash Management Motion on August 16, 2024 [Doc. No. 37], and a final order granting the Cash Management Motion on September 11, 2024 [Doc. No. 80].

**Critical Vendor Motion.**  On August 15, 2024, the Debtors filed their *Emergency Motion for Entry Order of Interim and Final Orders: (I) Authorizing the Debtors to Pay Certain Prepetition Critical Vendors; (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers; and (III) Granting Related Relief* [Doc. No. 18] (the "Critical Vendor Motion").  The Bankruptcy Court entered its interim order granting the Critical Vendor Motion on August 22, 2024 [Doc. No. 61] and its final order granting the Critical Vendor Motion on September 11, 2024 [Doc. No. 81].

**Wage Motion.**  On August 15, 2024, the Debtors filed their *Emergency Motion for Entry of*

3074414

*an Order: (1) Authorizing, But Not Requiring, Debtor to Pay Prepetition (A) Wages, Salaries, and Other Compensation, (B) Employee Medical, Workers' Compensation, Paid Time Off, and Similar Benefits, and (C) Reimbursable Employee Expenses; (2) Authorizing and Directing Applicable Banks and Other Financial Institutions to Receive, Process, Honor, and Pay Checks Presented for Payment and to Honor Fund Transfer Requests; and (3) Related Relief* [Doc. No. 20] (the "Wage Motion"). On August 16, 2024, the Bankruptcy Court entered a final order granting the Wage Motion [Doc. No. 35].

**2.    Appointment of Committee.**

The Committee was appointed by the OUST on August 31, 2024 [Doc. No. 69], pursuant to § 1102 of the Bankruptcy Code, in the bankruptcy cases of IN Nevada and IN Canada.

**3.    Employment of Professionals.**

On September 6, 2024, the Debtors filed their *Application to Employ BG Law LLP as Their Substitute Bankruptcy Counsel and Request for Post-Petition Retainer* [Doc. No. 72] (the "BG Application"). The BG Application was approved pursuant to Bankruptcy Court order entered on September 25, 2024 [Doc. No. 109].

On September 9, 2024, the Debtors filed their *Application to Employ Beach Freeman Lim & Cleland, LLP as Auditing Accountant Pursuant to 11 U.S.C. §§ 327(a) and 328(a)* [Doc. No. 78] (the "Beach Freeman Application"). The Beach Freeman Application was approved pursuant to Bankruptcy Court order entered on October 1, 2024 [Doc. No. 121].

On September 13, 2024, the Debtors filed their *Application for Entry of an Order Authorizing the Retention and Appointment of Omni Agent Solutions, Inc. as Administrative Agent Pursuant to 11 U.S.C. §§ 327(a) and 328(a) Effective as of August 23, 2024* [Doc. No. 82] (the "Omni Employment Application"). The Omni Employment Application was approved pursuant to Bankruptcy Court order entered on October 8, 2024 [Doc. No. 134].

On September 17, 2024, the Debtors filed their *Application to Employ Province, LLC as Financial Advisor Pursuant to 11 U.S.C. §§ 327(a) and 330 Effective as of August 29, 2024* [Doc. No. 87] (the "Province Application"). The Province Application was approved pursuant to Bankruptcy Court order entered on October 8, 2024 [Doc. No. 136].

3074414

On September 19, 2024, the Debtors filed their *Application to Employ Marula Capital Group LLC to Provide Valuation Services Pursuant to 11 U.S.C. §§ 327(a) and 328(a), with Any Additional Services Payable Subject to 11 U.S.C. §§ 330 and 331* [Doc. No. 89] (the "Marula Application").  On October 8, 2024, the Bankruptcy Court entered its order approving the Marula Application [Doc. No. 135].

On October 1, 2024, the Debtors filed their *Application to Employ Jerrel G. John as Bookkeeper and Tax Accountant* [Doc. No. 120] (the "JGJ Application").  The OUST filed an objection to the JGJ Application on October 10, 2024 [Doc. No. 146].  On October 17, 2024, the Debtors and the OUST entered into a stipulation resolving the OUST objection [Doc. No. 151].  The order granting the JGJ Application was entered by the Bankruptcy Court on October 28, 2024 [Doc. No. 181].

On September 25, 2024, the Committee filed its *Application for Order Approving Employment of Counsel (Golden Goodrich LLP) Pursuant to 11 U.S.C. §§ 327 and 330* [Doc. No. 105] (the "Golden Application").  The Golden Application was approved pursuant to Bankruptcy Court order entered on October 18, 2024 [Doc. No. 163].

On October 9, 2024, the Committee filed its *Application for Order Approving of Financial Advisor (Force Ten Partners LLC)* [Doc. No. 138] (the "Force Ten Application").  The Force Ten Application was approved pursuant to Bankruptcy Court order entered on October 31, 2024 [Doc. No. 188].

On October 4, 2024, the Debtors filed their *Motion for Entry of Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Doc. No. 124] (the "Fee Procedure Motion"). Through the Fee Procedure Motion, the Debtors request that the Court establish certain procedures for interim compensation of the Debtors' and the Committee's professionals.  On October 10, 2024, the OUST filed its objection to the Fee Procedure Motion [Doc. No. 145].  The Debtors filed their reply to the OUST objection on October 24, 2024 [Doc. No. 176], and the Committee filed its reply on October 24, 2024 [Doc. No. 178].  The Fee Procedure Motion was approved pursuant to Bankruptcy Court order entered on November 7, 2024 [Doc. No. 214] (the "Interim Compensation Order").

3074414

On October 7, 2024, the Debtors filed their *Motion for Entry of Order Pursuant to 11 U.S.C. §§ 105(a), 327, 328, 330 and 363 for Authorization to Employ and Compensate Professionals Utilized in the Ordinary Course of Business* [Doc. No. 129] (the "Ordinary Course Professional Motion").  After discussions with the OUST, the Debtors filed a supplement to the Ordinary Course Professional Motion [Doc. No. 170], which is set for hearing on October 31, 2024.

On November 20, 2024, the Debtors filed their *Application of Debtors to Employ Greenberg Glusker Fields Claman & Machtinger LLP as Special Litigation Counsel* [Doc. No. 240] (the "Greenberg Application") pursuant to which they sought to employ Greenberg Glusker Fields Claman & Machtinger LLP ("Greenberg Glusker") as their special litigation counsel.  The Greenberg Application was denied pursuant to Bankruptcy Court order entered on December 26, 2024.

On January 15, 2025, the Debtors filed their *Application to Retain and Employ Essex Capital Group, Inc. as Consultants with Respect to Debt Solicitation Effective as of January 10, 2025 Pursuant to 11 U.S.C. §§ 327 and 328* [Doc. No. 298] (the "Essex Application") pursuant to which they sought to employ Essex Capital Group, Inc. ("Essex") as consultants to assist the Debtors with respect to debt solicitation. The OUST filed an objection to the Essex Application [Doc. No. 310], which was resolved by the Debtors filing a supplement to the Essex Application [Doc. No. 318] and a stipulation between the Debtors and the OUST [Doc. No. 333].  The Essex Application was approved pursuant to Bankruptcy Court order entered on February 21, 2025 [Doc. No. 343].

On February 5, 2025, the Debtors filed their *Application to Retain and Employ STS Capital Partners M&A Advisers Inc as Investment Banker with Respect to a Potential Equity Transaction Effective as of January 31, 2025 Pursuant to 11 U.S.C. §§ 327(a) and 328(a)* [Doc. No. 336] (the "STS Application"). The STS Application was approved pursuant to Bankruptcy Court order entered on March 21, 2025 [Doc. No. 450].

On April 16, 2025, the Debtors filed their *Motion to Employ RSM US LLP as an Ordinary Course Professionals Under 11 U.S.C. § 363* [Doc. No. 523] (the "RSM Application"). The RSM Application was approved pursuant to Bankruptcy Court order entered on May 12, 2025 [Doc. No. 569].

3074414

On June 24, 2025, the Debtors filed their *Motion to Employ Larry Britton of Vessel Advisors LLC as an Ordinary Course Professional Under 11 U.S.C. § 363(b)* [Doc. No. 642] (the "Vessel Application") pursuant to which they sought Bankruptcy Court approval to retain Larry Britton to provide fractional CFO services. The Vessel Application was approved pursuant to Bankruptcy Court order entered on July 21, 2025 [Doc. No. 713].

On August 19, 2025, the Debtors filed their *Application to Employ Brown White & Osborn LLP as Their Special Litigation Counsel Pursuant to 11 U.S.C. §§ 327, 328 and 330 Effective as of August 1, 2025 and Request for Authority to Pay a Post-Petition Retainer* [Doc. No. 759] (the "BWO Application"), which is set for hearing on September 11, 2025 at 1:30 p.m. The BWO Application was approved pursuant to Bankruptcy Court order entered on _____.

**4.    Additional Cash Collateral Motions.**

On April 2, 2025, the Debtors filed their second cash collateral motion [Doc. No. 484] (the "Second Cash Collateral Motion"). The Second Cash Collateral Motion was approved pursuant to a consensual form of order through and including August 1, 2025 [Doc. No. 545]. On July 9, 2025, the Debtors and EWB entered into their *stipulation Extending Term of Further Order Authorizing Debtors to Use Cash Collateral and Granting Replacement Liens* [Doc. No. 692], which extended cash collateral use through the earlier of September 3, 2025 or the sale closing date (which was August 8, 2025). This stipulation was approved pursuant to Bankruptcy Court order entered on July 10, 2025 [Doc. No. 695].

On August 22, 2025, the Debtors filed their third cash collateral motion [Doc. No. 773] (the "Third Cash Collateral Motion"). On August 27, 2025, the Debtors and EWB entered into a stipulation authorizing use of cash collateral through October 6, 2025 [Doc. No. 784], which was approved pursuant to Bankruptcy Court order entered on August 28, 2025 [Doc. No. 786]. The Third Cash Collateral Motion is currently set for hearing on October 1, 2025 at 1:30 p.m.

**5.    Independent Director.**

The Debtors appointed Bradley Sharp (the "Independent Director") as the independent director of IN Nevada pursuant to a Resolution of the Board of Directors of IN Nevada dated March 18, 2025, a Written Consent of Shareholders of IN Nevada to Elect Special Restructuring

3074414

Independent Director dated March 18, 2025, an engagement agreement between the Debtors and Development Specialists, Inc. dated March 4, 2025, and an Indemnification Agreement dated March 5, 2025.  Pursuant to the aforementioned documents, the Independent Director is vested with the sole authority to approve all Liquidation Event(s) on behalf of IN Nevada. "Liquidation Events" include a sale of IN Nevada's equity or assets, a re-financing and/or the Plan.

The Debtors filed a motion to approve the Debtors' engagement of the Independent Director on April 2, 2025 [Doc. No. 488] (the "Independent Director Motion"). The Independent Director Motion was approved pursuant to Bankruptcy Court order entered on April 24, 2025 [Doc. No. 546].

**6.    Claim Objections.**

The Debtors intend on objecting to any claim marked on the Claim Chart as objectionable. The Debtors or Reorganized Debtors, as applicable, reserve the right to review and object to any claims in their sole discretion. The Debtors filed their first omnibus objection to claims on June 30, 2025 [Doc. No. 672], which omnibus objection was sustained pursuant to Court order entered on August 7, 2025 [Doc. No. 749]. The Debtors filed their second omnibus objection to claims on July 10, 2025 [Doc. No. 696], which omnibus objection was sustained pursuant to Court order entered on August 20, 2025 [Doc. No. 763]. The Debtors are in the process of objecting to other disputed claims and expect to have all objections on file prior to the Effective Date (though they reserve the right to file claims objections after the Effective Date).

**7.    Prosecution of Avoidance Actions & Other Potential Claims.**

The Debtors do not currently intend on pursuing any Avoidance Actions or Other Causes of Action other than the claims they have reserved the right to assert against the Lenders (set forth in Section IV.D.6) and claims they may assert against Adam Berk for payment on a note.  The Debtors do not plan on seeking to recover any preferential transfers as the Plan proposes to pay Allowed Claims in full and FitLife acquired most, if not all, of those claims.

The Debtors' principal and CEO Klee Irwin currently owes the Debtor $4,134,304.45 in unsecured loans as of the Petition Date, which loans are offset by $1 million owed from the Debtors to Mr. Irwin.  Such unsecured loans may potentially be part of the asset sale to FitLife as described below, and is subject to a separate negotiation between Mr. Irwin and FitLife where the assets may

be retroactively carved out of the asset sale in exchange for a release of claims and a non-defamation agreement by Mr. Irwin. If the unsecured loans remain in the estates, the Debtors do not currently intend to pursue collection against Mr. Irwin because Mr. Irwin's notes are not currently collectible and because all claims are being paid in full in these cases.  The majority of Mr. Irwin's assets are subject to liens held by EWB pursuant to a separate loan agreement entered into between EWB and Mr. Irwin.

### 8.    Exclusivity.

On November 12, 2024, the Debtors filed their motion [Doc. No. 219] (the "Exclusivity Motion") to extend their exclusive periods to file a confirm their Plan.  EWB filed an objection [Doc. No. 239].  The Exclusivity Motion was granted over EWB's objection pursuant to Bankruptcy Court order entered on December 11, 2024 [Doc. #269], and the Debtors' exclusive period to file a plan was extended to February 5, 2025 and the Debtors' exclusive period to obtain acceptances of a plan was extended to April 4, 2025.

On January 27, 2025, the Debtors, the OUST, EWB, the Committee and FitLife entered into a stipulation to continue the hearing on the Disclosure Statement to March 5, 2025 [Doc. No. 317], which also included an extension of the Debtors' exclusive period to file a plan to March 5, 2025 and an extension of the Debtors' exclusive period to obtain acceptances of a plan to May 2, 2025. This stipulation was approved pursuant to Bankruptcy Court order entered on January 28, 2025 [Doc. No. 323].

On February 19, 2025, FitLife, a competitor of the Debtors that purchased a $7,000 claim in the Debtors' cases, filed its *Motion for an Order (1) Terminating the Exclusive Periods in Which Only the Debtor May File a Plan and Solicit Acceptances and (II) Permitting FitLife Brands, Inc. to File an Alternative Plan and Disclosure Statement* [Doc. No. 349] (the "Motion to Terminate Exclusivity"), which motion was granted at a continued hearing held on March 21, 2025.  The order granting the Motion to Terminate Exclusivity was granted pursuant to Bankruptcy Court order entered on March 31, 2025 [Doc. No. 469] (the "Termination Order").

### 9.    Competing Plans.

On April 14, 2025, FitLife filed its chapter 11 plan [Doc. No. 514] (the "FitLife Plan") and

3074414

accompanying disclosure statement [Doc. No. 513] (the "FitLife Disclosure Statement") pursuant to which FitLife proposed to acquire the Debtors' equity through the FitLife Plan, pay certain claims, and eliminate existing equity.

On April 28, 2025, Robinson Pharma, Inc. ("Robinson"), the Debtors' largest supplier and an administrative creditor, filed its own chapter 11 plan [Doc. No. 553] (the "Robinson Plan") and accompanying disclosure statement [Doc. No. 552] (the "Robinson Disclosure Statement") pursuant to which Robinson proposed to acquire the Debtors' equity through the Robinson Plan, pay certain claims and eliminate existing equity.

**10.    Sale.**

Given the multiple competing plans filed in these cases, the Debtors subsequently determined that a 363 sale process made more sense under the circumstances than a competing plan process. Subsequently, on June 2, 2025, the Debtors entered into a term sheet with FitLife pursuant to which FitLife was named the Stalking Horse Bidder under terms where FitLife would acquire the Debtors' supplement business as a going concern for, among other things, (a) $36 million in cash, (b) the assumption of certain liabilities including, among others, the Debtors' post-petition ordinary course accounts payable, and (c) certain excluded assets including the Debtors' cash estimated to be $5 million at the time of closing. The Debtors file a bid procedures motion on June 6, 2025 [Doc. No. 611] (the "Bid Procedures Motion").

