DAVID M. POITRAS – Bar No. 141309
SUSAN K. SEFLIN - Bar No. 213865
JESSICA S. WELLINGTON - Bar No. 324477
**BG LAW LLP**
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:  (818) 827-9099
Email:    dpoitras@bg.law
         sseflin@bg.law
         jwellington@bg.law

CYNTHIA M. COHEN – Bar No. 93639
**BROWN WHITE & OSBORN LLP**
333 South Hope Street, 40th Floor
Los Angeles, CA 90071
Telephone:  (213) 613-0500
Facsimile:  (213) 613-0550
Email: ccohen@brownwhitelaw.com

Attorneys for Chapter 11 Debtors and
Co-Plan Proponents

JEFFREY I. GOLDEN – Bar No. 133040
RYAN W. BEALL - Bar No. 313774
**GOLDEN GOODRICH LLP**
3070 Bristol Street, Suite 640
Costa Mesa, CA 92626
Telephone:  (714) 966-1000
Facsimile:  (714) 966-1002
Email:    jgolden@go2.law
         rbeall@go2.law

Attorneys for Official Committee of Unsecured
Creditors of IN Holdings, Inc. and IN Holdings
Canada, Inc. and Co-Plan Proponents

FILED & ENTERED

DEC 03 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Cetulio    DEPUTY CLERK

CHANGES MADE BY COURT

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>IN Holdings, Inc. *et al.*,<br><br>                  Debtors and Debtors<br>                  in Possession.<br><br>☐   Affects IN Holdings, Inc.<br><br>☐   Affects IN Holdings Canada, Inc.<br><br>☐   Affects 5310 Holdings, LLC<br><br>☐   Affects DAI US HoldCo Inc.<br><br>☒   Affects All Debtors | Case No. 1:24-bk-11323-VK<br>Chapter 11<br>(Jointly Administered with: Case No. 1:24-bk-11324-VK. Case No. 1:24-bk-11325, and Case No. 1:24-bk-11326-VK)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE DEBTORS' AND COMMITTEE'S JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED OCTOBER 1, 2025**<br><br><u>Confirmation Hearing:</u><br>Date:     November 20, 2025<br>Time:    10:00 a.m.<br>Place:   Courtroom 301 |

On November 20, 2025 at 10:00 a.m. (the "Confirmation Hearing"), a hearing was held before the Honorable Victoria S. Kaufman, United Sates Bankruptcy Judge for the Central District of California, for the Court to consider confirmation of the *Debtors' and Committee's Joint Chapter 11 Plan of Reorganization Dated October 1, 2025* [Doc. No. 837] (as may be amended or modified, including as set forth in this Order, the "Plan") filed by IN Holdings, Inc. ("IN Nevada") and its related debtor entities (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee" and collectively, with the Debtors, the "Plan Proponents") appointed in the bankruptcy cases of IN Nevada and IN Holdings Canada, Inc. ("IN Canada"). Appearances are as noted on the record at the Confirmation Hearing.

The Court having reviewed and considered (a) the Plan (and all pleadings and documents filed in support thereof including the *Debtors' and Committee's (A) Confirmation Brief in Support of Joint Chapter 11 Plan of Reorganization and (B) Reply to East West Bank's Objection to Confirmation* [Doc. No. 882] (the "Confirmation Brief" or "Reply") and the declarations of Bradley Sharp [Doc. No. 885], Klee Irwin [Doc. No. 884], Jay Kaufman [Doc. No. 887] and Jeriad Paul [Doc. No. 883] (the "Paul Decl.") in support of Plan confirmation, and all exhibits either submitted in connection therewith or of which the Court has taken judicial notice as appropriate under the Federal Rules of Evidence 201(b) and (c)); (b) the *Agent's Objection to Debtors' and Committee's Joint Chapter 11 Plan of Reorganization Dated October 1, 2025* [Doc. No. 873] (the "EWB Objection") filed by East West Bank, a California state banking corporation, in its capacity as administrative agent (the "Agent") on behalf of East West Bank and CFG Bank, as the lenders (the "Lenders" and together with the Agent, the "Secured Parties") under the prepetition senior secured credit agreement between, among others, the Debtors, the Lenders, and the Agent (the "Credit Agreement") and the *Declaration of Brian Summers in Support of Objection to Debtors' and Committee's Joint Chapter 11 Plan of Reorganization Dated October 1, 2025* attached thereto as Exhibit 1; (c) the replies to the EWB Objection filed by the Plan Proponents [Doc. No. 882] and the Committee [Doc. No. 886]; (d) the *Order: (I) Approving the Joint Disclosure Statement Describing Debtors' and Committee's Joint Chapter 11 Plan of Reorganization; (II) Approving the Form of Ballots and Proposed Solicitation Procedures; (III) Fixing the Voting Deadline with*

*Respect to the Joint Chapter 11 Plan; (IV) Fixing the Last Date for Filing Objections to the Joint Chapter 11 Plan; and (V) Scheduling a Hearing to Consider Confirmation of the Joint Chapter 11 Plan* [Doc. No. 840] (the "Disclosure Statement Order"); (e) the *Notice of Hearing on Approval of Plan Confirmation and Summary of Debtors' and Committee's Joint Chapter 11 Plan of Reorganization* [Doc. No. 841] (the "Confirmation Notice"); (f) the ballot summary attached to the Paul Decl. [Doc. No. 883] (the "Ballot Summary") and the ballots [Doc. No. 891] (the "Ballots"); (g) the *Affidavit of Service* [Doc. No. 872] (the "Affidavit of Service") regarding service of (i) the Plan, (ii) the *Joint Disclosure Statement Describing Debtors' and Committee's Joint Chapter 11 Plan of Reorganization; (II) Approving the Form of Ballots and Proposed Solicitation Procedures; (III) Fixing the Voting Deadline with Respect to the Joint Chapter 11 Plan; (IV) Fixing the Last Date for Filing Objections to the Joint Chapter 11 Plan; and (V) Scheduling a Hearing to Consider Confirmation of the Joint Chapter 11 Plan* [Doc. No. 838] (as may be amended or modified, the "Disclosure Statement"), (iii) the Confirmation Notice, and (iv) the Ballots; and (h) other pleadings on file as set forth on the record; the Court having considered the representations and arguments of counsel made at the Confirmation Hearing including the agreement set forth on record between the Plan Proponents and the Agent; and the Court having determined based upon all of the foregoing that the Plan should be confirmed, as reflected by the Court's rulings made herein and on the record at the Confirmation Hearing; and upon the Court having found that due and proper notice has been given with respect to the Confirmation Hearing and the deadlines and procedures for filing objections to the Plan and votes to accept or reject the Plan; and such notice being sufficient under the circumstances and no further or other notice being required; and after due deliberation and sufficient cause appearing therefor, the Court hereby:

**FINDS, DETERMINES AND CONCLUDES THAT:[1]**

---

[1] The findings and conclusions set forth herein and/or in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rule 7052 and 9014 of the Bankruptcy Rules.  To the extent any of the findings of fact recited herein constitute conclusions of law, they are adopted as such.  To the extent any of the conclusions of law recited herein constitute findings of fact, they are adopted as such.

