FILED & ENTERED

SEP 09 2026

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Pgarcia DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

In re:

IN Holdings, Inc., *et al.*,

Debtors.

Case No.: 1:24-bk-11323-VK

Chapter 11

Jointly Administered with:

Case No.: 1:24-bk-11324-VK
Case No.: 1:24-bk-11325-VK
Case No.: 1:24-bk-11326-VK

**MEMORANDUM OF DECISION RE: AWARD OF ATTORNEYS' FEES AND COSTS TO STS CAPITAL PARTNERS M&A ADVISORS INC.**

**[**No Hearing Held**]**

For the reasons set forth below, the Court will award STS Capital Partners M&A Advisors Inc. ("STS") $333,353.10 for attorneys' fees and $1,109.58 for costs incurred to compel payment of its Court-approved compensation. This award reflects the Court's decision to deduct $46,689.40 from STS's request for attorneys' fees.

# I. BACKGROUND

## A. Employment of STS Capital Partners M&A Advisors Inc.

In February 2025, the debtors filed an application to retain STS as an investment banker (the "STS Employment Application") [doc. 336]. The STS Employment Application was signed by Klee Irwin on behalf of the debtors.

In February 2025, STS and the debtors executed an engagement agreement, which is attached as Exhibit 3 to the STS Employment Application (the "STS Engagement Agreement"). The STS Engagement Agreement includes the following attorneys' fees provision:

> The Client shall indemnify and hold STS and each STS Party harmless against any losses, claims, damages or liabilities to which they or any of them may become subject in connection with the services referred to herein and shall reimburse them for any legal or other expenses (including the cost of any investigations) reasonably incurred by them arising out of or in connection with any action or claim in connection therewith, ***including for the recovery of any fees to which they are otherwise entitled under this Agreement***, whether or not resulting in any liability; provided, however, that the Client shall not be liable in any such case to the extent that any such loss, claim, damage or liability results from a breach of STS' obligations hereunder or from STS' judicially determined gross negligence or willful misfeasance in performing services hereunder. The provisions of this Section shall indefinitely survive the termination of this Agreement.

STS Engagement Agreement, ¶ 17 (emphasis added) (the "Attorneys' Fee Provision"). The terms of the STS Engagement Agreement provide that it is "governed by and construed in accordance with the laws of the State of New York." *Id.*, ¶ 23.

In March 2025, the debtors filed a supplement to the STS Employment Application (the "March 2025 Supplement") [doc. 403]. The March 2025 Supplement did not alter the Attorneys' Fee Provision. In March 2025, the Court entered an order granting the STS Employment Application (the "STS Employment Order") [doc. 450].

In June 2025, the debtors filed their motion to modify the terms of STS's employment (the "Modified Employment Motion") [doc. 652]. In July 2025, the Court entered an order granting the Modified Employment Motion (the "Order Modifying Employment") [doc. 712].

Under the Order Modifying Employment, the Court approved the debtors' requested modifications to the terms of STS's compensation. The modifications to STS's compensation

include, in part,

a. Notwithstanding anything set forth in the Application, the STS Engagement Agreement, the [March 2025] Supplement, or the [STS] Employment Order, the minimum Success Fee shall be waived for **any** buyer with a purchase price of up to $41 million. In that instance, the Success Fee will be 3% of the purchase price. Notwithstanding anything else set forth in the Application, the STS Engagement Agreement, the [March 2025] Supplement, or the [STS] Employment Order, the minimum Success Fee shall be waived if all allowed claims in these cases are not paid in full and the Success Fee will be 3% of the Purchase Price.

b. For any buyer with a purchase price above $41 million, STS will charge the applicable percentages set forth in Schedule A to the Engagement Agreement, with a minimum Success Fee of $3 million.

*See* Order Modifying Employment, p. 2.

**B. The Dispute Regarding Payment to STS**

In February 2026, STS filed an amended motion to compel payment of its compensation and an award of attorneys' fees (the "Motion to Compel") [doc. 999]. In the Motion to Compel, pursuant to section 328(a), the STS Employment Order and the Order Modifying Employment, STS requested that the Court compel payment of $3,000,000 for STS's professional services rendered in connection with the successful sale of substantially all of the debtors' assets for $42,500,000.