On June 18, 2025, the Court entered that certain *Order (A) Approving Bidding Procedures In Connection With Sale Of The Debtors' Assets, (B) Approving the Designation of a Stalking Horse; (C) Approving Procedures Related To The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, (D) Approving The Form And Manner Of Notices Related To The Auction And Sale, And (E) Scheduling The Sale Hearing* [Doc. No. 631] (the "Bidding Procedures Order").

Pursuant to the Bidding Procedures Order, the Debtors filed their *Motion for Entry of an Order Authorizing and Approving (A) the Sale of Substantially All of the Debtors' Assets Free and Clear of all Liens, Claims, Interests, and Encumbrances (Other Than Those Expressly Assumed by Buyer) Pursuant to 11 U.S.C. sections 363(b) and (f); (B) Assumption and Assignment of Executory*

3074414

*Contracts and Unexpired Leases and Determining Cure Amounts; (C) Waiving the 14-Day Stay Periods of Bankruptcy Rules 6004(h) and 6006(d); (D) Determining that Buyer is Entitled to Protection Pursuant to 11 U.S.C. section 363(m); and (E) Granting Related Relief* [Doc. No. 666] (the "Sale Motion") pursuant to which they sought to sell, subject to overbid, their supplement business to FitLife Brands, Inc. or its assignee ("FitLife") via an asset purchase agreement ("APA"). The Sale Motion was approved by the Bankruptcy Court by order entered July 31, 2025 [Doc. No. 740] (the "Sale Order").  Pursuant to the Sale Order, the Debtors' supplement business was sold to FitLife in exchange for payment by FitLife to the Debtors of $42,500,000 in cash plus the assumption of certain liabilities. The sale to FitLife closed on August 8, 2025 (the "Sale Closing"). The assets acquired by FitLife did not include the Debtors' cash, the Debtors' NOLs, the Debtors' tax refunds, or the Debtors' non-debtor entities and affiliates, some of which continue to operate.

## IV.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

### A.    What Creditors and Interest Holders Will Receive Under the Plan.

As required by the Bankruptcy Code, the Plan classifies Claims and Interests in various Classes according to their right of priority under the Bankruptcy Code.  The Plan states whether each Class of Claims or Interests in impaired or unimpaired.  The Plan provides the treatment each Class will receive.

### B.    Unclassified Claims.

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtors have not placed the following Unclassified Claims in a Class.

#### 1.    Administrative Claims.

Administrative Claims are for costs or expenses of administering the Debtors' Chapter 11 Cases which are allowed under Bankruptcy Code Section 507(a)(1).  The majority of Allowed Administrative Claims representing post-Petition Date liabilities incurred by the Debtors in the ordinary course of business were paid by FitLife in connection with the sale of the Debtors'

3074414

supplement business. The remaining Administrative Claims are estimated below. The Bankruptcy

Code requires that all Administrative Claims be paid on the Effective Date unless a particular

Claimant agrees to a different treatment.  After the Effective Date, while IN Nevada's chapter 11

case remains open, the Reorganized Debtors and, if applicable, the Plan Distribution Trustee will (i)

file with the United States Trustee quarterly reports; and (ii) timely pay fees incurred pursuant to 28

U.S.C. Section 1930(a)(6).[8]

The following chart lists all of the Debtors' Section 507(a)(1) administrative claims and their

treatment under the Plan. The Plan Proponents reserve the right to object to the administrative claims

listed below and these amounts are provided as estimates. The Plan Proponents believe that the total

amount owed will be less than what is reflected in the below chart.

| Name | Amount Owed[9] | Treatment |
|---|---|---|
| Administrative Claims (Incurred in the Ordinary Course of Business) | Estimated at approximately $50,000. | Allowed Administrative Claims representing post-Petition Date liabilities incurred by the Debtors or the Reorganized Debtors in the ordinary course of business, for which no approval by the Bankruptcy Court is required, shall be paid in full in the ordinary course of business by the Reorganized Debtors in accordance with the terms and conditions of the particular transaction giving rise to such liabilities and any agreements relating thereto. |
| BG Law LLP, bankruptcy counsel to the Debtors | Approximately $700,000 in addition to the post-petition payments made to BG pursuant to the order approving the Fee Procedures Motion [Doc. No. 214] (the "Interim Compensation Order"). | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses by the Plan Distribution Trustee, unless otherwise agreed to. |

---

[8] The quarterly fees owed to the United States Trustee are due and owing every quarter, without the requirement for the United States Trustee to file an administrative claim or a proof of claim. There is also no bar date for quarterly fees.

[9] The amounts set forth in this chart are estimates of the administrative claim amounts that the Plan Proponents believe each administrative claimant may be entitled to on the Effective Date in addition to any amounts paid to such claimant pursuant to the Interim Compensation Order.  The amounts set forth in this chart are subject to change.

3074414

| NAME | AMOUNT OWED[9] | TREATMENT |
|---|---|---|
| Province, LLC, financial advisor to the Debtors | Approximately $700,000 in addition to the post-petition payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses by the Plan Distribution Trustee, unless otherwise agreed to. |
| Jerrel G John, bookkeeper and accountant to the Debtors | Approximately $50,000 in addition to the post-petition payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses by the Plan Distribution Trustee, unless otherwise agreed to. |
| Marula Capital Group, financial advisor – valuation services to the Debtors | Approximately $50,000 in addition to amounts paid to Marula Capital Group pursuant to its employment order [Doc. No. 135] and pursuant to any payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses by the Plan Distribution Trustee, unless otherwise agreed to. |
| Golden Goodrich LLP, counsel to the Committee | Approximately $250,000 in addition to the post-petition payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses by the Plan Distribution Trustee, unless otherwise agreed to. |
| Force Ten Partners, LLC, financial advisor to the Committee | Approximately $200,000 in addition to the post-petition payments made by the Debtors in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses by the Plan Distribution Trustee, unless otherwise agreed to. |
| Omni, noticing and solicitation agent for the Debtors | $0 | Paid by the Debtors or the Reorganized Debtors in the ordinary course of business pursuant to the order approving Omni's employment [Doc. No. 134] |
| STS Capital | 3% of any Sale transaction if FitLife is the successful buyer and the purchase price is less than $41 million, or a $3 million fee if an alternate party is the ultimate buyer under the Sale. | Unless and until General Unsecured Claims are paid in full, STS's fee is capped at 3%. STS will not be entitled to any additional payment by the Plan Distribution Trustee until after all Allowed General Unsecured Claims have been paid in full. |
| **TOTAL** | Between Approximately $4 million and $6 million estimated | Paid in the manner described above |

41

3074414

Reservation of Rights

**Nothing in the Plan or Disclosure Statement and nothing set forth in the above chart should be construed as an admission by the Plan Proponents or any other party as to the validity of the asserted / projected Professional Fee Claims.  The Debtors, the Committee, the OUST, the Creditors and all other parties in interest reserve all rights to object to Professional Fee Claims.**

Court Approval of Fees Required:

The Bankruptcy Court must approve, or must have previously approved on a final basis, all Professional Fee Claims listed in the foregoing chart before they may be paid. Only the amount of fees and expenses approved by the Bankruptcy Court is required to be paid under the Plan. The administrative claim amounts set forth above for professional fees and expenses simply represent the Debtors' best estimate as to the amount of Allowed Professional Fee Claims, which estimates assume that the Debtors make all of the post-petition professional fee monthly payments that the Bankruptcy Court may authorize the Debtors to make. The actual Administrative Claims for Professional fees and expenses may be higher or lower. By voting to accept the Plan, Creditors are not acknowledging the validity of, or consenting to the amount of, any of these Administrative Claims for professional fees and expenses, and Creditors are not waiving any of their rights to object to the allowance of any of these Professional Fee Claims.  Also, the Professionals employed in these Cases may, prior to the Effective Date, seek Court approval of interim fees and expenses incurred in excess of the post-petition professional fee monthly payments received by such Professionals, pursuant to orders of the Bankruptcy Court.  To the extent any such interim fees and expenses are allowed by the Bankruptcy Court and paid by the Debtors prior to the Effective Date, that will reduce the amount of professional fees and expenses to be paid by the Reorganized Debtors.

**The last day to file any Administrative Claims (but NOT for ordinary post-petition operating obligations or Professional Fee Claims) is thirty (30) days after the Effective Date.** Administrative expenses will be paid on the later of the Effective Date or 10 days after the entry of a Final Order allowing the administrative expense, unless the administrative claimant has consented

3074414

otherwise in writing.  On or before the Effective Date, the Debtors or the Plan Distribution Trustee will serve notice of an administrative bar date on all potential administrative claimants.

    **2.**      **Priority Tax Claims.**

    Priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code.  The Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the Petition Date.  The Debtors believe that they owe the following priority tax claims:

| Class No. | Description | Estimated Amount | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| N/A | Priority Tax Claim of Canada Revenue Agency | Estimated at $17,438.37. | Full payment by the Plan Distribution Trustee within fourteen days of the Effective Date. |
| N/A | Priority Tax Claim of CA Department of Tax and Fee Administration | Estimated at $2,697.30. | Full payment by the Plan Distribution Trustee within fourteen days of the Effective Date. |
| N/A | Priority Tax Claim of State of Washington | Estimated at $907.62. | Full payment by the Plan Distribution Trustee within fourteen days of the Effective Date. |
| N/A | Priority Tax Claim of Massachusetts Department of Revenue | Proof of Claim No. 1-1 filed in Case No. 1:24-bk-11326-VK in the amount of $1,451.53. | The Debtors are in the process of investigating this claim. If allowed, full payment by the Plan Distribution Trustee. |
| N/A | Priority Tax Claim of Michigan Department of Treasury | Proof of Claim No. 6-1 filed in Case No. 1:24-bk-11326-VK in the amount of $5,879.43. | The Debtors are in the process of investigating this claim. If allowed, full payment by the Plan Distribution Trustee. |
| N/A | Priority Tax Claim of Oregon Department of Revenue | Proof of Claim No. 36-2 filed in Case No. 1:24-bk-11323-VK in the amount of $10,942.54. | The Debtors are in the process of investigating this claim. If allowed, full payment by the Plan Distribution Trustee. |
| N/A | Priority Tax Claims of the Internal Revenue Service ("IRS") | Estimated at $0. | While the IRS has filed millions of dollars of claims against the Estates, the Debtors' accountant is in the process of resolving each alleged claim. The Debtors do not believe that they will ultimately have any liability to the IRS. To the extent the IRS has Allowed Claims in these cases, they will be paid in full within the later of fourteen days of the Effective Date or entry of an order allowing the IRS claim(s). To the extent the IRS has any allowed claims, such claims shall be paid by the Reorganized Debtors (and not the Plan Distribution Trustee). |

3074414

| Class No. | Description | Estimated Amount | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| N/A | Priority Tax Claim of Franchise Tax Board ("FTB") | Proof of Claim No. 2-1 filed in Case No. 1:24-bk-11323-VK in the amount of $2,854.52.<br><br>Proof of Claim No. 60-1 filed in Case No. 1:24-bk-11323-VK in the amount of $98,210.37.<br><br>Proof of Claim No. 5-1 filed in Case No. 1:24-bk-11326-VK in the amount of $26,394.93.<br><br>Estimated at $3,000 | The Debtors believe the FTB's claims will be reduced significantly once they file their 2023 tax returns. To the extent the FTB has an allowed claim, such amount will be paid by the Plan Distribution Trustee. The Debtors believe they owe less than $3,000 to the FTB. |

## C.    Classified Claims and Interests.

### 1.    Class of Secured Claims.

Secured Claims are claims secured by liens on property of the estate.  The following chart sets forth the description and treatment of the Debtors' known Secured Claims.

| CLASS # | DESCRIPTION | IMPAIRED (YES/NO) | TREATMENT |
|---|---|---|---|
| 1 | Previously Secured claim of East West Bank, as Agent ("EWB") and CFG Bank ("CFG")<br><br>Collateral Description:  None. EWB has been paid $25,658,075.80 post-petition by the Debtors. As such, pursuant to Section 5.06 of the Security Agreement dated February 1, 2023 between the Debtors and EWB (the "Security Agreement"), all security interests granted in the Security Agreement were released and terminated when all obligations were paid in full in cash  (other than unasserted contingent indemnification obligations and/or unasserted expense reimbursement obligations).<br><br>*Debtors reserve all their rights to assert claims against EWB | No. | **The Debtors scheduled this claim as Unliquidated and Disputed and reserve all rights with respect to objecting to amounts paid to EWB for excessive fees and to assert affirmative claims against EWB and CFG.<br><br>**Treatment:**<br><br>The Debtors' position is that EWB has been paid in full and is no longer a secured creditor or otherwise entitled to charge fees and costs to the estates after August 11, 2025.<br><br>Notwithstanding, if it is determined that EWB is owed any additional amount (other than unasserted contingent indemnification obligations and/or unasserted expense reimbursement obligations), the Plan provides that such claim will be paid in full by the Reorganized Debtors within three (3) business days of the date that EWB submits an accounting and invoice to the Debtors or on the Effective Date in an |

44

3074414

| CLASS # | DESCRIPTION | IMPAIRED (YES/NO) | TREATMENT |
|---|---|---|---|
| | Filed Claim: Claim 48 [Case No. 11323]: $19,381,507.84 plus interest and fees. Duplicate Claims: Claim 1 [Case No. 11325] Claim 3 [Case No. 11326] Claim 5 [Case No. 11324] | | amount determined by the Bankruptcy Court. In light of payment in full, the Security Agreement specifically provides that any and all security interests granted by the Security Agreement "shall be released and terminated when all Obligations have been paid in full in cash (other than unasserted contingent indemnification obligations and unasserted expense reimbursement obligations) and when the Commitments have terminated." *See*, Section 5.06 of the Security Agreement. **Unimpaired. Not Entitled to Vote.** |

**2.     Classes of Priority Unsecured Claims.**

Certain Priority Claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in Classes.  These types of Claims are entitled to priority treatment as follows:  the Bankruptcy Code requires that each holder of such a Claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim.  The Debtors do not believe that there are any valid outstanding Section 507(a)(3), (5), (6), or (7) priority unsecured claims.  If there are any allowed priority unsecured claims as of the Effective Date, these claims will be paid in full by the Plan Distribution Trustee on the Effective Date (or as soon as practicable thereafter).  All allowed Section 507(a)(3), (5), (6), or (7) priority unsecured claims, if any, will be characterized as Priority Claims.

There is one valid outstanding Section 507(a)(4) priority unsecured claim, which claim and treatment are set forth below:

| CLASS # | DESCRIPTION | IMPAIRED (Yes/No) | TREATMENT |
|---|---|---|---|
| 2 | Employee Wage Claim of $5,991.80 | Yes. | Paid by the Plan Distribution Trustee in full within 14 days of the Effective Date. **Impaired; entitled to vote.** |

3074414

**3.**      **Classes of General Unsecured Claims.**

General Unsecured Claims are classified and treated as follows:

| CLASS # | DESCRIPTION | IMPAIRED (Yes/No) | TREATMENT |
|---|---|---|---|
| 3 | General Unsecured Claims [Excluding Insider Claims]<br><br>Estimated at approximately $5 to $7 million. (This number may change based upon resolution of objections to Disputed Claims.)<br><br>[This estimation does not include any intercompany claims as the Debtors' have agreed to subordinate all of their intercompany claims to those of Allowed General Unsecured Claims.] | Yes. | **Treatment:**<br>Allowed General Unsecured Claims will be paid in full by the Plan Distribution Trustee within fourteen days of the Effective Date (assuming the Plan Distribution Trustee is in possession of a W-9 for each creditor holding an Allowed Claim)[10].<br><br>Interest shall accrue at the California default state law rate of 10% on all Allowed General Unsecured Claims commencing as of the Petition Date.<br><br>Upon resolution of the Debtors' objections to disputed General Unsecured Claims, the respective claimants shall be paid their Allowed General Unsecured Claim in full within ten (10) days of a final non-appealable order allowing such claim.<br><br>The treatment proposed herein shall be in full settlement and satisfaction of all General Unsecured Claims. |
| 4 | General Unsecured Claim of Insider Klee Irwin ($1,035,682.49 – plus 4.43% interest from the Petition Date)<br><br>Subordinated Promissory Note Dated October 19, 2023<br><br>Proof of Claim No. 55 | Yes. | **Treatment:**<br>Subordinated to Allowed General Unsecured Claims of non-insiders. Paid in full after the payment in full of Class 3 Allowed Claims by the Plan Distribution Trustee.<br>**Impaired; Entitled to Vote** |
| 5 | General Unsecured Claim of Insider Mark Green ($1 million due only upon certain types of liquidation events as described in the contract ) | Yes. | **Treatment:**<br>Subordinated to Allowed General Unsecured Claims of non-insiders.<br>Late filed and no basis for claim per contract terms. The Debtors intend to object. If allowed, payment by the Plan Distribution Trustee after payment in full of Class 3 Allowed Claims.<br>**Impaired; Entitled to Vote** |

---

[10] If the Debtors and/or the Plan Distribution Trustee are not in possession of a W-9 for any creditor, the Debtors and/or the Plan Distribution Trustee will send a written request to such creditor(s). Payment will be paid only after the receipt of a W-9 from such creditor.