**Commencement of Chapter 11 Cases**

A.    <u>Commencement Date.</u>  The Debtors commenced their respective bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code on August 9, 2024. The Debtors' cases are jointly administered pursuant to Court order entered on August 14, 2024 [Doc. No. 11] in IN Nevada's bankruptcy case, Case No. 1:24-bk-11323-VK. The Debtors operate their business and manage their financial affairs as debtors in possession pursuant to Sections[2] 1107(a) and 1108.  No trustee or examiner has been appointed in these cases.

B.    <u>Committee.</u>  The Official Committee of Unsecured Creditors (the "<u>Committee</u>") was appointed by the United States Trustee ("<u>US Trustee</u>") on August 31, 2024 [Doc. No. 69] in the bankruptcy cases of IN Nevada and IN Canada, pursuant to Section 1102.

**Jurisdiction and Venue**

C.    <u>Jurisdiction and Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)).</u>  The Court has jurisdiction over these cases pursuant to 28 U.S.C. § 1334.  Confirmation of the Plan is a core proceeding in which the Court may enter a final order in accordance with 28 U.S.C. § 157(b)(2)(A) and (b)(2)(L); *see also* LBR 9013-1(c)(4).  No creditor, party in interest, or entity has objected to the Court's ability or authority to enter a final order in this matter consistent with the requirements of Article III of the U.S. Constitution, whether by way of formal written objection or at the Confirmation Hearing. *See id.*  The Court, therefore, finds that all parties to these proceedings and the Confirmation Hearing have consented to the Court's entry of a final order in this matter.  In addition, the Court determines that it has the authority to enter a final order in this matter pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(L) without the need of any further action or review by the United States District Court for the Central District of California as a condition precedent to entry of a final order in this matter.  *See, e.g.,* 28 U.S.C. § 157(c).  The Debtors are eligible debtors under Section 109.

D.    <u>Venue.</u>  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] All references to a "<u>Section</u>" shall refer to the Bankruptcy Code. All references to a "<u>Bankruptcy Rule</u>" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to an "<u>LBR</u>" shall refer to the Local Bankruptcy Rules for the United States Bankruptcy Court Central District of California.

E.    Judicial Notice. This Court takes judicial notice of the dockets of these cases maintained by the Clerk of this Bankruptcy Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered and all evidence and arguments made, proffered or adduced at the hearings held before this Court during the pendency of these cases.

**Solicitation and Notice**

F.    Notice and Transmittal of Solicitation Materials.  (i) The Solicitation Package (including the Confirmation Notice, the Plan and Disclosure Statement and a ballot), (ii) the Confirmation Notice (which included a summary of the Plan and a link to the web address https://omniagentsolutions.com/Irwin-Ballots where the Plan and Disclosure Statement were publicly available at no cost in electronic format and where creditors and interest holders could submit their Ballots electronically), and (iii) where Ballots for voting on the Plan were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the LBR and with the procedures set forth in Paragraphs 9, 10, 11, 12, 13 and 14 of the Disclosure Statement Order.  The form of the Ballots was appropriate for the following classes which were entitled to vote on the Plan: Classes 2, 3, 4, 5, and 7 (collectively, the "Voting Classes").  The period during which the Plan Proponents solicited acceptances or rejections to the Plan was a reasonable period of time for holders of claims or interests in the Voting Classes to make an informed decision to accept or reject the Plan.  Other than the classes noted herein, the Plan Proponents were not required to solicit acceptances or rejections of the Plan with respect to the remaining classes for the reasons set forth in the Disclosure Statement.[3]  The transmittal and service of the Solicitation Package, Confirmation Notice, and the Ballots (the "Solicitation") complied with the solicitation procedures (the "Solicitation Procedures") set forth in Paragraphs 9, 10, 11, 12, 13 and 14 of the Disclosure Statement Order, was conducted in good faith, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the LBR, and any other applicable rules, laws and

_____

[3] The Court makes no findings as to the propriety of the treatment of the Class 1 Claim set forth in the Plan [Doc. No. 837] prior to the modifications described in this Order and set forth on the record at the Confirmation Hearing.

regulations.  The Plan Proponents and their successors, control persons, officers, directors and professionals are entitled to the protection of Section 1125(e).

G.    Voting.  As evidenced by the Ballot Summary, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the LBR.

**Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

H.    Burden of Proof.  The Plan Proponents, as the proponents of the Plan, have met their burden of proving the elements of Sections 1129(a) by a preponderance of the evidence.  The Plan complies with the applicable provisions of the Bankruptcy Code thereby satisfying Section 1129(a)(1).

I.    Bankruptcy Rule 3016(a).  The Plan is dated and identifies the Debtors and the Committee as the Plan Proponents, thereby satisfying Bankruptcy Rule 3016(a).

J.    The Plan Satisfies All of the Requirements of Section 1129(a), except for Section 1129(a)(8).  The Court has considered the analysis set forth in the Confirmation Brief and Ballot Summary and has undertaken an independent analysis of the Plan and the requirements of Section 1129 and has determined that Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the LBR, and all orders of this Court with respect to the Plan, and that the Plan meets each of the applicable requirements of Section 1129(a) as follows:

1.    Section 1129(a)(1).  The Plan satisfies each and every requirement of Sections 1122 and 1123.

2.    Section 1129(a)(2).  The Plan satisfies each and every requirement of Sections 1121, 1125 and 1127.

3.    Section 1129(a)(3). The Plan Proponents have proposed the Plan (including all documents necessary to effectuate the Plan) in good faith and not by means forbidden by law, thereby satisfying Section 1129(a)(3).  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of these cases and the formulation of the Plan.  The Plan Proponents' good faith is evident from the facts and record of these cases, the Disclosure Statement and the record of the

Confirmation Hearing and other proceedings held in these cases.  The Plan was proposed

with the legitimate purpose of maximizing the value of the Debtors' estates for the benefit of

their creditors and interest holders and to effectuate a successful reorganization of the

Debtors.  The Plan was the product of extensive negotiations conducted at arms' length

among representatives of the Debtors and representatives of the Committee. Further, the

Plan's classification, injunctions [as set forth in Section IV.B of the Plan], exculpations and

releases [as set forth in Section III.D.12 of the Plan] have been negotiated in good faith and

at arms' length, and are consistent with Sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129

and 1142.

4.    Section 1129(a)(4).  The Plan provides for the Court's review and approval of

all fees and expenses of the estates' professionals, for services or for costs and expenses in

connection with the cases, prior to payment by the Debtors and/or the Plan Distribution

Trustee unless the Court previously authorized the payment of fees and expenses in

connection with the employment of a professional.  Therefore, the Plan complies with

Section 1129(a)(4).