Klee Irwin, in pro per, filed an objection to the Motion to Compel (the "Irwin Objection") [doc. 1143]. In the Irwin Objection, Mr. Irwin contends, among other things, that the scope of STS's employment in this matter required it to register as a broker-dealer under section 15(a)(1) of the Securities Exchange Act of 1934 and analogous applicable state law; as argued by Mr. Irwin, because STS is not a registered broker-dealer, and does not meet any exemptions to such registration, the STS Engagement Agreement is void under applicable nonbankruptcy law. The debtors, as reorganized ("Reorganized Debtors"), subsequently filed joinders to the Irwin Objection [docs. 1173 and 1180]. STS filed a reply [doc. 1159].

On May 7, 2026, the Court held a continued hearing regarding the Motion to Compel. Following that hearing, the Court entered a scheduling order setting a briefing schedule on the following issue:

> [W]hether or not the modified contract between the Debtors and STS [see docs. 336, 403, 450, 652 and 712] is enforceable by STS under applicable federal securities law and/or other applicable state law, including but not limited to the merger and acquisition broker exemption under 15 U.S.C. § 78o(13) and the merger and acquisition exemption under 10 Cal. Code Regs. § 260.204.5 (to the extent, if any, that these statutes and/or rules are applicable to the Motion)[.]

Scheduling Order ("May 2026 Scheduling Order") [doc. 1265]. Pursuant to the May 2026 Scheduling Order, Mr. Irwin and STS submitted additional legal briefing [docs. 1285, 1302 and 1316].

On August 4, 2026, the Court entered an order granting the Motion to Compel (the "Professional Fees Order") [doc. 1379]. The Court ordered that:

> [P]ursuant to ¶ 17 of the Engagement Agreement between the debtors and STS, the reorganized debtors must pay to STS the reasonable attorneys' fees and costs that STS incurred to compel the payment of the Earned Fee[.]

Professional Fees Order, p. 3. The Court continued the hearing to September 2, 2026 and set a schedule for STS to submit evidence of attorneys' fees and costs it incurred to compel payment of its Court-approved compensation. *Id.*

### C. Declarations Regarding Attorneys' Fees Incurred

On August 5, 2026, STS filed declarations from its legal counsel at Buchalter LLP ("Buchalter") and Greenberg Traurig, LLP ("Greenberg") [docs. 1380 and 1381].

#### *1. Attorneys' Fees Payable to Buchalter*

From December 29, 2025 to April 26, 2026, Buchalter was the sole law firm representing STS to compel payment of the compensation owed to STS, pursuant to the Order Modifying Employment. In support of the request for attorneys' fees payable for Buchalter's services, STS filed a declaration of Caroline Djang (the "Djang Decl.") [doc. 1380]. As reflected in Buchalter's records, four professionals at Buchalter billed for nearly all of the services provided to STS; a *de minimus* amount is billed for the services of a few other professionals.

From the period from December 29, 2025 through July 31, 2025 (the "Buchalter Invoiced Fee Period"), the lead bankruptcy partner, Caroline Djang, billed 1 hour for services provided to STS at an hourly rate of $675 and 153.8 hours at an hourly rate of $685. For Ms. Djang's

services, STS requests payment of attorneys' fees totaling $106,028. Djang Decl, ¶ 11.

During the Buchalter Invoiced Fee Period, another partner, Daniel Silva – who specializes in criminal, civil and financial litigation – billed 9.2 hours for services provided to STS at an hourly rate of $695, as well as an additional 7.5 hours of time on the matter. *Id.* For services provided by Mr. Silva, Buchalter invoiced attorneys' fees totaling $6,394. Buchalter voluntarily wrote off the remainder of the fees billed by Mr. Silva, and STS does not request payment of those fees. *Id.*, ¶ 11 n.2.