3074414

**4.      Classes of Interest Holders.**

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the

Debtor.  The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (YES/NO) | TREATMENT |
|---|---|---|---|
| 6 | **IN Nevada**<br>IN Nevada's current equity holders who collectively own 100% of IN Nevada: Equity Interests of Klee Irwin (90% Non-Voting Interest), Klee & Margareth Irwin Children's Trust (10% Non-Voting Interest) and DAI US HoldCo, Inc. (100% Voting Interest) | Yes. | **Treatment:**<br>Equity holders shall retain their respective interests.<br>**Unimpaired. Not Entitled to Vote.** |
| 7 | **IN Canada** - Equity Interest of Public Shareholders<br>IN Canada owns 100% of DAI, which owns 2% of IN Nevada. | Yes. | **Treatment:** IN Canada will remain a public company. IN Canada Shareholders may elect their treatment as follows: IN Canada Shareholders will retain their existing number of equity shares unless IN Canada Shareholders vote to receive a pro rata cash distribution of $225,000 (eligible only for non-insider shareholders).<br><br>**Impaired; Entitled to Vote.** |
| 8 | **DAI US HoldCo**<br>Owned 100% by IN Canada, owns 2% of IN Nevada but owns 100% Voting Shares. | No. | **Treatment:** All Equity Interest shall remain the same.<br>**Unimpaired. Not Entitled to Vote** |
| 9 | **5310 Holdings, LLC**<br>Owned 100% by IN Nevada | No. | **Treatment:** All Equity Interest shall remain the same.<br>**Unimpaired. Not Entitled to Vote** |

**D.      Means of Effectuating the Plan and Implementation of the Plan.**

**1.      Plan Funding.**

The Plan will be funded by the Debtors' cash of $20.5 million. The Reorganized Debtors will

3074414

be responsible for directly paying, among other things, any allowed claim of the IRS, any allowed claim of EWB, ordinary course administrative expenses, and UST quarterly fees. The Plan Distribution Trustee will be responsible for paying all other allowed claims including pre-Effective Date professional fees, administrative tax claims, 503(b)(9) claims, priority claims and general unsecured claims. The Plan Distribution Trust will be funded with $13.5 million in Cash contributed by the Reorganized Debtors from the aforementioned $20.5 million in Cash on the Effective Date. Against this amount, the total amount of claims to be paid from the Plan Distribution Trust are approximately $13.27 million.  A chart summarizing such claims is set forth at page 68 of this Disclosure Statement discussing feasibility.

**2.      Composition of the Debtors Post-Confirmation.**

On the Effective Date, IN Canada will remain a British Columbia Corporation and a public company. IN Canada's CEO will remain Klee Irwin, and the make up of the current board of directors shall remain intact.

On the Effective Date, IN Nevada will remain a Nevada corporation.  IN Nevada's CEO will remain Klee Irwin. IN Nevada's Independent Director position will terminate on the Effective Date.

On the Effective Date, Mr. Irwin shall continue as the CEO of DAI.

On the Effective Date, IN Nevada will continue to be the managing member of 5310.

**3.      Plan Distribution Trust.**

a.      <u>Establishment of the Plan Distribution Trust</u>

The Plan Distribution Trust shall be established and shall become effective on the Effective Date. The Plan Distribution Trust is created pursuant to the Plan and the Confirmation Order, and no separate trust instrument shall be required. The sole purpose of the Plan Distribution Trust will be to hold $13.5 million in Cash to make the Distributions required of it by the Plan. Each creditor holding an Allowed Claim will receive in full satisfaction, settlement, release and discharge of such Claim, payment in full of such Allowed Claim from the Plan Distribution Trust.

b.      <u>Plan Distribution Trust Assets</u>

The Plan Distribution Trust will be funded with the Trust Assets, which consist of $13.5 million in Cash free and clear of all liens, claims, encumbrances and/or interests of any party. The

3074414

Plan Distribution Trustee may retain a distribution agent (or any other party he or she deems appropriate) to assist with Distributions.

c.    The Term of the Plan Distribution Trust

The initial term of the Plan Distribution Trust shall be two (2) years (the "Initial Term"); provided, however, that the term of the Plan Trust may be automatically extended for an additional two-year term by the Plan Distribution Trustee upon the filing of a notice by the Plan Distribution Trustee prior to the expiration of the Initial Term and the Plan Distribution Trustee will serve such notice on the Reorganized Debtors' counsel. Thereafter, the term of the Plan Trust may be extended for a further finite term upon a finding of "cause" by the Court. The Plan Distribution Trustee may seek such an extension of the Plan Distribution Trust's term by motion filed by the expiration of the term to be extended. The Plan Distribution Trust may be terminated earlier than its scheduled termination if the Plan Distribution Trustee has completed all payments required under the Plan, has paid any taxes, fees and penalties associated with the Plan Distribution Trustee's administration of the Trust Assets, and has performed all other duties required by the Plan. Upon the termination of the Plan Distribution Trust, the Plan Distribution Trustee shall be discharged and exonerated and any assets remaining in the Plan Distribution Trust shall revest in the Reorganized Debtors.

d.    The Plan Distribution Trustee

(i)    **Appointment**

The appointment of the Plan Distribution Trustee shall be effective as of the Effective Date. Bradley Sharp of Development Specialists, Inc. ("DSI") shall be the initial Plan Distribution Trustee. The Plan Distribution Trustee may resign upon sixty (60) days' advance written notice to the Reorganized Debtors so long as a replacement trustee has been appointed. The Plan Distribution Trustee may be removed by order of the Court for "cause." The Plan Distribution Trustee shall bill his and DSI's time on an hourly basis and estimate that fees will be approximately $75,000.

The Plan Trustee shall act as a fiduciary and shall not be personally liable in connection with the affairs of the Plan Distribution Trust or to any person except for such of the Plan Distribution Trustee's acts or omissions that constitute fraud, willful misconduct, or gross negligence, as determined by a court of competent jurisdiction. In addition, the Plan Distribution Trustee shall be

49

3074414

indemnified by the Plan Distribution Trust against and held harmless by the Plan Distribution Trust from any losses, claims, damages, liabilities, or expenses (including without limitation, attorneys' fees, disbursements, and related expenses) to which the Plan Distribution Trustee may become subject in connection with any action, suit proceeding, or investigation brought or threatened against the Plan Distribution Trustee in connection with any matter arising out of or related to the Plan Distribution Trust (other than in respect of acts or omissions that constitute fraud, willful misconduct, or gross negligence, as determined by a court of competent jurisdiction).

The Plan Trustee shall be entitled to obtain customary fiduciary and/or errors and omissions liability insurance at the expense of the Plan Distribution Trust and engage independent legal counsel and financial advisors to assist with its evaluation of any matters with respect to the Plan Distribution Trust at the expense of the Plan Distribution Trust.

(ii)    <strong>Term of the Plan Trustee</strong>

Unless the Plan Distribution Trustee resigns, dies or is removed by Court order earlier, the Plan Distribution Trustee's term shall expire upon termination of the Plan Distribution Trust pursuant to the Plan. In the event the Plan Distribution Trustee resigns, dies or is removed by Court order prior to termination of the Plan Trust, the Reorganized Debtors shall appoint a successor trustee. Upon the termination of the Plan Distribution Trust, the Plan Distribution Trustee may destroy or otherwise dispose of the books and records of the Plan Distribution Trust.

(iii)    <strong>The Plan Distribution Trustee's Powers and Duties</strong>

On the Effective Date, the Plan Distribution Trustee shall have the rights, powers and duties set forth in the Plan and the Confirmation Order. The Plan Distribution Trustee shall be governed by all things by the terms of the Plan and the Confirmation Order, and the Plan Distribution Trustee shall administer the Plan Distribution Trust in accordance with the Plan. The Plan Distribution Trustee shall be authorized, empowered and directed to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations arising thereunder, including, without limitation to:

- Employ, retain, and replace one or more attorneys, accountants and advisors as necessary to discharge the duties of the Plan Distribution Trustee under the Plan and

50

to pay such professionals their reasonable and necessary fees and costs from the Trust

Assets in the ordinary course of business without further order of the Bankruptcy

Court;

- Open, maintain and administer bank accounts for Cash of the Plan Distribution Trust as

    necessary to discharge the duties of the Plan Distribution Trustee under the Plan;

- Make Distributions to the Holders of Allowed Claims in accordance with the Plan;

- Administer the Plan Distribution Trust in accordance with the terms of the Plan;

- Incur and pay from the Trust Assets reasonable and necessary expenses in connection

    with the performance of the Plan Distribution Trustee's duties under the Plan;

- Represent the Plan Distribution Trust before the Court and other courts of competent

    jurisdiction with respect to matters concerning the Plan Distribution Trust;

- Comply with applicable orders of the Court and any other court of competent

    jurisdiction over the matters set forth in the Plan;

- Comply with all applicable laws and regulations concerning the matters set forth in the

    Plan

- Exercise such other powers as may be vested in the Plan Distribution Trust pursuant to

    the Plan, the Confirmation Order, or other Final Orders of the Court;

- Execute any documents, instruments, contracts, and agreements necessary and

    appropriate to carry out the powers and duties of the Plan Distribution Trust;

- Seek a determination of tax liability under § 505 of the Code, pay taxes, if any, related

    to the Plan Distribution Trust, and file, if necessary, any and all tax and information

    returns required with the respect to the Plan Distribution Trust, including, if

    appropriate, treating the Plan Distribution Trust as a "grantor trust" pursuant to Treas.

    Reg. 1.671-4 or otherwise, make tax elections by and on behalf of the Plan

    Distribution Trust, and pay taxes, if any, payable by the Plan Distribution Trust; and

- Cause to be prepared and to file federal, state, and local tax returns related to the Plan

    Distribution Trust as necessary.

3074414

(iv)    **Trust Distributions**

The Plan Distribution Trustee will make the Distributions to the Holders of Allowed Claims in accordance with the terms of the Plan. Persons dealing with the Plan Distribution Trustee, or seeking to assert Claims against the Debtors, the Reorganized Debtors, the Estates, or the Plan Distribution Trust, shall look only to property of the Plan Distribution Trust to satisfy any liability to such Persons, and the Plan Distribution Trustee shall have no personal or individual obligation to satisfy any such liability.

(v)    **Federal Income & Taxation of the Plan Distribution Trust**

For federal income tax purposes, the Plan Distribution Trust is a "liquidating trust" within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45,1994-2 C.B. 124. The transfer of assets to the Plan Distribution Trust under the Plan is treated as a deemed transfer to the persons entitled to receive Distributions from the Plan Distribution Trust followed by a deemed transfer of assets by such persons to the Plan Distribution Trust. The persons entitled to receive Distributions under the Plan will be deemed the grantors and owners of the Plan Distribution Trust and its assets. The Plan Distribution Trust will be taxed as a "grantor trust" within the meaning of IRC Sections 671-677 (a non-taxable pass-through tax entity) owned by the persons entitled to receive Distributions under the Plan.

The Plan Distribution Trust will file federal income tax returns as a grantor trust under IRC Section 671 and Treasury Income Tax Regulation Section 1.671-4 and report, but not pay tax on, the Plan Distribution Trust's tax items of income, gain, loss deductions, and credits ("Tax Items"). The persons entitled to receive Distributions under the Plan will report such Tax Items on their federal income tax returns and pay any resulting federal income tax liability. The Plan Distribution Trust and the persons entitled to receive Distributions under the Plan will use consistent valuations of the assets transferred to the Plan Distribution Trust for all federal income tax purposes, such valuations to be determined by the Plan Distribution Trustee. The taxation of the Plan Trust does not alter the Reorganized Debtors' obligations to file appropriate tax returns and pay taxes.

(vi)    **Beneficiaries of the Plan Distribution Trust**

The Holders of Allowed Unsecured Claims under the Plan, or any successors to such

3074414

Holders' Allowed Unsecured Claims ("Beneficiary" or "Beneficiaries") shall own a beneficial interest in the Plan Distribution Trust as otherwise set forth in the Plan and shall, subject to the Plan, be entitled to a Distribution, if any, in the amounts, and at the times, set forth in the Plan. Ownership of a beneficial interest in the Plan Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Plan Distribution Trust by the Plan Distribution Trustee. The ownership of a beneficial interest in the Plan Distribution Trust shall not entitle any Beneficiary to any title in or to the Trust Assets or to any right to call for a partition or division of the Trust Assets or to require an accounting. The Plan Distribution Trustee shall make Distributions, if any, to the Beneficiaries in the manner provided in the Plan. The rights of the Beneficiaries arising under the Plan Trust may be deemed "securities" under applicable law.

However, such rights have not been defined as "securities" under the Plan because (a) the intent of the Plan is that such rights shall not be securities, and (b) if the rights arising under the Plan Distribution Trust are deemed to be "securities," the exemption from registration under § 1145 of the Bankruptcy Code is intended to be applicable to such securities.

(vii)    **Subordination**

The total estimated claims for claims to be paid through the Plan Distribution Trust are $13.2 million and the Plan Distribution Trust is to be funded with $13.5 million on the Effective Date. Of the $13.2 million in claims, approximately $1 million of the allowed claims is the claim of Klee Irwin, the Debtors' principal and an insider of these estates. Mr. Irwin's claim shall be subordinated to all other claims and will not be paid until all claims have been administered and paid and all other Plan Distribution Trust obligations have been paid in full unless the Plan Distribution Trustee determines in his sole discretion that there are sufficient reserves to allow for the payment of such claim. Per the STS employment order [Doc. No. 450], the payment of STS's fee beyond 3% is waived until the payment in full of all Allowed General Unsecured Claims.

**4.    Objections to Claims.**

The claims Bar Date in these cases was December 20, 2024 for non-governmental entities [Doc. No. 200]. The Bar Date in these cases was February 5, 2025 for governmental entities.

3074414

Attached as **Exhibit A** to this Disclosure Statement is a Claim Chart, which identifies all of the Debtors' scheduled claims and all of the filed proofs of claims which have been filed to date against the Debtors.  Following Confirmation of the Plan, the Reorganized Debtors shall be the sole entities with the standing and authority to file objections to Claims in these cases, and shall have the right to file objections to all Claims which are inconsistent with the Debtors' books and records unless the Reorganized Debtors deems the inconsistency to be insignificant.  **Any proof of claim that is filed with the Bankruptcy Court and/or served on the Debtors after the Effective Date <u>will be deemed invalid</u> (without the need for the Reorganized Debtors to file an objection to such late-filed claim) unless the claimant files a motion for leave of Court to file such claim.**

As provided by Section 502(c) of the Bankruptcy Code, the Bankruptcy Court may estimate any contingent, unliquidated or disputed claim for purposes of Confirmation of the Plan.  The Bankruptcy Court shall retain jurisdiction over the Debtors, the Plan Distribution Trust, these Cases and these Estates to resolve and to adjudicate any and all such objections to Claims which are commenced or continued following the Confirmation of the Plan.  Nothing contained in the Plan shall constitute a waiver or release by the Debtors of any rights of setoff or recoupment, or of any defense, the Debtors or the Reorganized Debtors may have with respect to any claim, or of any basis that the Debtors may have to object to any such claim.