5.    Section 1129(a)(5).  The Plan and the Disclosure Statement disclose the

identity and affiliations of each known individual proposed to serve, after confirmation of the

Plan, as an officer or director of the Reorganized Debtors.  Specifically, the Plan discloses

that on the Effective Date, IN Canada will remain a British Columbia corporation and a

public company, and IN Canada's CEO will remain Klee Irwin, and the makeup of the

current board of directors shall remain intact. The Plan further discloses that IN Nevada will

remain a Nevada corporation and Klee Irwin will remain IN Nevada's CEO. The Plan also

discloses that Mr. Irwin shall continue as the CEO of DAI and that IN Nevada will continue

to be the managing member of 5310. Therefore, the Plan satisfies the requirements of Section

1129(a)(5).

6.    Section 1129(a)(6).  Section 1129(a)(6) is inapplicable to the Plan because the

Plan does not provide for any rate changes over which a governmental regulatory

commission has jurisdiction.

7.    Section 1129(a)(7).  The Plan satisfies Section 1129(a)(7).  As set forth in the Disclosure Statement and Confirmation Brief, Classes 2, 3, 4, 5, and 7 are impaired. As demonstrated by the Liquidation Analysis (Disclosure Statement, pp. 66-69 and Exhibit B), in a piecemeal chapter 7 liquidation, creditors would be paid in full, and the Plan also provides that all Allowed Claims will be paid in full. Based on the evidence presented in connection with Confirmation, the Court finds that each holder of an Allowed Claim or allowed interest has either voted to accept the Plan and/or will receive at least as much under the Plan as they would under a chapter 7 liquidation.  Accordingly, the Plan satisfies the "best interests of creditors" test of Section 1129(a)(7).

8.    Section 1129(a)(8).  The impaired Classes under the Plan consist of Classes 2 (Priority Wage Claims), 3 (Non-Insider General Unsecured Claims), 4 (Insider General Unsecured Claim of Klee Irwin), 5 (Insider General Unsecured Claim of Mark Green) and 7 (Equity Interests of IN Canada). As set forth in the Ballot Summary, the results of the voting are as follows:

Class 2 (Priority Wage Claims) – 2 yes votes out of a total of 2 votes.

Class 3 (Non-Insider General Unsecured Claims) – 14 total votes received but 1 vote rejected because no vote was indicated. Therefore, 13 yes votes out of 13 total votes for 100%.

Class 4 (Insider General Unsecured Claim of Klee Irwin) – Mr. Irwin voted to accept the Plan.

Class 5 (Insider General Unsecured Claim of Mark Green) – Mr. Green voted to reject the Plan.

Class 7 (Equity Interests of IN Canada) – a total of 10 Class 7 equity holders, representing 778,874 shares voted on the Plan. Of those, 9 voted to accept the Plan (757,541 shares), representing 97.26% of shares. Class 7 is deemed to have accepted the Plan.

As Class 5 is impaired and rejected the Plan, the Plan Proponents have not satisfied Section 1129(a)(8), thereby necessitating approval under Section 1129(b) for such Class.

9.      Section 1129(a)(9).  The treatment of Allowed Administrative Claims and Allowed Priority Tax Claims under the Plan satisfies the requirements of Section 1129(a)(9).

10.      Section 1129(a)(10).  Classes 2, 3, 4, and 7 are impaired by the Plan and have voted to accept the Plan.  Accordingly, the Plan satisfies Section 1129(a)(10) as at least one class of impaired claims has accepted the Plan.

11.      Section 1129(a)(11).  The evidence proffered in support of the Plan (a) is persuasive and credible, (b) has not been controverted by evidence, and (c) establishes that the Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan and their business in the ordinary course, and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further reorganization of the Debtors, thereby satisfying the feasibility requirement of Section 1129(a)(11).

12.      Section 1129(a)(12).  All fees arising pursuant to section 1930 of title 28 of the United States Code, which are due and payable through the Effective Date, shall be paid by or on behalf of the Debtors on or before the Effective Date.  The amounts due thereafter shall be paid by or on behalf of the Reorganized Debtors until the entry of final decrees closing the Debtors' cases.  Any deadline for filing claims in these cases shall not apply to fees payable by the Debtors pursuant to 28 U.S.C. § 1930.  Therefore, the Plan complies with the requirements of Section 1129(a)(12).

13.      Section 1129(a)(13).  Section 1129(a)(13) is not applicable to the Debtors as the Debtors do not have any retiree benefits.

14.      Section 1129(a)(14).  The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, Section 1129(a)(14) is inapplicable to the Debtors.

15.      Section 1129(a)(15).  The Debtors are not individuals.  Accordingly, Section 1129(a)(15) is inapplicable to the Debtors.

16.      Section 1129(a)(16).  The Debtors are a moneyed, business, or commercial entity and thus Section 1129(a)(16) is inapplicable to the Debtors.

K.      Section 1129(b).  The Plan fairly and equitably treats Class 5 because the Plan provides for the realization by the holder of the Class 5 claim of the indubitable equivalent of such claim in accordance with Section 1129(b)(2)(A)(iii).  The Plan fairly and equitably treats Class 7 Equity Interests because any holder of a junior interest will not receive or retain anything under the Plan, and no Holder of a Claim in Class 7 has objected, thereby satisfying Section 1129(b)(2)(C). Therefore, the Plan satisfies the requirements of Section 1129(b).

## Plan Implementation

L.      The terms of the Plan and all exhibits and schedules thereto and attached to the Disclosure Statement, and all other documents filed in connection with the Plan and/or executed or to be executed in connection with the transactions contemplated by the Plan, and all amendments and modifications thereof in accordance with their terms (the Plan and all of the documents noted above, collectively, the "Plan Documents") are incorporated herein by this reference, are proper in all respects, and constitute an integral part of this order (the "Confirmation Order.")

M.      The Plan and the Plan Documents have been negotiated in good faith and at arm's length and, on and after the Effective Date, shall bind any holder of a Claim or Interest and such holder's respective successors and assigns, whether or not the Claim or Interest is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.  The Plan, as amended by the Confirmation Order, constitutes legal, valid and binding obligations of the respective parties thereto and are enforceable in accordance with their terms.

N.      Pursuant to Section 1142(a), the Plan and Plan Documents will apply and be fully enforceable notwithstanding any otherwise applicable nonbankruptcy law.  The Debtors and the Reorganized Debtors, and all of their respective officers, directors, agents and professionals are entitled to (i) consummate the Plan and the agreements, settlements, transactions, transfers and documentation contemplated thereby and (ii) take any actions authorized and directed by this Confirmation Order.

O.      On and after the Effective Date of the Plan, Klee Irwin, who will remain the chief executive officer of IN Nevada, IN Canada and DAI and who will be the authorized representative

of the Reorganized Debtors, shall have full authority to act on behalf of the Reorganized Debtors including, but not limited to (i) take any action with respect to the Debtors' existing bank accounts at East West Bank and Citizens Bank (except for the bank accounts that will be under the Plan Distribution Trustee's control), (ii) take any action with respect to any governmental agency with respect to the Reorganized Debtors, and (iii) take such actions consistent with the Plan and Confirmation Order that are deemed necessary, appropriate or advisable in order to fully effectuate the terms and conditions of the Plan and Confirmation Order.