Two associates at Buchalter also provided services to STS for this matter. Dakota Pearce, an associate in the firm's insolvency practice group, billed 5 hours at an hourly rate of $405. *Id.*, ¶ 11. David Wilson, an associate in the firm's litigation practice group, billed 14.7 hours at an hourly rate of $430, as well as an additional 33.6 hours on this matter. For the services of these associates provided to STS, Buchalter invoiced a total of $8,346 in attorneys' fees. Buchalter voluntarily wrote off the remainder of the fees billed by Mr. Wilson, and STS does not request payment of those fees. *Id.,* ¶ 11 n.3.[1]

In summary, STS requests payment of $121,020.50 for Buchalter's services provided to STS and reimbursement of $1,109.58 in costs incurred during the Buchalter Invoiced Fee Period. Djang Decl., ¶¶ 14-15.

***2. Attorneys' Fees Payable to Greenberg***

On April 27, 2026, Greenberg joined Buchalter in its representation of STS, to compel the payment of Court-approved compensation to STS. In support of the request for attorneys' fees payable to Greenberg, STS filed a declaration of William B. Mack (the "Mack Decl.") [doc. 1381]. As reflected in Greenberg's records, five professionals at Greenberg provided services to STS for this matter – two partners, one of counsel attorney, an associate and a paralegal. Mack Decl., ¶ 14.

From the period from April 27, 2026 through August 5, 2026 (the "Greenberg Invoiced Fee Period"), William Mack, a partner and co-chair of the firm's financial regulatory and

[1] In addition to these timekeepers, Buchalter charged STS a total of $252.50 in fees for services provided by a paralegal, a research services specialist and senior counsel.

compliance practice at Greenberg, billed 49.4 hours for services provided to STS at an hourly rate of $1,725, resulting in fees payable by STS totaling $85,215. *Id.,* ¶¶ 14, 17.

Ari Newman, a partner in Greenberg's restructuring practice, billed 6.1 hours for services provided to STS at an hourly rate of $1,275. *Id.* STS requests attorneys' fees totaling $7,777.50 for the time billed by Mr. Newman. *Id.,* ¶ 14.

STS also requests attorneys' fees for services provided to STS by Erika Cabo, an attorney in Greenberg's financial regulatory and compliance practice, and Sydney L. Parks, an associate in the firm's litigation practice group. *Id.,* ¶¶ 14, 17. During the Greenberg Invoiced Fee Period, Ms. Cabo billed 18.9 hours at an hourly rate of $980, resulting in $18,522 in fees. *Id.*, ¶ 14. Ms. Parks billed 127.45 hours at a rate of $970, resulting in $123,626.50 in fees. *Id.*

STS requests an award of $5,533.50 in fees for services provided by a Greenberg paralegal who billed 11.9 hours at a rate of $465. *Id.*

In summary, STS requests $240,674.50 to pay attorneys' fees for services provided by Greenberg to STS during the Greenberg Invoiced Fee Period. Mack Decl., ¶ 16.

**D. Additional Fees for Estimated Time After Invoiced Fee Periods**

STS requests an award of additional attorneys' fees for services already provided, or to be provided, by Buchalter and Greenberg, which services and related fees are not reflected in the firms' submitted billing records.

STS requests a total of $11,987.50 for services which Buchalter has provided or may provide to STS following the Buchalter Invoiced Fee Period. This amount includes (1) $3,767.50 in fees for 5.5 hours spent by Ms. Djang to prepare the Djang Decl. and the "review, redaction and revision of timesheets" between August 1 and August 5, 2026, and (2) $8,220 in fees that Ms. Djang anticipates would be necessary "to review and reply to any opposition(s) to the fee request" (7 additional hours) and "preparation for, travel to, and appearance and argument at, the hearing on this fee request" (5 hours). Djang Decl., ¶ 13.

STS requests additional, estimated fees of $6,360 for anticipated services of Greenberg to be provided subsequent to the Greenberg Invoiced Fee Period. Mr. Mack estimated that Sydney Parks would spend an additional 2 to 3 hours, and Mr. Mack would spend a minimum of 2

additional hours, in connection with the finalization of his declaration, preparation for the September 2, 2026 hearing, and appearance and oral argument at the hearing, for a total of $6,360.00. Mack Decl., ¶ 15.

### E. The Reorganized Debtors' Response

On August 19, 2026, the Reorganized Debtors filed an objection to STS's request for attorneys' fees and costs (the "Objection") [doc. 1409]. The Reorganized Debtors object to the fees requested in the Djang Decl. and Mack Decl. and "request an award of no more than $198,786.96-$197,940.53 and $846.60 in costs." Objection, p. 5. On August 27, 2026, STS filed a reply (the "Reply") [doc. 1425].