**<u>Any Proof of Claim or Interest that is filed with the Bankruptcy Court and/or served on the Debtors or Plan Distribution Trustee after the Effective Date will be deemed invalid unless the Claimant files a motion for leave of Court to file such Claim.</u>**

The Debtors specifically reserve the right to file objections to any and all Claims set forth in **Exhibit A** to this Disclosure Statement, and to any subsequently filed proofs of claim. An order confirming the Plan shall not be *res judicata*, collateral estoppel, or other bar to the Debtors' rights to object to such Claims after the Effective Date.

**5.     Payment Upon Resolution of Disputed Claims.**

The Plan Distribution Trustee will not make any payment to the holder of a Disputed Claim until such Disputed Claim becomes an Allowed Claim.

3074414

**6.      Reservation of Rights of Reorganized Debtors to Prosecute Post-Bankruptcy**

**Litigation.**

(i)      <u>Lenders.</u>

The Debtors reserve their rights to file and prosecute litigation against EWB and CFG. The Debtors believe they have significant potential claims against the Lenders for unreasonable aggressive actions EWB took pre-petition including, but not limited to, (i) attempting to and succeeding in taking control of the Debtors' business by limiting the Debtors' ability to employ historically successful business procedures, (ii) forcing the Debtors to incur and pay unreasonable fees of EWB's professionals and professionals that EWB forced the Debtors to retain, (iii) restricting the Debtors' ability to access funds available under the applicable loan agreements while at the same time charging the Debtors interest on those funds, (iv) restricting the Debtors' ability to utilize cash flow from operations, and (v) increasing pressure on the Debtors and their management to force the Debtors to release claims against the Lenders for which the Lenders should be held accountable.  The Lenders continued this unreasonable pattern of behavior post-petition. The Debtors expressly reserve their right to pursue affirmative claims against the Lenders both in contract and in tort for the Lenders malicious and bad faith conduct including for compensatory and punitive damages and/or repayment of amounts paid to the Lenders for excessive interest and other costs on account of the Lenders' claim.

(ii)      <u>Insiders.</u>

The Debtors' principal and CEO Klee Irwin currently owes the Debtor $4,143,304.45 in loans as of the Petition Date.  Pursuant to the APA with FitLife, all of the Debtor's Claims and /or causes of action, including loans and/or other receivables and/or notes payable to the Debtors existing as of the closing date against Klee Irwin (collectively, the "Irwin Claims") constitute Excluded Assets under the APA to remain with the Debtors on the condition that, and if and only if, Klee Irwin executes an agreement in form and substance reasonably acceptable to FitLife which provides for a release of claims and a non-disparagement agreement from Klee Irwin in favor of FitLife and its affiliates (the "NDA").  The deadline

3074414

by which Mr. Irwin must execute the NDA has been extended by agreement until September 15, 2025. If Mr. Irwin does not execute the NDA in favor of FitLife, then pursuant to the APA, the Irwin Claims shall constitute Purchased Assets acquired by, and belonging to FitLife. To the extent these claims are retained by the Debtors, the Debtors do not intend to pursue collection against Mr. Irwin at this time because the Debtors believe that Mr. Irwin's notes are not currently collectible and because the Debtors believe that all Allowed Claims will be paid in full. Nevertheless, the Debtors will retain these claims against Mr. Irwin (unless such claims are acquired by FitLife).

(iii)    Other Claims.

The Debtors' are reserving their rights with respect to other Avoidance Actions and Causes of Action that were not purchased by FitLife in connection with the sale of the Debtors' supplement business. Among other things, the Debtors may pursue claims against Adam Berk related to a past due note. The Debtors may supplement this section with additional claims as appropriate.

**7.    Payment of Professional Fees and Expenses Incurred After the Effective Date.**

The Reorganized Debtors and the Plan Distribution Trustee shall be entitled to employ such professionals that they deem appropriate and to pay the fees and expenses incurred by such professionals in the ordinary course without any further order of the Bankruptcy Court.

**8.    Distributions to Be Made Pursuant to the Plan.**

Except as otherwise agreed to by the Plan Distribution Trustee or Reorganized Debtors in writing, Distributions to be made to holders of Allowed Claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtors' Schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Bankruptcy Court, to such address. Checks issued to pay Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date such check was mailed to the intended recipient. Those funds represented by voided checks that were not timely negotiated shall become the property of the Plan Distribution Trust or the Reorganized Debtors, as applicable.

3074414

Beneficiaries of the Plan Distribution Trust (each a "Beneficiary" and collectively, the "Beneficiaries") shall be required to certify such Beneficiary's taxpayer identification number, and that payments to such Beneficiary are exempt from backup withholding.  Any Beneficiary who fails to provide this certification to the Plan Distribution Trustee within thirty (30) days of the mailing of the Plan Distribution Trustee's request to such Beneficiary for same, shall forfeit and not be entitled to receive any Distribution. The Plan Distribution Trustee shall file with the Bankruptcy Court a "Notice of Forfeiture" reflecting any beneficial interests in the Plan Distribution Trust which have been forfeited pursuant to this paragraph.

**9.      Corporate Matters.**

The occurrence of the Effective Date shall constitute all approvals, consents and actions required by any officers of the Debtors under applicable law, and shall enable the Debtors or the Reorganized Debtors to execute any documents, instruments or agreements, and to take all corporate and other actions that are specified in the Plan or the Plan Confirmation Order that are necessary or appropriate to perform, implement and effectuate the Plan.

**10.      Release of Liens.**

Because all Allowed Claims are being paid in full, on the Effective Date, all liens or other security interests in or against property of the Estates shall be released. The Reorganized Debtors shall be empowered to file such pleadings and/or record such documents or instruments as necessary to eliminate, expunge or release such liens from their respective assets.

**11.      Exemption from Transfer Taxes.**

Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under § 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax. Transfers under the Plan that are exempt from taxes under § 1146(c) of the Bankruptcy Code include all transfers by the Debtors after the commencement of their chapter 11 Cases in contemplation of the Plan but prior to the Effective Date, and all transfers to and by the Debtors and the Plan Distribution Trustee.  The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and other similar taxes.

3074414

**12.    Exculpations and Releases.**

_To the maximum extent permitted by law, neither the Debtors, Klee Irwin, Dan Wing, Mark Green, the Reorganized Debtors, the Independent Director, the Committee members, nor any of their Professionals (collectively, the "Exculpated Parties"), shall have or incur liability to any Holder of a Claim or Equity Holder, or any other party in interest with respect to any claim or Cause of Action based on conduct taken or omitted to be taken in good faith after the Petition Date and on or before the Effective Date in connection with, or arising out of the formulating, negotiating, soliciting, preparing or confirming the Plan, Disclosure Statement and all exhibits thereto and/or the transactions contemplated therein, or a contract, instrument, release or other agreement or document created or entered into in connection with the Plan (collectively, the "Exculpated Claims"). The foregoing exculpation shall have no effect on liability of any Exculpated Party that results from any act or omission that is determined in a Final Order to have constituted fraud, gross negligence, willful misconduct, or professional malpractice.   For the avoidance of doubt, the exculpation provided herein: (i) shall only apply to conduct which occurred from the Petition Date through the Effective Date, with the exception of conduct relating to post-Effective Date modifications or amendments of the Plan, and (ii) with respect to Professionals, shall only apply to Exculpated Claims arising during the period such Professional was a Bankruptcy Court approved Professional and shall not apply to any Exculpated Claims arising prior thereto or thereafter._

**E.    Other Provisions of the Plan.**

**1.    Executory Contracts and Unexpired Leases.**

The Debtors do not believe they will be assuming any executory contracts or unexpired leases under the Plan.  If this changes, the Debtors will update this information in an amended disclosure statement. To the extent that there are any executory contracts or unexpired leases which have not been previously rejected, then such executory contract or unexpired lease shall be deemed rejected on the Effective Date.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE

3074414

WHICH IS REJECTED ON THE EFFECTIVE DATE SHALL BE THIRTY (30) DAYS AFTER THE EFFECTIVE DATE.  Any claim based on the rejection of an unexpired lease or executory contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.  Any Allowed Claim resulting from the rejection of an unexpired lease or executory contract will be classified and treated as a Class 3 Allowed Claim.

**2.      Risk Factors.**

The Plan Proponents do not believe that there is any risk of non-performance of the Plan since the Plan Distribution Trust is to be funded with $13.5 million, which is approximately $1 million more than the high estimate for the total amount of claims in these cases.

**3.      Changes in Rates Subject to Regulatory Commission Approval.**

The Debtors are not subject to governmental regulatory commission approval of their rates.

**F.      Retention of Jurisdiction.**

Following the Confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court shall retain such jurisdiction as is legally permissible including for the following purposes:

1.      To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

2.      To determine the allowability, classification, or priority of Claims and to consider any objection to claim or interest whether such objection is filed before or after the Effective Date;

3.      To determine the extent, validity and priority of any lien asserted against any Asset or property of the Debtors or the Debtors' Estates;

4.      To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary or appropriate for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order, and all matters referred to in the Plan and the Confirmation Order, and to determine all matters that may be pending before the Bankruptcy Court in this Case on or before the Effective Date;

3074414

5.      To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of Professionals for the period on or before the Effective Date;

6.      To determine any request for payment of administrative expenses;

7.      To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any Claims resulting therefrom;

8.      To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of these Cases whether before, on, or after the Effective Date, including Claims, Causes of Action, and Avoidance Actions, and the Reorganized Debtors shall have the right to commence in the Bankruptcy Court any Causes of Action, including any Avoidance Actions, after the Effective Date, and to continue with the prosecution in the Bankruptcy Court of any such claims, Causes of Action and Avoidance Actions which were commenced but not completed by the Debtors prior to the Effective Date;

9.      To determine such other matters and for such other purposes as may be contemplated by the Plan or Confirmation Order;

10.      To modify the Plan under § 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan, or to reconcile any inconsistency in the Plan, so as to carry out its intents and purposes;

11.      Except as otherwise provided in the Plan or the Confirmation Order, to issue injunctions, to take such other actions, or make such other orders, as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or implementation by any Person or other entity of the Plan or the Confirmation Order;

12.      To issue such orders in aid of consummation, and in aid of implementation, of the Plan and the Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any Person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

13.      To enter a final decree closing these Cases.

60

3074414

### G.    Amendments to Corporate Documents.

On the Effective Date, the Debtors' officers and board members and the Plan Distribution Trustee shall be authorized to amend any corporate documents as necessary and to take all actions necessary and appropriate to carry out the terms of the Plan.

### H.    Dissolution of the Committee.

On the Effective Date, the Committee, to the extent that it serves as the Official Committee of Unsecured Creditors appointed in the bankruptcy cases of IN Nevada and IN Canada, shall be dissolved and its members shall be released and discharged from all rights and duties arising from or related to these Cases.

### I.    Miscellaneous Issues Regarding Plan Distribution.

#### 1.    No Fractional Distributions.

No Distributions in fractions of hundredths of U.S. Dollars ($0.00's) (i.e., cents) shall be issued.  If the Distribution amount allocated to an Allowed Claim at the time of a Distribution hereunder would include fractions of cents, the amount to be distributed to the holder of such Claim shall be rounded down to the highest integral number of cents in the applicable Claim amount.

#### 2.    Name and Address of Holder of Claim.

For purposes of all distributions under the Plan, the Plan Distribution Trustee can rely on the name and address of the holder of each Allowed Claim as shown on any timely filed proof of claim and, if none, as shown on the Debtors' Schedules, except to the extent that the Plan Distribution Trustee first receives adequate written notice of a change of address, properly executed by the Holder or its authorized agent.

#### 3.    Unclaimed Distribution.

Any Unclaimed Distribution under the Plan shall be forfeited to the Plan Distribution Trust. An Unclaimed Distribution is any Distribution made by the Plan Distribution Trustee to the address of the recipient reflected in the Schedules (or on any Proof of Claim filed by the Claimant), by: (a) checks which have been returned as undeliverable without a proper forwarding address; (b) checks which were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same; (c) checks which have not been cashed for a period of ninety (90) days after the

3074414

date such checks were issued, or (d) disbursements that were not made because the Holder of such

Allowed Claim failed to provide required tax information within forty-five (45) days after the Plan

Distribution Trustee has sent any request for same to such Claimant's address as reflected in the

Schedules and/or such Claimant's Proof of Claim.

**4.    De Minimus Cash Distributions.**

Notwithstanding anything to the contrary in the Plan, no Cash Distributions shall be made on

account of any Allowed Claim if the Cash Distribution amount is less than $25.00.  Holders of

Allowed Claims who would otherwise be entitled to a Distribution in the amount of less than $25.00

shall receive no Distribution on account of such Allowed Claim because the value of such Allowed

Claim would be de minimus and the administrative costs associated with processing and mailing the

Distributions to the holder of such Allowed Claim would likely exceed the amount of the

Distribution.

## V.    IRS CIRCULAR 230 NOTICE

To ensure compliance with IRS Circular 230, holders of Claims and Interests are hereby

notified that; (i) any discussion of federal tax issues contained or referred to in this Disclosure

Statement is not intended or written to be used, and cannot be used, by holders of Claims or Interests

for the purpose of avoiding penalties that may be imposed on them under the Internal Revenue Code;

(ii) such discussion is written in connection with the promotion or marketing by the Plan Proponents

of the transactions or matters addressed herein; and (iii) holders of Claims and Interests should seeks

advice based on their particular circumstances from an independent tax advisor.

## VI.    TAX CONSEQUENCES OF THE PLAN

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY

AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS,

ATTORNEYS, AND/OR ADVISORS.  The Plan Proponents CANNOT and DO NOT represent that

the tax consequences contained below are the only tax consequences of the Plan because the Tax

Code embodies many complicated rules which make it difficult to state completely and accurately all

of the tax implications of any action.

The Debtors do not believe that there will be any significant tax consequences connected to

3074414

the Plan.

## VII.    CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.  The Plan Proponents CANNOT and DO NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Bankruptcy Court can confirm a plan.  Some of the requirements include that the plan must be proposed in good faith, the acceptance of the plan, whether the Plan pays creditors at least as much as Creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

**A.    Who May Vote or Object.**

Any party in interest may object to the confirmation of the Plan, but, as explained below, not everyone is entitled to vote to accept or reject the Plan.

**B.    Who May Vote to Accept/Reject the Plan**

A Creditor or Interest holder has a right to vote for or against the Plan if that Creditor or Interest holder has a Claim or Interest which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

**C.    What Is an Allowed Claim/Interest**

As noted above, a Creditor or Interest holder must first have an <u>allowed claim or interest</u> to have the right to vote.  Generally, any proof of claim or interest will be allowed, unless a party in interest files an objection to the claim or interest.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE ON ACCOUNT OF PRE-PETITION CLAIMS WAS DECEMBER 20, 2024.  A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest is not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtors' Schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim.  An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

**D.    What Is an Impaired Claim/Interest.**

As noted above, an allowed claim or interest has the right to vote only if it is in a class that is impaired under the Plan. *See, e.g., In re Barakat*, 99 F.3d 1520 (9th Cir. 1996), *cert. denied,* 520 U.S. 1143 (1997) (a class that is not impaired is conclusively presumed to have accepted a chapter 11 plan).  A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

In these Cases, the Plan Proponents believe that members of Classes 2, 3, 4, 5, and 7 are impaired. Parties who dispute the Plan Proponents' characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Plan Proponents have incorrectly characterized impairment of any Class.