P.      On and after the Effective Date of the Plan, Bradley D. Sharp shall be the Plan Distribution Trustee with full control over the Plan Distribution Trust. Mr. Sharp shall have full authority to act on behalf of the Plan Distribution Trust including, but not limited to (i) take any action with respect to administering the Plan Distribution Trust and fulfilling his duties as Plan Distribution Trustee, (ii) take any action with respect to the Debtors' bank account at Citizens Bank ending in 4318, which shall be the reserve account (the "Initial Reserve Account") for payment of: (a) professional administrative claims, (b) administrative and priority tax claims excluding the claims of the IRS and FTB (which claims, if allowed, shall be paid by the Reorganized Debtors), (c) Class 2 claims, (d) Class 3 claims, (e) the Class 4 claim, and (f) the Class 5 claim, (iii) create a new reserve account (the "Class 1 Reserve Account") for the Secured Parties' Class 1 claim (the "Class 1 Claim") and take any action with respect thereto, and (iv) take such other actions as he deems necessary, appropriate or advisable in order to fully effectuate the terms and conditions of the Plan and Confirmation Order with respect to the Plan Distribution Trust.

**Executory Contracts and Unexpired Leases**

Q.      The Debtors have exercised their sound business judgment in determining whether to assume or reject each of their executory contracts pursuant to Section III.E.1 of the Plan.  No party to an executory contract or unexpired lease to be rejected by the Debtors pursuant to the Plan has objected to the rejection thereof.  Each rejection of an executory contract or unexpired lease as provided in Section III.E.2 of the Plan shall be legal, valid and binding upon the Reorganized Debtors and all non-debtor counterparties to such executory contracts and unexpired leases, all to the same extent as if such rejection has been effectuated pursuant to an appropriate order of the Court

before the Confirmation Date under Section 365.  For the avoidance of doubt, the Credit Agreement

and all related documents shall not be deemed "executory contracts" and the Secured Parties shall

not be required to file a claim for rejection damages.

**Exculpations, Discharge, Releases, and Injunctions**

R.    The exculpations, discharge, releases, and injunctions contained within the Plan,

including Sections III.D.12 and Sections IV.A and IV.B of the Plan, comply with the Bankruptcy

Code and the Bankruptcy Rules, and no provision in the Plan constitutes a nonconsensual, non-

debtor, third party release.

S.    Pursuant to Sections 105(a), 1123(b)(3), 1129, and 1141 and Bankruptcy Rule 3016,

the exculpations, discharges, releases, and injunctions set forth in the Plan are an integral part of the

Plan, are fair, equitable, reasonable, and in the best interest of the Debtors, their Estates, and the

Holders of Claims and Equity Interests.

**Preservation and Transfer of Causes of Action**

T.    It is in the best interests of the Debtors and their estates that the Causes of Action that

are not expressly released under the Plan be transferred and retained by the Reorganized Debtors as

specified in the Plan.  The Causes of Action have been properly reserved and retained and, upon

entry of this Confirmation Order, shall be vested in the Reorganized Debtors.

**Plan Distribution Trust and Plan Distribution Trustee**

U.    Upon the Effective Date, the Plan Distribution Trust shall be established and become

effective. The sole purpose of the Plan Distribution Trust is to hold the Trust Assets (defined in

Footnote 3 below) and to make the distributions required of it by the Plan and this Confirmation

Order.

V.    The initial term of the Plan Distribution Trust shall be two (2) years (the "Initial

Term") provided that the term of the Plan Distribution Trust may be automatically extended for an

additional two-year term by the filing of a notice by the Plan Distribution Trustee. The Plan

Distribution Trust may be terminated earlier if the Plan Distribution Trustee has completed all

payments required under the Plan and has fully administered the Plan Distribution Trust, the Initial

Reserve Account and the Class 1 Reserve Account.  Upon the termination of the Plan Distribution

Trust, the Plan Distribution Trustee shall be discharged and exonerated and any assets remaining in the Plan Distribution Trust shall revest in the Reorganized Debtors.  For the avoidance of doubt, no funds in the Class 1 Reserve Account shall vest in the Reorganized Debtors absent further order of this Court.

W.      The appointment of the Plan Distribution Trustee, Bradley D. Sharp of Development Specialists, Inc. ("DSI"), shall be effective as of the Effective Date. The Plan Distribution Trustee may resign upon sixty (60) days' advance written notice to the Reorganized Debtors and the Agent so long as a replacement trustee reasonably acceptable to the Agent (so long as the Class 1 Reserve Account has not been fully administered) has been appointed. The Plan Distribution Trustee may be removed by order of the Court for "cause." The Plan Distribution Trustee shall bill his and DSI's time on an hourly basis and estimate that fees will be approximately $75,000.

X.      The Plan Distribution Trustee shall act as a fiduciary and shall not be personally liable in connection with the affairs of the Plan Distribution Trust or to any person except for such of the Plan Distribution Trustee's acts or omissions that constitute fraud, willful misconduct, or gross negligence, as determined by a court of competent jurisdiction. In addition, the Plan Distribution Trustee shall be indemnified by the Plan Distribution Trust against and held harmless by the Plan Distribution Trust from any losses, claims, damages, liabilities, or expenses (including without limitation, attorneys' fees, disbursements, and related expenses) to which the Plan Distribution Trustee may become subject in connection with any action, suit proceeding, or investigation brought or threatened against the Plan Distribution Trustee in connection with any matter arising out of or related to the Plan Distribution Trust (other than in respect of acts or omissions that constitute fraud, willful misconduct, or gross negligence, as determined by a court of competent jurisdiction).

Y.      The Plan Distribution Trustee shall be entitled to obtain customary fiduciary and/or errors and omissions liability insurance at the expense of the Plan Distribution Trust and engage independent legal counsel and financial advisors to assist with its evaluation of any matters with respect to the Plan Distribution Trust at the expense of the Plan Distribution Trust; provided that no expenses of the Plan Distribution Trust may be paid from the Class 1 Reserve Account absent the Agent's consent or order of the Court.

Z.      Unless the Plan Distribution Trustee resigns, dies or is removed by Court order earlier, the Plan Distribution Trustee's term shall expire upon termination of the Plan Distribution Trust pursuant to the Plan. In the event the Plan Distribution Trustee resigns, dies or is removed by Court order prior to termination of the Plan Distribution Trust, the Reorganized Debtors shall appoint a successor trustee reasonably acceptable to the Agent so long as the Class 1 Reserve Account has not been fully administered.  Upon the termination of the Plan Distribution Trust, the Plan Distribution Trustee may destroy or otherwise dispose of the books and records of the Plan Distribution Trust.

AA.     The Plan Distribution Trustee will make the Distributions to the Holders of Allowed Claims in accordance with the terms of the Plan and this Confirmation Order. Persons dealing with the Plan Distribution Trustee, or seeking to assert Claims against the Debtors, the Reorganized Debtors, the Estates, or the Plan Distribution Trust, shall look only to property of the Plan Distribution Trust to satisfy any liability to such Persons, and the Plan Distribution Trustee shall have no personal or individual obligation to satisfy any such liability; provided, however, that to the extent the Secured Parties' allowed Class 1 Claim exceeds the amount in the Class 1 Reserve, the Secured Parties shall be entitled to look to the Reorganized Debtors for recovery.