Following the submission of the Objection and the Reply, the Court waived oral arguments, vacated the scheduled hearing on the payment of attorneys' fees and costs to STS and took this matter under submission.

## II. LEGAL STANDARDS

### A. 11 U.S.C. § 328

Under 11 U.S.C. § 328(a):

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

"Under section 328, where the bankruptcy court has previously approved the terms for compensation of a professional, when the professional ultimately applies for payment, the court cannot alter those terms unless it finds the original terms to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." *In re Reimers*, 972 F.2d 1127, 1128 (9th Cir. 1992) (internal quotations and citation

omitted).

**B. Contractual Attorneys' Fees in Bankruptcy Cases**

"[A]n otherwise enforceable contract allocating attorney's fees (i.e., one that is enforceable under substantive, nonbankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448, 127 S. Ct. 1199, 1204, 167 L. Ed. 2d 178 (2007).[2]

**C. Determining Allowed Fees**

Numerous courts, including New York state courts and the Ninth Circuit Court of Appeals, customarily assess the reasonableness of attorneys' fees utilizing the "lodestar" approach, where the number of hours reasonably expended is multiplied by a reasonable hourly rate. *Simulados Software, Ltd. v. Photon Infotech Priv., Ltd.*, 861 F. App'x 149, 154 (9th Cir. 2021) (court applied lodestar method to determine award of attorneys' fees due to prevailing party under terms of parties' contract); *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 763 (9th Cir. 2015) (same); *The New York Times Co. v. The City of New York Office of the Mayor*, 2023 WL 5502516, at *2 (N.Y. Sup. Ct. Aug. 24, 2023).

> To determine reasonable hourly rates, the Court must look to the prevailing rate in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008). Counsel bears the burden of establishing that the number of hours expended is reasonable by submitting detailed time records justifying the hours claimed to have been expended. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987).

---

[2] The Reorganized Debtors and Mr. Irwin cite to *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126, 135 S. Ct. 2158, 2164, 192 L. Ed. 2d 208 (2015), for their assertion that "[e]ach litigant pays its own attorney's fees unless a statute provides otherwise, and that default yields only to explicit statutory authority." Objection, p. 7. The Supreme Court in *ASARCO* reiterates that a court's "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute ***or contract*** provides otherwise." *Id.* (emphasis added).

In *ASARCO*, the Supreme Court held that estate professionals seeking compensation under 11 U.S.C. § 330 may be awarded fees for work performed in preparing a fee application, but the Bankruptcy Code does not include a basis to approve compensation incurred for such professionals to *defend* a fee application. *Id.* at 131-32. In contrast, requiring payment of attorneys' fees and costs incurred by STS in order to compel the payment of its Court-approved compensation is based on the Attorneys' Fee Provision in the STS Engagement Agreement.

> The party requesting fees first must prove the hourly rate and number of hours that go into the lodestar calculation are reasonable themselves. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). The amount may be reduced if the hours are duplicative, excessive, or otherwise unnecessary. *Id.*; *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). After calculating the lodestar, the Court "may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed *in Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation." *Intel*, 6 F.3d at 622 (internal citation omitted).

*Murtaugh v. Star Sci. Ltd.*, 2018 WL 6137138, at *2 (C.D. Cal. July 2, 2018) (trial court utilized lodestar approach to award attorneys' fees due under settlement agreement, when incurred to enforce terms of settlement).

Factors which a court may consider when determining the reasonableness of an award of attorneys' fees are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent: (7) time limitations imposed by the client or the circumstances; (8) the amount involved, and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases[.]

*The New York Times Co.*, 2023 WL 5502516, at *2; *see also Murtaugh*, 2018 WL 6137138, at *2.

## III. ANALYSIS

The Court approved the STS Engagement Agreement, including the Attorneys' Fee Provision, under section 328(a) of the Bankruptcy Code. *See* STS Employment Order and Order Modifying Employment [doc. 450 and 712].