**E.    Who Is <u>Not</u> Entitled to Vote.**

The following four types of claims are <u>not</u> entitled to vote:  (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to sections 507(a)(1), (a)(2), and (a)(8) of the Bankruptcy Code; and (4) claims in classes that do not receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to sections 507(a)(1), (a)(2), and (a)(8) of the Bankruptcy Code are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Bankruptcy Code.  Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  Accordingly, Classes 8 and 9 are not entitled to vote. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

3074414

**F.      Who Can Vote in More Than One Class.**

A Creditor whose Claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject the Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.  The Plan Proponents do not believe that there are any Creditors who have a claim that is partially secured and partially unsecured.

**G.      Votes Necessary to Confirm the Plan.**

If impaired classes exist, the Bankruptcy Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed below.

**H.      Votes Necessary for a Class to Accept the Plan.**

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted on the plan, voted in favor of the plan.  A class of interests is considered to have "accepted" a plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted on the plan, voted to accept the plan.

**I.      Treatment of Non-accepting Classes.**

As noted above, even if all impaired classes do not accept the Plan, the Bankruptcy Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the Bankruptcy Code.  The process by which non-accepting classes are forced to be bound by the terms of a plan is commonly referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down" on non-accepting classes of claims or interests if it meets all consensual requirements except the voting requirements of § 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in § 1129(b) of the Bankruptcy Code and applicable case law.

**J.      Request for Confirmation Despite Nonacceptance by Impaired Class(es).**

3074414

The Plan Proponents will request the Bankruptcy Court to confirm the Plan by cramdown on impaired classes if such classes do not vote to accept the Plan.

**K.    Liquidation Analysis.**

Another confirmation requirement is the "Best Interest Test," which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the debtor's assets are usually sold by a Chapter 7 trustee.  Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims.  Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Bankruptcy Court to be able to confirm the Plan, the Bankruptcy Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation of the Debtors.  The Debtors maintain that this requirement is clearly met as all allowed claims will be paid in full under the Plan.

The Debtors' liquidation analysis ("Liquidation Analysis"), attached hereto as **Exhibit B**, was prepared on a consolidated basis. As set forth on Exhibit B, creditors will also recover 100% under a chapter 7 liquidation and the distribution to equity is estimated at between $5.78 million and $7.87 million.

In a chapter 7 case, a chapter 7 trustee would be required to replace the professionals currently employed by the Debtors' Estates with new professionals, which would burden the Estates with additional substantial fees as the trustee and his/her professionals would need to familiarize themselves with these cases, and the Estates would bear the significant financial burden of their learning curve.  These additional expenses are avoided through the confirmation of the Plan.

66

3074414

The Liquidation Analysis depends on several estimates and assumptions as also set forth on Exhibit B. The Liquidation Analysis is based on the Debtors' best judgment of how numerous decisions in the liquidation process would be resolved.  Accordingly, there can be no assurance that the values reflected in the Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such liquidation, and actual results could vary materially and adversely from those contained in the Liquidation Analysis.

In preparing the Liquidation Analysis, the Debtors have preliminarily estimated an amount of Allowed Claims for each indicated type of Claim.  Additional Claims were estimated to include certain Chapter 7 administrative obligations incurred after the conversion date. The estimate of all allowed claims in the Liquidation Analysis is based on the scheduled and filed claim values and several illustrative placeholders.  No order or finding has been entered or made by the Bankruptcy Court estimating or otherwise fixing the amount of Claims at the projected amounts of Allowed Claims set forth in the Liquidation Analysis.  The estimate of the amount of Allowed Claims set forth in the Liquidation Analysis should not be relied upon for any other purpose, including, without limitation, any determination of the value of any distribution to be made on account of Allowed Claims under the Plan. The actual amount of Allowed Claims could be materially different from the amount of Claims estimated in the Liquidation Analysis.

**% OF THEIR CLAIMS WHICH GENERAL UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CHAPTER 7 LIQUIDATION: = 100%**

**% OF THEIR CLAIMS WHICH GENERAL UNSECURED CREDITORS ARE ESTIMATED TO RECEIVE OR RETAIN UNDER THE PLAN: = 100%**

**L.      Feasibility.**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis.  The first aspect considers whether the Debtors will have enough cash on hand on the Effective Date to pay all the claims and

3074414

expenses which are entitled to be paid on such date. The Debtors are proposing to pay all Allowed

Claims in full within fourteen days of the Effective Date from their cash on hand, which is

$23,537,132.20 as of September 4, 2025, and which they estimate they will have at least $20.5

million as of the Effective Date. Such proceeds will be utilized as follows:

| | |
|---|---|
| Administrative Professional (Estimated) | $5,500,000 |
| Administrative Taxes (Estimated) | $200,000 |
| 503(b)(9) Claims | $110,000 |
| Lease/Contract Cures | $0 |
| Priority Wage Claims | $10,000 |
| Priority Tax Claims (Estimated) | $200,000 |
| General Unsecured Claims (Estimated) | $6,500,000 |
| Interest (on GUC) | $750,000 |
| Total | $13,270,000 |

Based on the foregoing, the Debtors will have more than sufficient funds to make all required

Effective Date payments and will contribute $13.5 million to the Plan Distribution Trust on the

Effective Date. Any remaining amounts after the payment of all allowed claims will revert to the

Reorganized Debtors. The above chart illustrates all of the types of claims that will be paid by the

Plan Distribution Trust. For the avoidance of doubt, the Reorganized Debtors will pay any allowed

claim by the IRS, any allowed claim of EWB, ongoing UST quarterly fees and ordinary course

administrative expenses (and these expenses are not the responsibility of the Plan Distribution

Trust).

The second aspect considers whether the Reorganized Debtors will have enough cash over

the life of the Plan to make the required Plan payments. This prong is inapplicable as the Debtors

will be placing sufficient funds in the Plan Distribution Trust to cover all payments due under the

Plan.

## VIII.    EFFECT OF CONFIRMATION OF THE PLAN

### A.    Discharge.

On the Effective Date, the Debtors will receive a discharge under the Plan pursuant to and in

accordance with the provisions of § 1141 of the Bankruptcy Code because the Plan does not provide

for a liquidation of all or substantially all of the property of the Debtors' Estates and the Debtors will

engage in business after consummation of the Plan.  Pursuant to § 1141(d)(1)(A), confirmation of

3074414

the Plan will discharge "the debtor[s] from any debt that arose before the date of such confirmation,

and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not – (i)

a proof of claim based on such debt is filed or deemed filed under section 501 of this title; (ii) such

claim is allowed under section 502 of this title; or (iii) the holder of such claim has accepted the plan

…".  11 U.S.C. §§ 1141(d)(1)(A)(i), (ii) and (iii).  **In other words, Confirmation of the Plan will**

**effectuate a discharge as to all debts or liabilities, whether contingent, unliquidated, disputed,**

**known or unknown, that were incurred or arose before Confirmation of the Plan.**  This

includes all types of Claims and obligations arising out of and/or including, but not limited to, (i) all

causes of action under state and Federal law (e.g., breach of contract, breach of fiduciary duty, false

advertising, etc.), (ii) trade payables, (iii) landlord claims, (iv) tax Claims including interest, (v)

environmental claims, (vi) employee related claims and (vii) any other known or unknown Claim

from any debt arising prior to Plan Confirmation.

       **The Plan shall bind the holders of all Claims whether or not they vote to accept the**

**Plan.  The rights afforded in the Plan and the treatment of all Claims therein shall be in**

**complete satisfaction, discharge and release of all Claims against the Debtors or their Assets of**

**any nature whatsoever except as otherwise specifically provided in the Plan.  Except as set**

**forth in the Plan, all Claims shall be forever satisfied, discharged and released in full on the**

**Effective Date, and all holders of Claims shall be forever precluded and enjoined from**

**asserting Claims against the Reorganized Debtors.  Any litigation pending prepetition and/or**

**initiated postpetition in any court other than the Bankruptcy Court where relief from stay was**

**not obtained from the Bankruptcy Court shall be deemed discharged upon Plan Confirmation**

**and the occurrence of the Effective Date.**

**B.**      **Continuing Stay/Injunction.**

       The automatic stay is lifted upon the Effective Date as to property of the Estates.  However,

the stay continues to prohibit collection or enforcement of prepetition Claims against the

Reorganized Debtors or the Plan Distribution Trust's property until the earlier of the date: (1) the

Debtors' bankruptcy Cases are closed, or (2) the Debtors' bankruptcy Cases are dismissed.

Therefore, all parties bound by the Plan shall take no action with respect to, and are enjoined from,

3074414

collecting or enforcing their prepetition Claims against the Reorganized Debtors and the Plan

Distribution Trustee as set forth herein, and as otherwise provided by operation of law, until the

earlier of the date that (1) the Debtors' bankruptcy Cases are closed, or (2) the Debtors' bankruptcy

Cases are dismissed.

**The Confirmation Order shall enjoin the prosecution, whether directly, derivatively or**

**otherwise, of any Claim, obligation, suit, judgment, damage, demand, debt, right, cause of**

**action, liability or interest released, discharged or terminated pursuant to the Plan.**

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all

entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged

or an interest or other right of an equity holder that is impaired pursuant to the terms of the Plan are

permanently enjoined from taking any of the following actions against the Debtors, the Debtors'

Estates, the Reorganized Debtors or their property on account of any such discharged Claims, debts

or liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in any

place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any

manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or

encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any

debt, liability or obligation due to the Debtors; and (v) commencing or continuing any action in any

manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

**By accepting distribution pursuant to the Plan, each holder of an Allowed Claim**

**receiving a Distribution pursuant to the Plan will be deemed to have specifically consented to**

**the injunctions set forth in this Section.**

**C.     Modification of the Plan.**

The Plan Proponents may modify the Plan at any time before confirmation.  However, the

Bankruptcy Court may require a new disclosure statement and/or re-voting on the Plan if the Debtors

modify the Plan before confirmation.  The Debtors, the Reorganized Debtors or the Plan Distribution

Trustee, as the case may be, may also seek to modify the Plan at any time after Confirmation of the

Plan so long as (1) the Plan has not been substantially consummated, and (2) the Bankruptcy Court

authorizes the proposed modifications after notice and a hearing.

70

3074414

**D.      Post-Confirmation Status Reports.**

Until final decrees closing the Debtors' Cases are entered, the Reorganized Debtors shall file

regular status reports if so ordered by the Bankruptcy Court.

**E.      United States Trustee Reporting Obligations and Fees.**

Within five (5) business days of the Effective Date, the Reorganized Debtors shall file a

notice of the Plan's Effective Date.  Following the Effective Date of the Plan, the Reorganized

Debtors and the Plan Distribution Trustee shall each file a quarterly Post-confirmation Report, UST

Form 11-PCR ("PCR"), and be obligated to pay a quarterly fee pursuant to 28 U.S.C. § 1930(a)(6)

for each calendar quarter, or portion thereof, until one of the following occurs: (1) the date of the

final decree; (2) the conversion of the case to a case under another chapter; or (3) the dismissal of the

case.  If any order has been entered on the docket that vacates any of the above orders or reopens the

case for a reason other than that which is purely administrative the filing of the PCRs shall be

resumed, and quarterly fees shall start to accrue.

**F.      Post-Confirmation Conversion/Dismissal – Local Bankruptcy Rule 3020-1(e).**

A Creditor or any other party in interest may bring a motion to convert or dismiss the Cases

under § 1112(b) of the Bankruptcy Code after the Plan is confirmed if there is a default in

performing the Plan.  If the Bankruptcy Court orders the Cases converted to chapter 7 after the Plan

is confirmed, then all property that had been property of the chapter 11 Estates, and that has not been

disbursed pursuant to the Plan, will revest in the respective chapter 7 estate, and the automatic stay

will be re-imposed upon the revested property, but only to the extent that relief from stay was not

previously authorized by the Bankruptcy Court during these Cases.  The Plan Confirmation Order

may also be revoked under very limited circumstances.  The Bankruptcy Court may revoke the Plan

Confirmation Order if it was procured by fraud and if a party in interest brings an adversary

proceeding to revoke confirmation within 180 days after the entry of the Plan Confirmation Order.

**G.      Final Decree.**

Once the estates have been fully administered as referred to in Bankruptcy Rule 3022, the

Reorganized Debtors shall file a motion with the Bankruptcy Court to obtain a final decree to close

3074414

these cases.  The Reorganized Debtors shall be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

DATED:  September 10, 2025          IN Holdings, Inc., a Nevada Corporation

By:_____
      Klee Irwin, Chief Executive Officer

DATED:  September 10, 2025          IN Holdings, Inc., a Nevada Corporation

By:_____
      Bradley Sharp, Independent Director

DATED:  September 10, 2025          IN Holdings Canada, Inc., a British Columbia
                                    Corporation

By:_____
      Klee Irwin, Chief Executive Officer

DATED:  September 10, 2025          5310 Holdings, LLC

By:_____
      Klee Irwin, as CEO of IN Holdings, Inc., a
      Nevada corporation, Managing Member of 5310
      Holdings, LLC

DATED:  September 10, 2025          DAI US HoldCo Inc.,

By:_____
      Klee Irwin, Chief Executive Officer

Submitted By:

BG Law LLP

By: /s/ Susan K. Seflin
      Susan K. Seflin
Attorneys for Chapter 11 Debtors
and  Co-Plan Proponents

[Signatures Continued on Next Page]

Submitted By:

Golden Goodrich

By:_____
     Jeffrey I. Golden
Attorneys for Official Committee of
Unsecured Creditors and Co-Plan
Proponents