BB.     All other sections of the Plan regarding the Plan Distribution Trust and the Plan Distribution Trustee (Section III.D.3 of the Plan) are incorporated herein and are effective as of the Effective Date.

**Vesting of Assets**

CC.     Upon the Effective Date, the Trust Assets[4] consisting of (i) $14.5 million for the Initial Reserve Account and (ii) $5,711,544.96 for the Class 1 Reserve Account are vested in the Plan Distribution Trust. The $14.5 million for the Initial Reserve Account is free and clear of all liens, claims, encumbrances and interests except as otherwise expressly set forth in the Plan and no other creditor or party may seek recovery from the Initial Reserve Account other than the creditors designated to be paid from the Initial Reserve Account. Once all Allowed Claims designated to be

---

[4] The definition of "Trust Assets" under the Plan is now expanded to include $20,211,544.96 in Cash (and not the $13.5 million referenced in the Plan).

paid from the Initial Reserve Account have been paid, any surplus funds shall revest in the Reorganized Debtors free and clear of all liens, claims, encumbrances and interests except as otherwise expressly set forth in the Plan. The $5,711,544.96 for the Class 1 Reserve Account is free and clear of all liens, claims, encumbrances and interests except that the Agent shall have a first priority lien against the $5,711,544.96 to the same extent and with the same validity as its existing liens, if any. Upon the full and final resolution and payment in full of any allowed Class 1 Claim, any excess funds in the Class 1 Reserve Account shall vest in the Reorganized Debtors free and clear of all liens, claims, encumbrances and interests except as otherwise expressly set forth in the Plan.

DD.    Upon the Effective Date, all assets whatsoever of the Debtors and/or their Estates other than the Trust Assets shall vest in the Reorganized Debtors free and clear of all claims, liens, encumbrances and interests except as otherwise expressly set forth in the Plan or this Confirmation Order.

### Resolution of Agent's Objection to Plan Confirmation

EE.    As stated on the record at the Confirmation Hearing, the EWB Objection has been consensually resolved through the terms of this Confirmation Order, which terms modify the Plan.

### Bar Dates

FF.    There has been sufficient notice of the procedures and deadlines for asserting rejection bar dates set forth in Section III.E.1 of the Plan and in the Confirmation Notice, and no further or other notice is necessary. In accordance with the Plan, the Debtors or the Reorganized Debtors shall serve an administrative claim bar date notice setting forth the bar date for filing Administrative Claims of 30 days after the Effective Date.

### Retention of Jurisdiction

GG.    To the extent permitted by applicable law, the Court may properly retain jurisdiction over the matters set forth in Section III.F of the Plan and Section 1142.

### The Plan Satisfies Confirmation Requirements

HH.    The failure specifically to include or reference any particular provision of the Plan in these Findings and Conclusions shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

II.      Based on the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with the confirmation of the Plan, and all evidence and arguments made, proffered, or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in Section 1129.

**ACCORDINGLY, BASED ON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      Confirmation.  The Plan and each of its provisions shall be, and hereby are, confirmed under Section 1129 except as modified by this Confirmation Order.  The terms and provisions of the Plan and all of the exhibits and schedules attached to the Disclosure Statement and any other documents filed in connection with the Plan and/or executed or to be executed in connection with the transactions contemplated by the Plan, including but not limited to the Plan Documents and all amendments and modifications thereof made in accordance with the Plan and this Confirmation Order, are incorporated by reference into, and are an integral part of, this Confirmation Order and are authorized and approved.

2.      Treatment of Class 1 Claims. The treatment of the Class 1 Claim set forth in this Confirmation Order replaces the Class 1 treatment set forth in the Plan in its entirety. The Reorganized Debtors shall fund, and the Plan Distribution Trustee shall have oversight and control of, the Class 1 Reserve Account in the amount of $5,711,544.96 (the "Class 1 Reserve"). The Class 1 Reserve is not a "cap" on the Secured Parties' Class 1 Claim and, to the extent that the allowed Class 1 Claim exceeds the amount available in the Class 1 Reserve Account, the Secured Parties may seek recovery of such amount from the Reorganized Debtors.  The Secured Parties' lien shall attach to the Class 1 Reserve to the same extent and with the same validity and priority as their existing lien(s), if any. No disbursements shall be made from the Class 1 Reserve Account absent further order of this Court. All of the Secured Parties' rights, if any, under the Credit Agreement and all related documents, shall be unaffected by the Plan and this Confirmation Order and the discharge and injunction provided under the Plan; *provided, however*, the Debtors' and the Reorganized Debtors' rights to object to any claims asserted by the Secured Parties are hereby preserved.

3.    Overruling of Objections.  All formal or informal objections or responses in opposition to or inconsistent with the Plan, to the extent not already withdrawn, waived or settled, and all reservations of rights included therein, shall be, and hereby are, overruled in their entirety.

4.    Plan Implementation Authorization; Effectuation of Transactions.  The provisions in Section III.D of the Plan governing the means for implementation of the Plan shall be, and hereby are, approved in their entirety.

a.    General Authorization.  The transactions described in the Plan and the Plan Documents are hereby approved.  On or before the Effective Date, and after the Effective Date, as necessary, and without any further notice to creditors or other parties in interest or further order of the Court or other authority, the Debtors, the Reorganized Debtors and the Plan Distribution Trustee and their officers, attorneys and financial advisors are authorized and empowered pursuant to Section 1142(b) and applicable state laws (i) to grant, issue, execute, deliver, file or record any agreement, document, or security relating to the Plan, the Plan Documents, or any other documents related thereto and (ii) to take any action necessary or appropriate to implement, effectuate, and consummate the Plan and the Plan Documents in accordance with their terms.  All such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Court without further approval, act or action under any applicable law, order, rule or regulation, including, without limitation, any action required by the Reorganized Debtors and/or the Plan Distribution Trustee including, among other things, (a) the incurrence of all obligations contemplated by the Plan and the making of all distributions under the Plan, (b) all transfers of funds to be made pursuant to the Plan, and (c) entering into any all transactions, contracts, leases, instruments, releases and other documents and arrangements contemplated by the Plan, the Plan Documents and/or otherwise permitted by applicable law, order, rule or regulation.  Pursuant to Section 1142, to the extent that, under applicable nonbankruptcy law any of the foregoing actions that would otherwise require approval of the board of directors, members or managers of the Debtors, such approval shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to applicable state law without any requirement of further action by

the board of directors, members or the managers of the Debtors.  Any or all documents

contemplated herein shall be accepted by each of the respective state filing offices and

recorded, if required, in accordance with applicable state law and shall become effective in

accordance with their terms and the provisions of state law.  All counterparties to any

documents described in this paragraph are hereby directed to execute such documents as may

be required or provided by such documents, without any further order of this Court.

b.    Release Liens.  Within 30 days of the Effective Date, the Agent shall file

releases of its liens, including, without limitation, all liens of record against the Debtors

and/or their property consistent with the terms of this Confirmation Order (the "Release

Procedures").  In the event that the Agent does not complete the Release Procedures, the

Reorganized Debtors shall be granted, pursuant to this Confirmation Order, power of

attorney for the limited purpose of implementing and consummating the Release Procedures.