### A. Buchalter Fees During Buchalter Invoiced Fee Period

The Court has reviewed the billing records of Buchalter submitted in connection with its representation of STS. The hourly rates of Buchalter's timekeepers, ranging from $75 for a research services professional to $695 for a partner, are reasonable based on other professionals' hourly rates in the area performing similar work with comparable skill and reputation.

Having assessed the time records attached to the Djang Decl. and except to the extent individual time entries are deducted below, the Court finds that the number of hours expended by Buchalter during the Buchalter Invoiced Fee Period for services to compel the payment of compensation to STS are reasonable.

In its review of Buchalter's billing records, the Court identified forty-eight time records between January 14 and June 29, 2026 which concern services provided by Ms. Djang to monitor the payment of other professionals' fees. This monitoring was not necessary to obtaining payment of compensation owed to STS. Ms. Djang's time entries for these tasks range from 0.1 to 0.5 each; in aggregate, they resulted in **$7,192.50** in fees charged to STS. The Court will not include these fees in its award of attorneys' fees payable to STS.

On April 27 and 29, 2026, Mr. Silva billed a total of 2.7 hours for services which overlapped and were duplicative of the legal work performed by Greenberg. On May 5, 2026, Mr. Wilson billed 2.3 hours for work that also is duplicative of the work performed by Greenberg. For this duplicative work, Court will not award **$2,865.50** in fees billed by Buchalter.

On March 27, 2026, Ms. Djang billed 1.5 hours for reviewing/revising timesheets and redacting them. The Court will exclude from its award the corresponding **$1,027.50** in attorneys' fees incurred for this work.

On March 23, 2026, Mr. Wilson billed 3.1 hours to "draft securities briefing for reply in support of request for professional fees (3 pages)," which resulted in $1,333 in attorneys' fees invoiced to STS. Having reviewed the brief at issue, the Court's evaluation is that the amount of time spent on this task was excessive. As a result, of the aggregate $1,333 billed for these services, the Court will award **$430** in attorneys' fees.

On April 23 and May 29, 2026, Ms. Djang billed 0.2 (for a total of **$137**) for non-compensable secretarial tasks. The Court will not award these fees to STS.

In total, the Court will deduct a total of **$12,125.50** in attorneys' fees (attributable to 19.3 hours of billed time) that STS requests in connection with services provided by Buchalter.

Regarding **$108,895** in attorneys' fees billed by Buchalter and **$1,109.58** in related

expenses incurred by STS during the Buchalter Invoiced Fee Period, the Court concludes that the amounts of attorneys' fees and expenses are reasonable.

**B. Greenberg Fees During Greenberg Invoiced Fee Period**

The Court has reviewed Greenberg's billing records submitted in connection with its representation of STS. The hourly rates of Greenberg's timekeepers who provided services to STS range from $465 for a paralegal to $1,725 for a partner.

On April 21, 2026, Kenneth P. Herzinger, a partner at the law firm of Paul Hastings, appeared on behalf of Mr. Irwin and the Reorganized Debtors. Mr. Herzinger discussed the securities law issues which Mr. Irwin and the Reorganized Debtors raised, in opposition to the Motion to Compel [doc. 1207]. As reflected in the rates charged by Paul Hastings for comparable services of its attorneys, Greenberg's hourly rates charged in this matter, for a national law firm with the required expertise in securities regulation and litigation, are reasonable. *See* Mack Decl., ¶ 19.

Taking into account the quality and necessity of the services provided, and having assessed the records attached to the Mack Decl., except where otherwise indicated below, the number of hours billed by attorneys and other timekeepers for services provided to STS during the Greenberg Invoiced Fee Period are reasonable.

On April 28 and May 1, 2026, Greenberg billed STS for telephone calls which included four Greenberg timekeepers. For these calls, an unreasonable number of Greenberg attorneys participated. Having assessed the limited participation of Ms. Cabo in providing services to STS, as reflected in the billing records, it is not reasonable for Ms. Cabo's time on the calls to be charged. Accordingly, the Court will not award attorneys' fees for 1.8 hours, and **$1,764** in corresponding fees, with respect to the inclusion of Ms. Cabo on these calls.