3074414

# EXHIBIT A

| Claim No | Claim Date Filed | Creditor | Claim Amount | Sch Sec Amt | Sch Pri Amt | Sch Uns Amt | Admin Amt | 503b9 Amt | Se Amt | Pri Amt | Uns Amt | Filed Case | CUD | Treatment Notes | Est Claim Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 1010Data Services LLC | | - | - | 6,000 | | | | | | | | | 6,000 |
| C323-73 | 01/17/2025 | 2DG Solutions LLC | 4,517 | | | | | | | | 4,517 | 24-11323 | | | 4,517 |
| | | A360 | | - | - | 117,450 | | | | | | | D | Duplicate/Superseded | - |
| C323-6 | 08/15/2024 | A360 Media, LLC | 117,450 | | | | | | | | 117,450 | 24-11323 | | | 117,450 |
| | | Acosta Inc | | | | 34,995 | | | | | | | | | 34,995 |
| C323-32 | 12/09/2024 | Adam Roth | 1,200 | | | | | | | | 1,200 | 24-11323 | | | 1,200 |
| C323-5 | 10/16/2024 | ADP Inc | 20 | | | | | | | | 20 | 24-11323 | | | 20 |
| | | Advantage Sales & Marketing | | - | - | 258 | | | | | | | | | 258 |
| | | Ahold Financial Services | | - | - | 3,874 | | | | | | | | | 3,874 |
| C323-79 | 02/07/2025 | Airespring, Inc. | 4,262 | | | | | | | | 4,262 | 24-11323 | | | 4,262 |
| C323-44 | 12/16/2024 | Alison Marie Cervelli | 1,240 | | - | 1,240 | - | | | | 1,240 | | 24-11323 | | | 1,240 |
| C323-31 | 12/06/2024 | Alive Publishing Group Inc. | 42,974 | | | | | | | | 42,974 | 24-11323 | | | 42,974 |
| | | American Associated Pharmacies | | | | 382 | | | | | | | | | 382 |
| | | American Express | | | | 57,480 | | | | | | | | Duplicate/Superseded | - |
| C323-20 | 10/04/2024 | American Express National Bank | 83,534 | | | | | | | | 83,534 | 24-11323 | | | 83,534 |
| C323-62 | 12/20/2024 | s | 105,374 | | | | | | - | | 105,374 | 24-11323 | | ECF 763 - Objection | 105,374 |
| | | Amware Fulfillment LLC | | | | 95,584 | | | | | | | | | 95,584 |
| | | Apg Inc | | | | 24,600 | | | | | | | | | 24,600 |
| C323-10 | 08/15/2024 | Arcbest, Inc | 45,652 | | | | | | | | 45,652 | 24-11323 | | Proposed Objection | - |
| | | Argo Partners | | - | - | 6,263 | | | | | | | | Buyer Assumed | - |
| | | Argo Partners | | | | 5,309 | | | | | | | | Duplicate/Superseded | - |
| | | Argo Partners | | - | - | 4,053 | | | | | | | | Buyer Assumed | - |
| C323-47 | 12/18/2024 | Argo Partners | 80,500 | | | | | | | | 80,500 | 24-11323 | D | Proposed Objection | 80,500 |
| | | Armanino LLP | | | | 539,288 | | | | | | | | | ECF 751 - Stipulation | 269,644 |
| C323-4 | 09/03/2024 | Aston Carter, Inc | 3,505 | | | | | | | | 3,505 | 24-11323 | | | 3,505 |
| C323-83 | 07/15/2025 | | 170 | | | | | | | | 170 | 24-11323 | | Proposed Objection | - |
| | | Ballard Spahr LLP | | - | - | 152,014 | | | | | | | D | Duplicate/Superseded | - |
| C323-48 | 12/18/2024 | Ballard Spahr LLP | 158,814 | | | | | | | | 158,814 | 24-11323 | | Proposed Objection | - |
| | | Berg Marketing Group | | - | - | 10,432 | | | | | | | | | 10,432 |
| | | Best One Consultng Group | | | | 656 | | | | | | | | | 656 |
| C323-63 | 12/20/2024 | Bird Marella | 9,516 | | | | | | | | 9,516 | 24-11323 | | | 9,516 |
| | | Brex Inc | | | | 210 | | | | | | | | | 210 |
| | | Broadridge | | | | 418 | | | | | | | | | 418 |
| C323-11 | 08/23/2024 | Buchalter, A Professional Corporation | 4,494 | | | | | | | | 4,494 | 24-11323 | | | 4,494 |
| | | CA Dept of Tax & Fee Administration | | - | 2,697 | - | | | | | | | | | 2,697 |
| | | California Dept of Tax & Fee Administration (CDTFA) | | - | - | | | | | | | | | | - |
| | | California Dept of Tax & Fee Administration (CDTFA) | | - | - | | | | | | | | | | - |
| | | California Dept of Tax & Fee Administration (CDTFA) | | - | - | | | | | | | | | | - |
| | | California Dept of Tax & Fee Administration (CDTFA) | | - | - | | | | | | | | | | - |
| | | Call & Jensen | | | | 1,656 | | | | | | | | | 1,656 |
| | | Canada Revenue Agency | | - | 15,150 | 2,288 | | | | | | | | | 17,438 |
| | | Canada Revenue Agency | | - | - | | | | | | | | | | - |
| | | Canadian Analytical Lab | | | | 4,449 | | | | | | | | | 4,449 |
| | | Captek Softgels International Inc | | | | 41,461 | | | | | | | | | 41,461 |
| | | Cdz Sales Inc | | - | - | 363 | | | | | | | | | Buyer Assumed | - |
| C324-42 | 12/12/2024 | Centri Business Consulting | 50,301 | | | | | | | | 50,301 | 24-11324 | | | 50,301 |
| | | Certified Laboratories | | | | 665 | | | | | | | | | 665 |
| | | Circana | | | | 3,905 | | | | | | | | | 3,905 |
| | | Circana LLC | | | | 15,870 | | | | | | | | | 15,870 |
| | | City of Los Angeles Tax Collector | | - | - | | | | | | | | | | - |
| | | City of Los Angeles Tax Collector | | - | - | | | | | | | | | | - |
| | | City of Los Angeles Tax Collector | | - | - | | | | | | | | | | - |

**Exhibit A_001**

| Claim No | Claim Date Filed | Creditor | Claim Amount | Sch Sec Amt | Sch Pri Amt | Sch Uns Amt | Admin Amt | 503b9 Amt | Se Amt | Pri Amt | Uns Amt | Filed Case | CUD | Treatment Notes | Est Claim Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | City of Los Angeles Tax Collector | | | | | | | | | | | | | - |
| | | Clark Hill | | | | 22,949 | | | | | | | | Duplicate/Superseded | - |
| C323-36 | 12/10/2024 | Clark Hill PLC | 51,036 | | | | | | | | 51,036 | 24-11323 | | Proposed Objection | - |
| C324-37 | 12/10/2024 | Clark Hill PLC | 51,036 | | | 41,639 | | | | | 51,036 | 24-11324 | | | 51,036 |
| | | Cnb Commercial Visa Card | | | | 15 | | | | | | | | | 15 |
| | | Coast 3Pl | | - | - | | | | | | | | | | - |
| | | Coast Warehouse | | - | - | | | | | | | | | | - |
| | | Colorado Dept of Revenue | | - | | - | | | | | | | | | - |
| | | Colorado Dept of Revenue | | - | | - | | | | | | | | | - |
| | | Colorado Dept of Revenue | | - | | - | | | | | | | | | - |
| | | Colorado Dept of Revenue | | - | | - | | | | | | | | | - |
| | | Colorado Dept of Revenue | | - | | - | | | | | | | | | - |
| | | Colorado Dept of Revenue | | - | | - | | | | | | | | | - |
| | | Commerce Bank | | | | 1,450 | | | | | | | | | 1,450 |
| | | Connected Cfo LLC | | | | 1,500 | | | | | | | | | 1,500 |
| | | Conohan | | - | - | | | | | | | | | CUD | | - |
| | | Copperpoint Insurance Co | | | | 10,948 | | | | | | | | | | 10,948 |
| | | CR3 Partners LLC | | - | | 39,321 | | | | | | | | D | Duplicate/Superseded | - |
| C323-58 | 12/20/2024 | CR3 Partners, LLC | - | | | | | | | | - | 24-11323 | CU | | - |
| | | Creative Sales & Marketing | | - | - | 11,954 | | | | | | | | | Buyer Assumed | - |
| | | Cse Canadian Securities Exchange | | | | 4,695 | | | | | | | | | Duplicate/Superseded | - |
| C324-24 | 11/19/2024 | CSE Canadian Securities Exchange | 16,187 | | | | | | | | 16,187 | 24-11324 | | | 16,187 |
| C323-1 | 09/01/2024 | Dawn Patrol Inc dba Full Stream Group | 103,734 | | | 72,389 | | | | | 103,734 | 24-11323 | | Proposed Objection | 72,389 |
| C323-41 | 12/11/2024 | Dennis Diaz | 528,138 | | | | | | | | 528,138 | 24-11323 | | ECF 749 - Objection | - |
| C323-50 | 12/18/2024 | Dennis Diaz | 7,500 | | | | | | | | 7,500 | 24-11323 | | ECF 763 - Objection | - |
| C323-22 | 11/06/2024 | Department of Treasury - Internal Revenue Se | 1,195,518 | | | | | | 1,195,518 | | | 24-11323 | | Duplicate/Superseded | - |
| C326-7 | 09/16/2024 | Department of Treasury - Internal Revenue Se | 1,009,151 | - | - | - | | | | 803,185 | 205,966 | 24-11326 | | Duplicate/Superseded | - |
| C323-70 | 01/06/2025 | Department of Treasury - Internal Revenue Se | 581,704 | | | | 581,704 | | | | | 24-11323 | | Proposed Objection | - |
| C323-13 | 09/20/2024 | Department of Treasury - Internal Revenue Se | 511,072 | | | | | | | 511,072 | | 24-11323 | | Duplicate/Superseded | - |
| C323-69 | 01/06/2025 | Department of Treasury - Internal Revenue Se | 976,934 | | | | | | | 976,934 | | 24-11323 | | Proposed Objection | - |
| C326-71 | 01/06/2025 | Department of Treasury - Internal Revenue Se | 633,972 | | | | | | | 428,005 | 205,966 | 24-11326 | | Proposed Objection | - |
| C326-72 | 01/06/2025 | Department of Treasury - Internal Revenue Se | 221,477 | | | | 221,477 | | | | | 24-11326 | | Proposed Objection | - |
| | | Digital Media Innovations | | - | - | 11,708 | | | | | | | | D | | 11,708 |
| | | Digital Media Innovations, LLC | | | | 11,367 | | | | | | | | | | 11,367 |
| | | Direct Sales & Marketing | | - | | 1,429 | | | | | | | | | | 1,429 |
| C323-80 | 03/17/2025 | Divergeit, Inc. | 1,190 | | | | | | | | 1,190 | 24-11323 | | | 1,190 |
| C324-82 | 05/07/2025 | Don Gist | | | | | | | | | | 24-11324 | U | | - |
| | | Dsv Air & Sea | | | | 1,427 | | | | | | | | | | 1,427 |
| | | Dsv Road Inc | | | | 9,502 | | | | | | | | | | 9,502 |
| | | Dsv Solutions Inc | | | | 22,546 | | | | | | | | | | 22,546 |
| | | East West Bank | | - | - | - | | | | | | | | UD | | - |
| | | East West Bank | | - | - | - | | | | | | | | UD | | - |
| | | East West Bank | | - | - | - | | | | | | | | UD | | - |
| | | East West Bank | | - | - | - | | | | | | | | UD | | - |
| | | East West Bank, as agent | | - | - | - | | | | | | | | UD | | - |
| | | East West Bank, as agent | | - | - | - | | | | | | | | UD | | - |
| | | East West Bank, as agent | | - | - | - | | | | | | | | UD | | - |
| | | East West Bank, as agent | | - | - | - | | | | | | | | UD | | - |
| | | East West Bank, as agent | | - | - | - | | | | | | | | UD | | - |
| | | East West Bank, as agent | | - | - | - | | | | | | | | UD | | - |
| C324-52 | 12/19/2024 | East West Bank, As Agent, And For Lenders | 19,381,508 | 18,651,960 | - | - | | | 19,381,508 | | | 24-11324 | | Duplicate/Superseded | - |
| C325-54 | 12/19/2024 | East West Bank, As Agent, And For Lenders | 19,381,508 | 18,651,960 | - | - | | | 19,381,508 | | | 24-11325 | | Duplicate/Superseded | - |

**Exhibit A_002**

| Claim No | Claim Date Filed | Creditor | Claim Amount | Sch Sec Amt | Sch Pri Amt | Sch Uns Amt | Admin Amt | 503b9 Amt | Se Amt | Pri Amt | Uns Amt | Filed Case | CUD | Treatment Notes | Est Claim Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C326-55 | 12/19/2024 | East West Bank, As Agent, And For Lenders | 19,381,508 | 18,651,960 | - | - | | | 19,381,508 | | | 24-11326 | | Duplicate/Superseded | - |
| C323-57 | 12/19/2024 | East West Bank, As Agent, And Lenders | 19,381,508 | 18,651,960 | | - | | | 19,381,508 | | | 24-11323 | | Duplicate/Superseded | - |
| | | EMA Anesthesia | | - | - | 36,400 | | | | | | | D | | 36,400 |
| C324-68 | 12/26/2024 | Emerge Law Group P.C. | 1,665 | | | | | | | | 1,665 | 24-11324 | | | 1,665 |
| | | Employment Development Dept | | - | - | - | | | | | | | | | - |
| | | Employment Development Dept | | - | | - | | | | | | | | | - |
| | | Employment Development Dept | | - | | - | | | | | | | | | - |
| | | Employment Development Dept | | - | | - | | | | | | | | | - |
| C323-15 | 10/20/2024 | Eric S Reskin | - | | | | | | | | - | 24-11323 | U | Proposed Objection | |
| | | Expertvoice | | | | 8,986 | | | | | | | | | 8,986 |
| | | Fedex | | | | 22,144 | | | | | | | | | 22,144 |
| | | Feel Rite Natural Food Shoppes, Inc | | | | 580 | | | | | | | | | 580 |
| C323-65 | 12/23/2024 | Feldkamp Marketing, Inc. | 15,496 | - | - | 12,416 | | | | | 15,496 | 24-11323 | | | 15,496 |
| C323-46 | 12/17/2024 | FitLife Brands, Inc. | 7,498 | | | | | | | | 7,498 | 24-11323 | | | 7,498 |
| C323-76 | 02/03/2025 | Franchise Tax Board | 98,210 | | | | | | | 98,210 | | 24-11323 | | Proposed Objection | 1,000 |
| C326-77 | 02/03/2025 | Franchise Tax Board | 26,395 | | | | | | | 26,395 | | 24-11326 | | Proposed Objection | 1,000 |
| C325-74 | 01/23/2025 | Franchise Tax Board | 2,855 | | | | | | | 2,568 | 286 | 24-11325 | | Proposed Objection | 1,000 |
| | | Franchise Tax Board | | - | - | - | | | | | | | | | - |
| | | Franchise Tax Board | | - | | - | | | | | | | | | - |
| | | Franchise Tax Board | | - | | - | | | | | | | | | - |
| | | Franchise Tax Board | | - | | - | | | | | | | | | - |
| C323-18 | 08/30/2024 | Frontline Marketing | 34,995 | | | | | | | | 34,995 | 24-11323 | | Proposed Objection | - |
| | | Generation Iacp Inc | | | | 58,280 | | | | | | | | | Duplicate/Superseded | - |
| C323-56 | 12/18/2024 | Generation IACP Inc. | 84,725 | | | | | | | | 84,725 | 24-11323 | | Proposed Objection | 58,279 |
| C323-12 | 10/19/2024 | Gordon Investigative Group LLC | 55,000 | | | | | | | | 55,000 | 24-11323 | | ECF 763 - Objection | - |
| | | Gowling Wlg (Canada) LP | | | | 2,730 | | | | | | | | | 2,730 |
| | | Guise | | - | - | 2,425 | | | | | | | | | Buyer Assumed | - |
| | | Healthy Life Market | | - | | 1,104 | | | | | | | | | 1,104 |
| | | Herb Shop Ii | | | | 420 | | | | | | | | | 420 |
| | | Herman Reese | | - | - | - | | | | | | | | CUD | - |
| C323-61 | 12/20/2024 | Ibotta, Inc. | 8,659 | | | 7,099 | | | | | 8,659 | 24-11323 | | | 8,659 |
| | | Illinois Dept of Revenue | | - | | - | | | | | | | | | - |
| | | Illinois Dept of Revenue | | - | | - | | | | | | | | | - |
| | | Illinois Dept of Revenue | | - | | - | | | | | | | | | - |
| | | Informa Media | | | | 28,452 | | | | | | | | | 28,452 |
| | | Information Resources Inc | | | | 138,568 | | | | | | | | | 138,568 |
| | | Inmar Brand Solutions Inc | | | | 96,493 | | | | | | | | | 96,493 |
| | | Inmar Promotions-Canada Inc | | | | 1,113 | | | | | | | | | 1,113 |
| | | Inmar-Oiq LLC | | | | 10,000 | | | | | | | | | 10,000 |
| | | Integral Wealth Securities | | | | 36,741 | | | | | | | | | 36,741 |
| | | Interwest Brokerage, Inc | | - | - | 2,053 | | | | | | | | | Buyer Assumed | - |
| | | Jk Sales | | | | 2,460 | | | | | | | | | Buyer Assumed | - |
| C323-3 | 10/16/2024 | Johnson & Bertram LLP | 5,531 | | | 5,531 | | | | | 5,531 | 24-11323 | | | 5,531 |
| C323-23 | 11/12/2024 | JP Orlando LLC | 1,141 | | | | | | | 877 | 263 | 24-11323 | | ECF 763 - Objection | - |
| | | Jwp Sales | | - | | 1,991 | | | | | | | | | Buyer Assumed | - |
| | | K1 Packaging Group | | | | 94,942 | | | | | | | | | 94,942 |
| C323-49 | 12/18/2024 | Karled Enterprises I | 1,157,780 | - | - | 1,137,383 | | | | | 1,157,780 | 24-11323 | U | Proposed Objection | 991,530 |
| | | Kimberly A Boodjeh | | | 627 | - | | | | | | | | | 627 |
| C323-64 | 12/20/2024 | Klee Irwin | 1,035,682 | | | | | | | | 1,035,682 | 24-11323 | | Insider | 1,035,682 |
| | | KSE Sportsman Media | | - | - | 11,156 | | | | | | | | D | Duplicate/Superseded | - |
| C323-27 | 11/15/2024 | KSE Sportsman Media, Inc. | 11,156 | | | | | | | | 11,156 | 24-11323 | | Proposed Objection | 11,156 |
| | | Landsberg | | | | 19,022 | | | | | | | | | 19,022 |