For the avoidance of doubt, the Agent shall not be required to file any UCC financing

statements in connection with its liens on the funds held in the Class 1 Reserve Account,

which shall be deemed valid and perfected pursuant to this Confirmation Order to the same

extent as the Agent's existing liens, if any.

c.    Corporate Authorization. The Reorganized Debtors and/or the Plan

Distribution Trustee may take or cause to be taken all corporate actions necessary or

appropriate to implement all provisions of, and to consummate, the Plan Documents, and any

other documents contemplated to be executed therewith, prior to, on and after the Effective

Date, and all such actions taken or caused to be taken shall be deemed to have been

authorized and approved by this Court without further approval, act or action under any

applicable law, order, rule or regulation including, without limitation, any action required by

the board of directors, members or managers of the Debtors or the Reorganized Debtors.

d.    Payment of Trust Assets by the Reorganized Debtors. The Reorganized

Debtors shall fund the Initial Reserve Account with $14.5 million by no later than three (3)

business days after the Effective Date. The Reorganized Debtors shall fund the Class 1

Reserve Account with $5,711,544.96 by no later than three (3) business days after the

Effective Date. No distributions shall be made from the Class 1 Reserve Account absent further order of this Court.

        e.    <u>Liens.</u> On the Effective Date and to the same extent and with the same validity as its existing lien(s), if any, the Agent, for the benefit of the Secured Parties, shall have a first priority lien against the Class 1 Reserve Account.

        5.    <u>Binding Effect</u>.  This Order shall be effective upon entry and upon the Effective Date, the provisions of the Plan and this Confirmation Order shall bind any holder of a Claim or Interest and such holder's respective successors and assigns, whether or not such Claim or Interest of such holder is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan, and any and all non-debtor parties that are parties to executory contracts and unexpired leases in these cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of the foregoing.

        6.    <u>Provisions of Plan and Order Non-severable and Mutually Dependent.</u>  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent.  The fact that any particular provision(s) of the Plan or any related agreement(s) is/are not specifically referenced in this Confirmation Order, shall not diminish or impair the efficacy of such provision(s) or such related agreement(s); it is the intent of the Court that the Plan be confirmed and such related agreements be approved in their entirety.

        7.    <u>Notice.</u>  As evidenced by the Affidavit of Service, (i) proper, timely, adequate and sufficient notice of the Confirmation Hearing and the deadline for filing and serving objections to the Plan has been provided, (ii) such notice constitutes due and proper notice for purposes of Sections 102(1), 1127 and 1128 and Bankruptcy Rules 2002, 3016, 3017, 3018, 6006, 9006, and 9014; (iii) such notice was reasonable, sufficient and appropriate under the circumstances and is hereby approved, and (iv) no other or further notice of the Confirmation Hearing, the deadline for filing and serving objections to the Plan, or of the entry of this Confirmation Order is required.

        8.    <u>Plan Classification and Treatment</u>.  All Claims and Equity Interests shall be, and hereby are, classified and treated as set forth in the Plan and by this Confirmation Order to extent the

treatment of claims is modified by this Confirmation Order. The Plan's classification scheme shall be, and hereby is, approved. The treatment of all Claims and Interests as provided in the Plan and as modified by this Confirmation Order shall be, and hereby is, approved.

9.    Revesting of Assets (Sections 1141(b) & (c)).  Subject to the funding of the Initial Reserve Account and the Class 1 Reserve Account under the terms hereof, n the Effective Date, all property of the Estates shall revest in the Reorganized Debtors, including, but not limited to, any Causes of Action, free and clear of all claims, liens, encumbrances or other interests except as set forth herein or in the Plan. Subject to the funding of the Initial Reserve Account and the Class 1 Reserve Account under the terms hereof, from and after the Effective Date, the Reorganized Debtors may operate their business and may use, acquire, and dispose of property, including payment of all business expenses and professional fees and expenses, and compromise and settle any claims or causes of action without supervision or consent of the Bankruptcy Court, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or this Confirmation Order.

10.    Retention of Causes of Action / Reservation of Rights.  As set forth in Section III.D.4 and III.D.6 of the Plan, the Reorganized Debtors shall have, retain, reserve and be entitled to assert all claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtors had as of the Effective Date; and all of the Reorganized Debtors' legal and equitable rights respecting any such claims which are not specifically waived, extinguished, or relinquished by the Plan may be asserted after the Effective Date by the Reorganized Debtors.

11.    Retained Assets.  To the extent that the retention by the Reorganized Debtors of any assets held immediately prior to the Effective Date by the Debtors is deemed, in any instance, to constitute "transfers" of property, such transfers of property (a) are or shall be legal, valid and effective transfers of property, (b) vest the Reorganized Debtors with good title to such property, free and clear of all liens, charges, claims, encumbrances or interests (except as expressly provided in the Plan or this Confirmation Order), (c) do not and shall not constitute avoidable transfers under the Bankruptcy Code or under applicable nonbankruptcy law, and (d) do not and shall not subject the Debtors or the Reorganized Debtors to any liability by reason of such transfer under the Bankruptcy

20

Code or under applicable nonbankruptcy law, including by laws affecting successor or transferee liability.

12.    <u>Treatment of Executory Contracts and Unexpired Leases.</u>  The provisions regarding executory contracts and unexpired leases contained in Section III.E.1 of the Plan are hereby approved. Any of the Debtors' executory contracts and/or unexpired leases that are not assumed are deemed rejected.

13.    <u>Exemption of Transfer Taxes.</u>  In accordance with Section 1146(a), the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under § 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax.  Transfers under the Plan that are exempt from taxes under § 1146(c) of the Bankruptcy Code include all transfers by the Debtors after the commencement of their chapter 11 Cases in contemplation of the Plan but prior to the Effective Date, and all transfers to and by the Debtors and the Plan Distribution Trustee.  The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and other similar taxes.

14.    <u>Exemption from Certain Transfer Taxes.</u>  Pursuant to Bankruptcy Code Section 1146(a), any transfer from the Debtors or the Reorganized Debtors to any other person pursuant to the Plan, shall not be subject to any stamp tax or similar tax.

15.    <u>Payment of Statutory Fees.</u>  All fees payable pursuant to section 1930 of title 28 of the United States Code due and payable through the Effective Date shall be paid by or on behalf of the Debtors on or before the Effective Date, and amounts due thereafter shall be paid by or on behalf of the Reorganized Debtors in the ordinary course of business until the entry of a final decree closing the Debtors' cases, or the cases are converted or dismissed.  The quarterly fees are assessed fees that do not require allowance and any deadline for filing claims shall not apply to fees payable under 28 U.S.C. § 1930.