On May 11 and May 19, 2026, Ms. Cabo billed a total of 1.9 hours (resulting in **$1,862** in fees) for services that are unnecessarily duplicative of services provided by Mr. Mack. The Court will not award attorneys' fees to STS for these services of Ms. Cabo.

On May 28, May 29, and July 27, 2026, Ms. Parks performed tasks, totaling 10.7 hours, which should have been provided by a paralegal, at a lower billing rate. Accordingly, for this

time, the Court will allow fees at the billing rate of a Greenberg paralegal, i.e., $465. This results in a **$5,403.50** deduction of attorneys' fees payable to STS.

On May 28, 2026, Mr. Newman recorded 1 hour for reviewing and revising STS's supplemental brief. This unnecessarily duplicates services which were provided by Ms. Djang. Consequently, the Reorganized Debtor will not be required to pay the fees billed for these services of Mr. Newman, in the amount of **$1,275**.

Between May 28 and August 4, 2026, ten time entries of Ms. Parks, totaling 57.4 hours, include "block billed" entries. These entries do not itemize how much time Ms. Parks spent on the tasks included within the time entry. This hinders the Court's ability to assess the reasonableness of the services provided by Ms. Parks; consequently, the Court will award 80% of the fees billed for these time entries of Ms. Parks. The results in a reduction of **$10,155.90** in fees payable to STS**.**

On July 1, 2026, Ms. Cabo recorded one time entry, totaling 6.4 hours, which includes both block billed time and a description of legal services which, in part, are duplicative of services provided by other professionals at Greenberg. The Court will award STS 50% of the fees billed for these services of Ms. Cabo. This results in a reduction of **$3,136.00** in attorneys' fees payable to STS.

On August 3 and August 4, 2026, there are two entries of Mr. Newman, totaling 2 hours, which include block billed time. The Court will award STS 80% of the fees billed for these services. The results in a reduction of **$510.00** in fees payable to STS**.**

In total, the Court will deduct a total of **$24,106.40** in attorneys' fees (attributable to 71.5 hours of billed time) for services provided by Greenberg. Regarding the remaining **$216,568.10** in attorneys' fees billed by Greenberg during the Greenberg Invoiced Fee Period, the Court concludes that the amount of attorneys' fees is reasonable.

**C. Estimated Legal Fees**

The Court has reviewed STS's request for an award of additional fees for services already provided, or expected to be provided, by Buchalter and Greenberg, following the firms' invoiced fee periods.

Regarding services provided by Buchalter, the Court will allow the requested 7 hours of time for Ms. Djang to review and reply to the Objection and 2 hours of time for Ms. Djang to finalize the Djang Decl. in August 2026. Considering Ms. Djang's hourly rate of $685, the Court concludes that **$6,165** constitutes reasonable fees for services provided following the Buchalter Invoiced Fee Period. The Court will exclude from its award the services Ms. Djang provided between August 1 and August 5, 2026 related to her review, redaction and revision of timesheets (e.g., 3.5 hours of the 5.5 hours requested) and the time estimated for "preparation for, travel to, and appearance and argument at, the hearing on this fee request" (e.g., 5 hours), which did not take place. As a result, the Court will deduct **$5,822.50** in attorneys' fees that STS requests in connection with services it anticipated Buchalter would provide after the Buchalter Invoiced Fee Period.

Regarding services provided by Greenberg, the Court will allow 1 hour for Mr. Mack to finalize the Mack Decl. Considering Mr. Mack's hourly rate of $1,725, the Court concludes that **$1,725** constitutes reasonable fees for services provided following the Greenberg Invoiced Fee Period. Because the Court waived oral arguments for this matter and vacated the hearing, the Court will deduct **$4,635** in attorneys' fees that STS requests in connection with services it anticipated Greenberg would provide after the Greenberg Invoiced Fee Period for "preparation for the September 2, 2026 hearing, and appearance and oral argument at the hearing."

## IV. CONCLUSION

For the reasons set forth herein, the Court will award $333,353.10 in attorneys' fees and $1,109.58 in costs which STS incurred for payment of its legal counsel, in order to compel payment of its compensation.

///

///

///

///

///

///

The Court will prepare an order in accordance with this memorandum of decision.

###

Date: September 9, 2026

Victoria S. Kaufman
United States Bankruptcy Judge