**Exhibit A_003**

| Claim No | Claim Date Filed | Creditor | Claim Amount | Sch Sec Amt | Sch Pri Amt | Sch Uns Amt | Admin Amt | 503b9 Amt | Se Amt | Pri Amt | Uns Amt | Filed Case | CUD | Treatment Notes | Est Claim Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Los Angeles County Treasurer & Tax Collector | | | - | - | | | | | | | | | - |
| | | Los Angeles County Treasurer & Tax Collector | | | - | - | | | | | | | | | - |
| | | Los Angeles County Treasurer & Tax Collector | | | - | - | | | | | | | | | - |
| | | Los Angeles County Treasurer & Tax Collector | | | - | - | | | | | | | | | - |
| | | Louis F Leeper Co | | | - | 1,459 | | | | | | | | Buyer Assumed | - |
| C323-59 | 12/20/2024 | Marcus Kelley | 14,375 | | | | | | | | 14,375 | 24-11323 | | ECF 763 - Objection | - |
| C323-34 | 12/10/2024 | Mario Quintero | 31,257 | | | | | | | | 31,257 | 24-11323 | | Proposed Objection | - |
| C323-81 | 03/27/2025 | Mark Green | 1,000,000 | | | | | | | | 1,000,000 | 24-11323 | C | Proposed Objection | - |
| | | Mark Judkins Consulting Co | | | | 7,498 | | | | | | | | Duplicate/Superseded | - |
| | | Mark Salamon | | | 4,125 | | | | | | | | | Duplicate/Superseded | - |
| C323-30 | 11/22/2024 | Mark Salamon | 4,125 | | | | | | | | 4,125 | 24-11323 | | | 4,125 |
| C323-28 | 11/20/2024 | Marlin Leasing Corporation | 19,382 | | | | | | | | 19,382 | 24-11323 | | Proposed Objection | - |
| C326-2 | 08/12/2024 | Massachusetts Department Of Revenue | 1,452 | - | - | - | | | | 1,397 | 55 | 24-11326 | | | 1,452 |
| | | Media Brokers Int'l | | - | - | 415,423 | | | | | | | | D | Duplicate/Superseded | 189,318 |
| | | Media Max Network, LLC | | - | - | 63,526 | | | | | | | | D | Duplicate/Superseded | - |
| C324-17 | 09/23/2024 | Michael Goldberg, As Plan Administrator For 2 | 63,634 | | | | | | | | 63,634 | 24-11324 | | | 63,634 |
| C326-78 | 02/05/2025 | Michigan Department Of Treasury | 5,879 | | | | | | | 5,129 | 750 | 24-11326 | | | 5,879 |
| | | Michigan Dept of Treasury | | - | - | | | | | | | | | | | - |
| | | Michigan Dept of Treasury | | - | - | | | | | | | | | | | - |
| | | Michigan Dept of Treasury | | - | - | | | | | | | | | | | - |
| | | Michigan Dept of Treasury | | - | - | | | | | | | | | | | - |
| | | Michigan Dept of Treasury | | - | - | | | | | | | | | | | - |
| | | Michigan Dept of Treasury | | - | - | | | | | | | | | | | - |
| C323-39 | 12/11/2024 | Miguel Tomas | 528,138 | | | | | | | | 528,138 | 24-11323 | | ECF 749 - Objection | - |
| | | Mike Sullivan Sales Co | | - | - | 116 | | | | | | | | | | 116 |
| C323-51 | 12/18/2024 | Mike Tomas | 7,500 | | | | | | | | 7,500 | 24-11323 | | ECF 763 - Objection | - |
| C323-19 | 10/02/2024 | Mittenthal & Associates/P&GB, Inc | 19,016 | - | - | 3,116 | | | | 15,150 | 3,866 | 24-11323 | | Buyer Assumed | - |
| | | Mnp Llp | | | | 124,458 | | | | | | | | | Duplicate/Superseded | - |
| C323-26 | 11/18/2024 | MNP LLP | 194,634 | | | | | | | | 194,634 | 24-11323 | | Proposed Objection | 124,457 |
| | | Mrc Smart Technology Solutions | | | | 1,114 | | | | | | | | | Buyer Assumed | - |
| | | Nevada Dept of Taxation | | - | - | | | | | | | | | | | - |
| | | Nevada Dept of Taxation | | - | - | | | | | | | | | | | - |
| | | Nevada Dept of Taxation | | - | - | | | | | | | | | | | - |
| | | Nevada Dept of Taxation | | - | - | | | | | | | | | | | - |
| | | Nsf International | | | | 5,260 | | | | | | | | | Buyer Assumed | - |
| | | Nuborn Express Inc | | | | 29,672 | | | | | | | | | Duplicate/Superseded | - |
| C323-14 | 08/23/2024 | Nuborn Express Inc | 28,684 | | | | | | | | 28,684 | 24-11323 | | Proposed Objection | - |
| C323-25 | 11/15/2024 | Nu-Born Express, Inc | 28,684 | | | | | | | | 28,684 | 24-11323 | | | 28,684 |
| | | Oc & C Strategy Consultants | | | | 300,000 | | | | | | | | | | 300,000 |
| | | Omega Sales | | - | - | 3,069 | | | | | | | | | Duplicate/Superseded | - |
| C323-33 | 12/09/2024 | Omega Sales & Marketing | 5,447 | | | | | | | 5,447 | | 24-11323 | | Buyer Assumed | 5,447 |
| C323-43 | 12/16/2024 | Oregon Department Of Revenue | 4,323 | | | | | | | 3,126 | 1,197 | 24-11323 | | Duplicate/Superseded | - |
| C323-75 | 01/27/2025 | Oregon Department Of Revenue | 10,943 | | | | | | | 7,557 | 3,386 | 24-11323 | | | 10,943 |
| | | Oregon Dept of Revenue | | - | - | | | | | | | | | | | - |
| | | Oregon Dept of Revenue | | - | - | | | | | | | | | | | - |
| | | Oregon Dept of Revenue | | - | - | | | | | | | | | | | - |
| | | Paragon Laboratories | | | | 171,404 | | | | | | | | | Duplicate/Superseded | - |
| C323-21 | 11/06/2024 | Paragon Laboratories | 171,404 | | | | | 108,733 | | | 62,671 | 24-11323 | | | 171,404 |
| | | Partner's Delivery Inc | | | | 2,447 | | | | | | | | | | 2,447 |
| | | Peco Pallet Inc | | | | 12,075 | | | | | | | | | | 12,075 |
| | | Precision Sales & Marketing | | - | - | 1,919 | | | | | | | | | | 1,919 |
| | | Pure Green Corp | | | | 145 | | | | | | | | | | 145 |

**Exhibit A_004**

| Claim No | Claim Date Filed | Creditor | Claim Amount | Sch Sec Amt | Sch Pri Amt | Sch Uns Amt | Admin Amt | 503b9 Amt | Se Amt | Pri Amt | Uns Amt | Filed Case | CUD | Treatment Notes | Est Claim Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Pushor Mitchell LLP | | | | 3,185 | | | | | | | | | 3,185 |
| | | Quotient | | | | 16,700 | | | | | | | | | 16,700 |
| | | Rakuten Marketing LLC | | | | 490 | | | | | | | | | 490 |
| C323-40 | 12/11/2024 | Raul Cruz | 528,138 | | | | | | | | 528,138 | 24-11323 | | ECF 749 - Objection | - |
| C323-53 | 12/18/2024 | Raul Cruz | 7,500 | | | | | | | | 7,500 | 24-11323 | | ECF 763 - Objection | - |
| C323-8 | 10/19/2024 | Reskin CPAs PSC | 35,000 | | | | | | | | 35,000 | 24-11323 | | ECF 763 - Objection | - |
| C323-9 | 10/19/2024 | Reskin CPAs PSC | 32,000 | | | | | | | | 32,000 | 24-11323 | | ECF 763 - Objection | - |
| | | Resources Wholesale, Inc | | - | - | 68 | | | | | | | | | 68 |
| | | Retail Business Solutions, Inc | | - | - | 24,773 | | | | | | | | Buyer Assumed | - |
| | | Robinson Pharma | | - | - | - | | | | | | | | | - |
| | | Rod Kight | | | | 27,714 | | | | | | | | Duplicate/Superseded | - |
| C323-16 | 08/27/2024 | Rodney Kight | 26,250 | | | | | | | | 26,250 | 24-11323 | | | 26,250 |
| | | Rpm Group | | - | - | 23,654 | | | | | | | | | 23,654 |
| | | Rsm US LLP | | | | 157,500 | | | | | | | | | 157,500 |
| | | Rust Logistics | | | | 900 | | | | | | | | | 900 |
| | | Save Naturally Inc | | | | 73 | | | | | | | | | 73 |
| | | Select Staffing | | | | 2,776 | | | | | | | | | 2,776 |
| | | Shankman & Associates, Inc | | - | | 177 | | | | | | | | Buyer Assumed | - |
| | | Sheri Orlowitz | | | | 26,283 | | | | | | | | | 26,283 |
| | | Silvertip LLC | | | | 36,935 | | | | | | | | Duplicate/Superseded | - |
| C323-29 | 11/20/2024 | Silvertip LLC | 42,621 | | | | | | | | 42,621 | 24-11323 | | | 42,621 |
| | | Smyth Publishing Services, Inc. | | - | - | 17,000 | | | | | | | D | | 17,000 |
| | | Socalgas | | | | 29 | | | | | | | | | 29 |
| | | Southeastern Grocers | | | | 2,500 | | | | | | | | | 2,500 |
| | | Specialized Marketing Intl | | - | - | 1,635 | | | | | | | | Buyer Assumed | - |
| C323-45 | 12/17/2024 | Spectrum | 5,187 | | | | | | | | 5,187 | 24-11323 | | Buyer Assumed | - |
| | | Spins LLC | | | | 25,000 | | | | | | | | Buyer Assumed | - |
| | | Sps Commerce Inc | | | | 7,640 | | | | | | | | Buyer Assumed | - |
| C323-60 | 12/19/2024 | Staci Americas LLC | 135,231 | | | | | | | | 135,231 | 24-11323 | U | Proposed Objection | 76,235 |
| | | Star Sales & Marketing | | - | - | 556 | | | | | | | | | 556 |
| | | State of Washington Dor | | - | 908 | - | | | | | | | | | 908 |
| C323-66 | 12/19/2024 | Stites & Harbison, PLLC | 51,069 | | | | | | | | 51,069 | 24-11323 | | | 51,069 |
| | | Sunshine Fym | | - | - | 100 | | | | | | | | | 100 |
| | | Telus Agriculture & Consumer Goods (US) Inc | | | | 16,488 | | | | | | | | | 16,488 |
| | | The Renew Co LLC | | | | 10,892 | | | | | | | | | 10,892 |
| | | The Swanson Group | | - | - | 93,900 | | | | | | | | Buyer Assumed | - |
| | | Tls Transportation Inc | | - | - | - | | | | | | | | | - |
| | | Tls Transportation Inc (3PI) | | - | - | - | | | | | | | | | - |
| | | Tmz | | - | - | 101 | | | | | | | | Buyer Assumed | - |
| | | TRC Master Fund LLC | | | | 36,600 | | | | | | | | Duplicate/Superseded | - |
| | | TRC Master Fund LLC | | - | - | 17,337 | | | | | | | | Buyer Assumed | - |
| | | TRC Master Fund LLC | | | | 62,767 | | | | | | | | | 62,767 |
| C323-35 | 12/10/2024 | TRC Master Fund LLC | 36,600 | | | | | | | | 36,600 | 24-11323 | | | 36,600 |
| | | TRC Master Fund LLC | | | | 27,340 | | | | | | | | | 27,340 |
| | | Trisha Vaughn | | - | | - | | | | | | | CUD | | - |
| | | Trustpilot, Inc | | | | 3,000 | | | | | | | | | 3,000 |
| | | Venable LLP | | | | 2,310 | | | | | | | | Duplicate/Superseded | - |
| C323-67 | 12/26/2024 | Venable LLP | 4,964 | | | | | | | | 4,964 | 24-11323 | | | 4,964 |
| | | Virginia Dept of Taxation | | - | | - | | | | | | | | | - |
| | | Virginia Dept of Taxation | | - | | - | | | | | | | | | - |
| | | Virginia Dept of Taxation | | - | | - | | | | | | | | | - |
| | | West Bloomfield Market LLC | | | | 400 | | | | | | | | | 400 |

**Exhibit A_005**

| Claim No | Claim Date Filed | Creditor | Claim Amount | Sch Sec Amt | Sch Pri Amt | Sch Uns Amt | Admin Amt | 503b9 Amt | Se Amt | Pri Amt | Uns Amt | Filed Case | CUD | Treatment Notes | Est Claim Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Wilson Elser | | | | 468 | | | | | | | | | 468 |
| C323-38 | 12/11/2024 | Yieldify US | 3,250 | | | | | | | | 3,250 | 24-11323 | | Proposed Objection | - |
| | | Zapp Packaging Inc | | | | 94,240 | | | | | | | | | 94,240 |

**Exhibit A_006**

# EXHIBIT B

*Irwin Naturals (Consolidated Debtors)*

**Chapter 11 Plan : Best Interest Test**

*Note: All amounts are preliminary estimates and subject to further analysis & court approval*

| Chapter 7 Liquidation Analysis ($000s) | Notes | Claims / Asset Book Value | | Recovery Scenario | | | |
|---|---|---|---|---|---|---|---|
| **Recovery Scenario** | **Notes** | **High** | **Low** | **High ($)** | **Low ($)** | **High (%)** | **Low (%)** |
| *Sources of Recovery* | | | | | | | |
| (+) Cash on Hand | 1 | $ 20,495 | $ 20,495 | $ 20,495 | $ 20,495 | 100.0% | 100.0% |
| (+) Insider Notes Receivable | 2 | 4,143 | 4,143 | NA | NA | – | – |
| (+) Other Remnant Assets | 3 | 200 | - | 200 | - | 100.0% | 100.0% |
| (+) Other Litigation Assets | 4 | TBD | TBD | NA | NA | – | – |
| **Estimated Distributable Value** | | | | $ 20,695 | $ 20,495 | | |
| *Chapter 7 Wind-Down Claims & Expenses* | | | | | | | |
| (-) Ch. 7 Trustee Fees | 5 | | | 621 | 615 | 3.0% | 3.0% |
| (-) Ch. 7 Trustee Professional Fees | 6 | | | 250 | 500 | 1.2% | 2.4% |
| (-) Wind-Down Expenses (Professionals) | 7 | | | 100 | 200 | 0.5% | 1.0% |
| (-) Wind-Down Expenses (Company) | 8 | | | 100 | 200 | 0.5% | 1.0% |
| **Distributable Value -- Secured Claims** | | | | $ 19,624 | $ 18,980 | | |
| *Secured Claims* | | | | | | | |
| (-) Secured Claims | 9 | 300 | 500 | 300 | 500 | 100.0% | 100.0% |
| **Distributable Value -- Chpt. 11 Admin Claims** | | | | $ 19,324 | $ 18,480 | | |
| *Chapter 11 Administrative Claims* | | | | | | | |
| (-) Accrued & Unpaid Professional Fees | 10 | 5,007 | 5,507 | 5,007 | 5,507 | 100.0% | 100.0% |
| (-) Post-Petition Taxes Payable | 11 | 100 | 200 | 100 | 200 | 100.0% | 100.0% |
| (-) 503(b)(9) Claims | 12 | 109 | 109 | 109 | 109 | 100.0% | 100.0% |
| (-) Estimated UST Fees Outstanding | 13 | 75 | 100 | 75 | 100 | 100.0% | 100.0% |
| (-) Administrative Trade Claims | 14 | 25 | 50 | 25 | 50 | 100.0% | 100.0% |
| **Distributable Value -- Priority Claims** | | | | $ 14,008 | $ 12,514 | | |
| *Priority Claims* | | | | | | | |
| (-) Priority Claims | 15 | 100 | 200 | 100 | 200 | 100.0% | 100.0% |
| **Distributable Value -- General Unsecured Claims** | | | | $ 13,908 | $ 12,314 | | |
| *General Unsecured Claims* | | | | | | | |
| (-) General Unsecured Claims (Excl. Insiders) | 16 | 5,000 | 5,500 | 5,000 | 5,500 | 100.0% | 100.0% |
| (-) Insider Claim (Klee Irwin) | 17 | 1,036 | 1,036 | 1,036 | 1,036 | 100.0% | 100.0% |
| (-) Pending Litigation | 18 | - | - | - | - | – | – |
| **Distributable Value -- Shareholders / Equity** | | | | $ 7,872 | $ 5,778 | | |