16.    <u>Government Approvals Not Required.</u>  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and the Plan Documents, and any amendments or modifications thereto, and any other acts referred to in or

contemplated by the Plan, the Disclosure Statement, the Plan Documents, and any amendments or modifications thereto.

17.    <u>Filing and Recording.</u>  This Confirmation Order is and shall be binding upon and shall govern all acts of all persons or entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.  Each and every federal, state, and local governmental agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including financing statements and termination statements under the Uniform Commercial Code) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law.

18.    <u>Discharge of Claims (Section 1141).</u>  Pursuant to Section IV.A of the Plan, and except as otherwise provided in this Confirmation Order regarding the Class 1 Claim or otherwise, the rights afforded in and the payments and distributions to be made under the Plan shall discharge the Reorganized Debtors from all existing debts and claims and terminate any and all interests of any kind, nature or description whatsoever against or in the Debtors or the Reorganized Debtors or any of their assets to the fullest extent permitted by Section 1141 of the Bankruptcy Code. Except as provided in the Plan and in this Confirmation Order, to the fullest extent permitted by Section 1141, upon the Effective Date, all existing claims against the Debtors or the Reorganized Debtors shall be, and shall be deemed to be, satisfied and terminated, the Reorganized Debtors shall be discharged, and all holders of such claims shall be precluded and enjoined from asserting against the Debtors, the Reorganized Debtors, their successors or assignees or any of their assets, any other or further claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

Except as provided otherwise in this Confirmation Order regarding the Class 1 Claim or otherwise, as of the consummation of the transactions required to occur on the Effective Date, Confirmation of the Plan discharges all debts or liabilities, whether contingent, unliquidated, disputed, known or unknown, that were incurred or arose before the Effective Date.  This includes all types of claims, interests and obligations arising out of and/or including, but not limited to, (i) all causes of action under state and Federal law, (ii) trade payables, (iii) lease claims, (iv) tax claims including interest, (v) environmental claims, (vi) employee related claims, (vii) tort claims, (viii) false advertising, consumer protection and other unfair competition claims, and (ix) any other known or unknown claim from any debt arising prior to Plan Confirmation.  For the avoidance of doubt, except as otherwise set forth herein regarding the Secured Parties and the Class 1 Claim, other than the timely filing of a Proof of Claim, any attempts to recover on a pre-Confirmation Claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest, including through self-help, shall be deemed a violation of the discharge injunction.

19.    <u>Discharge of Debtors and the Reorganized Debtors.</u>  Pursuant to Section IV.A of the Plan, except as otherwise expressly provided in the Plan or this Confirmation Order regarding the Class 1 Claim or otherwise, upon the Effective Date, in consideration of the distributions to be made under the Plan, each holder of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released and discharged the Debtors and the Reorganized Debtors, to the fullest extent permitted by Section 1141, of and from any and all Claims, interests, rights and liabilities that arose prior to the Effective Date.  Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to Section 524, from prosecuting or asserting any such discharged Claim or Interest against the Reorganized Debtors.  The Plan and this Confirmation Order shall bind the holders of all Claims and Interests whether or not they accepted the Plan.  The rights afforded in the Plan and the treatment of all Claims and Interests therein shall be in complete satisfaction, discharge and release of all Claims against and/or Interest in the Debtors or any of their assets of any nature whatsoever except as otherwise specifically provided in the Plan or this Confirmation Order. Except as otherwise set forth in the Plan and this Confirmation Order, all Claims and Interests shall be forever satisfied, discharged and released in full on the Effective Date, and all holders of Claims

and Interests shall be forever precluded and enjoined from asserting Claims against or Interests in

the Reorganized Debtors or the Debtors.  Any litigation pending pre-petition and/or initiated post-

petition against the Debtors in any court other than the Bankruptcy Court where relief from stay was

not obtained from the Bankruptcy Court shall be deemed discharged upon the Effective Date.

20.    Exceptions to Discharge.  Notwithstanding anything to the contrary herein, this

Confirmation Order does not discharge the Reorganized Debtors' obligations under the Plan or

under this Confirmation Order.

21.    Terms of Injunctions or Stays.  Except as otherwise provided herein regarding the

Secured Parties and the Class 1 Claim, this Confirmation Order enjoins the prosecution, whether

directly, derivatively or otherwise, of any Claim, obligation, suit, judgment, damage, demand, debt,

right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan and

this Confirmation Order.  Except as provided in the Plan or this Confirmation Order, as of the

Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or

liability that is discharged or an interest or other right of an equity holder that is impaired pursuant to

the terms of the Plan are permanently enjoined from taking any of the following actions against the

Debtors, the Debtors' Estates, the Reorganized Debtors, the Plan Distribution Trust or their property

on account of any such discharged Claims, debts or liabilities or terminated interests or rights: (i)

commencing or continuing, in any manner or in any place, any action or other proceeding; (ii)

enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order;

(iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a right of subrogation

of any kind against any debt, liability or obligation due to the Debtors; and (v) commencing or

continuing any action in any manner, in any place that does not comply with or is inconsistent with

the provisions of the Plan or this Confirmation Order.  Notwithstanding, no provision in the Plan

constitutes a nonconsensual, non-debtor, third party release. By accepting distribution pursuant to

the Plan, each holder of an Allowed Claim receiving a Distribution pursuant to the Plan will be

deemed to have specifically consented to the injunctions set forth in this Paragraph.

22.    Effective Date.  The provisions of Bankruptcy Rule 3020(e) are waived and the

Effective Date of the Plan shall be the second business day after this Confirmation Order is entered.

23.    <u>Notice of Occurrence of Effective Date</u>.  Within two business days of the Effective Date, the Reorganized Debtors shall file a Notice of Occurrence of the Effective Date with the Court identifying the Effective Date and indicating that it has occurred.

24.    <u>Disbursing Agent</u>. With respect to the claims to be paid by from the Plan Distribution Trust, including any claim of the Secured Parties to be paid from funds in the Class 1 Reserve Account, the Plan Distribution Trustee shall be the disbursing agent.  With respect to all other distributions under the Plan, the Reorganized Debtors shall be the disbursing agent.  The Reorganized Debtors and the Plan Distribution Trustee may employ other agents to assist in making distributions under the Plan.

25.    <u>Professional Fee Applications</u>.  Applications filed pursuant to Sections 330, 331, or 503(b)(4) for allowance of Administrative Claims relating to the compensation and reimbursement of expenses of Professionals employed pursuant to an order of the Court under Sections 327 or 1103 for services performed and expenses incurred prior to the Effective Date must be filed on or before the date that is thirty (30) days after the Effective Date.  The Reorganized Debtors and the Plan Distribution Trustee, as applicable, are authorized to retain professionals and pay compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Court approval.

26.    <u>Administrative Expenses</u>.  Administrative Expenses incurred by the Reorganized Debtors and/or the Plan Distribution Trustee following the date of the entry of this Confirmation Order shall not be subject to application and may be paid by the Reorganized Debtors and/or the Plan Distribution Trustee in the ordinary course.