**Exhibit B_001**

Irwin Naturals
**Global Notes to Chapter 7 Liquidation Analysis**

**I. Dependence on Assumptions:**

The liquidation analysis depends on several estimates and assumptions. Although developed and considered reasonable by the management and the advisors of the Debtors, the assumptions are inherently subject to significant economic, business, regulatory, and other uncertainties and contingencies beyond the Debtors' control or their management. Additionally, while the Debtors have made a reasonable effort to ensure that the liquidation analysis is accurate and complete based on information known to them at the time of preparation after reasonable inquiries, inadvertent errors or omissions may exist and/or of information may result in material changes in financial and other data contained in the analysis. The liquidation analysis is also based on the Debtors' best judgment of how numerous decisions in the liquidation process would be resolved. Accordingly, there can be no assurance that the values reflected in the liquidation analysis would be realized if the Debtors were, in fact, to undergo such liquidation, and actual results could vary materially and adversely from those contained herein. This liquidation analysis is also dependent on the assumption that the estates are liquidated under a substantive consolidation of the Debtors and that the intercompany claims between the Debtors are eliminated as such. No marshalling of recoveries have been negotiated to-date with creditors beyond any existing agreements; However, The remaining assets, liabilities, and employees are almost entirely housed within the Irwin Naturals Nevada entity. Based upon the above, the Debtors' believe this methodology produces the most logical illustration of recoverable value by classes in a chapter 7 liquidation.

Further, on August 8th, 2025, the Debtors closed on a sale for substantially all of its assets in exchange for a cash consideration and retention of its cash on hand, which exceeded $4 million. Immediately following the closing of the sale, the Debtors paid its prepetition secured lender approximately $23.2 million on account of their asserted secured claim, which included certain accrued fees and interest. The Debtors reserve all rights with respect to challenging the amounts asserted by the secured lender that were paid out.

**II. Assumed Date of Conversion:**

The hypothetical conversion of these estates to a chapter 7 proceeding is assumed to occur near or around the date of a contested confirmation hearing of the proposed plan of reorganization. For illustrative purposes, this analysis assumes that date occurs at the end of December 2025 during the week ending January 4, 2026 (the "Conversion Date") of the cash collateral budget filed on August 22, 2025, and detailed in ECF 774 (the "Cash Collateral Budget").

Except as otherwise noted, all liabilities, cash, receivables, and all other accounts in the liquidation analysis are set forth based on the most recent available financial information or estimates based upon the most recent financial information. Unless otherwise noted, all values are stated in United States currency.  As additional information becomes available and further research is conducted, the Debtors may modify the constitution, values, and descriptions of these accounts accordingly.

**III. Dependence on a Forecasted Financial Position:**

This Liquidation Analysis contains numerous estimates regarding the Debtors' financial performance between now and the conversion date, which is still under review and subject to material change as the Debtors continue to administer their chapter 11 cases. For purposes of this analysis, forward looking estimates of the Debtors' financial position are reliant on the most recently filed Cash Collateral Budget.

**IV. Chapter 7 Liquidation Process:**

The liquidation and wind-down of the Debtors' estate is assumed to be completed over a period of 4-6 months from the Conversion Date, where the Debtors would liquidate any remaining assets, begin pursuing any litigation assets, and undergo wind down efforts across the remaining entities. Delays or prolonging of the liquidation process may result in additional wind down costs beyond what is reflected herein. The loss of the Debtors' remaining employees, advisors, and systems in a Chapter 7 liquidation would likely result in significant destruction of value as it relates to the recovery of the remaining assets which would be highly dependent on the cooperation and knowledge of management. Additionally, a Chapter 7 liquidation may create additional risk of unforeseen liabilities that could incrementally diminish recoverable value for shareholders.

**V. Claims Estimates:**

In preparing this Liquidation Analysis, the Debtors have estimated an amount of claims to be allowed by the court for each indicated type of claim where possible (the "Allowed Claims"). Allowed Claims were estimated to include certain Chapter 7 administrative obligations incurred after the Conversion Date. The Debtors also estimated accrued and outstanding claims from the Chapter 11 administration up until the point of conversion under the Cash Collateral Budget. Several of the estimates of Allowed Claims in this liquidation analysis are illustrative placeholders determined relative to the scheduled claims, filed claims, and the ongoing books and records of the Debtors; however, there is no certainty that additional claims will not arise from third parties, insiders, or parties unknown to the Debtors at this time. No order or finding has been entered or made by the bankruptcy court estimating or otherwise fixing the amount of claims at the projected Conversion Date set forth in this liquidation analysis. The estimated Allowed Claims set forth in this liquidation analysis should not be relied upon for any other purpose, including, without limitation, any determination of the value of any distribution to be made on account of Allowed Claims under the Debtors' proposed plan of reorganization. The actual amounts of allowed claims could be materially different from the amount of claims estimated in this liquidation analysis.

**Exhibit B_002**

Irwin Naturals

**Global Notes to Chapter 7 Liquidation Analysis**

*Footnotes To Liquidation Analysis Exhibit*

### 1. Cash on Hand

For purposes of this analysis, the Debtors expect to receive additional cash amounts and make disbursements in accordance with the filed Cash Collateral Budget until the Conversion Date. The cash balance herein represents the Debtors' estimated cash on hand around the time of the hypothetical Conversion Date. As of September 4th, 2025, the Debtors had at least $23 million of cash across its various bank accounts, which is in line with the filed forecast.

### 2. Insider Notes Receivable

Reflects notes payable by insiders to the Debtors as detailed in the schedules of assets and liabilities and statement of financial affairs. The Debtors' retention of this asset is dependent on the execution of a non-disparagement agreement between the Debtors and the buyer of the Debtors' assets, which has not been signed to date. If the non-disparagement agreement is not executed, the Buyer would retain this asset and it would be excluded from the Debtors' sources of recoveries. The collectability of these receivables are highly at risk if proceeds to the shareholders are insufficient to meet the insider's own obligations which may be senior to these claims.

### 3. Other Remnant Assets

Illustrative placeholder to account for the monetization of any remnant assets such as insurance deposits or uncollected tax refunds that are not already contemplated in the Cash Collateral Budget before the week ending January 4, 2026.

### 4. Other Litigation Assets

Placeholder for potential causes of action against third parties.

### 5. Ch. 7 Trustee Fees

Chapter 7 Trustee compensation calculated as 3% of the total estimated proceeds available for distribution.

### 6. Ch. 7 Trustee Professional Fees

Sensitized estimate of Chapter 7 Trustee professional fees including services related to legal, financial advisory, specialized accountants, claims agents, noticing, claims reconciliation and objections, and litigation. It is likely that overlapping or redundant professional costs would arise if the existing Chapter 11 professionals must be replaced by the trustee's own professionals.

### 7. Wind-Down Expenses (Professionals)

Illustrative costs associated with the wind down efforts of the estates in a chapter 7 that require outside professionals such as tax-related services for the 2025 tax year, the legal dissolution and closure of the Debtor entities, legal counsel needed to engage with the Canadian Securities Administrators, or other regulatory bodies such as the FDA. Additional professional services may be required beyond those listed herein. The Debtors' proposed plan of reorganization would not require the estate to bear the cost of many of these measures as it would continue as a going-concern upon emergence.

### 8. Wind-Down Expenses (Company)

Illustrative estimates for expenses necessary to wind-down the Debtors' Estates.  Estimates include expenses for limited or key personnel, maintenance or transferring the books and records, independent contractors, onboarding Chapter 7 Trustee professionals, and any costs associated with the Debtors TSA with the Buyer ($100 /hr. for use of former employees that were transferred to the Buyer as part of the sale). These amounts would likely include costs that are redundant to the Debtors' proposed plan of reorganization as a trustee would be more reliant on utilization of former employees if the Debtors' professionals were replaced.

### 9. Secured Claims

Immediately following the sale closing, the Debtors paid East West Bank approximately $23.2 million on account of the amounts asserted by East West Bank for their prepetition secured claim. Further, the Debtors have paid East West Bank approximately $1.5 million in post petition interest and $900 thousand in post petition principal payments under the various cash collateral orders. The amount herein represents an illustrative estimate of the remaining asserted secured claim of East West Bank at Conversion Date and is comprised of fees and interest accrued in the months of August and July prior to the sale closing, but that were not included in the payments made to date. The Debtors have repeatedly requested a detailed accounting of East West Bank's asserted claims, which have not been provided as of September 4th, 2025. The Debtors reserve all rights with respect to the validity of these claims.

**Exhibit B_003**

**Irwin Naturals**
**Global Notes to Chapter 7 Liquidation Analysis**

### 10. Professionals Fees Outstanding

Estimated accrued and unpaid Chapter 11 professional fees at the Conversion Date under the most recently filed Cash Collateral Budget. This professional fee estimate includes the $3 million minimum transaction fee for STS Capital related to the sale of the Debtors' assets. The Debtors expect to continue accruing and paying professional fees as permitted under the Cash Collateral Budget in the coming months. The balance included in the "High" case sensitizes the balance projected in the Cash Collateral Budget downward by $500 thousand for illustrative purposes. The Debtors' reserve all rights with respect to the allowance of these claims.

### 11. Post-Petition Taxes Payable

Sensitized amount ($100 thousand to $200 thousand) representing estimates of taxes being accrued due to the generation of profits after the Petition Date, which are expected to be at least partially offset by the Debtors' tax assets associated with historical operating losses, if not completely offset from other tax assets.

### 12. 503(b)(9) Claims

Placeholder for filed 503(b)(9) claims of prepetition unsecured creditors. The Debtors reserve all rights with respect to validating these claims.

### 13. Estimated UST Fees Outstanding

Sensitized amount representing estimates of accrued but unpaid fees from the United States Trustee at the time of the Conversion Date.

### 14. Administrative Trade Claims

An illustrative and sensitized estimate of chapter 11 administrative trade claims outstanding around the Conversion Date that are attributable to ordinary course services such as contractors, accounting systems, or other misc. ongoing costs contemplated in the Cash Collateral Budget. The purchaser of the Debtors' assets assumed substantively all of its non- bankruptcy related post petition liabilities as part of the sale, therefore, any accrued but unpaid balance by the Conversion Date is expected to be below or within the range contemplated herein.

### 15. Priority Claims

Represents priority unsecured claims primarily derived from employee wage related claims and taxing authorities. Preliminary analysis of the filed and scheduled priority unsecured claims estimated that Allowed Claims will likely range between $100 and $200 thousand. There have been a material number of priority tax claims filed against the Debtors in these cases that are expected to be disallowed or withdrawn as the Debtors work with the taxing authorities to remove these claims, file amended returns, or file returns to resolve estimated liabilities asserted by taxing authorities. The Debtors likely possess significant tax assets that will otherwise offset these amounts.

### 16. General Unsecured Claims (Excl. Insiders)

Illustrative estimate of all general unsecured claims as of the petition date (including the Debtors' prepetition landlord, trade creditors, and prepetition professionals). The Debtors reserve their right to object to any of the claims included in the estimates herein and the inclusion of any claim amounts in this analysis do not reflect an admission of the validity of any claim. Since the filing of this disclosure statement, the Debtors have conducted preliminary claims reconciliation efforts that suggest allowed general unsecured claims (excluding insiders and affiliates) will likely be between $5 million and $5.5 million. The Debtors' proposed plan of reorganization contemplates granting post petition interest to the prepetition unsecured creditors, which is not included herein. Further, insider claims from shareholders are not included in this amount and detailed below separately.

### 17. Insider Claim (Klee Irwin)

The claim of insider Klee Irwin, which is assumed to be allowed in a Chapter 7 liquidation.

### 18. Pending Litigation

No amounts were filed by these parties and this analysis assumes there will be no Allowed Claims related to.

**Exhibit B_004**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367**.

A true and correct copy of the document(s) entitled**: JOINT DISCLOSURE STATEMENT DESCRIBING DEBTORS' AND COMMITTEE'S JOINT CHAPTER 11 PLAN OF REORGANIZATION**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the document(s) were served by the court via NEF and hyperlink to the document. On **September 10, 2025,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **September 10, 2025,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.
*The Honorable Victoria Kaufman

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **_____,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.
Served via email on EWB's counsel, committee counsel and UST counsel:

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 10, 2025 | JESSICA STUDLEY | /s/ Jessica Studley |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                           **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Kyra E Andrassy    kandrassy@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- Jessica L Bagdanov    jbagdanov@bg.law, ecf@bg.law
- Ryan W Beall    rbeall@go2.law,
  kadele@go2.law;dfitzgerald@go2.law;rbeall@ecf.courtdrive.com;cmeeker@go2.law
- Anthony Bisconti    tbisconti@bklwlaw.com, 1193516420@filings.docketbird.com,docket@bklwlaw.com
- Matthew Bouslog    mbouslog@allenmatkins.com, ncampos@allenmatkins.com
- Katherine Bunker    kate.bunker@usdoj.gov
- Robert Allen Curtis    rcurtis@foleybezek.com
- Erin R. Fay    efay@wsgr.com, lmcgee@wsgr.com
- Jeffrey I Golden    jgolden@go2.law,
  kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b1179
  54@notify.bestcase.com
- Alphamorlai Lamine Kebeh    MKebeh@allenmatkins.com, mdiaz@allenmatkins.com
- Alexandria Lattner    alattner@sheppardmullin.com, ehwalters@sheppardmullin.com
- Matthew A Macdonald    matthew.macdonald@wsgr.com
- Sina Maghsoudi    sinalegal@gmail.com,
  g8645@notify.cincompass.com;maghsoudi.sinab128731@notify.bestcase.com
- David W. Meadows    david@davidwmeadowslaw.com
- Douglas A Plazak    dplazak@rhlaw.com
- David M Poitras    dpoitras@bg.law
- Terrel Ross    tross@trcmllc.com
- Susan K Seflin    sseflin@bg.law
- Jonathan Seligmann Shenson    jshenson@greenbergglusker.com,
  calendar@greenbergglusker.com;cmillerwatkins@greenbergglusker.com
- Yuriko M Shikai    yshikai@neufeldmarks.com
- Ashley M Teesdale    ateesdale@bg.law, ecf@bg.law
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Ronghua Sophia Wang    sophia.wang@afslaw.com, yvonne.li@afslaw.com
- Pamela Kohlman Webster    pwebster@buchalter.com, smartin@buchalter.com
- Jessica Wellington    jwellington@bg.law, ecf@bg.law

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                    **F 9013-3.1.PROOF.SERVICE**