27.    <u>Modifications of the Plan</u>.  The Reorganized Debtors may seek to modify the Plan at any time after Confirmation of the Plan so long as (1) the Plan has not been substantially consummated, and (2) the Court authorizes the proposed modifications after notice and a hearing.

28.    <u>Miscellaneous Provisions Relating to Plan Distributions</u>.

a.    <u>No Fractional Distributions.</u>  No Distributions in fractions of hundredths of U.S. Dollars ($0.00's)(i.e., cents) shall be issued.  If the Distribution amount allocated to an Allowed Claim at the time of a Distribution hereunder would be include fractions of cents,

the amount to be distributed to the holder of such Claim shall be rounded down to the highest integral numbers of cents in the applicable Claim amount.

   b. <u>Name and Address of Holder of Claim.</u>  For purposes of all Distributions under the Plan, the Reorganized Debtors and the Plan Distribution Trustee, as applicable, can rely on the name and address of the holder of each Allowed Claim as shown on any timely filed proof of claim and, if none, as shown on the Debtors' Schedules, except to the extent that the Reorganized Debtors or the Plan Distribution Trustee first receives adequate written notice of a change of address, properly executed by the Holder or its authorized agent.

   c. <u>Unclaimed Distribution.</u> Any Unclaimed Distribution attributable to a claim paid by the Plan Distribution Trustee shall be forfeited to the Plan Distribution Trust, and all other Unclaimed Distributions shall be forfeited to the Reorganized Debtors.

   d. <u>De Minimis Cash Distributions.</u>  Notwithstanding anything to the contrary in the Plan, no Cash Distributions shall be made on account of any Allowed Claim if the Cash Distribution amount is less than $25.00.

   29. <u>Post-Conversion Conversion / Dismissal – LBR 3020-1(e).</u> A creditor or any other party in interest may bring a motion to convert or dismiss the Cases under § 1112(b) of the Bankruptcy Code after the Plan is confirmed if there is a default in performing the Plan.  If the Bankruptcy Court orders the Cases converted to chapter 7 after the Plan is confirmed, then all property that had been property of the chapter 11 Estates, and that has not been disbursed pursuant to the Plan, will revest in the respective chapter 7 estate, and the automatic stay will be re-imposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Bankruptcy Court during these Cases.

   30. <u>Post-Confirmation Status Reports.</u> By ***April 1, 2026***, the Reorganized Debtors and the Plan Distribution Trustee shall file a status report summarizing the progress made toward consummation of the Plan. The initial report shall be served on the United States trustee and the 20 largest unsecured creditors, and those parties who have requested special notice. The status report shall comply with the provisions of Local Bankruptcy Rule 3020-1(b) and be supported by evidence.

31.    <u>Post-Confirmation Status Conference</u>. A post-confirmation status conference will be held on ***April 15, 2026 at 1:00 p.m.*** in Courtroom "301" of the United States Bankruptcy Court located at 21041 Burbank Boulevard, Woodland Hills, California 91367.

32.    <u>Monthly Operating Reports</u>.  Post-confirmation, the Reorganized Debtors shall continue to file the "UST Form 11- MOR, Monthly Operating Report" form through the Effective Date.  After the Effective Date, the Reorganized Debtors, the Plan Distribution Trustee and any other authorized parties who have been charged with administering the Plan must <u>each</u> complete and file a post-confirmation report of the financial condition and status of operations for each calendar quarter using UST Form 11-PCR until the earlier of: (1) the entry of final decrees; (2) the conversion of the cases to cases under another chapter; or (3) the dismissal of the cases.

33.    <u>Reporting to Agent</u>.  The Plan Distribution Trustee shall provide the Agent with monthly bank statements reflecting the balance of the Class 1 Reserve Account for the preceding calendar month and any disbursements therefrom no later than the 15th of each calendar month.

34.    <u>Exculpations and Releases Relating to the Plan.</u>  To the maximum extent permitted by law, neither the Debtors, Klee Irwin, Dan Wing, Mark Green, the Reorganized Debtors, the Independent Director, the Committee members, nor any of their Professionals (collectively, the "Exculpated Parties"), shall have or incur liability to any Holder of a Claim or Equity Holder, or any other party in interest with respect to any claim or Cause of Action based on conduct taken or omitted to be taken in good faith after the Petition Date and on or before the Effective Date in connection with, or arising out of the formulating, negotiating, soliciting, preparing or confirming the Plan, Disclosure Statement and all exhibits thereto and/or the transactions contemplated therein, or a contract, instrument, release or other agreement or document created or entered into in connection with the Plan (collectively, the "<u>Exculpated Claims</u>"). The foregoing exculpation shall have no effect on liability of any Exculpated Party that results from any act or omission that is determined in a Final Order to have constituted fraud, gross negligence, willful misconduct, or professional malpractice.   For the avoidance of doubt, the exculpation provided herein: (i) shall only apply to conduct which occurred from the Petition Date through the Effective Date, with the exception of conduct relating to post-Effective Date modifications or amendments of the Plan, and

(ii) with respect to Professionals, shall only apply to Exculpated Claims arising during the period such Professional was a Bankruptcy Court approved Professional and shall not apply to any Exculpated Claims arising prior thereto or thereafter.

35.    Dissolution of the Committee.  On the Effective Date, the Committee shall be disbanded and all authorities granted the Committee pursuant to Sections 1102 and 1103 shall be terminated without further order of the Bankruptcy Court except to prepare, file, and seek approval from the Court of a final fee application pursuant to Section 330 and to be heard regarding Professional Fee Applications.

36.    Administrative Claims Bar Date.  Requests for payment of Administrative Claims must be filed and served on counsel for the Debtors no later than the date that is thirty (30) days after the Effective Date, other than Professional Fee Claims.  Holders of Administrative Claims that are required to file a request for payment of such Claims and do not file such requests by the Administrative Claims Bar Date, shall be forever barred from asserting such claims against the Debtors, their Estates, and the Reorganized Debtors.

37.    Bar Date for Filing Objections to Claims.  The deadline for filing objections to Claims is two hundred and seventy (270) days following the Effective Date, which deadline may be extended by this Court upon motion of any party in interest for cause.

38.    Inconsistency.  In the event of any inconsistency between the Plan and this Confirmation Order, this Confirmation Order shall govern. In the event of any inconsistency between the Plan and the Disclosure Statement, the Plan shall govern. In the event of any inconsistency between the Plan and any prior version thereof, the Plan [Doc. No. 837] shall govern.

39.    Effect of Confirmation Order on Other Orders.  Unless expressly provided for herein, nothing in the Plan or this Confirmation Order shall affect any orders entered in these cases.

40.    Retention of Jurisdiction.  Upon the Effective Date, this Court shall retain jurisdiction over the matters arising in, under, and related to, the cases, as set forth in Section III.F of the Plan and section 1142 of the Bankruptcy Code.

41.    <u>No Stay of Confirmation Order.</u>  For the avoidance of doubt, this Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), or otherwise.

**IT IS SO ORDERED.**

# # #

Date: December 3, 2025

Victoria S. Kaufman
United States Bankruptcy Judge